ANDERSON YEH PC
  Edward M. Anderson (STATE BAR NO. 198183)
edward@andersonyehlaw.com
  Regina Yeh (STATE BAR NO. 266019)
regina@andersonyehlaw.com
1055 E. Colorado Blvd. Ste 500
Pasadena, California  91106
Telephone: (626) 204-4092  Facsimile: (888) 744-0317

Attorneys for Plaintiff
ALCON ENTERTAINMENT, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALCON ENTERTAINMENT, LLC, a Delaware Limited Liability Company,<br><br>                  Plaintiff,<br><br>       v.<br><br>TESLA, INC., a Texas Corporation; ELON MUSK, an individual; WARNER BROS. DISCOVERY, INC., a Delaware Corporation;<br><br>                  Defendants. | CASE NO.<br><br>**COMPLAINT FOR:**<br><br>  1) **DIRECT COPYRIGHT INFRINGEMENT;**<br><br>  2) **VICARIOUS COPYRIGHT INFRINGEMENT;**<br><br>  3) **CONTRIBUTORY COPYRIGHT INFRINGEMENT;**<br><br>     **AND**<br><br>  4) **FALSE ENDORSEMENT IN VIOLATION OF 15 U.S.C. § 1125(a)(1)(A)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Alcon Entertainment, LLC ("Plaintiff" or "Alcon"), through its attorneys, hereby alleges its Complaint against defendants Tesla, Inc. ("Tesla"), Elon Musk ("Musk"), and Warner Bros. Discovery, Inc. ("WBDI") (collectively, "Defendants" and each separately a "Defendant"):

## SUBJECT MATTER JURISDICTION

1.      The Court has federal question subject matter jurisdiction per 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1331 and 1338(a) and (b), and on the grounds that this is a civil action arising under the laws of the United States.  Plaintiff seeks relief under the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, *et al.*, and the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A), in interstate commerce.

## SUMMARY OF DISPUTE

2.      Defendants requested permission to use an iconic still image (Exhibit A) from Alcon's "Blade Runner 2049" motion picture ("BR2049" or the "Picture") to promote Tesla's new fully autonomous cybercab in an October 10, 2024 event that was livestreamed worldwide from WBDI's Burbank, California studio lot. Alcon refused all permissions and adamantly objected to Defendants suggesting any affiliation between BR2049 and Tesla, Musk or any Musk-owned company. Defendants then used an apparently AI-generated faked image to do it all anyway.

3.      Defendants apparently fed the Exhibit A Image, and similarly iconic images from the same visual sequence at BR2049's dramatic core (Exhibit B), into an AI-driven image generator, and then directed the AI to make a lightly stylized fake screen still from BR2049 (Exhibit C).  Defendants then made this faked image the second presentation slide of the event, displaying it full screen on the livestream feed for 11 seconds (a marketing and advertising eternity) at the opening of Musk's cybercab sales pitch remarks.

4.      During those 11 seconds, Musk tried awkwardly to explain why he was showing the audience a picture of BR2049 when he was supposed to be talking about his new product.  He really had no credible reason.  Musk ostensibly invited

1  the global audience to think about the cybercab's possibilities in juxtaposition to

2  BR2049's fictional future.  But it all exuded an odor of thinly contrived excuse to

3  link Tesla's cybercab to strong Hollywood brands at a time when Tesla and Musk

4  are on the outs with Hollywood.[1]  Which of course is exactly what it was.

5      5.    It was hardly coincidental that the only specific Hollywood film which

6  Musk actually discussed to pitch his new, fully autonomous, AI-driven cybercab

7  was BR2049 – a film which just happens to feature a strikingly-designed,

8  artificially intelligent, fully autonomous car throughout the story.  Especially where

9  Defendants had asked Alcon's permission to use BR2049 and been so firmly

10  refused, this was clearly all a bad faith and intentionally malicious gambit by

11  Defendants to make the otherwise stilted and stiff content of the joint WBDI-Tesla

12  event more attractive to the global audience and to misappropriate BR2049's brand

13  to help sell Teslas.

14      6.    The financial magnitude of the misappropriation here was substantial.

15  Alcon has spent decades and hundreds of millions of dollars building the BR2049

16  brand into the famous mark that it now is.  Prior actual BR2049 contracts linking

17  automotive brands to the Picture have had dollar price tags in the eight figures.

18  The financial stakes and complexity of BR2049 automotive brand affiliations are

19  especially high at the immediate moment.  Alcon is in talks with other automotive

20  brands for partnerships on Alcon's BR2049-based *Blade Runner 2099* television

21  series currently in production, and Defendants' conduct is likely to cause confusion

22  among Alcon's potential brand partner customers.

23  *///*

24

25

----

26  [1] *See, e.g.,* Brett Berk, "Hollywood Can't Ditch Its Tesla's Fast Enough: 'They're
    Destroying Their Leases and Walking Away,'" *The Hollywood Reporter*, September
27  20, 2024, https://www.hollywoodreporter.com/lifestyle/lifestyle-news/tesla-
    robotaxi-warner-bros-reveal-hollywood-rejection-elon-musk-1236007945/.
28

7.      Beyond these more ordinary commercial issues, there is the problematic Musk himself.  Any prudent brand considering any Tesla partnership has to take Musk's massively amplified, highly politicized, capricious and arbitrary behavior, which sometimes veers into hate speech, into account.  If, as here, a company or its principals do not actually agree with Musk's extreme political and social views, then a potential brand affiliation with Tesla is even more issue-fraught.  Alcon did not want BR2049 to be affiliated with Musk, Tesla, or any Musk company, for all of these reasons.

8.      Now BR2049 unfortunately and falsely is so affiliated, and far beyond the 11 seconds of presentation time at the cybercab live event.  The event's worldwide livestream X feed, including Musk's forced BR2049-laced opening, was re-tweeted or re-posted by Tesla, Musk, X and others thousands of times, with millions of total views.  The false affiliation between BR2049 and Tesla is irreparably entangled in the global media tapestry, all as Defendants knew would inevitably happen, and amplifying the damage and confusion risks.

9.      This was and is all highly offensive to Alcon's right to commercial and cultural self-determination.  It was also a massive economic theft.  Based on prior BR2049 automotive brand affiliation contracts and the nature and scope of the use here, the fair market value of the brand affiliation goodwill that Defendants stole is at least in the six figures and possibly much higher.  Beyond Alcon's lost fees for the unauthorized association, Defendants muddied the waters for Alcon's in-progress exploration of automotive brand partnerships for the upcoming BR2049-based *Blade Runner 2099* television series.

10.      Alcon now seeks relief under the United States Copyright Act and the Lanham Act, for damages and to pry Musk and his co-Defendants away from Alcon's BR2049 brand and goodwill.

///

///

1

**PERSONAL JURISDICTION OVER DEFENDANTS**

2      11.    Per Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, this Court

3 has personal jurisdiction over any defendant who is subject to the jurisdiction of

4 any California court of general jurisdiction.  California's long arm statute, *Cal.*

5 *Code Civ. Pro.* § 410.10, allows courts in the state to exercise personal jurisdiction

6 over parties to the full extent permissible under the United States Constitution.

7 Personal jurisdiction over the Defendants here is thus proper if it comports with

8 due process.  It does, including for the following reasons.

9

***Personal Jurisdiction Over Tesla***

10      12.    <u>General Personal Jurisdiction</u>: The Court has general or unlimited

11 personal jurisdiction over Tesla.  Tesla is currently incorporated under the laws of

12 the State of Texas and its principal corporate office or headquarters is in Austin,

13 Texas and has been since about December 2021.  However, California was Tesla's

14 original principal corporate office home state, from Tesla's inception in about 2003

15 until the December 2021 move to Texas.  Tesla still maintains continuous and

16 systematic contacts with California, including continuing to operate at least two

17 major manufacturing plants in the state.

18      13.    <u>Specific Personal Jurisdiction</u>: Additionally and/or in the alternative,

19 the Court has specific or limited personal jurisdiction over Tesla.  Alcon's claims

20 arise out of Tesla's purposeful availment of the rights, privileges, and protections

21 of doing business in California, and also arise out of Tesla's commission of tortious

22 activity in California and purposeful direction of tortious conduct toward the forum

23 state.  Tesla committed the acts of infringement alleged herein, or substantial

24 portions of them, in preparation for and during the course of the October 10, 2024

25 cybercab product reveal event at WBDI's Burbank, California studio lot.  The

26 event was personally conducted by Musk who is Tesla's founder, principal and

27 Chief Executive Officer.  Tesla's acts of copyright infringement and violations of

28 the Lanham Act all constituted torts directed toward Alcon, a forum resident, and

relate to the motion picture industry, which is of compelling interest to the forum state. Exercise of personal jurisdiction over Tesla also is reasonable and fair.

