A. Louis Dorny (CA 212054)
ldorny@tesla.com
Terry W. Ahearn (CA 216543)
tahearn@tesla.com
Krista M. Carter (CA 225229)
kricarter@tesla.com
TESLA, INC.
3000 Hanover St.
Palo Alto, CA 94304
Tel: 510-298-8516

Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (213) 533-4240 / Fax: (858) 678-5099

*Additional counsel listed on signature page*

Attorneys for Defendants Tesla, Inc.,
Elon Musk

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| ALCON ENTERTAINMENT, LLC a Delaware Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> TESLA, INC., a Texas Corporation; ELON MUSK, an individual; WARNER BROS. DISCOVERY, INC., a Delaware Corporation, <br><br> Defendants. | Case No. 2:24-cv-09033-GW-RAO <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TESLA, INC. AND ELON MUSK'S MOTION TO DISMISS** <br><br> Hearing Date: March 6, 2025 <br> Hearing Time: 8:30 a.m. <br> Courtroom: 9D <br> Judge: Hon. George H. Wu |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     RELEVANT BACKGROUND .........................................................................2

    A.    Plaintiff's Unsupported Allegations..............................................2

    B.    The October 10, 2024 Event ..........................................................2

    C.    The Tesla-WBDI Contract Does Not Require Brand Affiliation ......................................................................................3

III.    LEGAL STANDARD .......................................................................................3

IV.     ARGUMENT......................................................................................................4

    A.    Plaintiff Fails to State a Claim for Direct Copyright Infringement ..................................................................................4

        1.    The Court Can Decide Substantial Similarity Now.....................5

        2.    There Is No Substantial Similarity .........................7

    B.    Plaintiff Fails to State a Claim for Vicarious and Contributory Copyright Infringement....................................13

    C.    Plaintiff Fails to State a Lanham Act Claim for False Endorsement ....................................................................17

        1.    Plaintiff's Claim is Not a Cognizable Lanham Act Claim Because It Is Based on Rights Within the Scope of Copyright ......................................................18

        2.    Plaintiff Fails to Plead Trademark Rights in "Blade Runner" or Any Images from BR2049 .......................22

V.      CONCLUSION ...............................................................................................24

CERTIFICATE OF COMPLIANCE...........................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .......................................3

*Bell v. Pac. Ridge Builders, Inc.*,
   No. 19-CV-01307-JST, 2019 WL 13472127 (N.D. Cal. June 4, 2019) ..........................................................................................15, 16

*Brown v. Netflix, Inc.*,
   462 F. Supp. 3d 453 (S.D.N.Y. 2020), *aff'd*, 855 Fed. Appx. 61 (2d Cir. 2021)..........................................................................................9

*Comedy III Prods., Inc. v. New Line Cinema*,
   200 F.3d 593 (9th Cir. 2000), *as amended on denial of reh'g and reh'g en banc* (Feb. 4, 2000) .................................................17, 18, 19

*Corbello v. Valli*,
   974 F.3d 965 (9th Cir. 2020) ...............................................................5

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003) ....................19, 20, 21, 22

*DuMond v. Reilly*,
   No. CV 19-8922-GW-AGRX, 2021 WL 733311 (C.D. Cal. Jan. 14, 2021) (Wu, J.) ........................................................................................6

*Erickson Productions, Inc. v. Kast*,
   921 F.3d 822 (9th Cir. 2019) .........................................14, 15, 16, 17

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ...............................................................4

*Google LLC v. Oracle Am., Inc.*,
   593 U.S. 1, 141 S.Ct. 1183, 209 L.Ed.2d 311 (2021) .........................................5

*Jangle Vision, LLC v. Alexander Wang Inc.*,
   No. CV 21-9964-GWEX, 2022 U.S. Dist. LEXIS 110600 (C.D. Cal. June 3, 2022) (Wu, J.), *aff'd*, No. 22-55642, 2023 U.S. App. LEXIS 28483 (9th Cir. Oct. 26, 2023)..............................................................5

*Johnson v. Maraj*,
  No. CV 23-5061 PA, 2023 WL 8883316 (C.D. Cal. Dec. 15, 2023)................13

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ...................................................................4

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014) ...................18

*Lions Gate Ent., Inc. v. TD Ameritrade Servs. Co., Inc.*,
  No. 2:15-05024-DDP-E, 2017 WL 4621541 (C.D. Cal. Oct. 16, 2017) ........................................................................20, 21, 23

*LIVN Worldwide Ltd. v. Vubiquity Inc.*,
  No. 2:21-CV-09589-AB-KS, 2022 WL 18278580 (C.D. Cal. July 22, 2022) .....................................................................20

*Long v. Dorset*,
  854 F. App'x 861 (9th Cir. 2021) ........................................................17

*Marder v. Lopez*,
  450 F.3d 445 (9th Cir. 2006) ...................................................................4

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ...............................................................13

*Perfect 10, Inc. v. Giganews, Inc.*,
  No. CV 11-7098-ABC-SHX, 2013 WL 3610706 (C.D. Cal. July 10, 2013), *aff'd*, 847 F.3d 657 (9th Cir. 2017) ...............................14, 15

*Pretty in Plastic, Inc. v. Bunn*,
  No. CV 18-6091-GW-SKX, 2019 WL 1771654 (C.D. Cal. Feb. 8, 2019) (Wu, J.), *aff'd*, 793 F. App'x 593 (9th Cir. 2020).......................6

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018) ................................................*passim*

*Rice v. Fox Broadcasting Co.*,
  148 F. Supp. 2d 1029 (C.D. Cal. 2001)..............................................18

*Rogers v. Koons*,
  960 F.2d 301 (2d Cir. 1992) .....................................................................9

*Silas v. Home Box Off., Inc.,*
    201 F. Supp. 3d 1158 (C.D. Cal. 2016) (Wu, J.), *aff'd*, 713 F. App'x
    626 (9th Cir. 2018) ........................................................................6

*Slep-Tone Ent. Corp. v. Wired for Sound Karaoke & DJ Servs., LLC,*
    845 F.3d 1246 (9th Cir. 2017) .......................................................20

*Sybersound Records, Inc. v. UAV Corp.,*
    517 F.3d 1137 (9th Cir. 2008) ................................................21, 22

