Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (213) 533-4240 / Fax: (858) 678-5099

John S. Goetz (*pro hac vice* forthcoming)
goetz@fr.com
Kristen McCallion (*pro hac vice* forthcoming)
mccallion@fr.com
Vivian Cheng (*pro hac vice* forthcoming)
cheng@fr.com
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Tel: (212) 765-5070 / Fax: (212) 258-2291

*Additional counsel listed on signature page*

Attorneys for Defendant Warner Bros.
Discovery, Inc.

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALCON ENTERTAINMENT, LLC a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC., a Texas Corporation; ELON MUSK, an individual; WARNER BROS. DISCOVERY, INC., a Delaware Corporation,<br><br>Defendants. | Case No. 2:24-cv-09033-GW-RAO<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT WARNER BROS. DISCOVERY, INC.'S MOTION TO DISMISS**<br><br>Hearing Date: March 6, 2025<br>Hearing Time: 8:30 a.m.<br>Courtroom: 9D<br>Judge: Hon. George H. Wu |

# **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................1

II.     BACKGROUND ..................................................................2

    A.      Plaintiff's Unsupported Allegations...............................2

    B.      WBDI's Lack of Involvement in the Alleged Infringement..................3

III.    LEGAL STANDARD ..........................................................4

IV.     ARGUMENT......................................................................5

    A.      Plaintiff Fails to State a Claim for Vicarious Copyright
        Infringement ......................................................................5

    B.      Plaintiff Fails to State a Lanham Act Claim for False
        Endorsement....................................................................10

V.      CONCLUSION .................................................................11

CERTIFICATE OF COMPLIANCE.........................................13

MPA ISO WBDI'S MOTION TO DISMISS
Case No. 2:24-cv-09033-GW-RAO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001) ............................................................................ 1

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ..................................... 4

*Bell v. Pac. Ridge Builders, Inc.*,
    No. 19-CV-01307-JST, 2019 WL 13472127 (N.D. Cal. June 4, 2019) ........................................................................................................... 8, 10

*Erickson Productions, Inc. v. Kast*,
    921 F.3d 822 (9th Cir. 2019) ..................................................................... 8, 9, 10

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
    76 F.3d 259 (9th Cir. 1996) ................................................................................. 7

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) .......................................................................... 4, 6

*Johnson v. Maraj*,
    No. CV 23-5061 PA, 2023 WL 8883316 (C.D. Cal. Dec. 15, 2023) .................. 1

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ............................................................................... 4

*Long v. Dorset*,
    854 F. App'x 861 (9th Cir. 2021) ........................................................................ 9

*Luvdarts, LLC v. AT & T Mobility, LLC*,
    710 F.3d 1068 (9th Cir. 2013) ............................................................................. 5

*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006) ............................................................................... 4

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) .......................................................................... 7, 8

*Perfect 10, Inc. v. Giganews, Inc.*,
    No. CV 11-7098 ABC SHX, 2013 WL 3610706 (C.D. Cal. July 10,
    2013), *aff'd*, 847 F.3d 657 (9th Cir. 2017) ..............................................5

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ......................................................5, 8

*Unicolors, Inc. v. H&M Hennes & Mauritz LP*,
    No. CV 16-02322-AB, 2016 WL 10646311 (C.D. Cal. Aug. 12,
    2016) ..................................................................................5

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) .............................................................5

**Statutes**

15 U.S.C. § 1125(a)(1)(A) .......................................................11

## I.    INTRODUCTION

Defendant Warner Bros. Discovery Inc. ("WBDI") understands that Defendants Tesla, Inc. and Elon Musk are simultaneously moving to dismiss all of Plaintiff's claims and that all claims against WBDI would be dismissed should the Court grant that motion.[1] This motion to dismiss is directed specifically to Plaintiff's second and fourth claims for relief for vicarious copyright infringement and false endorsement, respectively.

