ANDERSON YEH PC
Edward M. Anderson (STATE BAR NO. 198183)
edward@andersonyehlaw.com
Regina Yeh (STATE BAR NO. 266019)
regina@andersonyehlaw.com
1055 E. Colorado Blvd. Ste 500
Pasadena, California 91106
Telephone: (626) 204-4092  Facsimile: (888) 744-0317

Attorneys for Plaintiff
ALCON ENTERTAINMENT, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALCON ENTERTAINMENT, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC., a Texas Corporation; ELON MUSK, an individual; WARNER BROS. DISCOVERY, INC., a Delaware Corporation;<br><br>Defendants. | CASE NO. 2;24-CV-09033-GW-RAO<br><br>**PLAINTIFF ALCON ENTERTAINMENT, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT TESLA, INC. AND ELON MUSK'S MOTION TO DISMISS ORIGINAL COMPLAINT**<br><br>Hearing Date: March 6, 2025<br>Time:               8:30 a.m.<br>Courtroom:     9D<br>Judicial Officer:  Hon. George H. Wu |

## I. INTRODUCTION

Plaintiff Alcon Entertainment, LLC ("Plaintiff" or "Alcon") has exercised its available right to file a First Amended Complaint ("FAC") in response to defendants' motions to dismiss. Fed. R. Civ. P. 15(a)(1)(B) ("Rule 15"). If plaintiff has not yet amended, plaintiff may file an amended pleading as of right not later than 21 days of a defendant's filing of, *inter alia*, a Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") motion (or 21 days of a defendant's filing of a responsive pleading, whichever is earlier). Plaintiff has not yet amended, no defendant has filed any responsive pleading, and it has only been 9 days since defendants filed their Rule 12(b)(6) motions, so Plaintiff's FAC was properly filed by right.

Nonetheless, in the interests of progressing the case, and because the Court does have discretion to treat the pending motions to dismiss as directed toward the FAC and still hear them, rather then take them off calendar and wait for defendants to address the FAC (*see, e.g.,* Stevenson, et al., *Rutter Practice Guide – Federal Civil Procedure Before Trial (Calif. and 9th Cir. Ed.)*, Ch. 9-D, § 9:263 [April 2024 Update]), Plaintiff files short oppositions to both of the pending Rule 12(b)(6) motions. This one is specifically directed to the motion of defendants Elon Musk ("Musk") and Tesla, Inc. ("Tesla") ("M&T Motion").

## II. FED. R. CIV. P. 12 (b)(6) STANDARDS AND RULES

Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") motions are for legal challenges, not factual challenges. The court thus must take all factual allegations in the complaint that are not legal conclusions as true. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1205 (9th Cir. 2019); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (2001). The court must construe the facts in the most favorable light to supporting a claim, and give plaintiff the benefit of all reasonable inferences from the express allegations. *Id.*; *U.S. v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). The pleading

- 1 -
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANT TESLA AND MUSK'S MOTION TO DISMISS

must demonstrate only facial plausibility, meaning "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Godecke*, 937 F.3d at 1208 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal can lie if the facts, even viewed favorably to Plaintiff, are implausible; for "lack of a cognizable legal theory"; "the absence of sufficient facts alleged under a cognizable legal theory" (*Godecke*, 937 F.3d at 1208), or if the complaint itself alleges facts necessarily fatal to a claim (*Hearn v. R.J. Reynolds Tobacco Co.*, 279 F.Supp.2d 1096, 1102 (D. Az. 2003)).

The focus of Rule 12(b)(6) analysis "is the complaint," and, generally, the court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Corinthian Colleges*, 655 F.3d at 998-99; *Lee*, 250 F.3d at 688. Nonetheless, the court may consider external material proffered by the movant, pursuant to three isolated exceptions: 1) exhibits to the complaint; 2) documents referenced by the complaint, upon which it "necessarily relies," and the authenticity of which are undisputed; and 3) matters properly subject to judicial notice. *Corinthian Colleges*, 655 F.3d at 991, 998-999; *Lee*, 250 F.3d at 688.[1]

### III. RULE 12(b)(6) COGNIZABLE FACTS IF THE PENDING MOTIONS GO FORWARD AS IS

The FAC supersedes the original Complaint ("OC"). *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. __, 2025 WL 96212 at *7 (January 15, 2025). The FAC's factual allegations are now controlling for all purposes, including Rule 12(b)(6) practice. The FAC pleads the same fundamental dispute alleged in the OC

---

[1] To go beyond these exceptions on movant-proffered extrinsic material, the court must treat the motion pursuant to Fed. R. Civ. Pro. 56 (summary judgment), including "giving all parties a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. Pro. 12(d); *Lee*, 250 F.3d at 688.

as broadly described above.  Among other pleading adjustments, the FAC more finely particularizes which exclusive copyright rights Defendants violated and how.

