A. Louis Dorny (CA 212054)
ldorny@tesla.com
Terry W. Ahearn (CA 216543)
tahearn@tesla.com
Krista M. Carter (CA 225229)
kricarter@tesla.com
TESLA, INC.
3000 Hanover St.
Palo Alto, CA 94304
Tel: (510) 298-8516

Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (213) 533-4240 / Fax: (858) 678-5099

*Additional counsel listed on signature page*

Attorneys for Defendants
Tesla, Inc. and Elon Musk

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALCON ENTERTAINMENT, LLC, a Delaware Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> TESLA, INC., a Texas Corporation; ELON MUSK, an individual; WARNER BROS. DISCOVERY, INC., a Delaware Corporation, <br><br> Defendants. | Case No. 2:24-cv-09033-GW-RAO <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS TESLA, INC. AND ELON MUSK'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT** <br><br> Hearing Date: April 7, 2025 <br> Hearing Time: 8:30 a.m. <br> Courtroom: 9D <br> Judge: Hon. George H. Wu |

# **TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................1

II.    RELEVANT BACKGROUND .........................................................................2

       A.     Defendants' "We, Robot" Event ............................................................2

       B.     BR2049 ...........................................................................................................3

III.   LEGAL STANDARD ..........................................................................................3

IV.    ARGUMENT ........................................................................................................4

       A.     Plaintiff Fails to State a Claim for Direct Copyright
              Infringement ...............................................................................................4

              1.     The Court Can Decide Substantial Similarity Now.....................5

              2.     There Is No Substantial Similarity ...........................................6

       B.     Plaintiff Fails to State a Claim for Vicarious and
              Contributory Copyright Infringement................................................14

       C.     Plaintiff Fails to State a Lanham Act Claim .....................................17

              1.     Plaintiff's Allegations of Secondary Meaning Are
                     Speculative................................................................................17

              2.     Plaintiff Fails to Plead Trade Dress Rights .............................18

              3.     Plaintiff's Trade Dress Claim Is Impermissibly
                     Within the Scope of Copyright..................................................20

              4.     Plaintiff Fails to Plead Trademark Rights in "Blade
                     Runner" .....................................................................................22

       D.     The Court Should Dismiss the Lanham Act Claim Under
              the Nominative Fair Use Defense or First Amendment.....................23

              1.     Fair Use Precludes Plaintiff's Claims.......................................23

              2.     Free Speech Precludes Plaintiff's Claims..................................24

       E.     The FAC Violates Rule 8(a) ...................................................................25

V.     CONCLUSION ..................................................................................................26

CERTIFICATE OF COMPLIANCE..................................................................27

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alcon Ent., LLC v. Automobiles Peugeot SA*,
    No. 19-cv-00245-CJC-AFMx, 2020 WL 8365240 (C.D. Cal. Feb. 26, 2020) ........................................................................................25, 26

*Applied Underwriters, Inc. v. Lichtenegger*,
    913 F.3d 884 (9th Cir. 2019) ...........................................................23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................3

*Bell v. Pac. Ridge Builders, Inc.*,
    No. 19-cv-01307-JST, 2019 WL 13472127 (N.D. Cal. June 4, 2019) .............15

*Carlini v. Paramount Pictures Corp.*,
    No. 21-55213, 2022 WL 614044 (9th Cir. Mar. 2, 2022)..............................6, 7

*Carranza v. Lideres Ent. Grp.*,
    No. 09-cv-03604-GW-CWx, 2009 WL 10675974 (C.D. Cal. June 29, 2009) ........................................................................................21

*Chance v. Pac-Tel Teletrac Inc.*,
    242 F.3d 1151 (9th Cir. 2001) ...........................................................18

*Comedy III Prods., Inc. v. New Line Cinema*,
    200 F.3d 593 (9th Cir. 2000) ........................................................20, 21

*Corbello v. Valli*,
    974 F.3d 965 (9th Cir. 2020) .............................................................5

*Crafty Prods., Inc. v. Michaels Companies, Inc.*,
    424 F. Supp. 3d 983 (S.D. Cal. 2019) ................................................20

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003)..........................................................................21

*Denims v. Ram Imports, Inc.*,
    No. 20-cv-09254-DSF-JCx, 2020 WL 11884712 (C.D. Cal. Dec. 10, 2020) ........................................................................................20

*DuMond v. Reilly*,
    No. 19-cv-08922-GW-AGRx, 2021 WL 733311 (C.D. Cal. Jan. 14,
    2021) ........................................................................................................ 5

*Erickson Prods., Inc. v. Kast*,
    921 F.3d 822 (9th Cir. 2019) ............................................................ 15, 16

*Esplanade Prods., Inc. v. Walt Disney Co.*,
    No. 17-cv-02185-MWF-JCx, 2017 WL 5635027 (C.D. Cal. Nov. 8,
    2017) ..................................................................................................... 7, 8

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ................................................................ 3

*Goldberg v. Cameron*
    787 F. Supp. 2d 1013 (N.D. Cal. 2011) ................................................. 7

*Google LLC v. Oracle Am., Inc.*,
    593 U.S. 1 (2021) ................................................................................... 4

*Haas Automation, Inc. v. Steiner*,
    No. 2:24-cv-03682-AB-JC, 2024 WL 4440914 (C.D. Cal. Sept. 25,
    2024) ..................................................................................................... 25

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
    No. 14-cv-03954-DDP-MANx, 2014 WL 6892141 (C.D. Cal. Nov.
    5, 2014) ............................................................................................ 18, 20

*Jangle Vision, LLC v. Alexander Wang Inc.*,
    No. 21-cv-09964-GW-Ex, 2022 U.S. Dist. LEXIS 110600 (C.D.
    Cal. June 3, 2022) .................................................................................. 5

*Johnson v. Maraj*,
    No. 23-cv-05061-PA-AFMx, 2023 WL 8883316 (C.D. Cal. Dec. 15,
    2023) ..................................................................................................... 15

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
    150 F.3d 1042 (9th Cir. 1998) .............................................................. 19

*Lions Gate Ent. Inc. v. TD Ameritrade Servs. Co.*,
    170 F. Supp. 3d 1249 (C.D. Cal. 2016) ............................................ 21, 22

*Lions Gate Ent., Inc. v. TD Ameritrade Servs. Co.*,
    No. 2:15-cv-05024-DDP-E, 2017 WL 4621541 (C.D. Cal. Oct. 16,
    2017) ................................................................................................22

*Long v. Dorset*,
    854 F. App'x 861 (9th Cir. 2021) .........................................................17

*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006) ................................................................4

*Mattel, Inc. v. MCA Recs., Inc.*,
    296 F.3d 894 (9th Cir. 2002) ..............................................................25

*Mattel, Inc. v. Walking Mountain Prods.*,
    353 F.3d 792 (9th Cir. 2003) ..............................................................23

