Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (213) 533-4240 / Fax: (858) 678-5099

John S. Goetz (*pro hac vice* forthcoming)
goetz@fr.com
Kristen McCallion (*pro hac vice*)
mccallion@fr.com
Vivian Cheng (*pro hac vice*)
cheng@fr.com
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Tel: (212) 765-5070 / Fax: (212) 258-2291

*Additional counsel listed on signature page*

Attorneys for Defendant
Warner Bros. Discovery, Inc.

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALCON ENTERTAINMENT, LLC, a Delaware Limited Liability Company,<br><br>                     Plaintiff,<br><br>          v.<br><br>TESLA, INC., a Texas Corporation; ELON MUSK, an individual; WARNER BROS. DISCOVERY, INC., a Delaware Corporation,<br><br>                     Defendants. | Case No. 2:24-cv-09033-GW-RAO<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT WARNER BROS. DISCOVERY, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing Date: April 7, 2025<br>Hearing Time: 8:30 a.m.<br>Courtroom: 9D<br>Judge: Hon. George H. Wu |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................... 1

II.     BACKGROUND ....................................................................................... 4

     A.      Plaintiff's Unsupported Allegations ............................................... 4

     B.      WBDI's Lack of Involvement in the Alleged Infringement .................. 4

III.    LEGAL STANDARD .............................................................................. 6

IV.     ARGUMENT ........................................................................................... 7

     A.      Plaintiff Fails to Allege a Volitional Act Against WBDI ...................... 7

     B.      Plaintiff Fails to State a Claim for Vicarious Copyright
          Infringement ................................................................................. 9

     C.      Plaintiff Fails to State a Lanham Act Claim for False
          Affiliation and/or False Endorsement .......................................... 16

     D.      The FAC Violates Rule 8(a) ........................................................ 18

V.      CONCLUSION ..................................................................................... 19

CERTIFICATE OF COMPLIANCE ............................................................. 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ............................................................... 1

*Alcon Ent., LLC v. Autos. Peugeot SA*,
  No. 19-cv-00245-CJC-AFMx, 2020 WL 8365240 (C.D. Cal. Feb.
  26, 2020) .................................................................................................. 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................. 6

*Bell v. Pac. Ridge Builders, Inc.*,
  No. 19-cv-01307-JST, 2019 WL 13472127 (N.D. Cal. June 4, 2019) ..14, 15, 16

*Erickson Prods., Inc. v. Kast*,
  921 F.3d 822 (9th Cir. 2019) ................................................... 13, 14, 16

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
  76 F.3d 259 (9th Cir. 1996) .......................................................... 12, 13

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ....................................................... 6, 10

*Johnson v. Maraj*,
  No. 23-cv-05061-PA-AFMx, 2023 WL 8883316 (C.D. Cal. Dec. 15,
  2023) ........................................................................................................ 1

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ................................................................. 6

*Long v. Dorset*,
  854 F. App'x 861 (9th Cir. 2021) ........................................................ 14

*Luvdarts, LLC v. AT & T Mobility, LLC*,
  710 F.3d 1068 (9th Cir. 2013) ............................................................... 9

*Marder v. Lopez*,
  450 F.3d 445 (9th Cir. 2006) ................................................................. 7

*Myoungchul Shin v. Uni-Caps, LLC,*
 No. 14-cv-01387-JFW-SHx, 2014 WL 12853912 (C.D. Cal. Dec.
 17, 2014) ................................................................................................... 11

*Perfect 10, Inc. v. Amazon.com, Inc.,*
 508 F.3d 1146 (9th Cir. 2007) ..................................................... 12, 13

*Perfect 10, Inc. v. Giganews, Inc.,*
 847 F.3d 657 (9th Cir. 2017) ............................................................ 7, 8

*Perfect 10, Inc. v. Giganews, Inc.,*
 No. 11-cv-07098-ABC-SHx, 2013 WL 3610706 (C.D. Cal. July 10,
 2013) .......................................................................................................... 8, 9

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*
 494 F.3d 788 (9th Cir. 2007) ............................................. 9, 12, 13

*Reaper v. ACE Am. Ins. Co.,*
 No. 23-15178, 2024 WL 810697 (9th Cir. Feb. 27, 2024) ..................... 10, 11, 15

*Rogers v. Grimaldi,*
 875 F.2d 994 (2d Cir. 1989) .................................................................. 16

*Soo Park v. Thompson,*
 851 F.3d 910 (9th Cir. 2017) ................................................... 10, 11

*Unicolors, Inc. v. H&M Hennes & Mauritz LP,*
 No. 16-cv-02322-AB-SKx, 2016 WL 10646311 (C.D. Cal. Aug. 12,
 2016) ............................................................................................................ 9

*United States v. Ritchie,*
 342 F.3d 903 (9th Cir. 2003) ................................................................ 7

**Statutes**

15 U.S.C. § 1125(a)(1)(A) ................................................................... 17

17 U.S.C. § 106 ........................................................................................ 7

**Other Authorities**

Fed. R. Civ. P. 8 ................................................................................ 4, 18

Fed. R. Civ. P. 12(b)(6) ........................................................................ 7

# I. INTRODUCTION

Defendant Warner Bros. Discovery Inc. ("WBDI") understands that Defendants Tesla, Inc., and Elon Musk are simultaneously moving to dismiss all of Plaintiff's claims and that all claims against WBDI would be dismissed should the Court grant that motion.[1] This motion to dismiss is directed specifically to Plaintiff's first, second, and fourth claims for relief for direct copyright infringement, vicarious copyright infringement, and false affiliation/endorsement, respectively.

