ANDERSON YEH PC
  Edward M. Anderson (STATE BAR NO. 198183)
edward@andersonyehlaw.com
  Regina Yeh (STATE BAR NO. 266019)
regina@andersonyehlaw.com
1055 E. Colorado Blvd. Ste 500
Pasadena, California  91106
Telephone: (626) 204-4092  Facsimile: (888) 744-0317

Attorneys for Plaintiff
ALCON ENTERTAINMENT, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALCON ENTERTAINMENT, LLC, a Delaware Limited Liability Company,<br><br>                 Plaintiff,<br><br>        v.<br><br>TESLA, INC., a Texas Corporation; ELON MUSK, an individual; WARNER BROS. DISCOVERY, INC., a Delaware Corporation;<br><br>                 Defendants. | CASE NO.  2;24-CV-09033-GW-RAO<br><br>**PLAINTIFF ALCON ENTERTAINMENT, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS TESLA, INC.'S AND ELON MUSK'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing Date:     April 7, 2025<br>Time:               8:30 a.m.<br>Courtroom:        9D<br>Judicial Officer:   Hon. George H. Wu |

1

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC

1

## **<u>TABLE OF CONTENTS</u>**

2

**I.    INTRODUCTION** ....................................................................**1**

3

**II.    FACTS** ...................................................................................**1**

4

5

**III.    PROCEDURAL SUMMARY** ...............................................**3**

6

**IV.    RULE 12(b)(6) STANDARDS** ..............................................**3**

7

**V.    RULE 12(b)(6) SUBSTANTIAL SIMILARITY COMPARISON** .**4**

8

**VI.    THE FAC VALIDLY PLEADS DIRECT COPYRIGHT INFRINGEMENT AGAINST MUSK AND TESLA** .....................**4**

9

10

**A. Copyright Infringement Requirements** .............................  **4**

11

**B. Ownership and Registration Are Validly Pled** ...........................**5**

12

**C. The FAC Pleads Unlawful Copying** .........................................**5**

13

**1.  Meaning of "copying"** ......................................................**5**

14

15

**2.  Types of "copying"** ..........................................................**6**

16

**3.  The FAC validly pleads actual "copying"** .....................**6**

17

**4.  The FAC pleads violation of Alcon's Section 106(1) reproduction rights in BR2049 by literal copying** .....................**7**

18

19

**5.  Alcon's Section 106(1) and (2) Nonliteral Copying Claim** .........**9**

20

**6.  The FAC pleads violation of Alcon's Section 106(1) and 106(2) rights by nonliteral copying** .........................................**11**

21

22

a.  <u>Section 106(1) and (2) Taking of Character K</u>………….. ..12

23

b.  <u>Section 106(1) and (2) Taking of Setting</u>…………………14

24

c.  <u>Section 106(1) and (2) Taking of Urgent Human-AI Decision Point Theme</u>……………………………………….....14

25

26

d.  <u>Section 106(1) and (2) Taking of Mood of Anxiety, Fear and Urgency specifically about the Human-AI Decision Point</u>..15

27

28

i

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     e.  <u>Section 106(1) and (2) Taking of Combination of Elements</u>……………………………………………..15

     f.  <u>Section 106(1) and (2) Extrinsic Test Satisfaction by Estoppel-type Principles</u> ……………...………………………………………..17

**7. The FAC pleads violation of Alcon's Section 106(5) display rights in BR2049 by nonliteral copying** .....................................17

**VII.  THE FAC'S VICARIOUS COPYRIGHT INFRINGEMENT CLAIM IS VALIDLY PLED AGAINST MUSK AND TESLA...18**

**VIII. CONTRIBUTORY COPYRIGHT INFRINGEMENT ...............18**

**IX.   THE LANHAM ACT CLAIM IS VALIDLY PLED....................18**

**X.    RULE 8(a)**………………………………………….....................**22**

**XI.   LEAVE TO AMEND**………………………………….....................**22**

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Alcon Entertainment, LLC v. Peugeot Automobiles, S.A.*, CV-19-00245-CJC (AFMx), 2020 WL 8365247 (C.D. Cal. July 7, 2020)....................................22

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)....................................19

*Anderson v. Stability AI Ltd*, 744 F.Supp.3d 956 (N.D. Cal. 2024)..........................8

*Anderson v. Stallone*, 87-0592 WDKGX, 1989 WL 206431 at *11 (C.D. Cal. 1989) ..............................................................................................5, 8, 14

*Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994)........11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)...................................................3

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). ...................3

*Bangkok Broad. & TV Co. v. IPTV Corp.*, 742 F.Supp.2d 1101, 1114-15 (C.D. Cal. 2010).....................................................................................18

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ..................................3

*Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir.)...........................................12

*Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60 (1983)................................21

*Comedy III Productions, Inc. v. New Line Cinema*, 200 F.3d 593 (2000)...............19

*Comm. for Idaho's High Desert v. Yost*, 92 F.3d 814 (9th Cir. 1996) ....................18

*Corbello v. Valli*, 974 F.3d 965, 977-981 (9th Cir. 2020)...........................6, 11, 12

*Daniels v. Walt Disney Co.*, 958 F.3d 767, 774 (9th Cir. 2020) ............................13

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) ...............19

*Davis v. Metro Prods.*, 885 F.2d 515, 524 n. 10 (9th Cir. 1989) ...........................18

*DC Comics v. Towle*, 802 F.3d 1012, 1021 (9th Cir. 2015)..................................13

*Dish Network LLC v. Jadoo TV, Inc.*, 20-cv-01891-CRB, 2023 WL 4004115 at *14 (N.D. Cal. 2023).................................................................................18

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392 (2006) .................................5

*Ellison v. Robertson*, 357 F.3d 1072, 1078-79 (9th Cir. 2004) .............................18

*First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1384 (9th Cir. 1987) ........19

*Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932)............................................6

iii

TABLE OF AUTHORITIES

*Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007) ........................ 19

*Funky Films, Inc. v. Time Warner Ent. Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006) ........................................................................................................................ 12

*Garcia v. Google, Inc.*, 786 F.3d 733, 741 (9th Cir. 2015, *en banc*) ....................... 5

*Godecke v. Kinetic Concepts, Inc.,* 937 F.3d 1201, 1205 (9th Cir. 2019) ................. 3

*Hearn v. R.J. Reynolds Tobacco Co.*, 279 F.Supp.2d 1096, 1102 (D. Az. 2003) ....... 4

*Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140 (2023) ............. 21

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 850-51 (9th Cir. 2012) ..................................................................................................................... 16

*Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006) ......... 5

*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (2001) ............................................ 3, 4

*Lindy Pen Co. Inc. v. Bic Pen Corp.*, 725 F.2d 1240, 1246 (9th Cir. 1984) ............. 19

*Lions Gate Ent., Inc. v. TD Ameritrade Servs. Co., Inc.*, No. 2:15-05024-DDP-E, 2017 WL 4621541 (C.D. Cal. Oct. 16, 2017) ..................................................... 19

*Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 913-914 (9th Cir. 2010) ... 12

*Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co., Inc.,* 900 F.Supp. 1287 (C.D. Cal. 1995) ..................................................................................................... 9

*Micro Star v. Formgen, Inc.,* 154 F.3d 1107 (9th Cir. 1998) ...........................passim

*Nielsen Consumer, LLC v. LiveRamp Holdings, Inc.*, 24-cv-07355 SVK, 2025 WL 604665 at *6 (N.D. Cal. 2025) ........................................................................... 20

*Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1452-53 (9th Cir. 1988) ....................... 12

*Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.,* 268 F.3d 1133, 1137-1138 (9th Cir. 2001) ..................................................................................................... 22

*Paramount Pictures Corp. v. Axanar Productions, Inc.*, 2:15-cv-009938-RGK-E, 2017 WL 83506 at *1 (C.D. Cal. 2017) ....................................... 11, 12, 17, 18

*PetConnect Rescue, Inc. v. Salinas*, 656 F.Supp.3d 1131, 1161 (S.D. Cal. 2023) .. 18, 19, 20

*Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) 16

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018) .............. 6, 12, 16, 17

*Rogers v. Grimaldi*, 875 F.2d 994 (2d. Cir. 1989) .................................................. 21

*Shaw v. Lindheim*, 919 F.2d 1353, 1360-61 (9th Cir. 1990) ........................ 12, 15, 17

*Skidmore as Trustee for the Randy Wolfe Trust v. Led Zeppelin ("Skidmore")*, 952

F.3d 1051, 1064 (9th Cir. 2020).................................................................passim

*Sleep Science Partners v. Lieberman*, 09-4200 CW, 2010 WL 1881770 (N.D. Cal.
    2010)..............................................................................................................20

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) ...................16

*Tremblay v. OpenAI, Inc.,* 716 F.Supp.3d 772 (N.D. Cal. 2024)................................8

*U.S. v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011)................3, 4, 22, 23

*Unicolors, Inc. v. H&M Hennes & Mauritz, LLP*, 595 U.S. 178, 181 (2022) ............5

*Warner Bros. Entertainment v. Global Asylum, Inc.*, 107 U.S.P.Q.2d 1910, 2012
    WL 6951315 at *8 (C.D. Cal. 2012).............................................................20

*Warner Bros. Pictures, Inc. v. Columbia Broadcasting System, Inc.*, 216 F.2d 945,
    950 (9th Cir. 1954) .......................................................................................13

*Wozniak v. Warner Bros. Entertainment Inc.*, 726 F.Supp.3d 213, 233 (S.D.N.Y.
    2024)..................................................................................................................5

<u>Statutes</u>

15 U.S.C. § 1125(a)(1)(A) ...............................................................................3, 18, 20

17 U.S.C. § 106 ..........................................................................................................5

17 U.S.C. § 106(1) ...............................................................................................passim

17 U.S.C. § 106(2) ...............................................................................................passim

17 U.S.C. § 106 (5) ..............................................................................................5, 17

17 U.S.C. § 411(a) ......................................................................................................5

17 U.S.C. § 501 .......................................................................................................3, 5

Fed. R. Civ. P. 8(a) ................................................................................................3, 22

Fed. R. Civ. P. 12(b)(6) ......................................................................................3, 4, 8

Fed. R. Civ. P. 56 ................................................................................................4, 8

## I.    <u>INTRODUCTION</u>

Plaintiff Alcon Entertainment, LLC ("Plaintiff" or "Alcon") opposes the motion filed by defendants Elon Musk ("Musk") and Tesla, Inc. ("Tesla") to dismiss Alcon's First Amended Complaint ("FAC").

## II.    <u>FACTS</u>

Tesla is the well-known car maker.  (First Amended Complaint [Dkt. 37] ["FAC"], ¶ 32.)  Musk is Tesla's founding principal and CEO.  (*Id.*, ¶ 33.)  Tesla, Musk and defendant Warner Bros. Discovery, Inc. ("WBDI") (collectively, "Defendants") partnered together to advertise Tesla and its artificially intelligent autonomous car products from WBDI's legendary motion picture studio lot in Burbank, California.  (*Id.*, ¶¶ 2-4, 6-13, 18, 24, 26, 34, 85-86, 90; February 4, 2025 Declaration of Christopher Marchese ["Marchese Decl."] [Dkt. 24], Ex. 2 [We Robot Work].)  The ad leveraged Hollywood motion pictures to market Tesla's cars – a common marketing strategy among automotive brands.  (FAC, ¶¶ 3, 6, 8-13, 85-86, 90.)  Although not emphasized in the FAC, the We Robot Work shows that the ad was also marketing humanoid robots, with projected price points.  (*See, e.g.,* We Robot Work, 0:19:40-0:23:30.)  The single Hollywood motion picture which Musk was most determined to use in the event was "Blade Runner 2049" ("BR2049"). (FAC, ¶¶ 3, 4, 37-38, 86, 90, Exs. A, B; March 6, 2025 Declaration of Kristen McCallion ["McCallion Decl."], Ex. 3 [BR2049 on DVD].)

BR2049 is a well-known, highly regarded science fiction movie about replicants (artificially intelligent humanoid robots), with artificially intelligent cars prominently featured.  (FAC, ¶¶ 31, 35, 73-84.)  It has specific commercial resonance with car brands.  (FAC, ¶¶ 4, 7, 14-15, 53-58, 68, 73-84.)  The relevant BR2049 rights are not owned by WBDI or its subsidiaries, but rather exclusively by Alcon.  (FAC, ¶¶ 31, 35-36, 73-77, 87-89.)

///

1
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC

1    Hours before the event, Defendants pressed Alcon for permission to feature
2  BR2049 in the Tesla ad.  (FAC, ¶¶ 3, 4, 90-98, Ex. A.) Alcon denied permission and
3  objected to any Alcon or BR2049 association with Tesla, the notoriously unbounded
4  and highly polarizing Musk, or any Musk-owned company, ever.  (FAC, ¶¶ 3, 17-
5  18, 33, 90-98.)

6    The content library of WBDI or its subsidiaries contains many other motion
7  pictures which Musk and Tesla easily could have used instead.  (FAC, ¶¶ 99, 115-
8  118.)  Rather than choose from legitimate options, Musk and Tesla used an artificial
9  intelligence ("AI")-driven image generator to create an illustration of a scene from
10  BR2049's core dramatic sequence.  (FAC, ¶¶ 2-3, 5, 96-98, 102-106, 115-118, Ex.
11  C.)  They then used the image at the opening of the ad's commercial pitch.  (FAC,
12  ¶¶ 5, 101-122; Marchese Decl., Ex. 2.) Musk's accompanying voiceover implicitly,
13  but nonetheless plainly, identifies the image as a scene from BR2049, including
14  BR2049's main character, K – and not any other movie.  (FAC, ¶¶ 5, 101-103, 106-
15  112; Ex. C, We Robot Work 0:05:43-0:05:54.)

