ANDERSON YEH PC
  Edward M. Anderson (STATE BAR NO. 198183)
edward@andersonyehlaw.com
  Regina Yeh (STATE BAR NO. 266019)
regina@andersonyehlaw.com
1055 E. Colorado Blvd. Ste 500
Pasadena, California  91106
Telephone: (626) 204-4092  Facsimile: (888) 744-0317

Attorneys for Plaintiff
ALCON ENTERTAINMENT, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALCON ENTERTAINMENT, LLC, a Delaware Limited Liability Company,<br><br>          Plaintiff,<br><br>     v.<br><br>TESLA, INC., a Texas Corporation; ELON MUSK, an individual; WARNER BROS. DISCOVERY, INC., a Delaware Corporation;<br><br>          Defendants. | CASE NO.  2;24-CV-09033-GW-RAO<br><br>**PLAINTIFF ALCON ENTERTAINMENT, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT WARNER BROS. DISCOVERY, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing Date:    April 7, 2025<br>Time:              8:30 a.m.<br>Courtroom:        9D<br>Judicial Officer:   Hon. George H. Wu |

1

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................1

II.    FACTS ...............................................................................................3

III.   PROCEDURAL SUMMARY ...........................................................7

IV.    RULE 12(b)(6) STANDARDS .........................................................8

V.     THE FAC VALIDLY PLEADS DIRECT COPYRIGHT
       INFRINGEMENT AGAINST WBDI FOR VIOLATION OF
       ALCON'S 17 U.S.C. § 106(5) BR2049 DISPLAY RIGHTS ..........9

       A. Copyright Infringement Requirements .......................................  9

       B. Ownership and Registration Are Validly Pled .............................10

       C. The FAC Pleads Direct Unlawful Copying Against WBDI For
          Violation Of Alcon's Section 106(5) Display Rights in BR2049 ...11

          1.  Only the "volitional conduct" requirement is at issue in
              WBDI's Motion ...........................................................................11

          2.  The FAC adequately pleads the "volitional conduct"
              requirement against WBDI .........................................................11

VI.    THE FAC'S VICARIOUS COPYRIGHT INFRINGEMENT
       CLAIM IS VALIDLY PLED AGAINST WBDI……………...13

VII.   CONTRIBUTORY COPYRIGHT INFRINGEMENT ...............14

VIII.  THE LANHAM ACT CLAIM IS VALIDLY PLED AGAINST
       WBDI………………………………………….....................14

IX.    RULE 8(a)……………………………………….....................17

X.     LEAVE TO AMEND…………………………….....................18

# TABLE OF AUTHORITIES

## Cases

*Alcon Entertainment, LLC v. Peugeot Automobiles, S.A.*, CV-19-00245-CJC (AFMx), 2020 WL 8365247 (C.D. Cal. July 7, 2020) .................................... 18

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) .................................... 15

*Anderson v. Stallone*, 87-0592 WDKGX, 1989 WL 206431 at *11 (C.D. Cal. 1989) 9

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .................................................................. 8

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). .................... 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ...................................... 8

*Bell v. Wilmott Storage Services, LLC*, 12 F.4th 1065, 1081-1082 (9th Cir. 2021) 11, 12

*Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60 (1983) .................................... 17

*Comedy III Productions, Inc. v. New Line Cinema*, 200 F.3d 593 (2000) ............... 15

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) ............... 15

*Dish Network L.L.C. v. Jadoo TV, Inc.*, 20-cv-01891-CRB, 2023 WL 4004115 at *4 (N.D. Cal. 2023) ................................................................................................... 10

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392 (2006) .................................... 10

*First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1384 (9th Cir. 1987) ........ 15

*Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932) .................................................. 10

*Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007) ........................ 14

*Garcia v. Google, Inc.*, 786 F.3d 733, 741 (9th Cir. 2015, *en banc*) ....................... 10

*Godecke v. Kinetic Concepts, Inc.,* 937 F.3d 1201, 1205 (9th Cir. 2019) ................. 8

*Hearn v. R.J. Reynolds Tobacco Co.*, 279 F.Supp.2d 1096, 1102 (D. Az. 2003) ....... 8

*Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140 (2023) ............. 17

*Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006) ........ 9

*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (2001) ............................................. 8, 9

*Lindy Pen Co. Inc. v. Bic Pen Corp.*, 725 F.2d 1240, 1246 (9th Cir. 1984) ............. 15

*Lions Gate Ent., Inc. v. TD Ameritrade Servs. Co., Inc.*, No. 2:15-05024-DDP-E, 2017 WL 4621541 (C.D. Cal. Oct. 16, 2017) .................................................... 15

*Nielsen Consumer, LLC v. LiveRamp Holdings, Inc.*, 24-cv-07355 SVK, 2025 WL 604665 at *6 (N.D. Cal. 2025) ........................................................................ 16

*Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.*, 268 F.3d 1133, 1137-1138 (9th Cir. 2001) ..................................................................................................... 18

*PetConnect Rescue, Inc. v. Salinas*, 656 F.Supp.3d 1131, 1161 (S.D. Cal. 2023) .. 14, 15, 16

*Rogers v. Grimaldi*, 875 F.2d 994 (2d. Cir. 1989) ...................................................... 17

*Skidmore as Trustee for the Randy Wolfe Trust v. Led Zeppelin ("Skidmore")*, 952 F.3d 1051, 1064 (9th Cir. 2020) ............................................................................... 9

*Sleep Science Partners v. Lieberman*, 09-4200 CW, 2010 WL 1881770 (N.D. Cal. 2010) .......................................................................................................................... 16

