A. Louis Dorny (SBN 212054)
ldorny@tesla.com
Terry W. Ahearn (SBN 216543)
tahearn@tesla.com
Krista M. Carter (SBN 225229)
kricarter@tesla.com
TESLA, INC.
3000 Hanover St.
Palo Alto, CA 94304
Tel: (510) 298-8516

Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (213) 533-4240 / Fax: (858) 678-5099

*Additional counsel listed on signature page*

Attorneys for Defendants
Tesla, Inc. and Elon Musk

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALCON ENTERTAINMENT, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC., a Texas Corporation; ELON MUSK, an individual; WARNER BROS. DISCOVERY, INC., a Delaware Corporation,<br><br>Defendants. | Case No. 2:24-cv-09033-GW-RAO<br><br>**REPLY IN SUPPORT OF DEFENDANTS TESLA, INC. AND ELON MUSK'S MOTION TO DISMISS TO FIRST AMENDED COMPLAINT**<br><br>Hearing Date: April 7, 2025<br>Hearing Time: 8:30 a.m.<br>Courtroom: 9D<br>Judge: Hon. George H. Wu |

# <u>**TABLE OF CONTENTS**</u>

**Page**

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT ................................................................................................. 1

    A. Plaintiff Fails to State a Claim for Direct Copyright Infringement ...................................................................................... 1

        1. Actual Copying Is Not Germane to This Motion ................... 1

        2. Plaintiff's Allegations of Literal Copying Are Implausible ............................................................................ 3

        3. "Referencing" or "Gating" Infringement Is Not a Theory of Copyright Infringement ......................................... 4

        4. There Is No Substantial Similarity ......................................... 7

    B. Plaintiff Fails to State a Claim for Vicarious Copyright Infringement .................................................................................... 12

    C. Plaintiff Fails to Address the Deficiencies in Its Lanham Act Claim ....................................................................................... 13

        1. Plaintiff Conflates the Secondary Meaning and Likelihood of Confusion Elements ...................................... 13

        2. Plaintiff Fails to Plead Trade Dress Rights ......................... 14

        3. Plaintiff Fails to Distinguish Well-Settled Case Law Dismissing Copyright-Type Lanham Act Claims ..................... 15

        4. Plaintiff Cannot Plead Trademark Rights in "Blade Runner" ............................................................................... 16

    D. Plaintiff Fails to Meet Its Burdens on the Nominative Fair Use and First Amendment Defenses ...................................... 16

        1. Defendants' Criticism of the Future Depicted in "Blade Runner" Is Nominative Fair Use ................................. 16

        2. The Court Should Apply *Rogers* and Find that Plaintiff Has Not Met Its Burden to Sustain Its Lanham Act Claim ...................................................................... 18

    E. The Court Should Not Allow Plaintiff to Amend Its Already Amended Complaint .......................................................... 21

III. CONCLUSION ......................................................................................... 22

CERTIFICATE OF COMPLIANCE..........................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdin v. CBS Broad. Inc.*,
  971 F.3d 57 (2d Cir. 2020) ...............................................................7

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ....................................................13, 16

*Anderson v. Stallone*,
  No. 87-cv-00592-WDK-Gx, 1989 WL 206431 (C.D. Cal. Apr. 25,
  1989) ...............................................................................................6, 8

*Applied Underwriters, Inc. v. Lichtenegger*,
  913 F.3d 884 (9th Cir. 2019) ...........................................................18

*Basile v. Warner Bros. Ent.*,
  No. 15-cv-05243-DMG-MRWx, 2016 WL 5867432 (C.D. Cal. Jan.
  4, 2016) ............................................................................................10

*Benay v. Warner Bros. Ent.*,
  607 F.3d 620 (9th Cir. 2010) .............................................................9

*Bolger v. Youngs Drug Prods. Corp.*,
  463 U.S. 60 (1983)............................................................................20

*Brown v. Elec. Arts, Inc.*,
  724 F.3d 1235 (9th Cir. 2013) ..........................................................20

*Champion v. Moda Operandi, Inc.*,
  561 F. Supp. 3d 419 (S.D.N.Y. 2021) .........................................17, 21

*Collier v. McKay*,
  No. 2:23-cv-10227-SPG-DFM, 2025 WL 101646 (C.D. Cal. Jan. 7,
  2025) ..................................................................................................7

*Comedy III Prods., Inc. v. New Line Cinema*,
  200 F.3d 593 (9th Cir. 2000) ...........................................................15

*Corbello v. Valli*,
  974 F.3d 965 (9th Cir. 2020) .............................................................2

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) ................................................................................. 15

*Disc Golf Ass'n v. Champion Discs, Inc.*,
    158 F.3d 1002 (9th Cir. 1998) ............................................................... 13

*Dish Network LLC v. Jadoo TV, Inc.*
    No. 20-cv-01891-CRB, 2023 WL 4004115 (N.D. Cal. 2023) ............ 12

*Gibson Brands, Inc. v. John Hornby Skewes & Co.*,
    No. 14-cv-00609-DDP-SS, 2015 WL 4651250 (C.D. Cal. Aug. 4,
    2015) ....................................................................................................... 18

*Goldberg v. Cameron*,
    787 F. Supp. 2d 1013 (N.D. Cal. 2011) ................................................. 9

*Hoffman v. Capital Cities/ABC, Inc.*,
    255 F.3d 1180 (9th Cir. 2001) ............................................................... 21

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
    599 U.S. 140 (2023) ......................................................................... 19, 20

*Kassel v. Moynihan*,
    No. 1:23-cv-06958-JLR, 2024 WL 2832813 (S.D.N.Y. June 3,
    2024) ......................................................................................................... 8

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
    150 F.3d 1042 (9th Cir. 1998) ............................................................... 14

*Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*,
    964 F.2d 965 (9th Cir. 1992) ................................................................... 5

*Lions Gate Ent. Inc. v. TD Ameritrade Servs. Co.*,
    170 F. Supp. 3d 1249 (C.D. Cal. 2016) ........................................... 15, 16

*Lions Gate Ent., Inc. v. TD Ameritrade Servs. Co.*,
    No. 2:15-cv-05024-DDP-E, 2017 WL 4621541 (C.D. Cal. Oct. 16,
    2017) ................................................................................................. 15, 16

*Litchfield v. Spielberg*,
    736 F.2d 1352 (9th Cir. 1984) ........................................................... 6, 11

*Mallery v. NBC Universal, Inc.*,
    No. 07-cv-02250-DLC, 2007 WL 4258196 (S.D.N.Y. Dec. 3, 2007) ............... 9

*Mattel, Inc. v. MCA Recs., Inc.*,
  296 F.3d 894 (9th Cir. 2002) ......................................................................20, 21

