Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (213) 533-4240 / Fax: (858) 678-5099

John S. Goetz (*pro hac vice* forthcoming)
goetz@fr.com
Kristen McCallion (*pro hac vice*)
mccallion@fr.com
Vivian Cheng (*pro hac vice*)
cheng@fr.com
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Tel: (212) 765-5070 / Fax: (212) 258-2291

*Additional counsel listed on signature page*

Attorneys for Defendant
Warner Bros. Discovery, Inc.

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALCON ENTERTAINMENT, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC., a Texas Corporation; ELON MUSK, an individual; WARNER BROS. DISCOVERY, INC., a Delaware Corporation,<br><br>Defendants. | Case No. 2:24-cv-09033-GW-RAO<br><br>**REPLY IN SUPPORT OF DEFENDANT WARNER BROS. DISCOVERY, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing Date: April 7, 2025<br>Hearing Time: 8:30 a.m.<br>Courtroom: 9D<br>Judge: Hon. George H. Wu |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..........................................................................................1

II. ARGUMENT ...............................................................................................2

    A. The Direct Copyright Infringement Claim Fails Because Plaintiff Does Not Plead Any Volitional Conduct by WBDI ..........................................................................................2

    B. Plaintiff Fails to Address Its Failure to Plead Both Key Elements of Its Vicarious Copyright Infringement Claim ......................5

    C. The Lanham Act Claim Fails Because Plaintiff Does Not Plead Any Infringing Act by WBDI .......................................................7

III. CONCLUSION ............................................................................................8

CERTIFICATE OF COMPLIANCE .......................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bell v. Pac. Ridge Builders, Inc.*,
  No. 19-cv-01307-JST, 2019 WL 13472127 (N.D. Cal. June 4, 2019) ................7

*Bell v. Wilmott Storage Servs., LLC*,
  12 F.4th 1065 (9th Cir. 2021) ..................................................................2, 3

*Erickson Prods., Inc. v. Kast*,
  921 F.3d 822 (9th Cir. 2019) .........................................................................7

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
  76 F.3d 259 (9th Cir. 1996) .......................................................................5, 6

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) .......................................................................5

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017) .........................................................................3

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ......................................................................................4

## I. INTRODUCTION

Plaintiff's Opposition neglects to respond to most of WBDI's arguments and instead mischaracterizes them as factual denials. But WBDI is not merely denying factual allegations. A review of the FAC and the applicable law—nearly all of which Plaintiff ignores—shows that the inclusion of WBDI in this litigation is inappropriate because WBDI had no involvement in or control over the allegedly infringing acts to be liable for direct or vicarious infringement.

At the outset, Plaintiff challenges the admissibility of the WBDI-Tesla contract claiming that it has not been able to "meaningfully examine it, consider it, investigate it informally, and the like" since the parties agreed to limit disclosure to Plaintiff's outside counsel and three designated individuals at Alcon. Plaintiff's Opposition (Dkt. 54; "Opp.") 1:12-18. But the three individuals at Alcon who are permitted to view the WBDI-Tesla contract and that Alcon claims lack the knowledge to "meaningfully…assess the document" (*id.* 2:20-25) are not random or incapable. They were specifically designated by Alcon and are Alcon's co-CEOs and the Executive Vice President of Business and Legal Affairs for Motion Picture, an individual that Alcon's counsel described as the closest thing Alcon has to a general counsel.

But even putting aside the WBDI-Tesla contract, Plaintiff still fails to plead any volitional conduct by WBDI to state a direct copyright infringement claim against WBDI. And nothing in Plaintiff's Opposition changes the fact that the FAC fails to plead facts to support its conclusory allegations of WBDI's control over the allegedly infringing acts and a direct financial benefit to WBDI to maintain its claim for vicarious liability. As for the Lanham Act claim, a review of the works shows that Tesla's passing reference to "Blade Runner" and purported use of BR2049 imagery was not misleading, did not imply an endorsement or brand affiliation, and is classic fair use that is also protected by the First Amendment. The works are before the Court,

and they will never change. Lastly, Plaintiff neglects to address, and essentially concedes, WBDI's argument that even if Plaintiff pled protectable Lanham Act rights, the FAC contains no allegations of an infringing act by WBDI.

