A. Louis Dorny (CA 212054)
ldorny@tesla.com
Terry W. Ahearn (CA 216543)
tahearn@tesla.com
Krista M. Carter (CA 225229)
kricarter@tesla.com
TESLA, INC.
3000 Hanover St.
Palo Alto, CA 94304
Tel: (510) 298-8516

Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (213) 533-4240 / Fax: (858) 678-5099

*Additional counsel listed on signature page*

Attorneys for Defendants
Tesla, Inc. and Elon Musk

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| ALCON ENTERTAINMENT, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC., a Texas Corporation; ELON MUSK, an individual; WARNER BROS. DISCOVERY, INC., a Delaware Corporation,<br><br>Defendants. | Case No. 2:24-cv-09033-GW-RAO<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS TESLA, INC. AND ELON MUSK'S MOTION TO DISMISS TO SECOND AMENDED COMPLAINT**<br><br>Hearing Date: September 11, 2025<br>Hearing Time: 8:30 a.m.<br>Courtroom: 9D<br>Judge: Hon. George H. Wu |

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................1

II.  LEGAL STANDARD .........................................................................3

III. ARGUMENT......................................................................................4

   A.   The SAC Is Needlessly Repetitive and Lengthy with Pages
      of Unnecessary Background and Irrelevant Details..............................4

   B.   Alcon's Incoherent Theories Prevent Defendants from
      Understanding and Meaningfully Responding to Alcon's
      Third Set of Allegations .......................................................................7

      1.   Alcon's Copyright Infringement Theories Are
         Incomprehensible and Should Be Dismissed ...........................8

         a)   Alcon's Direct Copyright Infringement Claim
            Is Based on "Novel" Theories that Are Not
            Law ...............................................................................8

         b)   Alcon's Alternative and Inconsistent Factual
            Theories for Direct and Contributory
            Copyright Infringement Are
            Incomprehensible .........................................................10

         c)   Alcon's Vicarious Copyright Infringement
            Claim Is Internally Inconsistent and
            Inappropriately Premised on the Law Being
            "Less Than Entirely Clear" ..........................................13

      2.   Alcon's Lanham Act Theories Are
         Incomprehensible and Should Be Dismissed ...........................16

         a)   Alcon's Theory Under the "Explicitly
            Misleading" Prong of the *Rogers* Test Is
            Unclear........................................................................16

         b)   Alcon's Theory of "Commercial Speech" Is
            Unclear........................................................................17

         c)   Alcon's Allegations Regarding Its Rights in
            the "BLADE RUNNER" Word Mark Are
            Inconsistent .................................................................18

d)      The Scope of Alcon's Alleged Trade Dress
        Rights Is Unclear ........................................................ 19

C.      The SAC Unfairly Burdens the Court and Prejudices
        Defendants ................................................................. 19

IV.    CONCLUSION ......................................................................... 21

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*A&M Records, Inc. v. Napster, Inc.*,
5    239 F.3d 1004 (9th Cir. 2001) ............................................................... 15

6

*Alcon Entertainment, LLC v. Automobiles Peugeot SA*,
7    No. 19-cv-00245-CJC-AFMx, 2020 WL 8365240 (C.D. Cal. Feb.
8    26, 2020) .................................................................................*passim*

9

*Bolger v. Youngs Drugs Products Corp.*,
    463 U.S. 60 (1983)................................................................17, 18
10

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
11    637 F.3d 1047 (9th Cir. 2011 ............................................................... 4

12

*Clayburn v. Schirmer*,
13    No. CIV S-06-2182 ALA P, 2008 WL 564958 (E.D. Cal. Feb. 28,
14    2008) ............................................................................................ 7

15

*Dielsi v. Falk*,
    916 F. Supp. 985 (C.D. Cal. 1996) ........................................................ 9
16

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
17    983 F.3d 443 (9th Cir. 2020) ............................................................... 16

18

*Epsteen v. New York Fin., Inc.*,
19    No. 10-cv-06553-ODW-JEMx, 2011 WL 13217369 (C.D. Cal. Apr.
20    18, 2011) ................................................................................12, 20

21

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
22    76 F.3d 259 (9th Cir. 1996) ............................................................... 15

23

*Gordon v. Drape Creative, Inc.*,
24    909 F.3d 257 (9th Cir. 2018) ........................................................16, 17

25

*Hann v. Int'l Bhd. of Magicians IBM*,
26    No. EDCV 22-866-JGB-SHKx, 2023 WL 5504963 (C.D. Cal. May
    19, 2023) ................................................................................14, 15, 18

27

28

*Hatch v. Reliance Ins. Co.*,
    758 F.2d 409 (9th Cir. 1985) ....................................................................3, 4, 7

*Luvdarts, LLC v. AT & T Mobility, LLC*,
    710 F.3d 1068 (9th Cir. 2013) ........................................................................14

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996) ....................................................................*passim*

*Miller v. City of Los Angeles*,
    No. 13-cv-5148-GW-CWx, 2014 WL 12614470 (C.D. Cal. May 22,
    2014) ..............................................................................................................2, 20

*Morris v. California State Prison, Los Angeles Cnty.*,
    No. 24-cv-04036-RGK(E), 2024 WL 3362852 (C.D. Cal. July 9,
    2024) ..............................................................................................................8, 16

*Nevijel v. North Coast Life Ins. Co.*,
    651 F.2d 671 (9th Cir. 1981) ....................................................................3, 4, 7

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989) ...............................................................16, 17, 18

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ...........................................................................9

*Sollberger v. Wachovia Sec., LLC*,
    No. 09-cv-00766-AGA-Nx, 2010 WL 2674456 (C.D. Cal. June 30,
    2010) ..................................................................................................................20

*White v. Anywhere Real Est. Inc.*,
    No. 22-cv-4557-GW-MAAx, 2023 WL 9419133 (C.D. Cal. May 30,
    2023) ...............................................................................................................3, 6

**Other Authorities**

3 Nimmer on Copyright § 12.04[A][2]...................................................................15

5 Fed. Prac. & Proc. Civ. § 1217 (4th ed.) .............................................................3

Fed. R. Civ. P. Rule 8 ...................................................................................*passim*

Fed. R. Civ. P. Rule 11 ...............................................................................10, 21

Fed. R. Civ. P. Rule 12(b)(6)..................................................................................1

Fed. R. Civ. P. Rule 41(b)..............................................................................3, 4, 20

Restatement (Third) of Torts: Miscellaneous Provisions § 3 ID No. 2
    (2023)............................................................................................................15

MPA ISO TESLA AND MUSK'S MOTION TO DISMISS SAC

# I.    INTRODUCTION

Alcon failed to heed the Court's Rule 8 admonishments and has again filed a pleading that is prolix, confusing, and prejudicial to Defendants.

