UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-9033-GW-RAOx | Date | September 9, 2025 |
|---|---|---|---|
| Title | *Alcon Entertainment, LLC v. Tesla, Inc., et al.,* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULINGS ON DEFENDANTS TESLA, INC. AND ELON MUSK'S MOTION TO DISMISS SECOND AMENDED COMPLAINT [73]; and DEFENDANT WARNER BROS. DISCOVERY, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT [74]

Attached hereto is the Court's Tentative Rulings on Defendants' Motions [73, 74], set for hearing on September 11, 2025 at 8:30 a.m.

:

Initials of Preparer   JG

<u>*Alcon Entm't, LLC v. Tesla, Inc., et al.*</u>, Case No. 2:24-cv-9033-GW-(RAOx)
Tentative Rulings on: 1) Defendants Tesla, Inc. and Elon Musk's Motion to Dismiss []
Second Amended Complaint; and 2) Defendant Warner Bros. Discovery, Inc.'s Motion to
Dismiss Second Amended Complaint

On April 4, 2025, the Court issued a Tentative Ruling on motions filed in this case seeking dismissal of the First Amended Complaint ("FAC") filed by plaintiff Alcon Entertainment, LLC ("Plaintiff"). *See* Docket No. 61. In that Ruling, the Court – tentatively – indicated that, for reasons explained thoroughly therein, it would grant the motion of defendant Warner Bros. Discovery, Inc. ("Warner") to dismiss Plaintiff's claims for: 1) direct copyright infringement, 2) vicarious copyright infringement, and 3) false affiliation and/or false endorsement under the Lanham Act. *See id.* at pg. 36 of 36. As to the motion filed by defendants Tesla, Inc. ("Tesla") and Elon Musk ("Musk"), the Court – tentatively – indicated that it would grant their motion to dismiss Plaintiff's vicarious copyright infringement and Lanham Act claims. *See id.* The Court further – tentatively – indicated that the dismissal would likely not be with leave to amend, though would only likely be with prejudice as to Plaintiff's Lanham Act claim. *See id.* The Court also explained that it found the defendants' "Rule 8 criticisms very persuasive,"[1] though it did not then see a need to "issu[e] a Rule 8-based decision." *Id.* at n.28. At the same time, it warned Plaintiff that, "if there was ever to be any future pleading in this case, Plaintiff would have to take [the defendants' Rule 8-based criticisms] *very* seriously." *Id.* Ultimately, after hearing oral argument, the Court changed its approach slightly, allowing leave to amend where it had previously indicated no such leave was in the cards. *See* Docket No. 62.

On June 16, 2025, Plaintiff filed a Second Amended Complaint ("SAC"). *See* Docket No. 70. Whereas the FAC had been 64 pages long, containing 188 paragraphs of allegations and attaching three exhibits, *see* Docket No. 37, the SAC – notwithstanding the Court's Rule 8 warnings in its Tentative Ruling on the motions to dismiss the FAC – runs 96 pages (not including appendices and exhibits), with 257 substantive paragraphs of allegations, two appendices and 11 attached exhibits. *See id.*

---

[1] Rule 8 requires, among other things, that a pleading attempting to state a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

The three defendants reacted to the filing of the SAC (at least so far as the Court's docket is reflective of any reaction) with two new motions to dismiss, one on behalf of Warner and the other on behalf of Tesla and Musk. This time, those motions are based not on Rule 12(b)(6), but squarely on Rule 8. *See* Docket No. 73, at 1:8-9; Docket No. 74, at 1:10-11. However, Plaintiff concedes that a district court has "the power to dismiss claims *sua sponte* under Rule 12(b)(6) for failure to state a claim for relief." Docket No. 75, at 14:19-21.

