ANDERSON YEH PC
  Edward M. Anderson (STATE BAR NO. 198183)
edward@andersonyehlaw.com
  Regina Yeh (STATE BAR NO. 266019)
regina@andersonyehlaw.com
1055 E. Colorado Blvd. Ste 500
Pasadena, California  91106
Telephone: (626) 204-4092  Facsimile: (888) 744-0317

Attorneys for Plaintiff
ALCON ENTERTAINMENT, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALCON ENTERTAINMENT, LLC, a Delaware Limited Liability Company,<br><br>                   Plaintiff,<br><br>         v.<br><br>TESLA, INC., a Texas Corporation; ELON MUSK, an individual; WARNER BROS. DISCOVERY, INC., a Delaware Corporation;<br><br>                   Defendants. | CASE NO.  2:24-CV-09033-GW-RAO<br><br>**THIRD AMENDED COMPLAINT FOR:**<br><br>**1) DIRECT COPYRIGHT INFRINGEMENT [17 U.S.C. § 501]**<br><br>**AND**<br><br>**2) CONTRIBUTORY COPYRIGHT INFRINGEMENT [17 U.S.C. § 501]**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Alcon Entertainment, LLC ("Plaintiff" or "Alcon") alleges its Third Amended Complaint ("TAC") against defendants Tesla, Inc. ("Tesla"), Elon Musk ("Musk"), and Warner Bros. Discovery, Inc. ("WBDI") (together, "Defendants"):

## SUBJECT MATTER JURISDICTION

1.      The Court has federal question subject matter jurisdiction per 28 U.S.C. §§ 1331 and 1338(a).  This is a civil action arising under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, *et al.*

**NATURE OF THE ACTION**

2.      Alcon produced the motion picture "Blade Runner 2049" ("BR2049") as a sequel to the original 1982 "Blade Runner" motion picture ("1982 Picture"). Alcon is the ultimate sole copyright owner of all rights in BR2049.  Defendants jointly conducted an October 10, 2024 Tesla marketing event from WBDI's studio lot in Burbank, California (the "Event").  Musk and Tesla exploited protected elements of BR2049 for the Event without Alcon's authorization.

3.      WBDI intentionally induced, caused and materially contributed to Musk and Tesla's infringing conduct, with motives to favor Musk and Tesla over Alcon.  Among other acts, WBDI caused its subsidiary and Alcon's BR2049 domestic distributor, non-party WB Studio Enterprises, Inc. dba Warner Bros. Pictures ("WBP"), to authorize, or promise to authorize, Tesla's BR2049 usage for aspects of the Event.  WBDI knew, or should have, that this violated WBP's distribution license from Alcon.  The BR2049 usage occurred on WBDI-owned systems.  WBDI disregarded Alcon's prophylactic and remedial requests.

4.      Alcon brings direct copyright infringement claims against Musk and Tesla and contributory copyright infringement claims against WBDI.

**FACT CHRONOLOGY**

5.      ***WBP***.  Non-party WBP, in its current corporate incarnation and prior variations, has been a "major" Hollywood motion picture studio since 1923.

6.      ***The 1982 Picture.***  The 1982 Picture starred Harrison Ford as Deckard, a "blade runner," the 1982 Picture's fictional name not for Ford's character, but rather his character's profession: a hunter and killer of rogue artificially intelligent humanoid robots or "replicants."  WBP was and is the distributor of the 1982 Picture.  It was produced by The Blade Runner Partnership.

7.      ***The Alcon-WBP Relationship***.  Alcon is an independent motion picture and television producer headquartered in Los Angeles, formed in 1997.  At all relevant times, it had robust cash resources.  Between about 1998 and 2019,

WBP distributed Alcon-produced motion pictures by a contractual arrangement where Alcon received access to WBP's distribution system in exchange for very favorable financial terms from Alcon to WBP, all highly beneficial to both sides.

8.     Under this model, WBP was the original (and in most cases still current) at least domestic distributor for more than thirty Alcon-produced motion pictures, including BR2049 and "The Blind Side."  The Alcon-WBP contract terms for each picture use a common base, making an Alcon-WBP course of dealing and performance about twenty-five (25) years deep as of 2024.  Alcon had and has strong marketing and reputational protections in WBP treatment of Alcon pictures.  WBP actions which might associate Alcon property with a controversial licensee require WBP to consult Alcon first.  Musk qualified as controversial.  Alcon and WBP had a very amicable history, without any litigated disputes before the Event.

9.     ***Alcon, WBP, and 1982 Picture Rights***.  In 2011, Alcon acquired many rights in the 1982 Picture and underlying properties from The Blade Runner Partnership's successor, including exclusive rights to make 1982 Picture derivative works.  By its own transactions, WBP became the ultimate exclusive copyright owner in distribution rights to the 1982 Picture as is.  WBP also became the owner of associated physical chattel, including 1982 Picture prop cars.

