1  A. Louis Dorny (SBN 212054)
2  ldorny@tesla.com
   Terry W. Ahearn (SBN 216543)
3  tahearn@tesla.com
   Krista M. Carter (SBN 225229)
4  kricarter@tesla.com
   TESLA, INC.
5  3000 Hanover St.
   Palo Alto, CA 94304
6  Tel: (510) 298-8516

7
   Christopher S. Marchese (SBN 170239)
8  marchese@fr.com
9  FISH & RICHARDSON P.C.
   4695 MacArthur Court, Suite 1100
10 Newport Beach, CA 92660
   Tel: (213) 533-4240 / Fax: (858) 678-5099
11

12 *Additional counsel listed on signature page*

13 Attorneys for Defendants
   Tesla, Inc. and Elon Musk
14

15            **IN THE UNITED STATES DISTRICT COURT**

16     **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

17

18 | ALCON ENTERTAINMENT, LLC, | Case No. 2:24-cv-09033-GW-RAO |
   | a Delaware Limited Liability Company, | |
19 | | **MEMORANDUM OF POINTS AND** |
   | | **AUTHORITIES IN SUPPORT OF** |
20 | Plaintiff, | **DEFENDANTS TESLA, INC. AND** |
   | | **ELON MUSK'S MOTION TO** |
21 | v. | **DISMISS THIRD AMENDED** |
   | | **COMPLAINT** |
22 | | |
   | TESLA, INC., a Texas Corporation; | Hearing Date: January 29, 2026 |
23 | ELON MUSK, an individual; | Hearing Time: 8:30 a.m. |
24 | WARNER BROS. DISCOVERY, INC., | Courtroom: 9D |
   | a Delaware Corporation, | Judge: Hon. George H. Wu |
25 | | |
   | Defendants. | |
26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION .......................................................................................1

II.     FACTS ........................................................................................................1

III.    LEGAL STANDARD .................................................................................4

IV.     ARGUMENT...............................................................................................5

        A.      There Is No Substantial Similarity .................................................5

                1.      Character .............................................................................6

                2.      Theme ..................................................................................8

                3.      Mood ...................................................................................9

                4.      Setting ...............................................................................10

                5.      Selection and Arrangement of Elements ..........................11

        B.      The Literal Copying Allegations Are Irrelevant, Not Factually
                Supported, and Implausible...........................................................13

        C.      The Alleged Use of BR2049 Is Fair Use ......................................15

                1.      Tesla's Use Is Transformative and Not for Commercial Gain...17

                2.      The Nature of the Copyrighted Work .................................19

                3.      The Alleged Use is Reasonable ..........................................20

                4.      There is No Cognizable Harm to BR2049...........................21

V.      CONCLUSION .........................................................................................22

MPA ISO TESLA AND MUSK'S MOTION TO DISMISS TAC
Case No. 2:24-cv-09033-GW-RAO

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*A&M Records, Inc. v. Napster, Inc.*,
5
   239 F.3d 1004 (9th Cir. 2001) ............................................................................. 1

6

*Andersen v. Stability AI Ltd.*,
7
   700 F.Supp.3d 853 (N.D. Cal. 2023)........................................................... 14, 15

8

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
9
   598 U.S. 508 (2023).................................................................................17, 18, 20

10

*Ashcroft v. Iqbal*,
11
   556 U.S. 662 (2009)........................................................................................... 4

12

*Bartz v. Anthropic PBC*,
   787 F.Supp.3d 1007 (N.D. Cal. 2025) ............................................................. 18
13

*Bell v. Wilmott Storage Servs., LLC*,
14
   12 F.4th 1065 (9th Cir. 2021) ......................................................................... 13

15

*Benay v. Warner Bros. Ent., Inc.*,
16
   607 F.3d 620 (9th Cir. 2010) ............................................................................ 9

17

*Burnett v. Twentieth Century Fox Film Corp.*,
18
   491 F.Supp.2d 962 (C.D. Cal. 2007) ....................................................16, 19, 22

19

*Campbell v. Acuff-Rose Music, Inc.*,
20
   510 U.S. 569 (1994)......................................................................................19, 20

21

*Capcom Co. v. MKR Grp., Inc.*,
   No. 08-cv-00904-RS, 2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) ........7, 9, 11
22

*City of Inglewood v. Teixeira*,
23
   No. 2:15-cv-01815-MWF-MRW, 2015 WL 5025839 (C.D. Cal.
24
   Aug. 20, 2015) ................................................................................................. 16

25

*Collier v. McKay*,
26
   761 F.Supp.3d 1300 (C.D. Cal. 2025) ..........................................................8, 10

27

*Daniels v. Walt Disney Co.*,
28
   958 F.3d 767 (9th Cir. 2020) .......................................................................... 10

*Dhillon v. Does 1-10*,
    No. 13-cv-01465-SI, 2014 WL 722592 (N.D. Cal. Feb. 25, 2014) ................... 17

*DraftExpress, Inc. v. Whistle Sports, Inc.*,
    No. 2:22-cv-00488-DMG-AGR, 2022 WL 16962285 (C.D. Cal.
    Aug. 2, 2022) ........................................................................................ 16, 19, 21

*DuMond v. Reilly*,
    No. 2:19-CV-8922-GW-AGR, 2021 WL 733311 (C.D. Cal. Jan. 14,
    2021) ......................................................................................................... 12, 14

*Eden Film Prod. LLC v. Lockjaw LLC*,
    No. 24-cv-09851-DDP-SK, 2025 WL 1386018 (C.D. Cal. Apr. 25,
    2025) ........................................................................................................ 8, 9, 10

*Eldred v. Ashcroft*,
    537 U.S. 186 (2003) ......................................................................................... 15

*Esplanade Prods., Inc. v. Walt Disney Co.*,
    No. 2:17-cv-02185-MWF-JC, 2017 WL 5635027 (C.D. Cal. Nov. 8,
    2017) ......................................................................................................... 7, 8, 12

*Ets-Hokin v. Skyy Spirits, Inc.*,
    323 F.3d 763 (9th Cir. 2003) ............................................................................. 6

*Gilbert-Daniels v. Lions Gate Ent. Corp.*,
    No. 2:23-CV-02147-SVW-AGR, 2023 WL 8948288 (C.D. Cal.
    Dec. 7, 2023) .................................................................................................... 10

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ........................................................................... 4

*Goldberg v. Cameron*,
    787 F.Supp.2d 1013 (N.D. Cal. 2011) ............................................................... 8

*Goldfinger v. Israel*,
    No. 16-cv-03651-AB-SS, 2017 WL 11633731 (C.D. Cal. May 17,
    2017) .................................................................................................................. 10

*Google LLC v. Oracle Am., Inc.*,
    593 U.S. 1 (2021) ............................................................................................. 19

*Greenspan v. Qazi*,
    No. 20-CV-03426-JD, 2021 WL 2577526 (N.D. Cal. June 23, 2021) ............. 17

