1  ANDERSON YEH PC
2    Edward M. Anderson (STATE BAR NO. 198183)
   edward@andersonyehlaw.com
3    Regina Yeh (STATE BAR NO. 266019)
   regina@andersonyehlaw.com
4  1055 E. Colorado Blvd. Ste 500
   Pasadena, California 91106
5  Telephone: (626) 204-4092  Facsimile: (888) 744-0317

6  Attorneys for Plaintiff
7  ALCON ENTERTAINMENT, LLC

8              **UNITED STATES DISTRICT COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

11  ALCON ENTERTAINMENT, LLC,          CASE NO.  2:24-CV-09033-GW-RAO
    a Delaware Limited Liability
12  Company,                           **PLAINTIFF ALCON
                                        ENTERTAINMENT, LLC'S
13            Plaintiff,                MEMORANDUM OF POINTS AND
                                        AUTHORITIES IN OPPOSITION TO
14      v.                             DEFENDANTS TESLA, INC.'S AND
                                        ELON MUSK'S MOTION TO
15                                      DISMISS THIRD AMENDED
16                                      COMPLAINT**
17
18  TESLA, INC., a Texas Corporation;
    ELON MUSK, an individual;          Hearing Date:   January 29, 2026
19  WARNER BROS. DISCOVERY,            Time:           8:30 a.m.
    INC., a Delaware Corporation;       Courtroom:      9D
20                                      Judicial Officer:  Hon. George H. Wu
21            Defendants.
22
23
24
25
26
27

28
    _____
    PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
    DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

## **TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................... 1

II.     FACTS ...................................................................................................... 1

III.    PROCEDURAL SUMMARY .................................................................... 3

IV.     RULE 12 (b)(6) STANDARDS ................................................................. 3

V.      THE FAC VALIDLY PLEADS *PRIMA FACIE* DIRECT
        COPYRIGHT INFRINGEMENT AGAINST MUSK AND TESLA ......... 5

    A. Copyright Infringement Requirements. ................................................. 5

    B. Ownership Is Validly Pled. ................................................................... 5

    C. The TAC Pleads Unlawful Copying. ..................................................... 5

        **1.** Meaning of "copying." ................................................................. 5

        **2.** Types of "copying." ..................................................................... 6

        **3.** The TAC validly pleads actual copying. ...................................... 6

        **4.** The TAC validly pleads violation of Alcon's Section 106(1)
               reproduction rights in BR2049 by literal copying. .................... 6

        **5.** Alcon's Section 106(1) and (2) Nonliteral Copying Claim. ........ 10

        **6.** The TAC pleads violation of Alcon's Section 106(1) and Section
               106(2) rights by nonliteral copying. ........................................... 11

                a.    Section 106(1) and (2) Taking of Character K and
                      Defendant's General Lack of Acknowledgment That
                      Musk and Tesla At Least Arguably Objectively
                      Presented Image C as From or About BR2049
                      Versus Being Their Own Original Work. ........................ 12

                b.    Section 106(1) and (2) Taking of Setting. ....................... 15

                c.    Section 106(1) and (2) Taking of Urgent Human-AI
                      Decision Point Theme. ................................................... 15

                d.    Section 106(1) and (2) Taking of Mood of Anxiety,
                      Fear and Urgency specifically about the Human-AI
                      Decision Point. ............................................................... 16

                e.    Section 106(1) and (2) Taking of Combination of

i

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

1

Elements. ............................................................................16

VI.    FAIR USE MAY NOT BE DECIDED HERE ON RULE 12(b)(6)..........18

VII.   LEAVE TO AMEND.......................................................................22

CERTIFICATE OF COMPLIANCE ................................................................22

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Stability AI Ltd*, 744 F.Supp.3d 956 (N.D. Cal. 2024) ............................ 7

*Anderson v. Stallone*, 87-0592 WDKGX, 1989 WL 206431 (C.D. Cal. 1989) 5, 6, 14

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) ............................................................................................................... 19

*Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 1994) ................. 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................... 4

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988). ......................... 3

*Bartz v. Anthropic PBC,* 787 F.Supp.3d 1007 (N.D. Cal. June 23, 2025) ........... 8, 20

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................... 4

*Bell v. Wilmott Storage Services, LLC*, 12 F.4th 1065 (9th Cir. 2021) ................ 8

*Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir.) ........................................ 13

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ............................... 19

*Daniels v. Walt Disney Co.*, 958 F.3d 767 (9th Cir. 2020) .............................. 13

*Danjaq, LLC v. Universal City Studios, LLC*, No. CV 14-02527 SJO EX, 2014 WL 7882071 (C.D. Cal. Oct. 2, 2014) ..................................................................... 9

*DC Comics v. Towle*, 802 F.3d 1012 (9th Cir. 2015) ...................................... 13

*Design Data Corp. v. Unigate Enterprise, Inc.*, 847 F.3d 1169 (9th Cir. 2017) ........ 8

*Dr. Seuss Enterprises, L.P. v. ComicMix, LLC*, 983 F.3d 443 (9th Cir. 2020) ... 18, 20

*Dumond v. Reilly*, CV-19-8922-GW-AGRx, 2021 WL 733311 (C.D. Cal. 2021) ..... 9

*Esplanade Productions, Inc. v. The Walt Disney Company*, CV 17-02185-MWF (JCx), 2017 WL 5635027 (C.D. Cal. 2017) ...................................................... 9

*Fox Film Corp. v. Doyal*, 286 U.S. 123 (1932) ............................................. 5

*Funky Films, Inc. v. Time Warner Ent. Co., L.P.*, 462 F.3d 1072 (9th Cir. 2006) .... 12

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015, *en banc*) ................................ 5

*Godecke v. Kinetic Concepts, Inc.,* 937 F.3d 1201 (9th Cir. 2019) ........................ 3, 4

*Hearn v. R.J. Reynolds Tobacco Co.*, 279 F.Supp.2d 1096 (D. Az. 2003) ................ 4

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841 (9th Cir. 2012) ........... 17

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

*Lee v. City of Los Angeles*, 250 F.3d 668 (2001) .......................................................3, 4

*Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904 (9th Cir. 2010)..................12

*McGary v. City of Portland*, 386 F.3d 1259 (9th Cir. 2004).......................................5

*Micro Star v. Formgen, Inc.,* 154 F.3d 1107 (9th Cir. 1998).................10, 11, 13, 16

*Monge v. Maya Magazines, Inc.*, 688 F.3d 1164 (9th Cir. 2012) ..............................18

