A. Louis Dorny (SBN 212054)
ldorny@tesla.com
Terry W. Ahearn (SBN 216543)
tahearn@tesla.com
TESLA, INC.
3000 Hanover St.
Palo Alto, CA 94304
Tel: (510) 298-8516

Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (213) 533-4240 / Fax: (858) 678-5099

*Additional counsel listed on signature page*

Attorneys for Defendants
Tesla, Inc. and Elon Musk

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALCON ENTERTAINMENT, LLC, a Delaware Limited Liability Company,<br><br>        Plaintiff,<br><br>v.<br><br>TESLA, INC., a Texas Corporation; ELON MUSK, an individual; WARNER BROS. DISCOVERY, INC., a Delaware Corporation,<br><br>        Defendants. | Case No. 2:24-cv-09033-GW-RAO<br><br>**REPLY IN SUPPORT OF DEFENDANTS TESLA, INC. AND ELON MUSK'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Hearing Date: January 29, 2026<br>Hearing Time: 8:30 a.m.<br>Courtroom: 9D<br>Judge: Hon. George H. Wu |

# **TABLE OF CONTENTS**

Page

I.  INTRODUCTION .................................................................................................1

II.  ARGUMENT .....................................................................................................1

    A.  "Reference Leveraging" or "Gating" Is Not a Theory of Copyright Infringement.................................................................1

    B.  There Is No Substantial Similarity .................................................6

    C.  Plaintiff's Literal Copying Allegation Does Not Prevent Dismissal ...........................................................................11

    D.  Tesla Has Met Its Burden of Establishing Fair Use..............................14

        1.  The Court Can Decide Fair Use Now.....................................14

        2.  Tesla's Use Is Transformative and Not for Commercial Gain ...................................................15

        3.  The Nature of the Copyrighted Work Factor Is Neutral............................................................19

        4.  The Alleged Use Is Reasonable ...........................................19

        5.  There Is No Cognizable Harm to BR2049 ................................20

    E.  Dismissal With Prejudice Now Is Appropriate.....................................21

III.  CONCLUSION ...............................................................................................22

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Anderson v. Stallone*,
5      No. 87-0592-WDK-Gx, 1989 WL 206431 (C.D. Cal. Apr. 25, 1989) ...............7

6

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
     598 U.S. 508 (2023)..................................................................16, 17, 18, 21
7

8

*Basile v. Warner Bros. Entm't*,
     No. 2:15-cv-05243-DMG-MRWx, 2016 WL 5867432 (C.D. Cal.
9      Jan. 4, 2016)......................................................................................8

10

*Benay v. Warner Bros. Entm't*,
11      607 F.3d 620 (9th Cir. 2010) .........................................................7

12

*Jangle Vision, LLC v. Alexander Wang Inc.*,
13      No. 21-cv-09964-GW-E, 2022 U.S. Dist. LEXIS 110600 (C.D. Cal.
     June 3, 2022)................................................................................6, 21

14

*Campbell v. Acuff-Rose Music, Inc.*,
15      510 U.S. 569 (1994)..................................................................5, 20, 21

16

*City of Inglewood v. Teixeira*,
17      No. 2:15-cv-01815-MWF-MRW, 2015 WL 5025839 (C.D. Cal.
     Aug. 20, 2015) ..........................................................................15
18

19

*Cline v. Reetz-Laiolo*,
20      No. 3:17-cv-06866-WHO, 2018 WL 11608044 (N.D. Cal. Nov. 19,
     2018) .........................................................................................13

21

*Daniels v. Walt Disney Co.*,
22      958 F.3d 767, 772 (9th Cir. 2020) ...............................................8

23

*Danjaq, LLC v. Universal City Studios, LLC*,
24      No. 2:14-cv-02527-SJO-E, 2014 WL 7882071 (C.D. Cal. Oct. 2,
     2014) .........................................................................................14
25

26

*Dielsi v. Falk*,
     916 F.Supp. 985 (C.D. Cal. 1996).................................................4

27

28

*Dr. Seuss Enters., L.P. v. ComicMix LLC,*
   983 F.3d 443 (9th Cir. 2020) ................................................................17, 20, 21

*DraftExpress, Inc. v. Whistle Sports, Inc.,*
   No. 2:22-cv-488-DMG-AGRx, 2022 WL 16962285 (C.D. Cal. Aug.
   2, 2022) ................................................................................................. 14, 15

*DuMond v. Reilly,*
   No. 2:19-cv-8922-GW-AGR, 2021 WL 733311 (C.D. Cal. Jan. 14,
   2021) ...........................................................................................9, 11, 12, 13

*Eldred v. Ashcroft,*
   537 U.S. 186 (2003).................................................................................. 15

*Esplanade Prods., Inc. v. Walt Disney Co.,*
   No. 2:17-cv-02185-MWF-JC, 2017 WL 5635027 (C.D. Cal. Nov. 8,
   2017) ...........................................................................................2, 9, 11, 12

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.,*
   462 F.3d 1072 (9th Cir. 2006) .................................................................... 2

*Gilbert-Daniels v. Lions Gate Entm't Corp.,*
   No. 2:23-cv-02147-SVW-AGR, 2023 WL 8948288 (C.D. Cal. Dec.
   7, 2023) ..................................................................................................... 8

*Google LLC v. Oracle Am., Inc.,*
   593 U.S. 1 (2021)..................................................................................... 14

*Hoff v. Walt Disney Pictures,*
   No. 5:19-cv-00665-AG-KK, 2019 WL 6329368 (C.D. Cal. Aug. 19,
   2019) ....................................................................................................... 13

*Kelly v. Arriba Soft Corp.,*
   336 F.3d 811 (9th Cir. 2003) .................................................................... 20

*Leadsinger, Inc. v. BMG Music Pub.,*
   512 F.3d 522 (9th Cir. 2008) .................................................................... 15

*Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.,*
   964 F.2d 965 (9th Cir. 1992) ..................................................................2, 3

*Litchfield v. Spielberg,*
   736 F.2d 1352 (9th Cir. 1984) .................................................................... 5

*Mattel, Inc. v. MGA Entm't, Inc.*,
   616 F.3d 904 (9th Cir. 2010) ......................................................... 10, 11

*McGary v. City of Portland*,
   386 F.3d 1259 (9th Cir. 2004) ............................................................... 2

*McGillvary v. Netflix, Inc.*,
   No. 2:23-CV-01195-JLS-SK, 2024 WL 3588043 (C.D. Cal. July 30,
   2024) ........................................................................................ 15

*Micro Star v. Formgen Inc.*,
   154 F.3d 1107 (9th Cir. 1998) .............................................................. 3

*Oracle Int'l Corp. v. Rimini St., Inc.*,
   123 F.4th 986 (9th Cir. 2024) ............................................................... 3

