UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-9033-GW-RAOx | Date | February 3, 2026 |
|---|---|---|---|
| Title | *Alcon Entertainment, LLC v. Tesla, Inc., et al.,* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULING ON DEFENDANTS TESLA, INC. AND ELON MUSK'S MOTION TO DISMISS THIRD AMENDED COMPLAINT [88]

Attached hereto is the Court's Tentative Ruling on Defendants' Motion [88], set for hearing on February 5, 2026 at 8:30 a.m.

Initials of Preparer    JG

*Alcon Entm't, LLC v. Tesla, Inc., et al.*, Case No. 2:24-cv-9033-GW-(RAOx)
Tentative Ruling on Motion to Dismiss Third Amended Complaint

      Defendants Tesla, Inc. ("Tesla") and Elon Musk ("Musk") have moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Third Amended Complaint ("TAC") which plaintiff Alcon Entertainment, LLC ("Plaintiff" or "Alcon") filed in this action on October 2, 2025. The TAC contains two claims for relief: 1) direct copyright infringement against Tesla and Musk and 2) contributory copyright infringement against co-defendant Warner Bros. Discovery, Inc. As it is the only claim pled against Tesla and Musk, the motion concerns only the first claim for relief.

      Under Rule 12(b)(6), a court must (1) construe a complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief).

      In its consideration of the motion, the Court is generally limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruling on other grounds recognized in Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Nonetheless, "while a court must generally refrain from considering extrinsic evidence in deciding a 12(b)(6) motion, it may [also] consider documents on which the complaint '*necessarily relies*' and whose 'authenticity . . . is not contested.'" *Warren v. Fox Family Worldwide,*

1

*Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003) (emphasis added); *see Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."); *see also Steinle v. City & Cty. of S.F.*, 919 F.3d 1154, 1162-63 (9th Cir. 2019); *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1042 (9th Cir. 2015) ("'[W]e may consider materials incorporated into the complaint . . . .'") (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).

To prevail on a standard copyright infringement claim, Plaintiff "must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010) (quoting *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006) and *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc); *see also Skidmore*, 952 F.3d at 1064 (describing the second element as copying "protected aspects of the work"); *Corbello v. Valli*, 974 F.3d 965, 973 (9th Cir. 2020) (same). There are two separate components to copyright infringement's second prong of "copying protected aspects of the work:" "copying" and "unlawful appropriation." *Skidmore*, 952 F.3d at 1064. In contrast to copying, "unlawful appropriation" requires that works "share *substantial* similarities." *Skidmore*, 952 F.3d at 1064.

Tesla's/Musk's motion is based on the assertion that Plaintiff cannot demonstrate substantial similarity between Plaintiff's work(s) and the image – referenced in the TAC and herein as "Image C," *see* TAC ¶ 39 – that Musk displayed at a Tesla event on October 10, 2024 (the "Event"). However, the motion also acknowledges that Plaintiff has a "literal copying" theory outside of that substantial similarity-based theory, but argues that the literal copying theory cannot survive because it is implausible, because it does not matter how an allegedly-infringing work – which Tesla/Musk assert is only Image C, the image that Musk displayed at the Event – was created, and because Tesla's/Musk's actions were "fair use" in any event. As an initial matter, as the Court

2

has previously explained, *see* Docket No. 61, at pgs. 15-17 of 36, bolstered by the general similarities between Image A – an image taken from Plaintiff's copyrighted work, the motion picture "Blade Runner 2049" ("BR2049") – and Image C, the Court finds Plaintiff's "literal copying" allegations to be sufficiently plausible,[1] with a proper basis for information-and-belief allegations employed in support thereof. *See also* TAC ¶ 16 ("Musk directly or indirectly owns and operates . . . the AI company X.AI Corp.[, which] runs 'Grok,' an AI system with image generation functions."); *id.* ¶¶ 27-28 (alleging that Image A is BR2049's "most recognizable still image," as it "was the publicity image for theatrical release promotion, and it is still the cover image to BR2049 trailers on YouTube and other platforms"); *id.* ¶ 30 (alleging that "by October 10 Tesla had already been provided a high resolution digital copy of Image A"); *id.* ¶ 39 (alleging that Musk and Tesla created Image C "using an AI image generator" because they "only had five hours or so to adjust their Event plans" after Plaintiff's rights-denial); *id.* ¶ 40 (alleging that Musk/Tesla "generated Image C by: (i) copying Image A or even the full BR2049 work (or qualitatively significant portions), into an AI image generator, and (ii) then asking the AI to make 'an image from the [character] K surveying ruined Las Vegas sequence of Blade Runner 2049,' or a similar direction") (omitting internal quotation marks).[2] It therefore turns to Tesla's/Musk's other arguments.

