Edward M. Anderson (SBN 198183)
edward@andersonyehlaw.com
Regina Yeh (SBN 266019)
regina@andersonyehlaw.com
**ANDERSON YEH PC**
1055 E. Colorado Blvd. Ste 500
Pasadena, California 91106
Tel: (626) 204-4092 / Fax: (888) 744-0317

Attorneys for Plaintiff Alcon Entertainment, LLC

Arwen R. Johnson (SBN 247583)
Arwen.Johnson@kslaw.com
Lennette W. Lee (SBN 263023)
Llee@kslaw.com
KING & SPALDING LLP
633 West Fifth Street
Suite 1600
Los Angeles, California 90071
Tel: (213) 443-4355 / Fax: (213) 443-4310
Attorneys for Defendants Tesla, Inc. and Elon Musk

*Additional counsel listed on following page*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALCON ENTERTAINMENT, LLC a Delaware Limited Liability Company <br><br> Plaintiff, <br><br> v. <br><br> TESLA, INC., a Texas Corporation; ELON MUSK, an individual; WARNER BROS. DISCOVERY, INC., a Delaware Corporation, <br><br> Defendants. | Case No. 2:24-cv-09033-GW-RAO <br><br> **STIPULATED [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** <br><br> District Judge: George H. Wu <br><br> Magistrate Judge: Rozella A. Oliver |

Matthew T. Kline (SBN 211640)
mkline@omm.com
Cassandra L. Seto (SBN 246608)
cseto@omm.com
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
Tel:  (310) 553-6700 / Fax:  (310) 246-6779

Attorneys for Defendant Warner Bros. Discovery, Inc.

James W. Irey (SBN 150640)
jirey@yukelaw.com
Hassan Elrakabawy (SBN 248146)
helrakabawy@yukelaw.com
Celeste S. Del Rio (SBN 275969)
cdel_rio@yukelaw.com
**YUKEVICH CAVANAUGH**
355 South Grand Avenue, 15th Floor
Los Angeles, CA  90071
Tel: (213) 362-7777/ Fax: (213) 362-7788

Additional Attorneys for Plaintiff Alcon Entertainment, LLC

A. Louis Dorny (SBN 212054)
ldorny@tesla.com
Terry W. Ahearn (SBN 216543)
tahearn@tesla.com
Helen Trac (SBN 285824)
htrac@tesla.com
David Lee (SBN 264467)
dlee@tesla.com
**TESLA, INC.**
1501 Page Mill Building 6U
Palo Alto, CA 94304
Tel: (510) 298-8516

Additional Attorneys for Defendants Tesla, Inc. and Elon Musk

2

## 1.   PURPOSE

This Stipulated Order Regarding Discovery of Electronically Stored Information ("Order") will govern discovery of electronically stored information ("ESI") ("eDiscovery") in this Action as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, and any other applicable orders and rules.

## 2.   COOPERATION

The Parties are aware of the importance of cooperation and commit to cooperate in good faith throughout this Action consistent with this Court's guidelines for the discovery of ESI. This may include, for example, the discussion of search methodologies, custodians, and noncustodial sources of ESI in the event a Receiving Party raises a good faith concern about a Producing Party's collection of ESI.

## 3.   ESI PERSON(S) MOST KNOWLEDGEABLE

Within seven (7) days of entry of this Order, each Party shall identify at least one ESI person most knowledgeable who is, or has access to persons who are, knowledgeable regarding the technical aspects of that Party's ESI, including the location, nature, accessibility, preservation, collection, search, review, and production of ESI in this Action.

## 4.   GENERAL PROVISIONS

**Limitations and Non-Waiver:** Pursuant to the terms of this Order, information regarding search process and ESI practices may be disclosed, but compliance with this Order does not constitute a waiver, by any Party, of any objection to the production of particular ESI for any reason, including that it is irrelevant, undiscoverable, or otherwise inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party. Nothing in this Order shall be construed to affect the discoverability of information or the admissibility of discoverable information. Nor shall anything in this Order be construed to affect the authenticity of any document or data. All

3

STIPULATED PROPOSED ESI ORDER
Case No. 2:24-cv-09033-GW-RAO

objections to the discoverability, admissibility, authenticity, confidentiality, or production of any documents and ESI are preserved and may be asserted at any time. For the avoidance of doubt, a Party's compliance with this Order will not be interpreted to require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. All Parties preserve all such privileges and protections, and all Parties reserve the right to object to any such privileges and protections.