### Personal Jurisdiction Over Musk

14.     The Court has at least specific or limited personal jurisdiction over Musk as an individual. Plaintiff's claims against him arise out of his acts of purposeful availment of the benefits and privileges of conducting activities in California, including where he personally conducted the event from the WBDI lot in Burbank, California. Plaintiff's claims also arise out of Musk's commission of tortious acts while physically present in the forum state. His acts also constituted purposeful direction of tortious conduct to the forum, all for the same specific facts and reasons as described above regarding Tesla personal jurisdiction. Exercise of personal jurisdiction over Musk as an individual also is reasonable and fair. At any given time depending on stock market fluctuations, Musk is reportedly the richest man in the world and has ample resources to defend himself in California court.

### Personal Jurisdiction Over WBDI

15.     The Court has general or unlimited personal jurisdiction over WBDI. WBDI is incorporated under the laws of the State of Delaware and its principal corporate office or headquarters is in New York. However, WBDI has continuous and systematic contacts with California, including owning and operating one of Hollywood's oldest major motion picture and television studios including the Warner Bros. Studios lot in Burbank, California.

16.     Additionally and/or in the alternative, the Court has specific or limited personal jurisdiction over WBDI. Alcon's claims arise out of WBDI's purposeful availment of the rights, privileges, and protections of doing business in California. They also arise out of WBDI's commission of tortious activity in California and purposeful direction of tortious conduct toward the forum state. WBDI's involvement in acts of copyright infringement and violations of the Lanham Act all constituted torts directed toward Alcon, a forum resident. They all relate to the

- 6 -

COMPLAINT

motion picture industry, an industry in which the forum state has a compelling interest.  Exercise of personal jurisdiction over WBDI also is reasonable and fair.

## VENUE

### *28 U.S.C. § 1391(b)(2) Venue as to all Defendants*

17.    Venue is proper as to all Defendants pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Alcon's claims occurred, or a substantial part of the property that is the subject of the action is situated, within this judicial district.  The infringed property in question includes Alcon's copyright in BR2049 and ownership of BR2049 marks and goodwill, which property is all located within this district for venue purposes, where Alcon has its corporate headquarters in Los Angeles, California.

### *Additional Venue Bases*

18.    Venue also is proper as to WBDI and Tesla pursuant to 28 U.S.C. §§ 1400(a) and 1391(d).  For venue purposes, Tesla and WBDI each reside in or may be found within this district.  Tesla and WBDI each have continuous and systematic contacts with the forum state and this district specifically, including sufficient contacts with this district to establish personal jurisdiction in this district, if this district were treated as a separate state.

## PARTIES

### *Plaintiff*

19.    Alcon is an independent motion picture and television studio whose products are distributed worldwide.  Alcon is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 10390 Santa Monica Blvd., #250, Los Angeles, California 90025.

20.    Alcon produced BR2049 and owns the BR2049 copyright and the BR2049 marks and brand at issue in this action.  Alcon has produced more than thirty other major motion pictures, including "The Blind Side*"* (which won the 2009 Academy Award for Best Actress), the "Dolphin Tale" series, the "Sisterhood

COMPLAINT

of the Traveling Pants" series, "Book of Eli," "P.S. I Love You," "My Dog Skip," "Prisoners," and "The Garfield Movie."  Alcon also produces television, including the critically acclaimed television series *The Expanse.*  Alcon is currently in production on a "Blade Runner 2049" sequel or spinoff television series entitled *Blade Runner 2099.*

### *Defendants*

21.   <u>Tesla</u>: Tesla is a well-known developer and manufacturer of electric automobiles.  Some of Tesla's automobile products are marketed as partially or fully autonomous.  The idea of AI-controlled or otherwise autonomous automobiles is a Tesla brand focus.

22.   <u>Musk</u>: Musk is Tesla's founder, largest shareholder and Chief Executive Officer.  In addition to owning and operating Tesla, he also owns and operates the social media platform X (formerly Twitter) and the rocket and satellite company SpaceX, among other ventures.  Musk has become an increasingly vocal, overtly political, highly polarizing figure globally, and especially in Hollywood.

23.   <u>WBDI</u>: WBDI is one of the largest entertainment conglomerates in the world.  It owns the Warner Bros. Studios lot in Burbank, California.  WBDI is currently run by its Chief Executive Officer, David Zaslav, a man who is both friendly with Musk and controversial in Hollywood in his own right.

### **FACTS COMMON TO ALL CAUSES OF ACTION**

### **The Infringed Work And Brand**

24.   Alcon is the owner and, as to all rights at issue herein, the exclusive copyright holder, of the BR2049 motion picture.  The Picture is registered with the United States Copyright Office under registration number PA0002056792 and has been since October 6, 2017.  The images from BR2049 shown in Exhibits A and B are from an iconic visual sequence at the dramatic core of the Picture.  In the copyright context, they are qualitatively significant to the Picture and they qualify

///

as being at the "heart of the work."  They also have secondary meaning in the Lanham Act context, all as discussed below.

25.    The Picture tells the story of the main character "K" (played by Ryan Gosling).  K is an artificially intelligent android or replicant pursuing the possible existence of a wholly or partially replicant child conceived by, and born to, a replicant mother, a phenomenon which would re-order the entire societal relationship between humans and their artificially intelligent replicant creations. K's trench coat or "duster" is the predominant feature of his wardrobe or costume. Throughout the Picture, K travels in, and is assisted by, his artificially intelligent, quasi-sentient flying car, or "spinner," which is capable of autonomous action.

26.    The Exhibit A and B images are from among the most memorable sequences in the Picture: K's arrival in, and exploration of, the orange-colored ruins of the Picture's abandoned Las Vegas, rendered uninhabitable by a dirty nuclear device many years prior to the story's timeframe.  The sequence follows K as he leaves the spinner and walks in his trench coat or "duster" toward and through the misty orange urban desert ruins, often viewed by the camera from behind or in silhouette.  The sequence leads up to and forebodes the Picture's dramatic apogee: K's encounter with his predecessor Deckard (Harrison Ford) from the original 1982 "Blade Runner" motion picture (the "1982 Picture").

27.    The image attached hereto as Exhibit A and incorporated herein by reference is a still image from the above sequence.  It is an image positioned from behind K, with his close-cropped hair, garbed in his distinctive trench coat or "duster," as he stands next to his spinner, facing away from the camera to survey the devastated orange-light-bathed Las Vegas cityscape ("Exhibit A Image").  In the Exhibit A Image, K is surveying the ruins as he prepares to set out on the walk through them that will lead him to the long-lost and mysterious Deckard – the most highly anticipated encounter in the Picture.

///

COMPLAINT

28.    The images attached hereto as Exhibit B and incorporated herein by reference are still images from K's walk through the ruins to encounter Deckard ("Exhibit B Images").

29.    "Blade Runner 2049," and the words "Blade Runner" in contexts that refer to or include BR2049 (such as, for example, the words "Blade Runner" not followed by the number "2049," but alongside iconic images from BR2049, or other callouts to specific scenes or elements of BR2049), the Exhibit A Image, and the Exhibit B Images, all have secondary meaning within the meaning of the Lanham Act, at the level of famous marks.

30.    They have achieved that status not merely accidentally, but because of Alcon's extensive and expensive efforts. Beginning no later than 2011 and on a continuing basis ever since, Alcon expended and continues to expend vast resources, in excess of $200 million to date, from original acquisition of relevant underlying rights, to development, production, marketing, and distribution of BR2049, to ongoing brand development and active policing of infringements, to development, production and distribution of numerous derivative works, including without limitation television series, comic books, and video games.

31.    The Picture was theatrically released globally on a day-and-date basis in October 2017. It received an 89% positive audience reaction on well-known film review site Rotten Tomatoes. Among numerous other awards, BR2049 was nominated for five Academy Awards, and it won two: Best Cinematography and Best Visual Effects. IGN gaming website named BR2049 the Best Movie of the Year for 2017, the Golden Tomato Awards named it the Best Sci-Fi/Fantasy Movie of 2017, and the 2018 Saturn Awards named it the Best Science Fiction film. BR2049 is regularly identified as one of the best science fiction movies of all time on lists of such movies generated by journalists, critics, and consumers.

32.    Alcon's efforts thus have generated robust consumer goodwill and brand recognition for BR2049 and its elements, specifically including the Exhibit

- 10 -
COMPLAINT

A Image and the Exhibit B Images in the Lanham Act context. Both the Exhibit A Image and the Exhibit B Images have been, and still are, prominently used by Alcon in the marketing, promotion and publicity of BR2049.