*United States v. Ritchie,*
    342 F.3d 903 (9th Cir. 2003) ...........................................................4

*Urban Dollz LLC v. Lashify, Inc.,*
    No. CV 23-1427-GW-AFMX, 2023 WL 8292459 (C.D. Cal. Oct.
    17, 2023) (Wu, J.) ..........................................................................22

*Waits v. Frito-Lay, Inc.,*
    978 F.2d 1093 (9th Cir. 1992) ..................................................18, 22

*Zella v. E.W. Scripps Co.,*
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) ...........................................4

**Statutes**

15 U.S.C. § 1125(a) ..............................................................................19

15 U.S.C. § 1127......................................................................................23

17 U.S.C. § 102(b) ..................................................................................5

17 U.S.C. § 106 ......................................................................................19

1  I.    **INTRODUCTION**

2      Plaintiff alleges that Tesla, Inc. and Elon Musk unlawfully used an image

3  resembling a scene from the film *Blade Runner 2049* at an event promoting Tesla's

4  forthcoming "Cybercab." The allegations are without merit—both legally and

5  factually—and should be dismissed with prejudice.

6      Setting aside the personal attacks on Musk and the headline-grabbing story of

7  a supposed AI-assisted "massive economic theft," the purported copyright

8  infringement relies on the unsupported assumption that Tesla purposefully copied

9  Plaintiff's film. In truth, Tesla lawfully licensed a separate image and made

10  permissible modifications to it. But the Court need not resolve these factual disputes

11  now because a simple side-by-side comparison of the images in question

12  demonstrates that they are not substantially similar as a matter of law.

13      Plaintiff claims exclusive rights in a familiar post-apocalyptic scene, but

14  copyright law protects only creative expression, not common settings, concepts, or

15  stock images. Widely used themes and motifs cannot form the basis of a viable

16  copyright infringement claim because unprotectable elements of the image must be

17  disregarded by the Court during the comparison. When that is done here, the images

18  are not substantially similar. Because Plaintiff's claim of direct copyright

19  infringement fails as a matter of law, the contributory and vicarious claims fail too.

20      Plaintiff's claim of vicarious copyright infringement fails for an additional

21  reason. It lacks any allegation of direct financial benefit to Tesla or Musk and thus

22  fails to establish a causal link between the alleged infringement and any alleged

23  financial gain, a necessary element for vicarious liability. Without that connection,

24  the claim is legally deficient and must be dismissed.

25      Plaintiff's false endorsement claim under the Lanham Act fares no better. It

26  improperly seeks to use trademark law to address copyright issues, a tactic that many

27  courts, including the Supreme Court, have consistently rejected.

28

None of these deficiencies can be cured by amendment. Therefore, Defendants Tesla and Musk respectfully request that the Court dismiss Plaintiff's Complaint in its entirety, with prejudice.[1]

## II.    RELEVANT BACKGROUND

### A.    Plaintiff's Unsupported Allegations

Plaintiff asserts copyrights in eight images taken from a scene in Blade Runner 2049 ("BR2049") (Comp., Dkt. 1, Exs. A & B (the "Exhibit A Image" and "Exhibit B Images," collectively, "Plaintiff's Images")). The Complaint also alleges trademark rights in those same images. Notably, Plaintiff does not own the "Blade Runner" name or mark, yet it takes issue with Musk's mention of "*Blade Runner*" during the presentation at issue. Rather, Plaintiff speculates that Tesla used an image from BR2049 in conjunction with an AI tool to create an allegedly similar image (Comp., Ex. C (the "Accused Image")). Comp. ¶¶ 3, 55.

The uncontroverted facts, however, demonstrate that these allegations are false because Defendants never used a BR2049 image to artificially generate a new image. Rather, Tesla licensed a wholly different image from a stock photo agency and prompted an AI-driven image editor to add "Elon Musk in trench coat looking into the city." The actual facts of this case underscore what Plaintiff's Complaint lays bare—a lack of substantial similarity.

### B.    The October 10, 2024 Event

On October 10, Tesla revealed its revolutionary and futuristic "Cybercab" at an event titled "We, Robot" that took place at a Warner Bros. Discovery, Inc. ("WBDI") studio. The event's theme was autonomous transport and its great benefits for society.

---

[1] If the Court dismisses the direct copyright infringement claim against Tesla and Musk for failure to plead substantial similarity, the Court should also dismiss that claim against WBDI for the same reason. Tesla and Musk also understand that WBDI is simultaneously moving to dismiss the vicarious copyright infringement and Lanham Act claims for failure to state a claim.

To juxtapose the promising future autonomous transport provides, Musk described a vision of "sci-fi movies" where "the future is dark and dismal" while the monitor displayed an image of a "bleak apocalypse" with the words "NOT THIS" in large, capital letters. Musk noted that while he was a fan of Blade Runner, he did not want to live in "that" future. Musk continued to promote the benefits of autonomous cars. The "bleak apocalypse" image lasted only eleven seconds, which comprises about 0.23% of the eighty-minute presentation. A recording of the full presentation is being lodged concurrently with this brief as Exhibit 2.[2]

### C.    The Tesla-WBDI Contract Does Not Require Brand Affiliation

Plaintiff also alleges that Tesla and WBDI are parties to a contract under which WBDI leased studio space to Tesla for the event that "allowed or possibly even required Tesla expressly to affiliate the "Cybercab" with one or more motion pictures from WBDI's motion picture library, or the motion picture library of WBDI's subsidiary." Comp. ¶¶ 38-39. Nothing could be further from the truth. Plaintiff repeatedly relies on the Tesla-WBDI contract, including to allege how Tesla and Musk came to infringe Plaintiff's Images and falsely affiliated the BR2049 film with Tesla's "Cybercabs"—the crux of all its causes of action. *Id.* ¶¶ 43, 94. In reality, the contract (Jennings Decl., Ex. 1) is a straightforward leasing contract. It makes no reference whatsoever to use of a motion picture from WBDI's library or brand affiliation.

## III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (cleaned up). Though the Court must accept all factual allegations in a complaint as true, a court need not accept "naked assertions devoid of further factual enhancement." *Id.*

---

[2] Cited exhibits are attached to the Marchese Declaration unless otherwise noted.