In this flimsy litigation against WBDI, Plaintiff attempts to allege that WBDI vicariously infringed Alcon's copyright in the film *Blade Runner 2049* ("BR2049"), by way of Tesla's alleged use of an AI-generated image in an event that took place on the Warner Bros. studio lot. Alcon alleges that a party that is ***not*** WBDI flashed an image that is ***not*** from BR2049, on screen for eleven seconds in a PowerPoint presentation. Plaintiff then attempts to spin this eleven-second display of an image not from the film, and a few passing comments by Elon Musk, into a nefarious, pre-arranged "substantial brand affiliation" (Comp., Dkt. 1, ¶ 42).

Plaintiff's allegations, which rely almost exclusively "on information and belief," are far from plausible. To plead the elements of its claims, Plaintiff repeatedly relies on an alleged "contractual agreement" between WBDI and Tesla that consists of contractual terms that never existed. The contract in question, which WBDI provides to the Court now, directly contradicts Plaintiff's wild assertions.

For example, Plaintiff alleges that WBDI had authority and control over, and received a direct financial benefit from, the infringement that allegedly occurred at

---

[1] *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party."); *Johnson v. Maraj*, No. CV 23-5061 PA (AFMX), 2023 WL 8883316, at *3 (C.D. Cal. Dec. 15, 2023) (dismissing claims for contributory and vicarious copyright infringement because plaintiff failed to plausibly allege substantial similarity for direct infringement claim).

the October 10, 2024 due to a "brand affiliation" or "promotional" requirement set forth in that contract to associate Tesla's "Cybercab" with BR2049. But as the real contract shows, this theory is simply not true. In addition, the only financial compensation to WBDI that relates to the October 10 event was for its leasing of the Warner Bros. studio lot. Plaintiff's allegations do not establish any authority or control by WBDI nor a causal link between the alleged infringement and any alleged direct financial benefit to WBDI. As a result, the vicarious copyright infringement claim is implausible and the Court should dismiss it with prejudice.

The false endorsement claim also is implausible because it is not a cognizable Lanham Act claim. It improperly seeks to use trademark law to address copyright issues, a tactic that many courts, including the Supreme Court, have consistently rejected. The Complaint is also devoid of any factual allegations of an infringing act by WBDI or any attempt by WBDI and Tesla to create a "brand affiliation" with BR2049. Plaintiff provides only conjecture about an alleged conspiracy in its attempt to pull WBDI into this claim.

None of these deficiencies can be cured by amendment. Therefore, WBDI respectfully requests that the Court dismiss Plaintiff's claims with prejudice.

## II.    BACKGROUND

### A.    Plaintiff's Unsupported Allegations

Plaintiff alleges that Tesla and Elon Musk unlawfully used an image resembling a scene from the film BR2049 at an October 10, 2024 event promoting Tesla's forthcoming "Cybercab." Plaintiff asserts copyrights in eight images taken from a scene in BR2049 (Comp., Exs. A & B (the "Exhibit A Image" and "Exhibit B Images," collectively, "Plaintiff's Images")). The Complaint also alleges trademark rights in those same images. Notably, Plaintiff does not own the "Blade Runner" name or mark, nor does it own the original "Blade Runner" film. In fact, the Complaint alleges facts to distinguish Plaintiff's BR2049 from the original "Blade Runner"—

1    presumably because it is WBDI's affiliate that owns the exclusive rights in that film.

2    Comp. ¶¶ 59, 62.

3    **B.    WBDI's Lack of Involvement in the Alleged Infringement**

4    WBDI owns the Warner Bros. studio lot in Burbank, California that it on

5    occasion leases to third parties for various events, through its subsidiary, Warner Bros.

6    Studio Operations. Plaintiff asserts that WBDI is liable for copyright infringement

7    and false endorsement simply because WBDI leased its studio lot to Tesla for Tesla's

8    "Cybercab" event and because WBDI's clip and still licensing department had

9    conversations with Alcon about the possibility of licensing the Exhibit A Image from

10    BR2049 on Tesla's behalf. What Plaintiff does not plead, however, are any facts

11    concerning WBDI's alleged control over the content of Tesla's presentation. Instead,

12    Plaintiff attempts to connect WBDI to the alleged infringement by conjuring up

13    contractual terms between Tesla and WBDI based on "information and belief." That

14    information and belief is quickly disproven, however, by a document central to

15    Plaintiff's Complaint: the Tesla-WBDI contract.[2] To illustrate, Plaintiff alleges that

16    the contract under which WBDI leased studio space to Tesla for the October 10 event

17    "allowed or possibly even required Tesla expressly to affiliate the cybercab with one

18    or more motion pictures from WBDI's motion picture library, or the motion picture

19    library of WBDI's subsidiary." *Id.* ¶¶ 38-39. Nothing could be further from the truth.