It also makes clear that, although there is only a single infringed work for copyright infringement analysis (the BR2049 motion picture, just like the OC), the Defendants created at least two infringing works: (1) the AI-generated "Presentation Slide 2 Image" (Exhibit C to both the OC and FAC), and also (2) the overall We Robot video presentation (Exhibit 2 to the Omnibus Declaration of Chris Marchese in Support of Defendants' Motions to Dismiss) ("We Robot Work"), the infringing portions of which are the approximately eleven seconds where the Presentation Slide 2 image is displayed, including Musk's accompanying voiceover.

As to material beyond the FAC itself, Plaintiff sees three formal proffers by Defendants: (1) OC/FAC Exhibits A-C; (2) We Robot Presentation Video; and (3) Purported WBDI-Tesla Location Agreement.  Plaintiff's position on each proffer is:

<u>Defendants' Proffer 1 - FAC Exhibits A, B and C</u>.  Plaintiff agrees that the Court may consider all three exhibits on Rule 12(b)(6) practice, in that they are exhibits to the operative pleading.  However, if and as it considers FAC Exhibits A and B in particular, the Court must accept what the FAC says they are, and may not credit or accept the substitutional and erroneous analytical sleight of hand the M&T Motion proposes on that point.  The M&T Motion's entire substantial similarity comparison challenge to Plaintiff's direct copyright infringement claim is premised on the M&T Motion first improperly trying to change Plaintiff's pleading of the infringed work from the BR2049 motion picture to instead being the set of Exhibits A and B images ("Plaintiff's Images" in the M&T Motion), and then conducting substantial similarity analysis pursuant to the rules applicable when the infringed work is a photograph.  Exhibits A and B are neither themselves the infringed work at issue, nor are they "photographs" in copyright terminology.  The infringed work is the larger BR2049 motion picture.  Exhibits A and B are all examples of still

- 3 -
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANT TESLA AND MUSK'S MOTION TO DISMISS

images from that motion picture.[2]  Not only does this mean they are not themselves the infringed work, they also are not the same as photographs, either analytically under copyright law[3], or as to what displaying them evokes in an audience, all as discussed further herein and in detail in the FAC.

Defendants' Proffer 2 – The We Robot Presentation (Exhibit 2 to Omnibus Declaration of Chris Marchese).  Plaintiff agrees that the Court may consider the entire content of the We Robot Presentation on Rule 12(b)(6) practice.  It is a document subject to the second exception allowing consideration of extrinsic materials if: "(1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of the document." *Corinthian Colleges*, 655 F.3d at 999; *Lee*, 250 F.3d at 688.  For purposes of the pending Rule 12(b)(6) Motions, Plaintiff agrees this document satisfies all three requirements of the exception.

Defendants' Proffer 3 – WBDI-Tesla Location Agreement (Exhibit 1 to Declaration of Rachel Jennings in support of WBDI's MTD).  Plaintiff does not understand the M&T Motion to be proffering this document; rather Defendants proffer it for WBDI's Motion only.  However, to be safe, Plaintiff states its position and objections to this document in the M&T Motion context, too.  Plaintiff had never seen the document until Defendants provided it in connection with filing the present Motions.  Plaintiff has had no opportunity to conduct discovery or any meaningful investigation regarding it.  Plaintiff thus generally does question the document's authenticity, meaning it does not satisfy any of the exceptions to

---

[2] The OC Exhibit B included seven images; the FAC's Exhibit B keeps six of them and adds six more, and also marks them with their time codes in BR2049.

[3] Under the Copyright Act, a "photograph" is within the definition of "pictorial, graphic or sculptural work," while a "still image" of a "motion picture" is treated as part of a "motion picture" and thus under the "audiovisual work" definition.  17 U.S.C. 101.