*McGillvary v. Netflix, Inc.*,
    No. 2:23-cv-01195-JLS-SK, 2024 WL 3588043 (C.D. Cal. July 30,
    2024) ................................................................................................24

*Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Co.*,
    900 F. Supp. 1287 (C.D. Cal. 1995) .....................................................8

*Pepperdine Univ. v. Netflix, Inc.*,
    No. 2:25-cv-01429-CV-ADSx, 2025 WL 632983 (C.D. Cal. Feb.
    26, 2025) .....................................................................................24, 25

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ............................................................14

*Perfect 10, Inc. v. Giganews, Inc.*,
    No. 11-cv-07098-ABC-SHx, 2013 WL 3610706 (C.D. Cal. July 10,
    2013) ................................................................................................15

*Pretty in Plastic, Inc. v. Bunn*,
    No. 18-cv-06091-GW-SKx, 2019 WL 1771654 (C.D. Cal. Feb. 8,
    2019) ..................................................................................................5

*Reaper v. ACE Am. Ins. Co.*,
    No. 23-15178, 2024 WL 810697 (9th Cir. Feb. 27, 2024)....................14

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018) ..............................................4, 5, 6, 14

*Rice v. Fox Broad. Co.*,
    330 F.3d 1170 (9th Cir. 2003) ...................................................................8

*Rice v. Fox Broad. Co.*,
    148 F. Supp. 2d 1029 (C.D. Cal. 2001) ....................................................20

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989) ...............................................................24, 25

*Silas v. Home Box Off., Inc.*,
    201 F. Supp. 3d 1158 (C.D. Cal. 2016) .....................................................5

*Sims v. Opportunity Fin., LLC*,
    No. 20-cv-04730-PJH, 2021 WL 1391565 (N.D. Cal. Apr. 13, 2021) .............14

*Skidmore v. Led Zeppelin*,
     952 F.3d 1051 (9th Cir. 2020) (en banc) ..................................................5

*Sleep Science Partners v. Lieberman*,
    No. 09-cv-04200-CW, 2010 WL 1881770 (N.D. Cal. May 10, 2010) .............19

*Slep-Tone Ent. Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*,
    845 F.3d 1246 (9th Cir. 2017) ................................................................21

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ...................................................................4

*Warner Bros. Ent. v. Global Asylum, Inc.*,
    No. 12-cv-09547-PSG-CWx, 2012 WL 6951315 (C.D. Cal. Dec. 10, 2012) ..............................................................................................19

*Yankee Pub. Inc. v. News Am. Pub. Inc.*,
    809 F. Supp. 267 (S.D.N.Y. 1992) ..........................................................24

*Zella v. E.W. Scripps Co.*,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) ....................................................4

**Statutes**

15 U.S.C. § 1125(a)(3).................................................................................19

15 U.S.C. § 1127..........................................................................................17

17 U.S.C. § 102(b) ........................................................................................4

**Other Authorities**

Fed. R. Civ. P. 8 ...................................................................................2, 25

Fed. R. Civ. P. 12(b)(6) ..............................................................................4

2 McCarthy on Trademarks and Unfair Competition § 15:1 (5th ed.)....................18

# I.    INTRODUCTION

Plaintiff alleges that Tesla, Inc. ("Tesla") and Elon Musk ("Musk") (collectively "Defendants") unlawfully used a scene from the film *Blade Runner 2049* at an event promoting Tesla's forthcoming "Cybercab" and Musk's social mission to make all driving autonomous. Even on its second attempt, Plaintiff fails to plead a plausible case—both legally and factually.

Accepting all facts as true, the accused work is ***not*** substantially similar to Plaintiff's film. As a result, Plaintiff fails to state a claim for direct copyright infringement. Without direct copyright infringement, Plaintiff's secondary liability claims also fail. The vicarious copyright claim should be dismissed for the additional reason that Plaintiff fails to plead a causal link between the alleged infringement and any direct financial gain to Defendants, a necessary element.

Plaintiff's Lanham Act claim fares no better. There was no "brand affiliation" event, a repeated claim by Plaintiff that is belied by the event itself. Defendants' passing reference to "Blade Runner"—a name that Plaintiff does not even own—to comment on the plight of today's society caused by human-driven automobiles does not give rise to a trademark claim. Plaintiff also improperly seeks to use trademark law to address copyright issues, a tactic consistently rejected by courts. Plaintiff additionally fails to plausibly plead trade dress rights or any trademark rights in connection with the goods at issue—autonomous automobiles.

None of these deficiencies can be cured by amendment. The works are before the Court and will never change. They alone evidence the implausibility of Plaintiff's claims. Therefore, Defendants respectfully request that the Court dismiss Plaintiff's First Amended Complaint ("FAC") in its entirety, with prejudice.[1]

---

[1] If the Court dismisses the direct copyright infringement claim against Defendants for failure to plead substantial similarity, the Court should also dismiss that claim against WBDI for the same reason. Defendants understand WBDI is simultaneously moving

Lastly, the FAC should be dismissed for violating Fed. R. Civ. P. 8(a). It is an excessively verbose rambling of unnecessary information, confusing allegations, irrelevant details, and speculative theories involving everything from sorcerers and spell books to *Homo sapiens* and rogue replicants with digressions of historian Harari and actress Zendaya. Plaintiff and Plaintiff's counsel have been admonished for this before yet disregards that prior ruling here. The FAC should thus be dismissed because it is not a concise statement of Plaintiff's claims and needlessly burdens Defendants and the Court.

## II.    RELEVANT BACKGROUND

### A.    Defendants' "We, Robot" Event

On October 10, 2024, Tesla revealed its revolutionary "Cybercab" at an event titled "We, Robot" held at a Warner Bros. studio. Musk gave a presentation highlighting the benefits of autonomous driving. The mood was upbeat, and the theme was optimism for the future. The recording of the event was lodged at Dkt. 25 as Exhibit 2 ("Accused Work").

Musk opened the event with a short presentation. Ex. 2, 4:13-23:35. He talked about the dangers of human-driven cars, time wasted with driving and parking, and city space now lost to parking lots. To juxtapose the societal benefits of autonomous automobiles, he showed an image of a "dark and dismal" future with the words "NOT THIS" in large, capital letters for 11-seconds. *Id.*, 5:33-6:08; FAC, Ex. C. Musk noted that while he was a fan of "Blade Runner," he did not want to live in "that" future, referring to the bleak, dystopian society that formed the backdrop of that film.

As alleged, "Musk segued to talking about how what we all should want is a happier looking future, and how happy and joyful his vision of cities and highways filled with driverless robot cars will be and why." FAC ¶ 106; Ex. 2, 5:58-6:10, 7:00-

---

to dismiss the direct and vicarious copyright infringement and Lanham Act claims for failure to state a claim.

10:55. He described the benefits of autonomous vehicles and humanoid robots on cities, the economy, and people.