In this baseless litigation against WBDI, Plaintiff attempts to allege that WBDI directly and indirectly infringed Alcon's copyright in the film *Blade Runner 2049* ("BR2049"), by way of Tesla's alleged use of an AI-generated image in an event that took place on the Warner Bros. studio lot. Alcon alleges that a party that is ***not*** WBDI flashed an image that is ***not*** from BR2049 on screen for eleven seconds during an event called "We, Robot." Plaintiff then attempts to spin this eleven-second display of an image not from the film, and a few passing comments by Musk, into a nefarious, pre-arranged "significant brand affiliation" event. FAC (Dkt. 37) ¶ 89. Plaintiff simply cannot allege any volitional conduct on the part of WBDI in the creation or broadcast of the allegedly infringing presentation. Plaintiff cannot plead around the fact that WBDI simply leased its property to Tesla to conduct its own event. The inclusion of WBDI in this litigation is inappropriate, particularly now that Plaintiff has had a chance to review the lease agreement attached to WBDI's motion to dismiss the original complaint. WBDI had no involvement with the allegedly infringing acts. Indeed, the FAC concedes this, as discussed below.

---

[1] *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party."); *Johnson v. Maraj*, No. 23-cv-05061-PA-AFMx, 2023 WL 8883316, at *3 (C.D. Cal. Dec. 15, 2023) (dismissing claims for contributory and vicarious copyright infringement because plaintiff failed to plausibly allege substantial similarity for direct infringement claim).

Plaintiff's allegations, which rely almost exclusively "on information and belief," are far from plausible. To plead its direct copyright infringement claim, Plaintiff relies entirely on the fact that the "We, Robot" event was conducted on WBDI property and used WBDI's infrastructure systems. FAC ¶ 127. While the FAC alleges that Tesla and Musk reproduced, created a derivative work based on, and publicly displayed Plaintiff's copyrighted work, what is glaringly absent from the FAC is any allegation of such a volitional act *by WBDI*. That is because none occurred. And because an infringement theory based solely on a defendant's ownership of a place and system that another party used to display allegedly infringing content fails to state a direct infringement claim as a matter of law, the Court should dismiss the First Claim for Relief as to WBDI with prejudice.

Plaintiff also fails to state a plausible vicarious copyright infringement claim because it relies heavily on conclusory statements made on information and belief without alleging facts that meet the type of supervision and control, or direct financial benefit, required by the governing law to plead this claim. Instead, Plaintiff repeatedly relies on an alleged "contractual agreement" between WBDI and Tesla that consists of contractual terms that never existed. The contract in question, which WBDI provided to the Court with its motion to dismiss the original complaint (Dkt. 35-1), and provides again now, directly contradicts Plaintiff's wild assertions. Should the Court consider the contract for the purposes of this motion, it provides an additional reason to dismiss this claim.

For example, Plaintiff alleges that WBDI had authority and control over, and received a direct financial benefit from, the infringement that allegedly occurred at the "We, Robot" event due to a so-called "brand affiliation" requirement in that contract to associate Tesla's "Cybercab" with BR2049. But, as the real contract shows—and which Plaintiff knows, having reviewed the contract prior to filing its FAC—this theory is simply not true. There is zero mention in the lease agreement

between WBDI and Tesla of "Blade Runner" or any other brand association. It is a straightforward lease agreement for an event venue. Plaintiff's allegations do not establish any authority or control by WBDI nor a causal link between the alleged infringement and any alleged direct financial benefit to WBDI from such alleged infringement. As a result, the vicarious copyright infringement claim is implausible, and the Court should dismiss it with prejudice.

Plaintiff's Lanham Act claim also is implausible, particularly as to WBDI. The FAC is devoid of any factual allegations of an infringing act *by WBDI*. Plaintiff provides only conjecture about aiding and abetting Tesla and Musk in its attempt to pull WBDI into this claim. In addition, Plaintiff improperly seeks to use trademark law to address copyright issues, a tactic that many courts, including the Supreme Court, have consistently rejected. The FAC conflates copyright and trade dress concepts to assert trade dress infringement, but it fails to plead protectable trade dress rights, or any trademark or trade dress rights in connection with the goods at issue—automobiles. Regardless, any use of such purported marks or trade dress is not infringement because it was nominative fair use and/or free speech protected by the First Amendment.