16    Musk and Tesla used the semiotic BR2049 reference to push the audience
17  emotionally into a space more receptive to Musk and Tesla's commercial message.
18  (FAC, ¶¶ 5-10, 112-122.)  The onscreen use spanned 11 consecutive seconds, a
19  usage which past Alcon contract markers indicate would license for at least several
20  hundred thousand dollars, possibly including spend components for Alcon's benefit
21  in the tens of millions of dollars.  (FAC, ¶¶ 5, 15, n.3, 73-77, 83, 101-122; Marchese
22  Decl., Ex. 2.)  It was all transmitted to millions of viewers in the United States and
23  globally and lodged in the Internet and social media fabric.  (FAC, ¶¶ 3, 19.)  In
24  addition to lost license fee damages, Defendants created a likelihood of confusion
25  with consumers, especially automotive brands to whom Alcon markets BR2049
26  affiliations.  (FAC, ¶¶ 11-16, 20, 73-77, 82-84.)
27  ///
28

2

### III.   **PROCEDURAL SUMMARY**

Plaintiff's operative pleading is the FAC.  [Dkt. 37]  It makes four enumerated claims: (1) Direct Copyright Infringement [17 U.S.C. § 501] (FAC, ¶¶ 123-138); (2) Vicarious Copyright Infringement [17 U.S.C. § 501] (*Id.*, ¶¶ 139-158); (3) Contributory Copyright Infringement [17 U.S.C. § 501] (*Id.*, ¶¶ 159-173); and (4) False Appropriation and/or False Endorsement [15 U.S.C. § 1125(a)(1)(A)] (*Id.*, ¶¶ 174-188).  Defendants move to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") and 8(a) ("Rule 8(a)"): one motion by Musk and Tesla, [Dkt. 48] ("Motion"), and a separate motion by WBDI.  [Dkt. 49]  For the reasons discussed herein, Musk and Tesla's Motion should be denied.  Alcon separately opposes WBDI's motion.

### IV.   **RULE 12 (b)(6) STANDARDS**

Rule 12(b)(6) is for legal challenges, not factual challenges.  The court must take all factual allegations in the complaint that are not legal conclusions as true. *Godecke v. Kinetic Concepts, Inc.,* 937 F.3d 1201, 1205 (9th Cir. 2019); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (2001).  The court must construe the facts in the most favorable light to supporting a claim, and give plaintiff the benefit of all reasonable inferences from the express allegations.  *Id.*; *U.S. v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  The pleading must demonstrate only facial plausibility, meaning "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Godecke*, 937 F.3d at 1208 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Dismissal can lie if the facts, even viewed favorably to Plaintiff, are implausible; for "lack of a cognizable legal theory"; "the absence of sufficient facts alleged under a cognizable legal theory" (*Godecke*, 937 F.3d at 1208), or if the

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC

1  complaint itself alleges facts necessarily fatal to a claim (*Hearn v. R.J. Reynolds*
2  *Tobacco Co.*, 279 F.Supp.2d 1096, 1102 (D. Az. 2003)).

3         The focus of Rule 12(b)(6) analysis "is the complaint," and, generally, the
4  court "may not consider any material beyond the pleadings in ruling on a Rule
5  12(b)(6) motion" without treating the motion pursuant to Fed. R. Civ. P. 56
6  (summary judgment).  *Corinthian Colleges*, 655 F.3d at 998-99; *Lee*, 250 F.3d at
7  688.  The court may consider external material proffered by the movant, pursuant to
8  three exceptions: 1) exhibits to the complaint; 2) documents referenced by the
9  complaint, upon which it "necessarily relies," and the authenticity of which are
10  undisputed; and 3) matters properly subject to judicial notice.  *Corinthian Colleges*,
11  655 F.3d at 991, 998-999; *Lee*, 250 F.3d at 688.

12         Plaintiff concurrently submits objections and responses to the Motion's
13  extrinsic material proffers.

14          **V.      RULE 12(b)(6) SUBSTANTIAL SIMILARITY COMPARISON**

15         Alcon agrees the Court is allowed in Rule 12(b)(6) practice to compare works
16  potentially to dispose of copyright infringement claims at the pleading stage.
17  (Motion, 5:7-6:14.)  None of Alcon's copyright infringement claims may be so
18  dismissed here, but not because there is any *per se* procedural prohibition on trying
19  to by substantial similarity comparison.

20          **VI.     THE FAC VALIDLY PLEADS DIRECT COPYRIGHT**
21               **INFRINGEMENT AGAINST MUSK AND TESLA**

22          **A. Copyright Infringement Requirements.**

23         A copyright infringement plaintiff must prove (and thus plead): "(1) that [it]
24  owns a valid copyright in [the infringed work]; and (2) that [the defendant or
25  defendants] copied protected aspects of the work." *Skidmore as Trustee for the*
26  *Randy Wolfe Trust v. Led Zeppelin ("Skidmore")*, 952 F.3d 1051, 1064 (9th Cir.
27  2020).  The elements are sometimes (usually in older cases) stated by the shorthand:

28

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC**

(1) ownership and (2) copying.  *See, e.g., Anderson v. Stallone*, 87-0592 WDKGX, 1989 WL 206431 at *11 (C.D. Cal. 1989).

A copyright infringement plaintiff also must prove (and thus plead) that the infringed work has been registered with the United States Copyright Office.  17 U.S.C. § 411(a); *Unicolors, Inc. v. H&M Hennes & Mauritz, LLP*, 595 U.S. 178, 181 (2022).  A "motion picture" must be registered as a whole, and its individual elements generally are not independently registrable.  *See Garcia v. Google, Inc.*, 786 F.3d 733, 741 (9th Cir. 2015, *en banc*).

**B. Ownership And Registration Are Validly Pled.**

The FAC pleads Alcon's ownership of BR2049 and its registration.  (FAC, ¶ 35.)  Musk and Tesla do not contend otherwise.  The issue is "copying."

**C. The FAC Pleads Unlawful Copying.**

**1.  Meaning of "copying."**

The "copying" element is shorthand for "violation of one of the exclusive rights provided to a copyright owner under 17 U.S.C. § 106" ("Section 106").  17 U.S.C. § 501; *Wozniak v. Warner Bros. Entertainment Inc.*, 726 F.Supp.3d 213, 233 (S.D.N.Y. 2024).  Section 106 affords a motion picture copyright owner, *inter alia*, the following exclusive rights: (1) "to reproduce the copyrighted work in copies or phonorecords"; (2) "to prepare derivative works based upon the copyrighted work"; … and (5) with respect to "individual images" from the motion picture, "to display the copyrighted work publicly."  17 U.S.C. § 106(1), (2) and (5).

The Copyright Act also affords all copyright owners the right to control the work, by refusing to grant use permission; a right to exclude others from use.  *Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006) ("The copyright right is the right to control the work, including the decision to make the work available to or withhold it from the public."); *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392 (2006) ("Like a patent owner, a copyright holder possesses

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC

1  'the right to exclude others from using his property.'"), quoting *Fox Film Corp. v.*
2  *Doyal*, 286 U.S. 123, 127 (1932).