*U.S. v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011) ....................... 8, 9, 18

*Unicolors, Inc. v. H&M Hennes & Mauritz, LLP*, 595 U.S. 178, 181 (2022) .......... 10

*VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019) ............................ 10

*Warner Bros. Entertainment v. Global Asylum, Inc.*, 107 U.S.P.Q.2d 1910, 2012 WL 6951315 at *8 (C.D. Cal. 2012) ........................................................................ 16

*Wozniak v. Warner Bros. Entertainment Inc.*, 726 F.Supp.3d 213, 233 (S.D.N.Y. 2024) ........................................................................................................................... 9

### Statutes

15 U.S.C. § 1125(a)(1)(A) ................................................................................. 7, 14, 15

17 U.S.C. § 106 ............................................................................................................. 9

17 U.S.C. § 106(1) ........................................................................................................ 9

17 U.S.C. § 106(5) ........................................................................................................ 9

17 U.S.C. § 411(a) ...................................................................................................... 10

17 U.S.C. § 501 ......................................................................................................... 7, 9

8(a)    7, 17, 18

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 7, 8

Fed. R. Civ. P. 56 ........................................................................................................ 4, 8

TABLE OF AUTHORITIES

## I.    **INTRODUCTION**

Plaintiff Alcon Entertainment, LLC ("Plaintiff" or "Alcon") opposes the motion filed by defendant Warner Bros. Discovery, Inc. ("WBDI") [Dkt. 49], ("WBDI Motion") to dismiss Alcon's First Amended Complaint [Dkt. 37] ("FAC").

Although WBDI facially calls the WBDI Motion one made pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") and 8(a) ("Rule 8(a)"), a very large portion of the WBDI's Motion's arguments, maybe even most of them, are premised on denying the FAC's factual allegations, and also trying to get the Court to accept and consider a document that Defendants still have not even actually provided to Plaintiff in a meaningfully useful way.

The document, of course, is what WBDI says is "the" WBDI-Tesla contract regarding the October 10, 2024 event.  WBDI repeatedly represents to the Court that Alcon has the document and has had it for several weeks, implicitly on some basis pursuant to which Alcon can meaningfully examine it, consider it, investigate it informally, and the like.  That is not true, though, as WBDI very well knows.

Defendants have only provided the document on an unredacted basis to Plaintiff's counsel <u>and three designated individuals at Alcon, and those are the only people on the Alcon side who have even seen it or been able to consider it</u>.  Plaintiff has always objected to Defendants attempting to subvert the procedural rules and submit the document for consideration on a Fed. R. Civ. P. 12(b)(6) motion, where it is not a document Plaintiff was a party to, to the extent the document might be fully authentic and entirely self-contained as a memorialization of the WBDI-Tesla event relationship.  However, Plaintiff never objected to Defendants engaging in the procedure of trying to put it before the Court for the purpose of asking the Court to consider it, including on a partially sealed basis as against the rest of the world.

The filing delay that Defendants had in submitting the proposed sealed version of the document to the Court in connection with their February 4, 2025

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANT WBDI'S MOTION TO DISMISS FAC

1   motions to dismiss Plaintiff's original complaint was not because Plaintiff or

2   Plaintiff's counsel had any objection to Defendants asking for sealing.

3        Defendants, though, did not want to follow the ordinary sealing request

4   procedures.  Instead, they initially insisted on only providing the unsealed document

5   to Plaintiff's counsel, on a "strictly attorneys eyes only basis," and wanted

6   Plaintiff's counsel to agree to such handling voluntarily, and on an eleventh hour

7   basis late on the afternoon that Defendants' response to the initial Complaint was

8   due.  Plaintiff and Plaintiff's counsel had no objection to the sealing of the

9   unredacted document against the rest of the world, but Plaintiff's counsel declined

10  to agree to an attorneys eyes only restriction, especially without being able to

11  consult with his client principals, who were traveling and not available.  In meet and

12  confer discussions, to expedite the case and let Defendants pursue sealing, but

13  reserving all rights to challenge admissibility of the document, Plaintiff and

14  Plaintiff's counsel agreed to let Defendants vary from the applicable procedural

15  rules by providing the unredacted document to Plaintiff's counsel on an attorneys-

16  eyes-only basis, except for three specifically identified individuals at Alcon allowed

17  to see it.  Defendants so proceeded, and that is still the existing arrangement

18  regarding the document.  Plaintiff's counsel and Plaintiff have honored that

19  agreement and Defendants have never offered to change those conditions.

20       None of the four people on the Alcon side who have full access to the

21  document (three individuals at Alcon plus Plaintiff's lead counsel) have any

22  professional expertise in studio event contracts.  Alcon does not have its own studio

23  lot and never has.  Even setting aside discovery issues, meaningfully to assess the

24  document would require Plaintiff and Plaintiff's counsel to be able to consult with

25  other people with more expertise in a way that Defendants have impaired.

26       Many (perhaps even most) of the WBDI Motion's arguments are based on

27  WBDI's attempted introduction into Fed. R. Civ. P. 12(b)(6) practice of this

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANT WBDI'S MOTION TO DISMISS FAC

1  document which WBDI wants Alcon and the Court to take at face value as the sole

2  document existing anywhere that has any information about what the business

3  relationship between WBDI and Tesla actually was or was expected to be for the

4  event, and without Plaintiff even being able meaningfully to consult with anyone

5  with expertise about it, even if it were an authentic WBDI-Tesla contracting

6  document and the only such document.