*Mattel, Inc. v. MGA Ent., Inc.*,
  616 F.3d 904 (9th Cir. 2010) .................................................................................11

*Mattel, Inc. v. Walking Mountain Prods.*,
  353 F.3d 792 (9th Cir. 2003) ............................................................................17, 18

*McGillvary v. Netflix, Inc.*,
  No. 2:23-cv-01195-JLS-SK, 2024 WL 3588043 (C.D. Cal. July 30,
  2024) ...................................................................................................................19

*Micro Star v. Formgen Inc.*,
  154 F.3d 1107 (9th Cir. 1998) ................................................................................5

*Nielsen Consumer LLC v. LiveRamp Holdings, Inc.*,
  No. 24-cv-07355-SVK, 2025 WL 604665 (N.D. Cal. Feb. 25, 2025) ..............18

*Paramount Pictures Corp. v. Axanar Prods., Inc.*,
  No. 2:15-cv-09938-RGK-E, 2017 WL 83506 (C.D. Cal. Jan. 3,
  2017) .................................................................................................................2, 6

*Pepperdine Univ. v. Netflix, Inc.*,
  No. 2:25-cv-01429-CV-ADSx, 2025 WL 632983 (C.D. Cal. Feb.
  26, 2025) ............................................................................................................19

*Reaper v. ACE Am. Ins. Co.*,
  No. 23-15178, 2024 WL 810697 (9th Cir. Feb. 27, 2024)...................................3

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018) ............................................................................2, 8

*Satava v. Lowry*,
  323 F.3d 805 (9th Cir. 2003) ...............................................................................11

*Shame on You Prods., Inc. v. Banks*,
  120 F. Supp. 3d 1123 (C.D. Cal. 2015).................................................................8

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
  610 F.3d 1171 (9th Cir. 2010) ..............................................................................17

*Twentieth Century Fox Television v. Empire Distrib., Inc.*,
  875 F.3d 1192 (9th Cir. 2017) ..............................................................................19

*VIP Prods. LLC v. Jack Daniel's Props., Inc.*,
    953 F.3d 1170 (9th Cir. 2020) ...................................................................20

*Warner Bros. v. Am. Broad. Cos.*,
    720 F.2d 231 (2d Cir. 1983) ........................................................................8

*Wozniak v. Warner Bros. Ent.*,
    726 F. Supp. 3d 213 (S.D.N.Y. 2024) .....................................................2, 6

**Other Authorities**

Fed. R. Civ. P. 8 .................................................................................................10

3 Patry on Copyright § 9:4.10 ............................................................................2

4 Nimmer on Copyright § 13D.06 .....................................................................4

4 Patry on Copyright § 12:13 .............................................................................6

4 Patry on Copyright § 12:19 .............................................................................5

REPLY ISO TESLA AND MUSK'S MOTION TO DISMISS FAC

## I.  INTRODUCTION

Despite Plaintiff's convoluted and free-association Opposition, Defendants' Motion is straightforward and their request for relief is quite simple. Once the unprotectable concepts of Plaintiff's BR2049 film are filtered out, an objective comparison of the parties' works shows they are not substantially similar. As a result, the copyright claims can be dismissed. Defendants' passing reference to "Blade Runner" and purported use of BR2049 imagery was not misleading, did not imply an endorsement or brand affiliation, and is classic fair use that is also protected by the First Amendment. Thus, the trademark claim can, likewise, be dismissed.[1]

## II.  ARGUMENT

### A.  Plaintiff Fails to State a Claim for Direct Copyright Infringement

#### 1.  Actual Copying Is Not Germane to This Motion

Plaintiff argues it pled actual copying based on a so-called "'asserted truths' doctrine" and through a variety of "circumstantial facts." Opp. 6:22-7:16. The Court need not address Plaintiff's arguments on actual copying for the purpose of deciding this Motion because the parties' works are not substantially similar. Nevertheless, Defendants address them here.

***First***, Musk did not "effectively state[] to the audience that the Exhibit C image[2] was <u>supposed to be</u> an illustration of BR2049." Opp. 7:1-5 (emphasis original).[3] The FAC quotes what Musk said—"I love 'Blade Runner.'" FAC ¶ 106.

---

[1] Because the relevant facts for this Motion are those alleged in the FAC, we do not specifically address the self-serving "Facts" section of Plaintiff's Opposition (Dkt. 52; "Opp.") 1:5-2:26.

[2] The Exhibit C image attached to the FAC is the still image shown for eleven seconds during the "We, Robot" event. The recording of the "We, Robot" event, including the Exhibit C image, is the Accused Work and lodged at Dkt. 25 as Exhibit 2. In the FAC, Plaintiff alleges the Exhibit C image and "We, Robot" recording are two "infringing works." FAC ¶ 126.

[3] All quotations cleaned up and emphasis added unless otherwise noted.

Even if the Court accepts that Musk intended to refer to BR2049, this is not an admission that Defendants actually copied. This is a far cry from the facts in *Wozniak v. Warner Bros. Entertainment*, relied on by Plaintiff, where the accused infringer explicitly conceded that he "wrote a 'Batman story.'" 726 F. Supp. 3d 213, 230 (S.D.N.Y. 2024).[4] Neither *Wozniak* nor *Paramount Pictures Corp. v. Axanar Productions, Inc.*, No. 2:15-cv-09938-RGK-E, 2017 WL 83506 (C.D. Cal. Jan. 3, 2017), another case cited by Plaintiff, support any "estoppel-type bar." Opp. 17:13-16. Defendants make no admission of copying, and Musk's expressed enthusiasm as a fan of the film and commentary on its bleak future cannot reasonably be interpreted as conceding copying. Even if it is, substantial similarity still must be found under the extrinsic test. *Axanar*, 2017 WL 83506, at *6. Depicting an image inspired by a copyrighted work is perfectly acceptable. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116 (9th Cir. 2018) (finding no infringement where Nike's image was "obviously inspired by Rentmeester's").

**Second**, with respect to the "circumstantial facts," Defendants dispute that they engaged in actual copying because they did, in fact, independently create the Exhibit C image. Opp. 7:8-16; Mot. 14:14-16. But the Court need not resolve this factual dispute now. 3 Patry on Copyright § 9:4.10 ("if copying is established, the plaintiff must still prove that what was copied resulted in a material appropriation of expression"); *Rentmeester*, 883 F.3d at 1117 (explaining the difference between "copying" and "unlawful appropriation," finding plaintiff plausibly alleged the first but not the second, and affirming dismissal of copyright claim). Whether Defendants copied **protected** elements of the expression of BR2049 is the ultimate question. Once the parties' works are viewed together and the unprotectable concepts and scènes-à-

---

[4] On this point, Plaintiff also relies on *Corbello v. Valli*, which explains that an "author who holds their work out as nonfiction…cannot later claim, in litigation, that aspects of the work were actually made up and so are entitled to full copyright protection." 974 F.3d 965, 978 (9th Cir. 2020). This doctrine is inapplicable here.

faire of BR2049 are excluded—a required step of the extrinsic test—the answer to this question is a resounding "no."