As discussed below, Plaintiff's sole proposed amendment concerning WBDI's desire to clear BR2049 for Tesla and Musk is futile to curing these deficiencies. And because Plaintiff's other claim that it "may proffer external material in support of leave to amend" (Opp. 18:16) is too vague to consider, dismissal of all claims against WBDI should be with prejudice.[1]

## II.   ARGUMENT

### A.   The Direct Copyright Infringement Claim Fails Because Plaintiff Does Not Plead Any Volitional Conduct by WBDI

Plaintiff does not dispute that the sole violation of Plaintiff's exclusive copyrights by WBDI alleged in the FAC is that WBDI infringed Plaintiff's public display rights because Tesla's presentation "was conducted on, and transmitted over, WBDI-owned or WBDI-controlled property, infrastructure and systems…." FAC ¶ 127; Mot. 7:14-24; Opp. 10:22-26 (stating that WBDI "correctly notes" the FAC's limitation of the direct infringement claim as to WBDI).[2] It also agrees that a passive supplier or owner of equipment that someone else uses to transmit or display infringing works does not have sufficient "volitional conduct" for direct liability. Opp. 12:6-11 (citing *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1081-82 (9th Cir. 2021)). WBDI is not reading the "volitional conduct" requirement too strictly, as Plaintiff argues. *Id.* 11:22-12:5. *Bell*, cited by Plaintiff, reiterates the Ninth Circuit

---

[1] Because the relevant facts for this Motion are the facts alleged in the FAC, we do not specifically address the self-serving "Facts" section of Plaintiff's Opposition at 3:14-7:19.

[2] Plaintiff also does not dispute that the allegations in the FAC that WBDI generated the Exhibit C image are a remnant of Plaintiff's original pleading and are contradicted by Plaintiff's explicit allegations in the First Claim for Relief. Mot. 7-8 at n.5, 11 at n.7. Thus, the Court may disregard the allegations in FAC ¶ 105 as to WBDI.

law on which WBDI relies. 12 F.4th at 1081 ("We have held that a website or service that provides only a platform for third-party users to upload, download, and share content, *i.e.*, merely using the platform as a vehicle, has not engaged in volitional conduct in this sense, because it is the users who cause infringement." (citing *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 669 (9th Cir. 2017))); Mot. 7:7-12, 8:1-20. Unlike WBDI, the website operator in *Bell* managed and hosted the website data stored on the website's servers, including the allegedly infringing photo. *Bell*, 12 F.4th at 1081. The court therefore found that the defendant's actions were volitional and the most important cause of the accused public display of the plaintiff's photo. *Id.* at 1082. In contrast, here, Plaintiff merely alleges that WBDI was a passive supplier who cannot be liable for direct infringement.

While Plaintiff argues that the FAC "plainly alleges that WBDI did 'exercise control' and actively participated with Musk and Tesla in 'selecting any material for transmission' over the WBDI systems for the October 10, 2024 event" (Opp. 12:16-20 (cleaned up)), Plaintiff conflates the requirements for vicarious liability with the volitional conduct requirement for direct liability. Plaintiff's argument also is not supported by the FAC paragraphs it cites. *Id.* (citing FAC ¶¶ 86-98). Its use of the quoted phrases "exercise control" and "select[ing] any material…for transmission" is misleading, as these phrases are not in the FAC, but rather a passage from *Bell* discussing the standard for a volitional act. This is merely a bare recitation of the legal standard. All Plaintiff alleges in its cited FAC paragraphs are discussions between the Defendants and that WBDI tried to obtain permission from Plaintiff for Musk and Tesla to use BR2049. Plaintiff does not adequately respond to WBDI's argument that the FAC provides no facts to connect such discussions and clearance work with the right and ability to supervise and control, and select, what was ultimately used in Tesla's presentation. Mot. 9:20-10:3.

3
WBDI'S REPLY ISO MOTION TO DISMISS FAC
Case No. 2:24-cv-09033-GW-RAO

As a last ditch attempt to save its direct and vicarious copyright infringement claims, Plaintiff asserts that it can plead on amendment that an unnamed WBDI-shared services executive told Alcon's personnel on October 10, 2024, that "executives at the 'highest levels' of WBDI 'not located in Burbank' had firmly directed the shared services personnel in Burbank to clear BR2049 for Musk and Tesla with urgency, because of the importance of the Musk-Tesla event to the larger WBDI entity, and because Musk (or Tesla) wanted BR2049 for it." Opp. 5:1-11, 12:20-13:4. It self-servingly characterizes this as an adequate allegation that WBDI exercised control or selected material for transmission. *Id.* 12:26-13:5. But Plaintiff's proposed allegation does not make plausible that WBDI had any control over the content of Tesla and Musk's presentation. The fact that WBDI was helping to **clear BR2049** for use at the event merely shows that WBDI sought to go through the proper channels to obtain permission to use Plaintiff's work. Plaintiff has not and cannot plausibly allege that WBDI encouraged Musk and Tesla to use BR2049 despite learning that Alcon would not grant a license, or that WBDI had such control over the presentation contents. Assistance in clearance does not equate to control over the presentation or selecting or maintaining its contents. This is simply too far of a leap to be plausible. WBDI's defense is not merely "factual denial," as Plaintiff claims. *Id.* 13:5-6. It is that Plaintiff's allegations do not meet the legal standard for pleading volitional conduct. Dismissal of the direct infringement claim should be with prejudice because Plaintiff's proposed amendment fails to state a claim for the same reasons as the existing allegations in the FAC.[3]