Defendants previously moved to dismiss Alcon's First Amended Complaint under Rule 8 (and Rule 12(b)(6)) because it was not a concise statement of Alcon's claims, and its length, repetition, and needless detail created an undue burden on the Court and prejudiced Defendants.  In the final footnote of its tentative ruling granting the majority of Defendants' 12(b)(6) motions, the Court "found the Defendants' Rule 8 criticisms very persuasive," and directed Alcon "to take those criticisms *very* seriously" "if there was ever to be any future pleading in this case."   Dkt. 61 ("Tentative Ruling") at 35 n.28.  At the hearing, Alcon's counsel acknowledged the Court's directive, indicating that he would like to amend at least "because" of the Court's "final footnote." 2025-04-07 Hr'g Tr. at 31:5-6.  In allowing Alcon to amend its pleading again, the Court reiterated its Rule 8 concern, instructing Alcon's counsel to "read the tentative with care when you decide what you want to amend." *Id.* at 32:19-24.  Alcon did not do that.

Alcon's Second Amended Complaint retains much of the verbose ramblings of unnecessary information, confusing allegations, and speculative theories that plagued the First Amended Complaint, while introducing additional irrelevant details, alternative and irrelevant "facts" nested within alternative theories, and "novel" legal theories that even Alcon admits are not supported by existing law.  Alcon's superfluous, complex, and often contradictory narratives presented under multiple alternative theories are not only confusing and excessive, they make it impossible to discern the full scope of Alcon's third set of claims against Defendants or the basis for its requested relief.

Defendants suspect, however, this is all by design.  That is, Alcon's only apparent objective—made clear by three successively withering complaints with no

prospect of significant damages—is to multiply these proceedings in service to some vendetta to increase costs and disparage Defendants.  Indeed, Alcon admitted as much at the hearing on Defendants' prior motions to dismiss.  There, the Court asked Alcon, "[E]ven if your client prevails, you know, what does – what does your client expect?" Hr'g Tr. at 33:18-21.  Alcon's response unveiled its true objective in this case: "And part of what is happening here is my client has to – in its mind has to make clear that it has distance from some of the parties involved here…." *Id.* at 33:23-34:1. This is not a proper purpose for continuing to prosecute this litigation and burden Defendants—and the Court—with onerous pleadings.  *Miller v. City of Los Angeles*, No. 13-cv-5148-GW-CWx, 2014 WL 12614470, at *18 (C.D. Cal. May 22, 2014) ("lawsuits are not the correct vehicle for settling personal scores…").

Notably, this is not the first case in which Alcon has faced a motion to dismiss for a Rule 8 violation.  In *Alcon Entertainment, LLC v. Automobiles Peugeot SA*— which involved another dispute related to BR2049—the court dismissed Alcon's complaint under Rule 8 because "[t]he length, repetition, and needless detail…create[d] an undue burden on the Court and Defendants, and risk[ed] prejudice to the parties."  No. 19-cv-00245-CJC-AFMx, 2020 WL 8365240, at *3 (C.D. Cal. Feb. 26, 2020).  It is the same here except, in this case, Alcon was already warned of its Rule 8 violation and failed to fix the allegations that Defendants already noted were "needlessly repetitive and lengthy" and "confusing, [and] rambling." Dkt. 48-1 at 25-26 (citing Dkt. 37, "FAC" ¶¶ 40-51, 53-68, 71, among others).  Alcon has filed a new pleading that is even more improper and prejudicial.

Defendants cannot reasonably respond to the operative pleading and therefore request that the Court dismiss the Second Amended Complaint with prejudice for failure to comply with Rule 8.  Since Alcon has thrice failed to comply with Rule 8, and has already received this Court's warning, the dismissal should be with prejudice.

MPA ISO TESLA AND MUSK'S MOTION TO DISMISS SAC
Case No. 2:24-cv-09033-GW-RAO

## II.    LEGAL STANDARD

Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).   In addition, Rule 8(d)(1) requires that "[e]ach allegation…be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).   Together, "Rules 8(a) and 8(d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules."  5 Fed. Prac. & Proc. Civ. § 1217 (4th ed.).   "The policy behind Rule 8's pleading requirement is to 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  *White v. Anywhere Real Est. Inc.*, No. 22-cv-4557-GW-MAAx, 2023 WL 9419133, at *3 (C.D. Cal. May 30, 2023) (quoting *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993)).

Courts dismiss complaints that violate Rule 8.  *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 673-74 (9th Cir. 1981) (collecting cases).  "Such dismissals may be based on the length, content, and organization of the complaint."  *White*, 2023 WL 9419133, at *3.  For example, dismissal is appropriate under Rule 8 when, as here, a complaint is "argumentative, prolix, replete with redundancy" and "seems designed to provide quotations for newspaper stories" "[r]ather than set out the basis for a lawsuit."  *McHenry v. Renne*, 84 F.3d 1172, 1177-78 (9th Cir. 1996) (affirming Rule 8 dismissal with prejudice); *see also Nevijel*, 651 F.2d at 674 (affirming Rule 8 dismissal with prejudice of "verbose, confusing and conclusory" complaint); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir. 1985) (holding that district court's Rule 8 dismissal was not an abuse of discretion where complaints that exceeded 70 pages in length including attachments "were confusing and conclusory and not in compliance with Rule 8").