Along with its Opposition to the current motions, Plaintiff filed what it asserts is a redline composition comparing the changes made between the FAC and SAC. *See* Docket No. 75-4; *see also* Declaration of Edward M. Anderson in Support of Plaintiff's Consolidated Memorandum of Points and Authorities in Opposition to (1) Defendants Tesla, Inc.'s and Elon Musk's Motion to Dismiss Second Amended Complaint; and (2) Defendant Warner Bros. Discovery, Inc.[']s Motion to Dismiss Second Amended Complaint, Docket No. 75-2, ¶ 48. From that document, the Court can examine – before getting to the issue of Plaintiff's Rule 8 compliance – what, specifically, has been added to the SAC[2] that would possibly cure the flaws in the FAC the Court already noticed and addressed when it issued its Tentative Ruling on the Rule 12(b)(6)-based arguments directed at the FAC. As discussed briefly below, the changes have not cured defects in those claims.[3]

First, Plaintiff's efforts presumably to come within *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996) for purposes of its vicarious infringement claim[4] by describing Musk as "a Known High Risk to Disregard Intellectual Property Rights and Established Licensing Norms," SAC at 9:12-13 & ¶¶ 27-40, including specifically with respect to BR2049 and the original "Blade Runner" film, do not make

---

[2] Despite the addition of over 30 pages to the SAC (as compared to the FAC), the redline demonstrates that Plaintiff also simultaneously *removed dozens* of paragraphs that had been present in the FAC – particularly in the FAC's opening sections – when drafting the SAC.

[3] Aside from its use of the supplied redline-comparison between the FAC and SAC, in making its Rule 12(b)(6) assessment, the Court does not consider the 45-page, 80-paragraph, declaration filed by Plaintiff's counsel in connection with its Opposition brief. *See* Docket No. 75-2.

[4] *See Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1071 (9th Cir. 2013) (setting forth elements of vicarious copyright infringement claim).

this situation sufficiently-analogous to what the situation was in *Fonovisa*. There are no allegations that any of Musk's prior comments and/or behavior in this regard had any connection whatsoever with Warner, whereas in *Fonovisa* third-party vendors "routinely" sold the subject infringing material at the defendant's swap meet, and there was no dispute that the defendant was "aware that vendors in their swap meet were selling counterfeit recordings in violation of [the plaintiff's] trademarks and copyrights," with law enforcement having already raided the swap meet along with a seizure of more than 38,000 counterfeit recordings, and the Sheriff continuing to communicate with the defendant the following year concerning ongoing sale of infringing materials at the swap meet. *Fonovisa*, 76 F.3d at 260-61. Indeed, some of Musk's words/actions Plaintiff has highlighted occurred *after* the event in question here, *see* SAC ¶¶ 27-28, 37, so there is no possibility they could have given Warner sufficient notice to bring this case within the *Fonovisa* rationale.

      Allowing Musk and Tesla to "pick and choose" content from a library, *see* SAC ¶ 51, does not amount to Warner having a right to stop, limit or supervise Musk's/Tesla's eventual (alleged) infringing activity. Nor does it amount to *Warner's* volitional conduct or selection of material for purposes of a direct infringement theory against Warner. In addition, while certainly a creative analogy, Plaintiff's assertion that Warner "did the equivalent of putting the Exhibit A image into Tesla's shopping cart, and then moving Tesla into the checkout line," *id.* ¶¶ 58, 71, does not appear to actually be backed up by factual allegations. What *factually* happened is that Warner – either itself or through its subsidiary – attempted to help Tesla get licensing rights to BR2049, but failed to successfully do so. *See id.* ¶¶ 62-63, 71-80, 88, 91 & n.15.

      Similarly, Plaintiff's "request[] and direct[ion] that [Warner] . . . actively police against any Musk and Tesla use of BR2049 or any Alcon property in the Event," *id.* ¶ 88, did not give Warner the right or ability for Warner to do so, even if it is true that Warner or Warner's representative responded in a way that Plaintiff "understood" to mean that Warner "would honor and execute on" that request and direction, *id.* ¶ 89.[5] Warner either

---

[5] None of the "sources" Plaintiff identifies for its "information and belief" allegations about Warner's right and ability to "police" Tesla's/Musk's alleged intellectual property violations, *see* SAC ¶¶ 157(a)-157(g), actually have anything to say about *Warner's* abilities/power here *vis a vis Plaintiff's* content. There is no

intentionally or negligently failing/refusing to comply with Plaintiff's request and/or Warner's alleged promise to Plaintiff, *see id.* ¶¶ 92, 96-98, is effectively irrelevant (at least as to the claims dismissed herein) under the applicable principles. Plaintiff also has not explained how Warner's alleged own contractual ability/right to "suspend or cancel" the event *after an infringement has occurred*, *see id.* ¶¶ 169-173, amounts to an ability to stop, limit or supervise the already-occurred infringement.