10.     ***BR2049.***  BR2049 was theatrically released on October 6, 2017 and registered the same day with the U.S. Copyright Office (registration number PA0002056792), with Alcon as author.  Non-party Sony Pictures Entertainment Inc. ("SPE") was and is the licensed international distributor.  WBP's BR2049 distribution license from Alcon expires in 2029.

11.     BR2049 tells the story of its main character, "K," played by Ryan Gosling.  K is a replicant who is also a "blade runner," tasked with hunting and killing his own kind.  K's human supervisors assign him to find a missing child suspected to be from natural childbirth to a replicant mother, a possibility threatening to the existing human-AI societal power balance.  BR2049 poses an

existential societal question: "will humans and their AI creations choose to relate to each other in a partnership that creates a mutually beneficial society, or will they reject partnership and invite apocalypse?"  K drives an artificially intelligent, autonomously-capable, flying car throughout BR2049.

12.    BR2049 was and is widely distributed.  It received popular and critical acclaim, including numerous awards.  It was and is regularly identified as one of the best science fiction movies ever on lists of such things.  It was and is available on U.S. streaming and digital rental services.  A DVD of BR2049 (with some auto branding from the theatrical release edited out) is in the record (ECF 51).

13.    ***BR2049 Auto Brand Licensing.***  There was and is an established market for automobile brands to license from motion picture or TV rights holders the right to use copyright-protected elements of the works to promote car products and brands.  Alcon uses this market to monetize its creative works, including BR2049.  During BR2049 pre-production and production, car brands bid competitively for licensed affiliation with BR2049.  The winning contract price was a $500,000 cash payment from the brand to Alcon, and a promised $30 million media spend by the brand, to co-promote both the brand and BR2049.  This was all in exchange for ten (10) non-consecutive seconds BR2049 screen time where the brand would appear, mostly with K and K's car.  The number of seconds, their divisibility, and exclusivity, were all fiercely negotiated, as is typical in the market.  Non-exclusive licenses are less appealing to brands and command lower prices.

14.    WBP's personnel participated in the above bid process.  Alcon and WBP had about an eight (8) year history on BR2049 licensing issues by the time of the Event.  WBP had never had nor claimed to have authority to communicate with a car brand about a BR2049 license without Alcon's fully informed prior approval. WBP has business affairs executives with deep knowledge of the Alcon-WBP relationship terms and rapid access to Alcon's co-CEOs, and a documentary record of Alcon-WBP past communications on auto brand licensing issues and protocols.

4

THIRD AMENDED COMPLAINT

15.      ***Musk, Tesla and Their Pre-Existing Marketing Interest in BR2049.***
Tesla is a developer and manufacturer of electric cars, founded in about 2003.
Musk soon became CEO and controlling shareholder.  Tesla emphasizes artificial
intelligence ("AI")-based autonomous driving capabilities in marketing its cars.

16.      Largely due to Tesla stock holdings, Musk is the world's richest man
and was at the time of Event.  In addition to Tesla, Musk directly or indirectly
owns and operates the social media platform X (formerly Twitter), the rocket and
satellite company SpaceX, and the AI company X.AI Corp. ("X.AI"), among other
ventures.  X.AI runs "Grok," an AI system with image generation functions.

17.      Musk excels at non-traditional marketing, including through memes
and other very short-form communications.  Musk frequently markets his
companies and their products by opportunistic associations with science fiction
properties.  Musk had and has a well-known disdain for intellectual property ("IP")
law, including copyright law.  He was and is infamous for not paying for IP uses in
memes or other marketing, even where other commercial parties would and do.

18.      Musk was well-known for having applied his above traits to make
Tesla the largest car company in the world by market capitalization with almost no
use of traditional paid advertising.

19.      The 1982 Picture and BR2049 were and are known favorite Tesla
marketing tools.  For instance, in 2019, Musk made public displays of literal copies
of quantitatively small, but qualitatively significant, 1982 Picture elements, for the
purpose of linking the real-world time and location which Musk had selected for
Tesla's cybertruck product reveal to the 1982 Picture's fictional setting (*i.e.,* "Los
Angeles, November 2019"), in order to amplify cybertruck publicity and
marketing.  In the November 2019 reveal event itself, upon information and belief,
Musk intended to reference BR2049 to set that event's theme.  The public and
press understood him that way.  (*See, e.g.,* E. Howell, "Elon Musk's Cybertruck
from Tesla Is Straight Out of Blade Runner and James Bond," Space.com, Nov.