*Hustler Mag. Inc. v. Moral Majority Inc.*,
  796 F.2d 1148 (9th Cir. 1986) ............................................................... 16

*Jangle Vision, LLC v. Alexander Wang Inc.*,
  No. 21-cv-09964-GW-E, 2022 U.S. Dist. LEXIS 110600 (C.D. Cal.
  June 3, 2022) ............................................................................................ 6

*Johnson v. Knoller*,
  No. 16-cv-07761-R, 2017 WL 5640554 (C.D. Cal. Sept. 18, 2017) ............ 8

*Kadrey v. Meta Platforms, Inc.*,
  788 F.Supp.3d 1026 (N.D. Cal. 2025) ...................................................... 18

*Marcus v. ABC Signature Studios, Inc.*,
  279 F.Supp.3d 1056 (C.D. Cal. 2017) ................................................... 7, 9

*Marder v. Lopez*,
  450 F.3d 445 (9th Cir. 2006) .................................................................... 5

*McGillvary v. Netflix, Inc.*,
  No. 2:23-CV-01195-JLS-SK, 2024 WL 3588043 (C.D. Cal. July 30,
  2024) .................................................................................................. 16, 19

*Newton v. Diamond*,
  388 F.3d 1189 (9th Cir. 2004) .................................................................. 13

*Northland Fam. Plan. Clinic, Inc. v. Ctr. for Bio-Ethical Reform*,
  868 F.Supp.2d 962 (C.D. Cal. 2012) ........................................................ 20

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018) .......................................................5, 11, 12

*Rice v. Fox Broad. Co.*,
  330 F.3d 1170 (9th Cir. 2003) ............................................................... 7, 9

*Ricketts v. CBS Corps.*,
  439 F.Supp.3d 1199 (C.D. Cal. 2020) ...................................................... 10

*Rosenfeld v. Twentieth Century Fox Film*,
  No. 07-cv-07040-AHM-FFM, 2009 WL 212958 (C.D. Cal. Jan. 28,
  2009) ........................................................................................................ 11

*Satava v. Lowry*,
  323 F.3d 805 (9th Cir. 2003) .................................................................... 12

*Savage v. Council on Am.-Islamic Rels., Inc.*,
No. 07-cv-06076-SI, 2008 WL 2951281 (N.D. Cal. July 25, 2008) .................16

*Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*,
No. 09-cv-01468-SBA, 2009 WL 2157573 (N.D. Cal. July 17,
2009) .........................................................................................................17

*Sega Enters. Ltd. v. Accolade, Inc.*,
977 F.2d 1510 (9th Cir. 1992), *as amended* (Jan. 6, 1993) ...............................19

*Shame on You Prods., Inc. v. Banks*,
120 F.Supp.3d 1123 (C.D. Cal. 2015) ...............................................................6, 9

*Silas v. Home Box Off., Inc.*,
201 F.Supp.3d 1158 (C.D. Cal. 2016) .....................................................5, 6, 7, 11

*Stebbins v. Alphabet Inc.*,
No. 22-CV-00546-JSW, 2025 WL 2233208 (N.D. Cal. July 2, 2025) ........16, 20

*Stebbins v. Google LLC*,
No. 23-CV-00322-TLT, 2023 WL 6139454, at *7 (N.D. Cal. Aug.
31, 2023) .........................................................................................................20, 21

*Strom v. Petershagen*,
No. 2:24-CV-00583-BAT, 2024 WL 3638056 (W.D. Wash. Aug. 2,
2024) .........................................................................................................17

*Suntrust Bank v. Houghton Mifflin Co.*,
268 F.3d 1257 (11th Cir. 2001) .....................................................................16, 17

*Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*,
953 F.3d 638 (9th Cir. 2020) ...............................................................................21

*United States v. Ritchie*,
342 F.3d 903, 908 (9th Cir. 2003) ...........................................................................4

*Weinberg v. Dirty World, LLC*,
No. 2:16-cv-09179-GW-PJW, 2017 WL 5665023 (C.D. Cal. July
27, 2017) .........................................................................................................17

*Zella v. E.W. Scripps Co.*,
529 F.Supp.2d 1124 (C.D. Cal. 2007) ....................................................................5

1

**Statutes**

2

17 U.S.C. § 107 ............................................................................................... 15, 16

3

**Other Authorities**

4

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 3, 5

5

Fed. R. Evid. 201 ................................................................................................... 5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MPA ISO TESLA AND MUSK'S MOTION TO DISMISS TAC

## I.    INTRODUCTION

Alcon's Third Amended Complaint ("TAC") reveals the fundamentally flawed nature of its copyright claim.  At its core, Alcon complains that Mr. Musk showed an image resembling a still-image from Blade Runner 2049 ("BR2049") during a speech highlighting the benefits of autonomous driving and the kind of future we want to live in.  Yet the similarities Alcon identified all stem from the general sci-fi genre of a dystopian future.  Once the unprotectable concepts of BR2049 are filtered out, an objective comparison of the parties' works shows they are ***not*** substantially similar.

Alcon's farfetched literal copying allegations—that Tesla and Musk copied a still-image from BR2049 or even the entire film into an AI image generator—cannot save its claim.  Not only do those allegations lack any plausible factual basis, how the allegedly infringing work was created is irrelevant as it is only the accused work that matters.  Moreover, even if Tesla and Musk generated the image from BR2049 (they did not), the alleged infringement is commentary on the plight of today's society caused by human-driven automobiles and criticism of the "dark and dismal" future depicted in BR2049 contrasted with how autonomous vehicles can pave the way for a safer, greener, and more productive future.  This is quintessential fair use.

Against this factual backdrop, Alcon's copyright claim cannot survive this motion.  Alcon should not be allowed to continue burdening defendants and this Court with this ill-founded lawsuit.  Accordingly, this case should be dismissed with prejudice.[1]

## II.    FACTS

Alcon alleges that it is the sole copyright owner of the motion picture BR2049.  TAC ¶ 2.  BR2049 is a full-length science-fiction movie, which Alcon incorporates

---

[1] This motion is filed only on behalf of Tesla and Mr. Musk.  If the Court dismisses the First Claim for Relief, Alcon's Second Claim for Relief against WBDI will be moot.  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party.").

by reference in the TAC.  *Id.* ¶ 12 (referencing Dkt. 51—"A DVD of BR2049").  The total runtime of BR2049 is approximately 2 hours and 43 minutes.  Dkt. 51.  BR2049 has a complex plot wherein "K's human supervisors assign him to find a missing child suspected to be from natural childbirth to a replicant mother."  TAC ¶ 11.  BR2049 tells the story of K's "emotional journey" and transformation in three distinct acts. *Id.* ¶ 50.