*Olson v. Nat'l Broad. Co.,* 855 F.2d 1446 (9th Cir. 1988)..........................................13

*Paramount Pictures Corp. v. Axanar Prods., Inc.,* No. CV 15-09938 RGK (Ex), 2016 WL 2967959  (C.D. Cal. 2016)................................................9, 11, 12, 14

*Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) 17

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018)....................6, 12, 17

*See ComicMix*, 983 F.3d at 461 ..................................................................................21

*Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1518-28 (9th Cir. 1992) .....8

*Shaw v. Lindheim*, 919 F.2d 1353, 1360-61 (9th Cir. 1990)...............................12, 15

*Skidmore as Trustee for the Randy Wolfe Trust v. Led Zeppelin ("Skidmore")*, 952 F.3d 1051, 1064 (9th Cir. 2020).....................................................................passim

*Thomson Reuters Enterprise Centre GMBH v. Ross Intelligence Inc.*, 1:20-cv-613-SB, 2025 WL 458520, -- F.Supp. 3d --  (D. Del. Feb. 11, 2025) ...................20

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000) ............................17

*Tremblay v. OpenAI, Inc.,* 716 F.Supp.3d 772 (N.D. Cal. 2024)................................7

*U.S. v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011)..............................3, 4, 22

*Unicolors, Inc. v. H&M Hennes & Mauritz, LLP*, 595 U.S. 178 (2022) ....................5

*Walt Disney Prods. v. Filmation Assocs.*, 628 F.Supp. 871 (C.D. Cal. 1986)............9

*Warner Bros. Pictures, Inc. v. Columbia Broadcasting System, Inc.*, 216 F.2d 945 (9th Cir. 1954) ..........................................................................................13

*Wozniak v. Warner Bros. Entertainment Inc.*, 726 F.Supp.3d 213 (S.D.N.Y. 2024) .5

<u>Rules</u>

Fed. R. Civ. P. 8(d)(2) ...................................................................................................4

Fed. R. Civ. P. 8(d)(3) ...................................................................................................4

Fed. R. Civ. P. 12(b)(6) ........................................................................................3, 4, 18

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

Fed. R. Civ. P. 56....................................................................................................4

## Statutes

17 U.S.C. § 106....................................................................................................5

17 U.S.C. § 106(1)...........................................................................................passim

## Other Authorities

Zeitchik & J. Sancton, "How Disney's OpenAI Deal Changes Everything," *The Hollywood Reporter* (December 22, 2025), https://www.hollywoodreporter.com/business/digital/bob-iger-disney-openai-sora-ai-video-1236456928/ ............................................................................21

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

I.    **INTRODUCTION**

Plaintiff Alcon Entertainment, LLC ("Plaintiff" or "Alcon") opposes the motion by defendants Elon Musk ("Musk") and Tesla, Inc. ("Tesla") to dismiss Alcon's Third Amended Complaint ("TAC").

II.    **FACTS**

Alcon produced and owns all relevant copyright rights to the motion picture "Blade Runner 2049" ("BR2049"), a sequel to the original "Blade Runner" motion picture released in 1982 ("1982 Picture"). (TAC, ¶ 2; ECF 51 [DVD of BR2049].) Alcon also exclusively owns derivative work rights to the 1982 Picture. (*Id.*, ¶ 9.) Alcon licenses copyright protected elements of BR2049 for marketing and promotion of automobile brands and products. (*Id.*, ¶ 13.) The ability to grant exclusive rights to an auto brand is valuable. (*Id.*)

Musk and Tesla had and have a history of using elements from both motion pictures in connection with Tesla product reveals and related marketing and promotion. (TAC, ¶¶ 17-20.) Musk and Tesla contracted with defendant Warner Bros. Discovery, Inc. ("WBDI") to conduct a marketing event entitled "We Robot" on October 10, 2024 from the WBDI Burbank studio lot (the "Event"). (*Id.*, ¶¶ 2, 22-26.) The Event's purpose was to reveal Tesla's new Cybercab (or Robotaxi) artificially intelligent fully self-driving cars, and artificially intelligent Optimus robot products, both to solicit investment in Tesla and to generate commercial interest in the new products. (*Id.*, ¶ 22.)

Musk and Tesla expressed interest to WBDI in using arguably the most recognizable single still image from BR2049 ("Image A") in Musk's keynote speech for the Event. (TAC, ¶¶ 23, 26-28.) Until near the start of the Event, Musk and Tesla believed that WBDI either had granted or would grant them at least some of the rights to do so pursuant to a license, and that WBDI had the legal capacity to do so. (*Id.*, ¶ 30.) Just several hours before the Event's scheduled start, Musk and

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

Tesla learned that Alcon held some or all of the required rights to use Image A and that Alcon refused to grant usage rights to Musk and Tesla (and, under one alternative pleading theory, also learned that Alcon was adamant that Musk and Tesla not make any use of any BR2049 elements in the Event).  (*Id.*, ¶¶ 33-38.)

Musk and Tesla then used an AI-driven image generator to create an alternative image ("Image C"), (TAC, ¶ 39), which Alcon alleges on information and belief was accomplished by Musk and Tesla copying some or all of BR2049 into an AI image generator.  (*Id.*, ¶ 40.)  Musk and Tesla featured Image C prominently in the opening of Musk's Event keynote speech.  (*Id.*, ¶¶ 43-44.)  Musk commenced his substantive keynote with a two-second display of an image of Earth from space at sunrise with the words "What Kind of World Do We Want to Live In?" on it), and Musk saying concurrently, "So you see a lot of sci-fi movies where the future is dark and dismal, where it's not the future you want to be in."  (*Id.*)  Then, the Event display shifted to Image C for about 11 seconds, during which Musk said: "You know, I love 'Blade Runner,' but I don't know if we want that future.  I believe we want that duster he's wearing, but not the the, uh, not the bleak apocalypse."  (*Id.*)  Image C was then replaced by other images and Musk discussed his vision of the future and how Tesla's new products would achieve it.  (*Id.*)

Musk's remarks and Image C were displayed to an in-person audience of hundreds of people, and livestreamed and re-posted (and recorded) to a worldwide audience in the millions.  (TAC, ¶¶ 24, 45, 49; ECF 25 ["Event Recording"].)