*Paramount Pictures Corp. v. Axanar Prods., Inc.*,
   No. 2:15-cv-009938-RGK-E, 2017 WL 83506 (C.D. Cal. Jan. 3,
   2017) .................................................................................... 3, 4, 5

*Paramount Pictures Corp. v. Axanar Prods., Inc.*,
   No. 2:15-cv-09938-RGK-EX, 2016 WL 2967959 (C.D. Cal. May 9,
   2016) ....................................................................................... 14

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ............................................................ 20

*Quirk v. Sony Pictures Entm't Inc.*,
   No. 3:11-cv-03773, 2013 WL 1345075 (N.D. Cal. Apr. 2, 2013) .................... 12

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018) ......................................................*passim*

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003) ............................................................... 9

*Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*,
   No. 4:09-cv-01468-SBA, 2009 WL 2157573 (N.D. Cal. July 17,
   2009) ........................................................................................ 20

*Sega Enters. Ltd. v. Accolade, Inc.*,
   977 F.2d 1510 (9th Cir. 1992), *as amended* (Jan. 6, 1993) .......................... 12

*Seltzer v. Green Day, Inc.*,
   725 F.3d 1170 (9th Cir. 2013) ...................................................................17, 19

*Shame on You Prods., Inc. v. Banks*,
   120 F.Supp.3d 1123 (C.D. Cal. 2015) .................................................................7

*Silas v. Home Box Off., Inc.*,
   201 F.Supp.3d 1158 (C.D. Cal. 2016) ...................................................5, 11, 13

*Skidmore v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020) ...........................................................4, 9, 11

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 477 (9th Cir. 2000) ...............................................................................9

*Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Assoc.*,
   953 F.3d 638 (9th Cir. 2020) .............................................................................21

*Walt Disney Prods. v. Filmation Assocs.*,
   628 F.Supp. 871 (C.D. Cal. 1986) ....................................................................13

*Warner Bros. v. Am. Broad. Cos.*,
   720 F.2d 231 (2d Cir. 1983) ................................................................................6

*Wozniak v. Warner Bros. Entm't Inc.*,
   726 F.Supp.3d 213 (S.D.N.Y. 2024) ................................................................4, 5

**Other Authorities**

4 Patry on Copyright § 12:19.................................................................................2

4 Nimmer on Copyright § 13.03 (2017) ................................................................11

Fed. R. Civ. P. 12(b)(6) ....................................................................................2, 15

REPLY ISO TESLA AND MUSK'S MOTION TO DISMISS TAC
Case No. 2:24-cv-09033-GW-RAO

1   I.    **INTRODUCTION**

2       Plaintiff's Opposition confirms that this case can and should be resolved now.

3   Plaintiff does not dispute that the Court can decide the issue of substantial similarity

4   now by comparing the parties' works.[1]   The Court has both BR2049 and Image C

5   before it and can apply the Ninth Circuit's extrinsic test as a matter of law.  Viewing

6   the works objectively, and with the unprotectable elements filtered out, Image C bears

7   no substantial similarity to BR2049 under any recognized theory.  Plaintiff's reliance

8   on "reference leveraging" and "gating" is not only unsupported by precedent—it is

9   contrary to the Copyright Act and Ninth Circuit law.  This "theory" also concedes that

10  Image C does ***not*** contain many of Plaintiff's claimed elements, as well as their

11  unprotectable nature.  Nor does Plaintiff's allegation of "literal copying" salvage its

12  claim; intermediate copying is irrelevant where, like here, the accused work is before

13  the Court and is not substantially similar.  Finally, while Tesla did not copy BR2049

14  to create Image C, taking Alcon's allegations as true, Tesla's use of Image C

15  constitutes fair use: it is transformative, non-commercial, and causes no cognizable

16  market harm.  Because Plaintiff has already amended its complaint three times and

17  cannot cure these legal defects, dismissal with prejudice is warranted.[2]

18  II.   **ARGUMENT**

19      A.    **"Reference Leveraging" or "Gating" Is Not a Theory of Copyright**

20            **Infringement**

21      Alcon effectively concedes that its pleaded elements are absent from Image C

22  by recycling its "reference leveraging" or audience "gat[ing]" theory to argue that a

23  substantial similarity analysis is "not limited…to elements 'physically' present in the

24  infringing work." Opp. 11:2-15.  The essence of Plaintiff's manufactured "reference

---

[1] Dkt. 90 ("Opp.") 11:20-12:4.  Pin cites refer to document page numbers at the bottom of each page.

[2] Because the relevant facts for this Motion are those alleged in the TAC, we do not specifically address Plaintiff's self-serving "Facts" section.  Opp. 1:5-3:3.

REPLY ISO TESLA AND MUSK'S MOTION TO DISMISS TAC
Case No. 2:24-cv-09033-GW-RAO

leveraging" theory is that because Image C purportedly "evokes" a scene from BR2049, Tesla has infringed "all the protected elements (or a set of them) in the whole movie" merely because they "exist" in BR2049, despite that they ***are not present*** in Image C.  *Id.* 10:13-17, 11:7-11; *see also id.* 13:24-14:8, 15:4-12 (alleging Tesla copied "all alleged protected elements").[3]

  This is not the type of "novel legal theory" that may avoid a Rule 12(b)(6) dismissal so that facts can be developed.  Opp. 11:15-17 (citing *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004)).[4]  The theory is not "novel"—it is unequivocally wrong.

  "The legislative history of the Copyright Act explains…that [a] new, derivative work 'must ***incorporate*** a portion of the copyrighted work in some form.'"  4 Patry on Copyright § 12:19 n.3 (citing H.R. Rep. No. 1476, 94th Cong., 2d Sess. 62 (1976); S. Rep. No. 473, 94th Cong., 1st Sess. 58 (1975)).  Indeed, Congress's examples of derivative works, such as a translation or abridgment, "all physically incorporate the underlying work or works."  *Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*, 964 F.2d 965, 967-69 (9th Cir. 1992) (explaining "[a] derivative work must incorporate a protected work in some concrete or permanent 'form'" and holding the accused work was not a derivative work because it "does not physically incorporate a portion of a copyrighted work").  The "[e]xtrinsic analysis is objective in nature.  It depends…on specific criteria which can be listed and analyzed…***in the two works***."  *Esplanade Prods., Inc. v. Walt Disney Co.*, No. 2:17-cv-02185-MWF-JC, 2017 WL 5635027, at *8 (C.D. Cal. Nov. 8, 2017) (citing *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006)), *aff'd*, 768 F. App'x 732 (9th Cir. 2019).

  When Alcon previously injected its "reference leveraging" theory to argue that

---

[3] All quotations cleaned up and emphasis added unless otherwise noted.

[4] In contrast, the novel legal theory in *McGary* concerned what constitutes a "reasonable" accommodation under the ADA, which "requires a fact-specific, individualized analysis" of the individual and accommodations.  386 F.3d at 1270.