In order to be able to prevail as to the *full scope* of this case via this Rule 12(b)(6) proceeding, Tesla/Musk argue that Plaintiff's copyright infringement claim is limited to "substantial similarity" infringement via publication/use of the end-product of that alleged infringement, "Image C," because of the TAC's definition of "Infringing Works" including only "Image C and . . . the Event Recording (the 11 seconds containing Image

---

[1] That – as Musk/Tesla point out in their opening brief, *see* Docket No. 88-1, at 14:14-22 – the Court previously explained Plaintiff had not plausibly connected co-defendant Warner Bros. Discovery, Inc. to this allegation of "literal copying," or provided a sufficient basis for an information-and-belief-based allegation as to that defendant, does not mean that the same problem(s) impact Musk and Tesla in this regard.

[2] In reaching its decision here, the Court cannot, and does not, consider Tesla's and Musk's assertion in their opening brief that "[t]he allegation that Tesla copied the entire BR2049 film into an AI image generator is especially implausible given its size (and the fact that common AI image generators, including Grok and DALL-E 3/ChatGPT, do not support video uploads)." Docket No. 88-1, at 15:4-7. Those purported considerations/facts are not included in the TAC, and are therefore outside the proper materials-for-consideration on a Rule 12(b)(6) motion.

3

C).*"* TAC ¶ 49; *see also id.* ¶ 55 (alleging violation of Plaintiff's "exclusive public display rights" via the "Infringing Works"). Yet, no matter how the TAC defines "Infringing Works," as just noted, that is plainly not the full scope of Plaintiff's infringement allegations. Plaintiff also alleges "literal copying" and violation of the "exclusive reproduction rights" in its copyrights. *See* TAC ¶¶ 47-48 ("Musk and Tesla . . . actually copied BR2049 without Alcon's authorization, and their copying constituted unlawful appropriation as follows . . . ," including by virtue of "[l]iteral [c]opying," "[v]iolating . . . Alcon's exclusive reproduction rights"); *see also id.* ¶ 2 ("Musk and Tesla exploited protected elements of BR2049 for the Event without Alcon's authorization."). While Tesla and Musk assert that this aspect of Plaintiff's allegations is "irrelevant," Docket No. 88-1, at 1:11-13, the Court must disagree.

As part of their argument in this regard, Tesla/Musk assert that Plaintiff's literal-copying theory concerns only "the method of Image C's creation," Docket No. 88-1, at 14:3, or what they assert constitutes non-actionable "intermediate copying." In making this argument, Tesla and Musk seek to take advantage of this Court's comment in *DuMond v. Reilly* that "the *method* of copying . . . matters not at all" (at least when a substantial-similarity showing is required based upon the particular allegations/theory advanced in the case). *See DuMond v. Reilly*, No. CV 19-8922-GW-AGRx, 2021 WL 733311, *4-5 (C.D. Cal. Jan. 14, 2021). It is true that, as this Court explained in *DuMond*, the manner of copying does not matter *when a plaintiff alleges only infringement by an end-product*, *i.e.*, a theory that a published book infringes the copyright in the plaintiff's own book. That was the extent of the allegations in *DuMond* (or at least the plaintiff in that case did not clearly enunciate otherwise). *See id.* at *5 (explaining the plaintiff's argument that her suggested method of analysis "will show substantial similarities, along with 'the distance between similarities' and 'the clusters of similarities' in the novels"). As explained above, that is *not* the full extent of Plaintiff's case here – Plaintiff has alleged infringement not just by virtue of Musk's publication of Image C at the Event, but by the alleged "literal copying" of Image A (or of BR2049 in its entirety) in the course of *creating* Image C. *See* TAC ¶¶ 2, 47-48. Moreover, at least now that the age of AI is upon us, copyright infringement lawsuits involving what might be understood as "intermediate copying" are proceeding, at least suggesting that looking

4

*only* to end-products – finished novels, published images – as "infringing works" in that context is not the only means by which a plaintiff might seek to protect its copyright rights. *See, e.g.*, *Bartz v. Anthropic PBC*, 787 F.Supp.3d 1007, 1028-29 (N.D. Cal. 2025). Case law preceding that technological revolution – even cases as recent as 2017, such as *Esplanade Productions, Inc. v. Walt Disney Company*, No. CV 17-02185-MWF (JCx), 2017 WL 5635027 (C.D. Cal. Nov. 8, 2017), discussed in the parties' briefing – might be of limited utility in the current era.