## 5.    PRESERVATION:

The Parties agree that they shall continue to take reasonable steps to preserve relevant documents and ESI in accordance with their obligations under applicable law. If a Party contends that a source of ESI is not reasonably accessible under FRCP Rule 26(b)(2)(B), it shall identify the source by category or type and the basis for the claim that the source is not reasonably accessible. The Parties may meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this Action and those that are not reasonably accessible or need not be preserved because of undue burden or cost or proportionality. By preserving or producing information for the purpose of this Action, the Parties are not conceding that such material is discoverable or admissible.

## 6.    DEFINITIONS

(a)    **"Action"** means *Alcon Entertainment, LLC v. Tesla, Inc., Elon Musk, and Warner Bros. Discovery, Inc.*, No. 2:24-cv-09033-GW-RAO (C.D. Cal.).

(b)    **"Electronically stored information"** or **"ESI,"** as used herein, has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

(c)    **"Media"** means an object or device, real or virtualized, including but not limited to a disc, tape, computer or other device, on which data is or was stored.

4

STIPULATED PROPOSED ESI ORDER
Case No. 2:24-cv-09033-GW-RAO

**(d)**    "**Non-Party**" means any natural person, partnership, corporation, association, or other legal entity who is not a Party to this Action.

**(e)**    "**Outside Counsel of Record**" means attorneys who are not employees of a Party to this Action but are retained to represent or advise a Party to this Action and have appeared in this Action on behalf of that Party or are affiliated with a law firm that has appeared on behalf of that Party, including support staff.

**(f)**    "**Party**" means any party to this Action, including all of its officers, directors, and employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

**(g)**    "**Producing Party**" means a Party or Non-Party that produces ESI in this Action.

**(h)**    "**Receiving Party**" means a Party that receives ESI from a Producing Party in this Action.

**7.**    **SEARCH**

**(a)**    Search Terms:  A Producing Party may, but is not required to, use search terms to locate or identify potentially relevant ESI.  If a Producing Party elects to use search terms in connection with its collection, review, or production of ESI from a data source, it must maintain a record of the search terms used in event a dispute arises regarding the completeness of the Producing Party's production.

**(b)**    Use of Technology Assisted Review.  A Producing Party may, but is not required to, use technology assisted review ("TAR") or similar advanced analytics on its own ESI to filter out or exclude non-responsive documents from review and production.  If a Producing Party elects to use TAR for this purpose, the Producing Party must disclose the following information in advance to the Receiving Party: (1) the custodial and non-custodial data sources against which TAR will be run; (2) the TAR tool being used and the name of the vendor; and (3) the measure(s) used to validate the results of the TAR methodology. The Parties will meet and confer about

5

validation methods for TAR if a Party believes the Producing Party's method appears insufficient.

A Producing Party need not disclose whether it is using TAR, Continuous Active Learning ("CAL"), or any other predictive coding tool merely to prioritize the review of its own ESI.

**(c)** Nothing in this Order may be construed or interpreted as precluding a Producing Party from performing a responsiveness review to determine if documents captured by search terms are in fact responsive to the Receiving Party's discovery requests.

**(d)** Nothing in this Order may be construed to relieve a Producing Party of its obligations under the Federal Rules of Civil Procedure.

**(e)** Phased/Priority Production. Initial priority production shall proceed first from the custodians and sources most likely to contain core discoverable information, including materials concerning the creation, editing, approval, transmission, display, and recording of Image C; the October 10, 2024 keynote presentation and drafts; the Event recording and presentation files; AI-tool logs or exports associated with Image C; BR2049/Image A licensing communications; and October 10, 2024 day-of-event communications concerning the keynote content as requested and produced in discovery and subject to the rules of discovery under FRCP Rule 26.

**8.      DE-DUPLICATION AND EMAIL THREADING**

**(a)** System Files: The Parties will use their best efforts to filter out common system files and application executable files and scan document productions for viruses. Hash values may be filtered out during this process using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time. Source code files will be provided according to the Protective Order and not included in custodial data productions.

STIPULATED PROPOSED ESI ORDER
Case No. 2:24-cv-09033-GW-RAO

**(b)**    De-Duplication.  Each Producing Party is required to produce only a single copy of a responsive document, and each Producing Party may de-duplicate responsive ESI (e.g., based on MD5 hash values at the document level) across custodians, provided that metadata is produced indicating all of the custodians from whom data was collected and processed in relation to this matter and with whom a copy of the responsive document was associated.  For emails with attachments, the hash value is generated based on the parent/child document grouping.  To the extent that de-duplication through MD5 hash values is not possible, the Parties shall meet and confer to discuss any other proposed method of de-duplication.