33.     The Exhibit A Image was the image used as the lead photo for numerous marketing, promotional and publicity press pieces about the Picture preceding its October 2017 initial theatrical release. It is still to this day the image that appears as the cover image to the official BR2049 marketing and promotional trailer as that trailer appears on YouTube. It is the back cover image for *The Art and Soul of Blade Runner 2049*, the coffee table book celebrating the Picture's visual design elements. It thus is one of the most iconic images from the Picture, and also one of the most commercially significant in a marketing sense. It immediately evokes BR2049 and everything the Picture stands for, without any words or other references. It is the image which Defendants specifically requested to use (and were refused by Alcon), as discussed further, *infra*.

34.     Images from BR2049's same Las Vegas sequence also have been, and still are, used by Alcon for marketing, promotion and publicity for the Picture. As just one example, the front cover of the same *The Art and Soul of Blade Runner 2049* coffee table book about the Picture is from Exhibit B Images set (K's duster-garbed silhouette moving alone through misty orange-lit emptiness). Exhibit B Images and similar images from the same sequence in the Picture consistently appear at, or near, the top of search engine queries about the Picture. Exhibit B Images and those like them from the Las Vegas sequence -- of a silhouetted trench coat-wearing man moving through a misty orange-colored ruinous urban desert landscape -- are immediately evocative of BR2049, without any other cues or references required.

35.     The Picture and its brand (including specifically the words "Blade Runner" even without the year "2049," when used in contexts that evoke BR2049 distinct from the 1982 Picture, and specifically including the Exhibit A Image and

Exhibit B Images) all have especially high resonance as to artificial intelligence, advanced automotive technology, and the combination of the two.  K's spinner has been recognized culturally as one of the most famous vehicles in motion picture history.  For example, the Petersen Automotive Museum in Los Angeles featured one of the full-scale prop models of K's spinner prominently in the museum's extended run of its "Hollywood Dream Machines: Vehicles of Science Fiction and Fantasy" special exhibit which ran from 2019 to 2020.  The BR2049 K spinner was one of only three vehicles selected to be on the marketing one-sheet poster for the Petersen exhibit, along with the time-traveling DeLorean from the "Back to the Future" movies and a light cycle from "Tron: Legacy."

36.    Numerous major automotive brands expressed substantial interest in a co-promotion brand partnership with Alcon on BR2049 prior to the Picture's initial theatrical release.  K's spinner as it appears in BR2049 is in fact branded under a major global automotive brand.  The contract price for that theatrical release co-promotion was well into the eight figures.

37.    BR2049 is a commercially living property, with an ongoing active market for automotive brand partnerships in particular.  For instance, as already mentioned, Alcon is currently in production on *Blade Runner 2099*, a BR2049-derived sequel or spin-off television series and Alcon is currently actively in the process of engaging with automotive brands for brand partnerships on that project.

***The October 10, 2024 Tesla Marketing Event and Alcon's Express Denial of Defendants' License Requests and Clear Objections to Any Affiliation***

38.    Some of what happened among the Defendants is not yet known to Plaintiff, and likely will not be known until and unless Plaintiff is allowed discovery.  Based on news reports, the nature of the event, and industry custom and practice with respect to studio lot events, and partial information provided by WBDI agents or representatives, Plaintiff makes the allegations in this paragraph 38 on information and belief and subject to the need for discovery: At some point

prior to October 10, 2024, Tesla and WBDI entered into a contractual agreement, the details of which are unknown to Alcon, but the essence of which necessarily included that WBDI would lease or license or otherwise provide studio lot space, lot access, infrastructure support and other resources to Tesla for the October 10, 2024 cybercab event and preparations leading up to it.  The event involved substantial WBDI resources and lot access.  For example, pre-event preparations were significant and started weeks or months prior, including Tesla vehicles repeatedly driving the studio lot to map it beforehand, so that about fifty fully autonomous Tesla cars could navigate the lot carrying Musk and event attendees on fully driverless rides as part of the event.  The contract necessarily would have required substantial financial compensation to be paid by Tesla to WBDI, in at least the high six figures and possibly in seven figures.

39.　Based on what actually happened at the event and the communications from WBDI agents and representatives to Alcon on the day of the event, as well as the absence of any substantial brand affiliation negotiation communications to Alcon at earlier dates or at all, Alcon is informed and believes and subject to the need for discovery thereon makes the allegations in this paragraph 39: The Tesla-WBDI event contract (or another associated contract) included a promotional element or elements, whereby WBDI allowed or possibly even required Tesla expressly to affiliate the cybercab with one or more motion pictures from WBDI's motion picture library, or the motion picture library of WBDI's subsidiary Warner Bros. Pictures, a division of WB Studio Enterprises Inc. ("Warner Bros. Pictures").

40.　Warner Bros. Pictures was Alcon's domestic distributor for the 2017 theatrical release of BR2049 and still has some domestic distribution rights, but not without limitations and restrictions.  Warner Bros. Pictures has some limited and ongoing "clip licensing" rights in the domestic market only, and not at all for a livestream television feed.  Moreover, neither Warner Bros. Pictures nor any other WBDI entity owns the copyright in BR2049 or any of the Picture's marks or

goodwill.  No WBDI entity has or ever had any non-domestic rights or permissions for the Picture.  Thus, neither Warner Bros. Pictures nor any other WBDI entity has or ever had sufficient rights to allow Tesla to exploit BR2049 or any of its elements, marks or goodwill in connection with the globally livestreamed cybercab reveal event.

41.     Warner Bros. Pictures has a longstanding course of dealing with Alcon generally and on BR2049 specifically.  Pursuant at least to that course of dealing, and custom and practice in the industry, Warner Bros. Pictures is required to, expected by Alcon to, and in fact actually does consult with Alcon and seek Alcon's approval prior to brand affiliation licensing of any BR2049 elements for, *inter alia*, a substantial, high-profile, and highly commercial brand affiliation, especially if the affiliation is potentially controversial or politically charged, and even if for only the domestic market.

42.     Neither Warner Bros. Pictures nor any other WBDI entity or representative ever communicated with Alcon at all about any potentially contemplated BR2049 brand affiliation with the Tesla cybercab or the event. (Even the communications that occurred from WBDI's representative to Alcon on the day of the event were disingenuously in the context of a purported relatively routine "clip license" request, never as the much more significant brand affiliation really at issue.)  That failure is inconsistent with the above long-standing course of dealing, and with custom and practice in the industry.

43.     Based on what actually happened at the event and the communications to Alcon from WBDI representatives on the day of the event and since, as well as the absence of certain communications to Alcon at earlier dates or at all, Alcon is informed and believes and, subject to the need for discovery, makes the allegations in this paragraph 43: Musk communicated to WBDI at some point in the event planning process, that Musk specifically wanted to associate the cybercab and Tesla with BR2049.  Musk believed (incorrectly) that BR2049 was part of the

relevant WBDI motion picture library subject to the Tesla-WBDI event agreement, or otherwise that WBDI could grant Tesla worldwide BR2049 exploitation rights to affiliate BR2049 with the cybercab during the event.  Among other BR2049 brand affiliation rights, Tesla and Musk asked WBDI for specific permission and rights to use the Exhibit A Image.  The specific Tesla employees, contractors or agents tasked with executing on these issues included David Adametz ("Adametz") (a video production marketing executive at Tesla) and Shara Lili ("Lili"), a Manager of Video Content for Tesla (also a video production marketing executive at Tesla).  One or both of Adametz and Lili were in direct contact with WBDI executives about the BR2049 brand affiliation, and one or both of Adametz and Lili were also in direct or indirect contact with Musk about it, too.

44.     Based on similarly-founded information and belief, and subject to the need for discovery, Alcon further makes the allegations in this paragraph 44: At the request of one or all of the Defendants (possibly made by Adametz or Lili on behalf of Tesla and Musk), WBDI's shared services rights clearance department commenced clearance checks on the planned BR2049 brand inclusion in the October 10, 2024 cybercab event.[2]  For reasons not yet fully known to Alcon, WBDI's shared services rights clearance department commenced (incorrectly) to clear the use as only involving a need for a "clip license" (typically a relatively

---

[2] Shared services departments at Hollywood studios and their affiliated larger corporate conglomerates have personnel (often legal, financial, accounting, or human resources professionals) who may be ostensibly employed by, receive their paychecks from, and have titles only with, a single corporate entity in the larger conglomerate, but who in fact render services upon request or direction to a range of entities within the conglomerate.  Here, Plaintiff is informed and believes and on that basis alleges that the WBDI shared services licensing department personnel involved in this matter included an individual executive who is based in Burbank, California and ostensibly an employee of Warner Bros. Pictures, but who on request or direction renders licensing and clearance services to WBDI or on its behalf.