(cleaned up). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). This is particularly apt here, where the Complaint contains conspiracy theories and conjecture under the guise of allegations made on "information and belief."

On a motion to dismiss, a court may properly consider the complaint and material submitted as part of the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). A court may also consider "evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion" and "assume that its contents are true for the purposes of a motion to dismiss under Rule 12(b)(6)." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (cleaned up); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Further, the court may consider "matters subject to judicial notice pursuant to Federal Rule of Evidence 201," including "generic elements of creative works," when deciding a motion to dismiss a copyright claim. *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128-29 (C.D. Cal. 2007) (taking judicial notice of generic television show elements).

## IV. ARGUMENT

### A. Plaintiff Fails to State a Claim for Direct Copyright Infringement

Plaintiff's allegations of substantial similarity are contradicted by a simple comparison of the images. To maintain its claim for copyright infringement, Plaintiff must plausibly allege that (1) it owns a valid copyright, and (2) Defendant copied protected elements of the expression of Plaintiff's work. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116-17 (9th Cir. 2018), *overruled on other grounds by Skidmore v. Led Zeppelin,* 952 F.3d 1051 (9th Cir. 2020). The second element has two distinct subparts: factual copying and unlawful appropriation. *Id.* at 1117. Not all copying is

unlawful. *Id.* While Defendants did not copy at all, for the purposes of this motion, Plaintiff must plausibly allege that Defendants copied its ***protectable expression.*** *Id.*[3] This Alcon has not done. And this flaw is fatal.

Copyright law does not protect ideas or concepts; rather, it protects only an author's original expression. *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 18, 141 S.Ct. 1183, 209 L.Ed.2d 311 (2021). Defendants may freely use "ideas" or "concepts" found in Plaintiff's Images and indeed in countless others. *Rentmeester*, 883 F.3d at 1117; 17 U.S.C. § 102(b) (copyright protection does not "extend to any idea…[or] concept…regardless of the form in which it is described, explained, illustrated, or embodied in [the] work"). Additionally, Plaintiff must plausibly allege that Defendants unlawfully copied "enough of [Plaintiff's] expression…to render the two works 'substantially similar.'" *Rentmeester*, 883 F.3d at 1117. Importantly, similarity between unprotectible elements—such as "familiar stock scenes and themes" or "common elements"—will not satisfy the substantial similarity requirement. *Corbello v. Valli*, 974 F.3d 965, 975 (9th Cir. 2020); *Skidmore*, 952 F.3d at 1069.

### 1.    The Court Can Decide Substantial Similarity Now

The Complaint provides this Court with everything it needs to determine that the Accused Image is ***not*** substantially similar to Plaintiff's Images. Plaintiff's Images and the Accused Image are Exhibits A-C to the Complaint. Courts in this District regularly dismiss copyright infringement claims at the pleadings stage. *E.g.*, Ex. 1, Tentative Ruling on Defendants' Motion to Dismiss, *adopted in final decision, Jangle Vision, LLC v. Alexander Wang Inc.*, No. CV 21-9964-GWEX, 2022 U.S. Dist. LEXIS 110600 (C.D. Cal. June 3, 2022) (Wu, J.) ("[T]here is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss."), *aff'd*, No. 22-55642, 2023 U.S. App. LEXIS

---

[3] All emphases added unless otherwise noted.

28483 (9th Cir. Oct. 26, 2023); *DuMond v. Reilly*, No. CV 19-8922-GW-AGRX, 2021 WL 733311, at *25 (C.D. Cal. Jan. 14, 2021) (Wu, J.) (dismissing claim because plaintiff could not plead substantial similarity of protectable elements); *Silas v. Home Box Off., Inc.*, 201 F. Supp. 3d 1158, 1173 (C.D. Cal. 2016) (Wu, J.) (same), *aff'd*, 713 F. App'x 626 (9th Cir. 2018); *Pretty in Plastic, Inc. v. Bunn,* No. CV 18-6091-GW-SKX, 2019 WL 1771654, at *5 (C.D. Cal. Feb. 8, 2019) (Wu, J.) (same), *aff'd*, 793 F. App'x 593 (9th Cir. 2020).

In *Rentmeester*, the district court dismissed a copyright infringement claim with prejudice for lack of substantial similarity. 883 F.3d at 1116. Because the plaintiff attached his asserted image and defendant's accused image to the complaint, they were "capable of examination and comparison." *Id.* at 1123.

The Ninth Circuit affirmed the dismissal because a simple comparison of the two images revealed no substantial similarity of protectable elements. *Id.* at 1124; Fig. 1. While Nike's image was "obviously inspired by Rentmeester's," that was not enough to avoid dismissal. *Rentmeester*, 883 F.3d at 1116. The court explained that the images share some similarities—namely, Michael Jordan "leaping toward a basketball hoop with a basketball held in his left hand above his head" in a pose "inspired by ballet's *grand jeté*." *Id.* at 1116-17. But these are just general ideas and concepts. *Id.* at 1119. The images differed in legally significant ways, like the background, angle, lighting/shadow, perspective, and the position and arrangement of the elements within the photos. *Id.* at 1122-24.

| Dismissed on the Pleadings for No Substantial Similarity: Figure 1[4] | |
|---|---|
| *Rentmeester's (Copyrighted) Image* | *Nike's (Allegedly Infringing) Image* |
|  |  |

Just as in *Rentmeester*, the Court should also find here that there is no substantial similarity. No additional facts are needed, and nothing disclosed during discovery will change the analysis. *Id.* at 1123.

### 2.    There Is No Substantial Similarity

To prove substantial similarity, Plaintiff must satisfy both the "intrinsic test" and the "extrinsic test." *Id.* at 1118. Only the extrinsic test may be determined as a matter of law, but either test can be fatal to a plaintiff's claim. *Id.* The extrinsic test involves an objective comparison of the protected elements of the works and is applied in three steps: (1) Plaintiff must identify the protectable elements that are similar to both its Images and the Accused Image; (2) the Court disregards unprotectable elements, like "ideas, concepts, and common elements"; and (3) the Court determines whether and to what extent the remainder warrants copyright protection. Ex. 1 at 8 (quoting *Corbello*, 974 F.3d at 974). As discussed below, Plaintiff's claim fails at the very first step. An objective visual comparison between Plaintiff's Images and the Accused Image reveals no substantial similarity in any protectable elements.