20    *See* Ex. 1. Plaintiff repeatedly relies on non-existent terms of the Tesla-WBDI

21    contract to support its claims, including to allege how Tesla and Musk purportedly

22    came to infringe Plaintiff's Images from BR2049 and falsely affiliated the film with

23

24    _____

25    [2] As shown in Exhibit 1 to the Declaration of Rachel Jennings, the contract was signed
      not by WBDI, but by Warner Bros. Special Events, a subsidiary of WBDI. And it is

26    Warner Bros. Entertainment Inc. that has U.S./Canada distribution rights in the
      BR2049 film, not WBDI. For the sake of convenience, in this motion we refer to

27    WBDI as the party to the contract with Tesla. Exhibit 1 is a true and correct copy of
      the Tesla-WBDI contract with pricing and personal information redacted.

28

3

MPA ISO WBDI'S MOTION TO DISMISS
Case No. 2:24-cv-09033-GW-RAO

Tesla's "Cybercabs." Comp. ¶¶ 43, 94 (alleging that Tesla and Musk incorrectly believed that WBDI, as part of the event contract, could deliver a brand affiliation with BR2049). In reality, the Tesla-WBDI contract, attached as Exhibit 1 to the Jennings Declaration, is a straightforward lease for an event venue. It makes no reference whatsoever to use of a motion picture from WBDI's library, brand affiliation, or to the content of the October 10 event, referring to it merely as the "Tesla Event."[3]

## III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (cleaned up). Though the Court must accept all factual allegations in a complaint as true, a court need not accept "naked assertions devoid of further factual enhancement." *Id.* (cleaned up). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)). Similarly, the court is not required to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Id.*

On a motion to dismiss, a court may properly consider the complaint and "material which is properly submitted as part of the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). A court may also consider "evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion" And "assume that its contents are true for the purposes of a motion to dismiss under Rule 12(b)(6)." *Marder*

---

[3] In fact, the only mention of intellectual property rights is contained in paragraph 11, which provides that neither party may use the intellectual property of the other party without prior written consent. Ex. 1 ¶ 11.

*v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006) (cleaned up); *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003).

## IV.    ARGUMENT

### A.    Plaintiff Fails to State a Claim for Vicarious Copyright Infringement

To state a claim of vicarious liability for copyright infringement, Plaintiff must plead that WBDI "had both the (1) 'right and ability to supervise the infringing activity' and (2) 'a direct financial interest' in the activity." *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1071 (9th Cir. 2013) (quoting *A&M Records,* 239 F.3d at 1022); *see also Perfect 10, Inc. v. Giganews, Inc.,* No. CV 11-7098 ABC SHX, 2013 WL 3610706, at *5 (C.D. Cal. July 10, 2013) (granting motion to dismiss), *aff'd*, 847 F.3d 657 (9th Cir. 2017). Plaintiff fails to plausibly plead either of these key elements as to WBDI.

On the first element, "the defendant must have the right and ability to *supervise* and *control* the infringement, not just affect it." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 805 (9th Cir. 2007) (emphasis in original) (hereinafter "*Visa*") (affirming dismissal of vicarious copyright infringement claim with prejudice for failure to plead defendant's sufficient control over the infringing activity). All of Plaintiff's allegations that relate to WBDI's purported right and ability to *supervise* and *control* the alleged infringement are contradicted by the Tesla-WBDI contract. What remains are bare, conclusory statements that merely repeat the legal standard of the claim and are insufficient to render the claim plausible. *See* Comp. ¶ 90; *Unicolors, Inc. v. H&M Hennes & Mauritz LP*, No. CV 16-02322-AB (SKx), 2016 WL 10646311, at *6 (C.D. Cal. Aug. 12, 2016) ("Plaintiff's bare pronouncement that Defendant 'had the right and ability to supervise the infringing conduct' merely parrots the element and, without more, provides no basis for the Court to conclude that the allegation of supervisory authority is plausible.").