- 4 -
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANT TESLA AND MUSK'S MOTION TO DISMISS

consideration of extrinsic materials and the Court may not consider it. Plaintiff respectfully submits that even if the Court (improperly) decided to consider it, the document seems more affirmative of Plaintiff's theories than dispositive of them, which Plaintiff addresses more in its opposition to WBDI's Motion. The document and arguments which WBDI is making about it also candidly contradict other information Alcon has about the situation.

### IV. MISSING PROFFER: THE COPYRIGHT INFRINGED WORK ACTUALLY PLED – "BLADE RUNNER 2049" MOTION PICTURE

The M&T Motion could have proffered the complete BR2049 Picture which Alcon actually alleges to be its copyright infringed work (both in the OC and still in the FAC) by, for example, lodging a DVD or Blu-Ray version of the entire Picture with the Court. If done properly, Alcon acknowledges that would have been a proffered document meeting all of the requirements of a document referenced in the operative pleading, central to the claims, with unchallenged authenticity. The Court could then potentially conduct a meaningful substantial similarity comparison of BR2049, as the infringed work, to the infringing works. There are at least two infringing works -- the Exhibit C Presentation Slide Image, and the We Robot presentation in recorded form, Exhibit 2 to the February 4, 2025 Omnibus declaration of Chris Marchese. However, for whatever reason, the M&T Motion elected not to put BR2049 – the actually infringed work – before the Court. As discussed below, their pending motion to dismiss Plaintiff's direct copyright infringement claim fails for this reason alone, although not only for that reason.

### V. THE M&T MOTION'S CHALLENGE TO PLAINTIFF'S DIRECT COPYRIGHT INFRINGEMENT FAILS

The M&T Motion's challenge to Alcon's direct copyright infringement claim rests everything on a Rule 12(b)(6) substantial similarity comparison conducted as if

Alcon was claiming that the infringed work was a set of photographs, rather than a motion picture. The challenge fails, for all of the following reasons, among others:

<u>First</u>, as discussed above, the M&T Motion failed to provide the Court with a copy of the actual "Blade Runner 2049" motion picture, which is what Alcon alleges is the "infringed work." Where the infringed work is not actually before the Court on a Rule 12(b)(6) motion, the Court cannot conduct the comparison.

<u>Second</u>, the extrinsic test element filtering analysis which the M&T Motion applied was the filtering analysis applicable when the infringed work is a "photograph." The infringed work is not a "photograph" or set of photographs, but rather is a "motion picture." The extrinsic element filtering analysis applicable in a given situation depends on what the infring<u>ed</u> work is, not what the infringing work is. The filtering analysis applicable when the work is something like a motion picture requires looking at the elements of plot, themes, dialogue, mood, setting, pace, characters, and sequence of events, and is much more forgiving to the plaintiff than the test applicable where the infringing work is a photograph. *See Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118-1119 (9th Cir. 2018), overruled on other grounds by *Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). The M&T Motion does not analyze any of these elements. The FAC pleads them in detail.

<u>Third</u>, the M&T Motion conducts no comparison or analysis at all of BR2049 against the recorded "We Robot" presentation as an infringing work, and that work is more than a photograph, too, even as to the infringing 11 seconds of Musk's voiceover of the infringing Exhibit C slide within the presentation.

<u>Fourth</u>, other than improperly to try to deny at the Rule 12(b)(6) stage Alcon's factual allegations, the M&T Motion's substantial similarity argument fails to address at all Alcon's claims that Musk and Tesla infringed by literal copying of either: a) the entirety of BR2049 into an AI image generator, or b) of qualitatively

significant protectable elements of BR 2049 into one.  A claim of literal copying does not require substantial similarity analysis (because the copying is exact).  Moreover, even if it were true that Musk and Tesla created the Exhibit C AI-generated image by using some unidentified "licensed image" as a base (rather than the AI to Musk and Tesla's knowledge using BR2049 directly), that begs the question of whether the "licensed image" was an infringing copy or derivative work of BR2049.  If it was, then by copying from an infringing copy, Musk and Tesla would still be direct infringers.  Musk and Tesla's "preview fact" that the foreground figure in Exhibit C was from a direction to the AI to "add Elon Musk in a duster," or the like, is belied by the words Musk uses in the presentation to describe the figure: Musk refers to the figure as "he" (*i.e.*, it is not supposed to be Musk and Musk tells the audience as much).