### B.    BR2049

In contrast is *Blade Runner 2049* ("BR2049"), a "sci-fi" motion picture that tells the story of "artificially intelligent android main character K…[who] explores…ruins of a post-apocalyptic Las Vegas, seeking answers to existential questions about his own past." FAC ¶ 4; *see also id.* ¶¶ 52-68. Plaintiff interprets "[o]ne of BR2049's main themes…[as] society being at a critical decision point as to how humans and artificial intelligence relate to each other, and specifically that there are extremely consequential choices about that which must be made with urgency." *Id.* ¶ 71(c). "BR2049 uses story elements of apocalyptic event back story, combined with specific visual elements such as orange lighting, urban ruin, and the K figure…to create a mood of anxiety, fear and urgency, specifically around the gravity of the Human-AI Decision Point question…." *Id.* ¶ 71(d).

BR2049 is not to be confused with the 1982 original "Blade Runner" film, which Plaintiff alleges no ownership interest in; nor does Plaintiff own the "Blade Runner" name. A copy of BR2049 is being lodged concurrently as Exhibit 3.

## III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2] The Court need not accept "naked assertions devoid of further factual enhancement." *Id.* "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). This is particularly apt here, where the FAC contains speculative theories and conjecture under the guise of allegations made on "information and belief."

---

[2] All quotations cleaned up and emphasis added unless otherwise noted.

MPA ISO TESLA AND MUSK'S MOTION TO DISMISS FAC
Case No. 2:24-cv-09033-GW-RAO

On a motion to dismiss, a court may properly consider the complaint and material attached to the complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A court may also consider "evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion" and "assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.*; *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Further, a court may consider "matters subject to judicial notice" including "generic elements of creative works" to dismiss a copyright claim. *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128-29 (C.D. Cal. 2007).

## IV.   ARGUMENT

### A.     Plaintiff Fails to State a Claim for Direct Copyright Infringement

To maintain its copyright claim, Plaintiff must plausibly allege: (1) it owns a valid copyright; and (2) Defendants copied protected elements of the expression of Plaintiff's work. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116-17 (9th Cir. 2018), *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc). The second element has two distinct subparts: factual copying and unlawful appropriation. *Id.* at 1117. Not all copying is unlawful. *Id.* While Defendants did not copy at all, for purposes of this motion, Plaintiff must plausibly allege Defendants copied its ***protectable expression***. *Id.* It has not.

Copyright law does not protect ideas or concepts. *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 18 (2021); *Rentmeester*, 883 F.3d at 1117; 17 U.S.C. § 102(b) (copyright protection does not "extend to any idea…[or] concept…regardless of the form in which it is described, explained, illustrated, or embodied in [the] work"). Plaintiff must plausibly allege Defendants unlawfully copied "enough of [Plaintiff's] expression…to render the two works 'substantially similar.'" *Rentmeester*, 883 F.3d at 1117. Similarity between unprotectible elements—such as "familiar stock scenes

and themes" or "common elements"—will not satisfy this requirement. *Corbello v. Valli*, 974 F.3d 965, 975 (9th Cir. 2020); *Skidmore*, 952 F.3d at 1069. No one, for example, can own the setting of a post-apocalyptic city bathed in orange/yellow twilight. Nor the image of a man wearing a duster—a character common in sci-fi and westerns. Defendants may freely use these stock scenes and characters.

### 1.    The Court Can Decide Substantial Similarity Now

This Court has regularly dismissed copyright infringement claims for lack of substantial similarity. *E.g.*, Ex. 1 (Dkt. 24-1), Tentative Ruling on Defendants' Motion to Dismiss at 4 ("[T]here is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss."), *adopted by Jangle Vision, LLC v. Alexander Wang Inc.*, No. 21-cv-09964-GW-Ex, 2022 U.S. Dist. LEXIS 110600 (C.D. Cal. June 3, 2022), *aff'd*, No. 22-55642, 2023 WL 7042518 (9th Cir. Oct. 26, 2023); *DuMond v. Reilly*, No. 19-cv-08922-GW-AGRx, 2021 WL 733311 (C.D. Cal. Jan. 14, 2021); *Silas v. Home Box Off., Inc.*, 201 F. Supp. 3d 1158 (C.D. Cal. 2016), *aff'd*, 713 F. App'x 626 (9th Cir. 2018); *Pretty in Plastic, Inc. v. Bunn*, No. 18-cv-06091-GW-SKx, 2019 WL 1771654 (C.D. Cal. Feb. 8, 2019), *aff'd*, 793 F. App'x 593 (9th Cir. 2020).

In *Rentmeester*, the court dismissed a copyright claim with prejudice for lack of substantial similarity where the two visual works at issue were attached to the complaint and "capable of examination and comparison." 883 F.3d at 1116, 1123. The Ninth Circuit affirmed because a simple comparison revealed no substantial similarity of protectable elements. *Id.* at 1124; Fig. 1. While Nike's image was "obviously inspired by Rentmeester's," that was not enough to avoid dismissal. *Rentmeester*, 883 F.3d at 1116. The images' shared similarities were general ideas and concepts, and the images differed in legally significant ways, such as background,

angle, lighting/shadow, perspective, and position and arrangement of elements. *Id.* at 1119, 1122-24.

| Figure 1[3] | |
|---|---|
| *Rentmeester's Image* | *Nike's Image* |
|  | |

This Court should likewise dismiss for lack of substantial similarity. It has everything it needs—the two works at issue and the ability to compare them—to determine the Accused Work is ***not*** substantially similar to BR2049. Nothing disclosed during discovery will change the analysis. *Id.* at 1123.

### 2.    There Is No Substantial Similarity

To prove substantial similarity, Plaintiff must satisfy both the "intrinsic test" and the "extrinsic test." *Id.* at 1118. The extrinsic test may be determined as a matter of law. *Id.* It requires an objective comparison of the protected elements of the works and is applied in three steps: (1) Plaintiff must identify the protectable similarities between the copyrighted work and the accused work; (2) the Court disregards unprotectable elements, like "ideas, concepts, and common elements"; and (3) the Court determines whether and to what extent the remainder warrants copyright protection. Ex. 1 at 8. The extrinsic test "focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the two works." *Carlini v. Paramount Pictures Corp.*, No. 21-55213, 2022 WL 614044, at *1 (9th Cir. Mar. 2, 2022). For each, the Court must disregard

---

[3] *Id.* at 1126.

MPA ISO TESLA AND MUSK'S MOTION TO DISMISS FAC
Case No. 2:24-cv-09033-GW-RAO

unprotectable ideas like scènes-à-faire, i.e., "situations and incidents that flow necessarily or naturally from a basic plot premise." *Id.* Here, an objective comparison reveals no substantial similarity.