None of these deficiencies can be cured by amendment. In fact, even though Plaintiff claimed in its opposition to WBDI's now-moot motion to dismiss the original complaint that it "already has information that some things happened differently than WBDI is trying…to tell the Court," it fails to plead those facts now. Dkt. 39 at 6. Saying that it "expects other and different facts to come out" in discovery is insufficient. *Id.* Plaintiff cannot successfully state a claim by alleging that it thinks it might have facts that would allow it to state a claim but needs to engage in discovery before it can articulate them. This is not appropriate. If it were, there would be no plausibility threshold for pleadings. Alcon has again failed to state a claim. Therefore, WBDI respectfully requests that the Court dismiss Plaintiff's claims with prejudice.

Lastly, WBDI moves to dismiss the entire FAC for another reason: the FAC violates Rule 8. It is an excessively verbose rambling of unnecessary information, confusing allegations, irrelevant details, and speculative theories involving everything from sorcerers and spell books to *Homo sapiens* and rogue replicants with digressions of historian Harari and actress Zendaya. Plaintiff's counsel has been admonished for this before yet disregards that prior ruling here. The FAC should be dismissed because it is not a concise statement of Plaintiff's claims and needlessly burdens Defendants and the Court.

## II.    BACKGROUND

### A.    Plaintiff's Unsupported Allegations

Plaintiff alleges that Tesla and Musk unlawfully used an image resembling a scene from the film BR2049 at an October 10, 2024, event named "We, Robot" promoting Tesla's forthcoming Cybercab and Musk's social mission to make all driving autonomous. Plaintiff asserts copyrights in the BR2049 motion picture (FAC ¶¶ 35-36), certain still images of which are attached to the FAC as Exhibits A and B. The FAC also alleges trademark and/or trade dress rights in those same images and the audiovisual clips of the related BR2049 scenes and the movie character "K" (and perhaps, although it is unclear, in the entirety of the film itself). *Id.* ¶¶ 74-76, 179. Notably, Plaintiff does not own the "Blade Runner" name or mark; it only alleges unregistered rights in "Blade Runner *2049*." *Id.* ¶ 73.[2] In fact, the FAC alleges facts to distinguish Plaintiff's BR2049 from the original "Blade Runner"—presumably because it is WBDI's affiliate that owns the exclusive rights in that film. *E.g.*, *id.* ¶¶ 108, 111.

### B.    WBDI's Lack of Involvement in the Alleged Infringement

WBDI owns the Warner Bros. studio lot in Burbank, California that it on occasion leases to third parties for various events, through its subsidiary, Warner Bros.

---

[2] All emphasis added unless otherwise noted.

Studio Operations. Plaintiff asserts that WBDI is liable for copyright infringement and false association and/or endorsement simply because WBDI leased its studio lot to Tesla for Tesla's Cybercab event and because WBDI's clip and still licensing department had conversations with Alcon about the possibility of licensing the Exhibit A Image from BR2049 on Tesla's behalf. What Plaintiff does not plead, however, are any facts concerning WBDI's alleged control over the content of Tesla's presentation. Instead, Plaintiff attempts to connect WBDI to the alleged infringement by conjuring up contractual terms between Tesla and WBDI based on "information and belief." That information and belief is quickly disproven, however, by a document central to Plaintiff's FAC: the Tesla-WBDI contract.[3] Faced with the reality of the contract, Plaintiff pushes ahead by alleging—without any valid basis—that the supposed terms, if not in the Tesla-WBDI contract, are contained in "another associated contract or set of understandings." FAC ¶ 86. To illustrate, Plaintiff alleges that the contract under which WBDI leased studio space to Tesla for the October 10 event, or unspecified other "set of understandings," "included a promotional element or elements, whereby Musk and Tesla expected to be able to affiliate the Cybercab with one or more motion pictures from WBDI's motion picture library, or the motion picture library of WBDI's subsidiary." *Id.* Nothing could be further from the truth. *See* Ex. 1 (Dkt. 35-1). Plaintiff repeatedly relies on non-existent terms of the Tesla-WBDI contract, or another contract, to support its claims, including to allege how Tesla and Musk purportedly came to infringe BR2049 and falsely affiliate the film with Tesla's Cybercabs. FAC ¶¶ 90, 146-147 (alleging that Tesla and Musk

---

[3] As shown in Exhibit 1 to the Declaration of Rachel Jennings (Dkt. 35-1), the contract was signed not by WBDI, but by Warner Bros. Special Events, a subsidiary of WBDI. And it is Warner Bros. Entertainment Inc. that has U.S./Canada distribution rights in the BR2049 film, not WBDI. For the sake of convenience, in this motion we refer to WBDI as the party to the contract with Tesla. Exhibit 1 (Dkt. 35-1) is a true and correct copy of the Tesla-WBDI contract.

incorrectly believed that WBDI, as part of the event contract, could deliver a promotional or brand affiliation with BR2049). In reality, the Tesla-WBDI contract (Dkt. 35-1) is a straightforward lease for an event space. It makes no reference whatsoever to use of a motion picture from WBDI's library, brand affiliation, or to the content of the October 10 event, referring to it merely as the "Tesla Event."[4] And the allegation that there is some other agreement establishing a brand association is mere conjecture—particularly given that the sum total of the purported "brand association" is the 11-second display of an image *not from BR2049*, along with comments by Musk explicitly *distancing* the Cybercab from the world of Blade Runner, not associating with it. FAC ¶ 147.