3                          **2.  Types of "copying."**

4          To prove the "copying" element, a plaintiff must prove "actual copying" of
5  their work, plus either "literal copying" of all or part of it, or "copying of protected
6  elements" of it (also called "substantial similarity copying" or "nonliteral copying").
7  *Oracle International, Inc. v. Rimini Street, Inc.*, 123 F.4th 986, 995 (9th Cir. 2024);
8  *Wozniak*, 726 F.Supp.3d at 229.

9                  **3.  The FAC validly pleads actual copying.**

10         "Actual copying" means that the defendant did not create their own work
11 independently, "without knowledge of or exposure to the plaintiff's work,"
12 *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), overruled on other
13 grounds by *Skidmore*, 952 F.3d 1051 (9th Cir. 2020), but rather had plaintiff's work
14 in mind at some level in the act of creation.

15          The Motion equivocates on challenging actual copying.  Plaintiff thus
16 addresses it.  It can be established by direct evidence, or circumstantially by
17 showing the defendant had "access" to plaintiff's work and that the two works share
18 similarities probative of copying. *Rentmeester*, 883 F.3d at 1117.  The probative
19 similarity test for "actual copying" is a low bar, done from the viewpoint of an
20 ordinary lay observer, with no filtering out of unprotected elements first, *Skidmore*,
21 952 F.3d at 1064.

22          Actual copying may also be established by defendant's admissions.  Where a
23 defendant themselves <u>says</u> their creation is based on the infringed work, courts treat
24 it as an admission of <u>at least</u> actual copying, which the defendant may not deny.  *See*
25 *Wozniak*, 726 F.Supp.3d at 230.  Copyright law generally charges creators with the
26 downsides of their descriptions of their own work to the intended audience.  *See,*
27 *e.g., Corbello v. Valli*, 974 F.3d 965, 977-981 (9th Cir. 2020) (discussing copyright

28

                                            6

1  estoppel-like concepts, in context of "asserted truths" doctrine).  Musk effectively

2  stated to the audience that the Exhibit C image was <u>supposed to be</u> an illustration of

3  BR2049, a work Musk "loves" -- he says "I love 'Blade Runner,'" without saying

4  the number "2049," but, as the FAC points out, from the context, he plainly means

5  BR2049 and not the 1982 Picture.  (FAC, ¶¶ 5, 106-112.)  That by itself should bar

6  Musk and Tesla from denying at least nonliteral actual copying.  (FAC, ¶¶ 127d,

7  127e.)

8      The FAC pleads circumstantial facts of actual copying regardless.  BR2049 is

9  a widely distributed work, (FAC, ¶ 78), entitled to a presumption of "access."

10 *Wozniak*, 726 F.Supp.3d at 239.  Even without a presumption, mere hours before the

11 event, Defendants sought Alcon's use permission, (FAC, ¶¶ 3, 5, 89-96), meaning

12 they clearly knew the work.  The overall look and feel of Exhibit C compared to

13 BR2049 images like those in Exhibits A and B, especially with Musk's voiceover,

14 (We Robot Work, 0:05:43-54), satisfies the low probative similarity bar for

15 circumstantial actual copying, such that actual copying cannot be found lacking

16 under Rule 12(b)(6), even if contested.

17      Musk and Tesla's proffered alternative explanation of generating Exhibit C

18 without actually putting any of BR2049 into the AI, and further directing the AI to

19 add "Elon Musk in a trench coat" in the foreground, would not suffice to establish

20 independent creation here, either.  Where over a space of only several hours there

21 was access to Plaintiff's work on creation's front end, an image with probative

22 similarity on creation act's back end, and where Musk effectively said it was

23 illustrating BR2049, an independent creation defense will be unavailable.  Creation

24 mechanics remain relevant to literal "actual copying," discussed next.

25      **4.  The FAC pleads violation of Alcon's Section 106(1)**

26      **reproduction rights in BR2049 by literal copying.**

27      "Literal copying" means making an exact copy (*e.g.*, with a scanner or

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC

electronically duplicating a computer file, or the like). *Oracle*, 123 F.4th at 995. No substantial similarity comparison is required; liability attaches absent a specific defense such as *de minimis* copying or fair use. *See, e.g., Wozniak*, 726 F.Supp.3d at 233-34; *Anderson*, 1989 WL 206431 at *8. "Literal copying" is necessarily "actual copying." The only Rule 12(b)(6) defense Musk and Tesla make to Alcon's claim of literal copying by putting all or part of BR2049 into an AI image generator, (FAC, ¶¶ 103-104, 127a, 127b), is implausibility. (Motion, 14:3-22.)

The allegations seem entirely plausible. Unauthorized copying of valuable expressive content into AI systems to generate content is currently rampant. *See, e.g., Tremblay v. OpenAI, Inc.,* 716 F.Supp.3d 772 (N.D. Cal. 2024); *Anderson v. Stability AI Ltd*, 744 F.Supp.3d 956 (N.D. Cal. 2024). If necessary, on amendment Alcon could plead that Musk owns xAi, a company that runs "Grok," described as "a free AI assistant … [which] offers real-time search, image generation, trend analysis, and more." https://grok.com/. That Musk might have put BR2049 or parts of it into Grok for image generation, especially where Musk says he "loves" the movie and was determined to use it, seems plausible enough.

Contrary to the Motion's implications, Musk and Tesla have not done anything to provide Plaintiff with any information about anything regarding the underlying dispute, except what they have filed with the Court in the case. Their improperly proffered alternative factual explanation would not even be admissible under Fed. R. Civ. P. 56, it is so incomplete and unsupported by any competent declarant. Moreover, parts of it seem inconsistent with observable facts: for instance, Musk and Tesla say Exhibit C was generated by a direction to an AI to add "Elon Musk in a trench coat" to a licensed image. Yet, during the event, Musk clearly referred to the Exhibit C figure in the third person and implicitly as a "blade runner," not as Musk himself. (We Robot Work, 0:05:34-0:05:43.) The Motion's argument against literal copying claim comes down to little more than a bare factual

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC

1    denial, which is not enough for implausibility.

2    **5. Alcon's Section 106(1) and (2) Nonliteral Copying Claim.**

3      "Nonliteral copying" means the defendant took from plaintiff's work to make

4 the infringement, but not at the level of an identical copy. *Oracle*, 123 F.4th at 995.

5 A defendant violates Section 106(1) by creating a work that actually copied

6 "protected elements" of the plaintiff's work, giving it "substantial similarity" to the

7 plaintiff's work. *Skidmore*, 952 F.3d at 1064. If there is at least some violation of

8 Section 106(1), then there may also be a violation of Section 106(2) derivative work

9 preparation rights. *Oracle*, 123 F.4th at 994-96.