7        Based on this situation, the WBDI Motion repeatedly proffers purported facts

8  outside the FAC that the WBDI-Tesla event was just "a straightforward lease

9  agreement for an event venue" with no brand affiliation component at all, and

10  certainly no agreement between WBDI and Tesla about anything to do with "Blade

11  Runner," and that WBDI had nothing to do at all with Musk and Tesla's conduct

12  regarding BR2049.  That is all not only contrary to the FAC's allegations, it is

13  belied by observable evidence outside the FAC.

14        **II.    <u>FACTS</u>**

15        Defendant Tesla, Inc. ("Tesla") is the well-known car maker.  (FAC, ¶ 32.)

16  Defendant Elon Musk ("Musk") is Tesla's founding principal and CEO.  (*Id.*, ¶ 33.)

17  Tesla, Musk and WBDI (collectively, "Defendants") partnered together to advertise

18  Tesla and its artificially intelligent autonomous car products from WBDI's

19  legendary motion picture studio lot in Burbank, California.  (*Id.*, ¶¶ 2-4, 6-13, 18,

20  24, 26, 34, 85-86, 90; February 4, 2025 Declaration of Christopher Marchese

21  ["Marchese Decl."] [Dkt. 24], Ex. 2 [We Robot Work].)  The ad leveraged

22  Hollywood motion pictures to market Tesla's cars – a common marketing strategy

23  among automotive brands.  (FAC, ¶¶ 3, 6, 8-13, 85-86, 90.)  Although not

24  emphasized in the FAC, the We Robot Work shows that the ad was also marketing

25  humanoid robots, with projected price points.  (*See, e.g.,* We Robot Work, 0:19:40-

26  0:23:30.)  The single Hollywood motion picture which Musk was most determined

27  to use in the event was "Blade Runner 2049" ("BR2049").  (FAC, ¶¶ 3, 4, 37-38, 86,

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANT WBDI'S MOTION TO DISMISS FAC

90, Exs. A, B; March 6, 2025 Declaration of Kristen McCallion ["McCallion Decl."], Ex. 3 [BR2049 on DVD].)

BR2049 is a well-known, highly regarded science fiction movie about replicants (artificially intelligent humanoid robots), with artificially intelligent cars prominently featured.  (FAC, ¶¶ 31, 35, 73-84.)  It has specific commercial resonance with car brands.  (FAC, ¶¶ 4, 7, 14-15, 53-58, 68, 73-84.)  The relevant BR2049 rights are not owned by WBDI or its subsidiaries, but rather exclusively by Alcon.  (FAC, ¶¶ 31, 35-36, 73-77, 87-89.)

Yet, hours before the event (in communications that are in emails, not the imagination of Alcon), Defendants pressed Alcon for permission to feature BR2049 in the Tesla ad.  (FAC, ¶¶ 3, 4, 90-98, Ex. A.)  The pressing was specifically done by WBDI.  WBDI is the entity within the WBDI conglomerate that owns the Burbank studio lot and relevant systems.  (FAC, ¶¶ 26, 34.)  The FAC further specifically alleges "that the business relationship with Musk and Tesla and the October 10, 2024 We Robot events and related business arrangements were significant enough to the overall WBDI conglomerate, that, even with respect to matters usually or sometimes left to WBDI subsidiaries and the employees of same, the event, at the very least as to the disputed matters [in this action], was actively monitored by, supervised by, and ultimately controlled by and directed by executives at the WBDI level, and not at a lower level of the WBDI conglomerate, such as lower level executives at Warner Bros. Pictures."  (FAC, ¶ 34; see also FAC ¶ 85.)

The FAC also alleges on information and belief that Musk specifically wanted to use, and expected to be able to use, one or more actual motion picture properties essentially as part of what Tesla was paying for the event, and that the property he most specifically wanted to use was BR2049.  (FAC, ¶¶ 86, 90.)

///

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANT WBDI'S MOTION TO DISMISS FAC

1    The WBDI Motion grouses that the FAC is engaging in too much guessing

2    with allegations like this made on information and belief, but the WBDI folks

3    actually working on this case may not understand something, which Alcon can plead

4    more specifically on amendment if necessary: the specific individual WBDI-shared

5    services executive who contacted Alcon on the day of the event on an emergency

6    basis to try to clear BR2049 for it explicitly told Alcon's personnel at the time (on

7    the afternoon of October 10, 2024) that executives at the "highest levels" of WBDI

8    "not located in Burbank" had firmly directed the shared services personnel in

9    Burbank to clear BR2049 for Musk and Tesla with urgency, because of the

10   importance of the Musk-Tesla event to the larger WBDI entity, and because Musk

11   (or Tesla) wanted BR2049 for it.  (*See also* FAC, ¶¶ 86-98.)

12   The FAC even alleges the names of the individual executives on the Tesla

13   side who were trying to make it happen.  (FAC, ¶ 90.)  Alcon can, if necessary

14   plead the name of the WBDI shared services individual.  However, that individual

15   has been a studio liaison for Alcon for many years, well before the corporate merger

16   that pushed Warner Bros. Studios into the WBDI entity, and Alcon has no belief that

17   said person had any bad intent, or needs to be personally exposed to the kind of

18   unpleasantness that the social media sphere can sometimes inflict on individuals

19   where Musk is involved.

20   In response to the emergency licensing request on October 10, 2024, Alcon

21   denied permission and objected to any Alcon or BR2049 association with Tesla, the

22   notoriously unbounded and highly polarizing Musk, or any Musk-owned company,

23   ever.  (FAC, ¶¶ 3, 17-18, 33, 90-98.)