### 2.    Plaintiff's Allegations of Literal Copying Are Implausible

Plaintiff claims to have plausibly pled a "literal copying" theory of its reproduction right by pointing to far-fetched and unsupported "alternative theories" of literal copying, which are based on inputting an infringing image or clip into an AI image generator to create the Exhibit C image. Opp. 7:27-8:7. Plaintiff states that these theories "seem entirely plausible," but then suggests a new and unpled hypothetical that it could plead "[i]f necessary, on amendment." *Id.* 8:8-16. This does not adequately address the deficiencies in the FAC outlined by Defendants.

As noted in Defendants' Motion (Dkt. 48-1; "Mot.") 14:3-22, Plaintiff's two alternate theories of literal copying are alleged entirely on "information and belief," with no credible, factual basis. FAC ¶¶ 103-104. They are convoluted and phrased hesitantly with alternate "possibl[e]" facts within each theory that "seem[] likely" to have occurred "or something closely akin to it" and are, frankly, implausible. *Id.* ¶ 103.

Plaintiff does not address the case law Defendants cited (Mot. 14:4-12) that instructs that pleading on information and belief does not create an exception to the normal federal pleading standards requiring plausibility. *Reaper v. ACE Am. Ins. Co.*, No. 23-15178, 2024 WL 810697, at *1 (9th Cir. Feb. 27, 2024). All Plaintiff says is "[t]he allegations seem entirely plausible." Opp. 8:8. This conclusory assertion is belied by what Plaintiff does next: conjure up a new hypothetical that "Musk ***might have put*** BR2049 or parts of it into Grok." *Id.* 8:11-16.[5]

---

[5] The Court should disregard Plaintiff's argument that Defendants' "factual explanation" of the generation of the Exhibit C image is "inconsistent with observable facts" from the We, Robot recording. Opp. 8:19-26. Plaintiff adopted and pled Defendants' "factual explanation" as a partial basis for Plaintiff's "Exhibit C AI

Through only far-fetched speculation, Plaintiff asks this Court to forego a substantial similarity analysis and allow this case to proceed on its literal copying theories, despite that the Accused Work, including the Exhibit C image displayed therein, is **not** alleged to be a literal copy of BR2049. Opp. 7:27-9:1. This is the ultimate reason why Plaintiff's theories of literal copying (FAC ¶¶ 103-104, 127(a)-(b)) are so implausible. Without a literal copy accused, the Court cannot test the plausibility of these allegations. *See* 4 Nimmer on Copyright § 13D.06 ("the similarities that are pertinent here are those that exist between plaintiff's actual work and defendant's allegedly infringing copy"). While the untenable and far-fetched nature of these allegations should bar Plaintiff's claim of literal copying (Opp. 7:27-9:1), the Court can still compare the parties' works and determine as a matter of law that the Accused Work, including the Exhibit C image, does not infringe BR2049 under the extrinsic test.

### 3.    "Referencing" or "Gating" Infringement Is Not a Theory of Copyright Infringement

Plaintiff's non-literal copying theories are similarly far-fetched and implausible. At the outset, there is no such thing as "'referencing' (or 'gating') infringement;" nor is there any such thing as a "reference leveraging claim." Opp. 10:23, 11:12. This is why Defendants' Motion did not address it. The essence of Plaintiff's manufactured theory (as best as can be understood) is that the Accused Work uses a small, allegedly protectable portion of BR2049 that "evokes" "all the protected elements (or a set of them) in the whole movie." Opp. 9:13-21, 11:1-6. Stated another way, Plaintiff seems to be claiming that all of the protectable elements are infringed, in Plaintiff's view, merely because they "exist" in BR2049 despite that most (or even all) **are not present** in the Accused Work. *Id.* 11:1-6. This theory has

---

Image Generation Alternative Theory 2." FAC ¶ 104. Plaintiff cannot now argue its own pleaded facts are implausible.

REPLY ISO TESLA AND MUSK'S MOTION TO DISMISS FAC
Case No. 2:24-cv-09033-GW-RAO

no basis in copyright law. "The legislative history of the Copyright Act explains, in order to be 'based upon' the preexisting work, that new, derivative work 'must *incorporate* a portion of the copyrighted work in some form.' In addition to incorporating a portion of the preexisting work, an infringing derivative work must also, as the definition of derivative work states, 'recast, transform, or adapt' the copyrightable expression of the preexisting work." 4 Patry on Copyright § 12:19 (citing H.R. Rep. No. 1476, 94th Cong., 2d Sess. 62 (1976); S. Rep. No. 473, 94th Cong., 1st Sess. 58 (1975); *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110 (9th Cir. 1998)).

Unsurprisingly, none of Plaintiff's cases support its argument that a mere reference is infringement. Opp. 9:21-10:21, 11:7-11. *Micro Star* does not stand for the proposition that a determination of copyright infringement is based on "elements [not] 'physically' present" in an accused work. *Id.* 10:7-10. The court in *Micro Star* found infringement because Micro Star used FormGen's MAP files that described "in painstaking detail" "what to put where" to tell the game engine to create Micro Star's audiovisual game display using artwork from FormGen's source art library. 154 F.3d at 1110. Micro Star's software enabled players to create *concrete and permanent* audiovisual displays using FormGen's artwork to create new levels of game play and thereby created "sequels" that told "somewhat repetitive tales" of the adventures of FormGen's main character. *Id.* at 1110-12; *see also Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*, 964 F.2d 965, 967 (9th Cir. 1992) ("A derivative work must incorporate a protected work in some concrete or permanent 'form.'…The examples of derivative works provided by the [Copyright] Act all physically incorporate the underlying work or works."). The "exact, down to the last detail, description of [the] audiovisual display" made it permanent or concrete, similar to how sheet music describes in precise detail the way a copyrighted melody sounds. *Micro Star*, 154 F.3d at 1111-12.

*Axanar*, cited at Opp. 11:8-10, likewise, fails to support Plaintiff's unfounded argument. In *Axanar*, the court found the defendants "use[d] many elements from the Star Trek universe," including a live character and two fictional species with distinct physical and conceptual qualities (Klingons and Vulcans), battleships including the U.S.S. Enterprise, plot points, sequence of events, and dialog, "down to excruciating details." 2017 WL 83506, at *4-6. Their use was so "extensive" that defendants created an infringing "Star Trek prequel." *Id*. at *6. The court did not say that mere referencing alone is infringement or that use of a small aspect of a plaintiff's work may trigger infringement of all protectable elements of an entire film, as Plaintiff suggests. Opp. 10:7-10.