---

[3] Indeed, the last sentence of Section V.C.2 of Plaintiff's Opposition anticipates that Plaintiff has not sufficiently pled direct infringement against WBDI: "Even if the alleged facts might not be found to create direct liability – for instance, Plaintiff would agree that if there can only be a single proximate cause direct infringer for a violation of Section 106(5), then it has to be Musk and/or Tesla over WBDI – the facts actually cognizable on Rule 12(b)(6) nonetheless create vicarious infringement liability here for WBDI." Opp. 13:6-10 (emphasis original).

### B.  Plaintiff Fails to Address Its Failure to Plead Both Key Elements of Its Vicarious Copyright Infringement Claim

Plaintiff does not address its failure to plead the right and ability to supervise and control the allegedly infringing activity—a key element of vicarious liability (Mot. 9:2-19)—other than stating that, if the facts alleged about WBDI's involvement in seeking to clear use of BR2049 from Plaintiff are not found to create direct liability, those facts "nonetheless create vicarious infringement liability here for WBDI." Opp. 13:6-10. But as discussed above, Plaintiff's proposed amendment would not cure Plaintiff's failure to plausibly plead that WBDI had the ability to supervise and control the allegedly infringing activity. Notably, Plaintiff fails to address *any* of the cases cited by WBDI on this point, including cases that state a party's ability to terminate a service contract does not give that party the right to stop direct infringement, and cases concerning the application of the plausible federal pleading standard for allegations made on information and belief. Mot. 9:2-13:11 (citing cases). Plaintiff merely claims that the "FAC's alleged facts constitute vicarious copyright infringement under all of the cases that the WBDI Motion cites" without any support or analysis. Opp. 14:1-3. Plaintiff's statement that "Musk was not just another vendor at a flea market, and WBDI both was paying close attention to him, and did not want to upset him or the lucrative deal" (*id.* 14:9-12) appears to be an attempt to align this case with *Fonovisa, Inc. v. Cherry Auction, Inc.*, a dated and distinguishable case that held the plaintiff sufficiently alleged vicarious copyright infringement against swap meet operators who had a "broad" contractual right to "exclude vendors for patent and trademark infringement." 76 F.3d 259, 261, 263 (9th Cir. 1996). But as explained in WBDI's Motion, Plaintiff's reliance on *Fonovisa* is wrong in light of more recent Ninth Circuit law. Mot. 12:3-13:26 (citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173-74 (9th Cir. 2007) (holding that Google's mere right to terminate an AdSense partnership did not give Google the right to stop direct infringement)). Further, an

allegation that WBDI was "paying close attention" to Musk is far from the facts in *Fonovisa*, where there was no dispute that the swap meet operators were actually aware that their vendors were selling counterfeits of the plaintiff's recordings. Opp. 14:10; *Fonovisa*, 76 F.3d at 261.

Plaintiff also does not respond to WBDI's arguments concerning Plaintiff's bare allegation that the "Direct Infringers" may have been WBDI's agents, employees, or contractors. Mot. 11:4-12:2. It does not and cannot offer any amendments to make this allegation plausible. While Plaintiff also ignores the plain text in the Tesla-WBDI contract that shows WBDI merely leased physical space to Tesla without reserving any right to control the content of Tesla's event, the Court may dismiss this claim for failure to plausibly plead control even without considering the contract for the reasons stated above.

In addition, Plaintiff fails to address the lack of causal relationship between the allegedly infringing activity and purported financial benefit to WBDI. *Id.* 13:23-16:14. It makes no attempt to distinguish the cases cited by WBDI and cites to no cases finding a direct financial benefit under circumstances similar to the convoluted theory alleged in the FAC, i.e., where the alleged vicarious infringer promised to provide a brand affiliation, was unable to, and avoided a claim of breach of contract or adjustment of the contract price based on that failure by "suggesting, encouraging, or knowingly allowing" the direct infringer to use the allegedly infringing work anyway. FAC ¶ 147; *see* Opp. 13:13-14:12.