Dismissal for failure to comply with Rule 8 may be with leave to amend or with prejudice under Rule 41(b).  *Peugeot*, 2020 WL 8365240, at *2 (citing *Nevijel*, 651 F.2d at 673).  Courts, in fact, routinely dismiss complaints with prejudice under Rule

41(b) for violating Rule 8.  *See* Fed. R. Civ. P. 41(b) (allowing dismissal "[i]f the plaintiff fails to…comply with [the Federal Rules of Civil Procedure] or a court order"); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058-59 (9th Cir. 2011) (collecting Ninth Circuit cases affirming dismissal with prejudice for violating Rule 8); *Nevijel*, 651 F.2d at 674-75 (affirming dismissal with prejudice for failure to comply with Rule 8, and in so doing, considering plaintiff's counsel's history of non-compliance with Federal Rules of Civil Procedure).

## III.    ARGUMENT

Alcon's Second Amended Complaint (Dkt. 70, "SAC") again "fails to perform the essential functions of a complaint" and should therefore be dismissed with prejudice under Rules 8 and 41(b).  *McHenry*, 84 F.3d at 1180.  It is "written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs…."  *Id.*  As a result, it unduly burdens the Court and Defendants and prejudices Defendants.

### A.    The SAC Is Needlessly Repetitive and Lengthy with Pages of Unnecessary Background and Irrelevant Details

Like in *Peugeot*, Alcon's pleading violates Rule 8 because it is repetitive and lengthy, with pages of unnecessary background and irrelevant details.  It is comprised of 257 paragraphs (some of which span half a page or more, not counting sub-paragraphs or lengthy footnotes) spread over 95 pages and contains an additional 12 pages of appendices and an additional 80 pages of exhibits.[1]  In total, the SAC is close to ***200 pages***.  *See Peugeot*, 2020 WL 8365240, at *1 (noting that Alcon's complaint comprised "159 pages…and an additional 72 pages of exhibits"); *see also Hatch*, 758 F.2d at 415 (affirming Rule 8 dismissal of complaint that "exceeded 70 pages in length"); *Nevijel*, 651 F.2d at 674 (affirming Rule 8 dismissal with prejudice of

---

[1] This is a significant expansion from Alcon's original complaint (39 pages plus 8 pages of exhibits, Dkt. 1) and the FAC (64 pages plus 14 pages of exhibits, Dkt. 37).

4

"verbose" complaint that was "23 pages long with 24 pages of addenda").

The allegations in the SAC consist of pages of detailed descriptions of the 1982 film "Blade Runner," which is not alleged to be infringed and thus is irrelevant. *E.g.*, SAC ¶¶ 114, 116-118, 126-127; Dkt. 70-1 ("Appx. 1"); *see Peugeot*, 2020 WL 8365240, at *3 (describing Alcon's pleading as "needlessly repetitive and lengthy, with pages of unnecessary background and irrelevant details," including for example, "the cinematic importance of the original *Blade Runner* film and the logistics of *BR 2049*'s production").

The SAC also is bloated with opinions and details that have no apparent connection to Alcon's claims for relief, many of which are argumentative. This also is improper. *Peugeot*, 2020 WL 8365240, at *3 (describing Alcon's pleading as "verbose and argumentative"). In one paragraph, Alcon opines on "[t]he art of advertising." SAC ¶ 121; *see Peugeot*, 2020 WL 8365240, at *3 (describing parts of the FAC that "read like a magazine article"). More egregious examples include (1) allegations about Musk generally, his purported intentions or opinions on intellectual property law, and his references to science fiction films and novels (SAC ¶¶ 9, 27-31), and (2) allegations regarding other references by Musk and/or Tesla to "Blade Runner" that Alcon does not expressly include as a basis for its claims for relief. *Id.* ¶¶ 32-40. In support of these allegations, Alcon cites to a variety of irrelevant news and magazine articles. *Id.* ¶¶ 27-30 n.1-6; *see also id.* ¶ 42 n.9; Dkt. 70-10, "Ex. H" at H-18-24; Dkt. 70-11, "Ex. I" at I-2-8, I-24-28.

Likewise, the over 50 pages of social media posts, Reddit posts, and press coverage—with Alcon's annotations, including argumentative notes—are irrelevant and distracting.[2] Many of these exhibits were obviously added to criticize and mock

---

[2] Instead of printing to PDF or capturing full-page screenshots that include URLs, Alcon captured small screenshots of social media posts and added purported links to the posts to Exhibits H and I. Not all of the links are accurate, however. For example,

Musk, and/or perhaps to confuse the reader. For example, Exhibit H consists of social media posts and press coverage about Tesla's "Cybertruck"—which is a different automobile than the "Cybercab" shown at the "We, Robot" event and, therefore, not relevant here. Exhibit I consists of a screenshot of a social media post by Musk purportedly describing the "Cybertruck" as "an armored personnel carrier from the future—what Bladerunner would have driven," with Alcon's "notes" about criticism Musk purportedly received for the post, and then 30 pages of screenshots of social media posts and press coverage mocking Musk for apparently believing that "Bladerunner" was the name of a person. This volume of material criticizing Musk—some laden with profanity (*e.g.*, Ex. I-17, I-20-22)—is excessive, unnecessary, and distracting and thus violates Rule 8. *See Peugeot*, 2020 WL 8365240, at *3 (noting "unnecessary and distracting" details); *White*, 2023 WL 9419133, at *3 (dismissing complaint that was "too 'confusing, distracting, ambiguous, and unintelligible' for Defendants to understand the substance of Plaintiff's claims or prepare a defense").

Further, the new appendices are not merely supplementary material, as the term "appendix" would suggest. They are lengthy "story overviews" of "Blade Runner" and BR2049 that contain allegations that Alcon previously alleged in the FAC. Dkts. 70-1 ("Appx. 1"), 70-2 ("Appx. 2"); SAC ¶¶ 130, 136; *compare* FAC ¶¶ 53-56, *with* Appx. 1; *compare* FAC ¶¶ 57-68, 71, *with* Appx. 2. Appendix 2 contains Alcon's recounting of the "protected elements" on which its causes of action are based. Appx. 2 ¶ 13(a)-(f). Despite having moved these allegations out of its pleading, Alcon repeatedly relies on the appendices in its SAC, including the "list of claimed protected elements" in Appendix 2 to plead its direct copyright infringement claim. SAC

---

the URL at Ex. H-1 leads to a November 6, 2019 post that states "Cybertruck unveil on Nov 21 in LA near SpaceX rocket factory," not the post shown in the screenshot at Ex. H-1. Alcon also redacted usernames and URLs from public social media posts made by members of the public, preventing Defendants from verifying the accuracy of Alcon's screenshots. *E.g.*, Ex. H-3-9, Ex. I-9-23, I-29-31.