Second, also as to the vicarious copyright infringement claim, there is also still no sufficient allegation of a direct financial benefit running to Warner from Musk's/Tesla's alleged acts of copyright infringement. *See, e.g.*, *id.* ¶ 48. There is no allegation that Warner received any financial benefit from the alleged infringing activity itself. *See Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1155 (9th Cir. 2012). As to Warner, Plaintiff's "direct financial interest" allegations remain conclusory and deficient. *See* SAC ¶¶ 210-212. Perhaps Plaintiff can convince the Ninth Circuit that the element should be understood differently (or that the situation here is sufficiently-analogous to *Fonovisa*), but it will not be this Court that agrees with those assertions.

Third, Plaintiff still does not appear to have resolved the problem with the "direct financial interest" requirement for vicarious infringement as to Tesla and Musk, in particular the case law that states that, to the extent an alleged infringement is merely an "added benefit," this required element is not present/satisfied. *See id.* ¶ 208; *see also Erickson Productions, Inc. v. Kast*, 921 F.3d 822, 829 (9th Cir. 2019). Indeed, the SAC admits that Plaintiff does not attempt to plead such an element. *See* SAC ¶ 208 ("Alcon does not here plead as against Musk and Tesla the 'direct financial benefit' and 'right and

---

expressed basis to believe that any "production and direction team," *id.* ¶ 158(a), would have consisted of *Warner* employees or agents. That Warner may have licensed certain of *its* properties to Tesla, *see id.* ¶¶ 158(c)(i)-158(c)(iv), does not mean that its failure to stop Tesla and/or Musk from inappropriately using *Plaintiff's* properties was in violation of any Warner right/responsibility to control. As a result, Plaintiff's "information and belief" allegations relating to this topic are little more than educated guesswork. *See id.* ¶¶ 160-185; *see also Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1161 (9th Cir. 2022) ("[A] plaintiff may plead facts on information and belief 'where the belief is based on *factual information* that makes the inference of culpability plausible.'") (emphasis added) (quoting *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017)).

To be clear here, Plaintiff has obviously attempted to have "information and belief" allegations carry much of its water in getting across the pleading line in this case. Muddying the waters at this stage by such practice is unnecessary, and certainly unhelpful. If Plaintiff discovers a contract giving Warner such a right/ability (consistent with what Plaintiff asserts is standard custom and practice in the industry, or otherwise), it can move for leave to amend under Federal Rule of Civil Procedure 16. Speculative "information and belief" allegations on this point at this juncture are unnecessary, in that light.

4

ability to supervise' vicarious infringement theory crafted for cases not within traditional respondeat superior liability."). A *respondeat superior* theory does not appear to have any connection to that requirement, missing here. This should not, however, be taken as a ruling that Tesla/Musk cannot be held liable for copyright infringement by way of *respondeat superior*. See *Fonovisa*, 76 F.3d at 262 (explaining that "the normal agency rule of respondeat superior imposes liability on an employer for copyright infringement by an employee" and that the vicarious infringement principle was fashioned to enforce copyrights "against a defendant whose economic interests were intertwined with the direct infringer's, but who did not actually employ the direct infringer"); *Robinson v. Binello*, 771 F.Supp.3d 1114, 1122-23 (N.D. Cal. 2025); *see also* 3 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 12.04[A][1], at 12-72 (Matthew Bender, Rev. Ed.) (stating, in section *preceding* later section on "vicarious liability," that "[t]o the extent that the infringer is the agent of another, the master can be held culpable for the infringement. If the infringer is the employee of a corporation, as often happens, then the corporation may be held liable.").

Fourth, the "information and belief" allegation – for what *exact* purpose (as to *Warner's* liability), it is unclear, though presumably in support of a direct infringement theory – that Warner or its representatives "transmitted a high resolution digital file of the Exhibit A image to Tesla" for purposes of Tesla's use in the event, *see* SAC ¶ 64, is not supported by factual allegations. In any event, the SAC makes clear that Exhibit A was part of the *failed* "clip license" efforts; it did not appear in Musk's/Tesla's presentation. *See, e.g.*, *id.* ¶ 101. Apart from the information-and-belief allegation in paragraph 64 (and repeated in paragraph 193), there remains no allegation that Warner actually exercised control, selected infringing material, or "instigated any copying, storage or distribution," SAC ¶¶ 192-193. Plaintiff's claim for direct copyright infringement against Warner therefore remains deficient.