5

23, 2019, https://www.space.com/elon-musk-cybertruck-blade-runner-james-bond-inspiration.html.)  The words "blade runner" in common parlance are frequently used as a shorthand for BR2049.  Musk is known for imprecise usage of the words, including as to whether he is referring to the 1982 Picture, BR2049, Deckard, or K.

20.    Musk and Tesla never sought or received Alcon's permission for any of the foregoing uses of BR2049 elements.  However, up until the October 2024 Event, to Alcon's knowledge, Musk and Tesla had never engaged in literal copying or actionable substantial similarity copying of BR2049 elements.

21.    ***WBDI.***  WBP is an old, established entity as to both Hollywood and Alcon; WBDI is a new and different one in both contexts.  WBDI was formed in April 2022 by merger of Discovery, Inc. with WBP's then-direct or -indirect parent, AT&T, Inc.  The merger resulted in limited WBDI working cash and large debt, which WBDI planned to service partly by disrupting existing Hollywood motion picture and television industry business models, including by using content owned or controlled by WBDI subsidiaries to support the larger WBDI's needs.  The merger resulted in WBDI owning the Burbank studio lot and improvements.

22.    ***Defendants Engage About the Event.***  Sometime before September 6, 2024, Tesla expressed interest to WBDI about the possibility of the Event.  Titled "We Robot," it would and did reveal Tesla's new AI-driven, purportedly fully autonomous robotaxi (or cybercab), and "Optimus" humanoid AI robot products, in order to solicit investment and advertise the new Tesla products to consumers.

23.    Plaintiff alleges paragraph 23 upon information and belief: Musk and Tesla wanted to reveal the new Tesla products on the WBDI studio lot in substantial part to facilitate opportunistic marketing association with Hollywood motion pictures, especially BR2049.  Musk and Tesla were indifferent to obtaining IP licenses.  They would if WBDI required it, but only if such licenses were not priced or characterized as car brand affiliation licenses, a business model which Musk and Tesla refuse to support.

THIRD AMENDED COMPLAINT

24.    The Event had two aspects: 1) an in-person presentation and activities, conducted for physically present attendees numbering in the hundreds; and 2) a livestream of parts of the in-person Event, displayed to a worldwide audience.  A recording of the livestream aspect of the Event is in the record (ECF 25) ("Event Recording").  Upon information and belief, the in-person aspect of the Event was negotiated and planned first, and, until near the actual start time of the Event, separately from the livestream aspect, at least as to the issues herein.

25.    ***WBDI Causes WBP To Authorize, or Promise to Authorize, Tesla to Use BR2049 for the In-Person Event.***  Plaintiff alleges this paragraph 25 upon information and belief: WBDI (or a nominal WBDI contracting entity actively directed by WBDI) and Tesla contracted for the in-person aspect of the Event by September 6, 2024, and spent September 6 through October 10, 2024 planning it together.  **Alternative Theory 1A:** ECF 23-1 [redacted]/ECF 32 [sealed unredacted]) is authentic, and was at least an initial WBDI-Tesla contract for the in-person Event, before or separately from Tesla licensing IP from WBDI or subsidiaries.  **Alternative Theory 1B:** The document is not authentic or was superseded and not a governing contract at the Event time, but WBDI provided at least the level of resources for the in-person Event as in ECF 23-1/ECF 32.

26.    Plaintiff alleges paragraph 26 on information and belief: WBDI allowed Musk and Tesla to review the WBDI conglomerate's IP content library to select content desired for the in-person Event.  Musk and Tesla requested, and WBDI caused one or more of its subsidiaries to enter into IP license agreements with Tesla for in-person Event usage of: (a) "Westworld"; (b) "Mad Max"; (c) the Batmobile; and (d) Deckard's car ("56 Sedan") from the 1982 Picture.  Except "Mad Max," the foregoing IP is visible on the Event Recording; "Mad Max" IP appears on social media of Event attendees.  Studios generally require paid licenses for IP uses and ECF 23-1/32 on its face required written consent for uses of IP from at least the WBDI conglomerate.  (ECF 23-1/32 Terms and Conditions,¶ 12.)

7

THIRD AMENDED COMPLAINT

27.    At some point during this shopping-in-the-WBDI-content-store in-person Event preparation process, Tesla requested use of BR2049 for the in-person Event of at least **Image A** below for Musk's keynote speech:



28.    Image A appears in BR2049 at about run-time 1:37:55.  It is qualitatively significant to BR2049 -- arguably its most recognizable still image.  It was the publicity image for theatrical release promotion, and it is still the cover image to BR2049 trailers on YouTube and other platforms.  It is from BR2049's core "Las Vegas Sequence" (BR2049 at 1:36:28-1:37:59, 1:40:28-2:01:50).  In the sequence, K explores a ruined, radioactive Las Vegas to encounter the long-lost Deckard (reprised by Harrison Ford), the story's dramatic climax.  It has distinctive imagery, with orange lighting, and K often shown duster-clad in silhouette or near-silhouette, surveying or exploring urban ruins.