"Image A" is a single frame from BR2049's "Las Vegas Sequence" appearing at about run-time 1:37:55 where "K explores a ruined, radioactive Las Vegas to encounter the long-lost Deckard (reprised by Harrison Ford), the story's dramatic climax."  *Id.* ¶ 28.  Alcon describes the Las Vegas Sequence as "ha[ving] distinctive imagery, with orange lighting, and K often shown duster-clad in silhouette or near-silhouette, surveying or exploring urban ruins."  *Id.*

Alcon alleges that Tesla and Musk (together, "Tesla") used Alcon's Image A or more of BR2049 to create "Image C" (*id.* ¶ 39), which Tesla displayed during an October 10, 2024 event revealing Tesla's autonomous "Cybercab" (the "Event").  *Id.* ¶¶ 2, 22, 40.





*Id.* ¶ 41.

The mood of the Event was upbeat, and the theme was optimism for the future. The recording of the Event was lodged at Dkt. 25.[2]

As the recording reflects, Musk opened the Event with a short presentation highlighting the benefits of autonomous automobiles and his vision for a safer and happier future without human-driven cars. Dkt. 25, 4:13-19:30; TAC ¶ 44. He talked about the dangers of human driving, time wasted with driving and parking, and city space lost to parking lots. Dkt. 25, 6:12-9:47, 13:15-14:13, 16:56-17:46. He began his speech by saying: "So you see a lot of sci-fi movies where the future is dark and dismal, where it's not a future you want to be in." TAC ¶ 44. To juxtapose the societal

---

[2] Alcon has previously agreed "that the Court may consider the entire content of the We Robot Presentation on Rule 12(b)(6) practice." Dkt. 38, 4:5-13.

benefits of autonomous automobiles, he showed a less than two-second image of Earth with the words "What Kind of World Do We Want to Live In?" then showed Image C—an image of a "dark and dismal" future with the words "NOT THIS" displayed in large, capital letters—for 11-seconds, during which he stated: "You know, I love 'Blade Runner,' but I don't know if we want that future. I believe we want that duster he's wearing, but not the, uh, not the bleak apocalypse." *Id.*; Dkt. 25, 5:33-5:57 (11-seconds at 5:43-5:54). Musk then replaced Image C with other images contrasting the "bleak apocalypse" and, as alleged, discussed "wanting a happier future, and how happy his vision of cities and highways filled with driverless robot cars would be and why." TAC ¶ 44; Dkt. 25, 5:58-6:10, 7:00-11:25, 16:29-17:45. Musk's speech was followed by a party where Tesla's humanoid robots danced and interacted with human attendees. Dkt. 25, 23:45-1:20:02.

## III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3] Though the Court must accept all factual allegations in a complaint as true, it need not accept "naked assertions devoid of further factual enhancement." *Id.* "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). This is particularly apt here, where the TAC contains speculative theories and conjecture under the guise of allegations made on "information and belief."

On a motion to dismiss, a court may properly consider the complaint and material submitted as part of the complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A court may also consider "evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is

---

[3] All quotations cleaned up and emphasis added unless otherwise noted.

central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion" and "assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.*; *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

Further, a court may consider "matters subject to judicial notice pursuant to Federal Rule of Evidence 201," including "generic elements of creative works," to dismiss a copyright claim. *Zella v. E.W. Scripps Co.*, 529 F.Supp.2d 1124, 1128-29 (C.D. Cal. 2007) (taking judicial notice of generic elements of a television show).

## IV.    ARGUMENT

### A.    There Is No Substantial Similarity

To maintain its copyright claim, Plaintiff must plausibly allege: (1) it owns a valid copyright; and (2) Tesla copied protected elements of the expression of Plaintiff's work. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116-17 (9th Cir. 2018), *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc). The second element has two distinct subparts: factual copying and unlawful appropriation. *Id.* at 1117. Unlawful appropriation occurs when the defendant copies enough of the plaintiff's **expression** to render the two works substantially similar. *Id.* Thus, not all copying is unlawful. *Id.*

"Under Ninth Circuit law, courts employ a two-part test to determine if works are substantially similar: an intrinsic test and an extrinsic test." *Silas v. Home Box Off., Inc*., 201 F.Supp.3d 1158, 1171 (C.D. Cal. 2016), *aff'd*, 713 F. App'x 626 (9th Cir. 2018). "A plaintiff who cannot satisfy the extrinsic test necessarily loses[.]" *Id.* at 1172.

The extrinsic test may be determined by the Court now as a matter of law. *Rentmeester*, 883 F.3d at 1118. "The extrinsic test is an objective comparison of specific expressive elements which seeks to find articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two

works." *Silas*, 201 F.Supp.3d at 1171. It is applied in three steps: (1) Plaintiff must identify the protectable similarities between the copyrighted work and the accused work; (2) the Court disregards unprotectable elements, like "ideas, concepts, and common elements"; and (3) the Court determines whether and to what extent the remainder warrants copyright protection. Dkt. 24-1, 8 (Tentative Ruling on Motion to Dismiss), *adopted by Jangle Vision, LLC v. Alexander Wang Inc.*, No. 21-cv-09964-GW-E, 2022 U.S. Dist. LEXIS 110600 (C.D. Cal. June 3, 2022), *aff'd*, No. 22-55642, 2023 WL 7042518 (9th Cir. Oct. 26, 2023). Unprotectable elements include ideas that "can be expressed only in one way," such that "the work's idea and expression 'merge'" (*Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 765 (9th Cir. 2003)) and scenes-à-faire, *i.e.*, "situations and incidents that flow necessarily or naturally from a basic plot premise." *Shame on You Prods., Inc. v. Banks*, 120 F.Supp.3d 1123, 1148 (C.D. Cal. 2015), *aff'd*, 690 F. App'x 519 (9th Cir. 2017).

An objective comparison between each of the allegedly "Infringing Works"— Image C and the recording (Dkt. 25), which depicts Image C (TAC ¶ 39)—and BR2049 reveals no substantial similarity. Alcon alleges similarities in the character, theme, mood,[4] setting, and selection and arrangement of elements. TAC ¶¶ 49-54.[5] But most of these elements are unprotectable and must be stripped out from the substantial similarity analysis. Several also do not appear in Image C.

### 1.   Character

Alcon alleges substantial similarity of the character "K," a replicant "blade runner" tasked with hunting and killing his own kind. TAC ¶ 11. As alleged, K begins as "an unquestioningly obedient, cold-blooded killer" who goes through an "emotional journey" where he "questions everything and believes he might have a

---

[4] Notably, Alcon admitted in its First Amended Complaint that "[n]one of [the allegedly copied] themes or moods are themselves protectable by any intellectual property law." Dkt. 37 ¶ 121.
[5] Alcon does not allege any similarities in plot. TAC ¶¶ 49-54.

soul" in a middle act, then ultimately becomes "a disobedient, empathetic, selfless, rebel against the system he once served." *Id.* ¶ 50. K is allegedly "most visually distinctive when depicted as a duster-clad 'blade runner' with close-cropped hair viewed in silhouette or near-silhouette." *Id.*

A character must have physical ***and*** conceptual qualities that are sufficiently delineated and "especially distinctive" to be copyrighted. *Esplanade Prods., Inc. v. Walt Disney Co.*, No. 2:17-cv-02185-MWF-JC, 2017 WL 5635027, at *12 (C.D. Cal. Nov. 8, 2017) (descriptions such as "'cute, curvaceous, sexy squirrel,' who is also 'romantic,' 'energetic and enthusiastic'" were insufficient), *aff'd*, 768 F. App'x 732 (9th Cir. 2019). "No character infringement claim can succeed unless plaintiff's original conception sufficiently developed the character, and defendants have copied this development and ***not merely the broader outlines***." *Marcus v. ABC Signature Studios, Inc.*, 279 F.Supp.3d 1056, 1069 (C.D. Cal. 2017) (families with same last name, sons who were "juniors," mothers working in medical field, and daughters always on their cell phones not substantially similar). Here, Alcon does not and cannot allege that Tesla's display of a ***still image*** infringes a character with an emotional arc like K. Thus, at most, Alcon alleges copying of a broad outline (silhouette) of a man with short hair wearing a duster.