The words "blade runner" are a commonly used shorthand for BR2049 and Musk is known for using them in that way, and also sometimes using those two words to refer to BR2049's main character, K.  (TAC, ¶ 19.)  Alcon alleges that Musk and Tesla intended Image C to be understood either as an actual scene from BR2049's core "Las Vegas Sequence," or an illustration of it; that Musk and Tesla did so to take protected expression of BR2049, including to set the theme of the

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

1  Event (consistent with his use of 1982 Picture and BR2049 elements to set the
2  theme of a November 2019 Tesla cybertruck product reveal event); and that the
3  Event usage came across objectively in this way.  (TAC, ¶¶ 19, 40-43, 56.)

4  ### III.    PROCEDURAL SUMMARY

5  Plaintiff's operative pleading is the TAC.  (ECF 81.)  Musk and Tesla move
6  to dismiss the sole Direct Copyright Infringement claim against them pursuant to
7  Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") ("Motion") (ECF 88).  Musk and Tesla
8  previously moved under Rule 12(b)(6) to dismiss the Direct Copyright Infringement
9  claim against them as it appeared in Alcon's First Amended Complaint ("FAC",
10  ECF 37; Musk and Tesla Motion to Dismiss the FAC ["Prior Motion"], ECF 48).  In
11  an April 4, 2025 Tentative Ruling (ECF 61) and resulting April 7, 2025 Order (ECF
12  62) on that Prior Motion, the Court found that said claim in Alcon's FAC included
13  validly pled allegations of actual and literal copying of BR2049 against which Musk
14  and Tesla had no persuasive Rule 12(b)(6) argument for dismissal.  (*See* ECF 61 at
15  pp. 13-16.)  Relative to the Court's April 2025 reasoning, the TAC's infringement
16  claim against Musk and Tesla does not differ meaningfully from the FAC's.

17  ### IV.    RULE 12 (b)(6) STANDARDS

18  Rule 12(b)(6) is for legal challenges, not factual challenges.  The court must
19  take all factual allegations in the complaint that are not legal conclusions as true.
20  *Godecke v. Kinetic Concepts, Inc.,* 937 F.3d 1201, 1205 (9th Cir. 2019); *Lee v. City
21  of Los Angeles*, 250 F.3d 668, 679 (2001).  The court must construe the facts in the
22  most favorable light to supporting a claim, and give plaintiff the benefit of all
23  reasonable inferences from the express allegations.  *Id.*; *U.S. v. Corinthian Colleges*,
24  655 F.3d 984, 991 (9th Cir. 2011); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,
25  699 (9th Cir. 1988).  The pleading must demonstrate only facial plausibility,
26  meaning "sufficient factual matter, accepted as true, to 'state a claim to relief that is
27  plausible on its face.'"  *Godecke*, 937 F.3d at 1208 (quoting *Ashcroft v. Iqbal*, 556

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

1  U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

2  (2007)).  Dismissal can lie if the facts, even viewed favorably to Plaintiff, are

3  implausible; for "lack of a cognizable legal theory"; "the absence of sufficient facts

4  alleged under a cognizable legal theory" (*Godecke*, 937 F.3d at 1208), or if the

5  complaint itself alleges facts necessarily fatal to a claim (*Hearn v. R.J. Reynolds

6  Tobacco Co.*, 279 F.Supp.2d 1096, 1102 (D. Az. 2003)).

7         The focus of Rule 12(b)(6) analysis "is the complaint," and, generally, the

8  court "may not consider any material beyond the pleadings in ruling on a Rule

9  12(b)(6) motion" without treating the motion pursuant to Fed. R. Civ. P. 56

10  (summary judgment).  *Corinthian Colleges*, 655 F.3d at 998-99; *Lee*, 250 F.3d at

11  688.  The court may consider external material proffered by the movant, pursuant to

12  three exceptions: 1) exhibits to the complaint; 2) documents referenced by the

13  complaint, upon which it "necessarily relies," and the authenticity of which are

14  undisputed; and 3) matters properly subject to judicial notice.  *Corinthian Colleges*,

15  655 F.3d at 991, 998-999; *Lee*, 250 F.3d at 688.

16         Plaintiff concurrently submits objections and responses to the Motion's

17  extrinsic material proffers, including Musk and Tesla's Request for Judicial Notice.

18         Where a plaintiff relies on alternative pleading theories, one alternative theory

19  may not be construed as an admission against another alternative, but inconsistent,

20  pleading theory.  Fed. R. Civ. P. 8(d)(3); *Molsbergen v. U.S.,* 757 F.2d 1016, 1019

21  (9th Cir. 1985).  To survive pleading challenge, the plaintiff does not need to

22  establish that all alternative pleading theories on a particular point are validly plead,

23  only that at least one of them is.  Fed. R. Civ. P. 8(d)(2); *Coleman v. Standard Life

24  Ins. Co.*, 288 F.Supp.2d 1116, 1120, n. 1 (E.D. Cal. 2003).  The court on Rule

25  12(b)(6) may not weigh relative plausibility of competing alternative theories,

26  absent extremely high relative plausibility of one theory over another.  *Starr v.

27  Baca*, 652 F.3d 1202, 1216-1217 (9th Cir. 2011).

28

4

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC**

Where a pleading sets forth a novel legal theory, Rule 12(b)(6) dismissal is especially disfavored, because the strong policy preference is to allow novel theories to be developed factually, to allow development of the law.  *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004).

## V.    THE FAC VALIDLY PLEADS *PRIMA FACIE* DIRECT COPYRIGHT INFRINGEMENT AGAINST MUSK AND TESLA

### A. Copyright Infringement Requirements.

A copyright infringement plaintiff must prove (and thus plead): "(1) that [it] owns a valid copyright in [the infringed work]; and (2) that [the defendant or defendants] copied protected aspects of the work."  *Skidmore as Trustee for the Randy Wolfe Trust v. Led Zeppelin ("Skidmore")*, 952 F.3d 1051, 1064 (9th Cir. 2020).  The elements are sometimes (usually in older cases) stated by the shorthand: (1) ownership and (2) copying.  *See, e.g., Anderson v. Stallone*, 87-0592 WDKGX, 1989 WL 206431 at *11 (C.D. Cal. 1989).

### B. Ownership Is Validly Pled.

The TAC pleads Alcon's ownership of BR2049.  (TAC, ¶¶ 2, 10, 47.)  Musk and Tesla do not contend otherwise.