1  motion picture still images should be analyzed differently than photographs, this
2  Court correctly noted that "the best audience for that contention is located in
3  Washington, D.C., not this courtroom."  Dkt. 61 (Tentative Ruling), 7 n.10.

4      Unsurprisingly, none of Plaintiff's cases (Opp. 10:6-11:17) support the notion
5  that a "reference leveraging" concept applies to the extrinsic test.  *Micro Star*
6  *v. Formgen Inc.* does not stand for the proposition that infringement may be found
7  based on "elements [not] 'physically' present" in an accused work.  *Id.* 11:2-5.  There,
8  the court found infringement because Micro Star's software enabled players to create
9  new levels of the Duke Nukem video game that told "somewhat repetitive tales" of
10 the main character's adventures.  154 F.3d 1107, 1112 (9th Cir. 1998).  Micro Star
11 argued that its product was lawful because it did not contain any FormGen art files,
12 but, as the Ninth Circuit explained, the art files weren't the work at issue.  *Id.*  Rather,
13 the MAP files sold by Micro Star told stories, in the form of detailed game-play level
14 descriptions, that were infringing Duke Nukem "sequels," just as a Duke Nukem book
15 would infringe.  *Id.*  The Ninth Circuit's decision in *Oracle* did "reaffirm[] *Micro*
16 *Star*," but not for the "point" Plaintiff insists.  Opp. 11:5-6.  There, the Ninth Circuit
17 held that defendant Rimini's software did ***not*** infringe because it did ***not*** "actually
18 incorporate" Oracle's work "in some concrete or permanent form," unlike Micro
19 Star's infringement, which copied the Duke Nukem video game's "'story itself,'
20 including the 'plot, theme, dialogue, mood, setting, characters, etc.'"  *Oracle Int'l*
21 *Corp. v. Rimini St., Inc.*, 123 F.4th 986, 995-96 (9th Cir. 2024); *see also Lewis Galoob*
22 *Toys*, 964 F.2d at 967.  *Oracle*'s holding and, indeed, Ninth Circuit law, is essentially
23 the opposite of what Alcon argues.

24     *Paramount Pictures Corp. v. Axanar Productions, Inc.*, No. 2:15-cv-009938-
25 RGK-E, 2017 WL 83506 (C.D. Cal. Jan. 3, 2017) ("*Axanar II*"), likewise fails to
26 support Alcon.  While the defendant's accused work referenced Star Trek elements,
27 it also "use[d] many elements from the Star Trek universe," including its characters,
28

spaceships, weapons, and "plot points, sequence of events, and dialogs" "down to excruciating details." *Id.* at *5-6. Defendant's use was so "extensive" that it created an infringing "Star Trek prequel." *Id*. at *6. Similarly, the accused work in *Wozniak v. Warner Bros. Entertainment Inc.* was infringing because it actually contained Batman characters, including Batman, the Batmobile, Bruce Wayne, the Riddler, the Joker, and other protected story elements, such as the Gotham setting. 726 F.Supp.3d 213, 223-24, 229, 231, 238 (S.D.N.Y. 2024). The courts in these cases did not say that mere referencing alone is infringement or that use of a small aspect of a plaintiff's work may trigger infringement of all protectable elements of an entire film, as Plaintiff suggests. Opp. 11:2-15. The dispositive question now is whether there is substantial similarity under the extrinsic test. There is not.

Alcon's allegation that Tesla intended Image C to be understood as a scene or illustration from BR2049 (*id.* 2:24-3:3, 14:9-15), even if taken as true,[5] does not enable Alcon to avoid a proper application of the extrinsic test. The Ninth Circuit's substantial similarity test focuses on the parties' works, not the defendant's intent. *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (describing extrinsic and intrinsic tests that compare the parties' works); *see also Dielsi v. Falk*, 916 F.Supp. 985, 992 (C.D. Cal. 1996) (copyright infringement is a strict liability claim). Yet, stretching "reference leveraging" even further, Alcon argues that if a defendant effectively presents its work as an extension of a copyrighted work, it has engaged in "virtual identical copying" of all alleged protected elements—even if the audience merely sees **non-original** elements. Opp. 14:5-15:12. Alcon speculates that a verbal reference to "Blade Runner" would lead (or "gate") the audience to view the non-original elements in Image C "as being the specific iteration of those elements which attach to [BR2049]"—i.e., the protectable expression—even though that expression

---

[5] In its Tentative Ruling dismissing Alcon's Lanham Act claim, this Court noted that Musk said "Blade Runner" for an "artistically relevant purpose, and clearly did not explicitly mislead any consumers as to source or content." Dkt. 61, 32.

is conjured only in the audience's mind and not present in the accused work. *Id.* 11:7-11, 15:4-9. Here too, this theory directly conflicts with the extrinsic test, which requires courts to disregard unprotectable elements and objectively compare "specific expressive elements…***in*** [the] two works." *Silas v. Home Box Off., Inc.*, 201 F.Supp.3d 1158, 1171 (C.D. Cal. 2016), *aff'd*, 713 F. App'x 626 (9th Cir. 2018).[6]

Indeed, Alcon ***does*** recognize that a finding of substantial similarity is required. Citing to *Axanar II* and *Wozniak*, Alcon argues that "courts readily find substantial similarity, even where some generic or non-original elements are present" when the accused work is held out as an extension of the plaintiff's work. Opp. 14:17-15:3. But these cases demonstrate that it is not how the defendant presents its work that is determinative, but whether there is, in fact, substantial similarity. While both accused works were presented as extensions of the plaintiffs' works in these cases, each court conducted a substantial similarity analysis ***and*** expressly stated that it must filter out unprotectable elements. *Axanar II*, 2017 WL 83506, at *4-5 (stating only that the defendants' intent to create a prequel supports the court's conclusion after applying extrinsic test); *Wozniak*, 726 F.Supp.3d at 231, 238 (explaining that "[w]here the works at issue contain both protectible and unprotectible elements, the analysis should be more discerning…and ask whether the protectible elements, standing alone, are substantially similar"). Neither case suggests a court may find substantial similarity—much less "virtual identical copying"—in the presence of "some generic or non-original elements" simply because the accused work is presented as an extension of the plaintiff's work. Opp. 14:9-15:12. *See also Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) (rejecting plaintiff's "novel proposition" and confirming that a work "based on" a copyrighted work must be substantially similar to infringe the derivative work right).

---

[6] Plaintiff's theory also conflicts with fair use, which recognizes that an accused use may "conjure up" a prior work. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 588 (1994).

What these cases and others show is that a work can be "obviously inspired" by a prior work and still not infringe. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116, 1123 (9th Cir. 2018); Dkt. 24-1 (Tentative Ruling on Motion to Dismiss), 15 (defendant's works did not infringe despite being "inspired by, or even similar to, in a layman's sense, the characters in Plaintiff's works"), *adopted by Jangle Vision, LLC v. Alexander Wang Inc.*, No. 21-cv-09964-GW-E, 2022 U.S. Dist. LEXIS 110600 (C.D. Cal. June 3, 2022), *aff'd*, No. 22-55642, 2023 WL 7042518 (9th Cir. Oct. 26, 2023).  Given clear Ninth Circuit law, Alcon's theory should be rejected.