Once the foregoing observations are made, the Court again concludes – consistent with its assessment when motions-to-dismiss were directed at Plaintiff's First Amended Complaint, *see* Docket No. 61, at pgs. 15-17 of 36 – that the defendants may not end this litigation via this Rule 12(b)(6) proceeding. Plaintiff has a seemingly-valid and plausible theory of literal copying, which does not appear to require an assessment of "substantial similarity" (meaning that the Court again has no need at this stage to consider or resolve the substantial similarity debate in this case,[3] *see id.* at pg. 17 of 36, including Plaintiff's creative theory/theories for the permissible scope of protectable elements at-issue). Beyond substantial similarity (and the now-rejected grounds for denying Plaintiff's "literal copying" theory generally), Tesla/Musk only argue that any alleged infringement fits within the "fair use" doctrine.

On that topic, while the Court agrees with Tesla/Musk that fair use may be fully-analyzed on the pleadings in appropriate circumstances and where the outcome is clear, the Court does not believe that this approach fits here. It agrees with Plaintiff that a proper and complete assessment of fair use in this case is most-likely to occur no earlier than at summary judgment. *See McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1158 (9th Cir. 2022) (observing that fair use is a "mixed question of law and fact" and is "often resolved at summary judgment"). The Court believes that at least three of the four commonly-recited (though non-exclusive, *see Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985)) fair use factors – the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational

---

[3] Consequently, the Court has no need to consider the materials that are the subject of Tesla's and Musk's Request for Judicial Notice, or Plaintiff's objection to the Court's consideration thereof.

purposes; the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and the effect of the use upon the potential market for or value of the copyrighted work, *see McGucken*, 42 F.4th at 1157[4] – could use some factual development, or at the very least are of uncertain application/resolution on the pleadings alone.[5] *See* TAC ¶ 22 (alleging that the Event was intended "to solicit investment and advertise . . . new Tesla products to consumers"); *id.* ¶ 57 (alleging that, at the time of the Event, Plaintiff was producing a derivative work limited TV series "and discussing with a car brand an exclusive licensed affiliation," such that Tesla's/Musk's alleged "infringements interfere with Alcon's ability to grant license exclusivity, damaging BR2049's value to Alcon"); *id.* ¶ 13 (alleging that "[t]here was and is an established market for automobile brands to license from motion picture or TV rights holders the right to use copyright-protected elements of the works to promote car products and brands" and that Plaintiff "uses this market to monetize its creative works, including BR2049," giving as an example the fact that "car brands bid competitively for licensed affiliation with BR2049" during "BR2049 pre-production and production"); *id.* (noting further that "[n]on-exclusive licenses are less appealing to brands and command lower prices"); *id.* ¶ 40 (alleging that Musk/Tesla generated Image C by copying Image A or even the full BR2049 work (or qualitatively significant portions thereof), into an AI image generator); *see also, e.g.*, *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 24 (2021) (noting that "[a]pplying a legal 'fair use' conclusion may . . . involve determination of subsidiary factual questions, such as 'whether there was harm to the actual or potential markets for the copyrighted work' or 'how much of the copyrighted work was copied'") (quoting *Oracle Am., Inc. v. Google LLC*, 886 F.3d 1179, 1196 (Fed. Cir. 2018)).

       This is all-the-more an appropriate conclusion here considering the Ninth Circuit's frequent commentary on the flexibility, malleability, and even uncertainty, of the fair use test and required analysis. *See McGucken*, 42 F.4th at 1157 (noting Supreme

---

[4] The Ninth Circuit has noted that the "relative importance" of two of those three factors "has dominated the case law." *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1171 (9th Cir. 2012).

[5] This approach would be especially warranted as to the first factor (*i.e.*, "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes") given the approach and extensive discussion of that element by the Supreme Court in *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 525 et seq. (2023).

Court's description of fair use doctrine as "equitable rule of reason") (quoting *Google LLC*, 593 U.S. at 18); *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 739 (9th Cir. 2019) (noting that "[g]iven license to apply the[] four [listed fair use] factors flexibly and to consider them in their totality, courts have been bedeviled by the fair use inquiry," that the doctrine "has been called 'the most troublesome [doctrine] in the whole law of copyright' and commentators have criticized the factors as 'billowing white goo'") (quoting *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170-71 (9th Cir. 2012)); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1175 (9th Cir. 2013) (stating that all four factors "must all be explored, and all the results evaluated together, in light of the purposes of copyright"); *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 800 (9th Cir. 2003) ("To determine whether a work constitutes fair use, we engage in a case-by-case analysis and a flexible balancing of relevant factors. . . . Depending on the particular facts, some factors may weigh more heavily than others."). It is of course also important to recognize that – as they recognize – Tesla/Musk would ultimately bear the burden of convincing the Court with respect to this affirmative defense. *See, e.g.*, *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994); *Monge*, 688 F.3d at 1170.

       Fair use is not ripe for determination at this procedural stage in this particular case, and a substantial similarity-based analysis will not resolve at least one major aspect of Plaintiff's infringement allegations. As such, the Court concludes that Musk's/Tesla's motion must be denied (though, of course, that does not put to bed the substantial similarity and fair use issues in this case).