**(c)**    Email Threading.  Where multiple email messages are part of a single chain or "thread," a Producing Party is only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email.  Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced.

**(d)**    Email Domains: Producing Parties may utilize an ESI search process to identify categories of documents, such as emails from domains typically associated with junk email, such as fantasy football-related emails, retailer advertising, and newsletters or alerts from non-industry sources.  To the extent a Party opts to exclude uniquely identifiable domain names as part of its initial filter of potentially responsive documents, the Parties agree to disclose domain names excluded under this Paragraph.

**9.    PRODUCTION FORMATS**

Appendix 1 sets forth technical specifications that govern the form of production of documents in this litigation, subject to this Section 9 and Appendix 1. If particular documents warrant a different format, the Parties will cooperate to

STIPULATED PROPOSED ESI ORDER
Case No. 2:24-cv-09033-GW-RAO

arrange for the mutually acceptable production of such documents.

The Parties agree not to degrade the searchability of documents as part of the document production process.  The Parties agree to meet and confer in good faith to address any issues that may arise in this regard, and to seek judicial intervention only if their efforts to resolve the issues on an informal basis are unsuccessful.

To the extent any data, ESI, or documents requested in discovery are not reasonably usable absent translation by the Producing Party or its systems, the Parties shall meet and confer regarding translation by the Producing Party into a reasonably usable form and the production of legends or keys employed to translate the data.

Subject to FRCP Rule 26(b)(2)(B), the following categories shall be produced in native format where native format is available or exportable through the source system, ordinary e-discovery collection/processing, vendor processing, administrative export, API export, or comparable mean or, if native production is not reasonably usable, in a reasonably usable format that preserves color, metadata, and functionality: (1) image files, including JPG, JPEG, PNG, TIFF, PSD, layered PSD/PSB, PDF, SVG, AI, and similar formats; (2) design and source files (including Adobe Photoshop/Creative Cloud project files preserving reasonably available unflattened layers, masks, generative-fill content, prompts, parameters, or associated version/history information; (3) keynote or presentation files and drafts, including companion notes where reasonably available (4) AI-tool exports, logs, prompts, seeds, JSON, CSV, API or audit records, and similar structured outputs; and (5) chat and collaboration exports where export-native format is available. Photographs, image files, slide decks, and other visually significant materials shall be produced in color by default unless native production already preserves color.

## 10.   DOCUMENTS PROTECTED FROM DISCOVERY

**(a)**   Privileged communications and work product involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log.

STIPULATED PROPOSED ESI ORDER
Case No. 2:24-cv-09033-GW-RAO

**(b)**     The Parties agree to furnish privilege logs that comply with Federal Rule of Civil Procedure 26(b)(5) and any other legal requirements for all documents withheld or redacted on the basis of privilege, attorney work product, or similar doctrines.

**(c)**     The Parties will negotiate a final deadline for the production of privilege logs that permit any disputes about claims of privilege or work product protection to be addressed in advance of the close of fact discovery.  If the Parties are unable to agree on a specific date for the final deadline for the production of privilege logs, the Parties may ask the Court to resolve the dispute.

**11.     PRIVILEGE LOGS**

Unless otherwise agreed, all responsive documents that a Producing Party withholds from disclosure in full or redacts in part based on a claim of privilege must be listed on a document-by-document basis according to family structure, in a privilege log as a searchable and sortable spreadsheet, which Producing Party will use best efforts to provide on a rolling basis within twenty-one (21) days after each rolling production tranche. All such logs shall be completed no later than forty-five (45) calendar days before the close of fact discovery.  The Producing Party will provide its privilege log in a text-searchable form that allows the Receiving Party to sort the entries chronologically (*e.g.*, Microsoft Excel). Each privilege log should include the below fields:

      a.  a unique identifier for each entry on the log;

      b.  the custodian(s) the document was collected from;

      c.  the date of the document (Sent Date, Received Date for email, and Date Created and Date Modified for non-email);

      d.  the parties to any communication (To, From, CC, and BCC metadata fields);

      e.  the privilege, immunity, or other protection from disclosure

STIPULATED PROPOSED ESI ORDER
Case No. 2:24-cv-09033-GW-RAO

asserted;

f.  a description of the contents of the document sufficient to demonstrate the basis for the assertion of privilege, immunity, or other protection from disclosure asserted; and

g.  for attachments and where otherwise applicable, the subject and author.

h.  To the extent that the law firm or attorney whose work forms the basis for the assertion of privilege is not identified in the To, From, CC, and/or BCC fields, the Producing Party shall identify that law firm or attorney.