1  small dollar value and innocuous type of rights license and distinct from a brand

2  partnership or brand affiliation license), and only to the Exhibit A Image.

3      45.    Alcon does not yet know all of what actually happened internally at

4  WBDI, or in WBDI communications with Musk and Tesla, as to why none of them

5  ever contacted Alcon about the larger brand affiliation proposal that was really

6  effectively at issue.  Alcon is unlikely to know without litigation discovery.

7  However, Alcon does know at least the following three things: a) the magnitude

8  and nature of the cybercab event and the contemplated BR2049 use in it, meant that

9  the issue was well beyond a mere "clip license," but rather a more substantive

10  brand affiliation, requiring significant business discussions with Alcon to proceed;

11  b) none of the Defendants or anyone acting on their behalves ever made any

12  contact with any Alcon representative about the cybercab event prior to the actual

13  day of the event, not even for a "clip license"; and c) none of them ever made any

14  larger brand affiliation outreach to Alcon at all, even on the day of the event.

15  Instead, Alcon learned about Defendants' interest in BR2049 on the day of the

16  event, a mere six hours prior to the event's scheduled commencement, as follows:

17      46.    At shortly after 12:00 p.m. PDT (noon) on October 10, 2024, the day

18  of the event, a WBDI shared services clip licensing executive based in Burbank

19  and engaged in the WBDI-Tesla-Musk BR2049 rights clearance process realized

20  that WBDI's shared services licensing personnel could not ever clear the proposed

21  BR2049 cybercab event affiliation without reaching out to Alcon and/or Alcon's

22  international distribution partner, including at a minimum because the cybercab

23  event required global rights, not only domestic, since the event would be

24  livestreamed globally.  On information and belief, the WBDI shared services clip

25  licensing executive communicated the problem directly or indirectly to WBDI

26  executives and to Tesla's Adametz or Lili, and informed them that either Alcon

27  and/or Alcon's international distribution partner would have to grant permissions,

28  ///

1  or the BR2049 affiliation in the event could not occur, since international rights

2  were involved.

3       47.    The WBDI shared services clip licensing executive then sent an email

4  "heads up" to their counterpart at Alcon's international distribution partner that

5  they might be getting an emergency rush basis BR2049 rights permission request

6  for "a Tesla even[t] happening today on our lot (sorry)."  The shared services

7  licensing executive at Alcon's international distribution partner communicated that

8  they would be unable to help without Alcon's direct involvement, resulting in

9  contact finally being made with Alcon for the first time (just several hours before

10  the event's scheduled commencement), by looping in an Alcon legal and business

11  affairs executive into a portion of the clearance communication chain.

12       48.    In a resulting combination of telephonic and email communications

13  among Alcon's legal department and the above-referenced two shared services clip

14  licensing executives at WBDI and Alcon's international distribution partner, Alcon

15  sought further information about the proposed BR2049 rights actually being

16  requested.  Although the information given was sparse, Alcon learned enough

17  information for Alcon's co-CEOs to consider the proposal and firmly reject it,

18  which they did.  By no later than about 2:00 p.m. PDT on October 10, 2024, by a

19  combination of emails and telephone communications, Alcon's legal and business

20  affairs executive communicated back to the WBDI shared services clip licensing

21  executive and the international distributor shared services clip licensing executive

22  that: a) Alcon refused all permissions for the October 10, 2024 WBDI-Tesla event;

23  b) Alcon was adamant that under no circumstances should there be any BR2049

24  affiliation, or any other Alcon affiliation, express or implied, with Tesla, X, Musk

25  or any Musk-owned company in the course of the October 10, 2024 event, or ever

26  (including a requirement to note Alcon's position and directions in Warner Bros.

27  Pictures and WBDI databases); and c) the two shared services clip licensing

28  executives were to please relay both of these a) and b) messages back to WBDI,

1  Tesla and X, including so that there would be no mistakes in the conduct of the

2  event.  Both of the shared services clip licensing executives reported back to

3  Alcon's legal and business affairs executive that they had communicated both

4  messages as requested.  Alcon is informed and believes and thereon alleges that in

5  fact they did.

6        49.    Alcon is thus informed and believes and thereon alleges that by no

7  later than about 2:00 p.m. PDT on October 10, 2024, WBDI, Tesla and X all knew

8  and understood that Alcon had not only refused any permissions to use any

9  BR2049 copyrighted elements in connection with the WBDI-Tesla event, but

10  Alcon had also expressly and clearly objected to any express or implied BR2049

11  affiliation with the event, or with Tesla, Tesla's cybercab, Musk, or X.

12        50.    Musk was personally doing the event presentation and would have to

13  know what he was presenting and the parameters.  Based on that reality and all the

14  circumstances known to Alcon so far, Alcon is informed and believes, and on that

15  basis and subject to the need for discovery, makes the allegations of this paragraph

16  50: At some point between about 2:00 p.m. PDT and the approximately 8:00 p.m.

17  PDT actual start time of the event on October 10, 2024, Musk personally became

18  aware of Alcon's permission denials and express objections (likely directly or

19  indirectly through Adametz or Lili).  He thus personally knew and understood that

20  to incorporate BR2049 into the event presentation at all would be improper and an

21  unauthorized misappropriation of BR2049 goodwill.  He did it anyway.

### Defendants' October 10, 2024 Intentional Copyright Infringement and Brand Misappropriation

24        51.    The event was scheduled to begin at 7:00 p.m. PDT on October 10,

25  2024, but did not actually begin until about 8:00 p.m. PDT.  In a brief introduction

26  of a minute or less, a Tesla representative named "Franz" took the stage.  Franz's

27  only substantive remark was to note that the presentation was being made from the

28  Warner Bros. lot, the home of many science fiction films that show visions of the

future (a clumsily transparent excuse to attach Tesla and the cybercab to Hollywood brands).  Franz then quickly segued to saying that the event would involve Tesla showing a vision of the future, and who better than Musk to do it. The livestream then shifted to a combination of aerial shots and ground cameras showing a cybercab arriving at an on-lot theater, some distance away from the presentation stage building.  Musk emerged from the theater and entered the cybercab after silently waving to a small crowd.

52.     The livestream tracked the Musk-bearing cybercab from various camera vantage points as it autonomously slowly rolled him to the presentation stage building at another part of the lot.  Musk exited and took the event stage.  He spent about another minute on welcoming remarks and explaining that there were 20 cybercabs and another 30 fully autonomous and driverless Tesla Model Ys at the event that attendees would be able to take a ride in.

53.     Then to commence the actual presentation, Musk said: "So you see a lot of sci-fi movies where the future is dark and dismal, where it's not a future you want to be in."  As he said this, the event's global livestream feed changed to a full screen display of a presentation slide with an image of the Earth from space at sunrise, with the words "What Kind of World Do We Want to Live In?"  This first slide stayed on the full-screen livestream feed for less than two seconds.

54.     Then, the livestream full screen display shifted to Musk's second slide, which the livestream displayed for about 11 seconds.  The second slide is an image that looks like a motion picture still photo (although it isn't) of a male figure seen from behind, with close-cropped hair, wearing a trench coat or duster, standing in almost full silhouette as he surveys the abandoned ruins of a city, all bathed in misty orange light.  In the upper left corner the words "Not This" appear superimposed on part of the orange sky.  Exhibit C is a screenshot of this second slide image from Musk's presentation ("Presentation Slide 2 Image").

///

55.     The Presentation Slide 2 Image was clearly intended to read visually either as an actual still image from BR2049's iconic sequence of K exploring the ruined Las Vegas, or as a minimally stylized copy of one (and it does read like one or both of these).  From Alcon's examination, it seems likely to have been generated by copying the Exhibit A Image and the Exhibit B Images (or similar images from the Picture's Las Vegas sequence), and asking an AI image generation engine to make "an image from the K surveying ruined Las Vegas sequence of 'Blade Runner 2049,'" or some closely equivalent input direction.  On information and belief, and subject to the need for discovery, Alcon alleges that in fact this is how the Presentation Slide 2 Image was generated, and for the bad faith intentional purpose of affiliating BR2049 and its goodwill with Tesla's cybercab, over Alcon's denial of permission and express objections.