---

[4] *Rentmeester*, 883 F.3d at 1126.

MPA ISO TESLA AND MUSK'S MOTION TO DISMISS
Case No. 2:24-cv-09033-GW-RAO

a)    **Plaintiff Fails to Identify Any Protectable Elements Similar to Its Images and the Accused Image**

Under the extrinsic test, two images are substantially similar if, after the unprotected elements have been filtered out, the remaining protected elements represent an original "selection and arrangement" of creative choices. *Rentmeester,* 883 F.3d at 1119-20. To identify protectable elements, an image "can be broken down into objective elements that reflect various creative choices the photographer made…choices related to subject matter, pose, lighting, camera angle, depth of field, and the like." *Id.* at 1119. But no single element is copyrightable standing alone. *Id.* Even "an unusual or distinctive" or "fanciful" element that is wholly the author's "own intellectual invention" does not warrant copyright protection. *Id.* (cleaned up) (citing *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60, 4 S.Ct. 279, 28 L.Ed. 349 (1884)). "What *is* protected by copyright is the photographer's selection and arrangement of the photo's otherwise unprotected elements." *Id.* (emphasis in original).

Here, Plaintiff bases its claim merely on unprotectable stock elements. For example, Plaintiff describes "abandoned ruins of a city, all bathed in misty orange light" and "an image of a man in near-silhouette, with close-cropped hair and wearing a duster." Comp. ¶¶ 54, 60. Plaintiff describes the Exhibit B Images as portraying "a silhouetted trench coat-wearing man moving through a misty, orange-colored ruinous urban desert landscape." *Id.* ¶ 34. But these are merely descriptions of common scenes and stock features of a dystopian/post-apocalyptic cityscape. Ex. 1 at 8 ("familiar stock scenes and themes are not protected" (cleaned up)). Plaintiff asserts the Accused Image "looks like a motion picture still photo" that "was clearly intended to read visually either as an actual still image from BR2049[]…or as a minimally stylized copy of one," but fails to identify any ***protectable*** elements. Comp. ¶¶ 54-55.

Rather than identify any allegedly protectable elements, Plaintiff repeatedly alleges its Images are the "heart of the work"—but that obtuse characterization does not help Plaintiff's infringement claim. Ex. 1 at 11 (finding claim that the alleged infringer copied the "unique, original expressive essence" of its work "still left [the Court] largely guessing" what plaintiff believed was protectable expression); *Brown v. Netflix, Inc.*, 462 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) (dismissing on the pleadings and explaining that "[e]ven assuming [defendant took] the "heart of the [work], this does not end the analysis"), *aff'd*, 855 Fed. Appx. 61 (2d Cir. 2021). While an alleged infringer's use of the "heart" of a work may be relevant to a fair use analysis, a claim that an alleged infringer took the "heart" of a work will not satisfy a prima facie case of substantial similarity. *E.g.*, *Rogers v. Koons*, 960 F.2d 301, 307, 311 (2d Cir. 1992) (considering whether an alleged infringer took protected elements of a photograph ***before*** reaching fair use and whether it took the "essence" of the work).

Plaintiff still must allege protectable elements that are substantially similar between Plaintiff's Images and the Accused Image. Even construing the Complaint in the light most favorable to Plaintiff, Plaintiff fails to do so. Like in *Rentmeester*, where Nike's photograph was "obviously inspired by" the plaintiff's, Tesla and Musk can incur no copyright liability for merely evoking unprotectable elements such as city ruins, an orange sky, and a post-apocalyptic vibe, or "borrow[ing] only the general idea or concept embodied" in Plaintiff's work, which is all that occurred here. 883 F.3d at 1116, 1121.

### b)     The Images Differ Significantly

Plaintiff has not and cannot identify protectable elements that are similar between Plaintiff's Images and the Accused Image because they differ in the most basic sense: the Images contain different subject matter.

| Figure 2 | |
|---|---|
| *Plaintiff's Exhibit A Image (Dkt. 1-1)* | *Defendants' Accused Image (Exhibit C)* |
|  |  |

Plaintiff's Exhibit A portrays a walking man, a futuristic vehicle, two crumbling bridges, a round bunker, and a skyline with futuristic buildings. Fig. 2. The man is wearing a knee-length coat. Alcon identifies the vehicle as a "spinner" and discusses its fame and recognizability. Comp. ¶¶ 35-36.

In contrast, the Accused Image portrays a man standing and looking down on a city skyline with regular shaped buildings. The image contains no bridge at all (much less two crumbling bridges), no bunker, and no famous "spinner" (or any vehicle). The skyline is quite different. The man is wearing a long coat that reaches down to his ankles. The Accused Image also contains text reading "NOT THIS" in the top-left corner and "TESLA LIVE" in the bottom-right corner. Exhibit A contains no text.

Further, Plaintiff's Exhibit A Image captures its subject matter from a different perspective than the Accused Image. In Exhibit A, the man is in the center. He is small, relative to the vehicle, creating the impression that he is farther away from the camera than the vehicle. The man is also smaller than the skyline, creating the impression that he is walking towards city buildings at the same elevation. The man is facing 180 degrees away from the camera.

In contrast, the Accused Image portrays a man on the right side of the frame. He is the largest subject in the Image, creating the impression that he is closest to the

camera. He is taller or close in height to the city buildings, creating the impression that he is at a higher elevation, such as on a hill just outside the city. He is turned slightly away from the camera, so his profile is partially visible.

Plaintiff's Exhibit B Images differ even more drastically from the Accused Image. The first image (Fig. 3) portrays only a man in the center of a flat foreground walking away from the camera and towards a plain background—nothing like the rocky foreground and detailed city skyline background in the Accused Image.



Figure 3

*Plaintiff's Exhibit B Image 1 (Dkt. 1-2 at 2)* | *Defendants' Accused Image*

The precise subject matter of the second image (Fig. 4) is unclear, but it contains no man and no skyline.