Plaintiff alleges that because WBDI was using its clip and still licensing department to perform clearance work for the presentation, WBDI must have had "the right and ability to tell the Direct Infringers that their infringing conduct was not acceptable and could not be part of the presentation." Comp. ¶ 90. But the Complaint provides no facts that connect clearance work to having the right and ability to *supervise* and *control* what was ultimately used in Tesla's presentation. Merely "tell[ing]" the unspecified "Direct Infringers" (*id.* ¶¶ 89, 90) that certain content is not licensed does not mean that WBDI had any authority to stop the use of that content. And in fact, the Tesla-WBDI contract[4] shows that WBDI merely leased out the physical location for the event. *See generally* Ex. 1 (outlining terms relevant to use of the physical property, such as the time and place of the event, security and fire personnel, and parking instructions). That contract did not give WBDI any right to control the content or presentation materials used at the event—or even review them beforehand—and WBDI was permitted to cancel only if there was a material breach of the terms of the lease agreement. Ex. 1 ¶ 6.2. When Plaintiff's allegations are viewed against the actual terms of the Tesla-WBDI contract, rather than Plaintiff's now-disproven allegations, the implausibility of the claim is laid bare. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055 (the court is not required to accept as true "unreasonable inferences").

While Plaintiff also alleges that WBDI had the right and ability to supervise its own agents, employees, or contractors (Comp. ¶ 90), the Complaint lacks any facts to support an inference that the alleged "Direct Infringers" were in fact WBDI agents, employees, or contractors. Plaintiff's sole allegation of this—made "on information and belief"—is highly speculative and far too tenuous to plausibly plead this factor,

---

[4] Because Plaintiff necessarily relies on the Tesla-WBDI contract (*see, e.g.*, Comp. ¶¶ 38-39, 43 94), the document is central to Plaintiff's claims, and there is no basis for Plaintiff to question its authenticity, the Court may treat the contract as part of the Complaint.

as demonstrated by the alternate and hesitant phrasing. *Id.* ¶ 56 (alleging that the Accused Image "was generated…by an employee or agent of one or more of WBDI, Tesla…, or even possibly by Musk himself"); *see also id.* ¶ 44 at n.2 (alleging that "the WBDI shared services licensing department personnel involved in this matter included an individual executive who is…*ostensibly* an employee of Warner Bros. Pictures…"); *see also id.* ¶ 90 (alleging that "to the extent that the Direct Infringers were individual agents, employees, or contractors of WBDI…").

Plaintiff will likely rely on *Fonovisa, Inc. v. Cherry Auction, Inc.*, a Ninth Circuit decision holding that the plaintiff sufficiently alleged vicarious copyright infringement against swap meet operators who had a "broad" contractual right to "exclude any vendor for any reason, at any time, and thus…exclude vendors for patent and trademark infringement." 76 F.3d 259, 261, 263 (9th Cir. 1996). But the Ninth Circuit's more recent decision in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) (hereinafter *Amazon.com*) explains why Plaintiff's reliance on that case would be wrong. In *Amazon.com,* the plaintiff alleged that Google was vicariously liable for the infringement on third-party websites because it provided links to those websites through its AdSense advertising program. *Amazon.com*, 508 F.3d at 1173. Perfect 10 argued that Google had the right and ability to control the alleged infringement because Google's AdSense agreement gave Google "the right to monitor and terminate partnerships with entities that violate others' copyright[s]." *Id.* at 1173. In rejecting this argument, the Ninth Circuit distinguished its prior decision in *Fonovisa*. The court explained that unlike the swap meet operators in *Fonovisa*, Google did not have contracts with the allegedly infringing third-party websites that empower Google to stop or limit them from reproducing, displaying, and distributing Perfect 10's images. *Id.* Google's mere right to terminate an AdSense partnership did not give Google the right to stop direct infringement, which could continue to occur even after the third-party websites ended their participation in the AdSense program.