## VI. THE M&T MOTION'S ARGUMENTS AGAINST THE FAC'S VICARIOUS COPYRIGHT INFRINGEMENT FAIL

The M&T Motion appears to acknowledge that if the acts or fruits of the direct infringing conduct served as, or were used by the secondary liability defendant as, a draw or moving factor for the customers to pay money to the secondary liability defendant, that would be enough to satisfy the direct financial benefit prong of vicarious liability.  As laid out in detail in the FAC, the whole point of including the infringements in the presentation was to leverage BR2049's storytelling power to more effectively push the audience to do what Musk and Tesla wanted: give them money for their cars and car company.

## VII. DEFENDANTS MAKE NO INDEPENDENT RULE 12(b)(6) CHALLENGE TO PLAINTIFF'S CONTRIBUTORY COPYRIGHT INFRINGEMENT CLAIM

The only challenge the M&T Motion makes to Alcon's contributory copyright infringement claim is that it has to fail if the M&T Motion's Rule 12(b)(6)

challenge to all direct infringement claims succeeds.  Since, as discussed above, the M&T Motion's challenge to the direct infringement claims is defective in several respects, the contributory copyright infringement claim necessarily survives, too.

## VIII. THE M&T MOTION'S CHALLENGE TO PLAINTIFF'S LANHAM ACT CLAIM FAILS

The M&T Motion's Lanham Act claim challenge seems premised mostly on mischaracterizing the allegations as presenting a situation like in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) or *Comedy III Productions, Inc. v. New Line Cinema*, 200 F.3d 593 (2000), where the goods or services that the defendant is alleged to be improperly marketing with the plaintiff's marks are expressive works, like a movie.  Alcon's allegations are very plainly that Musk and Tesla are using Alcon's marks to sell cars.  *Dastar* and *Comedy III* are entirely inapposite.  *Lions Gate Ent., Inc. v. TD Ameritrade Servs. Co., Inc.*, No. 2:15-05024-DDP-E, 2017 WL 4621541 (C.D. Cal. Oct. 16, 2017) is, respectfully, a troubled opinion where the district court's reasoning is less than tight or persuasive, and which Alcon contends was wrongly decided.  However, even if *Lions Gate* was not wrongly decided, the reason the district court ultimately rested on as to why it was ruling against Lions Gate on false affiliation and false advertising claims was that the good or service that TD Ameritrade was using the "Dirty Dancing" marks and goodwill to sell was financial services, and Lions Gate had not pled that Lions Gate was actually in the business of licensing *Dirty Dancing* for financial services.  This is not that kind of case.  Alcon has very clearly pled that it has an established business of licensing BR2049 for car partnerships.

To the extent that Alcon understands them correctly, the M&T Motion's arguments that Alcon has not pled ownership of any relevant marks or trade dress is premised on arguing that a claim under 15 U.S.C. § 1125(a)(1)(A) can only be established by pleading and proving defendant's use of an exact mark owned by the

Plaintiff. That is not the law. The relevant question, likelihood of confusion, is tested under all the circumstances, and looks broadly, not narrowly. *See, e.g.*, the "total effect of [the infringer's] product and package on the eye of the ordinary purchaser test" applied in cases such as *Warner Bros. Entertainment v. Global Asylum, Inc.*, 107 U.S.P.Q.2d 1910, 2012 WL 6951315 at *8 (C.D. Cal. 2012).

The M&T Motion also misstates the law in saying that Musk and Tesla's intention to trade off of Alcon's mark is not relevant in Lanham Act analysis. That is incorrect. The defendant's bad faith intent or willful intent is one of the factors in the applicable likelihood of confusion test, which is still the *Sleekcraft* test, *see, e.g., Network Automation, Inc. v. Advanced Systems Concepts, Inc.,* 638 F.3d 1137, 1145-46 (9th Cir. 2011).

## IX.  CONCLUSION

If the Court goes forward with the M&T Motion, it should be denied. If any part of it is granted, Alcon requests leave to further amend.

DATED: February 13, 2025            ANDERSON YEH PC
                                    Edward M. Anderson
                                    Regina Yeh

                                    _____
                                    Attorneys for Plaintiff
                                    ALCON ENTERTAINMENT, LLC

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Alcon Entertainment, LLC, certifies that this brief contains 2,786 words, which complies with the word limit of L.R. 11-6.1.

_____
Edward M. Anderson