The FAC contains a "Non-Exhaustive List of [Allegedly] Protected Elements of BR2049" comprised of theme, mood, setting, and the character "K"—but much of this list is amorphous and unprotectable—and does not appear in the Accused Work. FAC ¶ 71. Even Plaintiff admits "[n]one of [its pleaded] themes or moods are themselves protectable by any intellectual property law." *Id.* ¶ 121.

Plaintiff's "Urgent Human-AI Decision Point Theme" and "Mood of Anxiety, Fear and Urgency" (*id.* ¶ 71(c)-(d)) are unprotectable scènes-à-faire. In *Goldberg v. Cameron*, the court found "the general idea of a futuristic conflict between man and machines" and "portrayals of artificial intelligence at war with humans" were "commonplace in science fiction" and thus unprotectable. 787 F. Supp. 2d 1013, 1020 (N.D. Cal. 2011) (finding any similarities between works "set in the future" attributable to unprotectable ideas). Here, the theme of "society being at a critical decision point as to how humans and artificial intelligence relate to each other" is well-trodden in science fiction. FAC ¶ 71(c); *Goldberg*, 787 F. Supp. 2d at 1020. "[A]bstract, generic, and well-trodden" themes are unprotectable. *Esplanade Prods., Inc. v. Walt Disney Co.*, No. 17-cv-02185-MWF-JCx, 2017 WL 5635027, at *11 (C.D. Cal. Nov. 8, 2017), *aff'd*, 768 F. App'x 732 (9th Cir. 2019). "[A]nxiety, fear and urgency" and "the importance of making the right decisions" are generic elements used in storytelling. FAC ¶ 71(d); *Esplanade*, 2017 WL 5635027, at *11.

Moreover, Plaintiff's alleged theme and mood are not in the Accused Work, which promotes cost-efficient, safe, sustainable transportation and looks to the future with optimism. For eleven seconds, Musk considers a generic apocalyptic future, like the one in BR2049 and other sci-fi stories, but even then, there is no element of urgency, fear, or anxiety. Plaintiff draws comparisons where there are none.

Similarly, the setting—a "post-apocalyptic urban ruin" in "orange light"— is attributed to the unprotectable idea of a dystopian future. FAC ¶ 71(e). Under the scènes-à-faire doctrine, "expressions indispensable and naturally associated with the treatment of a given idea are treated like ideas" and unprotectable. *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1175 (9th Cir. 2003).

As described, the character "K," a "duster-clad man with close-cropped hair viewed in silhouette or near-silhouette" (FAC ¶¶ 71(b), 75) is also unprotectable. A character must have physical *and* conceptual qualities that are sufficiently delineated and "especially distinctive" to be copyrighted. *Esplanade*, 2017 WL 5635027, at *12. Alcon cites *Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co.*, but that plaintiff delineated numerous distinct character attributes such as a "young, tuxedo-clad, British-looking" man "with beautiful women in tow and grotesque villains close at hand" who "exude[s] uncanny calm under pressure, exhibit[s] a dry sense of humor and wit." 900 F. Supp. 1287, 1298 (C.D. Cal. 1995). By that description, the reader ***knows*** the character is James Bond. In contrast, identifying K as a silhouetted man in a duster with close-cropped hair is insufficient to warrant copyright protection. *See Rice*, 330 F.3d at 1175 (character described merely by his "standard magician garb" not protected). Plaintiff cannot plausibly allege the nondescript man in the Accused Work is substantially similar to K. *Esplanade*, 2017 WL 5635027, at *11-12 (visual comparisons of characters yielded no substantial similarity).

A more focused comparison of Exhibits A and C shows that the images *are different.*

| Figure 2 | |
|---|---|
| *Exhibit A (Dkt. 37-1)* | *Exhibit C (Dkt. 37-3)* |
|  |  |

Exhibit A portrays a man facing 180 degrees away from the camera in a knee-length coat, a futuristic vehicle, two crumbling bridges, a round bunker, and a skyline with futuristic buildings. He is small, relative to the vehicle, creating the impression that he is farther away from the camera than the vehicle. The man is also smaller than the skyline, creating the impression that he is walking towards city buildings at the same elevation.

In contrast, Exhibit C portrays a man wearing an ankle-length coat standing on the right side of the frame and looking down on a city. The image contains no bridge, no bunker, and no vehicle. The skyline is quite different. The man is the largest subject in the image, creating the impression that he is closest to the camera. He is close in height to the buildings, creating the impression that he is at a higher elevation. He is turned slightly away from the camera, which is necessary because he is looking at the city in the backdrop. Exhibit C portrays "NOT THIS" in the top-left corner and "TESLA LIVE" in the bottom-right corner.

MPA ISO TESLA AND MUSK'S MOTION TO DISMISS FAC
Case No. 2:24-cv-09033-GW-RAO

Plaintiff's Exhibit B images differ more drastically from Exhibit C. The first two images (Figs. 3 and 4) contain no man and no skyline.



Figure 3

| Exhibit B Image 1 (Dkt. 37-2 at 2) | Exhibit C |



Figure 4

| Exhibit B Image 2 (Dkt. 37-2 at 3) | Exhibit C |

The third image (Fig. 5) portrays only a man in the center of a flat foreground—nothing like the rocky foreground and skyline in Exhibit C.



Figure 5

| Exhibit B Image 3 (Dkt. 37-2 at 4) | Exhibit C |

The fourth image (Fig. 6) shows a man on the left approaching a broken sculpture, subject matter not in Exhibit C. There is no skyline at all.

| Figure 6 | |
| --- | --- |
| *Exhibit B Image 4 (Dkt. 37-2 at 5)* | *Exhibit C* |



The fifth and sixth images (Figs. 7 and 8) feature sculptures and a man walking amongst them, subject matter that, again, is not in Exhibit C.

| Figure 7 | |
| --- | --- |
| *Exhibit B Image 5 (Dkt. 37-2 at 6)* | *Exhibit C* |



| Figure 8 | |
| --- | --- |
| *Exhibit B Image 6 (Dkt. 37-2 at 7)* | *Exhibit C* |

The subject matter of the seventh through twelfth images (Figs. 9 through 14) are also plainly different from Exhibit C.







MPA ISO TESLA AND MUSK'S MOTION TO DISMISS FAC
Case No. 2:24-cv-09033-GW-RAO

| Figure 12 | |
| --- | --- |
| *Exhibit B Image 10 (Dkt. 37-2 at 11)* | *Exhibit C* |



| Figure 13 | |
| --- | --- |
| *Exhibit B Image 11 (Dkt. 37-2 at 12)* | *Exhibit C* |



| Figure 14 | |
| --- | --- |
| *Exhibit B Image 12 (Dkt. 37-2 at 13)* | *Exhibit C* |



Plaintiff's focus on this "sequence" shows that it seeks a copyright over the mere idea of "an orange-light-bathed ruined and abandoned cityscape" and a "silhouetted trench coat-garbed (or duster-garbed) man" (FAC ¶¶ 81, 109). But "[p]ermitting [it] to claim such a right would withdraw those ideas or concepts from the stock of materials available to other artists…thereby thwarting copyright's

fundamental objective of fostering creativity." *Rentmeester*, 883 F.3d at 1123. There is no substantial similarity.