## III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Though the Court must accept all factual allegations in a complaint as true, a court need not accept "naked assertions devoid of further factual enhancement." *Id.* (cleaned up). "Nor is the [C]ourt required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Similarly, the Court is not required to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Id.*

On a motion to dismiss, a court may properly consider the complaint and "material which is properly submitted as part of the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). A court may also consider a document "on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the

---

[4] In fact, the only mention of intellectual property rights is contained in paragraph 11, which provides that neither party may use the intellectual property of the other party without prior written consent. Ex. 1 (Dkt. 35-1) ¶ 11.

MPA ISO WBDI'S MOTION TO DISMISS FAC
Case No. 2:24-cv-09033-GW-RAO

authenticity of the copy attached to the 12(b)(6) motion" and "assume that its contents are true for the purposes of a motion to dismiss under Rule 12(b)(6)." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (cleaned up); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## IV.    ARGUMENT

### A.    Plaintiff Fails to Allege a Volitional Act Against WBDI

To state a claim for direct copyright infringement, Plaintiff must allege ownership of the alleged infringed material and that the defendant "violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) (hereinafter "*Giganews II*"). "In addition, direct infringement requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant." *Id.* Here, Plaintiff fails to plausibly allege violation of an exclusive right by WBDI or ***any*** volitional conduct by WBDI.

In its opposition to WBDI's now-moot motion to dismiss the original complaint, Plaintiff explained that, with respect to this claim, it "reduced its scope as to WBDI, relative to Musk and Tesla," in the FAC. Dkt. 39 at 5. Indeed, Plaintiff expressly limits the basis of the direct infringement claim as to WBDI as follows:

> Defendant WBDI is a direct infringer in that the violation of Alcon's public display rights as alleged in this FAC and paragraph 127f below was conducted on, and transmitted over, WBDI-owned or WBDI-controlled property, infrastructure and systems (specifically including WBDI livestreaming infrastructure systems)[.]

FAC ¶ 127; *id.* ¶ 127(f) (alleging "the display occurred over WBDI-owned or -controlled systems").[5]

---

[5] While Plaintiff also alleges broadly, and "[o]n information and belief," that "***[a]ll of the Defendants*** participated in [the accused work's] creation, and in its display in the presentation at the event, from a WBDI-owned building and studio lot, on WBDI-

But WBDI's mere ownership of the studio lot and equipment used by Tesla to display the allegedly infringing work is not an allegation of volitional conduct by WBDI. In *Giganews II*, the Ninth Circuit explained that allegations of direct infringement against Giganews, the provider of a browser application known as the "Mimo reader," failed to state a claim for direct infringement because "the fact that users may use Giganews's reader to display infringing images does not constitute volitional conduct by Giganews." 847 F.3d at 668 (cleaned up). It agreed with the district court's reasoning that "Mimo is just a reader, a piece of software that allows a user to view an image" (*id.*), and therefore, "[t]o the extent that Mimo is used to view infringing images, this is done by the user." *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-cv-07098-ABC-SHx, 2013 WL 3610706, at *2 (C.D. Cal. July 10, 2013) (hereinafter "*Giganews I*"). Similarly, here, WBDI's infrastructure system is merely the manner through which a user—which is not alleged to be WBDI—displayed the allegedly infringing image.

The "volition" element "is a basic requirement of causation. As its name suggests, *direct* liability must be premised on conduct that can reasonably be described as the *direct cause* of the infringement." *Giganews II*, 847 F.3d at 666 (emphasis original) (cleaned up). Thus, absent an allegation of a volitional act, Plaintiff fails to plead a violation of any of Plaintiff's exclusive rights by WBDI and thus, cannot plead direct copyright infringement.

---

owned video screens, and otherwise using WBDI-owned technology infrastructure, operated by or in conjunction with Tesla employees" (*id.* ¶ 105), the only facts alleged concerning WBDI relate to ownership of the physical space and technology used by **Tesla** employees. The inclusion of WBDI in "[a]ll of the Defendants" in the allegation about the creation of the accused work is a remnant of Plaintiff's original pleading (Dkt. 1 ¶ 56), which it intended to reduce in scope as against WBDI.

### B.    Plaintiff Fails to State a Claim for Vicarious Copyright Infringement

To state a claim of vicarious liability for copyright infringement, Plaintiff must plead that WBDI "had both the (1) 'right and ability to supervise the infringing activity' and (2) 'a direct financial interest' in the activity." *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1071 (9th Cir. 2013) (quoting *A&M Records*, 239 F.3d at 1022); *see also Giganews I*, 2013 WL 3610706, at *5 (granting motion to dismiss). Plaintiff fails to plausibly plead either of these key elements as to WBDI.