10      For a carmaker defendant to commit nonliteral copying of a famous motion

11 picture property for a car advertisement is old news and clearly prohibited. (FAC,

12 ¶¶ 2, 8-13); *Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co., Inc.,* 900

13 F.Supp. 1287 (C.D. Cal. 1995). However, Musk and Tesla did it in an unusual way.

14 They made a still image illustration of a core BR2049 dramatic sequence including

15 the main character, and then prominently but, in an absolute time sense, briefly,

16 incorporated the image into the ad, with voiceover implicitly, but nonetheless

17 plainly, labeling it as referencing BR2049. In other words, they infringed a big

18 movie using a relatively small "physical" footprint. Alcon contends that by doing

19 this, Musk and Tesla can be found liable for broadly taking protected expression

20 across BR2049 in its entirety or at least its "Las Vegas Sequence," under principles

21 from cases like *Micro Star v. Formgen, Inc.,* 154 F.3d 1107 (9th Cir. 1998).

22      In *Micro Star*, the defendant seller of an unlicensed game extension to the

23 plaintiff's 1990s-popular video game "Duke Nukem" was found to have infringed

24 Duke Nukem's core art files (and thus essentially all protected expression of the

25 game), even though the game extension itself did not contain any physical taking of

26 the art files, but rather only referenced them by a physical taking of game code

27 uninteresting by itself. 154 F.3d at 1112. The Ninth Circuit found that where the

28

9

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC

1   limited amount of code physically taken demonstrably pointed to tangibly protected

2   expression within the plaintiff's exclusive copyright rights, even if that tangible

3   space was not physically located within the defendant's accused work, the defendant

4   had committed a large scale Section 106(2) infringement of protected elements

5   across the entire work, not just elements in the physical footprint of the

6   infringement.  *Id.* at 1111-1112.

7       *Micro Star* and cases like it teach that, for some types of protected works, a

8   small "physical" Section 106(1) infringement can be a very big Section 106(2)

9   infringement, not limited only to elements "physically" present in the infringing

10  work.  The Ninth Circuit's recent December 16, 2024 *Oracle* opinion reaffirmed

11  *Micro Star* on this precise point:

12      Take the case of Duke Nukem 3D, a popular video game.  A third-
        party distributor sold software that continued the video game's story
13      by creating extra levels of gameplay.  The third-party distributor
        argued its product was not copyright infringement because it didn't
14      incorporate any of Duke Nukem's protected expression.  As a
        technical matter, the distributor explained that its product
15      "reference[d] Duke Nukem's "source art library" but did not "not
16      actually contain any art files."  **We held that these new Duke
        Nukem levels were derivative works because they copied the video
17      game's "story itself," including the "plot, theme, dialogue, mood,
18      setting, characters, etc."  We likened the extra game levels to a
        book version of the game that recasts the central character <u>even</u>
19      <u>though it doesn't copy pictures or code of the game</u>**.
20

21  *Oracle*, 123 F.4th at 995 (emphasis added, internal citations omitted).

22      The FAC openly lays out Plaintiff's contention that well-known motion

23  pictures are susceptible to this type of "referencing" (or "gating") infringement, and

24  that Musk and Tesla committed it.  (FAC, ¶¶ 8-13, 37-51.)  Motion pictures rely on

25  persistence of vision, displaying typically 24 still images per second in sequence to

26  create a powerful storytelling illusion of lifelike motion, meaning a 120-minute

27  movie contains around 172,800 still images.  (FAC at ¶ 39.)  For a well-known

28

10

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC

1  motion picture like BR2049, if a defendant displays a single still image of an iconic

2  scene from the movie – or an illustration that evokes one – the defendant effectively

3  "gates" the audience potentially to all the protected elements (or a set of them) in the

4  whole movie, which do exist in a tangibly fixed expressive form (the movie) and are

5  thus protected.  (FAC, ¶¶ 9-10, 40-51.)  That is what Musk and Tesla did here, and it

6  infringed Plaintiff's Section 106(2) rights.  *Micro Star*, 154 F.3d at 1112.

7        Reference leveraging infringement is well-recognized beyond software and

8  video games.  *See, e.g., Paramount Pictures Corp. v. Axanar Productions, Inc.*,

9  2:15-cv-009938-RGK-E, 2017 WL 83506 at *1 (C.D. Cal. 2017) (Star Trek

10  universe reference leveraging); *Wozniak*, 726 F.Supp.3d at 220-221, 227-228

11  (Batman universe reference leveraging).

12        For the reference leveraging claim to be valid, the FAC must plead at least

13  <u>some</u> Section 106(1) violation "physically" present in Exhibit C or the We Robot

14  Work.  But once it does, then, under *Micro Star*, 154 F.3d 1107, the Section 106(2)

15  claim is <u>not</u> limited to elements physically present in the accused works.  Although

16  openly presented in the FAC, reference leveraging is never addressed in the Motion.

17        **6.  The FAC pleads violation of Alcon's Section 106(1) and**

18        **Section 106(2) rights by nonliteral copying.**

19        The Ninth Circuit analyzes substantial similarity by the extrinsic/intrinsic

20  analytical filtering test.  *Skidmore*, 952 F.3d at 1064.  The extrinsic test has three

21  steps:

22        (1) the plaintiff identifies similarities between the copyrighted work
    and the accused work; (2) of those similarities, the court disregards

23        any that are based on unprotectable material or unauthorized use; and
    (3) the court must determine the scope of protection ("thick" or

24        "thin") to which the remainder is entitled "as a whole."

25

26  *Corbello*, 974 F.3d at 974, quoting *Apple Computer, Inc. v. Microsoft Corp.*, 35

27  F.3d 1435, 1443 (9th Cir. 1994).  If extrinsic analysis succeeds, a jury must conduct

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC

1  the "intrinsic" step, which "examines an ordinary person's subjective impressions of

2  the similarities between the two works," under judicial guidance. *Corbello*, 974

3  F.3d at 974, quoting *Funky Films, Inc. v. Time Warner Ent. Co., L.P.*, 462 F.3d

4  1072, 1077 (9th Cir. 2006), *Shaw v. Lindheim*, 919 F.2d 1353, 1360-61 (9th Cir.

5  1990), *Shaw* and *Funky* both overruled on other grounds by *Skidmore*, 952 F.3d

6  1051.

7         When plaintiff's work is a motion picture, the extrinsic test considers

8  elements such as plot, themes, dialogue, mood, setting, pace, characters, and

9  sequence of events. *Rentmeester*, 883 F.3d at 1118-1119. Science fiction motion

10  pictures are to be given the most plaintiff-favorable treatment, or "thickest"

11  protection of elements, *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 913-

12  914 (9th Cir. 2010); *Rentmeester*, 883 F.3d at 1120, including because doing so will

13  still leave defendants a myriad of alternative expressive options. *Mattel*, 883 F.3d at

14  913-914 ("there are" … "gazillions of ways to make an aliens-attack movie.");

15  *Rentmeester*, 883 F.3d at 1120.

16                    a. <u>Section 106(1) and (2) Taking of Character K</u>.

17         Motion picture property infringement by copying characters can occur at two

18  different levels. On one level, if as here, a plaintiff is claiming infringement of a

19  specific motion picture in context, then its characters are assessed as protectable

20  elements at the same level of scrutiny as the other elements (plot, setting, theme,

21  etc.) – *see, e.g., Axanar*, 2017 WL 83506 at *6 ("even lightly sketched characters

22  together with other extrinsic test elements may be enough for a finding of

23  infringement"), citing *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1452-53 (9th Cir.