24   The content library of WBDI or its subsidiaries contains many other motion

25   pictures which Musk and Tesla easily could have used instead.  (FAC, ¶¶ 99, 115-

26   118.)  Rather than choose from legitimate options, Musk and Tesla used an artificial

27   intelligence ("AI")-driven image generator to create an illustration of a scene from

28

5

BR2049's core dramatic sequence.  (FAC, ¶¶ 2-3, 5, 96-98, 102-106, 115-118, Ex. C.)  They then used the image at the opening of the ad's commercial pitch.  (FAC, ¶¶ 5, 101-122; Marchese Decl., Ex. 2.)  Musk's accompanying voiceover implicitly, but nonetheless plainly, identifies the image as a scene from BR2049, including BR2049's main character, K – and not any other movie.  (FAC, ¶¶ 5, 101-103, 106-112; Ex. C, We Robot Work 0:05:43-0:05:54.)

Musk and Tesla used the semiotic BR2049 reference to push the audience emotionally into a space more receptive to Musk and Tesla's commercial message.  (FAC, ¶¶ 5-10, 112-122.)  The onscreen use spanned 11 consecutive seconds, a usage which past Alcon contract markers indicate would license for at least several hundred thousand dollars, possibly including spend components for Alcon's benefit in the tens of millions of dollars.  (FAC, ¶¶ 5, 15, n.3, 73-77, 83, 101-122; Marchese Decl., Ex. 2.)  It was all displayed to a worldwide audience from WBDI-owned stages over WBDI-owned systems on October 10, 2024.  (FAC, ¶¶ 3, 18-19, 24-26, 34.)  Worse, it was predictably retransmitted and copied all over traditional media, the Internet, and social media, to millions of viewers both in the United States and globally.  (FAC, ¶¶ 3, 19.)  In addition to lost license fee damages, Defendants created a likelihood of confusion with consumers, especially automotive brands to whom Alcon markets BR2049 affiliations.  (FAC, ¶¶ 11-16, 20, 73-77, 82-84.)

Although WBDI adamantly denies that there was any brand affiliation aspect to the WBDI-Tesla event arrangement (*see, e.g.*, WBDI Motion at 2:22-3:5), that seems belied not only by the clearly documented emergency clearance request, but also by the We Robot Recording.  The We Robot Recording shows, *inter alia*: WBDI's Burbank studio lot prominently featured throughout; an opening statement of "Franz" (apparently a Tesla employee who acts as an initial master of ceremonies to introduce Musk) including an express callout by him that the event is at the Warner Bros. studios lot "the birthplace of many epic films depicting visions of the

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANT WBDI'S MOTION TO DISMISS FAC

future," (We Robot Recording 00:01:01-00:02:00); the famous Warner Bros. water tower making an on-camera appearance (id. at 00:40:00-00:40:01); and event attendees taking pictures with the Batmobile (id. at 01:15:47-01:15:53).

Moreover, it is important to remember that the We Robot Recording is only what those cameras captured of the event.  There are strong hints visible here and there in the We Robot Recording that event attendees physically present had much more exposure to and opportunities to interact with WBDI's branded properties as part of the event.  For instance, in addition to the Batmobile photo opportunity noted, there appears to be a large "map" display of the physical arrangement of the event visible in a few spots in the We Work Recording, but that appears to have been highly visible to event attendees.  (*See, e.g.,* We Work Recording at 00:47:21-00:47:31.)  The map appears to show the lot divided up into named "regions" for the event (for instance, the middle of the event appears to be called "the Midwest" on the map).  (*Id.*)  One of the regions appears to be named "West World."  (*Id.*)  "West World" is a famous motion picture and television property of WBDI's Warner Bros. Studios and/or HBO subsidiaries centered around advanced robots turning rogue and attacking humans in an immersive amusement park.  It hardly seems coincidental, and instead appears on its face to be a clear brand affiliation between WBDI and Tesla as part of the event.

### III.    PROCEDURAL SUMMARY

Plaintiff's operative pleading is the FAC.  [Dkt. 37]  It makes four enumerated claims: (1) Direct Copyright Infringement [17 U.S.C. § 501] (FAC, ¶¶ 123-138); (2) Vicarious Copyright Infringement [17 U.S.C. § 501] (*Id.*, ¶¶ 139-158); (3) Contributory Copyright Infringement [17 U.S.C. § 501] (*Id.*, ¶¶ 159-173); and (4) False Appropriation and/or False Endorsement [15 U.S.C. § 1125(a)(1)(A)] (*Id.*, ¶¶ 174-188).  Defendants move to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") and 8(a) ("Rule 8(a)"): one motion by Musk and Tesla,

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANT WBDI'S MOTION TO DISMISS FAC

1  [Dkt. 48], and a separate motion by WBDI ("WBDI Motion").  [Dkt. 49]  For the

2  reasons discussed herein, the WBDI Motion should be denied.  Alcon separately

3  opposes Musk and Tesla's motion.

4  ### IV.   RULE 12 (b)(6) STANDARDS

5  Rule 12(b)(6) is for legal challenges, not factual challenges.  The court must

6  take all factual allegations in the complaint that are not legal conclusions as true.