There is no mention of the "reference leveraging" theory in *Wozniak* either. The *Wozniak* court found infringement on summary judgment where even a high-level review of the plaintiff's Batman story revealed that its characters were "not merely substantially similar" to DC Comics' protected characters, including Batman, the Batmobile, and Bruce Wayne, "they *are* those characters." 726 F. Supp. 3d at 231 (emphasis original) (citing *Anderson v. Stallone*, No. 87-cv-00592-WDK-Gx, 1989 WL 206431, at *8 (C.D. Cal. Apr. 25, 1989)).

There is simply no support for Plaintiff's reference leveraging theory. The dispositive question is whether there is substantial similarity. *See Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) (affirming holding of no copyright infringement and noting that plaintiff's "novel proposition" that a derivative work is one merely "based on" a copyrighted work was wrong because "a work is not derivative unless it has been substantially copied from the prior work"). "In order to infringe the derivative right, there must be substantial similarity in protectible expression between the parties' works." 4 Patry on Copyright § 12:13. As discussed below, there is no substantial similarity between BR2049 and the Accused Work.

1

### 4.    There Is No Substantial Similarity

Plaintiff does not dispute that the Court can decide the issue of substantial similarity now by comparing the parties' works. Opp. 4:15-19. Viewing the works, it is clear there is no substantial similarity. *Compare* Ex. 2 (We, Robot recording), *and* Ex. C to FAC, *with* Ex. 3 (BR2049).

Integral to this analysis is the basic and undisputed premise that copyright law does not protect ideas or concepts, like "the general idea for a story" or "situations and incidents which flow naturally from a basic plot premise, so-called scenes a faire." *Collier v. McKay*, No. 2:23-cv-10227-SPG-DFM, 2025 WL 101646, at *4 (C.D. Cal. Jan. 7, 2025). Nor is the "general mood that flows naturally from unprotectable basic plot premises" protectable. *Id.* at *5.

***Character K***: The description of K as a "duster-clad man with close-cropped hair viewed in silhouette or near-silhouette, surveying or exploring a post-apocalyptic ruined cityscape bathed in orange light" (FAC ¶ 71(b)) is too generic and conceptual to be protectable. *See, e.g.*, *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 67, 72 (2d Cir. 2020) ("generic and generalized traits such as race, gender, and hair color are not protectible"). To try to make K appear protectable, Plaintiff argues that K satisfies the "story being told" test for copyrightability and recounts the details of said story. Opp. 13:16-27. But Plaintiff admits these character traits of K—the very essence of what makes K allegedly copyrightable—are ***not*** "physically present" in the Accused Work. *Id.* 13:27-14:2.

To try to overcome the fact that anything arguably copyrightable about K is not present in the Accused Work, Plaintiff resorts to its reference leveraging theory.[6] A defendant who "means to be understood as including plaintiff's actual character" has infringed, according to Plaintiff, "without any need for [a] substantial similarity

---

[6] Here, Plaintiff uses even more confusing terminology to refer to its reference leveraging theory such as "arguably" "semiotically reference-leverag[ing]" and "linking admission principle." Opp. 13:27-14:12.

comparison." Opp. 14:3-7 (citing *Anderson*, 1989 WL 206431, at *8). This is wrong. In *Anderson*, the court forewent a substantial similarity analysis because there was "literal similarity" as it was "uncontroverted that the characters were lifted lock, stock, and barrel from the prior Rocky movies" and thus "they *are* Stallone's characters." 1989 WL 206431, at *8. Here, Plaintiff does not allege literal copying of K; it argues that K appears only "partially 'physically'" in the Accused Work (Opp. 13:3-4) or not at all.

The law is clear that anyone may properly take inspiration from a copyrighted work. *Rentmeester*, 883 F.3d at 1122-23. In fact, copyright "encourage[es] others to build freely upon the idea and information conveyed by a work." *Id.* at 1123 (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349-50 (1991)). Thus, "[s]tirring one's memory of a copyrighted character is not the same as appearing to be substantially similar to that character, and only the latter is infringement." *Warner Bros. v. Am. Broad. Cos.*, 720 F.2d 231, 242 (2d Cir. 1983).

**_Setting_**: Here too, Plaintiff's setting is too generic to be protectable.[7] Plaintiff claims that Defendants failed to consider that the urban ruin was "about to be explored by a blade runner in a duster shown in silhouette or near silhouette,"[8] but that is irrelevant since "[c]ourts regularly find that works with significantly more specificity…encompass unprotectable concepts or scenes a faire." *Kassel v. Moynihan*, No. 1:23-cv-06958-JLR, 2024 WL 2832813, at *6 (S.D.N.Y. June 3, 2024) (collecting cases); *Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123, 1159 (C.D. Cal. 2015) (finding two works that include a "gentleman's room where

---

[7] It is described as a "post-apocalyptic urban ruin, specifically as a place that holds answers or important information about the Human-AI Relationship Question, bathed in orange light, and especially one that is about to be explored by a blade runner in a duster shown in silhouette or near-silhouette." FAC ¶ 71(e).

[8] The latter part of this description of the setting, a blade runner in a duster, is also repetitive of the allegedly protectable aspects of the character K.

[a] one-night-stand takes place, a tow yard, a place of worship, a spa, city streets..., an outdoor chase on wheels, and a helicopter ride" were not substantially similar), *aff'd*, 690 F. App'x 519 (9th Cir. 2017); *Benay v. Warner Bros. Ent.*, 607 F.3d 620, 627-28 (9th Cir. 2010) ("Given that both works involve an American war veteran who travels to Japan to help the Emperor fight a samurai rebellion, it is not surprising that they share certain settings: a scene of the protagonist sailing into Japan, scenes in the Imperial Palace, scenes on the Imperial Army's training grounds, and battle scenes in various places in Japan. These are all scenes-a-faire[.]"); *Mallery v. NBC Universal, Inc.*, No. 07-cv-02250-DLC, 2007 WL 4258196, at *6 (S.D.N.Y. Dec. 3, 2007) ("(1) [P]ainting a future in which tragic and destructive events take place, such as the destruction of landmark buildings in New York City; (2) having a prediction confirmed by a newspaper report; and (3) making an attempt to prevent a tragic event in light of a prediction of the future, are simply *scenes a faire,* or sequences of events that necessarily result from the choice of a setting or situation, which do not enjoy copyright protection." (emphasis original)).