Instead, Plaintiff cites to previously unidentified clips from the "We, Robot" recording showing glimpses of the Warner Bros. water tower, an event map with a section of the event space labeled "West World," and event attendees taking photos with the Batmobile on WBDI's studio lot to claim that this "looks like a brand affiliation" between Musk and Tesla and WBDI since attendees got to enjoy being at the WBDI lot and interact with entertainment brands in the "WBDI conglomerate

library." Opp. 7:1-17, 13:13-25. This is hardly evidence of a "brand affiliation" between Tesla or Musk and WBDI or any WBDI motion picture properties, let alone ***BR2049***; it merely shows that the event took place on a Warner Bros. lot. Regardless, these alleged circumstances are irrelevant because they still do not close the gaps in what is missing from this claim: that WBDI had the ability to supervise and control the allegedly infringing activity, or that WBDI financially benefited ***directly*** from the alleged infringement.

Plaintiff still has no response to WBDI's argument that the avoidance of a potential penalty for failing to deliver a brand affiliation with BR2049 is far too indirect and attenuated to plausibly plead that WBDI received a ***direct*** financial benefit with a "causal link" to the allegedly infringing activity. Mot. 16:1-7 (citing *Bell v. Pac. Ridge Builders, Inc.*, No. 19-cv-01307-JST, 2019 WL 13472127, at *6 (N.D. Cal. June 4, 2019) and *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 829-31 (9th Cir. 2019) (holding that the direct infringer's avoidance of licensing fees alone cannot satisfy the requirement of a direct financial benefit to the vicarious infringer)). Because Plaintiff does not identify any new allegations to cure its multiple deficiencies for this claim, the Court should dismiss the vicarious copyright infringement claim with prejudice.

**C.    The Lanham Act Claim Fails Because Plaintiff Does Not Plead Any Infringing Act by WBDI**

With respect to the deficiencies in Plaintiff's Lanham Act claim, Plaintiff responds only to the arguments in Tesla and Musk's Motion. WBDI hereby joins and incorporates by reference Sections II(C)-(D) of Tesla and Musk's reply memorandum.

Plaintiff fails to respond to the additional arguments in WBDI's Motion, namely that the FAC contains no allegations of an infringing act by WBDI. Mot. 17:3-26. It has no response to the fact that the FAC rests only on conjecture that "discovery

7

WBDI'S REPLY ISO MOTION TO DISMISS FAC
Case No. 2:24-cv-09033-GW-RAO

will show that Defendant WBDI aided and abetted Tesla's and Musk's Lanham Act violations described herein, including in that WBDI aided, encouraged and/or lent meaningful support to Tesla and Musk before, during or after Tesla's and Musk's violations, and with knowledge by WBDI that the acts by them were improper." FAC ¶ 187. As noted, even if this activity occurred, which it did not, it would still be insufficient to plead a violation of the Lanham Act, which requires that WBDI, itself, used Plaintiff's alleged marks or trade dress. Even Plaintiff argues that a "defendant's [i.e., WBDI] use in commerce" is required for a finding of liability. Opp. 14:23.

Plaintiff's lack of response confirms that there is no factual basis for this claim as to WBDI and it should be dismissed with prejudice.

## III. CONCLUSION

For the reasons stated above and in WBDI's Motion, and Tesla and Musk's Motion and concurrently filed reply memorandum, the Court should dismiss all claims against WBDI with prejudice.

Dated: March 24, 2025

FISH & RICHARDSON P.C.

By: /s/ Kristen McCallion
Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (213) 533-4240
Fax: (858) 678-5099

John S. Goetz (*pro hac vice* forthcoming)
goetz@fr.com
Kristen McCallion (*pro hac vice*)
mccallion@fr.com
Vivian Cheng (*pro hac vice*)
cheng@fr.com
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036

|   |   |
|---|---|
| 1 | Tel: (212) 765-5070<br>Fax: (212) 258-2291 |
| 2 | |
| 3 | Matt Colvin (*pro hac vice*)<br>colvin@fr.com |
| 4 | FISH & RICHARDSON P.C.<br>1717 Main Street, Suite 5000 |
| 5 | Dallas, TX 75201<br>Tel: (214) 747-5070 |
| 6 | Fax: (214) 747-2091 |
| 7 | Kayleigh E. McGlynn (*pro hac vice*) |
| 8 | mcglynn@fr.com<br>FISH & RICHARDSON P.C. |
| 9 | One Marina Park Drive, Suite 1700<br>Boston, MA 02210 |
| 10 | Tel: (617) 542-5070<br>Fax: (617) 542-8906 |
| 11 | |
| 12 | Attorneys for Defendant |
| 13 | Warner Bros. Discovery, Inc. |

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Warner Bros. Discovery, Inc., certifies that this brief contains 2,510 words, which complies with the word limit of L.R. 11-6.1.

/s/ Kristen McCallion
Kristen McCallion