MPA ISO TESLA AND MUSK'S MOTION TO DISMISS SAC
Case No. 2:24-cv-09033-GW-RAO

¶¶ 130, 134-136, 191(d)-(e).  Alcon's appendices are a poor attempt to avoid adding more pages to its already voluminous complaint.  They only further burden the Court and Defendants by forcing them to cross-reference multiple documents to try to obtain the full scope of the allegations.  They also leave Defendants questioning how to reply to them, as they are not pleaded allegations but are relied upon as if they are.

And, as discussed below, the SAC is confusing, with substantive allegations—including alternative facts and theories of liability—presented in a rambling manner. *Infra* § III.B.2.d at n.7 (discussing examples of the SAC's confusing internal references), § III.B.1.b (discussing examples of Alcon's alternative factual theories); *see Peugeot*, 2020 WL 8365240, at *3 (describing Alcon's alternative theories as "confusing" and noting that they left "[t]he Court and Defendants…to speculate how these pairings fit together and how Alcon's alternative theories of liability fit its nine causes of action"); *Hatch*, 758 F.2d at 415 (affirming Rule 8 dismissal of complaint that was "confusing and conclusory"); *Nevijel*, 651 F.2d at 674 (affirming Rule 8 dismissal with prejudice of "verbose, confusing and conclusory" complaint).

**B.    Alcon's Incoherent Theories Prevent Defendants from Understanding and Meaningfully Responding to Alcon's Third Set of Allegations**

Alcon's legal theories are incoherent in part because they are full of argument, speeches, and attempts to negate possible defenses.  As another court in this Circuit has advised while dismissing a complaint for failure to comply with Rule 8, "Plaintiff must eliminate from plaintiff's pleading all preambles, introductions, argument, speeches, explanations, stories, griping, vouching, evidence, attempts to negate possible defenses, summaries, and the like." *Clayburn v. Schirmer*, No. CIV S-06-2182 ALA P, 2008 WL 564958, at *3 (E.D. Cal. Feb. 28, 2008) (citing *McHenry*, 84 F.3d at 1180); *see also id.* at *4 ("The court (and any defendant) should be able to read and understand Plaintiff's pleading within minutes." (citing *McHenry*, 84 F.3d

at 1177)).  The SAC cannot be read in minutes.  The level of detail, alternative theories, and rambling and circuitous drafting make it so confusing that it is impossible for Defendants to fully understand and meaningfully respond to Alcon's third attempt at pleading this case.

### 1.    Alcon's Copyright Infringement Theories Are Incomprehensible and Should Be Dismissed

In an attempt to preempt possible defenses or dismissal arguments to its copyright claims, Alcon refers to its previously filed brief in opposition to Musk and Tesla's Motion to Dismiss the FAC and describes numerous legal theories it purportedly satisfies.  This is improper at least because those are legal arguments and not allegations that Defendants can admit or deny in a responsive pleading.  *See Morris v. California State Prison, Los Angeles Cnty.*, No. 24-cv-04036-RGK(E), 2024 WL 3362852, at *3 (C.D. Cal. July 9, 2024) (dismissing under Rule 8 complaint that "improperly contain[ed] numerous case citations and legal arguments"); *see also id.* at *1 (collecting cases noting that it is not appropriate for a complaint to contain legal argument, case citations, or refutation of anticipated arguments).  In addition, anticipating that its claims do not survive under existing copyright law, Alcon advances what it terms "novel" legal theories.  When the claims for relief in the SAC are read with Alcon's new argumentative allegations, Alcon's legal theories are incoherent, and the scope of its claims is impossible to decipher.

### a)    Alcon's Direct Copyright Infringement Claim Is Based on "Novel" Theories that Are Not Law

One example is Alcon's theories of direct infringement, a key element of which is substantial similarity.  The SAC states:

> Alcon alleges and contends that where substantial similarity analysis is required, Defendants' acts of infringement above as to the character K are subject to the "story being told," distinct delineation, and/or bodily appropriation tests applicable to characters, and that the character K satisfies them. Alcon also

8

stands by and advances its derivative work reference leveraging theory articulated in Alcon's Memorandum of Points and Authorities in Opposition to Musk and Tesla's Motion to Dismiss Plaintiff's First Amended Complaint. Alcon believes that theory is within the parameters of existing copyright case law, but to the extent it is not, Alcon advances it as a novel theory. Alcon also advances the theory that Musk and Tesla's intentions to infringe must be taken into account in favor of substantial similarity findings and analysis. Alcon also believes that is within the parameters of existing case law, but to the extent it is not, Alcon advances it as a novel theory.

SAC ¶ 194.  This paragraph is confusing and inappropriate.  First, Alcon's "novel" "derivative work reference leveraging theory," which does not exist in copyright law, is asserted in a legal memo outside of the four corners of the SAC; Plaintiff now "stands by and advances" this theory despite not alleging the full scope of that theory in the SAC.  Second, Alcon's "novel theory" that Musk and Tesla's intentions should be considered in analyzing substantial similarity is nonsensical.  The Ninth Circuit's test for substantial similarity is based on the parties' works, not the defendant's intent. *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020).  It is also well established that copyright infringement is a strict liability claim.  *Dielsi v. Falk*, 916 F. Supp. 985, 992 (C.D. Cal. 1996).  Defendants struggle to see how Alcon's theorizing fits into its claims, constitutes an allegation of copyright infringement, or even how Defendants are to respond to it.  Like the *Peugeot* Defendants, Tesla and Musk are "left to speculate" about these confusing theories.  2020 WL 8365240, at *3.  Further, as this Court stated with respect to Alcon's argument that a "different statutory treatment" applies to motion pictures than to photographs, Alcon's positions on what the law *should* be are not appropriate.  Tentative Ruling at 7 n.10 ("[T]he Court is not entirely sure of the purpose of this thread in the FAC; if it is part of an effort to persuade that motion picture still images *should be* treated differently under the Copyright Act, the best audience for that contention is located in Washington,