Finally, it remains true after the amendments added to the SAC that neither the images nor written words portrayed during the event, nor Musk's spoken words, *explicitly* misled as to source or content, *see* SAC ¶¶ 104-08, 115, notwithstanding any conclusory assertion to the contrary, *see id.* ¶ 124. Implications, inferences and evocations are not enough. *See Brown v. Elec. Arts*, 724 F.3d 1235, 1245 (9th Cir. 2013).

5

More generally, it is still the Court's clear conclusion that Plaintiff – including with respect to its trade dress allegations, as to which Plaintiff also has still failed to establish that it can or even should be applicable in the instant setting – continues to attempt to shoehorn a copyright foot into a Lanham Act shoe.

Plaintiff's attempt to rely on *Gordon v. Drape Creative, Inc.*, 909 F.3d 257 (9th Cir. 2018), a summary judgment-stage decision, with respect to application of the test set forth in *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989), *see* SAC ¶ 251, does not work. In his comments at the event in question (which the Court can permissibly examine under Rule 12(b)(6)), Musk was, if anything, *distancing* and/or *contrasting* his presentation from Blade Runner/BR2049. *See, e.g.*, *id.* ¶¶ 105-06, 108. This is not remotely akin to what happened in *Gordon*. *See* 909 F.3d at 262-63, 269-71.[6]

With the foregoing assessment of Plaintiff's efforts in the SAC, it is now clear to the Court that the Court's first inclination, to decline giving Plaintiff leave to amend, was, in the end, the appropriate one. Plaintiff's Lanham Act claim – which had already been dropped against Warner, in any event – is now dismissed without leave to amend, and with prejudice. Its vicarious copyright infringement claim against Musk and Tesla is also dismissed without leave to amend, and with prejudice. Its direct and vicarious copyright infringement claims against Warner are dismissed, but without prejudice to a future Rule 16 effort to amend the pleadings to reintroduce one or more of those claims against Warner should discovery efforts provide a legitimate basis for Plaintiff to do so.

The Court expects this Rule 12(b)(6)-based ruling will *greatly* simplify the pleadings in this action. If the Court had not taken this step, there is a *very high* chance that the Court would have agreed with the defendants – in substantial part, at the very least – that the SAC presents a Rule 8 problem.[7]

The Court does agree with the Defendants that some measure of "guardrails" are warranted here to rein in Plaintiff's proclivity towards overdoing things for pleading

---

[6] *See also*, *Yuga Labs, Inc. v. Ripps*, 144 F.4th 1137 (9th Cir. 2025). There is no similar case here to be made for the proposition that Musk or Tesla were using Plaintiff's marks as a designation of source. *See id.* at 1152-54, 1164-67.

[7] At least at this point in time, there is no chance the Court would have dismissed this case *with prejudice* because of Rule 8.

purposes. Notwithstanding *Twombly*/*Iqbal* requirements, a complaint is not designed to contain summary judgment- or trial-level detail, not does it serve the purposes of either of those post-discovery stages.

With the elimination of two claims (vicarious copyright infringement and Lanham Act) in their entirety, and one (direct copyright infringement) partially (as to Warner),[8] Plaintiff should not have any difficulty in keeping the next version of its complaint under 20 pages.[9] A version exceeding that length will almost certainly be stricken.

---

[8] To be clear, there is no reason for the Plaintiff to maintain the now-dismissed claims in a future version of its complaint simply to preserve the appealability of the Court's ruling on those claims. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("We . . . join our sister circuits and overrule in part the rule found in *Forsyth* [*v. Humana, Inc.*, 114 F.3d 1467 (9th Cir. 1997)] and other cases 'that a plaintiff waives all claims alleged in a dismissed complaint which are not realleged in an amended complaint.' For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal.") (quoting *Forsyth*, 114 F.3d at 1474).

[9] Appendices containing anything other than lists – *i.e.*, an attempt to shift substantive allegations to appendices to avoid the 20-page limitation – will be summarily stricken.