29.    WBP knew, or had reason to know, that it could not grant the request, and had to reject it or inform Alcon of it immediately.  WBDI used shared services personnel (*i.e.,* personnel who provide services to both WBP and WBDI and do or should know Alcon-WBP relationship terms) to relate to Tesla about the request.  They included Julie Heath ("Heath"), a former WBP employee and Alcon licensing liaison for years prior to WBDI's inception.  By 2024, Heath was a WBDI employee, with a WBDI email address and signature blocks.  Heath told Alcon in phone conversations on October 10 and 16, 2024 that she was being directed by WBDI, and Alcon alleges that she was.  WBDI knew or had reason to

know what WBP knew about BR2049 rights, or is chargeable with knowing it.

30.     Sometime prior to October 10, 2024, without informing Alcon, WBDI caused WBP either: **Alternative Theory 2A:** to authorize Tesla to use Image A for Musk's in-person Event keynote remarks, or **Alternative Theory 2B:** to promise Tesla that WBP would do so, with an (inaccurate) representation that WBP had sufficient rights to do so, all in a way upon which Tesla relied.  WBDI never contested prior to the action that at least one of these had occurred.  Including from Heath's information to Alcon that by October 10 Tesla had already been provided a high resolution digital copy of Image A (inferentially, by WBDI or WBDI-directed WBP), authorization was not merely promised, but fully given.

31.     ***WBDI's Relative Motivations.***  WBDI had motives to favor Musk and Tesla's interests over Alcon's.  Upon information and belief, Tesla agreed to pay, or actually paid, WBDI substantial money for the Event rights and WBDI resources.  At the time, Musk also was poised to become even more powerful and influential than he already was, by a close relationship with Donald J. Trump preceding the November 2024 U.S. Presidential election.  Based on third party press reports, on information and belief, WBDI's CEO David Zaslav was actively courting a relationship with Musk, including to benefit WBDI, contemporaneously with WBDI-Tesla Event deal-making (*e.g.,* Musk and Zaslav were photographed together at the U.S. Open on September 8, 2024, two days after ECF 23-1/32 was countersigned by Tesla).  Upon information and belief, they discussed the Event and Musk's satisfaction with it was important at the highest levels of WBDI.

32.     At the same time, in the months prior to the Event, significant friction had developed in the WBDI-Alcon relationship.  Alcon had complained about uses of Alcon IP (specifically "The Blind Side") which WBDI and a non-WBP subsidiary had made without Alcon's authorization, to WBDI's benefit and Alcon's detriment, in a way prohibited for WBP itself as Alcon's "The Blind Side" distributor to do.  Alcon also had commenced buying interests in the financially

9

troubled Village Roadshow's share of motion picture properties jointly owned by Village Roadshow and WBDI subsidiaries.  WBDI had made clear to Alcon that WBDI did not want Alcon to do that and was hostile to Alcon about the situation.

33.    ***Tesla's International BR2049 Rights Request.***  At a time unknown precisely to Alcon, but very near the Event's scheduled start, Tesla requested that WBDI cause WBP to add rights to use Image A in the worldwide livestream aspect of the Event, or WBDI otherwise learned that Tesla wanted such rights.  That required rights even farther beyond WBP's domestic BR2049 distribution license.

34.    Plaintiff alleges this paragraph 34 on information and belief: WBDI's shared services personnel communicated to Tesla that such rights were beyond what any WBDI entity could grant.  By that time, Musk and Tesla had relied on using Image A in planning the Event, including Musk's keynote.  Heath received a contact from a WBDI senior executive who communicated to Heath in essence that Musk and Tesla's satisfaction was important, such that Heath should help Tesla get international rights.  (Heath told Alcon in an October 10 call, *infra* ¶ 37, that this happened, though Heath declined to name the WBDI senior executive in question.)

35.    As a result, at about noon PDT on October 10, 2024, WBDI (through Heath) and Tesla (separately) first contacted SPE.  The Tesla personnel involved in these communications included David Adametz (a Tesla video production executive) and Shara Lili (a Tesla Manager of Video Content).  Upon information and belief, Adametz and Lili were in direct or indirect contact with Musk, and the October 10 communications which reached Tesla also reached Musk.