The fact that the man in Image C wears a duster is not sufficient. *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1175 (9th Cir. 2003) (character described merely as "masked magician wearing a disguise" and "dressed in standard magician garb" not protected), *overruled on other grounds by Skidmore*, 952 F.3d 1051; *Capcom Co. v. MKR Grp., Inc.*, No. 08-cv-00904-RS, 2008 WL 4661479, at *8 (N.D. Cal. Oct. 20, 2008) (that "both characters are male with short brown hair, wear leather jackets, and undertake activities connected to journalism" were stock elements and "superficial, generic physical similarities"); *Silas*, 201 F.Supp.3d at 1179 (dismissing claim where alleged similarities in "well-dressed football players who are sexually promiscuous, drive fancy cars, and have a cocky attitude" were unprotectible). Nor is similarity in

hairstyle sufficient. *Johnson v. Knoller*, No. 16-cv-07761-R, 2017 WL 5640554, at *3 (C.D. Cal. Sept. 18, 2017) ("same hairstyle and goatee" were "non-distinctive similarities"). These traits are unprotectable scenes-à-faire, as numerous dystopian science-fiction stories include a male character with close-cropped hair, wearing a duster. Request for Judicial Notice ("RJN") § III.A.

In short, a man with short hair wearing a duster is not sufficiently distinctive to warrant copyright protection.

### 2.   Theme

Alcon alleges that BR2049's theme is "the societal human-AI relationship being at a critical point, where a choice to partner to build a joint society or not is urgent, and wrong decisions will lead to apocalyptic ruin." TAC ¶ 51. Such "generic, high-level themes…cannot serve as the basis for copyright protection." *Collier v. McKay*, 761 F.Supp.3d 1300, 1310 (C.D. Cal. 2025) ("themes including science as a political issue, apathy, and mob mentalities with greed as the immediate reaction" were too generic); *see also Eden Film Prod. LLC v. Lockjaw LLC*, No. 24-cv-09851-DDP-SK, 2025 WL 1386018, at *6 (C.D. Cal. Apr. 25, 2025) (themes of "examination of the darkness and potential for violence within all people…are common tropes in the survival genre"); *Esplanade*, 2017 WL 5635027, at *11 ("abstract, generic, and well-trodden" themes, such as "one can overcome the prejudices inherent in a diverse society and within oneself," are unprotectable). In *Goldberg v. Cameron*, a case involving "The Terminator" films, the court found "the general idea of a futuristic conflict between man and machines" and "portrayals of artificial intelligence at war with humans" were "commonplace in science fiction" and thus unprotectable. 787 F.Supp.2d 1013, 1020 (N.D. Cal. 2011). Here, the theme of society facing a critical decision to partner with AI or not, and the themes or mood of anxiety or fear caused by AI-human relationships, are well-trodden in science-fiction. *See id.* (finding similarities between works "set in the future" attributable to unprotectable ideas); RJN § III.B.

Even assuming Alcon's asserted theme is protectable, Image C's theme—to the extent it has one—is patently dissimilar. There is no sense of urgency or notion of human/AI being at a critical point. For eleven seconds, Musk considers a generic apocalyptic future, like the one in BR2049 and other sci-fi stories, but this does not make the works substantially similar because any similarity flows naturally from the basic idea of a dystopian future. *See Eden*, 2025 WL 1386018, at *5 ("competition, tribalism, and factionalism in disaster scenarios or in response to resource scarcity are…commonplace…to much of the post-apocalyptic genre" and unprotectable); *Benay v. Warner Bros. Ent., Inc*., 607 F.3d 620, 627 (9th Cir. 2010) ("themes of the embittered war veteran, the 'fish-out-of-water,' and the clash between modernization and traditions…arise naturally from the premise of an American war veteran who travels to Japan to fight the samurai"), *overruled on other grounds by Skidmore*, 952 F.3d 1051; *Capcom*, 2008 WL 4661479, at *9 (similarity in theme related to unprotectable idea of zombies in a mall). Alcon alludes to other thematic similarities (TAC ¶ 51), but the recording clearly shows that the theme of the Event was cost-efficient, safe, and sustainable transportation (Dkt. 25), and one fails to see how Musk's ride to the stage or a view of the Earth indicate a theme or are relevant at all. Plaintiff draws comparisons where there are none. *See Marcus*, 279 F.Supp.3d at 1068 (themes of two shows not substantially similar where "the message in each work is distinct").

### 3. Mood

Alcon alleges that BR2049 has a mood of anxiety, fear, and urgency, which it creates using "apocalyptic backstory elements" and "visual elements such as orange lighting, urban ruin, and the K figure…exploring the ruined post-apocalyptic landscape…." TAC ¶ 52; *see also id.* ¶ 51.

"A general mood that flows naturally from unprotectable basic plot premises is not entitled to protection." *Shame on You*, 120 F.Supp.3d at 1158 (mood of "light-hearted comedies that involve a walk of shame" was scenes-à-faire); *see Rice*, 330

F.3d at 1177 (mood of secrecy and mystery "constitute[s] *scenes a faire*, and merge[s] with the idea of revealing magic tricks"); *Collier*, 761 F.Supp.3d at 1310 ("comedic, farcical, ironic, or satirical mood is far too general" for protection).

Here, any similarities in mood stem from the basic premise of a post-apocalyptic and dystopian future. *See Eden*, 2025 WL 1386018, at *6 (finding "somber and brooding" mood in survival stories not protectable); McCallion Decl., Ex. 26 (*Merriam-Webster Dictionary* defining "dystopian" as "of, relating to, or being an imagined world or society in which people lead dehumanized, fearful lives"); RJN § III.C. Nor is the use of orange lighting protectable expression. *Gilbert-Daniels v. Lions Gate Ent. Corp.*, No. 2:23-CV-02147-SVW-AGR, 2023 WL 8948288, at *15 (C.D. Cal. Dec. 7, 2023) (finding mood evoked with "the Lavender, Purples, and Mauve color pallet [*sic*]" unprotectable); *Daniels v. Walt Disney Co.*, 958 F.3d 767, 772 (9th Cir. 2020) ("The notion of using a color to represent a mood or emotion is an idea that does not fall within the protection of copyright."). There is no substantial similarity in mood.