### C. The TAC Pleads Unlawful Copying.

#### 1.  Meaning of "copying."

The "copying" element is shorthand for "violation of one of the exclusive rights provided to a copyright owner under 17 U.S.C. § 106" ("Section 106").  17 U.S.C. § 501; *Wozniak v. Warner Bros. Entertainment Inc.*, 726 F.Supp.3d 213, 233 (S.D.N.Y. 2024).  Section 106 affords a motion picture copyright owner, *inter alia*, the following exclusive rights: (1) "to reproduce the copyrighted work in copies or phonorecords"; (2) "to prepare derivative works based upon the copyrighted work"; …  and (5) with respect to "individual images" from a motion picture, "to display the copyrighted work publicly."  17 U.S.C. § 106(1), (2) and (5).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

## 2. <u>Types of "copying."</u>

To prove the "copying" element, a plaintiff must prove "actual copying" of their work, plus either "literal copying" of all or part of it, or "copying of protected elements" of it (also called "substantial similarity copying" or "nonliteral copying"). *Oracle International, Inc. v. Rimini Street, Inc.*, 123 F.4th 986, 995 (9th Cir. 2024); *Wozniak*, 726 F.Supp.3d at 229.

## 3. <u>The TAC validly pleads actual copying.</u>

"Actual copying" means that the defendant did not create their own work independently, "without knowledge of or exposure to the plaintiff's work," *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), overruled on other grounds by *Skidmore*, 952 F.3d 1051 (9th Cir. 2020), but rather had plaintiff's work in mind at some level in the act of creation. The Court in its April 2025 findings (ECF 61, 62) found that Alcon had validly pled "actual copying" in the FAC (ECF 61 at pp. 13-16) on substantially the same allegations in that regard as appear in the TAC. The Motion makes no arguments for the Court to change its position on this point as to the TAC, and there is no reason to do so.

## 4. <u>The TAC validly pleads violation of Alcon's Section 106(1) reproduction rights in BR2049 by literal copying.</u>

"Literal copying" means making an exact copy (*e.g.*, with a scanner or electronically duplicating a computer file, or the like). *Oracle*, 123 F.4th at 995. No substantial similarity comparison is required; liability attaches absent a specific defense such as *de minimis* copying or fair use. *See, e.g., Wozniak*, 726 F.Supp.3d at 233-34; *Anderson*, 1989 WL 206431 at *8. "Literal copying" is necessarily "actual copying." In the Prior Motion, the only Rule 12(b)(6) challenge that Musk and Tesla made to Alcon's claim of literal copying by putting all or part of BR2049 into an AI image generator, (FAC, ¶¶ 103-104, 127a, 127b; TAC, ¶¶ 16, 40 and 48), was implausibility. (Prior Motion, 14:3-22.)

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

The Court in its April 2025 findings (ECF 61, 62) found Alcon's allegations plausible enough (ECF 61 at pp. 13-16), and they still are. Unauthorized copying of valuable expressive content into AI systems to generate content is currently rampant. *See, e.g., Tremblay v. OpenAI, Inc.,* 716 F.Supp.3d 772 (N.D. Cal. 2024); *Anderson v. Stability AI Ltd*, 744 F.Supp.3d 956 (N.D. Cal. 2024). Musk owns xAi, a company that runs "Grok," (TAC, ¶ 16), described as "a free AI assistant … [which] offers real-time search, image generation, trend analysis, and more." https://grok.com/. That Musk might have put BR2049 or parts of it into Grok (or another AI image generator) for image generation, especially where Musk says he "loves" the movie and was determined to use it, seems more than plausible enough, especially where Musk and Tesla admit that they did use an AI image generator to create Image C, and right at the time when they were highly interested in using images of BR2049, and where Image C has at least probative substantial similarity to BR2049. (ECF 61 at pp. 13-16.)

The current Motion's arguments against plausibility of Alcon's literal copying allegations, (Motion at 13:18-15:7), fail to acknowledge the Court's prior findings in favor of plausibility on essentially the same allegations when they appeared in FAC. The only new implausibility argument that Musk and Tesla make is that Alcon's allegations that they copied the entire BR2049 into an AI image generator is "especially implausible given its size," (Motion at 15:4-7), coupled with an unsupported purported "fact that common AI image generators, including Grok and DALL-E 3/ChatGPT, do not support video uploads[.]" (*Id.*)

There is nothing implausible about a defendant copying the entirety of a motion picture into a computer or other software engine rapidly without authorization, and indeed such conduct has been an ongoing industry problem for at least two decades. There are numerous available software suites that contain AI image generation tools that can be used on video (for example, Adobe has an entire

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

suite of AI image generation tools available in its Creative Cloud service). Moreover, Musk actually owns and controls his own AI software company, (TAC, ¶ 16), and whether or not some member of the public could have uploaded the entirety of BR2049 into, say, Musk's "Grok," it seems entirely plausible that Musk could have caused such to happen in short order.

Image C on its face also has at least probative substantial similarity to elements of BR2049's "Las Vegas Sequence" beyond the elements in just Image A. (*See* comparison at TAC, ¶ 41.)  Musk and Tesla were also operating under time pressure, and it is plausible that where they intended to create an AI image of a scene from BR2049's "Las Vegas Sequence," they might first put the entire motion picture into an AI image generator, rather than spend time selectively parsing scenes for the AI to work with.

Musk and Tesla further argue that whatever they may have done in the process of making Image C is irrelevant, unless Image C is itself infringing.  That is directly contrary to the baseline governing law in the Ninth Circuit.  The law in the Ninth Circuit is that where a defendant makes an unauthorized literal copy of the plaintiff's work, even if that copying is for, say the purpose of reverse engineering plaintiff's work or making some other transformation of it (a phenomenon or fact pattern sometimes called "intermediate copying"), that unauthorized act of literal copying **_is_** an actionable infringement, absent a defense of fair use or another exculpatory doctrine.  *See Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1518-28 (9th Cir. 1992); *Bell v. Wilmott Storage Services, LLC*, 12 F.4th 1065, 1074-1081 (9th Cir. 2021) (discussing "intermediate" literal copying and its relationship to the *de minimis* copying doctrine); *Design Data Corp. v. Unigate Enterprise, Inc.*, 847 F.3d 1169, 1172-73 (9th Cir. 2017); *Bartz v. Anthropic PBC*, 787 F.Supp.3d 1007, 1028-1029 (N.D. Cal. June 23, 2025) (discussion of "intermediate copying" doctrine in AI training context).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

1    Courts sometimes decline to recognize "intermediate" literal copying as a

2  valid *prima facie* claim where the competing works are both literary works (a

3  category which includes motion pictures), ***and*** where the plaintiff delays raising

4  "intermediate copying" as an issue until dismissal of "final product" copying claims

5  appears imminent.  *See, e.g., Esplanade Productions, Inc. v. The Walt Disney*

6  *Company*, CV 17-02185-MWF (JCx), 2017 WL 5635027 at *17-18 (C.D. Cal.