### B.    There Is No Substantial Similarity

Plaintiff relies heavily on its "reference leveraging" theory to argue infringement of the character, plot, mood, and theme of BR2049.  Plaintiff's arguments not only fail; they concede that Image C lacks the allegedly protected elements and shares, at most, unprotectable elements such as scènes-à-faire.

***Character K***:  The only character traits Plaintiff claims are "partially 'physically present[]' in both BR2049 and the accused work[]" concern a duster-clad man with close-cropped hair viewed in silhouette or near-silhouette, surveying or exploring a post-apocalyptic ruined cityscape.  Opp. 13:7-15.  But these traits are not sufficiently distinctive to warrant copyright protection.  Dkt. 88-1 ("Mot.") 7:5-8:7 (citing cases).  Plaintiff also argues that K satisfies the "story being told" test for copyrightability, yet concedes that this aspect of K is ***not*** in Image C.  Opp. 13:21-27 ("This aspect of K arguably is part of the ***non-physically present*** elements Musk and Tesla semiotically reference-leveraged.").  Thus, this theory should be ignored. *Warner Bros. v. Am. Broad. Cos.*, 720 F.2d 231, 242 (2d Cir. 1983) ("[s]tirring one's memory of a copyrighted character is not the same as appearing to be substantially similar to that character, and only the latter is infringement").

Plaintiff's attempt to avoid a "substantial similarity comparison" by claiming Tesla "effectively" presented Image C as an illustration of K (Opp. 14:1-23) also fails.

Plaintiff's reliance on *Anderson v. Stallone*, No. 87-0592-WDK-Gx, 1989 WL 206431 (C.D. Cal. Apr. 25, 1989), is misplaced.  In *Anderson*, the court dispensed with a substantial similarity analysis because there was, in fact, "literal similarity" between the plaintiff's script and the defendant's movie, both of which were before the court.  *Id.* at *8.  It was "uncontroverted that [a whole set of] characters were lifted lock, stock, and barrel from the prior Rocky movies" and thus "they *are* Stallone's characters."  *Id.* (emphasis original) (noting Anderson's "sequel" "retained the names, relationships and built on the experiences of these characters" from Stallone's movies).  Here, Plaintiff does not and cannot allege literal copying of K in light of its reliance on unprotectable elements that allegedly appear only "partially 'physically'" in Image C.  Opp. 13:7-8.

      **<u>Setting</u>**:  Here too, Plaintiff concedes that only ***some*** of the alleged setting elements appear in both BR2049 and Image C.  *Id.* 15:14-17 ("partially 'physically'").  But Plaintiff does not identify the "partially physical[]" elements.  The Court can readily determine by comparing BR2049 and Image C that the sole similarity is a post-apocalyptic urban ruin, which is too generic to be protectable.  Mot. 10:17-11:15 (citing cases); *see also Shame on You Prods., Inc. v. Banks*, 120 F.Supp.3d 1123, 1159, 1171 (C.D. Cal. 2015) (finding two works including a "gentleman's room where [a] one-night-stand takes place, a tow yard, a place of worship, a spa, city streets…, an outdoor chase on wheels, and a helicopter ride" not substantially similar and dismissing claim with prejudice), *aff'd*, 690 F. App'x 519 (9th Cir. 2017); *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 627-28 (9th Cir. 2010) (holding that scenes in the Imperial Palace, scenes on the Imperial Army's training grounds, and battle scenes in various places in Japan are all scènes-à-faire).  Notably, Plaintiff concedes that some of its claimed setting elements "have non-original aspects" (Opp. 15:17-22) and relies on its "gating" theory to address this deficiency, but as explained above, this is unavailing.  *Supra* § II.A.  Musk also did not say Image C showed a BR2049 setting

1 (TAC ¶ 44 (quoting Musk)), and Plaintiff ignores obvious differences between Images
2 A and C, including the skylines (Mot. 11:16-13:17).

3     ***Theme & Mood***: Here, again, Plaintiff relies on "reference leveraging," which
4 is not cognizable. Opp. 15:23-16:24; *supra* § II.A. The only element Plaintiff
5 identifies as appearing in the Recording involves "scenes switching between
6 orange/non-orange lighting" (Opp. 15:25-16:9), but there is no lighting change in the
7 eleven seconds during which Image C, a ***still image***, is shown in the Recording. Dkt.
8 25 (Recording), 5:43-5:54.[7] Further, Plaintiff does not rebut Tesla's cases showing
9 that Plaintiff claims only unprotectable concepts. Mot. 10:4-15 (citing *Gilbert-*
10 *Daniels v. Lions Gate Entm't Corp.*, No. 2:23-cv-02147-SVW-AGR, 2023 WL
11 8948288, at *15 (C.D. Cal. Dec. 7, 2023) (mood evoked with "the Lavender, Purples,
12 and Mauve color pallet [*sic*]" unprotectable); *Daniels v. Walt Disney Co.*, 958 F.3d
13 767, 772 (9th Cir. 2020) ("using a color to represent a mood or emotion" is an
14 unprotectable "idea")); *see also Basile v. Warner Bros. Entm't*, No. 2:15-cv-05243-
15 DMG-MRWx, 2016 WL 5867432, at *12-13 (C.D. Cal. Jan. 4, 2016) (finding works
16 that share the "common" "apocalyptic mood in which the hero(es) must defy the odds
17 in order to save innocent people" were not substantially similar and dismissing claim
18 without leave to amend), *aff'd*, 678 F. App'x 604 (9th Cir. 2017). Image C expresses
19 no "urgent human-AI decision point" or mood of "anxiety, fear, or urgency."

20     ***Selection & Arrangement***: Plaintiff still fails to explain ***how*** its alleged
21 selection and arrangement is creative. Opp. 16:25-18:5. "Presenting a 'combination
22 of unprotectable elements' without explaining how these elements are particularly

23

---

24 [7] Plaintiff asserts that the lighting changes are shown in portions of the Recording "on
25 either side of the ***infringing*** 11 seconds" (TAC ¶ 51; Opp. 16:7-9) but those portions
are ***not*** alleged to be infringing. TAC ¶ 49 (specifying that "the 11 seconds containing
26 Image C" is the portion of the Recording defined as an "Infringing Work"). If
27 considering the whole Recording, Plaintiff fails to address that the Event's theme was
28 cost-efficient, safe, and sustainable transportation.

selected and arranged amounts to nothing more than trying to copyright commonplace elements." *Skidmore*, 952 F.3d at 1075; *see DuMond v. Reilly*, No. 2:19-cv-8922-GW-AGR, 2021 WL 733311, at *23-24 (C.D. Cal. Jan. 14, 2021) (dismissing claim with prejudice). Alcon's "inverse" argument (Opp. 17:22-24) awkwardly tries to put the blame on Tesla for "cherry-picking" elements, but that reasoning merely collapses into the threshold issue explained above, i.e., that Alcon bears the burden to plead *its* creative selection and arrangement and it has not.[8]

Its argument that a combination of as few as five unprotectable elements can satisfy the extrinsic test misses the point that the combination still must be unique. Opp. 17:9-12 (citing *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (jury finding infringement based on "a *unique* compilation" of five distinct elements of a song)). It is not merely a numbers game.