STIPULATED PROPOSED ESI ORDER
Case No. 2:24-cv-09033-GW-RAO

## 12. MODIFICATION

This Order may be modified by a stipulation of the Parties or by the Court for good cause shown.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated: May 14, 2026      ANDERSON YEH PC

*/s/ Edward M. Anderson*
Edward M. Anderson (SBN 198183)
edward@andersonyehlaw.com
Regina Yeh (SBN 266019)
regina@andersonyehlaw.com
**ANDERSON YEH PC**
1055 E. Colorado Blvd. Ste 500
Pasadena, California 91106
Tel: (626) 204-4092
Fax: (888) 744-0317

Counsel for Plaintiff
Alcon Entertainment, LLC

Dated: May 14, 2026      KING & SPALDING LLP

*/s/ Arwen Johnson*
Arwen Johnson (SBN 247583)
Arwen.Johnson@kslaw.com
Lennette Lee (SBN 263023)
LLee@kslaw.com
**KING & SPALDING LLP**
633 West Fifth Street
Suite 1600
Los Angeles, California 90071
Tel: (213) 443-4355
Fax: (213) 443-4310

Counsel for Defendants
Tesla, Inc. and Elon Musk.

Dated: May 14, 2026      O'MELVENY & MYERS LLP.

*/s/ Matthew T. Kline*
Matthew T. Kline (SBN #211640)

11

STIPULATED PROPOSED ESI ORDER
Case No. 2:24-cv-09033-GW-RAO

mkline@omm.com
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067
Telephone:  (310) 553-6700
Facsimile:  (310) 246-6779

Counsel for Defendant Warner Bros.
Discovery, Inc.

**ATTESTATION PURSUANT TO LOCAL RULE 5-4.3.4**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's contents and have authorized the filing.

/s/ Hassan Elrakabawy
Hassan Elrakabawy

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED:_____

_____
HON. ROZELLA A. OLIVER
United States Magistrate Judge

STIPULATED PROPOSED ESI ORDER
Case No. 2:24-cv-09033-GW-RAO

**APPENDIX 1:  PRODUCTION FORMAT**

1.  **Production Components.**  Except as otherwise provided below, ESI shall be produced in accordance with the following specifications.

(a) an UTF8 delimited data file (.DAT) using standard delimiters;

(b) an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance or Relativity) that shall contain the following comma-delimited fields:  BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT;

(c) TIFF images;

(d) native files; and

(e) UTF8 document level .TXT files for all documents containing extracted full text or OCR text.

In addition:

(a) Parent-child relationships will be maintained in production.  The Receiving Party may make reasonable requests for production of hyperlinked documents on a case-by-case basis.

(b) If a particular document warrants a different production format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

2.  **Production Media and Access Controls.**  Documents shall be encrypted and produced through electronic means, such as secure file sharing methods (e.g. FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g. "VOL001").  Each piece of Production Media shall also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security

13

STIPULATED PROPOSED ESI ORDER
Case No. 2:24-cv-09033-GW-RAO

measures"; (c) the Producing Party's name; (d) the production date; and (e) the Bates Number range of the materials contained on the Production Media. Nothing in this Order will preclude or impair any and all protections provided to any Party or Non-Party by any Protective Order(s) agreed and entered into by the Parties. Any data produced by the Producing Party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection.  If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

3. **Data Load Files/Image Load Files.**  Each TIFF in a production must be referenced in the corresponding image load file.  The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production.  The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production.  All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file.  The total number of documents in a production should match the total number of records in the data load file.  Load files shall not vary in format or structure within a production, or from one production to another.