56.     On information and belief, and subject to the need for discovery, Alcon makes the allegations in this paragraph 56: The Presentation Slide 2 Image was generated in the above way by an employee or agent of one or more of WBDI, Tesla (possibly by Adametz or Lili), or even possibly by Musk himself, and this was done with knowledge of the improper nature and purpose of the image generation request.  All of the Defendants participated in its creation, and in its display in the presentation at the event, from a WBDI-owned building and studio lot, on WBDI-owned video screens and otherwise using WBDI-owned technology infrastructure, operated by or in conjunction with Tesla employees, all acting in whole or in part subject to the direction and control of Musk, at least during the time of the event.  Defendants all acted with the knowledge and understanding that the X livestream or other equivalent video record of the event would be retweeted, reposted, or otherwise picked up and redistributed tens of thousands or even millions of times across the United States and the world immediately and continuing for days after the event.  In any event, all three of WBDI, Tesla and Musk knew and understood the unauthorized nature of the image and the improper

purpose behind it, and encouraged or otherwise lent their support to the improper endeavor. In the alternative, as to any and all Defendants who did not so actively participate, such Defendants ratified the conduct and knowingly accepted the benefits of it.

57. If there were any doubt that Defendants intended to evoke BR2049 with the Presentation Slide 2 Image and Musk's related remarks, Musk erased them with his voiceover comments during the approximately 11 seconds that the infringing Presentation 2 Image was completely filling the livestream screen. He said: "You know, I love 'Blade Runner,' but I don't know if we want that future. I believe we want that duster he's wearing, but not the, uh, not the bleak apocalypse." The Presentation Slide 2 Image then disappeared and Musk segued to talking about how what we all should want is a happier looking future, and how happy and joyful his vision of cities and highways filled with driverless robot cars will be and why.

58. Although Musk said the words "Blade Runner" without the year number (without "2049"), he clearly specifically meant to evoke BR2049 rather than the original 1982 Picture, and he was motivated to do so. The two films are clearly related, but BR2049 has its own distinct brand and secondary meaning, and BR2049's specific goodwill is far more relevant to Tesla's and Musk's cybercab pitch and product.

59. Although the 1982 Picture does prominently feature flying car "spinners," the cars in the 1982 Picture are not shown to be wholly or even partially autonomous, or even shown to employ artificial intelligence themselves in any way. None of the cars in the 1982 Picture play any role as a quasi-sentient companion to the Deckard lead character in the 1982 Picture, like K's spinner does for K in BR2049. Pointedly, then, if you are a company (or own one) specifically trying to market artificially intelligent, wholly or partially autonomous self-driving cars (as Tesla and Musk are), the 1982 Picture has little or no specifically relevant

context.  In contrast, BR2049 has extremely relevant context and worldwide goodwill in precisely the areas of artificial intelligence, self-driving capability, and autonomous automotive capability that Tesla and Musk are trying to market.

60.    Musk did successfully evoke BR2049 specifically, and that is true even though Musk only said the words "Blade Runner" without adding the year "2049.  For the reasons detailed in the next paragraphs below, Musk's act of displaying the Exhibit C Image -- an image of a man in near-silhouette, with close-cropped hair and wearing a duster, while he surveys an orange-light-bathed ruined and abandoned cityscape --  and displaying it for 11 seconds while Musk talks about "Blade Runner" and a specifically "apocalyptic" future – that is all specifically evocative of BR2049, and not of the 1982 Picture.

61.    While both the 1982 Picture and BR2049 show dystopian urban futures, only BR2049 has a specifically apocalyptic setting.  Only BR2049 has an abandoned and ruined city (Las Vegas) that has suffered an event of extreme destruction (the detonation by terrorists of a dirty nuclear device).  The ruined Las Vegas is where the most dramatically charged events of the BR2049 story take place (K's encounter with the long-lost Deckard).  The setting has striking color design, cinematography and other visual elements: it is distinctly bathed in "apocalyptic" misty orange light, just like the Presentation Slide 2 Image and which the 1982 Picture does not have in any comparable scene.  Throughout BR2049, there also are general references and story elements about civilization having semi-recently suffered a broader, apocalyptic nuclear conflict in the mid-range past, including electromagnetic pulse activity that destroyed many electronic records, making investigation of the past difficult.

62.    In contrast, the 1982 Picture is set in a dystopian urban landscape of a then-futuristic 2019 Los Angeles, but the 1982 Picture's setting is specifically not apocalyptic.  In the 1982 Picture, there has not been any dirty nuclear device, or nuclear electromagnetic burst which destroyed electronic records, or other

apocalyptic destruction that has hit Los Angeles or Las Vegas or any other location.  If anything, the urban setting of the 1982 Picture is the opposite of abandoned and ruined: it is overrun with too much ongoing industry and suffering from overpopulation.  It is not a stark, lonely, misty, orange, dry, radiated desert ruin like BR2049's Las Vegas or the Presentation Slide 2 Image, but rather is an overcrowded neon urban prison, where the citizens are trapped in constant night plagued by perpetual rain and an ever-present bombardment of consumer advertising.  In the 1982 Picture, neither the main character nor anyone else ever goes to any orange-colored post-apocalyptic ruined city or any other such location, in a duster or otherwise.

63.    Musk thus very clearly meant specifically to evoke not the 1982 Picture, but rather BR2049 and everything that goes with it -- including artificially intelligent autonomous cars like the Tesla cybercab being pitched at the event.  He successfully did.

64.    Any argument that Musk and his co-Defendants only meant to talk broadly about the general idea of science fiction films and undesirable apocalyptic futures and juxtaposing them with Musk's ostensibly happier robot car future vision, and that they just used BR2049 by chance, without conscious awareness of and intent to appropriate BR2049's special secondary meaning in the context of trying to sell artificially autonomous cars, is not credible.

65.    First, as detailed in foregoing paragraphs, there is a clear record that WBDI and Tesla were specifically interested in BR2049, as late as mere hours before the event, and not just any BR2049 Image, but the Exhibit A Image prominently featuring K's artificially intelligent autonomously capable spinner.

66.    Second, if Musk by his presentation was only trying to use an exemplary science fiction movie to make a rhetorical point, there were much better choices actually in the WBDI library for him to reference, given what his point ostensibly was.  Musk's ostensible point was "science fiction film futures look

1  bleak and not thinking enough about transportation technology risks that kind of

2  apocalyptic future; I can help us do better with my cybercabs." If that was really

3  the point he was trying to make, there are better films actually in the WBDI library

4  to make it.

5      67.    Every single one of the five "Mad Max" movies in WBDI's motion

6  picture library ("Mad Max," "The Road Warrior," "Mad Max Beyond

7  Thunderdome," "Fury Road," and "Furiosa: A Mad Max Saga") deals far more

8  specifically than BR2049 with that ostensible message. Every one of the Mad Max

9  movies is set in an apocalyptic future where gas-powered, non-autonomous

10  vehicles not only played a part in bringing about civilization's end (wars over oil),

11  but where gasoline and gas-powered non-autonomous cars continue to be what the

12  remaining humans fight with and about in the post-apocalyptic wasteland. Any of

13  those "Mad Max" movies in the WBDI library thus would have made much more

14  sense to use, if the true purpose of referencing a specific film was to make a

15  rhetorical point.

16      68.    The entire opening and its forced references to science fiction films

17  generally was never really for Musk to make a rhetorical point, though. Franz's

18  and Musk's Hollywood film rhetoric was just a contrivance for something else

19  more economically valuable to the Defendants. The WBDI lot location, and

20  especially the strained science fiction film references, were all clearly an

21  intentional effort to affiliate Tesla and its cybercab with Hollywood brands, and at

22  a time when Musk and Tesla are on the outs with Hollywood creatives and brands.

23  It was all about appropriating desirable Hollywood associations, and if possible,

24  Hollywood associations with special resonance to artificial intelligence and

25  strikingly-designed autonomous cars.

26      69.    The "Mad Max" movies are great, and so are many other dystopian-

27  future or apocalyptic-future movies actually in WBDI's library. But those movies

28  don't have massive consumer goodwill specifically around really cool-looking

(Academy Award-winning) artificially intelligent, autonomous cars.  BR2049 does.
It was the best and most specifically relevant film brand for Tesla to appropriate, or
one of the best.  Musk and the other Defendants specifically wanted BR2049's
goodwill for the event, not that of any other science fiction movie, and when Alcon
did not give it to them, they stole it.

70.    The theft infringed Alcon's copyright in the Picture, and created actual
confusion or a likelihood of it in the relevant marketplaces about BR2049 branding,
including Alcon's current marketing efforts with potential auto brand partners on
the *Blade Runner 2099* television series, among other marketplace confusion and
brand damage.  Alcon needs relief.