Figure 4

*Plaintiff's Exhibit B Image 2 (Dkt. 1-2 at 3)* | *Defendants' Accused Image*

The third and fourth images (Figs. 5 and 6) feature sculptures of women from various angles and a man walking amongst them, subject matter that, again, is not in the Accused Image.

| Figure 5 | |
| --- | --- |
| *Plaintiff's Exhibit B Image 3 (Dkt. 1-2 at 4)* | *Defendants' Accused Image* |

 

| Figure 6 | |
| --- | --- |
| *Plaintiff's Exhibit B Image 4 (Dkt. 1-2 at 5)* | *Defendants' Accused Image* |

 

So too is the subject matter of the fifth and sixth images (Figs. 7 and 8). They are entirely different from the Accused Image.

| Figure 7 | |
| --- | --- |
| *Plaintiff's Exhibit B Image 5 (Dkt. 1-2 at 6)* | *Defendants' Accused Image* |



| Figure 8 | |
|---|---|
| *Plaintiff's Exhibit B Image 6 (Dkt. 1-2 at 7)* | *Defendants' Accused Image* |



A substantial similarity analysis does not stop with subject matter (*Rentmeester*, 883 F.3d at 1121-23)—but here, there is no need to go further. A simple comparison of Plaintiff's Images and the Accused Image reveals no substantial similarity. Plaintiff apparently seeks a copyright over the mere idea of "an orange-light-bathed ruined and abandoned cityscape" (Comp. ¶ 60)—but "[p]ermitting [it] to claim such a right would withdraw those ideas or concepts from the stock of materials available to other artists…thereby thwarting copyright's fundamental objective of fostering creativity." *Rentmeester*, 883 F.3d at 1123 (cleaned up). This Court should dismiss because Plaintiff cannot maintain a claim for direct copyright infringement.

**B.    Plaintiff Fails to State a Claim for Vicarious and Contributory Copyright Infringement**

Secondary liability cannot exist without direct copyright infringement. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007). Because Plaintiff fails to state a claim for direct infringement the Court should also dismiss Plaintiff's second and third claims for vicarious copyright infringement and contributory copyright infringement. *E.g.*, *Johnson v. Maraj*, No. CV 23-5061 PA (AFMX), 2023 WL 8883316, at *3 (C.D. Cal. Dec. 15, 2023) (dismissing claims for contributory and vicarious copyright infringement because plaintiff failed to plausibly allege substantial similarity for direct infringement claim).

The vicarious copyright infringement claim should be dismissed for the additional reason that Plaintiff fails to plausibly plead a key element: a ***direct*** financial benefit from the alleged infringement. To state this claim, Plaintiff must plead that Tesla and Musk each had (1) the right and ability to supervise the infringing acts and (2) a direct financial interest in the infringing activity. *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-7098-ABC-SHX, 2013 WL 3610706, at *5 (C.D. Cal. July 10, 2013), *aff'd*, 847 F.3d 657 (9th Cir. 2017). With respect to the second element, there must be a direct ***causal*** relationship between the alleged infringement and financial benefit. *Erickson Productions, Inc. v. Kast*, 921 F.3d 822, 829 (9th Cir. 2019) ("The essential aspect of the 'direct financial benefit' inquiry is whether there is a ***causal*** relationship between the infringing activity and any financial benefit a defendant reaps."). This is a strict requirement, and Plaintiff fails to meet it.

To illustrate, Plaintiff alleges that Tesla and Musk financially benefited from the alleged infringement because it allowed them to "misappropriat[e] BR2049's goodwill[5] to advance both (a) consumer appeal of the joint Tesla-WBDI cybercab presentation itself…, and (b) consumer and investor interest in Tesla and the cybercab." Comp. ¶ 91. Plaintiff also alleges that Tesla avoided a highly speculative expenditure "in the mid-six-figures…and possibly into the eight figures" for a BR2049 brand affiliation. *Id.* ¶ 92. As to Musk, Plaintiff alleges on information and belief that Musk ***believed*** that the purported affiliation of BR2049 with the Tesla "Cybercab" would increase the likelihood of "a positive response with actual and potential investors in Tesla" and consumer interest in "Cybercabs." *Id.* ¶ 93. According to Plaintiff, Musk believed he would benefit financially from the infringement because such a positive response to the event would increase Tesla's

---

[5] Plaintiff's reliance on allegations of misappropriation of goodwill to state its vicarious copyright infringement claim highlights the duplicative nature of its copyright and Lanham Act claims. As discussed *infra* § IV(C), Plaintiff also fails to state a cognizable claim under the Lanham Act.

stock price, and Musk is the largest Tesla shareholder and has compensation tied to Tesla's stock price. *Id.* Under Ninth Circuit law, none of these allegations, even if true, would constitute a direct financial interest.

In *Erickson,* the Ninth Circuit explained why similar allegations of financial interest fail as a matter of law. The court vacated a jury verdict of vicarious copyright liability where the plaintiff claimed, *inter alia*, that "(1) the [allegedly infringing] photographs drew customers to purchase [defendant's] services; [and] (2) [defendant] avoided paying licensing fees to Erickson." 921 F.3d at 829. The court explained that infringement that acts as a ***draw*** to the defendant's website may qualify as a direct financial benefit, but infringing material that is "just an added benefit" does not. *Id.* (citing *Ellison v. Robertson*, 357 F.3d 1072, 1078-79 (9th Cir. 2004)). Because the plaintiff did not contend that anyone visited the defendant's website to view the accused photographs or purchase defendant's services because they saw the photographs, they were, at best, an "added benefit" insufficient to confer a direct financial benefit on the defendant as a matter of law. *Id.* at 830. Here, Plaintiff's allegations that the alleged infringement advanced consumer appeal of the "Cybercab" presentation falls short of an allegation that it was a "draw" to the presentation. The vague allegation that the alleged infringement increased consumer and investor interest in Tesla and the "Cybercab" is also like the claim of a mere "added benefit" that *Erickson* held fails to qualify as a direct financial benefit.

In fact, even a general allegation of a "draw" has been held insufficient to state a vicarious copyright infringement claim. In *Bell v. Pac. Ridge Builders, Inc.*, the court explained a plaintiff must plausibly allege more than that defendant's allegedly infringing activities "generally acted as a draw for [defendant's] business" since "vicarious infringement requires [plaintiff] to demonstrate a causal link between the *infringing activities* and a financial benefit to [plaintiff]." No. 19-CV-01307-JST, 2019 WL 13472127, at *6 (N.D. Cal. June 4, 2019) (citing *Perfect 10, Inc. v.*

1  *Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017)) (emphasis in original) (cleaned

2  up). In dismissing the claim, the court explained plaintiff's allegations "must support

3  a plausible inference that customers were drawn to [plaintiff's] services because of

4  the infringing [post], meaning that the infringing material was a reason that they

5  purchased those services." *Id.* (cleaned up). And because Tesla's "Cybercab" is not

6  for sale, Plaintiff does not and cannot plead that use of the Accused Image has led to

7  any such sales.