*Id.* at 1173-74; *see also Visa*, 494 F.3d at 804 (holding that credit card companies that had a contractual right to end access to its payment processing services if its member merchants did not cease illegal activity did not have the right to stop website operators' alleged infringement).

Here, Plaintiff does not come close to alleging that WBDI had the type of broad contractual rights that were sufficient to allege the first element of vicarious liability in *Fonovisa*. In fact, it does not even allege that WBDI had the type of contractual right deemed insufficient in *Amazon.com, i.e.,* the right to terminate a service due to copyright violations. 508 F.3d at 1173-74; *see also Visa*, 494 F.3d at 803 (granting motion to dismiss vicarious copyright infringement claim and explaining that "the mere ability to withdraw a financial 'carrot' does not create the 'stick' of 'right and ability to control' that vicarious infringement requires"). Under the analysis of *Amazon.com*, even if WBDI cancelled the studio lot lease, Tesla and Musk could have proceeded with their presentation elsewhere. Therefore, WBDI did not have the right and ability to control the content of that presentation. Because the Tesla-WBDI contract forecloses Plaintiff's ability to allege WBDI's right to supervise and control any alleged infringement, the vicarious copyright infringement claim is implausible and should be dismissed with prejudice.

This claim may be dismissed for the additional reason that Plaintiff fails to allege that WBDI received a direct financial benefit from the alleged infringement. "The essential aspect of the 'direct financial benefit' inquiry is whether there is a **causal** relationship between the infringing activity and any financial benefit a defendant reaps." *Erickson Productions, Inc. v. Kast*, 921 F.3d 822, 829 (9th Cir. 2019).[5] In other words, the financial benefit must flow directly from the allegedly infringing activity. *Bell v. Pac. Ridge Builders, Inc.*, No. 19-CV-01307-JST, 2019 WL 13472127, at *6 (N.D. Cal. June 4, 2019) (explaining that the plaintiff must plausibly

---

[5] All emphases added unless otherwise noted.

8

allege more than that defendant's allegedly infringing activities "generally acted as a draw for [defendant's] business," since "vicarious infringement requires [plaintiff] to demonstrate a causal link between the *infringing activities* and a financial benefit to [plaintiff]" (emphasis in original) (cleaned up)). For example, infringement that acts as a *draw* to the defendant's website where customers could purchase the defendant's services may qualify as a direct financial benefit, but infringing material that is "just an added benefit" does not. *Erickson*, 921 F.3d at 829 (citing *Ellison v. Robertson*, 357 F.3d 1072, 1078-79 (9th Cir. 2004)). The Ninth Circuit has held that even an allegation that plaintiff paid Facebook to post advertisements for his business page did not "suffice as allegations that Facebook **made money** from [direct infringer's] infringing posts on that page specifically." *Long v. Dorset*, 854 F. App'x 861, 864 (9th Cir. 2021) (affirming dismissal of vicarious copyright infringement claim). This is a strict requirement, and Plaintiff fails to meet it.

To illustrate, Plaintiff alleges that the Tesla-WBDI event contract "included a co-promotional or brand affiliation element," which it plainly does not, and that Tesla and Musk believed that WBDI could deliver a brand affiliation with BR2049. Comp. ¶ 94. According to Plaintiff, when Tesla and Musk learned that WBDI could not deliver a brand affiliation, "WBDI had a financial incentive to avoid any claims of breach of contract or adjustment of the contract price, and one way to do that was essentially to allow the fudging (questionable manipulation) of the situation by either suggesting, encouraging, or knowingly allowing Tesla and Musk's generation of and use of the [allegedly infringing image]." *Id.* As noted, there is no mention of a co-promotional or brand affiliation element in the Tesla-WBDI contract (*see generally* Ex. 1). Thus, the foundation for this theory of financial benefit necessarily fails. There were no potential claims for breach of contract or adjustment of the contract price to provide a financial incentive for WBDI to encourage or allow any allegedly infringing conduct. Moreover, Alcon plainly alleges that it, and not WBDI, owns the relevant

rights in BR2049 (Comp. ¶ 24), so it cannot plausibly allege that WBDI stood to benefit financially from Tesla's use of the image in that sense.