To avoid this outcome, Plaintiffs spins a tale of "literal copying" solely on information and belief. FAC ¶ 127. While pleading on information and belief is permissible where the facts are peculiarly within the defendant's possession or where the belief is based on factual information that makes the inference of culpability plausible, Plaintiff's heavy reliance on information and belief is misplaced. *Sims v. Opportunity Fin., LLC*, No. 20-cv-04730-PJH, 2021 WL 1391565, at *8 (N.D. Cal. Apr. 13, 2021). It does not allow litigants to conjure up creative stories without any actual factual basis. Here, "the FAC, when read as a whole, does not support [Plaintiff's] information and belief allegation[s]." *Id.*; *see also Reaper v. ACE Am. Ins. Co.*, No. 23-15178, 2024 WL 810697, at *1 (9th Cir. Feb. 27, 2024). The fact that culpability is not plausible is clear by reviewing BR2049 and the Accused Work. There can be no information and belief when Tesla has already advised Alcon that it lawfully licensed an image from a stock photo agency and prompted an AI-driven image editor to add "Elon Musk in trench coat looking into the city." Dkt. 22-1 at 2. Yet Plaintiff still alleges on "information and belief" that a BR2049 image or clip "or even possibly the full BR2049 motion picture" was copied into an AI generator to create Exhibit C (FAC ¶¶ 103, 127(a), Ex. C), and adds, on "information and belief," an "alternative theory" that the "licensed image" was "generated by literal copying" of BR2049. *Id.* ¶¶ 127(b), 104. Both theories are not factually supported and are contradicted by the licensed image. McCallion Declaration, Exhibit 4.

## B.    Plaintiff Fails to State a Claim for Vicarious and Contributory Copyright Infringement

Secondary liability cannot exist without direct copyright infringement. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007). Because Plaintiff fails to state a claim for direct infringement the Court should also dismiss Plaintiff's

1  vicarious and contributory copyright infringement claims. *E.g.*, *Johnson v. Maraj*, No.
2  23-cv-05061-PA-AFMx, 2023 WL 8883316, at *3 (C.D. Cal. Dec. 15, 2023)
3  (dismissing contributory and vicarious infringement claims because plaintiff failed to
4  plausibly allege substantial similarity).

5      The vicarious claim should be dismissed for the additional reason that Plaintiff
6  fails to plausibly plead a key element: a ***direct*** financial benefit from the alleged
7  infringement. *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-cv-07098-ABC-SHx, 2013
8  WL 3610706, at *5 (C.D. Cal. July 10, 2013), *aff'd*, 847 F.3d 657 (9th Cir. 2017).
9  "The essential aspect of the 'direct financial benefit' inquiry is whether there is a
10  ***causal*** relationship between the infringing activity and any financial benefit a
11  defendant reaps." *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 829 (9th Cir. 2019).

12      In *Erickson,* the Ninth Circuit vacated a jury verdict of vicarious copyright
13  liability where the plaintiff claimed, *inter alia*, "(1) the [allegedly infringing works]
14  drew customers to purchase [defendant's] services; [and] (2) [defendant] avoided
15  paying licensing fees to Erickson." *Id.* It explained that infringement that acts as a
16  true ***draw*** to the defendant's website—bringing users to the website or inducing
17  purchases—may qualify as a direct financial benefit, but infringing material that is
18  "just an added benefit" does not. *Id.* at 829-30. A plaintiff must plausibly allege more
19  than that defendant's allegedly infringing activities "*generally* acted as a draw for
20  [defendant's] business" since "vicarious infringement requires [plaintiff] to
21  demonstrate a causal link between the *infringing activities* and a financial benefit to
22  [defendant]." *Bell v. Pac. Ridge Builders, Inc.*, No. 19-cv-01307-JST, 2019 WL
23  13472127, at *6 (N.D. Cal. June 4, 2019) (emphasis original). Here, Plaintiff claims
24  that Defendants financially benefited from the alleged infringement because (i) the
25  accused image was "featured sufficiently prominently" in the Accused Work such
26  that it was "the draw" to selling cars and Tesla; (ii) Tesla avoided a highly speculative
27  expenditure for a BR2049 brand affiliation; and (iii) Musk ***believed*** the purported

28

"BR2049 reference and affiliation" with Tesla's "Cybercab" would increase consumer interest in "Cybercabs," and as a result of the alleged infringement, "Tesla would sell more [Cybercabs] or experience more pre-orders for them." FAC ¶¶ 144-146. Plaintiff further alleges Musk believed he would benefit financially from the infringement because the alleged increased consumer interest would increase Tesla's stock price, and Musk is the largest Tesla shareholder and has compensation tied to Tesla's stock price. *Id.* ¶ 145. None of these allegations rise to a direct financial interest.

Plaintiff's allegations that the alleged infringement was "part of the draw …to sell cars" is merely speculative, as is the vague allegation that it increased consumer and investor interest in Tesla and the "Cybercab." *Id.* ¶¶ 144-145. Tesla's "Cybercab" is not for sale so Plaintiff does not and cannot plead that use of the Accused Work led to any such sales. If anything, the allegation amounts to only an "added benefit" that *Erickson* held is not a direct financial benefit. Even taken as true, Musk's ***belief*** is irrelevant, and this allegation is far too indirect to satisfy a vicarious infringement claim. *Erickson*, 921 F.3d at 831 (a benefit is not "direct" if it would reach the defendant "only incidentally"). Further, "the direct infringer's avoidance of fees alone cannot satisfy the requirement of a direct financial benefit to the vicarious infringer." *Id.* at 830. "Otherwise, the requirement of a direct financial benefit would be rendered meaningless, since—at least where, as here, licenses are for sale—a direct infringer necessarily saves money by failing to obtain a license." *Id.* Thus, the avoidance of a brand affiliation contract fee cannot form the basis of the direct financial benefit required to assert this claim. FAC ¶ 146.[4]

Paragraph 148 of the FAC sums up the deficiencies in Plaintiff's attempt to plead a direct financial benefit: it claims "an incentive to permit infringement" only.

---

[4] The alleged cost savings is also speculative. FAC ¶ 146 (alleging Tesla likely would have had to pay for a brand affiliation, **"*if Alcon had even been willing to do it at all*"**).

1  But neither an incentive nor vague assertion of positive reactions to a presentation
2  suffice to plead that Defendants actually benefited financially from the alleged
3  infringement. *See Long v. Dorset*, 854 F. App'x 861, 864 (9th Cir. 2021) (affirming
4  dismissal of vicarious copyright claim because allegations that plaintiff paid
5  Facebook to post advertisements for his page "do not suffice as allegations that
6  Facebook ***made money*** from [direct infringer's] infringing posts on that page
7  specifically").