On the first element, "the defendant must have the right and ability to *supervise* and *control* the infringement, not just affect it." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 805 (9th Cir. 2007) (emphasis original) (hereinafter "*Visa*") (affirming dismissal of vicarious copyright infringement claim with prejudice for failure to plead defendant's sufficient control over the infringing activity). Plaintiff asserts bare, conclusory statements made on information and belief that merely repeat this legal standard and are insufficient to render the claim plausible. *See* FAC ¶ 142; *Unicolors, Inc. v. H&M Hennes & Mauritz LP*, No. 16-cv-02322-AB-SKx, 2016 WL 10646311, at *6 (C.D. Cal. Aug. 12, 2016) ("Plaintiff's bare pronouncement that Defendant had the right and ability to supervise the infringing conduct merely parrots the element and, without more, provides no basis for the Court to conclude that the allegation of supervisory authority is plausible." (cleaned up)).

Plaintiff alleges that because WBDI was using its clip and still licensing department to perform clearance work for the "We, Robot" event, WBDI must have had "the right and ability to tell the Direct Infringers that their infringing conduct was not acceptable and could not be part of the presentation." FAC ¶ 142. But the FAC provides no facts that connect clearance work to having the right and ability to **supervise** and **control** what was ultimately used in Tesla's presentation. Merely "tell[ing]" the unspecified "Direct Infringers" (*id.* ¶¶ 141-142) that certain content is not licensed does not mean that WBDI had any authority to stop the use of that

content. Further, Plaintiff's rather bizarre allegation about purported **awareness** by "a very high level WBDI executive" (*id.* ¶ 142) does not move the needle because, even if it were true, there is still no aspect of **control** over Tesla or Musk by WBDI.

The Tesla-WBDI contract[6] further contradicts all of Plaintiff's allegations of WBDI's purported right and ability to supervise and control the alleged infringement. It shows that WBDI merely leased out the physical property for the event. *See generally* Ex. 1 (Dkt. 35-1) (outlining terms relevant to use of the physical property, such as the time and place of the event, security and fire personnel, and parking instructions). The contract did not give WBDI any right to control the content or presentation materials used at the event—or even review them beforehand—and WBDI was permitted to cancel only if there was a material breach of the terms of the lease agreement. *Id.* ¶ 6.2. When Plaintiff's allegations are viewed against the actual terms of the Tesla-WBDI contract, rather than Plaintiff's now-disproven allegations, the implausibility of the claim is laid bare. The Court is not required to accept as true "unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055.

Nor is the Court required to accept allegations based on "information and belief" where no further facts are alleged. *Reaper v. ACE Am. Ins. Co.*, No. 23-15178, 2024 WL 810697, at *1 (9th Cir. Feb. 27, 2024) (holding "[t]he district court properly disregarded most of the allegations made on information and belief because they were conclusory" where the complaint contained no facts supporting bare allegations (citing *Iqbal*, 556 U.S. at 680-81)). While pleading on information and belief is permitted where the facts are peculiarly within the possession and control of the opposing party (*Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017)), Alcon communicated with WBDI about the event before it occurred and has a copy of the

---

[6] Because Plaintiff necessarily relies on the Tesla-WBDI contract (*e.g.*, FAC ¶¶ 18, 85, 86, 90, 146, 147), the document is central to Plaintiff's claims, and there is no basis for Plaintiff to question its authenticity, so the Court may treat the contract as part of the FAC.

Tesla-WBDI contract. Notably, in a more recent opinion, the Ninth Circuit explained that *Soo Park* did not create an exception to federal pleading standards for allegations made on information and belief. *Reaper*, 2024 WL 810697, at *1.

Plaintiff's allegation that the "Direct Infringers" may have been WBDI's agents, employees, or contractors (FAC ¶ 142) is an example of the type of bare allegation that the Ninth Circuit and courts in this District have disregarded as conclusory. *E.g.*, *Reaper*, 2024 WL 810697, at *1; *Myoungchul Shin v. Uni-Caps, LLC*, No. 14-cv-01387-JFW-SHx, 2014 WL 12853912, at *3 (C.D. Cal. Dec. 17, 2014) (dismissing claim as to individual defendants where plaintiff merely alleged "in a conclusory fashion" that each individual defendant was an agent, representative, and officer of the defendant, and holding that "all of Plaintiffs' allegations related to the Individual Defendants…based on information and belief…are insufficient as a matter of law"). The FAC lacks any facts to support an inference that the alleged "Direct Infringers" were in fact WBDI agents, employees, or contractors. Plaintiff's sole allegation of this—made "on information and belief"—is highly speculative and far too tenuous to plausibly plead this factor, as demonstrated by the alternate and hesitant phrasing. FAC ¶ 105 (alleging that the accused image "was generated…by an employee or agent of one or more of WBDI, Tesla…, or even possibly by Musk himself");[7] *see also id.* ¶ 91 n.5 (alleging that "the WBDI shared services licensing department personnel involved in this matter included an individual executive who is…***ostensibly*** an employee of Warner Bros. Pictures…"); *id.* ¶ 142 (alleging that "[t]o the extent that the Direct Infringers were individual agents, employees, or contractors of WBDI, or of one or more subsidiaries of WBDI…"). As a result,