24  1988) (*Olson* also noting visually depicted characters are potentially protectable

25  even if otherwise less developed); *see also Berkic v. Crichton*, 761 F.2d 1289, 1293

26  (9th Cir.) (first case to add "characters" to the plot, setting, theme, etc. list, and

27  changing "sequence" to "sequence of events," with no discussion that character

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC

1  element was subject to any higher standard than the other elements), *cert. denied*,

2  474 U.S. 826 (1985).

3      The FAC articulates protectable elements of K that appear, including at least

4  partially "physically," in both BR2049 and the accused works, to satisfy the

5  extrinsic test at the ordinary-element level of character scrutiny.  (FAC, ¶¶ 71b,

6  127c, 127e, 127d, Exs. A-C, We Robot Work at 0:05:43-44, BR2049 at 1:36:28-

7  1:37:59, 1:40:48-2:01:50.)

8      At another, different and more difficult to establish level, a plaintiff may also

9  claim that a character is protectable independently, outside of any single work.  The

10  Ninth Circuit does not rely on any one test for this, *Daniels v. Walt Disney Co.*, 958

11  F.3d 767, 774 (9th Cir. 2020), and recognizes at least three.  There is a three-part

12  "distinct delineation" or "*Towles*" test.  *Daniels*, 958 F.3d at 771, citing *DC Comics*

13  *v. Towle*, 802 F.3d 1012, 1021 (9th Cir. 2015).  To apply *Towles* generally requires

14  the character appearing in more than one of plaintiff's works, which is not presently

15  alleged (but perhaps could be on any amendment).

16      Independent character protection also lies if the character "constitutes the

17  story being told." *Daniels*, 958 F.3d at 773-74, citing *Warner Bros. Pictures, Inc. v.*

18  *Columbia Broadcasting System, Inc.*, 216 F.2d 945, 950 (9th Cir. 1954).  K satisfies

19  the "story being told" test, in that BR2049 is told almost entirely from his

20  perspective, and through the lens of his emotional journey, from an unquestioningly

21  obedient, cold-blooded killer of his own kind, untroubled by his own lack of a soul

22  or any societal implications of his actions, through an emotional middle act where

23  he comes to question everything and to believe he might indeed have a soul, to a

24  final act where the possibility that he might have a soul is shattered, but he makes an

25  existential decision fundamentally rejecting his prior existence anyway, becoming a

26  disobedient, highly empathetic, selfless, active rebel against the system he once

27  served.  (FAC, ¶¶ 57-68, 71b.)  This aspect of K arguably is part of the non-

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC

1  physically present elements Musk and Tesla semiotically reference-leveraged and

2  cognizable under *Micro Star*, 154 F.3d at 1112.

3       Under a third "bodily appropriation" test, if a plaintiff's motion picture

4  includes a sufficiently distinct character, and the defendant creates a work which the

5  defendant means to be understood as including plaintiff's actual character, the

6  defendant's work is a Section 106(2) violation without any need for substantial

7  similarity comparison. *Anderson*, 1989 WL 206431 at *8. The reasoning is

8  grounded in the kind of linking admission principle discussed above – if the

9  defendant says their work's character is Rocky Balboa, the defendant is treated as

10  taking all of what Rocky Balboa is expressively, not just his name. *Id*. Here, Musk

11  implicitly but plainly identified the figure in Exhibit C in a way that, in all of motion

12  pictures, only describes K. (FAC, ¶¶ 5, 71b.) The Motion has no answer for that.

13                    b.   Section 106(1) and (2) Taking of Setting.

14       The FAC articulates sufficiently original protectable elements of setting that

15  appear, including at least partially "physically," in both BR2049 and the accused

16  works. (FAC, ¶¶ 71b, 127c, 127e, 127d, Exs. A-C, We Robot Work at 0:05:43-44,

17  BR2049 at 1:36:28-1:37:59, 1:40:48-2:01:50.) The Motion's rejection of setting

18  descriptions is based upon truncating them to eliminate parts that are very specific,

19  including, *e.g.,* that it is a post-apocalyptic urban ruin "about to be explored by a

20  blade runner in a duster shown in silhouette or near silhouette." (FAC, ¶ 71e.) One

21  can almost always reduce extrinsic element descriptions to abstractions that are too

22  broad or generic to be protectable, but then everything just becomes a "selection and

23  arrangement" issue and the extrinsic test is just a *de facto* claim blocker.

24                    c.   Section 106(1) and (2) Taking of Urgent Human-AI Decision

25                         Point Theme.

26       The FAC articulates protectable elements of the identified theme that appear,

27  including at least partially "physically," in both BR2049 and the accused works to

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC

satisfy the extrinsic test.  (FAC, ¶¶ 71c, 127c, 127e, 127d, Exs. A-C, We Robot Work at 0:05:43-44, BR2049 at 1:36:28-1:37:59, 1:40:48-2:01:50.)  The Motion's arguments against this theme being unprotectable again depend on truncating the FAC's description of the how the theme is specifically expressed in BR2049.  *See, e.g., Shaw,* 1362.  The Motion's arguments that many other science fiction movies might contain this same theme, broadly stated, actually strongly supports Plaintiff: yes, Musk absolutely had other movies he could have chosen for the theme broadly stated, or he could have made his own original work including it —but with all those options, he <u>still</u> specifically took BR2049 <u>and its specific expression of the theme</u>, even after being told not to.  That argues <u>for</u> protectability, not against it.  Whether the accused works contain or reference-leverage the theme seems likely to be one specific issue that might well be aided by expert testimony on advertising psychology and semiotics, or the like, and is cognizable under *Micro Star*, 154 F.3d at 1112.

> d. <u>Section 106(1) and (2) Taking of Mood of Anxiety, Fear and Urgency specifically about the Human-AI Decision Point</u>.

The FAC articulates protectable elements of the identified mood that appear, including at least partially "physically," in both BR2049 and the accused works to satisfy the extrinsic test.  (FAC, ¶¶ 71c, 127c, 127e, 127d, Exs. A-C, We Robot Work at 0:05:43-44, BR2049 at 1:36:28-1:37:59, 1:40:48-2:01:50.)  The Motions' arguments against mood are again based on truncation and failure to recognize reference-leveraging claim theory, with factual dispute about whether Musk did or did not create any mood of anxiety, fear or urgency in the 11 second reference.

> e. <u>Section 106(1) and (2) Taking of Combination of Elements</u>.

Extrinsic/intrinsic analysis disregards unprotectable elements except: a plaintiff's "selection and arrangement" of otherwise unprotectable elements is protectable "if those elements are numerous enough and their selection and

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC

arrangement original enough that their combination constitutes an original work of authorship." *Skidmore*, 952 F.3d at 1074, citing *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 850-51 (9th Cir. 2012). The selection and arrangement of elements "must be similar enough that 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them.'" *Rentmeester*, 883 F.3d at 1121, quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960). A combination of as few as five unprotectable elements can satisfy the extrinsic test. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (citing with approval such a finding based on five), overruled on other grounds by *Skidmore*, 952 F.3d 1051.