7  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1205 (9th Cir. 2019); *Lee v. City*

8  *of Los Angeles*, 250 F.3d 668, 679 (2001).  The court must construe the facts in the

9  most favorable light to supporting a claim, and give plaintiff the benefit of all

10  reasonable inferences from the express allegations.  *Id.*; *U.S. v. Corinthian Colleges*,

11  655 F.3d 984, 991 (9th Cir. 2011); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

12  699 (9th Cir. 1988).  The pleading must demonstrate only facial plausibility,

13  meaning "sufficient factual matter, accepted as true, to 'state a claim to relief that is

14  plausible on its face.'"  *Godecke*, 937 F.3d at 1208 (quoting *Ashcroft v. Iqbal*, 556

15  U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

16  (2007)).  Dismissal can lie if the facts, even viewed favorably to Plaintiff, are

17  implausible; for "lack of a cognizable legal theory"; "the absence of sufficient facts

18  alleged under a cognizable legal theory" (*Godecke*, 937 F.3d at 1208), or if the

19  complaint itself alleges facts necessarily fatal to a claim (*Hearn v. R.J. Reynolds*

20  *Tobacco Co.*, 279 F.Supp.2d 1096, 1102 (D. Az. 2003)).

21  The focus of Rule 12(b)(6) analysis "is the complaint," and, generally, the

22  court "may not consider any material beyond the pleadings in ruling on a Rule

23  12(b)(6) motion" without treating the motion pursuant to Fed. R. Civ. P. 56

24  (summary judgment).  *Corinthian Colleges*, 655 F.3d at 998-99; *Lee*, 250 F.3d at

25  688.  The court may consider external material proffered by the movant, pursuant to

26  three exceptions: 1) exhibits to the complaint; 2) documents referenced by the

27  complaint, upon which it "necessarily relies," and the authenticity of which are

28

8

undisputed; and 3) matters properly subject to judicial notice.  *Corinthian Colleges*, 655 F.3d at 991, 998-999; *Lee*, 250 F.3d at 688.

Plaintiff concurrently submits objections and responses to the Motion's extrinsic material proffers.

## V.    THE FAC VALIDLY PLEADS DIRECT COPYRIGHT INFRINGEMENT AGAINST WBDI FOR VIOLATION OF ALCON'S 17 U.S.C. § 106(5) BR2049 DISPLAY RIGHTS

### A. Copyright Infringement Requirements.

A copyright infringement plaintiff must prove (and thus plead): "(1) that [it] owns a valid copyright in [the infringed work]; and (2) that [the defendant or defendants] copied protected aspects of the work."  *Skidmore as Trustee for the Randy Wolfe Trust v. Led Zeppelin ("Skidmore")*, 952 F.3d 1051, 1064 (9th Cir. 2020).  The elements are sometimes (usually in older cases) stated by the shorthand: (1) ownership and (2) copying.  *See, e.g., Anderson v. Stallone*, 87-0592 WDKGX, 1989 WL 206431 at *11 (C.D. Cal. 1989).

The "copying" element is shorthand for "violation of one of the exclusive rights provided to a copyright owner under 17 U.S.C. § 106" ("Section 106").  17 U.S.C. § 501; *Wozniak v. Warner Bros. Entertainment Inc.*, 726 F.Supp.3d 213, 233 (S.D.N.Y. 2024).  Section 106 affords a motion picture copyright owner, *inter alia*, the following exclusive rights: (1) "to reproduce the copyrighted work in copies or phonorecords"; (2) "to prepare derivative works based upon the copyrighted work"; … and (5) with respect to "individual images" from the motion picture, "to display the copyrighted work publicly."  17 U.S.C. § 106(1), (2) and (5).

The Copyright Act also affords all copyright owners the right to control the work, by refusing to grant use permission; a right to exclude others from use.  *Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006) ("The copyright right is the right to control the work, including the decision to make the

1  work available to or withhold it from the public."); *eBay Inc. v. MercExchange,*

2  *LLC*, 547 U.S. 388, 392 (2006) ("Like a patent owner, a copyright holder possesses

3  'the right to exclude others from using his property.'"), quoting *Fox Film Corp. v.*

4  *Doyal*, 286 U.S. 123, 127 (1932).

5         In the Ninth Circuit, as a third element that tends to arise only in actions

6  where the display right is at issue, in addition to proving "copying" by the defendant

7  (violation by the defendant of at least one exclusive right granted to copyright

8  holders), "the plaintiff must also show that the defendant acted with 'volition' such

9  that defendant's conduct is the direct cause of the infringement."  *Dish Network*

10  *L.L.C. v. Jadoo TV, Inc.*, 20-cv-01891-CRB, 2023 WL 4004115 at *4 (N.D. Cal.

11  2023), quoting *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019).

12         A copyright infringement plaintiff also must prove (and thus plead) that the

13  infringed work has been registered with the United States Copyright Office.  17

14  U.S.C. § 411(a); *Unicolors, Inc. v. H&M Hennes & Mauritz, LLP*, 595 U.S. 178,

15  181 (2022).  A "motion picture" must be registered as a whole, and its individual

16  elements generally are not independently registrable.  *See Garcia v. Google, Inc.*,

17  786 F.3d 733, 741 (9th Cir. 2015, *en banc*).

18         **B. Ownership And Registration Are Validly Pled.**

19         The FAC pleads Alcon's ownership of BR2049 and its registration.  (FAC, ¶

20  35.)  WBDI does not contend otherwise.  The issue on the direct infringement claim

21  against WBDI is whether WBDI has cognizably committed any direct violations of

22  any of Plaintiff's exclusive rights in BR2049.  As WBDI correctly notes, as to

23  WBDI specifically, the FAC limits the direct infringement claim to WBDI's

24  violation of Plaintiff's Section 106(5) display rights, by the unauthorized display of

25  Exhibit C and the event captured in the We Robot Recording, from the WBDI lot,

26  over WBDI's systems.