Again, Plaintiff admits that its setting appears only "partially" in the Accused Work. Opp. 14:14-16. ***At most***, an objective comparison of the parties' works shows overlap in the unprotectable idea of a post-apocalyptic urban ruin, orange light, and a non-descript man in a long coat in near-silhouette. Ex. C. These concepts are unoriginal and flow naturally from their shared idea: a pessimistic view of a post-apocalyptic city. *See Goldberg v. Cameron*, 787 F. Supp. 2d 1013, 1020 (N.D. Cal. 2011) (finding "the general idea of a futuristic conflict between man and machines, specifically computers and robots" is unprotectable).

**<u>Theme & Mood</u>**: Here, again, Plaintiff resorts to its "referencing-leveraging" argument, which is not cognizable for the reasons already stated. Opp. 15:10-13, 20-23.[9] And again, Plaintiff relies on concepts that are unprotectable and/or not in the

---

[9] For these same reasons, expert testimony will not help. Opp. 15:10-1.

Accused Work. Opp. 14:24-25, 15:15-16; *see Basile v. Warner Bros. Ent.*, No. 15-cv-05243-DMG-MRWx, 2016 WL 5867432, at *12 (C.D. Cal. Jan. 4, 2016) (finding works that share "an apocalyptic mood in which the hero(es) must defy the odds in order to save innocent people" were not substantially similar), *aff'd*, 678 F. App'x 604 (9th Cir. 2017). Plaintiff fails to address its own allegation that none of its identified "themes or moods are themselves protectable by any intellectual property law." Mot. 7:7-8; FAC ¶ 121. Instead, Plaintiff argues that Musk "took BR2049," which "argues for protectability." Opp. 15:7-10. But that is not the law. Defendants' alleged actions do not make Plaintiff's alleged theme or mood protectable. Nor do they make the parties' works similar in expression. There is no "urgent human-AI decision point" or mood of "anxiety, fear, or urgency" expressed in the Accused Work. Opp. 14:24-15:23; Mot. 7:7-27. The "We, Robot" recording (Exhibit 2) shows this is not a "factual dispute" as Plaintiff claims. Opp. 15:22-23.

**_Selection & Arrangement_**: As a fallback position, Plaintiff attempts to add specificity to its vague allegation that Defendants infringed a combination of elements, even if one or more of its alleged elements is unprotected on its own. FAC ¶¶ 71(f), 127(d); Opp. 15:24-17:1. It articulates, **_for the first time_**, 14 elements that it purports are selected and arranged together. This theory is rife with issues. Several of these elements, such as "(11) switching between non-orange light, orange light, and back to non-orange light" to indicate decisions, are not pled as infringed in the FAC at all, contrary to Plaintiff's claim. Opp. 16:14-23. Tellingly, Plaintiff does not even identify which elements are **_in the Accused Work_**, arguing instead that "the FAC articulates a 'selection and arrangement' of elements that appear, including "physically," **_in BR2049 and/or_** the [A]ccused [W]orks." Opp. 16:11-12; FAC ¶ 127(d) (alleging vaguely that the Exhibit C image incorporates a "Combination of Elements, as alleged in paragraph 71f of this FAC"). Without knowing what elements Plaintiff claims are in the Accused Work, this allegation fails to meet Rule 8.

The list of elements also is artificially inflated. Elements 1-7, for example, are merely the descriptions of K and the BR2049 setting broken into minute fragments to create an illusion of volume. And nowhere does Plaintiff articulate how their combination constitutes an original work of authorship. *See Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) ("a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship").

Lastly, Alcon is not entitled to any special "plaintiff-favorable treatment." Opp. 12:9-12.[10] Like any other copyright claimant, Plaintiff must plead copying of **protectable expression** to sustain a claim for infringement. Whether two works are substantially similar is the dispositive question; not whether Exhibit C merely "**looks like** it is a scene from BR2049[]" as Plaintiff improperly proposes. Opp. 17:19-22. As the Ninth Circuit has stated is "too often the case," Plaintiff's claims are premised "partly upon a wholly erroneous understanding of the extent of copyright protection; and partly upon that obsessive conviction, so common among authors and composers, that all similarities between their works and any others which appear later must inevitably be ascribed to plagiarism." *Litchfield*, 736 F.2d at 1358. In sum, there is neither substantial similarity in individual elements nor the "selection and arrangement" thereof.

---

[10] *Mattel, Inc. v. MGA Entertainment, Inc.* does not state that all science fiction motion pictures are given "the most plaintiff-favorable treatment." Opp. 12:9-12. In comparing works with a wide versus narrow range for expression, the court stated, "[i]f there's a wide range of expression (for example, there are gazillions of ways to make an aliens-attack movie), then copyright protection is 'broad[.]'" 616 F.3d 904, 913-14 (9th Cir. 2010).

11

### B.    Plaintiff Fails to State a Claim for Vicarious Copyright Infringement

Plaintiff criticizes Defendants' Motion for reading vicarious copyright infringement rules "too narrowly" yet does not address any of the case law cited by Defendants. Opp. 18:4-21. This includes cases that explain a plaintiff must plausibly allege more than a defendant's alleged infringement "*generally* acted as a draw for [defendant's] business," that a benefit is not "direct" if it would reach the defendant "only incidentally," and that a direct infringer's avoidance of fees alone cannot satisfy the requirement of a direct financial benefit to the vicarious infringer." *See* Mot. 15:18-23 (citing *Bell v. Pac. Ridge Builders, Inc.*, No. 19-cv-01307-JST, 2019 WL 13472127, at *6 (N.D. Cal. June 4, 2019) (emphasis original); *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 831 (9th Cir. 2019)). Based on the cases cited by Defendants and ignored by Plaintiff, Plaintiff's allegation that Defendants "used the semiotic BR2049 reference to push the audience emotionally into a space more receptive to Musk and Tesla's commercial message" (Opp. 2:16-18, 18:9-11) is insufficient to plead a direct financial benefit.[11]

Further, Plaintiff fails to explain how its allegation that Musk's mere ***belief*** that the purported BR2049 reference would lead Tesla to sell more "Cybercabs" and increase Tesla's stock price suffices as an allegation that Musk received an *actual* direct financial benefit from the alleged infringement. Mot. 15:23-17:7. Instead, Plaintiff responds to an argument about Musk's potential individual liability that Defendants never made. Opp. 18:12-21. Defendants did not challenge Musk's potential liability based on his status as the CEO and controlling shareholder of Tesla, as Plaintiff suggests. *Id.* Rather, Musk is not liable for direct or vicarious infringement because there is no substantial similarity and the FAC's allegations of Musk's ***belief***

---

[11] *Dish Network LLC v. Jadoo TV, Inc.*, cited at Opp. 18:5-9, is inapposite. The defendants in that case did not contest that the infringement attracted additional users to buy defendants' products and use their services. No. 20-cv-01891-CRB, 2023 WL 4004115, at *14 (N.D. Cal. 2023).

that a BR2049 reference would increase interest in Tesla "Cybercabs" is insufficient to plead that Musk received a direct financial benefit from the alleged infringement.