1  D.C., not this courtroom.").

2   **b)   Alcon's Alternative and Inconsistent Factual Theories**
3        **for Direct and Contributory Copyright Infringement**
        **Are Incomprehensible**
4

5   Alcon has already been subject to a Rule 8(a) dismissal in a case concerning
6   BR2049 that alleged "factual alternatives…spread across dozens of paragraphs with
7   no organization or structure to connect them"—just like those here.  *Peugeot*, 2020
8   WL 8365240, at *3.  In *Peugeot*, the court noted that "[a]t certain points, Alcon
9   presents four alternative sets of facts…, at other times only two," which left the court
10  and defendants "to speculate how these pairings fit together and how Alcon's
11  alternative theories of liability fit its nine causes of action."  *Id.*  The same is true here.

12  When pleading "facts and theories of liability in the alternative, the pleading
13  must set out these alternatives in clear and concise terms."  *Id.*  Also, there must be
14  an element of reasonableness to this pleading style.  Even if Alcon's alternatives were
15  pled in a less confusing way, there are so many iterations of them and contradictions
16  within them that one questions whether Alcon has met its Rule 11 obligations.

17  For example, Alcon presents two alternative theories for its reproduction theory
18  of direct copyright infringement, each of which also incorporates multiple alternative
19  facts, all alleged on information and belief.  To illustrate:

20  1.    Alcon's "Exhibit C AI Generation Process Alternative Theory 1"
21  contains the following alternative facts:

22      • "Exhibit C seems likely to have been generated by" someone acting
23        under Musk **and/or** Tesla's control **and/or** at their direction, such as "an
24        employee **or** agent of Tesla (possibly by Adametz **or** Lili)," **or** by
25        "another Musk-owned **or** -controlled company," "**or** even possibly by
26        Musk himself";

27

28

- that *unknown* person copied into an AI image generator "protectable elements of BR2049 *such as* still images *like those* in Exhibits A and B," <u>or</u> similar images from BR2049's Las Vegas sequence, "<u>or</u> *even possibly* the full BR2049 motion picture work (<u>or</u> qualitatively significant portions thereof) in audiovisual form"; and

- the *unknown* person asked the AI engine to make "an image from the K surveying ruined Las Vegas sequence of 'Blade Runner 2049,'" <u>or</u> "some closely equivalent input direction."  SAC ¶¶ 101(a)-(b), 191(a) (emphasis added).

2.    Alcon's "Exhibit C AI Generation Process Alternative Theory 2" alleges the "same facts" as the first theory (including the alternatives) but further alleges, on information and belief, that:

- *unknown* individuals involved in the image generation process selected <u>or</u> "otherwise obtain[ed]" a licensed image as a background;

- those individuals then directed an AI image generator to add "Elon Musk in a duster in the foreground," <u>or</u> "Elon Musk in a duster looking into the city," <u>or</u> similar direction;

- the AI Image generator "still relied on literal copies of BR2049" <u>or</u> "qualitatively significant portions of BR2049" to generate the image, <u>or</u> "protectable elements of BR2049 *such as* still images *like* those in Exhibits A and B, <u>or</u> a partial videorecording of BR2049"; and

- the BR2049 elements in the image generator were "placed into the image generator by Musk <u>and/or</u> Tesla (<u>or</u> persons acting under their control <u>and/or</u> direction)."  *Id.* ¶¶ 101(c), 191(b) (emphasis added).

The versions of these theories that rely on use of "protectable elements of BR2049" are especially confusing since Alcon's only explanation of what those elements are is in a "Non-Exhaustive List" provided in Paragraph 13 of Appendix 2 to the SAC.  Even

putting aside the indefinite number of allegedly protected elements, the very first element—"Iconic Still Images which Evoke Qualitatively Important Scenes or Sequences of BR2049"—is so vague and described in such a circular and subjective manner that Defendants cannot guess what they might include, other than the images in Exhibits A and B.  *See Epsteen v. New York Fin., Inc.*, No. 10-cv-06553-ODW-JEMx, 2011 WL 13217369, at *2 (C.D. Cal. Apr. 18, 2011) (dismissing with prejudice complaint that violated Rule 8 because its "factual allegations [were] vague and ambiguous, and to the extent any allegations [were] material, those allegations [were] buried beneath hundreds of pages of irrelevancies," and "granting Plaintiff another opportunity to amend [would be] an act of futility").  But Alcon does not limit this element to those images.  SAC ¶ 191(a)-(b) (alleging copying of "protectable elements of BR2049 *such as* still images *like those* in Exhibits A and B" (emphasis added)).  It defines these so-called iconic images as "[s]till images from BR2049 which are iconic or sufficiently recognizable to by themselves be identifiable as a still image from BR2049 versus any other motion picture, and especially such still images which evoke one or more of the other protected elements below."  Appx. 2 ¶ 13(a).  Alcon does not even state which scenes are considered "qualitatively important scenes or sequences," besides providing the Las Vegas Sequence as an "example."  *Id.*  Without knowing what Alcon alleges is protectable, or what Alcon alleges Defendants copied and/or infringed, Defendants cannot provide a complete response to the direct copyright infringement claim.  *See Peugeot*, 2020 WL 8365240, at *3.

As another example, Alcon's contributory infringement claim is based on a different set of alternative theories, and the entire claim is contradicted by the allegation that "Musk and Tesla potentially underst[ood] they had U.S. copyright permission to use BR2049 elements, or effective immunity for BR2049 infringement claims under U.S. law," SAC ¶ 231 (citing *id.* ¶¶ 92-95)—i.e., they did not believe there was infringement and therefore did not have the requisite knowledge of the

purported infringing activity.  At least as to Musk and Tesla, the remainder of Alcon's Third Claim for Relief is comprised of conclusory allegations and a vague assertion of liability "[u]nder at least one of Alcon's alternative theories" (*id.* ¶ 228) with no explanation as to which one.  It is thus unclear how Alcon alleges Tesla and Musk are liable for contributory infringement, even after considering its lengthy narratives and speculations in "WBDI Action on Alcon Event Directions to WBDI Alternative Theory 1" and "Alternative Theory 2," which are set forth elsewhere in the SAC.  The Court and Defendants are left "to speculate how these pairings fit together" and fit Alcon's claim.  *Peugeot*, 2020 WL 8365240, at *3.  Adding to the confusion is Alcon's contradictory allegation of no knowledge of infringement, which defeats the contributory claim to the extent that such a claim is actually pled.