36.    SPE directed both WBDI and Tesla to Alcon.  Tesla never contacted Alcon.  Heath did.  At about 1:00 pm PDT on October 10, 2024, Heath disclosed to Alcon that WBDI had caused WBP to authorize, or promise to authorize, Tesla to use Image A for the in-person aspect of the Event, but had just learned that Tesla also wanted international rights for a worldwide livestream.  Heath communicated that WBDI was requesting Alcon to grant Tesla international rights.  WBDI did not

10

request that Alcon grant Tesla permission for the in-person Event usage.  (Indeed, Heath argued to Alcon – incorrectly -- in the October 16, 2024 call with Alcon, discussed at ¶ 46 *infra*, that the WBDI-directed WBP did not need any Alcon permission to authorize in-person or livestream BR2049 use by Tesla domestically.)  Heath balked at Alcon's email request to WBDI and SPE that both companies communicate to Tesla that Tesla had no permission for any BR2049 usage, not even for the in-person Event; Heath asked that only SPE communicate a rights denial, with none communicated to Tesla from WBDI.  This Heath response led to an about 2:00 p.m. PDT October 10 phone call between Heath and Alcon.

37.    As a result of all of the foregoing communications: (a) SPE communicated directly to Tesla only that international rights to use Image A were denied; (b) Alcon communicated to WBDI's Heath in the 2:00 p.m. PDT call, that: (i) no BR2049 usage was authorized for any aspect of the Event; (ii) only Alcon could authorize any BR2049 use by Tesla or Musk, and never would, including because Alcon was concerned about Musk's increasing polarity and brand toxicity; (iii) WBDI and WBP must communicate all of the foregoing directly to Musk and Tesla, in clear terms, and not rely only on SPE's communicated denial of international rights; and (iv) WBDI and WBP also should actively guard against any Musk or Tesla usage of BR2049 in any aspect of the Event in any way.

38.    Alcon reasonably understood Heath's response during the 2:00 p.m. phone call to mean that WBDI and WBDI-directed WBP would execute on all of these requests; Heath certainly did not communicate to Alcon that WBDI and WBP would not do so.  After information gained after initial filing of this action and the First Amended Complaint, Alcon is now informed and believes most likely that **Alternative Theory 3A:** WBDI did not comply with any of Alcon's paragraph 37(b)(i)-(iv) requests.  This means, *inter alia*, neither WBDI nor WBDI-directed WBP ever withdrew WBP's invalid Image A in-person Event use authorization, or promised authorization, to Tesla, nor did they communicate to

Tesla that WBP's rights were insufficient to give it.  Rather, the only information which Musk and Tesla received after the October 10 communications above among Alcon, WBDI, and SPE, was SPE's communicated denial of international rights.  **Alternative Theory 3B:** WBDI and the WBDI-directed WBP complied with Alcon's paragraph 37(b)(i)-(iii) requests, but not 37(b)(iv) (actively guard).

39.    ***Musk and Tesla Use AI to Generate an Alternative Image.***  Musk and Tesla only had five hours or so to adjust their Event plans to the new information above.  They created **<u>Image C</u>** below using an AI image generator:



40.    Plaintiff alleges this paragraph 40 upon information and belief.  **Alternative Theory 4A:** Musk and Tesla (or their employees or agents acting within the scope of their employment or at Musk and Tesla's direction) generated Image C by: (i) copying Image A or even the full BR2049 work (or qualitatively significant portions), into an AI image generator, and (ii) then asking the AI to make "an image from the K surveying ruined Las Vegas sequence of 'Blade Runner 2049,'" or a similar direction.  They did so intentionally to exploit BR2049 in ways they knew were not authorized.  **Alternative Theory 4B:** The same as Alternative Theory 4A, except what Musk and Tesla claim was a "licensed image" not from BR2049 also was given to the AI as an additional ingredient to train the AI or for the AI to use as part of image generation, but the AI still relied on literal copying of BR2049.

THIRD AMENDED COMPLAINT

41.     Comparison of Image C to Image A and other images ("Images B") from BR2049's Las Vegas Sequence is below:

















42.     BR2049 run-time locations for Images B are: B1 (1:36:53); B2 (1:37:28); B3 (1:41:08); B4 (1:51:39); B5 (1:58:20); B6 (1:58:20).

43.     ***Musk Uses Image C to Set The Event's Theme.***  The Event was scheduled to begin at 7:00 p.m. PDT, but at least the livestream did not begin until about 8:00 p.m. PDT.  In an introduction, Tesla representative "Franz" said: "Just want to thank Warner Brothers for hosting us here.  As you know, this is the birthplace of many epic films – many of them depicting a vision of the future."  He then said: "We're here tonight to experience that future, that is closer than you

think.  And who better than Elon, right, to show us that future."  The livestream then shifted to Musk using a robotaxi to traverse the WBDI studio lot to the stage.