### 4. Setting

Alcon alleges similarity in the setting—*i.e.*, "a post-apocalyptic urban ruin" with "skyscrapers shown in the distance in faded, darker orange, moving into browns." TAC ¶ 53.

The ruined city setting naturally flows from the "basic plot point[]" in dystopian sci-fi stories of exploring a post-apocalyptic ruin and thus unprotectable. *Ricketts v. CBS Corps.*, 439 F.Supp.3d 1199, 1217-18 (C.D. Cal. 2020) (scenes taking place at school and on football field flowed from football-based plot); *see Eden*, 2025 WL 1386018, at *7 ("the 'desolate area' setting…is a common element of survival stories"); *Goldfinger v. Israel*, No. 16-cv-03651-AB-SS, 2017 WL 11633731, at *10 (C.D. Cal. May 17, 2017) ("upscale urban environments" is not a protectable similarity). Numerous dystopian science-fiction stories are set in a post-apocalyptic ruined city with orange coloring. RJN § III.D. Even similarities in multiple settings

in the same city are unprotectable when "they naturally flow from the basic plot premise." *Silas*, 201 F.Supp.3d at 1176 (Miami locations such as beaches, offices, boats, and "VIP rooms/Fun Houses" did not support substantial similarity); *Capcom*, 2008 WL 4661479, at *10 ("rural two-story mall with a helipad on top and a gun shop and music playing inside" represented scenes-à-faire that flow from the unprotectable idea of zombies in a mall); *Rosenfeld v. Twentieth Century Fox Film*, No. 07-cv-07040-AHM-FFM, 2009 WL 212958, at *3 (C.D. Cal. Jan. 28, 2009) ("industrial factories, ultra modern offices, prominent clock towers, monorails" were scenes-à-faire of "modern, industrial, urban environment").

Further, Image A and Image C look different. The two skylines differ, suggesting different cities, and have other visual differences. *Infra* § IV.A.5. Indeed, even if Image C used the same city skyline, the images still would not be substantially similar. *See Silas*, 201 F.Supp.3d at 1176 ("The mere fact that the two shows are set in the same city does not give rise to a finding of substantial similarity of copyrightable expression.").

### 5. Selection and Arrangement of Elements

Alcon alleges substantial similarity in the selection and arrangement of the following elements: "(1) a male blade runner; (2) duster-clad; (3) with close-cropped hair; (4) viewed from behind or nearly so; (5) in silhouette or near-silhouette; (6) shown in the foreground; (7) surveying or exploring a ruined city; (8) the setting is post-apocalyptic; (9) the scene is bathed in orange light; (10) distant skyscrapers are shown in faded, darker orange moving into browns; (11) society faces a critical decision whether humans and AI will build a joint society or not; and (12) in the science fiction movie genre context." TAC ¶ 54.

Alcon's twelve elements are described in exceedingly broad terms because they are only general ideas or concepts. This was the case in *Rentmeester*, where the Ninth Circuit found the parties' photos shared similarities only in the following "general ideas or concepts: Michael Jordan attempting to dunk in a pose inspired by ballet's

11

*grand jeté*; an outdoor setting stripped of most of the traditional trappings of basketball; a camera angle that captures the subject silhouetted against the sky." 883 F.3d at 1122-23. There, the court held "Rentmeester cannot claim an exclusive right to ideas or concepts at that level of generality, ***even in combination***." *Id.* at 1123. This Court should reach the same conclusion here.

"[A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003). Alcon cannot meet this high bar at least because it fails to explain how its elements are creatively selected and arranged. *See DuMond v. Reilly*, No. 2:19-CV-8922-GW-AGR, 2021 WL 733311, at *23-24 (C.D. Cal. Jan. 14, 2021) (dismissing claim with prejudice where plaintiff listed "random similarities" in unprotectable elements without explaining their selection and arrangement).

Further, courts "routinely" decline to find the combination of generic elements substantially similar "when two works' unprotected elements are not arranged in a strikingly similar fashion." *Esplanade*, 2017 WL 5635027, at *16 (citing cases and dismissing infringement claim absent striking similarity). A comparison of Images A and C shows that they ***are different***, even as to a purported "selection and arrangement." Image A portrays the back of a man in a knee-length coat, a futuristic vehicle, two crumbling bridges, a round bunker, and a skyline with futuristic buildings. The man is in the center of the frame and small, relative to the vehicle, depicting that he is farther away from the camera than the vehicle. He is also smaller than the skyline, creating the impression that he is walking towards city buildings at the same elevation.[6]

---

[6] Also, element 11, society facing a critical decision, is not perceptible in Image A alone, and several elements are all part of a common depiction of element 8, a post-

In contrast, Image C portrays a man wearing an ankle-length coat standing still on the right-side of the frame and turned slightly away from the camera to look down on a city.  There is no bridge, no bunker, and no vehicle.  The skyline is different.  The man is the largest subject in the image, creating the impression that he is closest to the camera.  He is close in height to the buildings, depicting his position at a higher elevation.  Image C portrays "NOT THIS" in the top-left corner and "TESLA LIVE" in the bottom-right corner.[7]

In sum, Alcon cannot claim an exclusive right to its alleged ideas or concepts, even in combination, because they are unprotectable and not depicted in Image C anyway.  Indeed, several of the generic elements claimed are used in other dystopian science-fiction stories in combination.  *See generally* RJN § III.  Put another way, even assuming that Tesla copied from BR2049—which it did not—Image C is so different that any copying was "de minimis and therefore not actionable." *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1075 (9th Cir. 2021); *see also Newton v. Diamond*, 388 F.3d 1189, 1192-93 (9th Cir. 2004) (explaining the de minimis exception "has long been a part of copyright law" and "reflects the legal maxim, *de minimis non curatlex*"—*i.e.*, the law does not concern itself with trifles).

### B.    The Literal Copying Allegations Are Irrelevant, Not Factually Supported, and Implausible

To try to avoid dismissal, Alcon alleges two alternative theories of literal copying on information and belief.  Alcon first alleges that "Musk and Tesla…generated Image C by…copying Image A or even the full BR2049 work (or qualitatively significant portions), into an AI image generator, and…asking the AI to make 'an image from the K surveying ruined Las Vegas sequence of 'Blade Runner 2049,''' or a similar direction."  TAC ¶ 40.  Alcon's alternative theory relies on these

---

apocalyptic setting, such as orange light (9), someone surveying or exploring a ruined city (7), and distant skyscrapers in faded, darker orange and browns (10).