7  2017).  That appears to be what occurred in *Dumond v. Reilly*, CV-19-8922-GW-

8  AGRx, 2021 WL 733311 at *4-5 (C.D. Cal. 2021).

9    The Court should not apply the *Esplanade* or *Dumond* exception here for at

10  least three reasons.  First, there is no *per se* rule disallowing intermediate copying

11  claims where competing literary works are at issue, and indeed courts in this district

12  have expressly allowed such claims where the issue was prominently raised by the

13  plaintiff.  *See, e.g., Walt Disney Prods. v. Filmation Assocs.*, 628 F.Supp. 871, 876

14  (C.D. Cal. 1986) ("it is thus irrelevant that [the defendant] has not concluded or

15  'realized' what it considers to be a final motion picture: the Act prohibits the

16  creation of copies, even if the creator considers those copies mere interim steps

17  towards some final goal"); *Danjaq, LLC v. Universal City Studios, LLC*, No. CV 14-

18  02527 SJO EX, 2014 WL 7882071, at *6 (C.D. Cal. Oct. 2, 2014) (allowing claim

19  based apparently entirely on defendant's non-final drafts); *Paramount Pictures*

20  *Corp. v. Axanar Prods., Inc.,* No. CV 15-09938 RGK (Ex), 2016 WL 2967959 at *6

21  (C.D. Cal. 2016) (allowing suit on a preliminary not yet complete work).

22    Second, this is not a case where Alcon raised its literal copying claim as some

23  late afterthought; Alcon made Musk and Tesla's copying of BR2049 elements into

24  an AI image generator a prominent issue from inception.  (*See, e.g.,* Complaint

25  [ECF 1] at ¶¶ 2-3, 55-56, 75; FAC [ECF 32] at ¶¶ 2, 41, 103-105, 127a and 127b.)

26    Third, the literal copying facts alleged here should be treated more like

27  reverse software engineering claims than more traditional copying claims in any

28

9

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC**

1   event.  AI image generators arguably do approach creative works like software to be

2   reverse engineered.  At the very least, the situation raises novel issues in the context

3   of "intermediate copying" and so should be allowed factual development.  *McGary*,

4   386 F.3d at 1270.

5   ### 5.  **Alcon's Section 106(1) and (2) Nonliteral Copying Claim.**

6   "Nonliteral copying" means the defendant took from plaintiff's work to make

7   the infringement, but not at the level of an identical copy.  *Oracle*, 123 F.4th at 995.

8   A defendant violates Section 106(1) by creating a work that actually copied

9   "protected elements" of the plaintiff's work, giving it "substantial similarity" to the

10  plaintiff's work.  *Skidmore*, 952 F.3d at 1064.  If there is at least some violation of

11  Section 106(1), then there may also be a violation of Section 106(2) derivative work

12  preparation rights.  *Oracle*, 123 F.4th at 994-96; *Micro Star v. Formgen, Inc.*, 154

13  F.3d 1107 (9th Cir. 1998).  Further, where there is at least some taking of protectible

14  elements "physically" present in the accused work, the Court in the derivative rights

15  context can consider protectible elements of plaintiff's work which the accused

16  work is referencing, even if those elements are not themselves "physically" present

17  the copy created by the defendant.  *Id.*

18  In *Micro Star*, the defendant seller of an unlicensed game extension to the

19  plaintiff's 1990s-popular video game "Duke Nukem" was found to have infringed

20  Duke Nukem's core art files (and thus essentially all protected expression of the

21  game), even though the game extension itself did not contain any physical taking of

22  the art files, but rather only referenced them by a physical taking of game code

23  uninteresting by itself.  154 F.3d at 1112.  The Ninth Circuit found that where the

24  limited amount of code physically taken demonstrably pointed to tangibly protected

25  expression within the plaintiff's exclusive copyright rights, even if that tangible

26  space was not physically located within the defendant's accused work, the defendant

27  had committed a large scale Section 106(2) infringement of protected elements

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

across the entire work, not just elements in the physical footprint of the infringement.  *Id.* at 1111-1112.  *Micro Star* and cases like it thus teach that, for some types of protected works, a small "physical" Section 106(1) infringement can be a bigger Section 106(2) infringement, not limited only to elements "physically" present in the infringing work.  The Ninth Circuit's recent *Oracle* opinion reaffirmed *Micro Star* on this precise point.  *Oracle*, 123 F.4th at 995.

For a well-known motion picture like BR2049, if a defendant displays a single still image of an iconic scene from the movie – or an illustration that evokes one – Alcon contends that the defendant effectively "gates" the audience potentially to all the protected elements (or a set of them) in the whole movie, which do exist in a tangibly fixed expressive form (the movie) and are thus protected.  *Micro Star*, 154 F.3d at 1112; *see also, e.g., Paramount Pictures Corp. v. Axanar Productions, Inc.*, 2:15-cv-009938-RGK-E, 2017 WL 83506 at *1 (C.D. Cal. 2017) (Star Trek universe reference leveraging); *Wozniak*, 726 F.Supp.3d at 220-221, 227-228 (Batman universe reference leveraging).  To the extent Musk and Tesla contend or the Court believes that Alcon's theory in this regard is novel, that favors denying a Rule 12(b)(6) challenge.  *McGary*, 386 F.3d at 1270.

### 6. The TAC pleads violation of Alcon's Section 106(1) and Section 106(2) rights by nonliteral copying.

The Ninth Circuit analyzes substantial similarity by the extrinsic/intrinsic analytical filtering test.  *Skidmore*, 952 F.3d at 1064.  The extrinsic test has three steps:

> (1) the plaintiff identifies similarities between the copyrighted work and the accused work; (2) of those similarities, the court disregards any that are based on unprotectable material or unauthorized use; and (3) the court must determine the scope of protection ("thick" or "thin") to which the remainder is entitled "as a whole."

*Corbello*, 974 F.3d at 974, quoting *Apple Computer, Inc. v. Microsoft Corp.*, 35

11

F.3d 1435, 1443 (9th Cir. 1994).  If plaintiff's claim survives extrinsic analysis, a jury must conduct the "intrinsic" step, which "examines an ordinary person's subjective impressions of the similarities between the two works," under judicial guidance.  *Corbello*, 974 F.3d at 974, quoting *Funky Films, Inc. v. Time Warner Ent. Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006), *Shaw v. Lindheim*, 919 F.2d 1353, 1360-61 (9th Cir. 1990), *Shaw* and *Funky* both overruled on other grounds by *Skidmore*, 952 F.3d 1051.