Plaintiff does not dispute that its list of 12 elements is artificially inflated. The elements are the character and setting divided into minutiae. Elements 1-7 describe the character, elements 7-10 describe the alleged setting, element 11 (theme) is not perceptible in a still image, and element 12 is simply a genre that cannot be selected or arranged. TAC ¶ 54. Plaintiff also ignores the visual differences between BR2049 and Image C (Mot. 12:15-13:7) and case law that indicates courts "routinely" decline to find the combination of generic elements substantially similar "when two works' unprotected elements are not arranged in a *strikingly similar* fashion." *Esplanade*, 2017 WL 5635027, at *16 (dismissing infringement claim without leave to amend). *Rentmeester*—also cited by Plaintiff—is especially instructive. Despite finding

---

[8] Plaintiff incorrectly claims Tesla argued the Court should treat Plaintiff's selection and arrangement allegations as if there are two competing literary works. Opp. 17:16-21. Requiring a creative selection and arrangement is not limited to literary works. Mot. 11:25-13:17 (citing *Rentmeester*, 883 F.3d at 1122-23 (photographs)); *see also Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) (sculptures); *Skidmore*, 952 F.3d at 1075 (no infringement of selection and arrangement of musical elements where plaintiff asserted only "random similarities scattered throughout the works").

"undeniable similarities at the conceptual level" and giving Rentmeester's photograph broad protection, the Ninth Circuit found material "differ[ences] as to expressive details"—including "the arrangement of the elements within the photographs." 883 F.3d at 1122. The Ninth Circuit noted differences in the positions of Michael Jordan's limbs, the backgrounds and foregrounds, the presence or lack of sun, and the position of the basketball hoop and Jordan's body in the frame and held that Rentmeester cannot claim an exclusive right to the general ideas or concepts found in both parties' photos, "even in combination." *Id.* at 1122-23. This Court should reach the same conclusion here, given the even greater differences between Images A and C.



Rentmeester's photograph





Nike's photograph



*Rentmeester*, 883 F.3d at 1126; TAC ¶ 41.

Lastly, Alcon is not entitled to any special "plaintiff-favorable treatment." Opp. 12:10-16.[9] Like any other copyright claimant, Plaintiff must plead copying of

---

[9] Neither *Mattel* nor *Rentmeester* state that all science fiction motion pictures are

1  **protectable expression** to sustain a claim for infringement.  In sum, there is neither
2  substantial similarity in individual elements nor the "selection and arrangement"
3  thereof.

4  ###   C.    Plaintiff's Literal Copying Allegation Does Not Prevent Dismissal

5          Plaintiff cannot sustain a claim for copyright infringement based on "literal
6  copying" because the single allegedly "Infringing Work[]" in this case is Image C,[10]
7  which is not substantially similar to BR2049.  Once the accused work fails the
8  extrinsic test, as it does now, Plaintiff's claim must be dismissed.  *Silas*, 201
9  F.Supp.3d at 1172 ("[A] plaintiff who cannot satisfy the extrinsic test necessarily
10  loses[.]").  Just like in *DuMond*, "if the end result is that Plaintiff still cannot satisfy
11  the extrinsic test," any theory of how Image C was created, which is all this allegation
12  pertains to, does not matter.  2021 WL 733311, at *5.  Should the Court find Alcon's
13  literal copying allegation plausible enough, it is only arguably relevant to actual
14  copying, or "probative" similarity, which is not actionable on its own.  *Skidmore*, 952
15  F.3d at 1064.  "[O]nly substantial similarity in protectable expression may constitute
16  actionable copying that results in infringement liability."  *Id.*  Thus, "no matter how
17  steeped in plaintiff's work defendant may have been, if the resulting product is non-
18  actionable as a matter of law, then the absence of substantial similarity that must
19  underlie every successful claim still dooms the infringement suit."  *Esplanade*, 2017
20  WL 5635027, at *8 (quoting 4 Nimmer on Copyright § 13.03 (2017)).[11]

---

22  given "the most plaintiff-favorable treatment, or 'thickest' protection of elements."
   Opp. 12:10-12.  The *Mattel* court provided "an aliens-attack movie" as an example of
23  a work entitled to "broad" protection given the wide range of expression in contrast
   to a painting of "a red bouncy ball on blank canvas" with a narrow range of
24  expression.  *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913-14 (9th Cir. 2010);
25  *Rentmeester*, 883 F.3d at 1120.
26  [10] The TAC alleges two "Infringing Works," but they are both Image C.  TAC ¶¶ 48-49.
27  [11] Plaintiff implies that the Court deemed Image C to have "probative substantial

Plaintiff is correct that courts "sometimes decline to recognize 'intermediate' literal copying as a valid *prima facie* claim." Opp. 9:1-2. But that is not an "exception," nor is a delay in making the allegation necessary for the Court to reject the intermediate copying allegation. *Id*. 9:1-25. As the *Esplanade* court explained when distinguishing *Sega*, "even if" the plaintiff "had included an 'intermediate copying' claim in" its pleadings, it would have been dismissed because the "focus" of the suit was on the "***finished*** *Zootopia* movie." 2017 WL 5635027, at *18 (emphasis original); *see also Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1518 (9th Cir. 1992), *as amended* (Jan. 6, 1993) (discussing prior cases recognizing "the lawfulness of intermediate copying" and noting that in each of them "the eventual lawsuit alleged infringement only as to the final work of the defendants"). This is the same reasoning in *DuMond* and is ***exactly*** the scenario here where the ***only*** "Infringing Work" alleged is Image C (TAC ¶¶ 48-49)[12] ***and*** the alleged act of literal copying was undertaken only to generate Image C (TAC ¶¶ 39-40).

Further, and also relevant, is that the court in *Esplanade* was "unable to locate a single case in which the *Sega* 'intermediate copying' theory has been extended to impose liability based upon the copying of non-software-related work (e.g., a script, book, cartoon, etc.) in the course of creating a new work that is ultimately dissimilar to the plaintiff's work." 2017 WL 5635027, at *18; *see also Quirk v. Sony Pictures Entm't Inc.*, No. 3:11-cv-03773, 2013 WL 1345075, at *6 (N.D. Cal. Apr. 2, 2013) (explaining that *Sega* "expressly distinguished cases, like this one, involving alleged

---

similarity to BR2049." Opp 7:13-14. First, there is no such thing as "probative substantial similarity"; "probative similarity" and "substantial similarity" are distinct concepts. Second, the Court did not opine on substantial similarity. Dkt. 61, 16 (noting that "the Court does not address the topic of 'substantial similarity' here").