4. **Metadata Fields and Metadata File**.  Subject to FRCP Rule 26(b)(2)(B) , each of the metadata and coding fields set forth below that can reasonably be extracted, exported, derived through ordinary e-discovery processing, or

14

populated by the Producing Party or its vendor shall be produced for each document. A Producing Party is not obligated to populate or edit manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following:   (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) ALLCUSTODIAN(S), (g) CONFIDENTIALITY, (h) REDACTIONS, (i) NATIVEFILEPATH, (j) TEXTFILEPATH, and (k) HASHVALUE, which should be populated by the Producing Party or the Producing Party's vendor. The Producing Parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents. The metadata shall be delimited according to the following characters:

- Delimiter = ¶ (ASCII:020)
- Text-Qualifier = þ (ASCII:254)
- New Line = ® (ASCII:174)
- Multi-value delimiter = ; (ASCII Code 059)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| PRODVOL | Production volume |
| ALLCUSTODIAN(S) | Individual(s) from whom the document was obtained and de-duplicated out during global de-duplication |

15

STIPULATED PROPOSED ESI ORDER
Case No. 2:24-cv-09033-GW-RAO

| Field Name | Field Description |
| --- | --- |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| HASHVALUE | MD5 hash value of document |
| ATTACHNAME | The file name(s) of the attachment(s) to a parent document(s).  Separated by a semicolon. |
| AUTHOR | Any value populated in the Author field of the document properties |
| DOCDATE | Date the document was created (format: MM/DD/YYYY) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (format:  MM/DD/YYYY) |
| FILENAME | Original file name |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| EMAIL SUBJECT | Subject line of email pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATERECEIVED | Date email was received (format:  MM/DD/YYYY) |
| TIMERECEIVED | Time email was received (format: HH:MM AM/PM) |
| DATESENT | Date email was sent (format:  MM/DD/YYYY) |

16

STIPULATED PROPOSED ESI ORDER
Case No. 2:24-cv-09033-GW-RAO

| Field Name | Field Description |
|---|---|
| TIMESENT | Time email was sent (format: HH:MM AM/PM) |
| MESSAGE ID | The Unique Identifier assigned by a program to a Message/Communication |
| CONVERSATION ID | Unique identifier for the conversation |
| PLATFORM | Chat or collaboration platform |
| CHANNEL/CHAT NAME | Name of the channel or chat |
| THREAD ID | Unique identifier for the thread |
| PARTICIPANTS | Participants in the chat or collaboration export |
| EDITED FLAG | Indicates whether the message was edited |
| DELETED FLAG | Indicates whether the message was deleted |

5.   **Processing.**  With the exception of time zone modification (discussed below), ESI items shall be processed in a manner that preserves the source native file and all of the above-referenced metadata without modification. ESI items shall be produced with all of the metadata and coding fields set forth above.

(a)   Time Zone.  ESI items shall be processed so as to preserve and display the date/time shown in the document.  ESI items shall be processed to reflect the date and time standardized to a single time zone for all productions by a Producing Party, that time zone shall be Pacific Time (PT), and shall be consistent across each Producing Party's productions.  Such standardization affects only metadata values and does not affect, among other things, dates and times that are hardcoded text within a file.  Dates and times that are hard-coded text within a file (for example, in an e-mail thread, dates and times of earlier messages that were converted to body text when

17

STIPULATED PROPOSED ESI ORDER
Case No. 2:24-cv-09033-GW-RAO

subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced in accordance with the formats set forth in this Order.

**(b)** Hidden Content.  ESI items shall be processed in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes, comments, and other rich data (including, but not limited to strikethrough text, etc.) as displayed in the document.

**(c)** TIFFs.  Unless excepted below, single page Group IV black and white TIFFs should be provided, with at least 300 dots per inch (dpi) for all documents.  Each TIFF image shall be named according to a unique corresponding Bates number associated with the respective page of a document.  Each image shall be branded with the Bates number and the agreed upon confidentiality designation.  Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).  All images will display all data visible in its native application.  Where the TIFF image is unreadable or has materially degraded the quality of the original, the Producing Party shall provide a higher-quality TIFF image or the native or original file.  TIFFs shall show all text and images that would be visible to a user of the hard copy documents.

6. **Hard Copy Documents.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs.  Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Hard copy documents shall be produced with an accompanying metadata load file as forth above in Appendix 1, Paragraph 4, with the exception

18

of NATIVEFILEPATH and HASHVALUE which would not exist for hard copy documents.

(a) Unitization of Paper Documents: Paper documents, to the extent collected and/or produced, should be logically unitized for production. Therefore, when scanning paper documents for production, documents should be scanned as they are kept in the regular course of business including maintaining any groupings, distinct documents shall not be merged into a single file or database record, and distinct documents shall not be split into multiple files or database records. Producing Parties will make reasonable efforts to unitize documents as they are kept in the regular course of business.