## FIRST CLAIM FOR RELIEF

### *Direct Copyright Infringement in Violation of 17 U.S.C. § 501, et seq.*
### *Against Defendants WBDI, Tesla and Musk*

71.    Plaintiff repeats, re-alleges and incorporates herein by reference each
and every allegation set forth in all of the foregoing paragraphs, and in each
paragraph of this Complaint hereafter, as if set forth herein in full.

72.    To the extent any of the allegations or theories in this First Claim for
Relief are inconsistent with other allegations or theories pled in this Complaint,
they are pled in the alternative.

73.    Plaintiff is the author and copyright owner of the motion picture
"Blade Runner 2049," registered with the United States Copyright Office on
October 6, 2017, registration number PA0002056792.

74.    The images from BR2049 appearing in Exhibits A and B attached
hereto, and similar images from the "K explores ruined Las Vegas" visual sequence
of the film, are protectible elements of the motion picture, and are at the creative
core or "heart of the work."

75.    Defendant WBDI, Tesla and Musk are direct infringers, in that they
directly reproduced, created unauthorized derivative works of, displayed,

1   distributed, and publicly performed protectible elements of BR2049 without
2   Plaintiff's license, authorization, or permission.  Specifically, Defendants WBDI,
3   Tesla (perhaps specifically by Adametz or Lili) and Musk generated or caused the
4   generation of the Presentation Slide 2 Image attached hereto as Exhibit C, in
5   connection with the October 10, 2024 Tesla cybercab product reveal event co-
6   conducted by WBDI, Tesla and Musk.  Plaintiff is informed and believes and on that
7   basis, and subject to the need for discovery, alleges that to generate the Presentation
8   Slide 2 Image, Defendants WBDI, Tesla and Musk or the image generation tool that
9   they used engaged in unauthorized copying and/or distribution and/or display of
10  protectible elements of BR2049, specifically images of the type described in
11  paragraph 74 above.

12      76.    The Presentation Slide 2 Image is in any event an unauthorized
13  derivative work of BR2049.  Defendants WBDI, Tesla and Musk caused the
14  infringing Presentation Slide 2 image to be distributed, displayed and publicly
15  performed at the Tesla-WBDI event at the Burbank, California lot to an audience
16  large enough to constitute a public performance at that location, and also across the
17  United States and around the world, and by the thousands of retweets and repostings
18  of the event video feed that Defendants WBDI, Tesla and Musk knew would
19  inevitably happen.

20      77.    The foregoing acts of Defendants WBDI, Tesla and Musk infringed
21  upon the exclusive rights granted to Alcon under 17 U.S.C. § 106 to reproduce,
22  create derivative works, display, distribute and publicly perform BR2049 and its
23  protectible elements.  Such actions and conduct constitute copyright infringement in
24  violation of 17 U.S.C. § 501, *et seq.*

25      78.    Plaintiff has complied with 17 U.S.C. §§ 101, *et seq.* and secured and
26  registered the exclusive rights and privileges in and to the copyrights of the above-
27  referenced work in accordance with 17 U.S.C. § 408.
28  ///

79.     Plaintiff suffered damages as a result of Defendants' unauthorized use of BR2049 and its protectible elements.

80.     Plaintiff is entitled to temporary, preliminary and/or permanent injunctive relief, pursuant to 17 U.S.C. § 502(a).

81.     Pursuant to 17 U.S.C. § 503 and its subdivisions, Plaintiff is entitled to impoundment of all materials used to achieve the infringement, and records documenting Defendants' exploitation of their infringements, including without limitation all materials used by Defendants or any image generation tool employed by them to generate the Presentation Slide 2 Image.

82.     Plaintiff is entitled to recover and seeks its actual damages and any additional profits of Defendants WBDI, Tesla and Musk attributable to the infringements, under 17 U.S.C. § 504(b).

83.     Plaintiff also is entitled to elect to recover and seek statutory damages under 17 U.S.C. §§ 512 and 504(c), in an amount of not less than $750 or more than $30,000 per infringement of BR2049.  Furthermore, Plaintiff is informed and believes and on that basis alleges that Defendants' acts of copyright infringement, as alleged above, were willful, intentional, and malicious.  Such acts subject Defendants to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to $150,000 per infringement.

84.     Within the time permitted by law, Plaintiff will make its election between actual damages and profit disgorgement, or statutory damages.

85.     Plaintiff also is entitled to a discretionary award of attorney fees under 17 U.S.C. § 505.

86.     Plaintiff seeks or reserves the right to seek any or all of the above forms of relief, in addition to prejudgment interest to the extent legally available and Plaintiff's costs.

///

///

## SECOND CLAIM FOR RELIEF

*Vicarious Copyright Infringement in Violation of 17 U.S.C. § 501,* **et seq.**

*Against Defendants WBDI, Tesla and Musk*

87.    Plaintiff repeats, re-alleges and incorporates herein by reference each and every allegation set forth in all of the foregoing paragraphs, and each paragraph of this Complaint hereafter, as if set forth herein in full.

88.    To the extent any of the allegations or theories in this Second Claim for Relief are inconsistent with other allegations or theories pled in this Complaint, they are pled in the alternative.

89.    If Defendants WBDI, Tesla and Musk are not each liable as direct infringers of BR2049, they are secondarily liable for the infringements directly committed by individual agents, contractors, or other infringers presently unknown (the "Direct Infringers") under the vicarious infringement doctrine.

90.    Defendants WBDI, Tesla and Musk had the right and ability to supervise the infringing activity that all the Direct Infringers committed.  The facts and circumstances of the event make clear that at the very least Tesla and Musk could have refrained from including the Presentation Slide 2 Image in the presentation or told their agents, employees or contractors not to include it. Defendant WBDI was using its shared services licensing department to perform clearance work for the presentation at least related to film references.  Plaintiff is thus informed and believes and on that basis, and subject to the need for discovery, alleges that WBDI had the right and ability to tell the Direct Infringers that their infringing conduct was not acceptable and could not be part of the presentation.  To the extent that the Direct Infringers were individual agents, employees or contractors of WBDI, then WBDI plainly had the right and ability to supervise the Direct Infringers' infringing conduct.

91.    Defendants obtained some direct financial benefit from the infringement of Plaintiff's rights in BR2049 by the Direct Infringers.  The

infringements of BR2049 in question are the Direct Infringers' generation of the Presentation Slide 2 Image and the way that it was used during the event and afterward in livestream exploitation, distribution and ongoing display and public performance.  The Presentation Slide 2 Image was and is pivotal to Defendants WBDI, Tesla and Musk effectively misappropriating BR2049's goodwill to advance both (a) the consumer appeal of the joint Tesla-WBDI cybercab presentation itself (which presentation was essentially an infomercial), and (b) consumer and investor interest in Tesla and the cybercab.

92.    Based on past actual brand affiliation contracts for automotive partners on BR2049, Tesla likely would have had to make significant expenditures – at least in the mid-six-figures (at least $500,000) and possibly into the eight figures ($10 million or more) to obtain a BR2049 brand affiliation with Tesla and the cybercab at market value, if Alcon had even been willing to do it at all.  The copyright infringements here facilitated allowing Tesla to save this expenditure.

93.    With respect to Musk, Plaintiff is informed and believes and on that basis, and subject to the need for discovery, alleges that Musk believed that the affiliation of BR2049 with the Tesla cybercab during the product reveal increased the likelihood that the product reveal event would have a positive response with actual and potential investors in Tesla, such that Tesla's stock price would increase, which was a significant purpose of the Tesla-WBDI event.  On the same basis and for the same reasons, Plaintiff further alleges that Musk similarly believed that the BR2049 reference and affiliation would increase consumer interest in Tesla cybercabs, and that Tesla would sell more of them or experience more pre-orders for them.  Musk is not only the largest shareholder in Tesla, but his compensation as CEO is directly tied to the Tesla stock price, as a substantial portion of Musk's compensation is grants of equity in Tesla.  Musk thus believed he would directly benefit financially from the infringement.

///

COMPLAINT

94.    With respect to WBDI, Plaintiff is informed and believes and on that basis, and subject to the need for discovery, alleges that the event contract between WBDI and Tesla included a co-promotional or brand affiliation element, and that prior to October 10, 2024, Tesla and Musk believed and relied on (inaccurately) that WBDI could deliver a brand affiliation with BR2049.  Plaintiff is informed and believes and on that basis, and subject to the need for discovery, alleges that when Tesla and Musk learned that was not true or not the same situation as they had believed, WBDI had a financial incentive to avoid any claims of breach of contract or adjustment of the contract price, and one way to do that was essentially to allow the fudging (questionable manipulation) of the situation by either suggesting, encouraging, or knowingly allowing Tesla and Musk's generation of and use of the infringing Presentation Slide 2 Image.