8      The Ninth Circuit also held in *Erickson* that the avoidance of licensing fees

9  does not constitute a direct financial interest as a matter of law. 921 F.3d at 830. The

10  court first explained that a defendant's avoidance of a licensing fee cannot be based

11  on that defendant's own unlicensed use of the copyrighted work, since that concerns

12  direct, not vicarious liability. *Id.* The court then held that "the direct infringer's

13  avoidance of fees alone cannot satisfy the requirement of a direct financial benefit to

14  the vicarious infringer" either. *Id.* "Otherwise, the requirement of a direct financial

15  benefit would be rendered meaningless, since—at least where, as here, licenses are

16  for sale—a direct infringer necessarily saves money by failing to obtain a license." *Id.*

17  The same is true here, as Plaintiff's allegations of the lost licensing fee are based on

18  "past actual brand affiliation contracts for automotive partners on BR2049." Comp.

19  ¶ 92.[6] Thus, the avoidance of a brand affiliation contract fee cannot form the basis of

20  the direct financial benefit required to assert this claim.

21      Plaintiff's allegations about Musk's financial interest in the alleged

22  infringement fare even worse. On purported "information and belief," Plaintiff alleges

23  only that Musk ***believed*** that an affiliation with BR2049 would increase the ***likelihood***

24  of a positive response (which, as discussed above, is merely an "added benefit") and

25  a Tesla stock price increase. Even taken as true, Musk's belief is irrelevant and this

26  

27  ─────────────────

28  [6] The alleged cost savings is also speculative. Comp. ¶ 92 (alleging Tesla likely would
have had to pay for a brand affiliation, "*if Alcon had even been willing to do it at all*").

16

MPA ISO TESLA AND MUSK'S MOTION TO DISMISS
Case No. 2:24-cv-09033-GW-RAO

allegation is far too indirect to satisfy a vicarious infringement claim. It does not allege a financial benefit with a ***causal*** link to the alleged infringement as required. *Erickson*, 921 F.3d at 831 (a benefit is not "direct" if it would reach the defendant "only incidentally").

Paragraph 85 of the Complaint sums up the deficiencies in Plaintiff's attempt to plead a direct financial benefit: it claims "an incentive to permit infringement" only. But neither an incentive nor a vague assertion of positive reactions to a presentation suffice to plead that Tesla and Musk actually benefited financially from the alleged infringement. *See Long v. Dorset*, 854 F. App'x 861, 864 (9th Cir. 2021) (affirming dismissal of vicarious copyright infringement claim because allegations that plaintiff paid Facebook to post advertisements for his page "do not suffice as allegations that Facebook ***made money*** from [direct infringer's] infringing posts on that page specifically").

**C.    Plaintiff Fails to State a Lanham Act Claim for False Endorsement**

The false endorsement claim is implausible for a variety of reasons including that Alcon does not own rights protected by the Lanham Act. It does not own the "Blade Runner" name. Thus, a reference to "Blade Runner" cannot possibly refer to Plaintiff. The other basis of this claim—Tesla's and Musk's alleged copying of Plaintiff's Images—is not prohibited by the Lanham Act. The Images are not trademarks; nor are they a "***human*** persona or identity." 4 McCarthy on Trademarks and Unfair Competition § 28:15 (5th ed.). The Lanham Act simply does not apply.

The claim also fails because it is based on the same allegations as Plaintiff's copyright claims, i.e., the alleged use of Plaintiff's Images. *E.g.*, Comp. ¶¶ 24, 55, 91, 121-134. As a result, it is an improper attempt to circumvent copyright law. This is not a permissible use of the Lanham Act, and no amount of amendment can cure this claim. *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 595-96 (9th Cir. 2000), *as amended on denial of reh'g and reh'g en banc* (Feb. 4, 2000) (stating "the

Lanham Act cannot be used to circumvent copyright law" and affirming dismissal of Section 43(a) Lanham Act claim with prejudice); *Rice v. Fox Broadcasting Co.*, 148 F. Supp. 2d 1029, 1066 (C.D. Cal. 2001) (noting that plaintiff's arguments that a film character is a protectable mark for a false endorsement claim "largely repeat and/or blend into those he made in favor of finding *copyright* protection for this character" and holding that plaintiff cannot use the Lanham Act to circumvent the Copyright Act by attempting to claim trademark protection for that character).

### 1.    Plaintiff's Claim is Not a Cognizable Lanham Act Claim Because It Is Based on Rights Within the Scope of Copyright

Section 43(a) "creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014). Here, Alcon expressly asserts liability under the false association prong of § 1125(a)(1)(A) only, under the theory of false endorsement. The Ninth Circuit has recognized a false endorsement claim under § 1125(a)(1)(A) "for the unauthorized imitation of [an individual's] distinctive attributes, where those attributes amount to an unregistered commercial 'trademark.'" *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1106-07 (9th Cir. 1992), *abrogated on other grounds*, *Lexmark*, 572 U.S. at 1391; 4 McCarthy on Trademarks and Unfair Competition § 28:15 (5th ed.) ("Courts hold that in the context of § 43(a)(1)(A)…, a human persona or identity is a kind of 'trademark' which is infringed by a false endorsement.")

But Plaintiff does not claim the use of a human celebrity's likeness or persona. Rather, it points to Musk's reference to "Blade Runner"—a name Plaintiff does not own—and Musk's alleged use of Plaintiff's asserted copyright.