Even if the court does not consider the Tesla-WBDI contract, the avoidance of a potential penalty for failing to deliver a brand affiliation with BR2049 is far too indirect and attenuated to plausibly plead that WBDI received a *direct* financial benefit with a "*causal link*" to the allegedly infringing activity. *Bell*, 2019 WL 13472127, at *6; *cf. Erickson*, 921 F.3d at 829-31 (holding that the direct infringer's avoidance of licensing fees alone cannot satisfy the requirement of a direct financial benefit to the vicarious infringer).

Because the Tesla-WBDI contract reveals that there are no financial incentives for WBDI to encourage Tesla and Musk to use any particular content in their presentation, and because Alcon's own allegations show that WBDI did not have the relevant rights in the image to benefit financially from its use, this claim should be dismissed with prejudice.

## B.    Plaintiff Fails to State a Lanham Act Claim for False Endorsement

Plaintiff's claim for false endorsement under Section 43(a) of the Lanham Act fails for the same reasons as stated in Tesla and Musk's memorandum in support of their motion to dismiss, namely because it is an improper attempt to circumvent copyright law, and Plaintiff fails to plead trademark rights in "Blade Runner" or any of Plaintiff's Images. WBDI hereby joins and incorporates by reference Section IV(C) of Tesla and Musk's memorandum.

Plaintiff's fourth claim for relief is even more implausible as pled against WBDI. The Complaint contains no allegations of an infringing act by WBDI, only conjecture about an alleged conspiracy. Comp. ¶ 133-34. The only alleged acts Plaintiff attributes to WBDI in claiming false endorsement are:

    a) Attempting to justify use of Alcon's BR2049 brand by advancing a sham "clip licensing" scheme;

b) Generating the infringing Presentation Slide 2 Image and/or encouraging Tesla and Musk to use it; and

c) Intentionally and purposefully not engaging with Alcon at all about a potential brand affiliation, and only engaging with Alcon in any way about the BR2049 use on the day of the event.

*Id.*

A violation of Lanham Act Section 43(a)(1)(A), which Plaintiff alleges in its fourth claim for relief, requires "use[] in commerce" of "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact," in connection with any goods or services, which is likely to cause confusion. 15 U.S.C. § 1125(a)(1)(A). None of the alleged acts of WBDI are a "use[] in commerce" of Plaintiff's alleged mark, nor do they have anything to do with a cognizable act of false endorsement.

## V.    CONCLUSION

For the reasons stated above, the vicarious copyright infringement and false endorsement claims should be dismissed with prejudice.


Dated:  February 4, 2025                FISH & RICHARDSON P.C.


By:  */s/ Christopher S. Marchese*
Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (213) 533-4240
Fax: (858) 678-5099

John S. Goetz (*pro hac vice* forthcoming)
goetz@fr.com
Kristen McCallion (*pro hac vice* forthcoming)
mccallion@fr.com
Vivian Cheng (*pro hac vice* forthcoming)

1

2

cheng@fr.com
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Tel: (212) 765-5070
Fax: (212) 258-2291

3

4

5

Matt Colvin (*pro hac vice* forthcoming)
colvin@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Tel: (214) 747-5070
Fax: (214) 747-2091

6

7

8

9

Kayleigh McGlynn (*pro hac vice* forthcoming)
mcglynn@fr.com
FISH & RICHARDSON PC
One Marina Park Drive
Boston, MA 02210
Tel: (617) 542-5070
Fax: (617) 542-8906

10

11

12

13

14

Attorneys for Defendant
Warner Bros. Discovery, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MPA ISO WBDI'S MOTION TO DISMISS
Case No. 2:24-cv-09033-GW-RAO

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Warner Bros. Discovery, Inc., certifies that this brief contains 3,508 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Christopher S. Marchese*
Christopher S. Marchese