8      **C.    Plaintiff Fails to State a Lanham Act Claim**

9      This claim is implausible for many reasons including that Alcon fails to
10  plausibly plead rights protected by the Lanham Act in connection with automobiles—
11  despite alleging this claim "is centered around [Defendants using] Alcon's marks and
12  trade dress to advertise cars and a car company." FAC ¶ 180. All four categories of
13  Plaintiff's alleged Lanham Act rights suffer from this deficiency: (a) the unregistered
14  *Blade Runner 2049* mark; (b) the character "K"; (c) trade dress in BR2049; and (d) a
15  combination of elements which evoke BR2049 (*id.* ¶¶ 73-76, 179). Plaintiff's attempt
16  to conjure up trade dress rights (as described in (c) and (d), which we address together)
17  also fails to meet the basic requirements for a trade dress claim and is an improper
18  attempt to circumvent copyright law. Alternatively, even if Plaintiff has alleged a
19  protectable mark or trade dress, any use by Defendants was nominative fair use and/or
20  free speech protected by the First Amendment.

21      **1.    Plaintiff's Allegations of Secondary Meaning Are Speculative**

22      None of the alleged marks or trade dress serve to indicate the source of the
23  goods at issue—autonomous cars. 15 U.S.C. § 1127 (defining "trademark" as a word,
24  name, symbol, or device used "to indicate the source of the goods"); FAC ¶ 113
25  (alleging Defendants "appropriate[d] BR2049's special secondary meaning in the
26  context of trying to sell artificially autonomous cars"). Plaintiff's conclusory
27  allegations that its asserted marks and trade dress have achieved secondary meaning
28

in connection with automobiles lack factual support. FAC ¶¶ 73-76. The allegations that Alcon developed secondary meaning do not specify *which* marks or trade dress were used (e.g., there is no allegation that "K" has been licensed for use with any goods) and concern use with *other* goods, such as comic books. *Id.* ¶ 77. Plaintiff's verbose and confusing pleading is an exercise in obfuscation, but when read carefully, the allegations reflect that Alcon is ***not*** actually "in the business" of engaging in license agreements with car companies to affiliate their brand with "BR2049's marks and brands." *Id*. Plaintiff's own allegations that it was "***in the process of*** engaging with automotive brands," "***intends*** to resume such efforts ***if possible***," and has merely "***potential*** auto brand partners" (*id.* ¶¶ 84, 122, 180, 182) show that such use is speculative. Mere possibilities and expressed interest ***are not trademark use*** and does not make an inference of secondary meaning plausible. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1157 (9th Cir. 2001) (trademark ownership "requires both appropriation and use in trade").

Spending "vast resources" to develop/promote the film, industry accolades, and publicity of the film (FAC ¶¶ 77-81) also do not create Lanham Act rights. These are efforts to promote the film, not to designate BR2049 as a "commercial source" of cars. 2 McCarthy on Trademarks and Unfair Competition § 15:1 (5th ed.) (secondary meaning identifies and distinguishes a "single commercial source"; "if a designation is not *used* as a mark to identify and distinguish source, it cannot possibly achieve a secondary meaning" (emphasis original)).

## 2. Plaintiff Fails to Plead Trade Dress Rights

Plaintiff asserts trade dress in still images and clips from BR2049[5] but fails to allege distinctiveness (*see supra* § IV(C)(1)) and non-functionality, nor does it "specifically define the list of elements that comprise the trade dress." *Homeland*

---

[5] There is a discrepancy between Paragraphs 74 and 179. Only Paragraph 74 alleges protection for audiovisual clips.

MPA ISO TESLA AND MUSK'S MOTION TO DISMISS FAC
Case No. 2:24-cv-09033-GW-RAO

*Housewares, LLC v. Euro-Pro Operating LLC*, No. 14-cv-03954-DDP-MANx, 2014 WL 6892141, at *3 (C.D. Cal. Nov. 5, 2014); *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1046-47 (9th Cir. 1998) (describing claim elements); 15 U.S.C. § 1125(a)(3) (party asserting unregistered "trade dress protection has the burden of proving that the matter sought to be protected is not functional").

Plaintiff's purported trade dress is unidentified. It points to "still images," "audiovisual clips," and "combinations of elements which evoke or tend to evoke BR2049," which is self-servingly described as ***Defendants' presentation***. FAC ¶¶ 74, 76, 179(c)-(d).[6] This leaves Defendants and the Court in the dark. Similarly unhelpful is the open-ended claim that Defendants "evoked" Alcon's "trade dress in iconic or recognizable still images from BR2049 ***such as*** Exhibit A and the Exhibit B images." FAC ¶ 179(c). To sufficiently state a claim, Plaintiff needs to specifically define its alleged trade dress ***and*** describe its contours by identifying what other portions (if any) of BR2049's 2-hour 43-minute run time constitute Plaintiff's "trade dress." *Sleep Science Partners v. Lieberman*, No. 09-cv-04200-CW, 2010 WL 1881770, at *3-4 (N.D. Cal. May 10, 2010) (dismissing claim due to undefined scope and failure to plead "sufficiently descriptive details" of television commercial trade dress where plaintiff claimed an introduction with the sound of loud snoring, graphics illustrating use of plaintiff's product, and user testimonials). This is particularly problematic when Plaintiff's allegations of secondary meaning in "BR2049 ***itself***" suggest Plaintiff claims trade dress rights in the *entire film*. FAC ¶ 74. Defendants are unaware of ***any*** precedent for claiming trade dress of an *entire film*.

---

[6] Plaintiff's reliance on *Warner Bros. Entertainment v. Global Asylum, Inc.* (FAC ¶ 76) is misplaced. That plaintiff owned the mark, and the court considered the "total effect" of the defendant's product and packaging to determine likelihood of confusion, not whether the plaintiff owned protectable rights. In fact, the court explained, "Plaintiffs cannot claim exclusive rights to the images [plaintiffs described]." No. 12-cv-09547-PSG-CWx, 2012 WL 6951315, at *8 (C.D. Cal. Dec. 10, 2012).

Plaintiff's exhibits, or the availability of the entire film, do not save this claim, as it is not the Court's job to do "all of the work for plaintiffs." *Crafty Prods., Inc. v. Michaels Companies, Inc.*, 424 F. Supp. 3d 983, 991-92 (S.D. Cal. 2019) (declining to inspect every exhibit and granting Rule 12(b)(6) motion with prejudice), *aff'd*, 839 F. App'x 95 (9th Cir. 2020); *Homeland Housewares*, 2014 WL 6892141, at *3 (dismissing trade dress claim for failure to "sufficiently identify the particular elements" sought to be protected); *Denims v. Ram Imports, Inc.*, No. 20-cv-09254-DSF-JCx, 2020 WL 11884712, at *3-4 (C.D. Cal. Dec. 10, 2020) (dismissing claim despite attachment of several photographs of alleged trade dress).