---

[7] As previously noted, the allegations that WBDI generated the image in the accused work appear to be a remnant of Plaintiff's original pleading and are contradicted by Plaintiff's explicit allegations in the First Claim for Relief regarding the limited scope of WBDI's purported direct violation of Plaintiff's public display rights.

11

Plaintiff's allegation that WBDI had the right and ability to supervise its unidentified agents, employees, contractors, or subsidiaries is inconsequential.

Plaintiff will likely rely on *Fonovisa, Inc. v. Cherry Auction, Inc.*, a Ninth Circuit decision holding that the plaintiff sufficiently alleged vicarious copyright infringement against swap meet operators who had a "broad" contractual right to "exclude any vendor for any reason, at any time, and thus…exclude vendors for patent and trademark infringement." 76 F.3d 259, 261, 263 (9th Cir. 1996). But the Ninth Circuit's more recent decision in *Perfect 10, Inc. v. Amazon.com, Inc.* explains why Plaintiff's reliance on that case would be wrong. 508 F.3d 1146 (9th Cir. 2007) (hereinafter "*Amazon.com*"). In *Amazon.com*, the plaintiff alleged that Google was vicariously liable for infringement on third-party websites because it provided links to those websites through its AdSense advertising program. *Id.* at 1173. Perfect 10 argued that Google had the right and ability to control the alleged infringement because Google's AdSense agreement gave Google "the right to monitor and terminate partnerships with entities that violate others' copyright[s]." *Id.* (insertion in original). In rejecting this argument, the Ninth Circuit distinguished its prior decision in *Fonovisa*. *Id.* The court explained that unlike the swap meet operators in *Fonovisa*, Google did not have contracts with the allegedly infringing third-party websites that empower Google to stop or limit them from reproducing, displaying, and distributing Perfect 10's images. *Id.* Google's mere right to terminate an AdSense partnership did not give Google the right to stop direct infringement, which could continue to occur even after the third-party websites ended their participation in the AdSense program. *Id.* at 1173-74; *see also Visa*, 494 F.3d at 804 (holding that credit card companies that had a contractual right to end access to its payment processing services if its member merchants did not cease illegal activity did not have the right to stop website operators' alleged infringement).

Here, Plaintiff does not come close to alleging that WBDI had the type of broad contractual rights that were sufficient to allege the first element of vicarious liability in *Fonovisa*. In fact, it does not even allege that WBDI had the type of contractual right deemed insufficient in *Amazon.com*, i.e., the right to terminate a service due to copyright violations. 508 F.3d at 1173-74; *see also Visa*, 494 F.3d at 803 (granting motion to dismiss vicarious copyright infringement claim and explaining that "the mere ability to withdraw a financial 'carrot' does not create the 'stick' of 'right and ability to control' that vicarious infringement requires"). Under the analysis of *Amazon.com*, even if WBDI cancelled the studio lot lease, Tesla and Musk could have proceeded with their presentation elsewhere. Therefore, WBDI did not have the right and ability to control the content of that presentation. And as noted, Plaintiff's new allegation that "the issue of whether or not Musk and Tesla should be allowed to use any aspect of the BR2049 property in the event and whether WBDI should do anything to stop them from doing so was raised internally at WBDI to a very high level WBDI executive" (FAC ¶ 142) does not change this. Merely alleging that "WBDI was actively aware of the issue" (*id.*) is not the same as pleading the right and ability to supervise and control Tesla and Musk's actions. Because this allegation does not rise to the level of control required to plead vicarious liability and Plaintiff fails to plead any other facts to meet this element, the vicarious copyright infringement claim is implausible. The Tesla-WBDI contract further forecloses Plaintiff's ability to allege WBDI's right to supervise and control any alleged infringement. Thus, the vicarious copyright infringement claim should be dismissed with prejudice.