At a minimum, the FAC articulates a "selection and arrangement" of elements that appear, including "physically," in BR2049 and/or the accused works. (FAC, ¶¶ 69, 70, 71a, 71b, 71c, 71d, 71e, 71f, 127c, 127e, 127d, Exs. A-C, We Robot Work at 0:05:43-44, BR2049 at 1:36:28-1:37:59, 1:40:48-2:01:50.) The FAC articulates at least the following such "selection and arrangement": (1) A male "blade runner," (2) clad in a duster, (3) with close-cropped hair, (4) viewed from behind, (5) in silhouette or near silhouette, (6) surveying or exploring a ruined city, (7) which city is specifically post-apocalyptic, (8) in the context of society being at a critical decision point as to how humans and artificial intelligence relate to each other; (9) that there are choices about that which must be made with urgency; (10) the wrong decision will lead to apocalyptic ruin; (11) switching between non-orange light, orange light, and back to non-orange light is used to indicate the right or good decision path (non-orange light) versus bad decision path (orange light); (12) such color and lighting switching also used to create a mood of anxiety, fear and urgency, specifically around the gravity of the human-AI decision point; (13) autonomously capable artificially intelligent cars take the decision maker (character/audience) toward or away from the decision point; and (14) all in the science fiction movie

16

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC

1    genre context.

2                 f.    <u>Section 106(1) and (2) Extrinsic Test Satisfaction by Estoppel-</u>

3                      <u>type Principles.</u>

4         Substantial similarity may be supported by a defendant's admissions,

5 including subjective intention to take from plaintiff's work.  Where the defendant

6 <u>says</u> – especially to the audience -- that the work is based on plaintiff's, such a

7 statement is, at a minimum, considered strongly in favor of finding substantial

8 similarity, and can rise to a bar to denying substantial similarity or denying that

9 defendant's work is an infringing derivative work, akin to estoppel.  *See, e.g.,*

10 *Wozniak*, 726 F.Supp.3d at 231-32, 237-38; *Axanar*, 2017 WL 83506 at *5-6

11 (court's conclusion that extrinsic test satisfied "finds strong support in Defendants'

12 intent for [accused] works to [create a Star Trek work].");  *see also Shaw*, 919 F.2d

13 at 1363.  The FAC pleads such admissions by Musk and Tesla, that although

14 implicit, are plain enough.  (FAC, ¶¶ 5, 101-103, 106-112; Ex. C, We Robot Work

15 0:05:43-0:05:54.)  The FAC also pleads that they should create the estoppel-type bar

16 against Musk denying substantial similarity.  (FAC, ¶¶ 127d, 127e.)  The Motion

17 fails to address this.

18         The Motion's image-by-image comparison, (Motion 9-14), applies the

19 *Rentmeester* analysis not applicable here.  The question is not whether Exhibit C has

20 virtual identity to any Exhibit A or B image, but rather whether it looks like it is a

21 scene from BR2049's Las Vegas Sequence, or illustrating one, rather than some

22 other work.  It objectively does – *especially* when accompanied by Musk saying

23 implicitly, but plainly enough, that it is.

24             **7. The FAC pleads violation of Alcon's Section 106(5) display**

25                  **rights in BR2049 by nonliteral copying.**

26         This part of the direct infringement claim, (FAC ¶ 127f), stands or falls with

27 Plaintiff's nonliteral copying violations of Section 106(1) and (2).  The Motion

28

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC**

1  makes no separate challenge.

2  ### VII.   THE FAC'S VICARIOUS COPYRIGHT INFRINGEMENT

3  ### CLAIM IS VALIDLY PLED AGAINST MUSK AND TESLA

4       The Motion reads vicarious copyright infringement rules too narrowly.  On

5  direct financial benefit, all that is needed is a showing that " 'there is a causal

6  relationship between the infringing activity and any financial benefit a defendant

7  reaps." *Dish Network LLC v. Jadoo TV, Inc.*, 20-cv-01891-CRB, 2023 WL 4004115

8  at *14 (N.D. Cal. 2023), quoting *Ellison v. Robertson*, 357 F.3d 1072, 1078-79 (9th

9  Cir. 2004).  Intentionally using the infringing activity as the lead of an

10  advertisement to semiotically move the audience to be more receptive to buying

11  company stock and the company's products is a direct enough causal relationship.

12  Musk's argument that his status as CEO and controlling shareholder of Tesla is not

13  enough to establish his own individual liability (both directly and vicariously), is

14  simply legally incorrect, at least where he was so directly involved.  *See Jadoo TV*,

15  2023 WL 4004115 at *10-11, *14 ("[A]s Jadoo's salaried CEO and majority

16  shareholder, Sohail also directly benefited from the infringement."), citing *Comm.*

17  *for Idaho's High Desert v. Yost*, 92 F.3d 814 (9th Cir. 1996) (direct liability),

18  *Bangkok Broad. & TV Co. v. IPTV Corp.*, 742 F.Supp.2d 1101, 1114-15 (C.D. Cal.

19  2010) (direct liability) (quoting *Davis v. Metro Prods.*, 885 F.2d 515, 524 n. 10 (9th

20  Cir. 1989); *see also Axanar*, 2017 WL 83506 at *11 (CEO vicariously liable for

21  corporate infringement).

22  ### VIII.  CONTRIBUTORY COPYRIGHT INFRINGEMENT

23       Defendants make no independent challenge to this claim.

24  ### IX.   THE LANHAM ACT CLAIM IS VALIDLY PLED

25       False association claims under 15 U.S.C. § 1125(a)(1)(A) are essentially

26  synonymous with false designation of origin claims.  *PetConnect Rescue, Inc. v.*

27  *Salinas*, 656 F.Supp.3d 1131, 1161 (S.D. Cal. 2023).  The elements are: (1)

28

18

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC

defendant's use in commerce of (2) any word, false designation or origin, false or
misleading description, or representation of fact, which (3) is likely to cause
confusion or misrepresents the characteristics of defendant's or another's goods or
services. *Id.*, citing *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir.
2007).  The Motion argues that a false association claim requires Alcon to plead it
that Alcon is itself a commercial source of cars, (Motion 17:22-18:21), but that is
legally incorrect.  "[A]ssociative confusion 'may arise not only where a consumer
purchases a product thinking it is another, but also where there may be a mistake as
to the sponsorship, quality or association of a product.'"  *PetConnect*, 656
F.Supp.3d at 1161, quoting *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378,
1384 (9th Cir. 1987); *Lindy Pen Co. Inc. v. Bic Pen Corp.*, 725 F.2d 1240, 1246 (9th
Cir. 1984).  Likelihood of confusion is analyzed under a multi-factor test , including
consideration of defendant intent.  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th
Cir. 1979).  The FAC pleads all elements.  (FAC, ¶¶ 73-84, 85-122,174-188.)

This is not a case like *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539
U.S. 23 (2003) or *Comedy III Productions, Inc. v. New Line Cinema*, 200 F.3d 593
(2000), where the defendant's marketed goods or services are expressive works, like
a movie.  Musk and Tesla are marketing cars and robots.  *Dastar* and *Comedy III* are
inapposite.