27  ///

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANT WBDI'S MOTION TO DISMISS FAC

### C. The FAC Pleads Direct Unlawful Copying Against WBDI For Violation Of Alcon's Section 106(5) Display Rights in BR2049.

#### 1. Only the "volitional conduct" requirement is at issue in WBDI's Motion.

As with claims for infringement of other exclusive rights, a plaintiff alleging violation of the Section 106(5) display right still must allege and eventually prove the requirements of "actual copying," and either "literal copying" (copying the plaintiff's work or part of it exactly), or "nonliteral copying" by taking protected elements of BR2049 at something less than the level of an exact copy, also called (also called "non-exact copying" or "substantial similarity copying").  Here, the WBDI Motion does not challenge that the FAC adequately alleges actual copying of BR2049 by Musk and Tesla and their creation of an infringing substantially similar nonliteral copy of BR2049 in the form of the FAC's Exhibit C and the We Robot Recording (WBDI is leaving all of those challenges to Musk and Tesla).  The WBDI Motion does not even challenge that the FAC alleges that the infringing Exhibit C and the We Robot Recording were publicly displayed over WBDI-owned systems within the meaning of Section 106(5).  The WBDI Motion's only challenge to the direct infringement claim is that the FAC does not adequately plead the "volitional conduct" requirement as to WBDI.

#### 2. The FAC adequately pleads the "volitional conduct" requirement against WBDI.

WBDI is both reading the "volitional conduct" requirement too strictly, and ignoring the FAC's allegations about what WBDI actually did.  The Ninth Circuit in *Bell v. Wilmott Storage Services, LLC*, 12 F.4th 1065, 1081-1082 (9th Cir. 2021) explained that the "volitional conduct" requirement is often misunderstood (and read too broadly) by defendants, and clarified its meaning.  As the Ninth Circuit wrote in *Bell*, "copyright infringement is a strict liability tort" to which, for example,

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANT WBDI'S MOTION TO DISMISS FAC

1  innocent intent is not a defense, and the "volitional conduct" requirement does not

2  change that.  12 F.4th at 1081.  Rather, the "volitional conduct" requirement is a

3  form of the ordinary tort proximate cause test, asking whether the particular

4  defendant was closely involved enough in the tortious act (the infringing public

5  display) to suffer direct liability.  *Id.*

6      On the one hand, as the WBDI Motion correctly says, a strictly passive

7  supplier or passive owner of equipment that someone else uses to transmit (display)

8  infringing works does not have sufficient "volitional conduct" (not enough

9  proximate cause), and thus does not have direct liability (although it may still have

10 vicarious infringement or contributory infringement liability).  *See Bell*, 12 F.4th at

11 1081.  However, what the WBDI fails to acknowledge is that if the equipment

12 supplier or owner is more than strictly passive by, for example, "exercising control"

13 or by "select[ing] any material for upload, download, transmission, or storage," the

14 volitional conduct requirement is satisfied, and the equipment supplier or owner

15 does have direct liability.  *Id.*

16     Here, the FAC plainly alleges that WBDI did "exercise control" and actively

17 participated with Musk and Tesla in "select[ing] any material for … transmission"

18 over the WBDI systems for the October 10, 2024 event: WBDI actively worked on

19 Musk and Tesla's behalf to try to get Alcon to give Musk and Tesla permission to

20 use BR2049 for the marketing event.  (*See also* FAC, ¶¶ 86-98.)  Indeed, as stated

21 above, if needed, Alcon can amend to more expressly state that WBDI's shared

22 services personnel expressly <u>told</u> Alcon's personnel at the time (on the afternoon of

23 October 10, 2024) that executives at the "highest levels" of WBDI "not located in

24 Burbank" had firmly directed the shared services personnel in Burbank to clear

25 BR2049 for Musk and Tesla with urgency, because of the importance of the Musk-

26 Tesla event to the larger WBDI entity, and Musk (or Tesla) wanted BR2049.  It

27 certainly seems that actively helping Musk and Tesla to use BR2049, a piece of

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANT WBDI'S MOTION TO DISMISS FAC

content which Musk specifically wanted and expected to get as part of his expensive event at the WBDI-owned Burbank studio lot, just hours before the infringement, adequately constitutes WBDI "exercising control" or "select[ing] any material for … transmission."  It is certainly more than just WBDI being a passive transmission equipment owner or supplier.  WBDI's defense seems to come down to factual denial.  Even if the alleged facts might not be found to create direct liability – for instance, Plaintiff would agree that if there can only be a <u>single</u> proximate cause direct infringer for a violation of Section 106(5), then it has to be Musk and/or Tesla over WBDI – the facts actually cognizable on Rule 12(b)(6) nonetheless create vicarious infringement liability here for WBDI.

## VI.    THE FAC'S VICARIOUS COPYRIGHT INFRINGEMENT CLAIM IS VALIDLY PLED AGAINST WBDI

WBDI's challenge to this claim seems entirely dependent on disregarding the FAC's allegations, (FAC ¶¶ 85-98,139-148), even in the face of observable external evidence, including what can be seen on the We Robot Recording on brand affiliation that they are far from implausible.  For example, at places in the We Robot Recording like 00:47:21-00:47:31, there appears to be an event map visible where an entire section of the event space was turned into "West World," an important motion picture and television franchise centered around robots and artificial intelligence.  (*See also* We Robot Recording at 1:15:47-53 [event attendee taking pictures of themselves with the Batmobile].)  It looks like a brand affiliation where Musk and Tesla seem to be bringing what looks like hundreds of people onto the WBDI studio lot and pushing Tesla car and robot products at them for hours while the attendees also get to enjoy being at the WBDI lot and interacting with prominent entertainment brands in the WBDI conglomerate library.