### C.  Plaintiff Fails to Address the Deficiencies in Its Lanham Act Claim

#### 1.  Plaintiff Conflates the Secondary Meaning and Likelihood of Confusion Elements

Plaintiff purports to respond to Defendants' argument that Plaintiff's allegations of secondary meaning for ***all*** the alleged marks or trade dress are speculative (Mot. 17:21-18:21), but Plaintiff's argument is about an entirely separate element of its Lanham Act claim—likelihood of confusion. Opp. 19:5-14. Plaintiff responds that it is not required to plead it is a commercial source of cars because the likelihood of confusion element may be met by confusion as to sponsorship or association. Opp. 19:5-12 (quoting *PetConnect*'s discussion of likelihood of confusion test). But secondary meaning and likelihood of confusion are separate elements, each of which Plaintiff must plausibly plead to state a Lanham Act claim. *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 (9th Cir. 1998) (discussing elements). The likelihood of confusion test that Plaintiff cites has no bearing on secondary meaning.

With respect to Defendants' actual argument—Plaintiff's allegations of secondary meaning are speculative and focused on different goods than the cars at issue here—Plaintiff does not even attempt to identify any factual support for its conclusory allegations of secondary meaning. Opp. 19:5-14. Plaintiff merely states, "[t]he FAC pleads all elements," and cites more than one-third of the FAC. *Id.* 19:14.[12]

---

[12] While Defendants' argument concerns secondary meaning rather than likelihood of confusion, Defendants note that Plaintiff's claim that it pleads all the *Sleekcraft* likelihood of confusion factors (Opp. 19:13-14) is false at least because it does not plead proximity of the goods. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979). None of the FAC paragraphs cited at Opp. 19:14 plead that the goods Plaintiff has offered under its BLADE RUNNER 2049 mark, such as comic books and video games (FAC ¶ 77) are related to Tesla's "Cybercabs."

Plaintiff is unable to support its conclusory allegations that its marks and trade dress are recognized by "major car manufacturers and car brands as connoting affiliation with or sponsorship by Alcon" (FAC ¶ 73) with *facts*.

### 2.    Plaintiff Fails to Plead Trade Dress Rights

Plaintiff's purported response to Defendants' argument that Plaintiff fails to plead trade dress rights (Mot. 18:22-20:9) once again conflates this separate, threshold requirement with the likelihood of confusion element. Opp. 20:2-16. Defendants argue that Plaintiff fails to allege distinctiveness and non-functionality and to specifically define the list of elements that comprise its purported trade dress—all requirements to plead protectable trade dress. Mot. 18:22-20:9. Plaintiff responds by claiming, incorrectly, that Defendants argue that a Lanham Act violation can only be established by pleading and proving defendant's use of plaintiff's "exact mark or exact trade dress," and by asserting that likelihood of confusion is tested under all circumstances. Opp. 20:2-9. But ownership of protectable trade dress and a likelihood of confusion are two separate elements, each of which Plaintiff must plausibly plead to state a Lanham Act claim. *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1046-47 (9th Cir. 1998) (describing claim elements). The likelihood of confusion test that Plaintiff cites has no bearing on trade dress rights.

As to Defendants' actual argument that Plaintiff fails to plead trade dress rights, Plaintiff's only response is a conclusory statement that it has pled trade dress with specificity. Opp. 20:10-12. But the FAC paragraphs cited belie this for the reasons explained in Defendants' Motion, including that Plaintiff does not explain what portions (if any) of the entire BR2049 film, other than the Exhibit A and Exhibit B images, are part of the purported trade dress. *Id.* 20:12 (citing FAC ¶¶ 74-76, 79-81). Plaintiff's attempt to distinguish *Sleep Science Partners* as factually different from this case fails. The legal requirement to specifically identify trade dress is not limited

REPLY ISO TESLA AND MUSK'S MOTION TO DISMISS FAC
Case No. 2:24-cv-09033-GW-RAO

1  to that fact pattern. And Plaintiff does not even attempt to distinguish the other cases

2  cited by Defendants (Mot. 20:1-9).

### 3. Plaintiff Fails to Distinguish Well-Settled Case Law Dismissing Copyright-Type Lanham Act Claims

5  Plaintiff's attempts to factually distinguish *Dastar*, *Comedy III*, and *Lions Gate*,

6  all fail, and Plaintiff does not cite a single case decided in its favor. Opp. 19:15-20:1.

7  Plaintiff argues *Dastar* and *Comedy III* are inapposite because the defendants in those

8  cases marketed expressive works—a television series and a motion picture,

9  respectively—whereas here Defendants are marketing automobiles and robots. *Id.*

10  19:15-19. However, neither court's analysis considered whether the ***defendant's work***

11  was expressive. Rather, each decision turned on the fact that the ***plaintiff's work*** was

12  protected by copyright and therefore did not give rise to a Lanham Act claim. *Dastar*

13  *Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31-38 (2003); *Comedy III*

14  *Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 595-96 (9th Cir. 2000). Nevertheless,

15  Plaintiff ignores Defendants' argument that the Accused Work ***is*** expressive. Mot.

16  24:18-25:3.

17  Plaintiff argues *Lions Gate* is inapplicable because that court "ultimately rested

18  its ruling" on the fact that the plaintiff had not pled it was in the business of licensing

19  its work to market the financial services the defendant was marketing, whereas here,

20  Plaintiff pled it is in the business of licensing BR2049 for automotive brand

21  partnerships. Opp. 19:20-20:1. But Plaintiff does not address Defendants' argument

22  that Plaintiff's allegations about licensing are speculative. Mot. 18:4-11. And the

23  *Lions Gate* ruling actually rested on the fact that the plaintiff's Lanham Act claim was

24  based on the same allegations as its copyright infringement claim. *Lions Gate Ent.*

25  *Inc. v. TD Ameritrade Servs. Co.*, 170 F. Supp. 3d 1249, 1267-68 (C.D. Cal. 2016).

26  The court noted that "the 'type' of good or service" is just "***one of several factors*** to

27  be considered in deciding whether there is a likelihood of consumer confusion." *Lions*

28

*Gate Ent., Inc. v. TD Ameritrade Servs. Co.*, No. 2:15-cv-05024-DDP-E, 2017 WL 4621541, at *3 (C.D. Cal. Oct. 16, 2017). Plaintiff also contends that *Lions Gate* is "a troubled opinion" that "was wrongly decided," but Plaintiff does not explain why or cite a single case supporting its argument. Opp. 19:20-22. In fact, several district courts have cited *Lions Gate*, and undersigned counsel is not aware of any decision criticizing *Lions Gate* as wrongly decided.