Like the direct copying theories above, these contributory infringement theories are anything but "simple, concise, and direct."  Fed. R. Civ. P. 8(d).  Tesla and Musk do not know which of these speculative, alternative theories form the basis for Alcon's contributory infringement claim and should not be required to address every possible permutation in their response to the SAC.

> c) **Alcon's Vicarious Copyright Infringement Claim Is Internally Inconsistent and Inappropriately Premised on the Law Being "Less Than Entirely Clear"**

Alcon's claim for vicarious infringement is similarly confusing and inappropriate.  Alcon alleges, "[i]f Defendants WBDI, Tesla and Musk are not each liable as direct infringers of BR2049, they are secondarily liable for the [direct infringement by]…other infringers presently unknown."  SAC ¶ 207.  With respect to Musk and Tesla, Alcon alleges:

> [I]t appears highly likely that they are the masters or employers of the direct infringers, or otherwise had the right and ability to supervise and control the Direct Infringers, and that the Direct Infringers infringed in the course and scope of their work for Musk and Tesla….It thus appears highly likely that Musk and Tesla

> would have liability under traditional respondeat superior doctrine, and Alcon pleads that they do. The case law on vicarious copyright infringement appears less than entirely clear on whether such traditional theory respondeat superior vicarious liability for copyright infringement is to be pled as a subset of direct infringement, or under a vicarious infringement claim. Alcon believes that its direct infringement allegations against Musk and Tesla cover the traditional respondeat superior theory, but in the event that theory is more properly placed in a vicarious infringement claim, Alcon pleads it here. Alcon does not here plead as against Musk and Tesla the "direct financial benefit" and "right and ability to supervise" vicarious infringement theory crafted for cases not within traditional respondeat superior liability.

*Id.* ¶ 208. This is confusing for multiple reasons. First, Alcon's allegation that Tesla and Musk "had the right and ability to supervise and control the Direct Infringers" is entirely inconsistent with its statement later in this same paragraph that it does ***not*** plead a "right and ability to supervise." *Id.* The latter statement is a disclaimer of an element of vicarious infringement. *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1071 (9th Cir. 2013) ("Vicarious liability attaches if the [defendant] had both the (1) right and ability to supervise the infringing activity and (2) a direct financial interest in the activity." (quotations omitted)).[3] Second, rather than amend with factual allegations, Alcon attempts to circumvent the deficiencies identified by this Court by asserting the law is "less than entirely clear" and essentially claiming that it pleads a respondeat superior theory under whichever claim (direct or vicarious) is correct. SAC ¶ 208; Tentative Ruling at 23 (stating that Plaintiff's allegations of a direct financial benefit are "simply too conclusory" and that "Plaintiff has not explained how it could possibly amend around" the Court's observations). But it is not Tesla and Musk's or the Court's role to figure this out. *See Hann v. Int'l Bhd. of*

---

[3] Alcon also states that it does not plead a "direct financial benefit" as against Musk and Tesla. SAC ¶ 208.

*Magicians IBM*, No. EDCV 22-866-JGB-SHKx, 2023 WL 5504963, at *6 (C.D. Cal. May 19, 2023) (dismissing with prejudice complaint that violated Rule 8 because it was "impossible for Defendants to actually understand what laws they are alleged to have violated," "depriv[ing] [them] of fair notice of the claims against them").  In any event, "traditional theory respondeat superior vicarious liability for copyright infringement" based on an employee-employer relationship does not exist.[4]  Vicarious copyright infringement is not tied to the employer/employee relationship; it is an "'outgrowth' of respondeat superior" that "extends beyond an employer/employee relationship."  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001).  The doctrine of vicarious copyright liability was specifically fashioned "for enforcing copyrights against a defendant whose economic interests were intertwined with the direct infringer's but who did ***not*** actually employ the direct infringer." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996) (emphasis added).

Tesla and Musk cannot reasonably respond to or understand Alcon's specious claim for vicarious copyright infringement.  They are in the dark about whether a vicarious copyright claim is truly pled against them.  *See, e.g.*, *Hann*, 2023 WL 5504963, at *6 (dismissing with prejudice under Rule 8 complaint that grouped "inconsistent legal theories within a single cause of action," "making it impossible for Defendants to actually understand" the allegations).

---

[4]  Though both termed "vicarious," the liability an employer incurs when "an employee, acting within the scope of employment, tortiously injures a third party" is legally distinct from the liability a copyright defendant incurs when it has the right and ability to supervise a third party's direct infringement and directly benefits financially therefrom.  Restatement (Third) of Torts: Miscellaneous Provisions § 3 TD No. 2 (2023); *compare id.*, *with* 3 Nimmer on Copyright § 12.04[A][2] ("[V]icarious liability exceeds the traditional scope of the master-servant theory…[and attaches] as long as the two elements of vicarious liability are present— the defendant had the right and ability to supervise the infringing activities and also had a direct financial interest in them.").

1

2          **2.    Alcon's Lanham Act Theories Are Incomprehensible and
3                  Should Be Dismissed**

4          Alcon's Lanham Act claim, while now narrowed to just Tesla and Musk, also

5    contains incoherent legal theories.