44.    On stage, Musk spent about a minute on welcoming remarks and explanations of in-person Event activities.  He commenced his keynote by saying: "So you see a lot of sci-fi movies where the future is dark and dismal, where it's not a future you want to be in."  As he spoke, the display changed to a less than two-second image of Earth from space at sunrise, with the words "What Kind of World Do We Want to Live In?"  Then, the display shifted to Image C, displayed for about 11 seconds, during which Musk said: "You know, I love 'Blade Runner,' but I don't know if we want that future.  I believe we want that duster he's wearing, but not the, uh, not the bleak apocalypse."  Image C was replaced by other images, with Musk discussing wanting a happier future, and how happy his vision of cities and highways filled with driverless robot cars would be and why.

45.    The display occurred on the WBDI lot over WBDI systems, to an in-person audience of hundreds, and livestreamed and re-posted by Tesla, Musk, X, and others thousands of times, with millions of total U.S. and international views.

46.    ***Post-Event, Pre-Suit Communications and Defendant Conduct.*** On October 16, 2024, Alcon telephoned Heath to express Alcon's dissatisfaction, and to request information about what happened.  Heath provided further information about what happened leading up to the October 10 communications, but refused to provide any meaningful information about what happened afterward.  Alcon is informed and believes that WBDI had at least some information that could assist Alcon in enforcing its rights against Musk and Tesla, but withheld it from Alcon.  WBDI and WBDI-directed WBP failed to do anything remedial at all.

## FIRST CLAIM FOR RELIEF

### *Direct Copyright Infringement Against Defendants Tesla and Musk*

47.    Alcon exclusively owns all relevant copyrights in the registered original work of authorship BR2049.  (¶¶ 2, 9-10.)  Musk was the active and

conscious force behind the activity herein.  Musk and Tesla, or their employees or agents acting within the scope of employment or at Musk or Tesla's direction and control, actually copied BR2049 without Alcon's authorization, (¶¶ 2, 12, 27, 30, 33, 39-42), and their copying constituted unlawful appropriation as follows:

48.  ***Literal Copying.***  Violation of Alcon's exclusive reproduction rights under 17 U.S.C. § 106(1) by the conduct alleged in paragraphs 39 and 40.

49.  ***Substantial Similarity Copying.***  Creation of (i) Image C and (ii) the Event Recording (the 11 seconds containing Image C) (the "Infringing Works").  (¶¶ 24, 27-28, 30, 33.)  Each Infringing Work incorporates the following BR2049 protected elements, in violation of Alcon's exclusive reproduction and derivative work rights under 17 U.S.C. § 106(1) and (2) (¶¶ 10-11, 27-28, 33-34, 39-44):

50.  <u>The Character K</u>.  K is the "story being told" in BR2049, which is told primarily from his perspective, through the lens of his emotional journey.  K goes from an unquestioningly obedient, cold-blooded killer of his own kind, untroubled by his own lack of a soul or moral implications of his actions, through an emotional middle act where he questions everything and believes he might have a soul, to a final act where that possibility is shattered.  K makes an existential decision to reject his prior existence and become a disobedient, empathetic, selfless, rebel against the system he once served.  K is distinctively delineated, including visually.  He is most visually distinctive when depicted as a duster-clad "blade runner" with close-cropped hair viewed in silhouette or near-silhouette, surveying or exploring a post-apocalyptic ruined cityscape bathed in orange light.

51.  <u>Urgent Human-AI Relationship Theme</u>.  The theme of the societal human-AI relationship being at a critical point, where a choice to partner to build a joint society or not is urgent, and wrong decisions will lead to apocalyptic ruin.  BR2049's theme expression in the Las Vegas Sequence juxtaposes orange versus non-orange lighting.  Elements of a more happy or hopeful past or future stand out by the absence of orange lighting, either from a fragment of a scene (hologram

15

miniature Sinatra; Deckard's hydroponic garden), or for a full scene (K's fight with Deckard in the ruined hotel casino holo lounge). More negative present-time or possible futures are expressed in orange lighting, darkening and intensifying as decision urgency increases. Autonomously capable AI-driven cars take characters alternatively toward and away from right or wrong answers. (To see the orange/non-orange lighting and cars toward-and-away expressions in the Event Recording, portions of it on either side of the infringing 11 seconds must be considered, *e.g.*, Musk's ride to the stage, the Earth viewed from the moon at sunrise slide before the 11 seconds, and slides of urban parks and greenery after the 11 seconds.)

52.    <u>Mood of Anxiety, Fear and Urgency, Specifically About the Human-AI Relationship Question</u>.  BR2049 uses apocalyptic backstory elements, combined with specific visual elements such as orange lighting, urban ruin, and the K figure in silhouette or near-silhouette surveying or exploring the ruined post-apocalyptic landscape, to create a mood of anxiety, fear, and urgency, around the human-AI relationship question and making the right decisions about it.