[7] Image C differs even more drastically from Plaintiff's "Images B" (TAC ¶ 41).

same allegations, plus allegations that a "'licensed image' not from BR2049" also was used to train the AI or as part of image generation.  *Id.*

Both theories concern the method of Image C's creation, but as detailed above, Image C is not substantially similar to BR2049.  And—as this Court explained in *DuMond*—***how*** Tesla created Image C is irrelevant.  2021 WL 733311, at *5.  In *DuMond*, the plaintiff theorized the defendant fed her copyrighted novel into a "digital text spinning" or "automatic paraphrasing" program.  *Id.* at *4-5.  In dismissing the plaintiff's claim with prejudice, this Court explained, "if the end result is that Plaintiff still cannot satisfy the extrinsic test for purposes of demonstrating substantial similarity…so what?"  *Id.* at *5.  The plaintiff's accusation that the defendant used a new method of copying did not entitle her—or here, Alcon—to "a new method of analysis," discovery, or "the development of expert testimony related to this 'newer nature of copying….'"  *Id.*  As in *DuMond*, the method of copying is irrelevant.

The TAC is also devoid of the factual basis for Alcon's literal copying theories, which rest ***solely*** on the allegation that Tesla had "five hours" to create Image C.  TAC ¶ 39.  Notably, Alcon previously alleged on information and belief that it was WBDI that convinced or encouraged Tesla that Alcon's non-cooperation "could be circumvented by generation and use of an AI-generated copy of iconic BR2049 imagery."  Dkt. 37 ¶ 163.  This Court explained that the "information and belief allegation [was] not itself connected, or supported by, factual information that makes the contention plausible, meaning that it is not the type of information and belief allegation that the Court must credit as true here."  Dkt. 61, 27 n.20.

The same is true of Alcon's latest attempt to plead literal copying.  The TAC does not identify which "AI image generator" was used or provide any basis for its contention that BR2049 or Image A was used to train that AI image generator.  *Compare Andersen v. Stability AI Ltd.*, 700 F.Supp.3d 853, 863-64 (N.D. Cal. 2023) (declining to dismiss copyright claim against Stable Diffusion where plaintiff plausibly alleged her works were used to train AI based on searches on the

MPA ISO TESLA AND MUSK'S MOTION TO DISMISS TAC
Case No. 2:24-cv-09033-GW-RAO

"ihavebeentrained.com" site), *with id.* at 869-70 (dismissing copyright claim against Midjourney based only on "comments of Midjourney's CEO that Midjourney uses the open datasets" that "everyone else" uses because plaintiff offered "no facts regarding what training, if any, Midjourney conducted for its [AI] product"). The allegation that Tesla copied the *entire* BR2049 film into an AI image generator is especially implausible given its size (and the fact that common AI image generators, including Grok and DALL-E 3/ChatGPT, do not support video uploads).

### C.    The Alleged Use of BR2049 Is Fair Use

Even accepting Alcon's allegation that Tesla created Image C from BR2049 as true, the Court can dismiss because Tesla's use of Image C is fair use. Musk briefly used Exhibit C to support his commentary on the societal value of autonomous vehicles. He criticized the "dark and dismal" dystopian future depicted in Image C and "sci-fi movies" like "Blade Runner" where the human-AI relationship is strained as "not a future you want to be in," and juxtaposed the brighter future he envisions where society embraces autonomous vehicles to solve problems related to human driving. *See* TAC ¶ 44. He used humor to stay upbeat and engage his audience when he said "*I believe we want that duster he's wearing*, but not the, uh, not the bleak apocalypse." *Id.* He then replaced Image C with other images depicting society's problems today, and later a happier future with autonomous vehicles, as he discussed those topics. *Id.*; Dkt. 25, 5:58-11:25, 13:15-14:40, 16:29-17:45.

The Copyright Act permits copying "for purposes such as *criticism*, *comment*, news reporting, teaching..., scholarship, or research." 17 U.S.C. § 107. This "fair use" of a copyrighted work is one of copyright law's "built-in First Amendment accommodations" and "allows the public to use not only facts and ideas contained in a copyrighted work, but also expression itself in certain circumstances." *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003). This defense "affords considerable latitude for scholarship and comment." *Id.* at 220. "The exceptions carved out for these purposes

1    are at the heart of fair use's protection of the First Amendment." *Suntrust Bank v.*

2    *Houghton Mifflin Co.*, 268 F.3d 1257, 1264 (11th Cir. 2001).

3        The factors considered in evaluating fair use include: "(1) the purpose and

4    character of the use"; "(2) the nature of the copyrighted work"; "(3) the amount and

5    substantiality of the portion used in relation to the copyrighted work as a whole"; and

6    "(4) the effect of the use on the potential market for or value of the copyrighted work."

7    17 U.S.C. § 107. "[A] court may conclude as a matter of law whether the challenged

8    use qualifies as a fair use of the copyrighted work." *Hustler Mag. Inc. v. Moral*

9    *Majority Inc.*, 796 F.2d 1148, 1150 (9th Cir. 1986).

10       Courts in this district routinely find fair use at the pleading stage where the use

11   is for criticism or comment. *City of Inglewood v. Teixeira*, No. 2:15-cv-01815-MWF-

12   MRW, 2015 WL 5025839, at *8 (C.D. Cal. Aug. 20, 2015) (dismissing claim where

13   use was for "criticism and commentary" on "matters of public concern and

14   constitute[d] core First Amendment protected speech"); *Burnett v. Twentieth Century*

15   *Fox Film Corp.*, 491 F.Supp.2d 962, 967 (C.D. Cal. 2007) (dismissing claim where

16   use was criticism and parody); *McGillvary v. Netflix, Inc.*, No. 2:23-CV-01195-JLS-

17   SK, 2024 WL 3588043, at *8 (C.D. Cal. July 30, 2024) (dismissing claim where

18   defendant weaved news interview and plaintiff's videos into a "documentary detailing

19   [plaintiff's] background, his rise to fame, and his subsequent New Jersey murder

20   conviction"); *DraftExpress, Inc. v. Whistle Sports, Inc.*, No. 2:22-cv-00488-DMG-

21   AGR, 2022 WL 16962285, at *3 (C.D. Cal. Aug. 2, 2022) (finding "implicit

22   commentary" where defendant used a two-second clip from plaintiff's interview from

23   basketball star's teenage years to "show[] the literal transformation of a young

24   adolescent into a dominant athletic force" and juxtapose those versions of him).

25       The same is true in other Ninth Circuit courts. *See, e.g.*, *Stebbins v. Alphabet*

26   *Inc.*, No. 22-CV-00546-JSW, 2025 WL 2233208, at *4-7 (N.D. Cal. July 2, 2025)

27   ("critical commentary" was fair use); *Savage v. Council on Am.-Islamic Rels., Inc.*,

28   No. 07-cv-06076-SI, 2008 WL 2951281, at *4 (N.D. Cal. July 25, 2008) (use "to

criticize and comment on plaintiff's statements and views" was fair use); *Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*, No. 09-cv-01468-SBA, 2009 WL 2157573, at *7 (N.D. Cal. July 17, 2009) (use of unaltered photographs to criticize plaintiff's business practices was fair use); *Greenspan v. Qazi*, No. 20-CV-03426-JD, 2021 WL 2577526, at *10-11 (N.D. Cal. June 23, 2021) ( "post[ing] large portions of [plaintiff's] autobiography on…online platforms…in the form of 'fake reviews' that included comments" was "fair use for purposes of commentary and criticism"); *Strom v. Petershagen*, No. 2:24-CV-00583-BAT, 2024 WL 3638056, at *4 (W.D. Wash. Aug. 2, 2024) (use of photograph for political commentary was "paradigmatic fair use").