When plaintiff's work is a motion picture, the extrinsic test considers elements such as plot, themes, dialogue, mood, setting, pace, characters, and sequence of events.  *Rentmeester*, 883 F.3d at 1118-1119.  Science fiction motion pictures are to be given the most plaintiff-favorable treatment, or "thickest" protection of elements, *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 913-914 (9th Cir. 2010); *Rentmeester*, 883 F.3d at 1120, including because doing so will still leave defendants a myriad of alternative expressive options.  *Mattel*, 883 F.3d at 913-914 ("there are" … "gazillions of ways to make an aliens-attack movie."); *Rentmeester*, 883 F.3d at 1120.

a.  Section 106(1) and (2) Taking of Character K and Defendant's General Lack of Acknowledgment That Musk and Tesla At Least Arguably Objectively Presented Image C as From or About BR2049 Versus Being Their Own Original Work.

Motion picture character copying can occur at two different levels.  On one level, if as here, a plaintiff is claiming infringement of a specific motion picture in context, then its characters are assessed as protectable elements at the same level of scrutiny as the other elements (plot, setting, theme, etc.) – *see, e.g., Axanar*, 2017 WL 83506 at *6 ("even lightly sketched characters together with other extrinsic test elements may be enough for a finding of infringement"), citing *Olson v. Nat'l*

1    *Broad. Co.,* 855 F.2d 1446, 1452-53 (9th Cir. 1988); *see also Berkic v. Crichton*,

2    761 F.2d 1289, 1293 (9th Cir. 1985) (first case to add "characters" to the plot,

3    setting, theme, etc. list, and changing "sequence" to "sequence of events," with no

4    discussion that character element was subject to any higher standard than the other

5    elements), *cert. denied*, 474 U.S. 826 (1985); *Rice v. Fox Broadcasting Co.*, 148

6    F.Supp.2d 1029, 1056-57 (C.D. Cal. 2001).

7        The FAC articulates protectable elements of K that appear, including at least

8    partially "physically present," in both BR2049 and the accused works, sufficient to

9    satisfy the extrinsic test at the ordinary-element level of character scrutiny.  This

10   includes K's most distinct visual appearance "when depicted as a duster-clad 'blade

11   runner' [a character whose profession is a hunter and killer of rogue artificially

12   intelligent humanoid robots or 'replicants'] with close-cropped hair viewed in

13   silhouette or near-silhouette, surveying or exploring a post-apocalyptic ruined

14   cityscape bathed in orange light."  (TAC, ¶¶ 6, 11, 27-28, 39, 41, esp. 50, Event

15   Recording at 0:05:43-44, BR2049 at 1:36:28-1:37:59, 1:40:48-2:01:50.)

16       At another, different and more difficult to establish level, a plaintiff may also

17   claim that a character is protectable independently, outside of any single work.  The

18   Ninth Circuit does not rely on any one test for this, *Daniels v. Walt Disney Co.*, 958

19   F.3d 767, 774 (9th Cir. 2020), and recognizes at least three.  There is a three-part

20   "distinct delineation" or "*Towles*" test.  *Daniels*, 958 F.3d at 771, citing *DC Comics

21   v. Towle*, 802 F.3d 1012, 1021 (9th Cir. 2015).  Independent character protection

22   also lies if the character "constitutes the story being told."  *Daniels*, 958 F.3d at 773-

23   74, citing *Warner Bros. Pictures, Inc. v. Columbia Broadcasting System, Inc.*, 216

24   F.2d 945, 950 (9th Cir. 1954).  The TAC alleges K satisfies the "story being told"

25   test and why.  (TAC, ¶¶ 6, 11, 27-28, 39, 41, esp. 50.) This aspect of K arguably is

26   part of the non-physically present elements Musk and Tesla semiotically reference-

27   leveraged and cognizable under *Micro Star*, 154 F.3d at 1112.

28

13

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

Under a third "bodily appropriation" test, if a plaintiff's motion picture includes a sufficiently distinct character, and the defendant creates a work which the defendant means to be understood as including plaintiff's actual character, the defendant's work is a Section 106(2) violation without any need for substantial similarity comparison. *Anderson*, 1989 WL 206431 at *8. The reasoning is grounded in the kind of reference leverage principle discussed above – if the defendant says their work's character ***is*** Rocky Balboa, the defendant is treated as taking all of what Rocky Balboa is expressively, not just his name. *Id.*

Here, one of Alcon's fundamental contentions is that, taking into account the overall context here -- including Musk's known affinity for BR2049, how Image C looks, and what Musk said when presenting it -- Musk not only intended, but the audience reasonably objectively understood, that what Musk was showing them by Image C was either a modified actual scene specifically from BR2049, or an illustration of BR2049's "Las Vegas Sequence," (not, for example, some other original work by Musk). (TAC, ¶¶ 6, 8, 11-12, 19, 28, 41, 43-45, 50, 56.) In such a context, the figure in Image C can only be K.

Musk and Tesla effectively holding out Image C to the audience as an illustration of BR2049's K character and "Las Vegas Sequence" makes the case fundamentally different than all of the cases which Musk and Tesla cite regarding application of genericity doctrines such as *scenes-a-faire* and merger. All of those cases appear to apply these non-originality doctrines in contexts where the accused work is held out to be its own, independently standing original work -- what is sometimes called an alleged "ripoff" or "knockoff."

However, in cases where the accused work is being objectively held out as an extension of or illustration of the plaintiff's work, courts readily find substantial similarity, even where some generic or non-original elements are present. *See, e.g., Wozniak*, 726 F.Supp.3d at 231-32, 237-38; *Axanar*, 2017 WL 83506 at *5-6

---

14

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

(court's conclusion that extrinsic test satisfied "finds strong support in Defendants' intent for [accused] works to [create a Star Trek work]."); *see also Shaw*, 919 F.2d at 1363.

It makes logical sense to differentiate between the two situations. Where a defendant actually or effectively holds a work out as relying on the plaintiff's in that way -- and especially (as here) if the defendant adds nothing new -- the defendant has effectively engaged in virtual identical copying: the audience naturally sees the elements which might have some non-originality as being the specific iteration of those elements which attach to the plaintiff's work. (A situation not true with "knockoffs," or certainly not as true.) Virtual identity of copying is almost always infringing if the original work has any level of creativity at all. That is the situation here with Musk and Tesla's copying of all alleged protected elements.

b. Section 106(1) and (2) Taking of Setting.