[12] Plaintiff's assertion that its allegations "raise[] novel issues in the context of 'intermediate copying'" is incorrect. Opp. 10:2-3. As discussed above, courts, including in *Esplanade*, have considered and declined to extend *Sega* beyond computer software.

copying of books, scripts, or literary characters, where 'the eventual lawsuit alleged infringement only as to the final work of the defendants'").

In sum, when a lawsuit alleges "infringement only as to the final work" of the defendant, and the case is based on "copying of [a] non-software-related work," the concept of intermediate copying, i.e., how the accused work was made, is irrelevant when the accused work is not substantially similar. *Cline v. Reetz-Laiolo*, No. 3:17-cv-06866-WHO, 2018 WL 11608044, at *16 (N.D. Cal. Nov. 19, 2018) (dismissing copyright claim against television series and noting that "intermediate copying is generally limited to cases involving software" and "cannot result in copyright infringement without the basic component of substantial similarity"); *Hoff v. Walt Disney Pictures*, No. 5:19-cv-00665-AG-KK, 2019 WL 6329368, at *4 (C.D. Cal. Aug. 19, 2019) (dismissing copyright claim against film due to lack of substantial similarity and noting that plaintiff's "intermediate copying argument doesn't alter this conclusion"); *Silas*, 201 F.Supp.3d at 1169 (dismissing copyright claim against television series and explaining that "because published works cause injury under copyright law, courts consider the final version of a film, rather than unpublished scripts, when determining substantial similarity"); *DuMond*, 2021 WL 733311, at *5 ("the only question is whether the final expression is or is not substantially similar").

The cases Plaintiff cites (Opp. 9:13-21) all share a critical difference to the cases discussed above—and this one. They do not merely involve an alleged method of copying employed to create the accused work; rather, the unfinished or intermediate works ***were*** the accused works. In *Walt Disney Productions v. Filmation Associates*, the "script, story board, story reel, and promotional 'trailer'" that the defendant unsuccessfully argued were merely "transitory" were "fixed" in the "material object[s]" accused of infringement. 628 F.Supp. 871, 876 (C.D. Cal. 1986). The court rejected the defendant's argument that infringement was "not actionable until it [had] completed work on its motion picture" because "the absence of a

13
REPLY ISO TESLA AND MUSK'S MOTION TO DISMISS TAC
Case No. 2:24-cv-09033-GW-RAO

completed motion picture does not preclude meaningful comparison of [plaintiff's] character depictions and film with [defendant's] materials." *Id.* at 875-77.  In *Danjaq, LLC v. Universal City Studios, LLC*, that the defendant's movie was still in production did not preclude the court from finding the accused screenplay was substantially similar to the plaintiff's asserted work.   No. 2:14-cv-02527-SJO-E, 2014 WL 7882071, at *6 (C.D. Cal. Oct. 2, 2014).  And in *Paramount Pictures Corp. v. Axanar Productions, Inc.* ("*Axanar I*"), the allegedly infringing works consisted of a "'fully revised and locked' script" and a "completed" scene from the accused film upon which the court was able to conduct a substantial similarity analysis.  No. 2:15-cv-09938-RGK-EX, 2016 WL 2967959, at *6 (C.D. Cal. May 9, 2016).  In each of these cases, the inquiry ended with substantial similarity.

In sum, even if Alcon's literal copying allegation is adequately pled and technically plausible, it is not cognizable as a matter of law.  As this Court previously stated, having "enunciate[d] a way to successfully dispose" of this theory (Dkt. 61, 16), it, and the copyright claim in general, should be dismissed.

### D.    Tesla Has Met Its Burden of Establishing Fair Use

#### 1.    The Court Can Decide Fair Use Now

Like the extrinsic test, fair use is an objective inquiry that the Court can evaluate and decide now as a matter of law because both Plaintiff's work and the accused work are before the Court.  *See, e.g.*, *DraftExpress, Inc. v. Whistle Sports, Inc.*, No. 2:22-cv-488-DMG-AGRx, 2022 WL 16962285, at *2 (C.D. Cal. Aug. 2, 2022) ("[T]he Court may consider the fair use defense on a motion to dismiss by applying the doctrine to the facts as they appear in the Complaint and those materials incorporated by reference therein, such that 'the ultimate "fair use" question primarily involves legal work.'" (quoting *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 24 (2021))).  While Tesla ultimately bears the burden of proof on its fair use defense, there is no support for Alcon's assertion that Tesla must produce evidence in discovery before

the Court can decide fair use.  *See, e.g.*, Opp. 20:14-17, 20:24-27, 21:13-14.  The Ninth Circuit has held that an "assertion of fair use may be considered on a motion to dismiss" based on the plaintiff's allegations.  *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008); *see* Mot. 16:10-17:10 (citing cases finding fair use at the pleadings stage).[13]

Moreover, this Court already found, when ruling on an earlier motion to dismiss in this case, that the "We, Robot" presentation is an expressive work entitled to First Amendment protection.  Dkt. 61, 31-32.  The Court's earlier decision paves the way for finding copyright fair use now given that, as the Supreme Court has explained, fair use is a "First Amendment accommodation[]" built into copyright law.  *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003).  At least one court in this district found, on a Rule 12(b)(6) motion, that an accused work was an expressive work protected by the First Amendment and that its use of the copyrighted work was fair, warranting dismissal with prejudice of the trademark and copyright infringement claims.  *McGillvary*, 2024 WL 3588043, at *8-9, 13, 16.  The same should occur here.