(b) File/Binder Structures (Parent-Child Unitization): Where multiple documents were organized into groups, such as folders, clipped bundles and binders, each distinct document shall be unitized as described in subsection (a) above, but maintained together in a parent-child relationship as specified in paragraph 1(a). The Parties will make their best efforts to unitize parent-child groups correctly.

(c) Identification: Where a document or a document group – such as folder, clipped bundle, or binder – has an identification spine, "Post-It Note" or any other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

7. **Color**. Documents produced in native format which appear in color, will be produced in their native color format. For documents reduced and produced in black and white TIFF, the Parties may request color copies of a reasonable number of documents where color will aid in the interpretation of the document, provided that such request is made in good faith and does not impose an undue burden on the Producing Party.

19

8. **Text Files**.  A single multi-page text file shall be provided for each document, and the filename should match its respective BEGBATES filename.  When possible, the text of native files should be extracted directly from the native file.  Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents.  A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions.

9. **Native files.**

(a) All spreadsheet (e.g., Microsoft Excel), presentation (e.g. Microsoft PowerPoint), video files, visual, design, AI-tool, and chat exports and categories identified in the Production Formats section of this Order shall be produced as native files with TIFF placeholder images.  Spreadsheet files requiring redaction, including Microsoft Excel files, will be redacted within the native file, and the redacted native file will be produced as provided herein.  Presentation files requiring redaction, including Microsoft PowerPoint files, will be produced as TIFF images with redactions, and for presentations with speakers notes, Producing Parties shall take reasonable efforts to show both the slide and speakers' notes for that slide on a single TIFF image.  To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format.

(b) Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in Paragraph 4 above.  A

20

STIPULATED PROPOSED ESI ORDER
Case No. 2:24-cv-09033-GW-RAO

Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file.

**(c)** To the extent other types of documents are produced in this Action, the Parties will meet and confer regarding whether production of those documents in native format is feasible and appropriate.

10. **Confidentiality Designation**.  Documents produced in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter.  Each document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

11. **Databases and Other Structured Data.**

**(a)** The Parties agree to meet and confer regarding the production format for data contained in databases or other structured data types, to ensure that any information produced is reasonably usable by the Receiving Party and that its production does not impose an undue burden on the Producing Party.

**(b)** To the extent a Producing Party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the Parties shall meet and confer to reach an agreement on alternative methods to enable the Receiving Party to view the ESI.

12. **Proprietary Files.**  To the extent a response to discovery requires production of ESI accessible only through proprietary software, the Parties shall meet and confer regarding the appropriate production format.

STIPULATED PROPOSED ESI ORDER
Case No. 2:24-cv-09033-GW-RAO

13. **Manner of Production**.  All productions must be made by secure file transfer to agreed-upon email addresses.  In the event the Producing Party deems it is not practical to upload a voluminous production (e.g., a production exceeding 20GB) to a secure file transfer site, it shall be sent to the Receiving Party by overnight mail on external hard drives, readily accessible computer(s) or other electronic media ("Production Media"). Each production shall be accompanied by a cover letter that identifies: (1) the Producing Party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and (4) the confidentiality designations, if any, to which the produced materials are subject.

14. **Hyperlinked Documents**. The Parties agree that hyperlinked documents are not presumptively attachments.  However, Producing Party agrees to produce non-contemporaneous versions of hyperlinked documents that Receiving Party identifies by link and Bates number in Producing Party's production, subject to review for privilege and work product.  The Receiving Party may submit a list of hyperlinks (with Bates page on which the hyperlink appears) by email to the Producing Party's counsel capped at five (5) hyperlinks in any submission and twenty (20) in total. Producing Party agrees to produce non-privileged document(s) identified in the list, subject to the above limitation, twenty-one (21) days from its litigation counsel's receipt of Receiving Party's emails, or will provide an explanation of its inability to produce the document(s) (*e.g.*, privileged, document no longer exists, is not exportable, etc.).  Receiving Party may submit additional lists of hyperlinks for Producing Party to investigate subject to the five (5) hyperlink cap for each request and twenty (20) hyperlink cap in total, but not while any such request is

STIPULATED PROPOSED ESI ORDER
Case No. 2:24-cv-09033-GW-RAO

pending.  To the extent hyperlinks exceed the capped amounts, the Parties shall meet and confer as to the production of such materials.

23

STIPULATED PROPOSED ESI ORDER
Case No. 2:24-cv-09033-GW-RAO