95.    Accordingly, all Defendants had an incentive to permit infringement by the Direct Infringers.

96.    The foregoing acts of Defendants WBDI, Tesla and Musk infringed upon the exclusive rights granted to Alcon under 17 U.S.C. § 106 to reproduce, create derivative works, display, distribute and publicly perform BR2049 and its protectible elements.  Such actions and conduct constitute copyright infringement in violation of 17 U.S.C. § 501, *et seq.*

97.    Plaintiff has complied with 17 U.S.C. §§ 101, *et seq.* and secured and registered the exclusive rights and privileges in and to the copyrights of the above-referenced work in accordance with 17 U.S.C. § 408.

98.    Plaintiff suffered damages as a result of Defendants' unauthorized use of BR2049 and its protectible elements.

99.    Plaintiff is entitled to temporary, preliminary and/or permanent injunctive relief, pursuant to 17 U.S.C. § 502(a).

100.   Pursuant to 17 U.S.C. § 503 and its subdivisions, Plaintiff is entitled to impoundment of all materials used to achieve and records documenting Defendants'

exploitation of, their infringements, including without limitation all materials used by Defendants or any image generation tool employed by them to generate the Presentation Slide 2 Image.

101.   Plaintiff is entitled to recover and seeks its actual damages and any additional profits of Defendants WBDI, Tesla and Musk attributable to the infringements, under 17 U.S.C. § 504(b).

102.   Plaintiff also is entitled to elect to recover and seeks statutory damages under 17 U.S.C. §§ 512 and 504(c), in an amount of not less than $750 or more than $30,000 per infringement of BR2049.  Furthermore, Plaintiff is informed and believes and on that basis alleges that Defendants' acts of copyright infringement, as alleged above, were willful, intentional, and malicious.  Such acts subject Defendants to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to $150,000 per infringement.

103.   Within the time permitted by law, plaintiff will make its election between actual damages and profit disgorgement, or statutory damages.

104.   Plaintiff also is entitled to a discretionary award of attorney fees under 17 U.S.C. § 505.

105.   Plaintiff seeks or reserves the right to seek any or all of the above forms of relief, in addition to prejudgment interest to the extent legally available and Plaintiff's costs.

## THIRD CLAIM FOR RELIEF

### *Contributory Copyright Infringement in Violation of 17 U.S.C. § 501, et seq.*
### *Against Defendants WBDI, Tesla and Musk*

106.   Plaintiff repeats, re-alleges and incorporates herein by reference each and every allegation set forth in all of the foregoing paragraphs, and each paragraph of this Complaint hereafter, as if set forth herein in full.

///

///

1    107.   To the extent any of the allegations or theories in this Third Claim for

2    Relief are inconsistent with other allegations or theories pled in this Complaint,

3    they are pled in the alternative.

4    108.   If Defendants WBDI, Tesla and Musk are not individually liable as

5    direct infringers of BR2049, they are secondarily liable for the infringements

6    committed by the Direct Infringers under the contributory infringement doctrine.

7    109.   Defendants WBDI, Tesla and Musk had, or should have had,

8    knowledge of the infringements of the Direct Infringers.  Tesla and Musk plainly

9    intentionally included the Presentation Slide 2 Image in the October 10, 2024 Tesla

10   presentation, and they could plainly see that it was not an actual still image from

11   BR2049, but rather a stylized copy likely to found infringing.  They also all knew

12   that Alcon had refused permission to use BR2049 or any of its elements in the

13   presentation or in connection with it.  Defendant WBDI was using its shared

14   services licensing department to perform clearance work for the presentation at

15   least related to motion picture references.  Plaintiff is informed and believes and on

16   that basis and subject to the need for discovery alleges that if WBDI or its

17   personnel were not Direct Infringers, WBDI's shared services licensing clearance

18   department was at least being shown image options, including viewing the

19   proposed Presentation Slide 2 Image in advance of the event, and thus knew about

20   the infringement.

21   110.   Defendants WBDI, Tesla and Musk either materially contributed to or

22   induced the infringements.  Tesla and Musk materially contributed to the direct

23   infringements by including the Presentation Slide 2 in Musk's presentation.

24   Plaintiff is informed and believes and on that basis and subject to the need for

25   discovery alleges that Musk was determined specifically to reference BR2049 and

26   an image from it in the presentation, and his determination induced the direct

27   infringements by the Direct Infringers of creating the infringing Presentation Slide

28   2 Image.  Defendant WBDI materially contributed to the direct infringements at the

very least in that the event display, distribution and public performance aspects of the infringement occurred at WBDI's Burbank, California studio lot, and with the use and support of WBDI's facilities and technology. Plaintiff is informed and believes and on that basis, and subject to the need for discovery, alleges that WBDI induced the infringement by convincing or encouraging the Direct Infringers and Tesla and Musk that Alcon's denial of any BR2049 permissions could be circumvented by generation and use of an AI-generated copy of iconic BR2049 imagery, as Alcon alleges the Presentation Slide 2 Image to be.

111.   The foregoing acts of Defendants WBDI, Tesla and Musk infringed upon the exclusive rights granted to Alcon under 17 U.S.C. § 106 to reproduce, create derivative works, display, distribute and publicly perform BR2049 and its protectible elements. Such actions and conduct constitute copyright infringement in violation of 17 U.S.C. § 501, *et seq.*

112.   Plaintiff has complied with 17 U.S.C. §§ 101, *et seq.* and secured and registered the exclusive rights and privileges in and to the copyrights of the above-referenced work in accordance with 17 U.S.C. § 408.

113.   Plaintiff suffered damages as a result of Defendants' unauthorized use of BR2049 and its protectible elements.

114.   Plaintiff is entitled to temporary, preliminary and/or permanent injunctive relief, pursuant to 17 U.S.C. § 502(a).

115.   Pursuant to 17 U.S.C. § 503 and its subdivisions, Plaintiff is entitled to impoundment of all materials used to achieve and records documenting Defendants' exploitation of, their infringements, including without limitation all materials used by Defendants or any image generation tool employed by them to generate the Presentation Slide 2 Image.

116.   Plaintiff is entitled to recover and seeks its actual damages and any additional profits of Defendants WBDI, Tesla and Musk attributable to the infringements, under 17 U.S.C. § 504(b).

117.   Plaintiff also is entitled to elect to recover and seeks statutory damages under 17 U.S.C. §§ 512 and 504(c), in an amount of not less than $750 or more than $30,000 per infringement of BR2049.  Furthermore, Plaintiff is informed and believes and on that basis alleges that Defendants' acts of copyright infringement, as alleged above, were willful, intentional, and malicious.  Such acts subject Defendants to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to $150,000 per infringement.

118.   Within the time permitted by law, Plaintiff will make its election between actual damages and profit disgorgement, or statutory damages.

119.   Plaintiff also is entitled to a discretionary award of attorney fees under 17 U.S.C. § 505.

120.   Plaintiff seeks or reserves the right to seek any or all of the above forms of relief, in addition to prejudgment interest to the event legally available and Plaintiff's costs.

## FOURTH CLAIM FOR RELIEF

### *False Endorsement in Violation of 15 U.S.C. § 1125(a)(1)(A)*
### *against All Defendants*

121.   Plaintiff repeats, re-alleges and incorporates herein by reference each and every allegation set forth in all of the foregoing paragraphs, and each paragraph of this Complaint hereafter, as if set forth herein in full.

122.   To the extent any of the allegations or theories in this Fourth Claim for Relief are inconsistent with other allegations or theories pled in this Complaint, they are pled in the alternative.

123.   Alcon owns the "Blade Runner 2049" property and that includes marks and elements that have goodwill and secondary meaning within the meaning of the Lanham Act.  Among other such elements, "Blade Runner 2049," and the words "Blade Runner" in contexts that refer to or include the BR2049 motion picture (such as, for example, the words "Blade Runner" not followed by the

- 34 -
COMPLAINT

number "2049," but alongside iconic images from the BR2049 motion picture, or other callouts to specific scenes or elements of BR2049, including images like Exhibits A, B and C), and many specific elements of the BR2049 motion picture (such as particularly iconic or memorable images from the Picture), have achieved secondary meaning within the meaning of the Lanham Act and at the level of famous marks.

124.   Certain images and visual sequences from the Picture have secondary meaning on their own, immediately evoking BR2049, and with their own commercial marketing history and significance.  The Exhibit A Image and the Exhibit B Images are such images.

125.   Defendants Tesla and Musk have engaged in false representations which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Tesla and Musk with Alcon or as to the sponsorship or approval of Tesla's or Musk's goods, services, or commercial activities by Alcon.