Courts have repeatedly stopped plaintiffs at the pleadings stage from proceeding with copyright-type Lanham Act claims, which is exactly what Plaintiff's false endorsement claim is. For example, in a case involving the alleged infringement

of a film clip, just like here, the Ninth Circuit advised that it "will not entertain th[e] expedition of trademark protection squarely into the dominion of copyright law, to allow for Lanham Act coverage of a piece of footage taken directly from a film…." *Comedy III*, 200 F.3d at 595. In *Comedy III*, the Ninth Circuit explained that to prevail on its Lanham Act claim, the plaintiff "must show that the clip at issue is actually a cognizable trademark." *Id.* at 594-95. The Ninth Circuit rejected the plaintiff's "fanciful argument" that the clip (footage from a "The Three Stooges" film) was a collection of trademarks because it "was clearly covered by the Copyright Act, 17 U.S.C. § 106, and the Lanham Act cannot be used to circumvent copyright law." *Id.* at 595. Notably, the court stated that "[i]ssues of secondary meaning are not the point here, but rather the question is whether Comedy III has articulated a trademark interest in the clip which would prevent [defendant] from using it…without Comedy III's permission." *Id.* Thus, without even addressing Plaintiff's allegations of secondary meaning (which we address below for completeness), this Court can swiftly dismiss Plaintiff's fourth claim for relief as an improper attempt to circumvent copyright law.

The Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.* also helps illustrate the fatal shortcomings of Plaintiff's claim. 539 U.S. 23, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003). In *Dastar*, the plaintiffs raised copyright and trademark claims against Dastar for copying, modifying, and repackaging a television series into a videotape set under the theory that Dastar falsely designated the origin of the products in violation of 15 U.S.C. § 1125(a). *Id.* at 26. The Supreme Court distinguished the Lanham Act from copyright law and opined that rights within the scope of copyright do not also give rise to Lanham Act claims. *Id.* at 34. The Court explained that while a purchaser of a communicative product, such as a film, may care who created the content therein, the Lanham Act should not be stretched to cover such matters. *Id.* at 32-33. Doing so would cause the Lanham Act to conflict with copyright law, which addresses that subject directly. *Id.* at 34, 36 (refusing to read "§ 43(a) of

the Lanham Act as creating a cause of action for, in effect, plagiarism" and cautioning against "misuse or over-extension" of the Lanham Act, "into areas traditionally occupied by…copyright"); *Slep-Tone Ent. Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1250 (9th Cir. 2017) ("When the claim is more accurately conceived of as attacking unauthorized copying, *Dastar* requires us to avoid recognizing a species of mutant copyright law by making such claims cognizable under the Lanham Act" (cleaned up)).

Similarly, in *Carranza v. Lideres Entertainment Group*, this Court, citing *Dastar*, dismissed a Section 43 claim for unfair competition as preempted by the Copyright Act. No. CV 09-3604-GW-CWX, 2009 WL 10675974, at *3 (C.D. Cal. June 29, 2009) (Wu, J.). Just as here, the plaintiff claimed that the defendant exercised the plaintiff's "rights protected by the Copyright Act." *Id.* (explaining that plaintiff essentially claimed that defendant "took his [music and video clips] and reproduced, distributed, and sold it"); *LIVN Worldwide Ltd. v. Vubiquity Inc.*, No. 2:21-CV-09589-AB-KS, 2022 WL 18278580 at *2 (C.D. Cal. July 22, 2022) (dismissing § 43(a) claims under *Dastar* because "rights within the scope of copyright do not also give rise to Lanham Act claims").

Also instructive is *Lions Gate Ent. Inc. v. TD Ameritrade Servs. Co., Inc.*, in which the plaintiff/copyright owner of the movie *Dirty Dancing* asserted that TD used elements from the film in an advertising campaign for its financial services and that such use would cause confusion about plaintiff's endorsement of or association with those services, or an association between TD's advertisements and *Dirty Dancing*. 170 F. Supp. 3d 1249, 1267 (C.D. Cal. 2016). The court found that TD's use of the phrase "Nobody puts your old 401k in a corner" (based on the *Dirty Dancing* line "Nobody puts Baby in a corner") was a play on the concluding dance scene of the film with images of a man lifting a piggy bank over his head, and reference to a song played in the final scene of the film were potential violations of plaintiff's ***copyright***

in *Dirty Dancing*, but failed as a Section 43(a) claim. *Id.* at 1267-68 (citing *Dastar*, 539 U.S. at 37). Because plaintiff's copyright and trademark claims were based on the "exact claim and theory" (except for an allegation of consumer confusion) the court dismissed the trademark claims with prejudice. *Id.* at 1268. Further, when denying plaintiff's motion to vacate the dismissal order, the court explained that, because TD's use of the alleged phrase with other elements from the film "served to evoke the communications, concepts, or ideas embodied in" the film, plaintiff's trademark claims were barred under *Dastar*, as the Lanham Act does not protect rights in a communicative product that are distinct from those already protected by the Copyright Act. *Lions Gate Ent., Inc. v. TD Ameritrade Servs. Co., Inc.*, No. 2:15-05024-DDP-E, 2017 WL 4621541, at *4 (C.D. Cal. Oct. 16, 2017).

The facts alleged by Lions Gate almost mirror those alleged by Alcon. Here, Plaintiff alleges that Tesla and Musk used the Accused Image in the context of Musk stating "You know, I love 'Blade Runner,' but I don't know if we want that future," and that this was "likely to cause confusion…as to the affiliation, connection or association of Tesla and Musk with Alcon or as to the sponsorship or approval of Tesla's or Musk's goods, services, or commercial activities by Alcon." Comp. ¶¶ 57-58, 125. Plaintiff's allegations boil down to the assertion that consumers will be confused that Alcon sponsored or approved, or is affiliated with, Defendants' "goods and services." *Id.* ¶¶ 125, 127-28. But all Defendants did was "evoke the 'communications, concepts, or ideas' embodied in the movie," just like in *Lions Gate*.

Lastly, in light of Plaintiff's allegations of "false representations," including that Tesla's and Musk's actions "have the effect of falsely representing that Tesla's and Musk's goods and services are licensed…or otherwise authorized by Alcon" (Comp. ¶¶ 124-25, 127), any attempt to amend Plaintiff's Lanham Act claim to a false advertising claim under Section 43(a)(1)(B) would be futile because *Dastar* would still preclude such a claim. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137,

1143-44 (9th Cir. 2008) (citing *Dastar* and holding that misrepresenting compliance with licensing policies is not actionable under the Lanham Act "to avoid overlap between the Lanham and Copyright Acts"); *Urban Dollz LLC v. Lashify, Inc.*, No. CV 23-1427-GW-AFMX, 2023 WL 8292459, at *9 (C.D. Cal. Oct. 17, 2023) (Wu, J.) (recognizing that the Ninth Circuit "extended" *Dastar*'s rationale to a Section 43(a)(1)(B) claim and granting motion to dismiss).