### 3. Plaintiff's Trade Dress Claim Is Impermissibly Within the Scope of Copyright

Plaintiff's trade dress claim also fails because it is based on the same allegations as Plaintiff's copyright claim. *E.g.*, FAC ¶¶ 35, 103-104, 179. This is impermissible and incurable, as "the Lanham Act cannot be used to circumvent copyright law." *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 595-96 (9th Cir. 2000) (affirming dismissal of Section 43(a) claim with prejudice); *Rice v. Fox Broad. Co.*, 148 F. Supp. 2d 1029, 1066 (C.D. Cal. 2001) (plaintiff whose arguments that film character is protectable mark "largely repeat and/or blend into those he made in favor of finding *copyright* protection for this character" cannot use Lanham Act to circumvent Copyright Act (emphasis original)).

Courts have repeatedly dismissed copyright-type Lanham Act claims at the pleadings stage. For example, in a case involving the alleged infringement of a film clip, the Ninth Circuit advised it "will not entertain th[e] expedition of trademark protection squarely into the dominion of copyright law, to allow for Lanham Act coverage of a piece of footage taken directly from a film…." *Comedy III*, 200 F.3d at 596. The court explained that to prevail on its Lanham Act claim, the plaintiff "must show that the clip at issue is actually a cognizable trademark." *Id.* at 594-95. It rejected

the plaintiff's "fanciful argument" that the clip (from a "The Three Stooges" film) was a collection of trademarks because it "was clearly covered by the Copyright Act…." *Id.* at 595-96. Thus, this Court can swiftly dismiss Plaintiff's fourth claim for relief even if it finds Plaintiff pleaded secondary meaning.

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), further illustrates the fatal shortcomings of Plaintiff's claim. The Supreme Court opined that rights within the scope of copyright do not also give rise to Lanham Act claims. *Id.* at 34. In applying *Dastar*, the Ninth Circuit explained, "[w]hen the claim is more accurately conceived of as attacking unauthorized copying, *Dastar* requires us to avoid recognizing a species of mutant copyright law by making such claims cognizable under the Lanham Act." *Slep-Tone Ent. Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1250 (9th Cir. 2017); *see also Carranza v. Lideres Ent. Grp.*, No. 09-cv-03604-GW-CWx, 2009 WL 10675974, at *3 (C.D. Cal. June 29, 2009) (dismissing Section 43 claim as preempted by Copyright Act, citing *Dastar*).

Also instructive is *Lions Gate Entertainment Inc. v. TD Ameritrade Services Co.*, where the plaintiff/copyright owner of *Dirty Dancing* asserted that TD used elements from the film in an advertising campaign for financial services and that such use would cause confusion about plaintiff's endorsement of or the film's association with those services or TD's advertisements. 170 F. Supp. 3d 1249, 1267 (C.D. Cal. 2016). The court found that TD's use of the phrase "Nobody puts your old 401k in a corner" (based on *Dirty Dancing* line "Nobody puts Baby in a corner"), play on the film's concluding dance scene with images of a man lifting a piggy bank overhead, and reference to a song played in the final scene were potential ***copyright*** violations, but failed as a Section 43(a) claim. *Id.* at 1267-68 (citing *Dastar*, 539 U.S. at 37). Because plaintiff's copyright and trademark claims were based on the "exact claim and theory" (except for alleged confusion) the court dismissed the trademark claims

with prejudice. *Id.* at 1268. Further, when declining to vacate the dismissal order, the court explained that, because TD's use of the alleged phrase with other film elements "served to evoke the communications, concepts, or ideas embodied in" the film, plaintiff's trademark claims were barred under *Dastar. Lions Gate Ent., Inc. v. TD Ameritrade Servs. Co.*, No. 2:15-cv-05024-DDP-E, 2017 WL 4621541, at *4 (C.D. Cal. Oct. 16, 2017).

Alcon's allegations mirror Lions Gate's. Alcon alleges Defendants used BR2049 imagery in the context of Musk stating, "You know, I love 'Blade Runner,' but I don't know if we want that future," and that this was likely to cause confusion. FAC ¶¶ 106-107, 177, 181-182. But Defendants merely "evoke[d] the communications, concepts, or ideas embodied in the movie," like in *Lions Gate*.

### 4.    Plaintiff Fails to Plead Trademark Rights in "Blade Runner"

The FAC confirms Alcon does not own the "Blade Runner" name. It alleges only unregistered rights in "Blade Runner ***2049***." *Id.* ¶ 73. The implication is that someone else owns "Blade Runner" and thus, a reference to "Blade Runner" without "2049" does not refer to Plaintiff. Indeed, Plaintiff specifically alleges Musk said "'Blade Runner' without the year number" that distinguishes its film from the original. *E.g.*, *id.* ¶ 107. Plaintiff's allegations that Musk nevertheless "meant to evoke" BR2049 are irrelevant absent any claim in trademark rights in the words spoken by Musk. Plaintiff's attempt to allege "special secondary meaning" over the use of "Blade Runner" (without "2049"), with the intent to "evoke BR2049" (*id.* ¶¶ 106-113), is also similar to Lions Gate's failure to assert false association when it relied "not only on the alleged mark, but also on other elements from the film *Dirty Dancing*." 170 F. Supp. 3d at 1269, 1255 (describing allegations that failed to state Section 43(a) claim including that defendant's advertisements used images to "conjure up *Dirty Dancing*" and lines that "invoked" a song in the film's final scene).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**D.    The Court Should Dismiss the Lanham Act Claim Under the Nominative Fair Use Defense or First Amendment**

Alternatively, Plaintiff's Lanham Act claim should be dismissed because any trademark or trade dress use by Defendants is nominative fair use and free speech.

**1.    Fair Use Precludes Plaintiff's Claims**

Defendants' alleged use of the purported trademarks and trade dress to criticize a dystopian future is nominative fair use. This defense applies when a defendant has "used the plaintiff's mark to describe the plaintiff's product, *even if the defendant's ultimate goal is to describe his own product.*" *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 809 (9th Cir. 2003) (emphasis original). "The goal of a nominative use is generally…comparison, criticism or point of reference." *Id.* It requires: (1) the plaintiff's product is "not readily identifiable without use of the trademark"; (2) only so much of the mark is used "as is reasonably necessary to identify the plaintiff's product"; and (3) the defendant does "nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Id.* at 810.