This claim may be dismissed for the additional reason that Plaintiff fails to allege that WBDI received a direct financial benefit from the alleged infringement. "The essential aspect of the 'direct financial benefit' inquiry is whether there is a ***causal*** relationship between the infringing activity and any financial benefit a defendant reaps." *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 829 (9th Cir. 2019). In

other words, the financial benefit must flow directly from the allegedly infringing activity. *Bell v. Pac. Ridge Builders, Inc.*, No. 19-cv-01307-JST, 2019 WL 13472127, at *6 (N.D. Cal. June 4, 2019) ("[V]icarious infringement requires [plaintiff] to demonstrate a causal link between the *infringing activities* and a financial benefit to [defendant]." (emphasis original) (cleaned up)). For example, infringement that acts as a ***draw*** to the defendant's website where customers could purchase the defendant's services may qualify as a direct financial benefit, but infringing material that is "just an added benefit" does not. *Erickson*, 921 F.3d at 829 (citing *Ellison v. Robertson*, 357 F.3d 1072, 1078-79 (9th Cir. 2004)). The Ninth Circuit has held even an allegation that a plaintiff paid Facebook to post advertisements for his business page did not "suffice as allegations that Facebook ***made money*** from [the defendant's] infringing posts on that page specifically." *Long v. Dorset*, 854 F. App'x 861, 864 (9th Cir. 2021) (affirming dismissal of vicarious copyright infringement claim). This is a strict requirement, and Plaintiff fails to meet it.

To illustrate, Plaintiff alleges that the Tesla-WBDI event contract "included either a formal or informal co-promotional or brand affiliation element" (which it plainly does not), and that Tesla and Musk believed that WBDI could deliver a brand affiliation with BR2049. FAC ¶ 147. According to Plaintiff, whether it was a formal brand affiliation built into the WBDI-Tesla event contract "or not," Musk and Tesla believed that they were going to get to use a Hollywood motion picture at no extra charge, as part of a "throw-in to the event agreement," and this "was a draw to Musk and Tesla for the money that they agreed to pay to WBDI for the event." *Id.* ¶ 146. As an initial matter, Plaintiff's new use of the term "draw," merely parrots how courts have described the legal standard for pleading a direct financial benefit with a causal link to the allegedly infringing activity. *See, e.g.*, *Erickson*, 921 F.3d at 829. It is not a magic word that transforms Plaintiff's insufficient allegations, particularly when Plaintiff has not added any new facts to support such a descriptor. In any event, a

general allegation of a "draw" has been held insufficient to state a vicarious copyright infringement claim. *Bell*, 2019 WL 13472127, at *6 (explaining that a plaintiff must plausibly allege more than that defendant's allegedly infringing activities "*generally* acted as a draw for [defendant's] business" since "vicarious infringement requires [plaintiff] to demonstrate a causal link between the *infringing activities* and a financial benefit to [defendant]" (emphasis original) (cleaned up) (citing *Giganews II*, 847 F.3d at 673)).

Plaintiff's speculation goes even further, alleging that when Tesla and Musk learned that WBDI could not deliver a brand affiliation, "WBDI had a financial incentive to avoid any claims of breach of contract or adjustment of the contract price, and one way to do that was essentially to allow the fudging (questionable manipulation) of the situation by either suggesting, encouraging, or knowingly allowing Tesla and Musk's generation of and use of the [accused work]." FAC ¶ 147. As noted, there is no mention of a co-promotional or brand affiliation element in the Tesla-WBDI contract. *See generally* Ex. 1 (Dkt. 35-1). And there are no facts to support Plaintiff's allegations that such a promise to deliver a brand affiliation to Tesla was contained in a separate "set of understandings" or informal agreement between WBDI and Tesla. FAC ¶ 86. These allegations are all conclusory, highly speculative conjecture, rather than plausible allegations based on information and belief. Tellingly, Plaintiff does not state the factual basis for its so-called beliefs. As such, the Court may disregard its unsupported allegations. *Reaper*, 2024 WL 810697, at *1. Thus, the foundation for this theory of financial benefit necessarily fails. There were no potential claims for breach of contract or adjustment of the contract price to provide a financial incentive for WBDI to encourage or allow any allegedly infringing conduct. Moreover, Alcon plainly alleges that it, and not WBDI, owns the relevant rights in BR2049 (FAC ¶ 35), so it cannot plausibly allege that WBDI stood to benefit financially from Tesla's use of the image in that sense.

Even if the Court does not consider the Tesla-WBDI contract, the avoidance of a potential penalty for failing to deliver a brand affiliation with BR2049 is far too indirect and attenuated to plausibly plead that WBDI received a *direct* financial benefit with a "causal link" to the allegedly infringing activity. *Bell*, 2019 WL 13472127, at *6; *cf. Erickson*, 921 F.3d at 829-31 (holding that the direct infringer's avoidance of licensing fees alone cannot satisfy the requirement of a direct financial benefit to the vicarious infringer).

This failure to plead a legally cognizable financial benefit is yet another reason why Plaintiff fails to state a vicarious copyright infringement claim. And because the Tesla-WBDI contract—as well as the fact that WBDI does not own BR2049—reveals that there are no financial incentives for WBDI to encourage Tesla and Musk to use any particular content in their presentation, and Alcon's own allegations show that WBDI did not have the relevant rights in the image to benefit financially from its use, this claim should be dismissed with prejudice.