*Lions Gate Ent., Inc. v. TD Ameritrade Servs. Co., Inc.*, No. 2:15-05024-
DDP-E, 2017 WL 4621541 (C.D. Cal. Oct. 16, 2017) is, respectfully, a troubled
opinion which Alcon contends was wrongly decided.  In any event, the district court
ultimately rested its ruling against Lions Gate on false affiliation and false
advertising claims on grounds that what TD Ameritrade was using the "Dirty
Dancing" marks and goodwill to market was financial services, and Lions Gate had
not pled that Lions Gate was actually in the business of licensing *Dirty Dancing* for
financial services.  Alcon has clearly pled that it is in the business of licensing

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC

BR2049 for automotive brand partnerships.  (FAC, ¶¶ 15-16, 20, 73-74, 77, 83-84.)

The Motion argues that a violation of 15 U.S.C. § 1125(a)(1)(A) can only be established by pleading and proving defendant's use of plaintiff's exact mark or exact trade dress.  That is not the law.  Likelihood of confusion is tested under all the circumstances, looking broadly, not narrowly, and without any prior judicial "protected element filtering" as in copyright law.  *See, e.g.,* the "total effect of [the infringer's] product and package on the eye of the ordinary purchaser test" applied in cases such as *Warner Bros. Entertainment v. Global Asylum, Inc.*, 107 U.S.P.Q.2d 1910, 2012 WL 6951315 at *8 (C.D. Cal. 2012).

The FAC pleads trade dress with specificity, including specific uses of Exhibit A and B images and images like them by Alcon for marketing of the movie and related consumer products.  (FAC, ¶¶ 74-76, 79-81.)  This is not a case where defendant would have to go into a warehouse and examine a large inventory of clothing for trade dress violations.  As to *Sleep Science Partners v. Lieberman*, 09-4200 CW, 2010 WL 1881770 (N.D. Cal. 2010), that case is about look and feel of competing websites for dental sleep aids and not a similar fact pattern.

The Motion's assertion that Alcon is unable to plead ownership of the word mark "Blade Runner" is simply incorrect and also not a required element of the claim.  Alcon in fact does have a Lanham Act-cognizable ownership interest in the word mark "Blade Runner" that it could plead if required.  *See PetConnect*, 656 F.Supp.3d at 1162.  But this case is not about, for instance, Musk and Tesla evoking the 1982 Picture for their ad.  That is not the property they asked to license, and not the property they took following the rejection.  They wanted and took BR2049.

Nominative fair use is a mixed question of law and fact where the "analysis typically involves questions of law and fact and determination on a motion to dismiss is premature."  *Nielsen Consumer, LLC v. LiveRamp Holdings, Inc.*, 24-cv-07355 SVK, 2025 WL 604665 at *6 (N.D. Cal. 2025).  Here, there are factual issues

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC

not appropriate for Rule 12(b)(6) resolution even on just the second element alone: whether defendant's use was only so much "as is reasonably necessary to identify the product." (Motion, 23:6-16). The FAC pleads that 11 seconds of use is commercially a very long time, and it comes across as such in the We Work Recording. There is also at least a factual question as to whether and why Musk and Tesla would have to create and use Exhibit C to make a nominal reference to BR2049. Further, as Musk and Tesla point out, Musk did not actually use the term "Blade Runner 2049," and so did not necessarily make a "nominative use" at all. As to the third element, the Motion's characterization that no one would reasonably infer any sponsorship or endorsement, because Musk was criticizing BR2049 as a product is factually incorrect on its face: Musk in fact doesn't criticize BR2049 as a product, rather he says he "loves" the movie. (We Work Recording, 0:05:43-54.)

The test of *Rogers v. Grimaldi*, 875 F.2d 994 (2d. Cir. 1989) is both barred here and inapplicable regardless. Use of Plaintiff's marks and trade dress in a car advertisement is core Lanham Act-regulated conduct such that it should be interpreted as within the prohibition on applying *Rogers* articulated by *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140 (2023). Even if *Jack Daniel's* did not apply here, the speech here is plainly core commercial speech proposing a commercial transaction or which otherwise cannot pass the test of *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60 (1983), (as raised in the FAC ¶ 184 and ignored by the Motion), and thus should be outside of *Rogers* on that ground as well. Indeed, Plaintiff is unaware of any case, before *Jack Daniels* or after, that applies *Rogers* to an advertisement where the advertisement is not itself for an underlying express work, like a movie, especially where there is intent by the defendant to appropriate the plaintiff's commercial goodwill, as here. To do so would be to let *Rogers* "take over the world" in just the way *Jack Daniel's* cautions against. 599 U.S. at 158.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC

## X.     RULE 8(a)

The FAC does not violate Rule 8(a), and if the Court finds otherwise, there is no evidence that any Rule 8(a) dismissal should be without leave to amend. The FAC spends some space discussing semiotic theory-type issues in the context of movies and car advertising, but that is for the legitimate purpose of advancing the Section 106(2) reference leveraging infringement argument in a novel context. Plaintiff and Plaintiff's counsel also submit that the FAC is not like the pleading that was the subject of the Motion's cited Judge Carney Rule 8(a) dismissal with leave to amend order, but rather is much more like Alcon's final pleading in that same action – a 118-page Third Amended Complaint which Judge Carney upheld in its entirety against a kitchen sink motion to dismiss. *Alcon Entertainment, LLC v. Peugeot Automobiles, S.A.*, CV-19-00245-CJC (AFMx), 2020 WL 8365247 (C.D. Cal. July 7, 2020).

## XI.     LEAVE TO AMEND

Leave to amend should be granted absent is evidence that plaintiff has acted with bad faith, delay, in a way causes undue prejudice to the defendant, or a clear showing that amendment would be futile. *Corinthian Colleges*, 655 F.3d at 995. The court also considers whether plaintiff has previously amended. *Id.* Here, if the court finds deficiencies, Alcon should be allowed to amend. Plaintiff has behaved reasonably, diligently and in good faith as to prior pleading and amendment would not be futile. Plaintiff may proffer external material in support of leave to amend, and the court may consider it for that purpose. *Orion Tire Corp. v. Goodyear Tire &*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC

1 | *Rubber Co., Inc.,* 268 F.3d 1133, 1137-1138 (9th Cir. 2001); *Corinthian Colleges*,

2 | 655 F.3d at 995-96.

3

4 | DATED: March 17, 2025                    ANDERSON YEH PC
                                            Edward M. Anderson
5                                           Regina Yeh
6
7                                           _____
                                            Attorneys for Plaintiff
8                                           ALCON ENTERTAINMENT, LLC
9
10 |                           **CERTIFICATE OF COMPLIANCE**

11 |        The undersigned, counsel of record for Plaintiff Alcon Entertainment, LLC,

12 | certifies that this brief contains 6,986 words, which complies with the word limit of

13 | L.R. 11-6.1.

14                                          _____
15                                                 Edward M. Anderson

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS FAC