Far away from Rule 12(b)(6) practice, WBDI and Plaintiff are not really arguing about the law of vicarious copyright infringement, they are arguing about

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANT WBDI'S MOTION TO DISMISS FAC

1  what the facts will ultimately show or not when and if developed.  The FAC's

2  alleged facts constitute vicarious copyright infringement under all of the cases that

3  the WBDI Motion cites, if those alleged facts are taken for what they actually say.

4  WBDI took a large amount of money from Tesla for an event where Musk expected

5  that as part of the price Tesla was paying, he was going to get at least one specific

6  motion picture property included in his livestreamed car ad, and the one he wanted

7  most of all (but could not have) was BR2049.  WBDI was not a passive bystander to

8  any of that, but rather was actively involved in trying to clear BR2049 and

9  wrangling Musk and Tesla.  Musk was not just another vendor at a flea market, and

10  WBDI both was paying close attention to him, and did not want to upset him or the

11  lucrative deal.  If that is all true, then it is going to be vicarious liability for direct

12  infringements that occurred.

13  **VII.  <u>CONTRIBUTORY COPYRIGHT INFRINGEMENT</u>**

14  None of the Defendants make any independent challenge to this claim.  If any

15  of Plaintiff's direct copyright infringement claims survive against any of the three

16  Defendants, the contributory copyright infringement claim will also survive against

17  all three of them, including WBDI.

18  **VIII.  <u>THE LANHAM ACT CLAIM IS VALIDLY PLED AGAINST</u>**

19  **<u>WBDI</u>**

20  False association claims under 15 U.S.C. § 1125(a)(1)(A) are essentially

21  synonymous with false designation of origin claims.  *PetConnect Rescue, Inc. v.*

22  *Salinas*, 656 F.Supp.3d 1131, 1161 (S.D. Cal. 2023).  The elements are: (1)

23  defendant's use in commerce of (2) any word, false designation or origin, false or

24  misleading description, or representation of fact, which (3) is likely to cause

25  confusion or misrepresents the characteristics of defendant's or another's goods or

26  services.  *Id.*, citing *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir.

27  2007).  The WBDI Motion argues that a false association claim requires Alcon to

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANT WBDI'S MOTION TO DISMISS FAC

1  plead it that Alcon is itself a commercial source of cars, but that is legally incorrect.

2  "[A]ssociative confusion 'may arise not only where a consumer purchases a product

3  thinking it is another, but also where there may be a mistake as to the sponsorship,

4  quality or association of a product.'" *PetConnect*, 656 F.Supp.3d at 1161, quoting

5  *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1384 (9th Cir. 1987); *Lindy*

6  *Pen Co. Inc. v. Bic Pen Corp.*, 725 F.2d 1240, 1246 (9th Cir. 1984). Likelihood of

7  confusion is analyzed under a multi-factor test , including consideration of

8  defendant intent. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). The

9  FAC pleads all elements. (FAC, ¶¶ 73-84, 85-122,174-188.)

10      This is not a case like *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539

11  U.S. 23 (2003) or *Comedy III Productions, Inc. v. New Line Cinema*, 200 F.3d 593

12  (2000), where the defendant's marketed goods or services are expressive works, like

13  a movie. Musk and Tesla are marketing cars and robots. *Dastar* and *Comedy III* are

14  inapposite.

15      *Lions Gate Ent., Inc. v. TD Ameritrade Servs. Co., Inc.*, No. 2:15-05024-

16  DDP-E, 2017 WL 4621541 (C.D. Cal. Oct. 16, 2017) is, respectfully, a troubled

17  opinion which Alcon contends was wrongly decided. In any event, the district court

18  ultimately rested its ruling against Lions Gate on false affiliation and false

19  advertising claims on grounds that what TD Ameritrade was using the "Dirty

20  Dancing" marks and goodwill to market was financial services, and Lions Gate had

21  not pled that Lions Gate was actually in the business of licensing *Dirty Dancing* for

22  financial services. Alcon has clearly pled that it is in the business of licensing

23  BR2049 for automotive brand partnerships. (FAC, ¶¶ 15-16, 20, 73-74, 77, 83-84.)

24      The WBDI Motion argues that a violation of 15 U.S.C. § 1125(a)(1)(A) can

25  only be established by pleading and proving defendant's use of plaintiff's exact

26  mark or exact trade dress. That is not the law. Likelihood of confusion is tested

27  under all the circumstances, looking broadly, not narrowly, and without any prior

28

15

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANT WBDI'S MOTION TO DISMISS FAC**

1  judicial "protected element filtering" as in copyright law.  *See, e.g.,* the "total effect

2  of [the infringer's] product and package on the eye of the ordinary purchaser test"

3  applied in cases such as *Warner Bros. Entertainment v. Global Asylum, Inc.*, 107

4  U.S.P.Q.2d 1910, 2012 WL 6951315 at *8 (C.D. Cal. 2012).

5      The FAC pleads trade dress with specificity, including specific uses of

6  Exhibit A and B images and images like them by Alcon for marketing of the movie

7  and related consumer products.  (FAC, ¶¶ 74-76, 79-81.)  This is not a case where

8  defendant would have to go into a warehouse and examine a large inventory of

9  clothing for trade dress violations.  As to *Sleep Science Partners v. Lieberman*, 09-

10 4200 CW, 2010 WL 1881770 (N.D. Cal. 2010), that case is about look and feel of

11 competing websites for dental sleep aids and not a similar fact pattern.