Plaintiff does not even attempt to distinguish *Rice, Slep-Tone*, or *Carranza* (Mot. 20:16-20, 21:8-15), nor cite a single case where a Lanham Act claim based on the same allegations as a copyright infringement claim survived a 12(b)(6) motion.

**4.    Plaintiff Cannot Plead Trademark Rights in "Blade Runner"**

Plaintiff claims it could plead trademark rights in "Blade Runner," but it chose not to do so in its original complaint or the FAC, and it does not bother to explain what facts it could plead should it choose to do so. Opp. 20:17-23. The Court should not allow Plaintiff any more opportunities to amend.

Plaintiff's argument that it is not required to plead ownership of the "Blade Runner" word mark because Defendants evoked BR2049 rather than the 1982 film only highlights the duplicative nature of Plaintiff's copyright and Lanham Act claims. As Plaintiff states, this case is about Defendants' alleged taking of the BR2049 film. *Id.* 20:17-23.

**D.    Plaintiff Fails to Meet Its Burdens on the Nominative Fair Use and First Amendment Defenses**

**1.    Defendants' Criticism of the Future Depicted in "Blade Runner" Is Nominative Fair Use**

Plaintiff has not met—and cannot meet—its burden of establishing that any trademark or trade dress use by Defendants is ***not*** nominative fair use.[13] Defendants

---

[13] Nominative fair use "'replaces' *Sleekcraft* as the proper test for likely consumer confusion whenever [a] defendant asserts to have referred to the trademarked good

met their burden of showing that they used the words "Blade Runner" and the Exhibit C image to reference the film's (the original Blade Runner and/or BR2049) version of the future, i.e., to refer to the allegedly trademarked product. *Toyota*, 610 F.3d. at 1183; Mot. 23:17-24. The burden then reverted to Plaintiff to show a likelihood of confusion. *Toyota*, 610 F.3d at 1183. None of Plaintiff's arguments meet its burden.

**First**, there are no fact issues precluding resolution at the 12(b)(6) stage because the Court can view the Accused Work and see exactly how much of the alleged marks and trade dress Defendants used. *See* Opp. 20:24-21:7; *see also* Ex. 2, 5:35-6:10; *Champion v. Moda Operandi, Inc.*, 561 F. Supp. 3d 419, 438 (S.D.N.Y. 2021) (dismissal of trademark claims appropriate "where simply looking at the work…and [its] context…demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work").

**Second**, Plaintiff's argument that Defendants' use is not "nominative" because Musk used the term "Blade Runner" and not the term "Blade Runner 2049" (Opp. 21:7-8) contradicts Plaintiff's argument that the use of "Blade Runner" alone infringes its rights in the BR2049 title. Nominative fair use applies where a defendant has "used the plaintiff's mark to describe the plaintiff's product." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 809 (9th Cir. 2003). By arguing that Defendants' use is not "nominative," Plaintiff is arguing that "Blade Runner" does not describe BR2049. But the entire basis of Plaintiff's Lanham Act claim is that Musk "meant to evoke BR2049" when he said the words "Blade Runner." *E.g.*, FAC ¶ 107. Plaintiff cannot have it both ways.

---

itself." *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1182 (9th Cir. 2010). Plaintiff bears the burden because "[a] finding of nominative fair use is a finding that the plaintiff has failed to show a likelihood of confusion as to sponsorship or endorsement[,]" and "the Lanham Act always places the 'burden of proving likelihood of confusion…on the party charging infringement.'" *Id.* at 1182-83.

***Third***, Musk's statement that he "love[s] 'Blade Runner'" is a classic fair use reference. Opp. 21:8-12. Plaintiff claims incorrectly that the Motion argues Musk "was criticizing BR2049 as a product." *Id.* In fact, the Motion argues—and the Accused Work shows—that Musk criticized a "dark and dismal" dystopian future, not either of the movies as a product, just like the defendant in *Walking Mountain* criticized the message that Mattel's Barbie doll conveys, not the plastic dolls themselves. 353 F.3d at 802. Plaintiff does not address that case, and also ignores facts that the FAC alleges which provide helpful context, including Musk's statement that he did ***not*** want to live in the future depicted in "Blade Runner" and the words "NOT THIS" shown on Exhibit C.[14] FAC ¶¶ 102, 106. Plaintiff's Opposition ignores the words "TESLA LIVE" shown on Exhibit C as well. These are exactly the kinds of facts that have been found to constitute nominative fair use on a motion to dismiss, and Plaintiff does not even attempt to distinguish the case Defendants cited. *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 897 (9th Cir. 2019) (district court properly found nominative fair use on 12(b)(6) motion "based on the critical nature of the presentation, the disclaimer included in the text, and the fact that Defendants advertised the seminar under [their own] banner"); *see also Gibson Brands, Inc. v. John Hornby Skewes & Co.*, No. 14-cv-00609-DDP-SS, 2015 WL 4651250, at *4 (C.D. Cal. Aug. 4, 2015) (dismissal appropriate where pleadings fail to allege trademark use beyond nominative fair use).

## 2. The Court Should Apply *Rogers* and Find that Plaintiff Has Not Met Its Burden to Sustain Its Lanham Act Claim

Plaintiff only argues that *Rogers* does not apply and makes no attempt to meet its burden on either of the two prongs of the *Rogers* test. Opp. 21:13-27. While Defendants bear the burden of establishing that *Rogers* applies, once Defendants meet

---

[14] "NOT THIS" starkly contrasts with "Powered By Label Insight [plaintiff's platform]" in *Nielsen Consumer LLC v. LiveRamp Holdings, Inc.*, No. 24-cv-07355-SVK, 2025 WL 604665, at *7 (N.D. Cal. Feb. 25, 2025), cited at Opp. 20:24-27.

that burden, which they have, Plaintiff's Lanham Act claim is precluded unless it shows that at least one of the *Rogers* prongs is met. *Pepperdine Univ. v. Netflix, Inc.*, No. 2:25-cv-01429-CV-ADSx, 2025 WL 632983, at *3 (C.D. Cal. Feb. 26, 2025); *McGillvary v. Netflix, Inc.*, No. 2:23-cv-01195-JLS-SK, 2024 WL 3588043, at *13 (C.D. Cal. July 30, 2024). Plaintiff does not address either *Rogers* prong, so the Court only needs to decide if *Rogers* applies and dismiss Plaintiff's Lanham Act claim if so.[15] Both of Plaintiff's arguments against applying *Rogers* here fail.