6                  **a)    Alcon's Theory Under the "Explicitly Misleading"
7          Prong of the *Rogers* Test Is Unclear**

8          Presumably in response to the Court's tentative ruling that Alcon "cannot

9    succeed" under the *Rogers v. Grimaldi* test[5] that applies to Lanham Act claims

10   involving expressive works (Tentative Ruling at 31), Alcon alleges:

11              Alcon also alleges that Tesla's and Musk's conduct includes
12              explicitly misleading statements, expressions or conduct, within
              the meaning of *Gordon v. Drape Creative, Inc.*, 909 F.3d 257 (9th
13              Cir. 2018), if the test of *Rogers v. Grimaldi,* 875 F.2d 994 (2d Cir.
14              1989) were applied to the Lanham Act claim here, which Alcon
              contends would be improper. (SAC, ¶ 124.) Alcon advances and
15              maintains all of the arguments against application of Rogers v.
16              Grimaldi that Alcon's counsel set forth on April 7, 2025 at the oral
17              argument opposing Defendants' Motions to Dismiss Plaintiff's
              First Amended Complaint.

18

19   SAC ¶ 251. Here too, Alcon relies on arguments outside of the SAC to plead this

20   claim, preventing Defendants from admitting or denying them in a responsive

21   pleading.  The improper use of "numerous case citations and legal arguments" is yet

22   another reason to dismiss the SAC under Rule 8.  *Morris*, 2024 WL 3362852, at *1,

23   3 (collecting cases).  And here too, the factual basis for this allegation is confounding.

24   First, in *Gordon*, the Ninth Circuit applied the *Rogers* test and merely held that there

25   ─────────────────────

26   [5] Under the *Rogers* test, the allegedly infringing use must be "either (1) not artistically
     relevant to the underlying working or (2) explicitly mislead[] consumers as to the
27   source or content of the work."  *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d
     443, 462 (9th Cir. 2020).
28

was a fact issue regarding whether the use of the "Honey Badger" catchphrases was explicitly misleading, remanding the issue to the district court.  There was no decision on whether the use was in fact explicitly misleading and therefore infringing.  *Gordon*, 909 F.3d at 271.  Second, this Court already stated that its review of the accused Tesla presentation demonstrates that it "clearly did not explicitly mislead any consumers as to source or content."  Tentative Ruling at 32.  In fact, Alcon's counsel admitted that even if he pled a theory based on *Gordon*, he didn't "think that…the Court would find it persuasive."  2025-04-07 Hr'g Tr. at 15:3-8, 16:8-11.  Given this, and the fact that Alcon has never argued that either prong of the *Rogers* test weighed in Alcon's favor (instead arguing that the test did not apply), Tesla and Musk are left clueless as to what Alcon's theory of explicitly misleading conduct can be.  *See Peugeot*, 2020 WL 8365240, at *3.

### b)    Alcon's Theory of "Commercial Speech" Is Unclear

Relatedly, Alcon's assertion that Tesla and Musk's use of the alleged BR2049 marks was commercial speech in Paragraph 254 continues to be incoherent:

> All of the foregoing false endorsement uses of Alcon's BR2049 marks and goodwill were commercial speech, and not subject to any defense predicated on the nature of the use being a non-commercial use or non-commercial speech. Specifically, some or all of Tesla's and Musk's speech was either (a) core commercial speech in that it proposes a commercial transaction, or in the alternative, (b) was nonetheless commercial for purposes of false endorsement law and Plaintiff's claims herein, in that the communications were advertisements, made reference to a specific product, and the speaker had an economic motivation for the communication, all within the meaning of *Bolger v. Youngs Drugs Products Corp.*, 463 U.S. 60 (1983) and its progeny.

SAC ¶ 254. Defendants are left wondering if Alcon is truly alleging commercial speech, as Musk's presentation, in Alcon's words, was "***either***" "commercial speech" or "nonetheless commercial" for a particular purpose.  This is particularly confusing

since the Court already noted that Alcon did not explain what role *Bolger* has, if any, in the application of the *Rogers* test to a proposed Lanham Act claim.  Tentative Ruling at 32 at n.25; *see Hann*, 2023 WL 5504963, at *6 ("inconsistent legal theories within a single cause of action" made it "impossible for Defendants to actually understand" the allegations).

### c)    Alcon's Allegations Regarding Its Rights in the "BLADE RUNNER" Word Mark Are Inconsistent

Alcon's Lanham Act claim also includes inconsistent allegations that cannot be credibly read to be pled in the alternative, given that the facts are uniquely within Alcon's knowledge.  Under its Fourth Claim for Relief, Alcon now alleges that it owns the BLADE RUNNER mark.  SAC ¶ 245 (alleging that it "owns the marks" identified in ¶¶ 137-154, including the "'BLADE RUNNER' Word Mark" (*id.* ¶ 137)).  But in Paragraphs 26 and 128—which are incorporated by reference—Alcon alleges that it owns only *non-exclusive* licensed rights to BLADE RUNNER.[6]  SAC ¶¶ 26, 128.  Tesla and Musk may advance different arguments in responding to the claim alleging infringement of BLADE RUNNER depending on which of these two inconsistent allegations is to be believed.  It would be a waste of resources to require Tesla and Musk to address every possible unsupported theory when Alcon includes inconsistent allegations within a single claim—particularly on a threshold, basic fact such as ownership of the allegedly infringed mark.  *See Hann*, 2023 WL 5504963, at *6 ("inconsistent legal theories within a single cause of action" deprived defendants of fair notice of the claims against them).

---

[6] Alcon alleges that it shares those non-exclusive licensed rights with at least Warner Bros. Pictures.  SAC ¶¶ 26, 128.

MPA ISO TESLA AND MUSK'S MOTION TO DISMISS SAC
Case No. 2:24-cv-09033-GW-RAO

### d) The Scope of Alcon's Alleged Trade Dress Rights Is Unclear

Finally, Alcon continues to plead infringement of trade dress rights of unknown scope.  In the SAC, Alcon added Exhibit E, described as "***sample*** Alcon BR2049 trade dress images."  SAC ¶ 112 (emphasis added).  This reinforces the open-ended nature of Alcon's trade dress allegations.  *See also id.* ¶ 248 (referring to a "protectable combination" alleged in ¶ 148 that is not at ¶ 148),[7] ¶ 150 (describing protectable rights as "mark, brand ***or*** trade dress" and claiming amorphous rights in "elements which evoke or tend to evoke BR2049" and "extend to" certain imagery (emphasis added)).  The Court has already advised Alcon that "[e]lements of alleged trade dress must be clearly listed and described" and noted that Alcon failed to explain "how the elements of its purported trade dress could be listed with any definiteness in connection with a continuously-moving multi-hour product."  Tentative Ruling at 33.  Tesla and Musk cannot discern what trade dress rights Alcon allegedly owns and under what legal theory those rights are protectable under the Lanham Act.  They are "left to speculate" about Alcon's theories, as in *Peugeot*.  2020 WL 8365240, at *3.