53.    <u>Setting</u>.  The setting of a post-apocalyptic urban ruin, specifically as a place that holds answers or important information about the human-AI relationship question, bathed in orange light, and especially one that is about to be explored by a male blade runner in a duster shown in silhouette or near-silhouette, with the blade runner shown in the foreground standing or walking, and skyscrapers shown in the distance in faded, darker orange, moving into browns.

54.    <u>Selection and Arrangement of Elements</u>.  (1) a male blade runner; (2) duster-clad; (3) with close-cropped hair; (4) viewed from behind or nearly so; (5) in silhouette or near-silhouette; (6) shown in the foreground; (7) surveying or exploring a ruined city; (8) the setting is post-apocalyptic; (9) the scene is bathed in orange light; (10) distant skyscrapers are shown in faded, darker orange moving into browns; (11) society faces a critical decision whether humans and AI will

16

THIRD AMENDED COMPLAINT

build a joint society or not; and (12) in the science fiction movie genre context.

55.    Musk and Tesla, or their employees or agents acting within the scope of employment or at Musk or Tesla's direction and control, violated Alcon's 17 U.S.C. § 106(5) exclusive public display rights in BR2049 by the Infringing Works, (i) to an in-person audience of a substantial number of persons outside of a normal circle of a family and its social acquaintances, and (ii) livestreamed to millions of U.S. viewers.  (¶¶ 3, 24-25, 45, Event Recording.)

56.    On information and belief, Musk and Tesla intended for the audience to understand Image C, including as presented in the Event Recording, to be an illustration of a scene from BR2049's Las Vegas Sequence, and a substantial part of the audience so understood it.  (¶¶ 23, 27-28, 33-34, 39-44.)

57.    At the time of the Event, Alcon was producing a BR2049 derivative work limited TV series titled *Blade Runner 2099*, and discussing with a car brand an exclusive licensed affiliation.  Musk and Tesla's infringements interfere with Alcon's ability to grant license exclusivity, damaging BR2049's value to Alcon.

58.    Musk and Tesla's conduct constitutes copyright infringement in violation of 17 U.S.C. § 501, *et seq.*, and was done intentionally, recklessly, or with conscious disregard of Alcon's rights and was willful within the meaning of 17 U.S.C. § 504(c).  Alcon is entitled to and seeks the relief in the Prayer.

## SECOND CLAIM FOR RELIEF

### *Contributory Copyright Infringement Against WBDI*

59.    There was direct infringement as set forth in the First Claim for Relief.  WBDI, knowing of, with reason to know of, where it should have known of, or with willful blindness to, the infringing activity, induced, caused, or materially contributed to the infringing conduct of Musk and Tesla, and WBDI's participation in the infringing conduct was substantial, as follows:

60.    WBDI contracted with Tesla, with WBDI providing its studio lot, resources and personnel, to Tesla for at least the in-person aspect of the Event.  (¶¶

17

2-3, 21-22, 24-26, 36-38, 45, ECF 23-1/32.)  WBDI knew or had reason to know that Musk and Tesla were known risks to infringe BR2049.  (¶¶ 17-19, 27, 31:24-27, 33-34, 37.)  WBDI knew of, or had reason to know of, Alcon's rights that Musk and Tesla not make unauthorized use of BR2049, especially not through WBP.  (¶¶ 3, 7-10, 13-14, 27-29, 33-37.)  Upon information and belief, WBDI formed a subjective belief of infringing activity and failed to investigate or act, constituting willful blindness, at the following points: a) Tesla's initial Image A request (¶¶ 27-29); b) October 10 communications (¶¶ 34-38); c) Musk's keynote (¶¶ 43-45); and d) October 16 WBDI-Alcon call (¶ 46).  Upon information and belief, WBDI never involved the WBP business affairs executives with Alcon-WBP relationship knowledge, (¶ 14), as those executives would have then contacted Alcon and worked to address the issues, and never did, or checked the Alcon-WBP communication history on auto brand licensing of BR2049.  (*Id*.)

61.    WBDI impermissibly included BR2049 as IP available to Tesla for the Event through WBDI or WBDI-directed WBP.  (¶¶ 3, 7-8, 13-14, 26-29.)  WBDI also caused WBP to authorize, or promise to authorize – to Musk and Tesla's reasonable reliance, including with an inaccurate representation that WBP had the legal right to make the authorization -- Musk and Tesla's use of Image A for the in-person aspect of the Event.  (¶¶ 3, 7-8, 13-14, 24-30, esp. 30.)