### 1.    Tesla's Use Is Transformative and Not for Commercial Gain

The "central" question of the first factor is "whether the new work merely supersedes the objects of the original creation…or instead adds something new, with a further purpose or different character." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023). "Criticism of a work…ordinarily does not supersede the objects of, or supplant, the work. Rather, it uses the work to serve a distinct end." *Id.* "[C]opyright does not immunize a work from comment and criticism." *Suntrust*, 268 F.3d at 1265 (emphasis omitted); *see also Weinberg v. Dirty World, LLC*, No. 2:16-cv-09179-GW-PJW, 2017 WL 5665023, at *8 (C.D. Cal. July 27, 2017) (post including image of and social commentary on plaintiff and his wife was "the exact type of critique that…falls within the scope of the fair use doctrine"); *Dhillon v. Does 1-10*, No. 13-cv-01465-SI, 2014 WL 722592, at *5 (N.D. Cal. Feb. 25, 2014) (use of photo in article criticizing plaintiff's political views was fair use).

Here, Tesla's use of Image C falls squarely within the confines of fair commentary. Image C was used for a mere 11 seconds to show the stark contrast between the dystopian future of BR2049, a film that grapples with the "human-AI societal power balance" (TAC ¶ 11) ***versus*** the bright future Tesla envisions with driverless automobiles. Indeed, this Court observed that in Musk's "comments at the

1    event in question…Musk was, if anything, *distancing* and/or *contrasting* his

2    presentation from Blade Runner/BR2049." Dkt. 78, 6 (emphasis original). The

3    alleged use of BR2049 was reasonably necessary to make this contrast. *Warhol*, 598

4    U.S. at 532 (noting that a "use may be justified because copying is reasonably

5    necessary to achieve the user's new purpose"). While BR2049's purpose is to

6    entertain film viewers, Image C served a completely different purpose—*i.e.*, to

7    comment on the societal value of autonomous vehicles and criticize BR2049's bleak

8    view of the future, where humans and machines are surrounded by anxiety and fear,

9    which is the opposite of the future Musk discussed. *Compare* Dkt. 25, *with* TAC ¶

10   11, 51-52; *Warhol*, 598 U.S. at 532, 544-45 (explaining that "other commentary or

11   criticism that targets an original work may have compelling reason to 'conjure up' the

12   original" and that "the meaning of a secondary work, as reasonably can be perceived,

13   should be considered to the extent necessary to determine whether the purpose of the

14   use is distinct from the original, for instance, because the use comments on [or]

15   criticizes…the original").

16        Further, to the extent Alcon is alleging that BR2049 was used "as an additional

17   ingredient to train the AI or for the AI to use as part of image generation" (TAC ¶ 40),

18   such use has recently been recognized as transformative. *Bartz v. Anthropic PBC*,

19   787 F.Supp.3d 1007, 1022 (N.D. Cal. 2025) (holding "the purpose and character of

20   using copyrighted works to train LLMs to generate new text was quintessentially

21   transformative," and if the "training process reasonably required making copies

22   within the LLM or otherwise, those copies were engaged in a transformative use");

23   *see also Kadrey v. Meta Platforms, Inc.*, 788 F.Supp.3d 1026, 1044 (N.D. Cal. 2025)

24   (finding "highly transformative" fair use where the purpose of Meta's copying was

25   "to train its LLMs," which can be used to generate diverse text and perform a wide

26   range of functions, whereas "[t]he purpose of the plaintiffs' books, by contrast, is to

27   be read for entertainment or education").

28

The use of Image C is also fair because it was not for commercial gain.  The more transformative the new work, the less a commercial use weighs against a finding of fair use.  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994).  For example, in *DraftExpress*, the defendant posted a video containing a clip copied from plaintiff on Twitter "publicly…without direct charge."  2022 WL 16962285, at *3.  The court noted that, "[a]lthough [defendant's] social media presence may serve to promote its business and indirectly boost revenue, the commercial use factor concerns 'the degree to which the new user exploits the copyright for commercial gain—as opposed to incidental use as part of a commercial enterprise.'"  *Id.* (quoting *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178 (9th Cir. 2013)).  Thus, this factor weighed in favor of fair use because even if the defendant's video was "considered at least partially commercial, its transformative nature [of providing contrast and commentary] offset[] the significance of any commercialism."  *Id.*

Indeed, "many common fair uses are indisputably commercial."  *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 32 (2021); *see, e.g.*, *McGillvary*, 2024 WL 3588043, at *8-9 (dismissing without leave to amend where defendant's documentary was commercial but also transformative); *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1523 (9th Cir. 1992), *as amended* (Jan. 6, 1993) (explaining that the court is "free to consider the public benefit resulting from a particular use notwithstanding the fact that the alleged infringer may gain commercially" (citing *Hustler*, 796 F.2d at 1153)).  The highly transformative nature of Tesla's use outweighs any commercial purpose.

### 2.    The Nature of the Copyrighted Work

Because Tesla's alleged use was for the purposes of protected commentary, the second factor is given minimal weight assuming that BR2049 is a creative work.  *Burnett*, 491 F.Supp.2d at 969 (where use was to criticize public figure, second factor was "not accord[ed] great weight").  Also, BR2049 has been published for at least eight years (TAC ¶ 10), which favors fair use.  *See DraftExpress*, 2022 WL 16962285,

MPA ISO TESLA AND MUSK'S MOTION TO DISMISS TAC
Case No. 2:24-cv-09033-GW-RAO

1    at *4 (second factor weighed in favor of fair use where plaintiff's work was published

2    for eight years).

3                    **3.    The Alleged Use is Reasonable**

4         The crux of the third factor is whether the amount was "reasonable in relation

5    to the purpose of the copying." *Campbell*, 510 U.S. at 586.  Even assuming that Tesla

6    copied Image A for commentary, that is a single frame that represents a minuscule

7    fraction (less than 1%) of a nearly three-hour film.  Dkt. 51.  In *Stebbins v. Google*

8    *LLC*, the plaintiff alleged infringement of a similarly small portion of its work—an

9    icon that was "one video frame from [plaintiff's] almost four-hour video."  No. 23-

10   CV-00322-TLT, 2023 WL 6139454, at *7 (N.D. Cal. Aug. 31, 2023).  The court

11   found this was "undoubtedly a small portion of the copyrighted work" and "the

12   minimal amount necessary for the purpose of criticism."  *Id.*  Notably, the court

13   further observed that it was "unreasonable to suggest that a single video frame

14   represents the heart of a four-hour video…."  *Id.*  The same is true here.