The TAC articulates sufficiently original protectable elements of setting that appear, including at least partially "physically," in both BR2049 and the accused works. (TAC, ¶¶ 27-28, 39, 41-45, esp. 53, Event Recording at 0:05:43-44, BR2049 at 1:36:28-1:37:59, 1:40:48-2:01:50.) Again, even if some of the elements of the setting have non-original aspects, where Musk effectively says Image C is showing a key setting from BR2049, and where there are no meaningful setting differences in Image C from BR2049's setting to say other otherwise, Musk and Tesla have engaged in virtual identical copying of setting, and BR2049 has at least the minimal level of originality to be protected from that.

c. Section 106(1) and (2) Taking of Urgent Human-AI Decision Point Theme.

The FAC articulates protectable elements of the identified theme that appear, including at least partially "physically," in both BR2049 and the accused works to satisfy the extrinsic test, including expressed with lighting by scenes or portions of

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

scenes switching between orange/non-orange lighting and the relative emotions and tension level associated with each.  (TAC, ¶ 51c, Event Recording at 0:05:43-44, BR2049 at 1:36:28-1:37:59, 1:40:48-2:01:50.)  (Compare, *e.g.,* BR2049 at 1:47:39-1:51:40 [casino lounge fight scene], at 1:55:44-1:56:44 [Sinatra miniature hologram, distinctly not orange], and at 1:57:26-1:58:00 [non-orange Joi examining distinctly not orange hydroponic garden; lighting entirely back to orange as antagonist approaches], with Event Recording at 00:05:36-00:06:10 (same non-orange/orange lighting change in connection with relative desirability of prospective futures or time periods).  By showing the audience an illustration of BR2049's "Las Vegas Sequence" in articulating the theme of his keynote, Musk necessarily evoked BR2049's theme expression.  The theme of a well-known movie can and generally is evoked by a single scene from it, if the scene is recognizable enough (as it is here), and especially if the presenter says words to the audience effectively labeling the scene as from the movie (as here).

> d. Section 106(1) and (2) Taking of Mood of Anxiety, Fear and Urgency specifically about the Human-AI Decision Point.

The TAC articulates protectable elements of the identified mood that appear, including at least partially "physically," in both BR2049 and the accused works to satisfy the extrinsic test.  (TAC, ¶ 52, Event Recording at 0:05:43-44, BR2049 at 1:36:28-1:37:59, 1:40:48-2:01:50.)  Plaintiff contends that not only did Musk evoke the described mood to further his sales pitch, but by effectively evoking BR2049 specifically, he evoked BR2049's expression of that mood with virtual identity, and because he did it at the outset of the presentation it lays over the entire presentation.

> e. Section 106(1) and (2) Taking of Combination of Elements.

Extrinsic/intrinsic analysis disregards unprotectable elements except: a

16

plaintiff's "selection and arrangement" of otherwise unprotectable elements is protectable "if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Skidmore*, 952 F.3d at 1074, citing *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 850-51 (9th Cir. 2012). The selection and arrangement of elements "must be similar enough that 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them.'" *Rentmeester*, 883 F.3d at 1121, quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960). A combination of as few as five unprotectable elements can satisfy the extrinsic test. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (citing with approval such a finding based on five), overruled on other grounds by *Skidmore*, 952 F.3d 1051.

At a minimum, the TAC articulates a "selection and arrangement" of elements that appear, including "physically," in BR2049 and/or the accused works. (TAC, ¶¶ 41,42, 54, Event Recording at 0:05:43-44, BR2049 at 1:36:28-1:37:59, 1:40:48-2:01:50.) The Motion argues that the Court should treat Alcon's selection and arrangement allegations in the same manner as many courts treat selection and arrangement theories where there are two competing literary works (*e.g.*, a plaintiff's novel and defendant's movie), and where the plaintiff cherry picks a list of elements that appear scattered throughout both larger works, while also ignoring many identifiable differences between the works.

The Court should not do that here. The TAC's selection and arrangement allegation is really the opposite or inverse of such a situation: what Musk and Tesla did (as it objectively appears) was *they* cherry-picked a selection and arrangement of elements from BR2049's "Las Vegas Sequence" and distilled them into Image C, while at the same time avoiding inclusion in Image C of any meaningfully identifiable elements that would make Image C read as different from BR2049. The

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

1    effect, especially with Musk's accompanying comments, is that Image C really only

2    objectively reads as an illustration of K and BR2049's Las Vegas Sequence, and not

3    any other character or motion picture (which Alcon contends is what Musk and

4    Tesla intended).  That is arguably precisely the type of circumstance where a

5    selection and arrangement claim is most appropriate.

6    ## VI.    FAIR USE MAY NOT BE DECIDED HERE ON RULE 12(b)(6)

7         Fair use is a highly fact specific affirmative defense where the defendant has

8    the burden of supporting the defense with admissible evidence and is generally not

9    amenable to decision on Rule 12(b)(6).  *Monge v. Maya Magazines, Inc.*, 688 F.3d

10   1164, 1170 (9th Cir. 2012); *see also Dr. Seuss Enterprises, L.P. v. ComicMix, LLC*,

11   983 F.3d 443, 451, 458-59 (9th Cir. 2020).  Courts may sometimes validly decide a

12   fair use defense on Rule 12(b)(6) where all of the relevant facts either actually are

13   undisputed by the parties, or where the type of use moots or blocks plaintiff-

14   favorable evidence of one or more factors.  This happens most typically in "parody"

15   or "parody"-like cases, where the defendant's message and purpose in creating their

16   accused work was specifically and necessarily to target the plaintiff's work.  All of

17   Musk and Tesla's cited cases exemplifying Rule 12(b)(6) dismissal appear

18   consistent with this exception.  However, this is not a "parody" or "parody"-like

19   case, or one where all of the relevant fair use facts are present and undisputed.

20        On purpose and character of the use, the facts available so far favor Alcon,

21   not Musk and Tesla.  Musk and Tesla did not comment "on" or "target" BR2049,

22   they commented "with" BR2049.  They used BR2049's expression ostensibly to

23   convey the message that we should not want the bleak and apocalyptic future shown

24   in many science fiction movies (including BR2049).  However, BR2049 does not

25   present its future as aspirational, but rather as a horrific, dystopian future to be

26   avoided.  Musk and Tesla on that point were thus conveying the <u>same</u> message as

27   BR2049, not being critical of its message.  *See, e.g., ComicMix*, 983 F.3d at 452-455

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

(use of plaintiff's work to convey parallel message not transformative). It also appears that many, many other science fiction movies would have worked for Musk and Tesla's message, meaning even if there were some critical message, it was what fair use case law considers "satire" versus "parody." Satire tends not to be fair use. *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394, 1400-1402 (9th Cir. 1997); *ComicMix*, 983 F.3d at 452-455. For satire to qualify, the defendant must articulate why the defendant was still justified to use the plaintiff's work specifically, where the need to use plaintiff's work is not obvious (and really this should be with evidence from the party, not merely counsel argument). Musk and Tesla do not even try to do that.