**2.  Tesla's Use Is Transformative and Not for Commercial Gain**

Instead of addressing head-on Tesla's arguments regarding the different purposes of BR2049 and Image C (Mot. 3:20-4:12, 15:9-20, 17:24-18:15), Alcon argues that BR2049 and Image C both convey the message that a dystopian future should be avoided.  Opp. 18:22-19:1.  But the TAC does not support this argument,

---

[13] Alcon fails to address the cases cited by Tesla other than arguing that they "appear" to be cases "where all of the relevant facts either actually are undisputed by the parties, or where the type of use moots or blocks plaintiff-favorable evidence of one or more factors," such as "'parody' or 'parody'-like cases."  Opp. 18:11-19.  This is incorrect, as Tesla cited cases finding fair use in non-parody cases.  *See, e.g.*, *McGillvary v. Netflix, Inc.*, No. 2:23-CV-01195-JLS-SK, 2024 WL 3588043, at *8-9 (C.D. Cal. July 30, 2024); *DraftExpress*, 2022 WL 16962285, at *2-5; *City of Inglewood v. Teixeira*, No. 2:15-cv-01815-MWF-MRW, 2015 WL 5025839, at *6-12 (C.D. Cal. Aug. 20, 2015).

and Alcon does not dispute that BR2049's purpose is to entertain film viewers.  Mot. 18:5-6.  Indeed, the TAC's allegations are consistent with BR2049's purpose of entertaining viewers.  TAC ¶ 11 ("BR2049 tells the story of its main character, 'K,'…a replicant who is also a 'blade runner,' tasked with hunting and killing his own kind."), ¶ 50 (alleging that K begins as "an unquestioningly obedient, cold-blooded killer" who goes through an "emotional journey" where he "questions everything and believes he might have a soul" then ultimately becomes a "rebel against the system he once served"), ¶¶ 11, 51 (BR2049 poses an "existential societal question" regarding the human-AI relationship where "wrong decisions will lead to apocalyptic ruin").  At a high level, BR2049's message may aptly be described as a warning that the dismal dystopian future depicted throughout the film is inevitable when humans work too closely with robots.  *Id.* ¶¶ 11, 50-54.  Plaintiff's overgeneralized, generic description that BR2049 presents merely a "horrific" dystopian future to avoid (Opp. 18:24-26) arguably accompanies ***any*** story set in "an imagined world or society in which people lead dehumanized, fearful lives."  Dkt. 89-27 (defining "dystopian").  This is not Tesla's message in any event.

Alcon's argument that Tesla commented "with" BR2049, rather than "on" it (Opp. 18:21-24), is not accurate.  Tesla's use of BR2049 falls squarely within the Supreme Court's explanation of transformative use because it serves a different purpose and has a different character than BR2049.  In *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, the Court provided Warhol's Campbell's Soup Cans series—a series of works incorporating the Campbell's soup advertising logo to make a comment about consumerism—as an example of fair use.  598 U.S. 508, 538-40 (2023).  The Court explained that "[t]he purpose of Campbell's logo is to advertise soup," whereas the Soup Cans series used Campbell's work for "an artistic commentary on consumerism, a purpose that is orthogonal to advertising soup."  *Id.* at 539.  Warhol's use was further justified because his series "target[ed] the logo,"

i.e., "the original copyrighted work [was], at least in part, the object of Warhol's commentary," and it was "the very nature of Campbell's copyrighted logo—well known to the public, designed to be reproduced, and a symbol of an everyday item for mass consumption—that enable[d] the commentary." *Id.* at 539-40. Like the Soup Cans series, Tesla used Image C to make its own social commentary about the benefits of autonomous cars on people and cities—a purpose and message that BR2049 does not share. Mot. 3:20-4:12, 15:9-20, 17:24-18:15. This case is not like *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, where the defendant copied Dr. Seuss's book, replaced Dr. Seuss characters with *Star Trek* characters, and "merely repackaged" the same story in a book, keeping the same purpose and character without critiquing or commenting on the original. 983 F.3d 443, 452-55 (9th Cir. 2020) (explaining that "[t]he *Star Trek* characters step[ped] into the shoes of Seussian characters in a Seussian world that [was] otherwise unchanged").

Plaintiff does not dispute that Tesla used Image C to show the stark contrast between the dystopian future of BR2049 and the bright future Tesla envisions with driverless automobiles. Mot. 17:25-18:9. Nor could it because this Court has already found that "Musk was clearly referencing [Blade Runner's] dystopian depiction of a bleak future in comparison to the prospective utopian one which his product would supposedly usher in" (Dkt. 61, 32 n.24) and "if anything, *distancing* and/or *contrasting* his presentation from Blade Runner/BR2049." Dkt. 78 (Tentative Ruling), 6 (emphasis original). Alcon also claims that, similar to Warhol targeting Campbell's logo to enable his commentary, Tesla used BR2049 to convey the message that we should ***not*** want the future envisioned by many science-fiction movies. Opp. 18:22-24. This message is made clear to the audience not only through Musk's speech, but also by the words "NOT THIS," which treats Image C as "raw material" to which Tesla has added "new insights":[14]

---

[14] *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1176 (9th Cir. 2013).



TAC ¶ 39.

Alcon argues that Tesla's use is satire and asserts that Tesla could have used any science-fiction movie to express its message and "[did] not even try to" articulate why it was justified to use BR2049 specifically. Opp. 19:6-10. But Tesla's use is not satire, and Alcon ignores Tesla's argument that "[t]he alleged use of BR2049 was reasonably necessary" to make its point by commenting on the film's bleak setting and juxtaposing it to the future Musk described. Mot. 18:2-5; *see Warhol*, 598 U.S. at 532 (explaining that "commentary or criticism that targets an original work may have compelling reason to 'conjure up' the original by borrowing from it" (quoting *Campbell*, 510 U.S. at 588)). The law does not require Tesla to explain why referencing "Blade Runner" specifically was any more justified than using another film. All that is required is that Tesla's use was justified, which it was. *Cf. Warhol*, 598 U.S. at 539-40 (explaining that use of Campbell's soup advertising logo was justified and not requiring any justification for using Campbell's over any other well-known product).

With respect to commercial gain, Alcon argues only that Tesla's use was "a product advertisement" (Opp. 19:11-12), but Image C does not advertise any product.

Alcon ignores the Court's prior finding that the "We, Robot" presentation is an expressive work (Dkt. 61, 31-32), and to the extent it served to promote Tesla's business, Alcon fails to address Tesla's cases explaining that incidental use as part of a commercial enterprise is not what the commercial use factor addresses.  Mot. 19:3-13; *Seltzer*, 725 F.3d at 1178 (first factor weighed in favor of fair use where "Green Day's use of *Scream Icon* was only incidentally commercial; the band never used it to market the concert, CDs, or merchandise").  Critically, the TAC does not allege that Image C is a market substitute for BR2049.  Mot. 21:2-11.  It is not.[15]

### 3.    The Nature of the Copyrighted Work Factor Is Neutral

Alcon does not address this factor or either of the cases Tesla cited for it.  *See generally* Opp. 18:6-22:3.  Alcon therefore appears to concede that this factor is given minimal weight and that the length of time BR2049 has been published favors fair use.  Mot. 19:23-20:2.

### 4.    The Alleged Use Is Reasonable

Alcon's only argument on this factor is that "the Court should either accept the TAC's allegations that the usage was quantitatively highly significant such that this factor favors Alcon" or wait to decide fair use until there has been discovery.  Opp. 20:11-23.  But as noted above, the Court can view the TAC's plausible allegations in the light most favorable to Alcon and decide fair use now.  *Supra* § II.D.1.  Even if Tesla copied the entire BR2049 film or "key scenes" (Opp. 20:11-23) (which it did not), there are plenty of cases holding that wholesale copying of an entire work is fair.