126.   Plaintiff alleges that Tesla and Musk engaged in the following specific conduct that together constituted false statements that constituted false representations of the type described in the foregoing paragraph 124: the conduct and statements made by Tesla and Musk at the October 10, 2024 Tesla-WBDI event as described in paragraphs 50-69 above.

127.   Tesla's and Musk's unauthorized use of, and references, to Alcon's BR2049 marks and secondary meaning elements had and have the effect of falsely representing that Tesla's and Musk's goods and services are licensed, sponsored, endorsed, or otherwise authorized by Alcon.

128.   Tesla's and Musk's conduct is likely to cause confusion or mistake and to deceive consumers and/or Alcon's relevant actual and potential business partners as to the endorsement, sponsorship, affiliation, connection, or association of Alcon with Tesla's and Musk's services and products.  In this context, Alcon's

relevant business partners include automotive brands with potential interest in brand affiliations with BR2049, including without limitation with the BR2049-based *Blade Runner 2099* television series currently in production by Alcon.  They also include business partners in the Hollywood talent pool market where Alcon is active on an everyday basis, and which Hollywood talent pool market generally is less likely to deal with Alcon, or parts of the market may be, if they believe or are confused as to whether, Alcon has an affiliation with Tesla or Musk.

129.   Tesla and Musk engaged in the above conduct intentionally and in bad faith, conspiring to and then executing a fraudulent scheme falsely to create a purported justification or excuse to feature Alcon's BR2049 prominently at the outset of Tesla's and Musk's cybercab product reveal presentation, and without paying Alcon any fee for doing so, for the purpose of using BR2049's goodwill to increase the interest level and cache of the new Tesla product pitch and product.

130.   All of the foregoing false endorsement uses of Alcon's BR2049 marks and goodwill were commercial speech, and not subject to any defense predicated on the nature of the use being a non-commercial use or non-commercial speech. Specifically, some or all of Tesla's and Musk's speech was either (a) core commercial speech in that it proposes a commercial transaction, or in the alternative, (b) was nonetheless commercial for purposes of false endorsement law and Plaintiff's claims herein, in that the communications were advertisements, made reference to a specific product, and the speaker had an economic motivation for the communication, all within the meaning of *Bolger v. Youngs Drugs Products Corp.*, 463 U.S. 60 (1983) and its progeny.

131.   As a direct and proximate result of Tesla's and Musk's wrongful actions, Alcon has suffered damages in an amount to be proven at trial, but in excess of the jurisdictional minimum.

132.   Alcon further alleges that Tesla's and Musk's unauthorized use of Alcon's BR2049 marks and secondary meaning elements will continue unless and

until Tesla and Musk are enjoined.  Alcon has no adequate remedy at law to prevent Tesla and Musk from continuing to wrongfully violate Alcon's rights, and Alcon will suffer irreparable harm unless Defendants are enjoined from continuing their wrongful conduct.

133.   Plaintiff is informed and believes and on that basis alleges that if afforded a reasonable opportunity for discovery, discovery will show that Defendant WBDI conspired with Tesla and Musk to participate in the above conduct, without Alcon's express written or oral consent, and over Alcon's express refusals and objections, for purposes of trade or for other commercial or advertising purposes, and took actions intended to further that conspiracy, such as, among other things:

   a. Attempting to justify use of Alcon's BR2049 brand by advancing a sham "clip licensing" scheme;

   b. Generating the infringing Presentation Slide 2 Image and/or encouraging Tesla and Musk to use it; and

   c. Intentionally and purposefully not engaging with Alcon at all about a potential brand affiliation, and only engaging with Alcon in any way about the BR2049 use on the day of the event.

134.   Plaintiff is informed and believes and on that basis alleges that if afforded a reasonable opportunity for discovery, discovery will show that Defendant WBDI aided and abetted Tesla's and Musk's Lanham Act violations described herein, including in that WBDI aided, encouraged and/or lent meaningful support to Tesla and Musk before, during or after Tesla's and Musk's violations, and with knowledge by WBDI that the acts by Tesla and Musk were improper.

135.   Defendants all had actual knowledge of the wrongfulness of their conduct and the high probability that such acts would cause injury and/or damage to Plaintiff.  Despite their knowledge, Defendants intentionally pursued their course of conduct, resulting in injury or damage to Plaintiff.

### **Prayer for Relief**

WHEREFORE, Plaintiff prays judgment be entered in its favor and against Defendants, and each of them, as follows:

1. <u>On the First Claim for Relief for Copyright Infringement</u>:

   a. For a preliminary and permanent injunction against Defendants and anyone working in concert with them from further copying, displaying, distributing, selling, or offering to sell BR2049 or protectible elements thereof in connection with Tesla or Musk, or making derivative works thereof for such purposes.

   b. As permitted under 17 U.S.C. § 503, for impoundment of all copies of the Presentation Slide 2 Image and underlying materials used in violation of Plaintiff's copyrights—including digital copies or any other means by which they could be used again by the Defendants without Plaintiff's authorization—as well as all related records and documents.

   c. For actual damages and all profits that Defendants derived from the unauthorized use of BR2049 or, where applicable and at Plaintiff's election, statutory damages.

   d. For an award of attorneys' fees.

   e. For an award of pre-judgment interest as allowed by law.

   f. For costs of suit.

   g. For such further relief as the Court deems just and proper.

2. <u>On the Second Claim for Relief for Vicarious Copyright Infringement</u>:

   a. For a preliminary and permanent injunction against Defendants and anyone working in concert with them from further copying, displaying, distributing, selling, or offering to sell BR2049 or protectible elements thereof in connection with Tesla or Musk, or making derivative works thereof for such purposes.

b.  As permitted under 17 U.S.C. § 503, for impoundment of all copies of the Presentation Slide 2 Image and underlying materials used in violation of Plaintiff's copyrights—including digital copies or any other means by which they could be used again by the Defendants without Plaintiff's authorization—as well as all related records and documents.

c.  For actual damages and all profits that Defendants derived from the unauthorized use of BR2049 or, where applicable and at Plaintiff's election, statutory damages.

d.  For an award of attorneys' fees.

e.  For an award of pre-judgment interest as allowed by law.

f.  For costs of suit.

g.  For such further relief as the Court deems just and proper.

3.  <u>On the Third Claim for Relief for Contributory Copyright Infringement:</u>

a.  For a preliminary and permanent injunction against Defendants and anyone working in concert with them from further copying, displaying, distributing, selling, or offering to sell BR2049 or protectible elements thereof in connection with Tesla or Musk, or making derivative works thereof for such purposes.

b.  As permitted under 17 U.S.C. § 503, for impoundment of all copies of the Presentation Slide 2 Image and underlying materials used in violation of Plaintiff's copyrights—including digital copies or any other means by which they could be used again by the Defendants without Plaintiff's authorization—as well as all related records and documents.

c.  For actual damages and all profits that Defendants derived from the unauthorized use of BR2049 or, where applicable and at Plaintiff's election, statutory damages.

d.  For an award of attorneys' fees.

e.  For an award of pre-judgment interest as allowed by law.

f.  For costs of suit.

g.  For such further relief as the Court deems just and proper.

4.  <u>On the Fourth Claim for Relief (False Endorsement in Violation of 15 U.S.C. § 1125(a)(1)(A))</u>

1.  For injunctive relief, including without limitation for an order mandating that Defendants cease any further promotional or advertising use of BR2049; that Defendants place a corrective notice or disclaimer on the event live feed and all copies thereof putting viewers on notice that the portions of the event referencing BR2049 false and misleading and that BR2049 and Alcon have no relationship or affiliation with Tesla, Musk or the cybercab product; and an order mandating that Defendants cease to distribute any further copies of the event livestream that contains the BR2049 references and Presentation Slide 2.

2.  For compensatory damages;

3.  Defendants' profits;

4.  Attorney fees;

5.  Costs of suit;

6.  Prejudgment Interest; and

7.  Such other and further relief as the Court may deem just and proper.

DATED: October 21, 2024          ANDERSON YEH PC
                                 Edward M. Anderson
                                 Regina Yeh

                                 _____
                                 Attorneys for Plaintiff
                                 ALCON ENTERTAINMENT, LLC

- 40 -
COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, on its claims against Defendants Tesla, Inc. ("Tesla"), Elon Musk ("Musk"), and Warner Bros. Discovery, Inc. ("WBDI"), Plaintiff Alcon Entertainment, LLC hereby demands a trial by jury of all matters triable to a jury.

DATED: October 21, 2024              ANDERSON YEH PC
                                     Edward M. Anderson
                                     Regina Yeh

                                     _____
                                     Attorneys for Plaintiff
                                     ALCON ENTERTAINMENT, LLC

DEMAND FOR JURY TRIAL