### 2.    Plaintiff Fails to Plead Trademark Rights in "Blade Runner" or Any Images from BR2049

As the Supreme Court warned in *Dastar*, "[Section] 43(a) does not have boundless application." 539 U.S. at 29 (cleaned up).

The "false association" basis of liability under Section 43(a) claimed by Plaintiff addresses "false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device." *Waits*, 978 F.2d at 1108. The Complaint does not expressly state what "distinctive mark, name, trade dress, or other device" Plaintiff believes Defendants used. Rather, Plaintiff points to use of the words "Blade Runner" (without "2049") and the Accused Image.

As an initial matter, Plaintiff does not assert ownership over any trademark rights in the phrase "Blade Runner" or the "original 1982 'Blade Runner' motion picture" (Comp. ¶ 26). In fact, Plaintiff goes out of its way to specify that Musk said "'Blade Runner' without the year number" (2049) that distinguishes its film from the original. *E.g.*, *id.* ¶ 58. Plaintiff's allegations that Musk nevertheless must have "meant to evoke" BR2049 for various reasons based on the differing contents of BR2049 and the 1982 Picture are irrelevant absent any claim in trademark rights in the actual words spoken by Musk.[7]

---

[7] Plaintiff's attempt to allege "special secondary meaning" over the use of "Blade Runner" (without "2049") with the intent to "evoke BR2049" by displaying the

Plaintiff's attempt to claim trademark rights and secondary meaning over the still images from BR2049 also fails. As discussed *supra* § IV(C)(1), the Ninth Circuit has specifically rejected a trademark claim based on a film clip. There is no reason for a different outcome here. In addition to improperly cloaking a copyright claim as a Lanham Act claim, Plaintiff's Images cannot be trademarks because they serve no source identifying function. 15 U.S.C. § 1127 (defining "trademark" as a word, name, symbol, or device used "to indicate the source of the goods"). Unsurprisingly, undersigned counsel is aware of ***no*** case in which a still image from a film has achieved trademark status to be the basis of any Lanham Act claim.

And it is of no import that Plaintiff's Images "immediately evoke[] BR2049 and everything the Picture stands for" (Comp. ¶¶ 33, 124). This is not "secondary meaning" as Plaintiff repeatedly claims (*e.g.*, *id.* ¶¶ 58, 123), and the Images do not function as "marks" or a "brand" to identify the source of goods or services. 2 McCarthy on Trademarks and Unfair Competition § 15:1 (5th ed.) (explaining that secondary meaning "is a new and additional meaning that attaches to a non-inherently distinctive word or symbol" that identifies and distinguishes a "single commercial source" and "if a designation is not *used* as a mark to identify and distinguish source, it cannot possibly achieve a secondary meaning" (emphasis in original)).

Here, Plaintiff alleges that Defendants "appropriate[d] BR2049's special secondary meaning in the context of trying to sell artificially autonomous cars" (Comp. ¶ 64) yet does not allege any use (especially trademark use) of the Images in connection with autonomous cars itself. Rather, Plaintiff's allegations that it is "in the

---

Accused Image, which Plaintiff asserts share features of its Images (Comp. ¶¶ 57-64), is also similar to how the *Lions Gate* plaintiff failed to assert false association when it relied "not only on the alleged mark, but also on other elements from the film *Dirty Dancing*." 170 F. Supp. 3d at 1269; 1255 (describing allegations that failed to state a Section 43(a) claim including that defendant's advertisements used images to "conjure up *Dirty Dancing*" and lines that "invoked" a song in the film's final scene).

process of engaging with automotive brands" on partnerships for a BR2049-derived sequel or spin-off television series and has merely "***potential*** auto brand partners" for that series (Comp. ¶¶ 37, 70) show that such use is speculative.[8] Even if there was such use, Plaintiff's Images would still fall under the purview of copyright law, not trademark law.

## V.    CONCLUSION

For the reasons stated above, the Complaint can be dismissed with prejudice, in its entirety.

Dated:  February 4, 2025              FISH & RICHARDSON P.C.


                              By:  */s/ Christopher S. Marchese*
                                   Christopher S. Marchese (SBN 170239)
                                   marchese@fr.com
                                   FISH & RICHARDSON P.C.
                                   4695 MacArthur Court, Suite 1100
                                   Newport Beach, CA 92660
                                   Tel: (213) 533-4240
                                   Fax: (858) 678-5099

                                   John S. Goetz (*pro hac vice* forthcoming)
                                   goetz@fr.com
                                   Kristen McCallion (*pro hac vice* forthcoming)
                                   mccallion@fr.com
                                   Vivian Cheng (*pro hac vice* forthcoming)
                                   cheng@fr.com
                                   FISH & RICHARDSON P.C.
                                   7 Times Square, 20th Floor
                                   New York, NY 10036
                                   Tel: (212) 765-5070
                                   Fax: (212) 258-2291

---

[8] Allegations that the fictional "spinner" in BR2049 has been featured in a museum exhibit and was branded under an automotive brand (Comp. ¶¶ 35-36) are irrelevant. Plaintiff does not allege Defendants used any image or characteristic of the spinner, nor can it, as there is no vehicle in the Accused Image.

Matt Colvin (*pro hac vice* forthcoming)
colvin@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Tel: (214) 747-5070
Fax: (214) 747-2091

Kayleigh E. McGlynn (*pro hac vice* forthcoming)
mcglynn@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Tel: (617) 542-5070
Fax: (617) 542-8906

A. Louis Dorny (CA 212054)
ldorny@tesla.com
Terry W. Ahearn (CA 216543)
tahearn@tesla.com
Krista M. Carter (CA 225229)
kricarter@tesla.com
TESLA, INC.
3000 Hanover St.
Palo Alto, CA 94304
Tel: 510-298-8516

Attorneys for Defendants
Tesla, Inc. and Elon Musk

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Tesla, Inc. and Elon Musk certify that this brief contains 6,969 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Christopher S. Marchese*
Christopher S. Marchese