Defendants' reference to "Blade Runner" and Exhibit C to criticize a "dark and dismal" dystopian future and juxtapose a brighter future where autonomy benefits society meets all three elements. Musk could not identify the original Blade Runner's or BR2049's version of the future without using the words "Blade Runner" or an image of a dystopian future. *Id.* at 810-11 (use of Barbie doll's figure and head necessary for criticism and parody). He used only what was necessary. *Id.* at 811; FAC ¶¶ 106-107 (Exhibit C shown for "11 seconds"; "words 'Blade Runner' without the year"). And Musk did the opposite of suggesting Plaintiff's sponsorship or endorsement—Exhibit C stated "NOT THIS" in large, capital letters (FAC ¶ 102), and Musk said he did ***not*** want to live in the future depicted in "Blade Runner" (*id.* ¶ 106). *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 897 (9th Cir. 2019)

("criticism of a product tends to negate the possibility of confusion as to sponsorship and endorsement").

### 2.    Free Speech Precludes Plaintiff's Claims

Defendants' alleged use of the purported trademarks and trade dress to criticize a dystopian future is also textbook free speech protected by the First Amendment under *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). *Rogers* applies "where the allegedly infringing use of a mark is part of an expressive work protected by the First Amendment and the mark is not used to designate the source of the alleged infringer's own products." *McGillvary v. Netflix, Inc.*, No. 2:23-cv-01195-JLS-SK, 2024 WL 3588043, at *13 (C.D. Cal. July 30, 2024). *Rogers* precludes Lanham Act claims unless the plaintiff shows "the defendant's use of the mark (1) is not artistically relevant to the work or (2) explicitly misleads consumers as to the source or the content of the work." *Id.* "Artistic relevance" means "artistic relevance merely above zero, such that a…plaintiff can avoid *Rogers* only if the use of the mark has *no* artistic relevance to the underlying work *whatsoever*." *Id.* (emphasis original). To be "explicitly misleading," "there must be an explicit indication, overt claim, or explicit misstatement about the source of the work." *Id.*

*Rogers* applies here because Defendants referenced "Blade Runner" and Exhibit C to criticize a "dark and dismal" dystopian future and juxtapose a brighter future, not to identify the source of their products. *Pepperdine Univ. v. Netflix, Inc.*, No. 2:25-cv-01429-CV-ADSx, 2025 WL 632983, at *3-4 (C.D. Cal. Feb. 26, 2025) (collecting cases). The presentation commented on the plight of today's society caused by human-driven automobiles, criticized a dystopian future, and highlighted future benefits of autonomous driving and humanoid robots. *E.g.*, Ex. 2, 5:33-6:40; 7:30-7:52 (less traffic); 16:52-17:30 (greener cities); 19:50-21:28 (helpful robots). Criticism and commentary are protected expression. *Yankee Pub. Inc. v. News Am. Pub. Inc.*, 809 F. Supp. 267, 276 (S.D.N.Y. 1992). Because the presentation therefore

MPA ISO TESLA AND MUSK'S MOTION TO DISMISS FAC
Case No. 2:24-cv-09033-GW-RAO

did "more than propose a commercial transaction," it was not "purely commercial" and "is entitled to full First Amendment protection." *Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894, 906 (9th Cir. 2002). And Defendants never suggested Plaintiff was the source of the presentation or Defendants' products. Rather, "TESLA LIVE" displayed on Exhibit C confirms Defendants' responsibility. *Pepperdine*, 2025 WL 632983, at *4.

Turning to the two *Rogers* prongs: First, Defendants' reference to "Blade Runner" and Exhibit C were artistically relevant to the presentation's commentary—they juxtaposed a "dark and dismal" dystopian future against a brighter future with autonomous vehicles and robots. Ex. 2, 5:33-6:40; *MCA*, 296 F.3d at 902 (use of Barbie mark artistically relevant to song's commentary on values Barbie represents). Second, while Plaintiff alleges the presentation "implicitly suggest[ed] endorsement or sponsorship, there [was] no explicitly misleading statement or suggestion." *Haas Automation, Inc. v. Steiner*, No. 2:24-cv-03682-AB-JC, 2024 WL 4440914, at *6 (C.D. Cal. Sept. 25, 2024), *appeal filed*, No. 24-6344 (9th Cir. Oct. 17, 2024).

### E.    The FAC Violates Rule 8(a)

The FAC should also be dismissed for violating Rule 8(a)'s requirement that a pleading contain "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). "Rule 8(a) has been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling." *Alcon Ent., LLC v. Automobiles Peugeot SA*, No. 19-cv-00245-CJC-AFMx, 2020 WL 8365240, at *2 (C.D. Cal. Feb. 26, 2020).

Despite at least one prior Rule 8(a) dismissal, Alcon continues to burden the Court and Defendants with volumes of creative writing. Alcon's FAC is "needlessly repetitive and lengthy, with pages of unnecessary background and irrelevant details," and "presented in a confusing, rambling manner." *Id.* at *3-4; *e.g.*, FAC ¶¶ 8-13, 40-51, 53-68, 71. In particular, the alleged "violations" of Plaintiff's copyright are

MPA ISO TESLA AND MUSK'S MOTION TO DISMISS FAC
Case No. 2:24-cv-09033-GW-RAO

convoluted and confusing, as they are based on myriad allegations and "theories" that, as Plaintiff concedes, may be "inconsistent with other allegations or theories" and/or are "pled in the alternative." FAC ¶ 124. Adding to the confusion, Plaintiff unnecessarily parses the Accused Work into "two infringing works" to support varying theories of infringement, some of which are based on contrived and false "facts." *Id.* ¶¶ 126-127. The Court should dismiss the FAC because it is not a concise statement of Alcon's claims, and "[t]he length, repetition, and needless detail…create an undue burden on the Court and Defendants, and risk prejudice to the parties." *Alcon*, 2020 WL 8365240, at *3.

## V.     CONCLUSION

For the reasons stated above, the FAC should be dismissed in its entirety.

Dated:  March 6, 2025          FISH & RICHARDSON P.C.

By:  */s/ Kristen McCallion*
Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (213) 533-4240
Fax: (858) 678-5099

John S. Goetz (*pro hac vice* forthcoming)
goetz@fr.com
Kristen McCallion (*pro hac vice*)
mccallion@fr.com
Vivian Cheng (*pro hac vice*)
cheng@fr.com
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Tel: (212) 765-5070
Fax: (212) 258-2291

Matthew A. Colvin (*pro hac vice*)
colvin@fr.com

FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Tel: (214) 747-5070
Fax: (214) 747-2091

Kayleigh E. McGlynn (*pro hac vice*)
mcglynn@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
Tel: (617) 542-5070
Fax: (617) 542-8906

A. Louis Dorny (CA 212054)
ldorny@tesla.com
Terry W. Ahearn (CA 216543)
tahearn@tesla.com
Krista M. Carter (CA 225229)
kricarter@tesla.com
TESLA, INC.
3000 Hanover St.
Palo Alto, CA 94304
Tel: (510) 298-8516

Attorneys for Defendants
Tesla, Inc. and Elon Musk

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Tesla, Inc. and Elon Musk, certifies that this brief contains 6,997 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Kristen McCallion*
Kristen McCallion