### C.     Plaintiff Fails to State a Lanham Act Claim for False Affiliation and/or False Endorsement

Plaintiff's claim for false affiliation and/or false endorsement under Section 43(a) of the Lanham Act fails for the same reasons stated in Tesla and Musk's memorandum in support of their motion to dismiss, namely, that Plaintiff fails to plead protectable trade dress, Plaintiff does not own trademark rights in "Blade Runner" (only the unregistered "Blade Runner 2049" mark that was not used), Plaintiff fails to plead any trademark or trade dress rights in connection with the goods at issue (automobiles), the claim is an improper attempt to circumvent copyright law, and even if Plaintiff sufficiently pled trademark or trade dress rights, any use of those marks or trade dress was nominative fair use and/or classic free speech that is protected by the First Amendment under the test in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989).

WBDI hereby joins and incorporates by reference Sections IV(C)-(D) of Tesla and Musk's memorandum.

Plaintiff's fourth claim for relief is even more implausible as pled against WBDI. The FAC contains no allegations of an infringing act by WBDI, only conjecture that "discovery will show that Defendant WBDI aided and abetted Tesla's and Musk's Lanham Act violations described herein, including in that WBDI aided, encouraged and/or lent meaningful support to Tesla and Musk before, during or after Tesla's and Musk's violations, and with knowledge by WBDI that the acts by them were improper." FAC ¶ 187. Even if this were true, this activity still does not constitute direct trademark infringement. A violation of Lanham Act Section 43(a)(1)(A), which Plaintiff alleges in its fourth claim for relief, requires "use[] in commerce" of "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact," in connection with any goods or services, which is likely to cause confusion. 15 U.S.C. § 1125(a)(1)(A). None of the alleged acts of WBDI are a "use[] in commerce" of Plaintiff's alleged trademarks/trade dress, nor do they have anything to do with a cognizable act of false association or endorsement. *Id.*

Notably, Plaintiff deleted allegations that WBDI conspired with Tesla and Musk in their alleged violations of the Lanham Act, including an allegation that WBDI generated the allegedly infringing Presentation Slide 2 Image (FAC, Ex. C) and/or encouraged Tesla and Musk to use it. Dkt. 1 ¶ 133. Absent those now-deleted allegations, ***there is not a single volitional act by WBDI alleged in this claim***. Plaintiff's reference to allegations in Paragraphs 34, 85-98, and 105 (FAC ¶ 187) do not cure this fatal defect, as those paragraphs also contain no plausible allegations of trademark or trade dress infringement by WBDI.

### D.    The FAC Violates Rule 8(a)

The FAC should also be dismissed for violating Rule 8(a)'s requirement that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *Alcon Ent., LLC v. Autos. Peugeot SA*, No. 19-cv-00245-CJC-AFMx, 2020 WL 8365240, at *2 (C.D. Cal. Feb. 26, 2020). "Rule 8(a) has been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling." *Id.*

Despite at least one prior Rule 8(a) dismissal, Alcon continues to burden the Court and defendants with volumes of creative writing. As in *Alcon Entertainment, LLC v. Automobiles Peugeot SA*, Alcon's FAC here is, once again, "needlessly repetitive and lengthy, with pages of unnecessary background and irrelevant details" (*e.g.*, FAC ¶¶ 53-56 (describing 1982 "Blade Runner" that is not at issue), ¶¶ 8-13 (discussing "humanity's transcending evolutionary superpower")); "verbose and argumentative" (*e.g.*, *id.* ¶¶ 40-51 (arguing "the distinction between 'motion picture still images' and 'photographs' is more than a mere statutory technicality")); and "confusing," with substantive allegations—including "alternative facts and theories of liability"—"presented in a confusing, rambling manner, without organization or structure" (*e.g.*, *id.* ¶¶ 57-68, 71 (recounting BR2049's plot at length but excluding plot from list of allegedly protectable elements)). 2020 WL 8365240, at *3-4. The Court should dismiss the FAC because it is not a concise statement of Alcon's claims, and "[t]he length, repetition, and needless detail in the FAC create an undue burden on the Court and Defendants, and risk prejudice to the parties." *Id.* at *3.

## V.    CONCLUSION

For the reasons stated above, and in the motion to dismiss filed concurrently by Tesla and Musk, all claims against WBDI should be dismissed with prejudice.

Dated:  March 6, 2025                    FISH & RICHARDSON P.C.


By:  */s/ Kristen McCallion*
Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (213) 533-4240
Fax: (858) 678-5099

John S. Goetz (*pro hac vice* forthcoming)
goetz@fr.com
Kristen McCallion (*pro hac vice*)
mccallion@fr.com
Vivian Cheng (*pro hac vice*)
cheng@fr.com
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Tel: (212) 765-5070
Fax: (212) 258-2291

Matt Colvin (*pro hac vice*)
colvin@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Tel: (214) 747-5070
Fax: (214) 747-2091

Kayleigh E. McGlynn (*pro hac vice*)
mcglynn@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
Tel: (617) 542-5070
Fax: (617) 542-8906

1

2

Attorneys for Defendant
Warner Bros. Discovery, Inc.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Warner Bros. Discovery, Inc., certifies that this brief contains 6,083 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Kristen McCallion*
Kristen McCallion