12     The Motion's assertion that Alcon is unable to plead ownership of the word

13 mark "Blade Runner" is simply incorrect and also not a required element of the

14 claim.  Alcon in fact does have a Lanham Act-cognizable ownership interest in the

15 word mark "Blade Runner" that it could plead if required.  *See PetConnect*, 656

16 F.Supp.3d at 1162.  But this case is not about, for instance, Musk and Tesla evoking

17 the 1982 Picture for their ad.  That is not the property they asked to license, and not

18 the property they took following the rejection.  They wanted and took BR2049.

19     Nominative fair use is a mixed question of law and fact where the "analysis

20 typically involves questions of law and fact and determination on a motion to

21 dismiss is premature."  *Nielsen Consumer, LLC v. LiveRamp Holdings, Inc.*, 24-cv-

22 07355 SVK, 2025 WL 604665 at *6 (N.D. Cal. 2025).  Here, there are factual issues

23 not appropriate for Rule 12(b)(6) resolution even on just the second element alone:

24 whether defendant's use was only so much "as is reasonably necessary to identify

25 the product."  The FAC pleads that 11 seconds of use is commercially a very long

26 time, and it comes across as such in the We Work Recording.  There is also at least a

27 factual question as to whether and why Musk and Tesla would have to create and

28

16

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANT WBDI'S MOTION TO DISMISS FAC

use Exhibit C to make a nominal reference to BR2049.  Further, as Musk and Tesla point out, Musk did not actually use the term "Blade Runner 2049," and so did not necessarily make a "nominative use" at all.  As to the third element, the Motion's characterization that no one would reasonably infer any sponsorship or endorsement, because Musk was criticizing BR2049 as a product is factually incorrect on its face: Musk in fact doesn't criticize BR2049 as a product, rather he says he "loves" the movie.  (We Work Recording, 0:05:43-54.)

The test of *Rogers v. Grimaldi*, 875 F.2d 994 (2d. Cir. 1989) is both barred here and inapplicable regardless.  Use of Plaintiff's marks and trade dress in a car advertisement is core Lanham Act-regulated conduct such that it should be interpreted as within the prohibition on applying *Rogers* articulated by *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140 (2023).  Even if *Jack Daniel's* did not apply here, the speech here is plainly core commercial speech proposing a commercial transaction or which otherwise cannot pass the test of *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60 (1983), (as raised in the FAC ¶ 184 and ignored by WBDI's Motion), and thus should be outside of *Rogers* on that ground as well.  Indeed, Plaintiff is unaware of any case, before *Jack Daniels* or after, that applies *Rogers* to an advertisement where the advertisement is not itself for an underlying express work, like a movie, especially where there is intent by the defendant to appropriate the plaintiff's commercial goodwill, as here.  To do so would be to let *Rogers* "take over the world" in just the way *Jack Daniel's* cautions against.  599 U.S. at 158.

## IX.    RULE 8(a)

The FAC does not violate Rule 8(a), and if the Court finds otherwise, there is no evidence that any Rule 8(a) dismissal should be without leave to amend.  The FAC spends some space discussing semiotic theory-type issues in the context of movies and car advertising, but that is for the legitimate purpose of advancing the

17

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANT WBDI'S MOTION TO DISMISS FAC

1  Section 106(2) reference leveraging infringement argument in a novel context.

2  Plaintiff and Plaintiff's counsel also submit that the FAC is not like the pleading that

3  was the subject of the Motion's cited Judge Carney Rule 8(a) dismissal with leave to

4  amend order, but rather is much more like Alcon's final pleading in that same action

5  – a 118-page Third Amended Complaint which Judge Carney upheld in its entirety

6  against a kitchen sink motion to dismiss.  *Alcon Entertainment, LLC v. Peugeot*

7  *Automobiles, S.A.*, CV-19-00245-CJC (AFMx), 2020 WL 8365247 (C.D. Cal. July

8  7, 2020).

9      **X.    LEAVE TO AMEND**

10          Leave to amend should be granted absent is evidence that plaintiff has acted

11  with bad faith, delay, in a way causes undue prejudice to the defendant, or a clear

12  showing that amendment would be futile.  *Corinthian Colleges*, 655 F.3d at 995.

13  The court also considers whether plaintiff has previously amended.  *Id.*  Here, if the

14  court finds deficiencies, Alcon should be allowed to amend.  Plaintiff has behaved

15  reasonably, diligently and in good faith as to prior pleading and amendment would

16  not be futile.  Plaintiff may proffer external material in support of leave to amend,

17  and the court may consider it for that purpose.  *Orion Tire Corp. v. Goodyear Tire &*

18  *Rubber Co., Inc.,* 268 F.3d 1133, 1137-1138 (9th Cir. 2001); *Corinthian Colleges*,

19  655 F.3d at 995-96.

20

21  DATED: March 17, 2025          ANDERSON YEH PC
                                   Edward M. Anderson
22                                 Regina Yeh
23
24                                 _____
                                   Attorneys for Plaintiff
25                                 ALCON ENTERTAINMENT, LLC
26
27        **CERTIFICATE OF COMPLIANCE**
28      The undersigned, counsel of record for Plaintiff Alcon Entertainment, LLC,

18

certifies that this brief contains 5783 words, which complies with the word limit of L.R. 11-6.1.

_____

Edward M. Anderson

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANT WBDI'S MOTION TO DISMISS FAC