**First**, *Jack Daniel's Properties, Inc. v. VIP Products LLC* is not as broad as Plaintiff claims. *Jack Daniel's* held that the *Rogers* inquiry "is not appropriate when the accused infringer has used a trademark to designate the source of its own goods— in other words, has used a trademark as a trademark." 599 U.S. 140, 145 (2023). As Defendants explained in their Motion—and Plaintiff ignores—Defendants' references to "Blade Runner" were to criticize a "dark and dismal" dystopian future and juxtapose that to a brighter future, not to identify the source of their products. Mot. 24:8-9, 24:18-22; *Pepperdine*, 2025 WL 632983, at *3-4 (discussing *Jack Daniel's* and collecting cases applying *Rogers*). As the Court can plainly observe from the Accused Work, Tesla—not Plaintiff—is the source of the autonomous vehicles and humanoid robots discussed therein.

**Second**, Plaintiff's argument that the Accused Work is commercial speech that is not entitled to First Amendment protection fails because the Accused Work includes protected expression. Plaintiff does not address Defendants' argument that the Accused Work is an expressive work that "is entitled to full First Amendment protection" because it "does more than propose a commercial transaction" and is not

---

[15] Whether *Rogers* applies is a legal question that the Court may decide now. *See Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192, 1196 (9th Cir. 2017).

"purely commercial," such as by expressing criticism and commentary.[16] *Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894, 906 (9th Cir. 2002). In determining whether a work is expressive, courts in the Ninth Circuit analyze whether the work is "communicating ideas or expressing points of view." *VIP Prods. LLC v. Jack Daniel's Props., Inc.*, 953 F.3d 1170, 1174 (9th Cir. 2020) (quoting *MCA*, 296 F.3d at 900), *vacated on other grounds*, 599 U.S. 140 (2023). "A work need not be the expressive equal of *Anna Karenina* or *Citizen Kane* to satisfy this requirement and is not rendered non-expressive simply because it is sold commercially." *Id.* at 1175. As the Ninth Circuit has explained, the Supreme Court has contemplated that, like books, plays, and movies, other kinds of works that "communicate ideas—and even social messages— through many familiar literary devices (such as characters, dialogue, plot, and music)" also warrant First Amendment protection as expressive works. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1241 (9th Cir. 2013) (discussing videogames; citing *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 790 (2011)). As another example, a work that conveys "a simple" message by "juxtaposing the irreverent representation of the trademark with the idealized image created by the mark's owner" is expressive. *VIP*, 953 F.3d at 1175 (quoting *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 34 (1st Cir. 1987)).

The Accused Work is not merely a commercial advertisement—like Plaintiff self-servingly claims ***only*** on page 21 of its Opposition. It is a speech that explores, optimistically, themes of the future of society, technology, artificial intelligence,

---

[16] Plaintiff does not address any of the cases cited in the First Amendment section of Defendant's Motion (24:3-25:15) except *Rogers*. Plaintiff accuses Defendants of ignoring *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60 (1983) (Opp. 21:20-21), but *MCA* quoted *Bolger* in explaining that "the 'core notion of commercial speech' is that it 'does no more than propose a commercial transaction.'" 296 F.3d at 906. And contrary to Plaintiff's assertion, under *Bolger*, "[t]he mere fact that [speech is an] advertisement[]…clearly does not compel the conclusion that [it is] commercial speech." 463 U.S. at 66.

autonomous vehicles, and robots. Plaintiff's characterizations of the Accused Work to support its copyright claim (FAC ¶¶ 99-106) are a stark contradiction to its characterization of the Accused Work as a "car advertisement" to support its trademark claim. Opp. 21:14-15. Accepting Plaintiff's copyright allegations describing the Accused Work as true, the Accused Work is not "purely commercial" and thus "is entitled to full First Amendment protection" under Ninth Circuit law. *MCA*, 296 F.3d at 906; *see also Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1185-86 (9th Cir. 2001) (for-profit magazine's article that served a commercial purpose was "not a simple advertisement" or "pure commercial speech" because it commented on films and actors); *Champion*, 561 F. Supp. 3d at 434-35 (online editorial with "commercial hyperlinks" to buy advertised clothing on retailer's website and that commented on current fashions was expressive).

### E.   The Court Should Not Allow Plaintiff to Amend Its Already Amended Complaint

Plaintiff's Opposition mentions only three potential amendments: that Musk owns Grok AI and used it here (Opp. 8:11-16); that "perhaps" the character K appears in more than one of Plaintiff's works (*id.* 13:13-15); and that it has a "Lanham Act-cognizable ownership interest in the word mark 'Blade Runner'" (*id.* 20:19-20). These proposed amendments would be futile. That Musk owns a company that runs the "Grok" AI assistant is far from plausibly pleading that Musk "might have put BR2049 or parts of it into Grok for image generation." *Id.* 8:11-16. This is just another fabricated allegation from Plaintiff's imagination. And even if Plaintiff could allege that K has appeared in more of Plaintiff's works, what is still glaringly missing is Plaintiff's use of K in connection with the goods at issue—cars, or even any related goods. Plaintiff's claim that it can plead ownership in the word mark "Blade Runner" is doubtful given the lack of facts offered in the Opposition. Regardless, such an allegation would not cure Plaintiff's failure to plead secondary meaning, or the fact

that Plaintiff is impermissibly attempting to use the Lanham Act to circumvent copyright law. Because giving Plaintiff a second opportunity to amend its pleading would be futile, the Court should deny leave to amend.

## III.    CONCLUSION

For the reasons stated above and in Defendants' Motion, the Court should dismiss the FAC with prejudice.

Dated:  March 24, 2025               FISH & RICHARDSON P.C.

By: /s/ Kristen McCallion
Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (213) 533-4240
Fax: (858) 678-5099

John S. Goetz (*pro hac vice* forthcoming)
goetz@fr.com
Kristen McCallion (*pro hac vice*)
mccallion@fr.com
Vivian Cheng (*pro hac vice*)
cheng@fr.com
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Tel: (212) 765-5070
Fax: (212) 258-2291

Matthew A. Colvin (*pro hac vice*)
colvin@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Tel: (214) 747-5070
Fax: (214) 747-2091

Kayleigh E. McGlynn (*pro hac vice*)
mcglynn@fr.com

FISH & RICHARDSON P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
Tel: (617) 542-5070
Fax: (617) 542-8906

A. Louis Dorny (SBN 212054)
ldorny@tesla.com
Terry W. Ahearn (SBN 216543)
tahearn@tesla.com
Krista M. Carter (SBN 225229)
kricarter@tesla.com
TESLA, INC.
3000 Hanover St.
Palo Alto, CA 94304
Tel: (510) 298-8516

Attorneys for Defendants
Tesla, Inc. and Elon Musk

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Tesla, Inc. and Elon Musk, certifies that this brief contains 6,990 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Kristen McCallion*
Kristen McCallion