## C. The SAC Unfairly Burdens the Court and Prejudices Defendants

Alcon has placed a great burden on Defendants and the Court with its lengthy, incoherent SAC.  Defendants and courts faced with such "[p]rolix, confusing complaints" must "prepare outlines to determine who is being sued for what."

---

[7] The internal references in Paragraph 248 fail to factually support Alcon's conclusory allegations and thus further obscure the bases for Alcon's Lanham Act claim.  Alcon directs the reader to refer back to Paragraphs 102-124, which, per Alcon, describe the "conduct and statements made by Tesla and Musk."  SAC ¶¶ 247, 248.  But most of those paragraphs discuss irrelevant details (e.g., camera angles, the 1982 Blade Runner film), opine on Musk's subjective intentions, and discuss the "art of advertising."  Alcon also directs the reader to refer back to 11 other paragraphs that purportedly describe Alcon's protectable Lanham Act interests (¶¶ 137, 138, and 140-148), yet the cited paragraphs allege copyright-type elements, and discuss and/or show marketing images, fan art, and book covers.

19

*McHenry*, 84 F.3d at 1179.  This task is particularly burdensome here because Defendants and the Court must muddle through the SAC's alternative theories and mazelike allegations, which include inaccurate internal references that lead the reader to even more confusion.  Plus, employing a "shotgun" pleading style by incorporating by reference into each of its claims for relief "each and every allegation set forth in all of the foregoing paragraphs, and in each paragraph of this SAC hereafter" (SAC ¶¶ 187, 205, 224, 243), Alcon "forces Defendants to effectively answer" all 257 paragraphs of the SAC for each of the alleged claims.  *Epsteen*, 2011 WL 13217369, at \*2; *see also Sollberger v. Wachovia Sec., LLC*, No. 09-cv-00766-AGA-Nx, 2010 WL 2674456, at \*4-5 (C.D. Cal. June 30, 2010) ("shotgun pleadings" violate Rule 8 and warrant dismissal under Rule 41(b)); *Miller*, 2014 WL 12614470, at \*18 ("shotgun and quasi-shotgun pleadings are unfair to all involved…").  On top of that, Alcon repeatedly acknowledges that its allegations or theories in every one of its claims for relief may be "inconsistent with other allegations or theories pled in this SAC."  SAC ¶¶ 188, 206, 225, 244.  Its "catchall" attempt to remedy this issue is to state that any inconsistent allegations or theories are "pled in the alternative."  *Id.* This is unfair, as the result is that Defendants do not know what Alcon's true theories are.  And, as discussed above, it pleads its alternative facts and theories in such a convoluted way that Defendants cannot fairly respond to them.

"Defendants are…put at risk that their outline differs from the judge's, that plaintiffs will surprise them with something new at trial which they reasonably did not understand to be in the case at all, and that res judicata effects of settlement or judgment will be different from what they reasonably expected." *McHenry*, 84 F.3d at 1180.  This is exactly the burden and prejudice Defendants will suffer if required to respond to the SAC, not to mention its appendices which should not include their owns sets of allegations but do.  Further adding to the burden, if Defendants are

required to answer the SAC, Rule 11 will require that they investigate each of Alcon's factual contentions before denying them.  *See* Fed. R. Civ. P. 11(b)(4).

## IV.    CONCLUSION

The SAC deprives Defendants of the fair notice that Rule 8 requires.  As the Ninth Circuit has noted, "the rights of the defendants to be free from costly and harassing litigation must be considered" when deciding whether to dismiss under Rule 8.  *McHenry*, 84 F.3d at 1180 (quoting *Von Poppenheim v. Portland Boxing & Wrestling Comm'n*, 442 F.2d 1047, 1054 (9th Cir. 1971)).  For all of the foregoing reasons, the Court should dismiss the SAC in its entirety with prejudice.


Dated:  July 30, 2025                    FISH & RICHARDSON P.C.


                                  By:  */s/ Kristen McCallion*
                                       Christopher S. Marchese (SBN 170239)
                                       marchese@fr.com
                                       FISH & RICHARDSON P.C.
                                       4695 MacArthur Court, Suite 1100
                                       Newport Beach, CA 92660
                                       Tel: (213) 533-4240
                                       Fax: (858) 678-5099

                                       John S. Goetz (*pro hac vice*)
                                       goetz@fr.com
                                       Kristen McCallion (*pro hac vice*)
                                       mccallion@fr.com
                                       Vivian Cheng (*pro hac vice*)
                                       cheng@fr.com
                                       FISH & RICHARDSON P.C.
                                       7 Times Square, 20th Floor
                                       New York, NY 10036
                                       Tel: (212) 765-5070
                                       Fax: (212) 258-2291

                                       Matthew A. Colvin (*pro hac vice*)
                                       colvin@fr.com
                                       FISH & RICHARDSON P.C.
                                       1717 Main Street, Suite 5000
                                       Dallas, TX 75201

Tel: (214) 747-5070
Fax: (214) 747-2091

Kayleigh E. McGlynn (*pro hac vice*)
mcglynn@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
Tel: (617) 542-5070
Fax: (617) 542-8906

A. Louis Dorny (CA 212054)
ldorny@tesla.com
Terry W. Ahearn (CA 216543)
tahearn@tesla.com
Krista M. Carter (CA 225229)
kricarter@tesla.com
TESLA, INC.
3000 Hanover St.
Palo Alto, CA 94304
Tel: (510) 298-8516

Attorneys for Defendants
Tesla, Inc. and Elon Musk

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants Tesla, Inc. and Elon Musk, certifies that this brief contains 6,667 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Kristen McCallion*
Kristen McCallion