62.    Under Alternative Theory 3A, WBDI did not execute Alcon's ¶ 37(b)(i)-(iii) requests, and misled Alcon at least by material omissions that WBDI would do so; Alcon could have and would have acted for itself if WBDI had said that it would not.  (¶¶ 35-38.)  Upon information and belief, this increased infringement risk by, *inter alia*, Musk and Tesla believing that the WBDI-directed WBP controlled rights to authorize all BR2049 domestic usage (including, *e.g.,* derivative works), affecting their risk assessment (*e.g.*, for U.S. infringement, if any, Musk and Tesla would be dealing with the friendly WBDI and not Alcon).

63.    WBDI also failed to take prophylactic steps against Musk and Tesla's

18

THIRD AMENDED COMPLAINT

possible infringing activity following Alcon's express request that WBDI do so. (¶¶ 3, 37-38.)  Even if WBDI's contractual IP enforcement rights were only limited to IP owned by WBDI or subsidiaries, there appears to have been no prohibition, and upon information and belief there was no prohibition, on WBDI at least notifying Musk and Tesla, and the Event display production team (whoever hired and controlled that team) of what Alcon requested in ¶ 37(b)(i) and (ii).  Upon information and belief, WBDI-Tesla IP livestreaming terms had not been finalized by the time of the October 10 Alcon-WBDI phone call, and WBDI could have added simple protective contractual terms, such as requiring Tesla to provide a keynote script in advance for WBDI clearance, or that livestream production crew (whoever hired them) follow WBDI clearance directions about BR2049.

64.    Under the circumstances here, where WBDI caused WBP to hold itself out to Musk and Tesla as having BR2049 rights which WBP does not have, and ostensibly based on an Alcon-WBP distribution contract that does impose duties on WBP, and one relatively close to expiration; and where WBDI misled Alcon at least by material omission that WBDI would execute Alcon's paragraph 37(b)(i)-(iv) requests, (¶¶ 3, 7-8, 25-30, 37-38), WBDI had a duty to Alcon to take prophylactic and remedial measures at least as described in paragraph 63.

65.    It was reasonably foreseeable that WBDI's overall conduct would result in Musk and Tesla infringing BR2049, even if not by Image A use specifically, and substantially contributed to infringement.  Infringement occurred on the WBDI studio lot over WBDI-owned systems with use of WBDI resources. (¶¶ 3, 25, 45 and ECF 23-1/32 esp. at ¶¶ 3, 4.4, 4.7 and "Studio Services" and "Production Services" sections at pages 8 and 9 therein; on information and belief, the "Studio Services" and "Production Services" were provided by WBDI.)

66.    Post-Event, WBDI refused to provide Alcon with information to assist investigation of the infringement, even though Alcon asked WBDI to do so; further failed to reprove Musk or Tesla, denounce their conduct or do anything else

remedial.  Under the circumstances here, WBDI had a duty to Alcon to do all of the foregoing.  (¶¶ 3, 7-8, 13-14, 21, 26-30, 33-38, 46.)

67.    WBDI acted with motives to favor, and, upon information and belief, intentionally to favor, Musk and Tesla over Alcon.  (¶¶ 3, 15-20, 23, 31-34.)

68.    WBDI's conduct constitutes contributory infringement in violation of 17 U.S.C. § 501, *et seq*., and was intentional, reckless, or willfully blind and in conscious disregard of Alcon's rights, and was willful within the meaning of 17 U.S.C. § 504(c).  Alcon is entitled to and seeks the relief requested in the Prayer.

### **Prayer for Relief**

Plaintiff prays for judgment against Defendants, and each of them:

a.  For a preliminary and permanent injunction against Defendants and anyone working in concert with them from further copying or publicly displaying BR2049 or protectible elements thereof or making derivative works thereof, without Alcon's authorization.

b.  Per 17 U.S.C. § 503, for impoundment of all copies of Image C, including Event Recording copies containing Image C, and underlying materials used to create Image C, and all related records and documents.

c.  For actual damages and infringement-derived profits, 17 U.S.C. § 504(b), or, at Plaintiff's election, statutory damages, 17 U.S.C. §§ 504(c), 512.

d.  For an award of attorneys' fees per 17 U.S.C. § 505.

e.  For an award of pre-judgment interest as allowed by law.

f.  For costs of suit.

g.  For such further relief as the Court deems just and proper.

DATED: October 2, 2025    ANDERSON YEH PC

By _____

Edward M. Anderson
Attorneys for Plaintiff ALCON ENTERTAINMENT, LLC

# **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, on its claims against Defendants Tesla, Inc. ("Tesla"), Elon Musk ("Musk"), and Warner Bros. Discovery, Inc. ("WBDI"), Plaintiff Alcon Entertainment, LLC hereby demands a trial by jury of all matters triable to a jury.

DATED: October 2, 2025    ANDERSON YEH PC

By _____

Edward M. Anderson
Attorneys for Plaintiff ALCON ENTERTAINMENT, LLC