15        Even crediting Alcon's assertion that Image A is the "most recognizable still

16   image" from BR2049 (TAC ¶ 28) Tesla "must be able to 'conjure up' at least enough

17   of that original to make the object of its critic[ism]…recognizable."  *Campbell*, 510

18   U.S. at 588 (allowing for "quotation of the original's most distinctive or memorable

19   features" where audience's recognition of the original is important to use).  The use

20   of Image C was reasonably necessary to make Musk's point.  *Warhol*, 598 U.S. at

21   532.  To the extent Alcon alleges Tesla copied the ***full*** BR2049 film, that allegation

22   is implausible.  *Supra* § IV.B.  In any event, whether Tesla used a single frame from

23   BR2049 (Image A) or the entire film is irrelevant as even wholesale copying of an

24   entire work may be fair.  *See, e.g.*, *Northland Fam. Plan. Clinic, Inc. v. Ctr. for Bio-*

25   *Ethical Reform*, 868 F.Supp.2d 962, 976-77 (C.D. Cal. 2012) (collecting cases,

26   finding substantial verbatim copying justified for parody); *Stebbins v. Alphabet*, 2025

27   WL 2233208, at *6 (finding "extensive copying was necessary" for critique).

28

### 4.    There is No Cognizable Harm to BR2049

With respect to the fourth and final factor, it too weighs in Tesla's favor because Image C is not a market substitute for BR2049.  Notably, Alcon does not allege that Image C is a market substitute, or even that the use of Image C harmed the market for BR2049; nor could it, as any assertion that Image C could be a market substitute for BR2049 defies logic.  *See, e.g.*, *DraftExpress*, 2022 WL 16962285, at *5 ("The [defendant's] Video is not a market substitute for [plaintiff's work] because someone watching the former will have a 'very different experience' from watching the latter."); *Stebbins v. Google*, 2023 WL 6139454, at *7 (dismissing claim based on fair use because "an icon clearly cannot supplant a video lasting 3 hours, 52 minutes, and 28 seconds").

Nor does Alcon allege harm in its ability to produce derivative works.  TAC ¶ 57 ("At the time of the Event, Alcon was producing a BR2049 derivative work limited TV series titled *Blade Runner 2099*.").  Instead, Alcon alleges it was "discussing with a car brand an exclusive licensed affiliation" for Blade Runner 2099, and that Tesla's use "interfere[s] with Alcon's ability to grant license exclusivity…." *Id*.  Such allegations are not cognizable under a fair use analysis (*Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 652 (9th Cir. 2020) (holding plaintiff was not harmed from loss of fees paid to license a work for a transformative purpose and explaining "the decision by secondary users to pay, or not pay," does not establish whether fair use exists)) and simply implausible—Alcon retains the same flexibility to use Blade Runner 2099 to promote a car brand as it had for BR2049.  TAC ¶ 13 (describing "fiercely negotiated" car brand license for BR2049, which included "screen time where the brand would appear, mostly with K and K's car").  Here, Alcon can continue to negotiate "[t]he number of seconds, their divisibility, and exclusivity" for Blade Runner 2099 with any car brand. *Id*.  Indeed, it is hard to contemplate how the alleged infringement of BR2049 could possibly interfere with Alcon's ability to negotiate an exclusive license for ***Blade Runner 2099***

when considering the recording and Event as a whole and that Image C ***does not even include a vehicle***, much less a vehicle brand.  Moreover, there are no allegations that the literal copy of Image A or BR2049 that Tesla allegedly made was ever seen by or known to anyone other than Tesla.  As such, it is implausible that such use interfered with Alcon's licensing discussions or damaged BR2049's value as alleged.  Finally, Alcon's alleged harm appears to be reputational, which is not cognizable under fair use.  *Id.* ¶ 8 (alleging "reputational" interest in its pictures and calling Musk "controversial"); *see Burnett*, 491 F.Supp.2d at 971 (fourth factor does not protect against "harm on the good will and reputation associated with the copyrighted work" as "'destructive' parodies play an important role in social and literary criticism and thus merit protection even though they may discourage or discredit an original author").  Thus, the fourth factor favors fair use also.

In short, Tesla's use—social commentary on a matter of public concern—goes to the heart of fair use, and Alcon's copyright claim must therefore fail.

**V.    CONCLUSION**

For the reasons stated above, this Court should dismiss Alcon's TAC with prejudice.

Dated:  December 15, 2025          FISH & RICHARDSON P.C.


                                                    By: */s/ Kristen McCallion*
                                                    Christopher S. Marchese (SBN 170239)
                                                    marchese@fr.com
                                                    FISH & RICHARDSON P.C.
                                                    4695 MacArthur Court, Suite 1100
                                                    Newport Beach, CA 92660
                                                    Tel: (213) 533-4240
                                                    Fax: (858) 678-5099

                                                    John S. Goetz (*pro hac vice*)
                                                    goetz@fr.com
                                                    Kristen McCallion (*pro hac vice*)
                                                    mccallion@fr.com
                                                    Vivian Cheng (*pro hac vice*)
                                                    cheng@fr.com
                                                    FISH & RICHARDSON P.C.
                                                    7 Times Square, 20th Floor
                                                    New York, NY 10036
                                                    Tel: (212) 765-5070
                                                    Fax: (212) 258-2291

                                                    Matthew A. Colvin (*pro hac vice*)
                                                    colvin@fr.com
                                                    FISH & RICHARDSON P.C.
                                                    1717 Main Street, Suite 5000
                                                    Dallas, TX 75201
                                                    Tel: (214) 747-5070
                                                    Fax: (214) 747-2091

                                                    Kayleigh E. McGlynn (*pro hac vice*)
                                                    mcglynn@fr.com
                                                    FISH & RICHARDSON P.C.
                                                    One Marina Park Drive, Suite 1700
                                                    Boston, MA 02210
                                                    Tel: (617) 542-5070
                                                    Fax: (617) 542-8906

                                                    A. Louis Dorny (SBN 212054)
                                                    ldorny@tesla.com
                                                    Terry W. Ahearn (SBN 216543)
                                                    tahearn@tesla.com
                                                    Krista M. Carter (SBN 225229)
                                                    kricarter@tesla.com
                                                    TESLA, INC.

3000 Hanover St.
Palo Alto, CA 94304
Tel: (510) 298-8516

Attorneys for Defendants
Tesla, Inc. and Elon Musk

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

24
MPA ISO TESLA AND MUSK'S MOTION TO DISMISS TAC
Case No. 2:24-cv-09033-GW-RAO

1

## **<u>CERTIFICATE OF COMPLIANCE</u>**

2

3          The undersigned, counsel of record for Defendants Tesla, Inc. and Elon Musk,

4  certifies that this brief contains 6,988 words, which complies with the word limit of

5  L.R. 11-6.1.

6                                          */s/ Kristen McCallion*
                                              Kristen McCallion
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28