Musk and Tesla's use of BR2049 in the Event also was in one of the most disfavored fair use commercial contexts: a product advertisement. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 585 (1994). The use was also much more directly substitutional of BR2049 than the Motion acknowledges. BR2049 does itself in part advertise cars, both by product placement in the motion picture itself, and by licensing use of copyright protected elements to auto brands for ads. This weighs in favor of Alcon and would require Musk and Tesla to offer a "particularly compelling justification," which they have not done. *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528-533 (2023).

The first factor also cannot be said on the facts available so far to favor Musk and Tesla on their unauthorized literal copying of BR2049 or protected elements of it into an AI image generator. In this rapidly developing area, district courts have held that where the defendant did not validly buy or otherwise validly obtain the copy of plaintiff's work placed into the AI, and/or where what the AI does with work is specifically to make a new but infringing version of plaintiff's work (versus just to learn how to make creative works in general), that is <u>not</u> validly transformational for fair use, especially if in a substitutional or competing context.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

*See, e.g., Bartz,* 787 F.Supp.3d at 1025-1029, 1031-34 (training AI on pirated works not fair use); *Thomson Reuters Enterprise Centre GMBH v. Ross Intelligence Inc.,* 1:20-cv-613-SB, 2025 WL 458520 at *6-10, -- F.Supp. 3d --  (D. Del. Feb. 11, 2025) (summary judgment appropriate for plaintiff not defendant on AI training fair use defense).  Moreover, the facts about Musk and Tesla's literal copying are clearly disputed, meaning Musk and Tesla should put in evidence of what they actually did before asking the Court to assess it.  There is also no evidence from Musk or Tesla of how much money they generated from the Event, or even how much (if anything) they were going to pay WBDI for the Image A use license, both of which are types of information which courts do consider on the first factor.

On amount of the work used, analysis of this factor is practically begging for Musk and Tesla to put in actual evidence: the allegations are that they copied as much as 100% of BR2049 for the AI image generation, which would weigh heavily against them on this factor, if that is what they in fact did.  On the other hand, if they can produce persuasive admissible evidence that they did not even put the high resolution copy of Image A that they received from WBDI into the AI, (TAC, ¶30), the factor would be more in their favor.  As to the substantial similarity usages, the Court should either accept the TAC's allegations that the usage was quantitatively highly significant such that this factor favors Alcon, *see ComicMix*, 983 F.3d at 457 (defendant's taking of plaintiff's selection and arrangement of key scenes favored plaintiff on third factor), or the Court should wait until there is actual admissible evidence to assist the Court with assessing the qualitative significance of the usage here, especially where the fact pattern appears novel.

Perhaps most clearly though, this is not a case where Musk and Tesla should be relieved of their burden to put in evidence of the effect on Alcon's market for the work.  *ComicMix*, 983 F.3d at 458-59 (defendant has affirmative burden of producing evidence, especially on the fourth factor).  Alcon is <u>not</u> claiming that

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

1   Musk and Tesla damaged the desirability of BR2049 through a scathing criticism of

2   it – indeed, Musk and Tesla did not attack BR2049 at all; rather, Musk says he

3   "loves" it (or, at least, he loves "blade runner," which Alcon reasonably alleges in

4   this context was understood by the audience to include BR2049).  Rather, Alcon's

5   concerns include the entirely cognizable concern that, especially if Musk and Tesla

6   were free to use BR2049 as the theme for every Tesla product reveal, such conduct

7   will or could damage Alcon's auto brand licensing market, including as to ability to

8   offer meaningful exclusivity.  If BR2049 becomes the *de facto* theme movie of

9   Tesla products, as Musk and Tesla seem to want, it seems entirely likely that auto

10  brands would perceive that as diluting or even entirely eliminating the opportunity

11  for exclusivity.  *See ComicMix*, 983 F.3d at 461 (court must consider whether

12  unrestricted or widespread conduct like the defendant's would undermine plaintiff's

13  potential market).  In any event, there is no reason to excuse Musk and Tesla from

14  their clear burden to produce evidence on this type of market effect issue.

15      Similarly, with the literal copying issue, even since the filing of the TAC,

16  there has been a very significant development in the licensing market situation for

17  use of motion picture properties and characters for AI image generation: Disney

18  decided to license its vast library of motion picture properties and characters to

19  OpenAI for image generation – a development which by itself indicates that there is

20  a licensing market to consider for the literal copying of motion pictures like BR2049

21  and the characters in them into AI image generation engines, including for the

22  purpose of creating new AI works featuring elements of said works and characters.

23  *See* S. Zeitchik & J. Sancton, "How Disney's OpenAI Deal Changes Everything,"

24  *The Hollywood Reporter* (December 22, 2025),

25  https://www.hollywoodreporter.com/business/digital/bob-iger-disney-openai-sora-

26  ai-video-1236456928/.  The court cannot rule on Musk and Tesla's fair use defense

27  without these types of factual evidence before it.  *Acuff-Rose Music*, 510 U.S. at

28

21

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING
DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC

592-594 (even in parody context, defendant's failure to put in evidence of market effect on one relevant potential market by itself precluded summary judgment for defendant on fair use).

## VII.  LEAVE TO AMEND

Alcon thinks it unlikely that any further amendment would be warranted or needed at the pleading stage.  However, if the Court believes, for example, that Alcon's substantial similarity allegations need more detail (like a chart), or that Alcon needs affirmatively to plead market effect of such new information as the Disney AI character licensing decision, then those types of amendments should be allowed.


DATED: January 7, 2026          ANDERSON YEH PC
                                Edward M. Anderson
                                Regina Yeh

                                _____
                                Attorneys for Plaintiff
                                ALCON ENTERTAINMENT, LLC

### CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Alcon Entertainment, LLC, certifies that this brief contains 6,994 words, which complies with the word limit of L.R. 11-6.1.

                                _____
                                Edward M. Anderson

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES OPPOSING DEFENDANTS TESLA'S AND MUSK'S MOTION TO DISMISS TAC