---

[15] Any amount Tesla considered paying to WBDI for the Image A clip license (Opp. 20:7-10) is irrelevant, as Alcon alleges WBP could not grant Tesla the requested rights, Alcon "never would" authorize any BR2049 use by Tesla, and the license was denied in any event.  TAC ¶¶ 33, 36-37.  As to Alcon's baseless comments about an AI image generator (Opp. 19:20-20:7, 20:11-14), they can be disregarded for the reasons explained *supra* § II.C and because Alcon does not dispute that there are no allegations that the purported literal copy was ever seen by or known to anyone other than Tesla.  Mot. 22:2-4.

The Ninth Circuit has held that the reuse of an entire image may be reasonable if it serves the defendant's distinct intended purpose. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1167 (9th Cir. 2007) (use of entire image necessary to facilitate use of search engine); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820-21 (9th Cir. 2003) (same); *accord Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*, No. 4:09-cv-01468-SBA, 2009 WL 2157573, at *6 (N.D. Cal. July 17, 2009), *aff'd*, 422 F. App'x 651 (9th Cir. 2011). Alcon does not even attempt to distinguish the cases Tesla previously cited on this point. Mot. 20:22-27. Moreover, *ComicMix* is inapposite because the defendant's work did not "possess[] a further purpose or different character" and instead "paralleled" the purpose of the plaintiff's work. 983 F.3d at 454.

### 5.    There Is No Cognizable Harm to BR2049

Alcon argues that Tesla should not be "relieved of [its] burden to put in evidence of the effect on Alcon's market for the work" (Opp. 20:24-22:3), but as discussed *supra* § II.D.1, Tesla bears no such burden now.

There is no dispute that Image C is not a market substitute for BR2049 or that Tesla's use of Image C has not harmed the market for BR2049. Mot. 21:2-11; Opp. 20:24-21:4; *see Campbell*, 510 U.S. at 593 (explaining that "the only harm…that need concern us…is the harm of market substitution"). Rather, Alcon argues it is "concern[ed] that, especially if Musk and Tesla were free to use BR2049 as the theme for every Tesla product reveal, such conduct will or could damage Alcon's auto brand licensing market, including as to ability to offer meaningful exclusivity." Opp. 21:4-13. But Alcon overstates Tesla's use—Image C was an 11-second reference point, not a theme. Mot. 3:20-4:12. And recognizing that that ***this*** particular use is fair does not give Tesla cart blanche to use BR2049 in "every product reveal." Fair use "calls for a case-by-case analysis" considered within the "specific" accused use's broader

1    setting and will vary depending on context.  *Campbell*, 510 U.S. at 577; *Warhol*, 598

2    U.S. at 527, 533.

3        Notably, Alcon does not respond to Tesla's arguments about the TAC's

4    licensing allegations (Mot. 21:12-22:5) or attempt to distinguish *Tresóna Multimedia,*

5    *LLC v. Burbank High School Vocal Music Association*, which indicates that Alcon's

6    allegations are not cognizable under a fair use analysis.  953 F.3d 638, 652 (9th Cir.

7    2020) (plaintiff not harmed by loss of licensing fees for a transformative use).  Alcon's

8    citation to *ComicMix* is inapposite because the defendant's work was a substitute for

9    licensed derivatives of the plaintiff's work and "usurp[ed]" the plaintiff's potential

10    market.  983 F.3d at 460-61.

11        **E.    Dismissal With Prejudice Now Is Appropriate**

12        Dismissal with prejudice is warranted because the works are before the Court

13    and no amendments (certainly not the "chart" Plaintiff suggests (Opp. 22:6-10)) can

14    create substantial similarity where there is none.  *Rentmeester*, 883 F.3d at 1125

15    (affirming dismissal with prejudice where amendments would be "futile" because no

16    "new allegations" can "change[] th[e] dispositive fact" that the parties' works are "not

17    substantially similar"); *Jangle Vision*, 2022 U.S. Dist. LEXIS 110600, at *4

18    (dismissing with prejudice because no substantial similarity).  Plaintiff admits "it [is]

19    unlikely that any further amendment would be warranted or needed."  Opp. 22:5-6.

20    Thus, it is unsurprising that the potential addition Plaintiff half-heartedly raises—the

21    market effect of Disney licensing its characters for AI image generation (*id.* 22:6-

22    10)—would be futile.  It is information involving a third party, not Alcon, and a

23    business arrangement that also, reportedly, includes Disney making a $1 billion equity

24    investment into OpenAI.  Tesla fails to see, and Alcon does not explain, how such a

25    third-party business transaction would have any plausible alleged impact here.

26    Accordingly, dismissal should be with prejudice.

27

28

1

III.    **CONCLUSION**

2          For the reasons stated above and in Tesla's Motion, the Court should dismiss

3   the TAC with prejudice.

4

5   Dated:  January 15, 2026              FISH & RICHARDSON P.C.

6

7                                  By:  */s/ Kristen McCallion*
                                      Christopher S. Marchese (SBN 170239)
8                                      marchese@fr.com
                                      FISH & RICHARDSON P.C.
9                                      4695 MacArthur Court, Suite 1100
                                      Newport Beach, CA 92660
10                                     Tel: (213) 533-4240
                                      Fax: (858) 678-5099
11

12                                     John S. Goetz (*pro hac vice* forthcoming)
                                      goetz@fr.com
13                                     Kristen McCallion (*pro hac vice*)
                                      mccallion@fr.com
14                                     Vivian Cheng (*pro hac vice*)
                                      cheng@fr.com
15                                     FISH & RICHARDSON P.C.
                                      7 Times Square, 20th Floor
16                                     New York, NY 10036
                                      Tel: (212) 765-5070
17                                     Fax: (212) 258-2291

18

19                                     Matthew A. Colvin (*pro hac vice*)
                                      colvin@fr.com
20                                     FISH & RICHARDSON P.C.
                                      1717 Main Street, Suite 5000
21                                     Dallas, TX 75201
                                      Tel: (214) 747-5070
22                                     Fax: (214) 747-2091

23

24                                     Kayleigh E. McGlynn (*pro hac vice*)
                                      mcglynn@fr.com
25                                     FISH & RICHARDSON P.C.
                                      One Marina Park Drive, Suite 1700
26                                     Boston, MA 02210
                                      Tel: (617) 542-5070
27                                     Fax: (617) 542-8906

28

A. Louis Dorny (SBN 212054)
ldorny@tesla.com
Terry W. Ahearn (SBN 216543)
tahearn@tesla.com
TESLA, INC.
3000 Hanover St.
Palo Alto, CA 94304
Tel: (510) 298-8516

Attorneys for Defendants
Tesla, Inc. and Elon Musk

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Tesla, Inc. and Elon Musk, certifies that this brief contains 6,819 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Kristen M. McCallon*
Kristen McCallion