EDWARD M. ANDERSON (SBN 198183)
 edward@andersonyehlaw.com
REGINA YEH (SBN 266019)
 regina@andersonyehlaw.com
**ANDERSON YEH PC**
1055 E. Colorado Blvd. Ste 500
Pasadena, California 91106
Tel: (626) 204-4092 / Fax: (888) 744-0317

Attorneys for Plaintiff Alcon Entertainment, LLC

ARWEN R. JOHNSON (SBN 247583)
 arwen.johnson@kslaw.com
LENNETTE W. LEE (SBN 263023)
 llee@kslaw.com
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, California 90071
Tel: (213) 443-4355 / Fax: (213) 443-4310

Attorneys for Defendants Tesla, Inc. and Elon Musk

*Additional counsel listed on following page*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALCON ENTERTAINMENT, LLC, a Delaware Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> TESLA, INC., a Texas Corporation; ELON MUSK, an individual; WARNER BROS. DISCOVERY, INC., a Delaware Corporation, <br><br> Defendants. | Case No. 2:24-cv-09033-GW-RAO <br> *Hon. George H. Wu, Courtroom 9D* <br><br> **JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL THE DEPOSITIONS OF ELON MUSK AND FRANZ VON HOLZHAUSEN AND ELON MUSK'S PRODUCTION OF DOCUMENTS AT DEPOSITION [L.R. 37-2.1]** <br><br> ***PUBLIC REDACTED VERSION*** <br> ***UNREDACTED CONFIDENTIAL*** <br> VERSION FILED UNDER SEAL PURSUANT TO ORDER OF THE COURT DATED 6/23/2026 ECF 148 <br><br> Magistrate Judge: Rozella A. Oliver |

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

Hearing Date:  July 15, 2026
Hearing Time:  10:00 a.m.
Courtroom:     590, 5th Floor

Discovery Cut-Off:  July 24, 2026
Pre-Trial Conf.:  November 19, 2026
Trial Date:  December 1, 2026

JAMES W. IREY (SBN 150640)
*jirey@yukelaw.com*
HASSAN ELRAKABAWY (SBN 248146)
 *helrakabawy@yukelaw.com*
CELESTE S. DEL RIO (SBN 275969)
 *cdel_rio@yukelaw.com*
**YUKEVICH CAVANAUGH**
355 South Grand Avenue, 15th Floor
Los Angeles, California 90071
Tel: (213) 362-7777/ Fax: (213) 362-7788

Additional Attorneys for Plaintiff Alcon Entertainment, LLC

A. LOUIS DORNY (SBN 212054)
 *ldorny@tesla.com*
TERRY W. AHEARN (SBN 216543)
 *tahearn@tesla.com*
HELEN TRAC (SBN 285824)
 *htrac@tesla.com*
DAVID LEE (SBN 264467)
 *dlee8@tesla.com*
**TESLA, INC.**
1501 Page Mill Building 6U
Palo Alto, California 94304
Tel: (510) 298-8516

Additional Attorneys for Defendants
Tesla, Inc. and Elon Musk

ii
JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

**TABLE OF CONTENTS**

I.   INTRODUCTORY STATEMENT.................................................................1

    A.   Plaintiff's Introductory Statement...............................................1

    B.   Defendants' Introductory Statement ...........................................3

II.  THE SPECIFIC DEPOSITION RELIEF IN DISPUTE ........................6

    A.   Whether Musk and Mr. von Holzhausen Should Be Ordered to Sit for Deposition and on Dates Certain. ..........6

       Plaintiff's Position ........................................................................6

       Defendants' Position ...................................................................14

          1.   Plaintiff's Premature and Improper Motion Seeks to Harass Defendants and Should be Denied................................14

          2.   A Deposition of Musk is Unwarranted......................................19

            a.  Musk is Undisputedly an Apex Witness, Entitled to Heightened Protection.......................................19

            b.  Prong One of the Apex Doctrine Warrants Preclusion Because Musk Has No Unique Firsthand Knowledge Relevant to the Case.......................20

            c.  Plaintiff's Claimed Bases for Musk's Unique Firsthand Knowledge are Meritless .................................24

            d.  Prong Two of the Apex Doctrine Also Warrants Preclusion of Musk's Deposition......................................28

          3.   Mr. von Holzhausen's Deposition Should Be Limited to Written Interrogatories.............................................30

            a.  Mr. von Holzhausen Is an Apex Witness...............................30

            b.  Mr. von Holzhausen Has No Unique Firsthand Knowledge Relevant to the Case ....................................31

            c.  Discovery into Mr. von Holzhausen's Knowledge Can and Should be Conducted by Written Interrogatories as an Appropriate Less Intrusive Means ........................................................31

    B.   Whether Musk Should Be Ordered to Produce Documents at Deposition in Response to the Document Requests in the Notice. ..........................................32

iii

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

Plaintiff's Position.................................................................................32

Defendants' Position .............................................................................35

1. The Time to Provide Responses and Objections to the Schedule B Requests Is Contingent on the Deposition.................................................................35

2. Musk Preserved and Did Not Waive Any Objections................36

C. Whether Alcon's Incomplete Meet and Confer Process and Motion Warrant Monetary Sanctions.......................................39

III. CONCLUSION AND RELIEF REQUESTED..............................................42

A. Plaintiff's Conclusion and Requested Relief .......................................42

B. Defendants' Conclusion and Requested Relief.....................................43

iv

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

# TABLE OF AUTHORITIES

**CASES**

*Affinity Labs of Texas v. Apple, Inc.*, No. C 09-4436 CW (JL), 2011 WL 1753982 (N.D. Cal. May 9, 2011) ................................................................21, 28

*Artist Revenue Advocates, LLC v. West*, No.: 2:24-cv-06018-MWC-BFM, 2025 WL 4666265 (C.D. Cal. Dec. 4, 2025) ................................................................38

*BackGrid USA, Inc. v. Bright Mountain Media, Inc.*, No. CV 24-2545-GW (KSx), 2025 WL 4091104 (C.D. Cal. Jan. 9, 2025) ................................................................38

*Brown v. Stroud*, No. C–08–02348–VRW (DMR), 2010 WL 3339524 (N.D. Cal. 2010) ................................................................38

*Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C05-04374 MMC (JL), 2007 WL 205067 (N.D. Cal. Jan. 25, 2007) ................................................................28, 32

*Crawford-El v. Britton*, 523 U.S. 574 (1998) ................................................................19

*Davis v. Fendler*, 650 F.2d 1154 (9th Cir. 1981) ................................................................35, 36, 43

*Dr. Seuss Enter., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997).25

*Entertainment Studios Networks, Inc. v. McDonald's USA, LLC*, 2025 WL 1090394 (C.D. Cal. Apr. 9, 2025) ................................................................9, 29

*Fifty-Six Hope Rd. Music, Ltd. v. Mayah Collections, Inc.*, No. 2:04-cv-1501, 2007 WL 1726478 (D. Nev. June 11, 2007) ................................................................38

*Gianni Versace S.r.l. v. Fashion Nova, Inc.*, No. CV 19-10074 PA (RAOx), 2021 WL 3260608 (C.D. Cal. Aug. 13, 2020) ................................................................21

*Int'l Game Tech. v. Illinois Nat'l Ins. Co.*, No. 2:16-cv-02792-APG-NJK, 2018 WL 7499823 (D. Nev. Apr. 6, 2018) ................................................................29, 32

*K.C.R. v. Cty. of Los Angeles*, No. CV 13–3806 PSG (SSx), 2014 WL 3434257 (C.D. Cal. Jul. 11, 2014) ................................................................19

*Klungvedt v. Unum Grp.*, No. 2:12-cv-00651-JWS, 2013 WL 551473 (D. Ariz. Feb. 13, 2013) ................................................................32

*Live Eyewear, Inc. v. Biohacked, Inc.*, No. CV 19-461-FMO (PLAx), 2019 WL 8955366 (C.D. Cal. Sept. 19, 2019) ................................................................41

*M.H. v. Cty. of Alameda*, No. 11–cv–02868–JST, 2013 WL 5497176 (N.D. Cal. Oct. 3, 2013) ................................................................19

*McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149 (9th Cir. 2022) ................................................................27

*Mehmet v. PayPal, Inc.*, No. 5:08 CV 1961, 2009 WL 921637 (N.D. Cal. Apr. 3, 2009) ................................................................28

v

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

*Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co., Inc.*, 900 F.Supp. 1287 (C.D. Cal. 1995)..................................................................................11, 27, 28

*Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, No. CV 05-2200 MMM (MCx), 2008 WL 11334030 (C.D. Cal. Mar. 17, 2008)........................................26

*Myles v. Cty. of San Diego*, No. 15cv1985-BEN (BLM), 2016 WL 4366543 (S. D. Cal. Aug. 15, 2016)..................................................................................19

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429 (9th Cir. 1992). ..................................................................................................42

*Padilla v. MGM Grand Hotel, LLC*, No. 2:22-cv-02109-RFB-EJY, 2025 WL 2772072 (D. Nev. Sept. 25, 2025) ............................................................32

*Paramount Pictures Corp. v. Axanar Productions, Inc.*, 2:15-cv-009938-RGK-E, 2017 WL 83506 (C.D. Cal. 2017) ........................................................10

*Pierce v. Underwood*, 487 U.S. 552 (1988) ....................................................40

*Ramirez v. Zimmerman*, No. 18-cv1062-BAS-NLS, 2019 WL 2106594 (S.D. Cal. May 14, 2019)..........................................................................19, 24, 30

*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992).....35, 36, 43

*Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir. 1990).............................................10

*Skidmore as Trustee for the Randy Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020)..........................................................................10

*Smith v. Frank*, 923 F.2d 139 (9th Cir. 1991) ..................................................41

*Sure Safe Indus. Inc. v. C & R Pier Mfg.*, 152 F.R.D. 625 (S.D. Cal. 1993) ............42

*Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004) ...............................................25

*Thompson v. CoreLogic Rental Property Solutions*, No. 21-CV-1716-GPC (WVG), 2022 WL 16753141 (S.D. Cal. October 13, 2022)................................................37

*Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir. 1985).....20

**RULES**

Fed. R. Civ. P. 6(a)(1)(C) .........................................................................34

Fed. R. Civ. P. 26(c) ........................................................................*passim*

Fed. R. Civ. P. 30...................................................................................1

Fed. R. Civ. P. 30(a)(1).............................................................................6

Fed. R. Civ. P. 30(b)(1) ...........................................................................18

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

Fed. R. Civ. P. 30(b)(2) ...............................................................................34, 36

Fed. R. Civ. P. 30(b)(6) ...............................................................15, 17, 29, 32

Fed. R. Civ. P. 33(b) ...............................................................................................30

Fed. R. Civ. P. 34 ...............................................................................................34, 36

Fed. R. Civ. P. 34(a)(1) ...............................................................................30

Fed. R. Civ. P. 37 ...............................................................................................1

Fed. R. Civ. P. 37(a)(5)(A) ...............................................................................43

Fed. R. Civ. P. 37(a)(5)(B) ...............................................................................44

Fed. R. Civ. P. 37(d)(1)(A)(i) ...............................................................................6

Fed. R. Civ. P. 37(d)(2) ...............................................................................6

Fed. R. Civ. P. 37(d)(3) ...............................................................................43

Fed. R. Civ. P. 45 ...............................................................................................1

Fed. R. Civ. P. 45(d) ...............................................................................................7

Fed. R. Civ. P. 45(g) ...............................................................................................7

L.R. 37-1 ...............................................................................................*passim*

L.R. 37-2 ...............................................................................................1, 14, 18

L.R. 37-2.1 ...............................................................................................1

L.R. 45-1 ...............................................................................................1

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

## JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

Pursuant to Federal Rules of Civil Procedure 30, 37, and 45, and Central District of California Local Rules 37-2 and 45-1, Plaintiff Alcon Entertainment, LLC ("Plaintiff" or "Alcon") and Defendants Tesla, Inc. ("Tesla") and Elon Musk ("Musk") submit this Joint Stipulation in connection with Alcon's motion to compel: (i) the deposition of Musk on a date certain and production of documents at deposition; and (ii) the deposition of Tesla-affiliated witness Franz von Holzhausen ("Mr. von Holzhausen") on a date certain.  Plaintiff contends, and Tesla/Musk dispute, as set forth herein, that the parties met and conferred under L.R. 37-1 in good faith, including through a formal L.R. 37-1 conference of counsel on May 22, 2026, conducted by videoconference by agreement of counsel, and were unable to resolve the issues raised herein.  The Court's Scheduling Order (ECF No. 107) is attached in compliance with Local Rule 37-2.1 (Exhibit 6 hereto).

## I.   INTRODUCTORY STATEMENT

### A.   Plaintiff's Introductory Statement

This is an action for copyright infringement of a well-known motion picture that is a favorite target of unauthorized, opportunistic marketing uses by Defendants Tesla and Musk.  Alcon produced the motion picture "Blade Runner 2049" ("BR2049") as a sequel to the original 1982 "Blade Runner" motion picture ("1982 Picture").  Alcon is the ultimate sole copyright holder of all relevant rights in BR2049. Defendants Tesla and Musk have a history of making opportunistic uses of BR2049 to market and promote Tesla products and services going back to at least Tesla's 2019 cybertruck product reveal event.  Apparently in part attempting to repeat that prior successful establishment of an unauthorized marketing affiliation between Tesla and BR2049, Tesla and Musk conducted an October 10, 2024 product reveal event entitled "We, Robot" (the "Event") for Tesla's new cybercab (or robotaxi) and Optimus humanoid robot products from the Burbank, California motion picture and television

1

studio lot of defendant Warner Bros. Discovery, Inc. ("WBDI").  In the course of the Event, Musk and Tesla exploited protected elements of BR2049 without Alcon's authorization.

This motion seeks enforcement of two timely served deposition notices: (i) one to Musk (with an accompanying request for production of documents at deposition) and (ii) one to Mr. von Holzhausen (with the notice to him backed by a subpoena). Defendants did not produce either witness on the noticed dates, did not propose alternative dates before those dates passed (or at all prior to Plaintiff's service of its portion of this Joint Stipulation on Musk and Tesla's counsel), and did not seek protective relief, despite multiple offers from Plaintiff to facilitate either or both witnesses seeking such relief if they desired.  Musk did not even bother to serve written objections to the document requests attendant to his deposition notice, even despite offers from Alcon to give him a do-over and serve such objections after he let the deadline to do so pass and did nothing.

By Plaintiff's understanding, Tesla's and Musk's justifications for disregarding the deposition notices are: (1) Tesla and Musk contend that their alleged infringement of BR2049, even if it was infringement, was not sufficiently impactful to Alcon's financial interests in BR2049 to warrant a scope of discovery which would entail either Musk or Mr. von Holzhausen appearing for deposition; (2) neither Musk nor Mr. von Holzhausen had any meaningful involvement at all in the alleged infringement; and (3) even if they did, Musk and Mr. von Holzhausen are both "apex" persons relative to Tesla, and neither man has any relevant, unique percipient information to warrant their personal appearance for deposition.

Plaintiff respectfully submits that all of these arguments are meritless.  Tesla and Musk for several years have been engaged in repeated and frequent unauthorized usages of elements of BR2049 to market Tesla products and services, somewhat akin to attempting to make BR2049 the "theme movie" for Tesla products and service by

2

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

a kind of adverse possession.  Musk and Tesla's alleged infringements of BR2049 were of a type for which Alcon has an established history of licensing for substantial sums of money, and Musk and Tesla's use also created, or, if uses of such nature are allowed to continue, will create, long-term damage to the value of the BR2049 copyright by problematic association with the polarizing and brand-toxic Musk. Tesla's and Musk's protestations that neither Musk nor von Holzhausen had any meaningful involvement in what occurred have been proven false in the discovery that has occurred to date.  Indeed, there are strong indications that both gentlemen have highly relevant unique percipient information which warrant them sitting for deposition, even if they had preserved any "apex" arguments by moving for a protective order, which they did not.

It is not too much to ask that both gentlemen not be allowed to hold themselves immune from the rules of civil litigation and both sit for deposition in the action, with Musk making a production of requested documents attendant to his.

### B.    Defendants' Introductory Statement

Plaintiff's grievances against Tesla, Inc. and its CEO Elon Musk (collectively here, "Defendants") have been cabined to a single copyright infringement claim. This case thus boils down to whether an 11-second showing of a dystopian image, created in Adobe Photoshop by a Tesla employee (Image C) and used in a keynote presentation at Tesla's October 10, 2024 "We, Robot" event ("Event"), constitutes copyright infringement of a still image (Image A) from the film Blade Runner 2049 ("BR2049"). Plaintiff's tangential assertions that Musk has previously uttered the phrase "Blade Runner" (a movie and phrase to which Plaintiff has no exclusive rights) and that Tesla and Musk have a "history of making opportunistic uses of BR2049" (*see* I.A Plaintiff's Introductory Statement) are wholly irrelevant to the inquiry into whether Image A and Image C are substantially similar in protected expression. There is no justification for seeking to depose two apex witnesses—Musk and his direct

3

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

report, Senior Design Executive Franz von Holzhausen—other than to harass them about issues that have no bearing on the outcome here. Neither the Court's substantial similarity analysis nor Tesla's defenses implicate their testimony. *See* II.A Defendants' Position § 2(c).

Although Plaintiff continues peddling its speculative "literal copying" theories in its motion, discovery has now shown that Tesla did ***not*** create Image C by "copying Image A or even the full BR2049 work" into an "AI image generator," nor did Tesla "train AI" with Image A. TAC ¶ 40.[1] The evidence instead confirms that, after Tesla learned it could not license Image A:

- Tesla employee ██████, a member of the ████████████, removed Image A from the draft keynote presentation.
- Tesla employee ██████, a member of the ████████████, created Image C in Adobe through generic prompts and using stock images, all of which are licensed or part of the public domain.
- After von Holzhausen approved Image C, ██████, a member of the ██ ████████, used Photoshop to touch up the colors and edit the right hand of the Musk-like figure.
- ██████ added the words "Not This" to the upper left corner of Image C, dropped it into the presentation, and it was displayed for 11-seconds.

Declaration of Arwen R. Johnson ("Johnson Decl."), Exh. B (Dep. of ██████ at 122:7–17; 140:15–18; 142:22–143:2; 145:18–146:2; 147:23–148:4; 151:11–14; 151:24–152:3; 152:20–23); Exh. C (Dep. of ██████ at 105:21–23; 108:8–9; 109:2–19); Exhs. G, P, Q.

Most importantly for this motion, ***the document and witnesses all confirm that Musk had nothing to do with the relevant events.*** Despite possessing all this

---

[1] Plaintiff has long been on notice of the facts of Image C's creation. Tesla and Musk reserve their rights under 17 U.S.C. § 505 to seek attorneys' fees for Plaintiff's bad faith pursuit of its literal copying theory.

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

evidence, Plaintiff still bases its motion on the now-refuted AI image-generation theory ginned up for publicity and to avoid dismissal.[2]

That Plaintiff's AI-generation theory has no factual basis is precisely why (among other reasons) Defendants have insisted that Plaintiff first seek discovery through less intrusive means before pursuing Musk's deposition, just as the apex doctrine instructs. Rather than engage in good faith with Defendants, Plaintiff continued to insist categorically on the deposition. Plaintiff's motion fails, for multiple reasons.

*First*, Plaintiff violated this Court's procedural requirements for a good faith meet and confer process. Plaintiff's tactics—*e.g.*, unilaterally set deposition notices at the onset of discovery, insisting on apex depositions without first conducting or even considering less intrusive discovery, and resort to discovery motion practice— lay bare its true aim: abusing the discovery process to harass Tesla and Musk.

*Second*, Plaintiff's motion fails on the merits as to Musk, who does not have *any* firsthand knowledge, much less unique knowledge, to offer as the apex doctrine requires. Rather than accept these undisputed facts, Plaintiff seeks to depose Musk based on social media posts from the last nine years, remarks about a slide ***he did not create or select***, and a baseless theory that his testimony is necessary to prove Plaintiff's damages. These arguments fail under the apex doctrine and basic principles of proportional discovery. *See* II.A Defendants' Position §§ 2(b)-(c).

Plaintiff likewise cannot demonstrate, as it must, that it has exhausted less intrusive discovery methods short of deposing Musk. Indeed, Plaintiff has never sought to take a 30(b)(6) deposition. And even after Tesla explained it would provide reasonable alternatives in lieu of apex depositions once fact depositions were completed, Plaintiff stated it was unlikely to agree to anything other than an in-person

---

[2] ECF No. 98 at 4 (relying in part on Plaintiff's "information and belief" allegations about AI image generation to deny 12(b)(6) motion).

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

deposition of Musk and proceeded with this motion. Johnson Decl., ¶ 11. That is not what the apex doctrine requires, nor is it good faith.

*Third*, Plaintiff cannot meet its burden to demonstrate that von Holzhausen, who is also a classic apex witness, has any *unique* firsthand knowledge that would justify his deposition. And information that von Holzhausen possesses can certainly be obtained through less intrusive means, such as interrogatories. *See* II.A Defendants' Position § 3.

*Finally*, Plaintiff's effort to compel production of documents from Musk via Schedule B of his objected-to deposition notice should be denied in its entirety. Defendants' repeated objections and good faith efforts to confer about the need for the deposition tied to Schedule B speak for themselves, and Plaintiff's about-face assertion of waiver smacks of gamesmanship. *See* II.B Defendants' Position §§ 1-2.

Accordingly, Defendants respectfully request that the Court deny Plaintiff's motion, enter a protective order, and award Defendants their reasonable expenses incurred to defend against Plaintiff's procedurally defective and baseless motion. *See* II.C Defendants' Position.

## II.   THE SPECIFIC DEPOSITION RELIEF IN DISPUTE

### A.   Whether Musk and Mr. von Holzhausen Should Be Ordered to Sit for Deposition and on Dates Certain.

**Plaintiff's Position.**

Federal Rule of Civil Procedure 30(a)(1) permits Alcon to depose "any person, including a party," without leave of court unless a specific limitation applies.  Rule 37(d)(1)(A)(i) authorizes relief when a party or a party's officer, director, or managing agent "fails, after being served with proper notice, to appear for that person's deposition," and Rule 37(d)(2) provides that such failure is not excused by objections unless a Rule 26(c) motion for protective order is pending.  For subpoenaed witnesses,

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

Rule 45(d) and 45(g) independently permit enforcement where a subpoenaed witness does not appear and does not timely seek relief.

Alcon served the notices of deposition of Musk, and the subpoena and notice of deposition of Mr. von Holzhausen on April 2, 2026, with deposition dates set in the notices for late April and early May 2026, and with formal agreed service by email and witness fee tender on Mr. von Holzhausen effected by Plaintiff on April 6, 2026. (Exh. 1 [Declaration of Edward M. Anderson] ("Anderson Decl."), ¶ 9; Exh. 7 [April 2, 2026 Email serving deposition notices and attached deposition notices for Musk and Mr. von Holzhausen]; Exh. 1 [Anderson Decl.], ¶ 10, Exh. 8 [April 2, 2026 Email chain showing agreement to email service of subpoena]; Exh. 1 [Anderson Decl.], ¶ 11, Exh. 9 [April 6, 2026 email service of subpoena and tender of witness fees].)

Those dates passed without appearances by either witness, without any offer by either witness of any alternative dates, or any motion for protective order by either witness, or any motion to quash, and all despite substantial efforts by Plaintiff to meet and confer to come some mutually agreeable arrangement. (*See* Exh. 1 [Anderson Decl.], ¶¶ 9, 10, 13, 15-21 and Exhs. 7-8 and 10-15 [meet and confer correspondence].) The Federal Rules allow for parties to negotiate a reasonable sequence for depositions, but they do not allow a party to unilaterally defer properly noticed depositions, and especially where the District Judge assigned to the case has specifically set a tightly condensed discovery schedule, given the age of the case. (Exh. 6 [February 12, 2026 Scheduling Order, ECF No. 107].)

Tesla's and Musk's chosen course has a legal consequence. By refusing to provide dates while declining to file a Rule 26(c) motion, a motion to quash, or any other timely request for protective relief before the noticed dates passed, Musk and Tesla deprived Alcon and the Court of the orderly procedure the Rules provide for resolving objections. Neither Musk nor Mr. von Holzhausen has any valid excuse for

7

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

disregarding the documents validly served by Plaintiff directing their respective personal appearances for depositions upon oral examination.

Alcon's operative pleading -- its Third Amended Complaint ("TAC") (ECF No. 81) -- expressly discusses both gentlemen, and their respective individual acts and involvement in connection with the alleged infringement. (*See* Exh. 1 [Anderson Decl.], ¶ 2 and Exh. 2 [TAC excerpts referencing Musk and von Holzhausen].) As alleged in the TAC, as of the 2024 time-frame of the Event and the preparations leading up to it, Musk and Tesla had a well-known history of targeting the 1982 Picture and BR2049 for opportunistic marketing and promotional affiliations with Tesla products and services, including most notably Tesla's 2019 product reveal of the cybertruck. (*See* Exh. 2 [TAC excerpts] esp. at Exh. 2, pages 2-3; Exh. 1 [Anderson Decl.], ¶ 3 and Exh. 3 [examples of Musk promotional activity and sample resulting press story showing Musk's effective opportunistic leveraging of manufactured association with 1982 Picture and BR2049 for cybertruck product reveal].)

As also alleged in the TAC, after Tesla initially attempted unsuccessfully to obtain a license to use arguably the single most recognized still image from BR2049 ("Image A") for Musk to use in his opening keynote speech to set the theme of the Event, one or more Tesla employees used AI image generation software which was referencing one or more literal copies of BR2049, or quantitatively significant elements thereof, to create a substantially similar illustration ("Image C") from the same core sequence of BR2049 and its main character, K. (*See* Exh. 2 [TAC excerpts] esp. at Exh. 2, pages 5-9.) With the assistance of an introduction by Mr. von Holzhausen, Musk then used Image C in his keynote as actually delivered, in place of Image A, but with Musk making narrative remarks in connection with the visual display of Image C which effectively identified it as purporting to be an illustration

8

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

of BR2049's core dramatic sequence, if there were any doubt from the visual appearance of Image C alone. (*See id.*, esp. at Exh. 2, pages 8-9.)

Musk Sitting for Deposition is Warranted.

Musk is a named, individual defendant, and properly so: he is both the actual mastermind and executioner of Tesla's pattern of opportunistic marketing exploitation of BR2049 generally (*see, e.g.,* Exh. 3), and he was himself the keynote speaker who displayed Image C on stage and made the accompanying remarks at the Event, and on a livestream which was recorded and is now perhaps irrevocably embedded into the online cultural media fabric of the world. (*See* Exh. 2 [TAC excerpts] esp. at Exh. 2, pages 8-9.)

Any "apex" objection on Musk's behalf fails. Even where a prospective deponent actually moves for a protective order such that courts might apply the "apex" doctrine, courts ask whether the proposed deponent has unique firsthand, non-redundant knowledge and whether the requesting party has exhausted less intrusive discovery. *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). Applying that test, courts in this district compel the deposition even of non-party chief executive officers of non-party major corporations as to matters within such a deponent's unique, firsthand knowledge. *See Entertainment Studios Networks, Inc. v. McDonald's USA, LLC*, 2025 WL 1090394, at *11, *15 (C.D. Cal. Apr. 9, 2025) (ordering McDonald's Chief Executive Officer to sit for deposition regarding his own statements, and reaffirming that an executive's bare claim of lack of knowledge is usually insufficient to avoid an apex deposition).

Even if he were a non-party, and even if he had actually moved for a protective order, Musk would not be able to use "apex" doctrine here to avoid giving any deposition testimony whatsoever, as he demonstrably does have the requisite unique, firsthand percipient knowledge of relevant facts. As the individual who actually made the voiceover remarks effectively characterizing Image C as an illustration of

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

BR2049's core dramatic sequences, Musk is the only one who can speak to his own intentions.  Among other contentions, Alcon contends that Tesla's and Musk's intentionality in copying and evoking BR2049 matters not only to issues of willfulness for purposes of damages calculations, but that such intentionality is also relevant to substantial similarity analysis, including under such cases as *Wozniak v. Warner Bros. Entertainment Inc.*, 726 F.Supp.3d 213, 231-232, 237-38 (S.D.N.Y. 2024), *Paramount Pictures Corp. v. Axanar Productions, Inc.*, 2:15-cv-009938-RGK-E, 2017 WL 83506 at *1 (C.D. Cal. 2017) (Star Trek universe reference leveraging and court's conclusion that extrinsic test satisfied "finds strong support in Defendants' intent for [accused] works to [create a Star Trek work]"), and *Shaw v. Lindheim*, 919 F.2d 1353, 1360-63 (9th Cir. 1990) abrogated on other grounds by *Skidmore as Trustee for the Randy Wolfe Trust v. Led Zeppelin ("Skidmore")*, 952 F.3d 1051, 1064 (9th Cir. 2020).

Musk and Tesla have also advanced a fair use defense specifically premised on Musk making his remarks with the intention to make a social commentary on BR2049 (with reliance on citations to parody cases), and the Court has ruled that it requires discovery to evaluate.  (*See* Exh. 1 [Anderson Decl.], ¶ 5 and Exh. 5 [Musk and Tesla's Rule 12(b)(6) fair use arguments (ECF No. 88-1), Plaintiff's responsive arguments (ECF No. 90), and Court's February 4 and 5, 2026 Tentative Ruling and Final Order (ECF Nos. 98 and 99) finding the fair use arguments required discovery].)  Where the fair use argument is premised on what Musk intended by what he said, only Musk can speak to that – only Musk actually knows his own intentions.

Discovery to date has also revealed both that Musk personally engaged in multiple sessions of direct review and directive editing of the keynote presentation, and also that the final keynote presentation script did not call for Musk to make the effective voiceover reference to BR2049 which Musk in fact made – Musk appears to have ad-libbed it on his own, varying from the written final script.  (*See* Exh. 1

10

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

[Anderson Decl.], ¶¶ 28-30, Exhs. 18 and 19 [documents produced by Tesla in discovery and discussed at June 3, 2026 deposition of Tesla employee who managed the keynote drafting and finalization process].)  Only Musk knows why he did that.

Nor can Defendants point to "less intrusive" written discovery as an adequate substitute: Mr. Musk has produced no documents in response to either Alcon's Requests for Production or the Schedule B requests served with his deposition notice, and his interrogatory responses remain unverified.  (Exh. 1 [Anderson Decl.], ¶¶ 8 and 14.)

Tesla's and Musk's arguments to the effect that their acts of infringement were not economically meaningful to Alcon, or otherwise that the financial stakes of the claims and defenses in the action do not have potential high dollar value actual damages are all unpersuasive.  Alcon provided information with documentary backup in its Initial Disclosures and also in verified interrogatory responses supporting that Alcon can show an established record that automobile brand affiliation uses of protected elements of BR2049 and its lead character K have actually commanded contract prices of $500,000 in cash payments, plus a committed media spend of $30 million to co-promote BR2049 and the automobile brand, for uses of fewer on-screen seconds of association than the 11 consecutive seconds of association in Musk and Tesla's product reveal here.  (*See* Exh. 1 [Anderson Decl.], ¶ 4 and Exh. 4 [Alcon Interrogatory Response excerpts].)

Moreover, Alcon respectfully submits that its argument that damage to the value of BR2049's copyright from unwanted perceived association with Musk is highly credible, where Musk is, without being hyperbolic, at least in the conversation as to what single human being is the most polarizing and brand-toxic individual on the planet.  (*See* Exh. 4 [Alcon Interrogatory Response excerpts] esp. at Exh. 4, pages 5 and 6.)  *See, e.g., Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co., Inc.*, 900 F.Supp. 1287, 1300-1301 (C.D. Cal. 1995) (granting an injunction against Honda

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

and its ad agency for evoking MGM's James Bond motion pictures in television advertisements for the then-new Honda Del Sol and finding association of James Bond motion picture property with Honda automotive brand was cognizable market harm to value of James Bond motion picture and character copyrights, because Honda automotive brand lacked sufficient cachet relative to the high-end automotive brands associated with the James Bond copyright).

For Musk, Plaintiff has made multiple offers to Tesla and Musk for cooperative resolution of the issue of Musk's deposition, including offering to agree to take Musk's deposition last of all witnesses, offering to go to any reasonable location to take his deposition, offering to agree to time limits less than the default seven-hour cap on examination, and offering to move Musk's noticed deposition date to a date that would allow Musk to move for a protective order on a schedule that worked for him, within reason. Musk and Tesla have declined or failed to take Plaintiff up on any of these offers, or actually to offer any other resolution than that Plaintiff simply agree not to take Musk's deposition at all. (*See* Exh. 1 [Anderson Decl.], ¶¶ 9, 10, 13, 15-21 and Exhs. 7-8 and 10-15 [meet and confer correspondence].)

<u>Mr. von Holzhausen Sitting for Deposition is Warranted</u>.

Mr. von Holzhausen is Tesla's head design executive and a witness (and himself a decision-maker) with first-hand knowledge of the design and planning of the Event, of the 2019 Cybertruck reveal that preceded it, and of Tesla's use or intended use of Blade Runner and BR2049 references in Tesla product reveals and marketing.

Mr. von Holzhausen is not a remote executive whose relevance depends only on title. Indeed, the results of discovery to date, including Tesla's own production and the testimony of at least two Tesla employee witnesses, show that Mr. von Holzhausen was not merely actively reviewing and giving directions regarding the proposed keynote content for the Event generally, although he was certainly doing

12
JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

that, including in direct personal contact with Musk while doing so. (*See* Exh. 1 [Anderson Decl.], ¶¶ 28-30 and Exh. 18 [documents produced by Tesla in discovery and discussed at June 3, 2026 deposition of Tesla employee who managed the keynote drafting and finalization process].) Discovery has also revealed that Mr. von Holzhausen was in fact the Tesla executive who selected Image C as the image to replace Image A in the keynote, among a selection of around ten possible replacement images generated by Tesla employees on an emergency rush basis on the day of the Event, with many of the possible images in the selection confirmed by Tesla documents and employee witness testimony as apparently having been generated by one or more Tesla employees placing literal copies of at least parts of BR2049 into an AI image service or AI image generation software. (Exh. 1 [Anderson Decl.], ¶¶ 23-25 and Exhs. 16 [Excerpts from transcript of May 15, 2026 deposition of Tesla employee who participated in creation of Image C].) Moreover, Tesla's documents also show Mr. von Holzhausen openly commenting on the importance of having a keynote reference specifically to BR2049 to set the theme of the Event, and even considering potentially using Image A to do so even in the face of knowledge that Tesla had been denied permission to make at least the full usage it wanted to make of Image A. (Exh. 17 [Tesla document showing comments by Mr. von Holzhausen in team chat].)

With respect to Mr. von Holzhausen, Plaintiff offered: to consider almost any date for Mr. von Holzhausen's deposition prior to the Memorial Day holiday weekend without any need to extend the current very tight discovery schedule, or, if Mr. von Holzhausen was indeed not available in that timeframe, to propose dates that would work for him, including with Plaintiff being open to asking the Court to extend the discovery schedule to accommodate Mr. von Holzhausen without prejudicing Plaintiff; and Plaintiff also offered to agree to move Mr. von Holzhausen's noticed deposition date to a date which would allow Mr. von Holzhausen to move for a

13

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

protective order on a schedule that worked for him and Musk and Tesla, if that is what they wanted to do.  Musk and Tesla and Mr. von Holzhausen did not take Plaintiff up on any of these offers, and instead their only position appears to be that Plaintiff should just agree not to take Mr. von Holzhausen's deposition at all.  (*See* Exh. 1 [Anderson Decl.], ¶¶ 9, 10, 13, 15-21 and Exhs. 7-8 and 10-15 [meet and confer correspondence].)

**Defendants' Position.**

**1.      Plaintiff's Premature and Improper Motion Seeks to Harass Defendants and Should be Denied**

Plaintiff's motion flouts the Local Rules and this Court's procedures and should be denied on that basis alone. *Before* serving its portions of the Joint Stipulation, Alcon was obligated to "confer in a good-faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible," L.R. 37-1, and confirm whether the parties are, in fact, "unable to settle their differences." L.R. 37-2. Moreover, this Court "STRONGLY recommends that parties pursue informal discovery dispute resolution [IDDR] prior to filing any discovery motion." M.J. Oliver Law and Motion Schedule § 2 (emphasis in original). And "[w]hether a party attempted a good faith resolution of a discovery dispute, including the use of these informal resolution procedures, is one factor that Judge Oliver may consider in any future request for discovery-related sanctions." *Id.*

Notwithstanding Plaintiff's cherry-picked summaries of the parties' communications, the record establishes that Plaintiff has *not* properly met and conferred to compel the apex depositions of Musk and von Holzhausen. For the Court's benefit, Tesla provides the complete procedural history below:

- **Plaintiff issues unilaterally noticed deposition dates.** On April 2, 2026, before any party had responded to written discovery, Plaintiff served five deposition notices of Tesla employees, including for Musk and von

14

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

Holzhausen, for unilaterally chosen dates without consulting counsel. Exh. I. Plaintiff noticed the deposition of Musk for May 5 and von Holzhausen for April 29, both dates being well before production of documents was expected to be complete and *months* before the July 24 fact discovery cutoff.

- **Tesla objects to the unilaterally noticed depositions and proposes a coordinated approach for discovery.** Undersigned counsel substituted into this case on April 10. On April 17, the parties met by video conference to discuss overarching matters of discovery. With respect to Plaintiff's deposition notices, Tesla's counsel advised that they and the witnesses were unavailable on the unilaterally noticed dates and that no witness would appear on those dates. Tesla further proposed that the parties proceed in discovery in a coordinated manner: first produce and review documents, then depose fact witnesses with knowledge relevant to the dispute as well as 30(b)(6) witnesses, and then confer on whether the depositions of Musk and von Holzhausen were needed, as the documents and depositions of fact witnesses would likely be more than sufficient. To that end, Tesla agreed to obtain dates for three of the noticed witnesses (███████████████████████████████████████████████, who handled Tesla's efforts to license Image A) and reserved its rights to seek a protective order as to the depositions of Musk and von Holzhausen at the appropriate time. Exh. I; *see also* Johnson Decl., ¶¶ 4-5.

- **The parties confer on the timing of fact depositions.** Between April 17 and May 1, the parties continued discussing the proper approach for fact depositions. Johnson Decl., ¶¶ 5-9. Tesla provided availability for the depositions of ████████████████. It explained, however, that setting dates for the depositions of Musk and von Holzhausen would be premature and reiterated that Plaintiff should first review documents and then conduct

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

depositions of fact and 30(b)(6) witnesses before revisiting the issue of apex depositions. Tesla again reserved all rights to seek a protective order if Plaintiff ultimately pursued the apex depositions, Exhs. J, O, and reiterated that it would meet and confer at the appropriate time if, after reviewing documents and conducting these depositions, Plaintiff still sought the depositions of Musk and von Holzhausen. Exh. J. As explained, Plaintiff never conducted that review.

- **Plaintiff's L.R. 37-1 letter seeks to confer about the general timing of depositions.** On May 15, Plaintiff issued its demand to confer about the general timing of depositions pursuant to L.R. 37-1, claiming (as it had in prior communications) that all depositions must be completed by May 22 despite the July 24 discovery cutoff, but accepting Tesla's offered dates in early June for Tesla employees ▮▮▮ and ▮▮▮. Exh. 1, ¶¶ 15–21; Exhs. 10–15.

- **Tesla offers to provide alternatives to depositions of Musk and von Holzhausen.** At the parties' May 22 meet and confer conference, Tesla reiterated that setting dates for the depositions of Musk and von Holzhausen was premature, as Plaintiff had yet to complete review of Tesla's document production or depose percipient witnesses with actual knowledge. Tesla nevertheless offered, as a good faith next step, to propose alternatives or ways to narrow the desired apex depositions. Johnson Decl., ¶ 11. Plaintiff agreed to consider Tesla's forthcoming offers but warned it was unlikely to accept anything less than an in-person deposition of Musk. *Id.* Plaintiff, however, provided no justification for that position when pressed, simply stating, "Alcon requires an in-person deposition of Musk." *Id.*

- **Plaintiff takes the depositions of ▮▮, ▮▮▮, and ▮▮ on mutually agreed dates.** Plaintiff deposed ▮▮ on May 19, ▮▮▮ on June 2, and ▮▮▮ on June 3. Johnson Decl., ¶ 12. Each witness confirmed unequivocally

16

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

that Musk was *not* involved in any decisions relating to the licensing of Image A or the creation or selection of Image C. *See* II.A Defendants' Position § 2(b).

- **Plaintiff serves its portion of the Joint Stipulation on June 5, seeking to compel the depositions of Musk and von Holzhausen.** Two days after taking ██████████ deposition, before Plaintiff completed depositions of Tesla's percipient witnesses, and before Tesla could offer its proposed alternatives to taking apex depositions, Plaintiff served Tesla and Musk with its portions of the Joint Stipulation.

Plaintiff's conduct runs afoul of the Local Rules and this Court's requirement to meet and confer in good faith in multiple ways.

*First*, Plaintiff has not satisfied the first step of identifying the specific issue in dispute and providing supporting authority in a L.R. 37-1 letter, as it must. Plaintiff's May 15 L.R. 37-1 does not address whether depositions of Musk and von Holzhausen are appropriate under the apex doctrine at all. Instead, it merely addresses Plaintiff's baseless position that all depositions must be completed by May 22—two months before the July 24 fact discovery deadline.[3]

*Second*, the parties were separately in the midst of meeting and conferring regarding the appropriateness of depositions of Musk and von Holzhausen, and the viability of less intrusive alternatives, when Plaintiff initiated its motion. When Tesla proposed that the parties complete production and review of documents and Rule 30(b)(6) depositions before assessing the necessity of the Musk and von Holzhausen depositions under the apex doctrine, Plaintiff's retort was that the timing would not allow for that sequencing because Plaintiff purportedly needed to complete all depositions nearly two months before the close of fact discovery. That discussion concluded with the parties agreeing that, *as the next step*, Tesla would propose

---

[3] Plaintiff's claim of time pressure rings particularly hollow given Defendants' pending proposal to stipulate to a case schedule extension to avoid rushed and potentially unnecessary discovery disputes, such as this one. Johnson Decl., ¶ 15.

17

alternative approaches or narrowing of any Rule 30(b)(1) apex deposition, while reserving all rights to seek a protective order should the parties remain at an impasse, and Plaintiff would evaluate whether such alternatives were acceptable. Plaintiff's rush to prepare a Joint Stipulation on the issue—before Tesla provided those alternatives and, indeed, before Plaintiff had even reviewed the transcripts of the Tesla depositions it took days earlier or completed review of produced documents that demonstrate Musk's complete lack of involvement in the facts at issue—violates the local rules and wastes the parties' and the Court's time and resources. *See* L.R. 37-1 (requiring movant to make a "good-faith effort to . . . eliminate as many disputes as possible" before filing any discovery motion); L.R. 37-2 (providing that the written stipulation may be filed only "[i]f counsel are unable to settle their differences").

*Third*, Plaintiff's refusal to participate in the Court's informal discovery dispute resolution ("IDDR") process, despite the Court's strong recommendation to do so, is unjustified. Plaintiff's stated concern that the IDDR process will not lead to an order and compliance before the July 24 fact discovery cutoff is nonsense. The District Court has given this Court authority to resolve all discovery disputes. *See* Hon. George H. Wu – Procedures, Law and Motion Schedule; *see also* ECF No. 107. And this Court may issue substantive discovery orders as part of the IDDR. *Id.*, § 2.D. Moreover, by design, the IDDR process is meant to be *faster* and more efficient than the L.R. 37-1 process, which as Plaintiff has noted, can take several weeks to complete and notice for hearing. There is no credible reason for Plaintiff to bypass the IDDR process, and Plaintiff offers none.

Plaintiff's insistence on noticing Musk's deposition as a *first* rather than last step, its failure to confer in good faith on the appropriateness of apex witness depositions, and its unexplained decision to ignore the IDDR process in favor of a publicly-filed less efficient alternative, underscores that it is pursuing this "dispute"

18

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

in bad faith and solely to harass Tesla and Musk. Given its many procedural deficiencies, Plaintiff's motion should be denied.

### 2.   A Deposition of Musk is Unwarranted

#### a.   Musk is Undisputedly an Apex Witness, Entitled to Heightened Protection

The apex doctrine bars the deposition of Musk in this case. "Courts have often observed that discovery seeking the deposition of high-level executives (so-called 'apex' depositions) creates a tremendous potential for abuse or harassment that may require the court's intervention for the witness's protection under Rule 26(c)." *K.C.R. v. Cty. of Los Angeles*, No. CV 13–3806 PSG (SSx), 2014 WL 3434257, at *3 (C.D. Cal. Jul. 11, 2014) (cleaned up). Plaintiff wrongly asserts that the Court cannot analyze or apply the apex doctrine here either because Musk is a named party or because he has not yet moved for a protective order. *See* II.A Plaintiff's Position.

Neither assertion has merit. It is axiomatic that the Court possesses broad discretion to manage discovery in cases before it, and "to tailor discovery narrowly." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). Courts regularly exercise that authority to deny motions to compel on grounds that the depositions are improper under the apex doctrine, *including* where the witness is a named party. *See, e.g., Ramirez v. Zimmerman*, No. 18-cv1062-BAS-NLS, 2019 WL 2106594, at * 7 (S.D. Cal. May 14, 2019) (denying motion to compel the deposition of named defendant/county sheriff because "Plaintiff has not met the burden to show an apex deposition is appropriate"); *Myles v. Cty. of San Diego*, No. 15cv1985-BEN (BLM), 2016 WL 4366543, at *4 (S. D. Cal. Aug. 15, 2016) (denying motion to compel deposition of county sheriff under apex doctrine; "the fact that Plaintiff is seeking leave to amend his complaint to add Sheriff Gore as a named defendant does not justify the deposition"); *M.H. v. Cty. of Alameda*, No. 11–cv–02868–JST, 2013 WL 5497176, at *2 (N.D. Cal. Oct. 3, 2013) (denying motion to compel deposition of

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

defendant's CEO given movant's failure to exhaust alternatives for obtaining information through less intrusive discovery methods).[4]

Under the apex doctrine's two-prong test established in *Apple Inc. v. Samsung Elec. Co., Ltd.*, a court considering whether to permit an apex deposition evaluates "(1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." 282 F.R.D. 259, 263 (N.D. Cal. 2012) These two prongs operate on a sliding scale on which "the closer that a proposed witness is to the apex of some particular peak in the corporate mountain range, and the less directly relevant that person is to the evidence proffered in support of his deposition, the more appropriate the protections of the apex doctrine become." *Id.* In other words, the higher the executive sits, the stronger the showing of unique knowledge the requesting party must make, and the more thoroughly it must first exhaust less burdensome alternatives. Plaintiff does not and cannot demonstrate that either prong of the apex doctrine, or any other basis, justifies the deposition of Musk.

> **b.    Prong One of the Apex Doctrine Warrants Preclusion Because Musk Has No Unique Firsthand Knowledge Relevant to the Case**

The first prong of the *Apple* analysis for an apex deposition clearly weighs in favor of barring Musk's deposition. As CEO of Tesla, Musk is the ultimate apex executive of one of the largest corporations in the world. And he possesses *no* unique knowledge of information that is relevant to Plaintiff's copyright infringement claim. In analogous circumstances, this Court has had no trouble precluding an apex

---

[4] For an officer or director to be personally liable for a defendant's torts requires a strong showing—that the corporate officer authorized, directed, or participated in the tortious conduct—which the evidence adduced conclusively refutes here. *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985). If merely gratuitously naming an apex witness as a party were enough to circumvent the apex doctrine, as Plaintiff has tried to do here, then the apex doctrine would be meaningless.

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

deposition of a top executive. *See Gianni Versace S.r.l. v. Fashion Nova, Inc.*, No. CV 19-10074 PA (RAOx), 2021 WL 3260608, at 2–3 (C.D. Cal. Aug. 13, 2020) (barring apex deposition of Donatella Versace, given movant's inability to identify any relevant information uniquely within her knowledge); *see also Affinity Labs of Texas v. Apple, Inc.*, No. C 09-4436 CW (JL), 2011 WL 1753982 (N.D. Cal. May 9, 2011) (barring the deposition of Steve Jobs, reasoning in part that movant failed to show that the apex witness possessed "unique, personal non-repetitive firsthand knowledge of relevant facts"). The Court should reach the same conclusion here.

The conduct at issue in this case is the attempt to license the BR2049 still image, Image A, for use in the keynote presentation, and the creation, selection, and use of Image C as an alternative dystopian image after permission to use Image A was withheld. Although Plaintiff apparently had not reviewed the relevant transcript or documents before prematurely initiating this motion, the evidence is unequivocal: Musk had no involvement in either.

*Licensing of Image A*

███████████████████████████████████████████████, led Tesla's good faith efforts to license Image A for use in the keynote presentation. Exh. A at 32:7–32:14. ███████ testified that as part of that process, he had no communications with Musk about potentially using a still image from BR2049 or about Tesla's efforts to license such a still image from Warner Bros. or Sony. *Id*. at 186:25–189:3.

Tesla's document production corroborates ██████████ testimony that Musk was not involved in the efforts to license Image A. *See* Exh. D, TSLA-ALCON_000008896 at -898 (██████ raising issues about Image A with von Holzhausen and determining that it was unnecessary to involve Musk); Exh. E, TSLA-ALCON_000009660 at -661 (██████ seeking confirmation from von Holzhausen, not Musk, to proceed with licensing Image A); Exh. F (Tesla's lead for

video team informing von Holzhausen, not Musk, that permission to use Image A was withheld and the team would proceed to create a new image).

*Creation of Image C*

███████, who created Image C, likewise confirmed that Musk had no involvement in the decision-making or design of Image C. Exh. B at 28:20–29:5 (identifying individuals involved in requesting the image as ███████ ███████ *id.* at 109:1–2; 140:15–18 (testifying that ███ reviewed Image C and others with Franz von Holzhausen, who made the decision to use Image C); *see also* Exh. C. (Dep. of ███) at 108:4–9; 109:2–7 (testifying that ███ gave the image to ███ who loaded it into the keynote); Exh. A (Dep. of ███) at 189:5–192:2 (testifying that, to his knowledge, Musk had no involvement in the creation of Image C).

The record shows that ███ created a new, dystopian image for use in the keynote once Tesla was informed its request to license Image A had been denied. Starting with Adobe Stock, an application featuring licensed stock images, ███ searched for a desert image. Exh. B at 70:10–17. He did not search for "Blade Runner 2049" or any related terms. He then selected an image of a desert landscape with a cross in the foreground. *Id.* at 142:22–143:2; Exh. K (TSLA-ALCON_000013076). ███ used Adobe Photoshop to delete the cross. Exh. B at 145:18-20. Next, using Photoshop's generative fill tool, ███ added a dusty cityscape to the background. *Id.* at 147:23-24. The generative fill tool is internal to Photoshop and allows users to edit images using text prompts; it relies on licensed content as well as public domain content and does not scrape the internet. Exh. B at 145:21-23; *see also* Adobe Photoshop Generative Fill FAQ – Is Generative Fill safe for commercial use.[5] After flipping the image, ███ added an Elon Musk figure wearing

_____

[5] https://www.adobe.com/products/photoshop/generative-fill.html

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

a trench coat looking toward the city to the foreground, again using Photoshop's internal generative fill tool. Exh. B at 151:11–14; 152:18–23. Lastly, ▮ attempted to edit the image's color to achieve the desired dystopian effect. Exh. B at 98:18–99:8; Exh. L (TSLA-ALCON_000013084). ▮▮▮▮▮▮▮▮▮▮ ▮, put finishing touches on the image, added further color adjustments, and edited the figure's hand into a fist. Exh. B at 122:16-17; Exh. M (TSLA-ALCON_000013061); Exh. N (TSLA-ALCON_000013064).

In sum, Plaintiff's theory of the case, that Image C is the result of literal copying of Image A or BR2049 by generative AI tools controlled by Tesla or Musk, is wholly negated by the undisputed evidence.[6] Image C was created by editing a licensed stock image, using tools internal to Photoshop. Plaintiff has been aware of this fact since before the operative complaint was filed.

*Use of Image C*

The documents and testimony also confirm Musk's lack of involvement in the use of Image C in the keynote presentation. ▮ testified that he reviewed the potential substitute images only with von Holzhausen. Exh. B at 109:1-2, 109:23-110:4. ▮ further testified that von Holzhausen selected Image C for use in the presentation. *Id.* at 140:15-18; *see also* Exh. G, TSLA-ALCON_000011838 at -839; Exh. H, TSLA-ALCON_000013566 at -567. Upon von Holzhausen's selection of Image C, ▮ provided it to ▮ to insert into the keynote presentation. Exh. B at 36:12-19.

▮▮▮▮, who managed the keynote presentation and was present for the dress rehearsal, also testified unequivocally: "Q. Did you ever receive any direct communications from Elon Musk to you on changes to make to the keynote? A. No."

---

[6] Likewise, Plaintiff's assertion in the Joint Statement that parts of BR2049 were possibly loaded into AI by other Tesla employees to create alternative images used at the event is not true. *See* II.A Plaintiff's Position. *No* AI generated image was used to create Image C, the actual image displayed at the Event.

23

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

Exh. C at 104:6–13. She confirmed she had no communications with Musk about Image C. *Id.* at 112:11–13 ("Q. Did you have any communications with Elon Musk that you remember about Exhibit 1 [Image C]? A. No."); *see also* Exh. A (████ Tr.) at 191:22-192:2 (testifying that, to his knowledge, Musk had no involvement in the decision to use Image C).

In sum, every deposed Tesla employee with actual knowledge has uniformly and under oath confirmed Musk's non-involvement. Tesla's contemporaneous documentation of its creation of Image C confirms the same.

**c.    Plaintiff's Claimed Bases for Musk's Unique Firsthand Knowledge are Meritless**

Plaintiff's various attempts to demonstrate that Musk possesses unique knowledge relevant to this dispute are also unavailing.

***First***, that Plaintiff named Musk as a defendant and discusses him at length in the operative complaint is without significance. *See* II.A Plaintiff's Position. No evidence adduced to date supports a copyright infringement claim against Musk as an individual. To the contrary, that evidence confirms that Musk had nothing to do with the generation or use of the image. Plaintiff may not depose *any* witness in an open-ended exploration in the hope of unearthing some support for its meritless claim against the witness personally—and certainly not an apex witness. *Ramirez*, 2019 WL 2106594, at * 7 (denying motion to compel deposition of named party; "Plaintiff has not met the burden to show an apex deposition is appropriate").

***Second***, Plaintiff resorts to gross mischaracterization of meeting invites to claim they show "that Musk personally engaged in multiple sessions of direct review and directive editing of the keynote presentation." *See* II.A Plaintiff's Position. Not so. The *only* records Plaintiff identifies are in Exhibit 18, which consists of meeting invites from before October 10, circulated to numerous individuals, including Musk. Nothing about these invitations reflect what was discussed at the meetings or even

24

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

that Musk attended them. Indeed, ███ was asked about these meetings and testified that she does not recall Musk attending them. Exh. C at 77:21-78:21. They certainly do not prove that Musk has any unique knowledge about the issues in dispute.

*Third*, Plaintiff's assertion that Musk must be deposed to explore his "intentions" necessarily fails, for multiple reasons. No matter the legal theory, Musk's "intentions" are wholly irrelevant:

- Any of Musk's social media statements from years ago about or references to *Blade Runner*—a different film to which Plaintiff has no exclusive copyright, and which is not alleged to have been infringed here—are entirely irrelevant to *this* dispute about whether an image displayed for 11 seconds on October 10, 2024 infringes *Plaintiff's copyright interests in BR2049*.

- Plaintiff's assertion that Musk's intentions are relevant to the substantial similarity analysis misunderstands the law of substantial similarity and should be rejected out of hand. In this Circuit, the substantial similarity analysis involves (1) an objective extrinsic test, and (2) a subjective intrinsic test. *Dr. Seuss Enter., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1398 (9th Cir. 1997). "The extrinsic test considers whether two works share a [substantial] similarity of ideas and expression as measured by **external, objective criteria**." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004) (emphasis added). The intrinsic test determines whether the "**ordinary, reasonable person** would find the total concept and feel of the [two works] to be substantially similar." *Id.* at 847 (emphasis added). Neither test requires an investigation into the alleged offender's "intentions." And none of the cases on which Plaintiff relies in support suggests otherwise.[7] Even assuming *arguendo*

---

[7] Rather, *Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir. 1990), simply confirms the substantial similarity analysis. And Plaintiff's reliance on references to "intentionally" in *Wozniak v. Warner Bros. Entm't Inc.*, 726 F. Supp. 3d 213, 231-

that intentions are relevant to the substantial similarity analysis, which they are not, Musk's remarks were made *after* Image C had already been created and selected by *other* Tesla employees, *without* his involvement. He did not create Image C, did not oversee its creation, and did not select it. *See* Exhs. A–C. His post-hoc narration cannot establish the "motivation" behind Image C's creation, because he had no role in that creation. *See Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, No. CV 05-2200 MMM (MCx), 2008 WL 11334030, at *27 (C.D. Cal. Mar. 17, 2008) (dismissing copyright infringement claim against LLC's managing member where there was no evidence that she participated in the allegedly infringing conduct).

- Nowhere in Musk's statements at the Event did he "effectively characterize[e] Image C as an illustration of BR2049's core dramatic sequences," as Plaintiff falsely suggests. *See* II.A Plaintiff's Position. Musk's keynote speech is a matter of public record. *See* ECF No. 24-2. Musk made a single reference to a different movie, *Blade Runner,* and complimented the duster jacket worn by the figure in Image C. Plaintiff holds no exclusive rights to the use of the phrase "Blade Runner" or duster jackets, so Musk's statements are irrelevant to Plaintiff's copyright claim. Plaintiff does not even attempt to explain the relevance of what Musk *meant* when he said those unprotected and wholly irrelevant phrases.

- Plaintiff's theory that Musk's intentions are relevant to the fair use defense likewise fails out of the gate. As discussed above, Image A was not used at the Event; nor was it used to create any AI-generated image displayed at the Event.

232, 237-38 (S.D.N.Y. 2024) and *Paramount Pictures Corp. v. Axanar Prod., Inc.*, 2:15-cv-009938-RGK-E, 2017 WL 83506 at *1 (C.D. Cal. Jan. 3, 2017) is misplaced. The courts in both of those cases merely observed that the defendants deliberately (*i.e.*, intentionally) copied protected works. Neither case stands for the principle that a defendant's personal motivations are relevant to the analysis, as Plaintiff incorrectly suggests.

26

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

Thus, no allegedly wrongful "use" of BR2049 is even at issue. But even if it were, the invocation of the fair use defense *by Tesla* does not implicate the testimony of *Musk*: Tesla (not Musk) hosted the Event, its employees (not Musk's) sought the license for Image A, and its employees (not Musk's) created and used Image C. Thus, while the fair use analysis involves consideration of the purpose and character of the use, among numerous other factors, that inquiry necessarily looks at *Tesla's* purpose and character of the use of Image C. *See McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1158 (9th Cir. 2022). Musk, who did not create or select Image C for the presentation, has no unique firsthand knowledge to offer that Tesla employees cannot.

**Fourth**, Plaintiff claims Musk's testimony is necessary to establish damages. That is not how copyright damages work. Copyright damages are measured by the plaintiff's actual damages and infringer's profits, or by statutory damages. *See* 17 U.S.C. § 504.

Musk certainly has no information regarding Plaintiff's actual damages. Plaintiff, unsurprisingly, has identified none.[8] In any event, Plaintiff's operative actual damages theory—that its harms arise from "damage to the value of BR2049's copyright from unwanted perceived association with Musk," *see* II.A Plaintiff's Position—is specious. The single case on which Plaintiff relies for this theory, *Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co., Inc.*, 900 F. Supp. 1287, 1300-1301 (C.D. Cal. 1995) ("*MGM*"), is inapposite. The *MGM* case involves a straightforward summary judgment analysis of whether genuine factual disputes exist

---

[8] Plaintiff has not identified any evidence in support of his actual damages theory *at all*. Plaintiff has refused to produce documents related to its assertions of an automotive brand deal worth "$500,000 in cash payments, plus a committed media spend of $30 million to co-promote BR2049," and other unidentified brand deals it supposedly lost after the Event. Defendants have made one final effort to confer with Plaintiff on its unjustified refusals and intend to proceed with the Court's IDRR process by the time this Joint Stipulation is filed if Plaintiff continues to refuse.

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

regarding a car company's fair use defense that its advertisement parodying the James Bond franchise negates copyright liability. *MGM* does not discuss, much less recognize, Plaintiff's novel theory of copyright damages.

Similarly, Musk does not possess unique knowledge that would alter the irrefutable evidence that Tesla made *no* profit from the use of Image C, Exh. R (Tesla's Responses to Interrogatory Nos. 19–21), and that use of the work allegedly infringed, Image A, was worth no more than $500, i.e., the value of the still license initially offered by WBDI. Exh. S (TSLA-ALCON_000011212).

In the absence of any indication that Musk, the CEO of Tesla, possesses unique personal knowledge on the issues in dispute—and in light of the overwhelming and undisputed evidence demonstrating the opposite—Plaintiff may not proceed with Musk's apex deposition.

### d.      Prong Two of the Apex Doctrine Also Warrants Preclusion of Musk's Deposition

The second prong of the *Apple* test independently bars Musk's deposition. 282 F.R.D. at 263 (requiring that "the party seeking the deposition has exhausted other less intrusive discovery methods"). A party seeking to depose a high-ranking executive must first exhaust other less intrusive discovery methods, such as interrogatories and depositions of lower-level employees with more direct knowledge of the facts at issue. *See Affinity Labs of Texas*, 2011 WL 1753982, at *15. Failure to do so will preclude that party from obtaining an apex deposition. *Id*; *Mehmet v. PayPal, Inc.*, No. 5:08 CV 1961, 2009 WL 921637, at *2 (N.D. Cal. Apr. 3, 2009) ("courts generally refuse to allow the immediate deposition of high-level executives, the so-called 'apex deponents,' *before* the depositions of lower level employees with more intimate knowledge of the case") (emphasis in original); *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C05-04374 MMC (JL), 2007 WL 205067, at *4 (N.D. Cal. Jan. 25, 2007) (observing that the apex witness's unique knowledge must be

"unavailable from less intrusive discovery"). This is why Tesla explained to Plaintiff that it would provide dates for Musk's deposition, if at all, when other less intrusive discovery was complete and Plaintiff could explain why an apex deposition was nonetheless warranted.

Here, Plaintiff did the reverse of what the apex doctrine requires: Plaintiff served Musk's deposition notice *before* reviewing Tesla's document production and before noticing a Rule 30(b)(6) deposition on topics relevant to the case. *See* Exh. I. Plaintiff *still* has not served a Rule 30(b)(6) notice on Tesla to obtain corporate testimony on topics pertaining to the claim and defenses at issue, which would be the standard less-intrusive path for obtaining corporate knowledge before seeking an apex deposition. *See Entm't Studios Networks, Inc. v. McDonald's USA, LLC*, No. 2: 21-CV-04972-FMO-MAAx, 2025 WL 1090394, at *10 (C.D. Cal. Apr. 9, 2025) (permitting a one-hour apex deposition based on movant's showing that apex witness possessed unique knowledge that could not be obtained after first deposing three Rule 30(b)(6) witnesses); *see also Int'l Game Tech. v. Illinois Nat'l Ins. Co.*, No. 2:16-cv-02792-APG-NJK, 2018 WL 7499823, at *4 (D. Nev. Apr. 6, 2018) (identifying Rule 30(b)(6) depositions as a less intrusive alternative to an apex deposition). Far from exhausting less intrusive alternatives, as required, Plaintiff has doggedly insisted on an in-person deposition of Musk from the beginning. Johnson Decl., ¶ 11; *see also* II.A Plaintiff's Position (arguing that its efforts toward "cooperative resolution" consisted of offers to hold Musk's deposition at a reasonable location, limit the time, or take it on a later date).

The sole, less intrusive means that Plaintiff identifies is the set of written discovery it served on Musk, which Plaintiff complains did not result in satisfactory responses. Plaintiff, however, has not sought an order compelling further responses to those requests. Nor could it reasonably do so, given that Plaintiff's document requests and Interrogatories to Musk sought sweeping records and information in

29
JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

*Tesla's* control. Tesla responded and produced responsive documents to the parallel requests Plaintiff propounded on it. So, Plaintiff has received the responsive non-privileged documents it sought. Musk is under no obligation to provide documents that are not in his personal possession, custody, or control. *See* Fed. R. Civ. Proc. 34(a)(1). Nor is he required to verify his responses to Plaintiff's Interrogatories, as they (appropriately) consisted only of objections. *See* Fed. R. Civ. Proc. 33(b).

Plaintiff's accusation that *Defendants* did not offer less intrusive alternatives mischaracterizes the analysis. It is *Plaintiff's* obligation to exhaust alternatives, and it has not done so. *See Ramirez*, 2019 WL 2106594, * 7 (denying plaintiff's motion to compel apex deposition because *inter alia* "[p]laintiff does not present any argument that . . . other forms of discovery related to the [discovery sought from an apex deposition] have been exhausted"). Plaintiff's assertion is also demonstrably false. Defendants repeatedly requested that Plaintiff take the depositions of fact witnesses with direct knowledge of relevant facts and Tesla's 30(b)(6) witnesses to obtain the information it would ask of Musk. *See* II.A Defendants' Position § 1. Plaintiff refused. Most recently, Tesla offered to propose alternatives to apex witness depositions. Plaintiff, however, indicated it was unlikely to accept them anyway and then initiated this motion before Tesla could offer such alternatives.

Plaintiff's failure to demonstrate that it exhausted less burdensome means to obtain discovery pertinent to the claim and defenses in this case warrants denial of its motion to compel Musk's deposition.

### 3. Mr. von Holzhausen's Deposition Should Be Limited to Written Interrogatories

#### a. Mr. von Holzhausen Is an Apex Witness

Mr. von Holzhausen serves as Tesla's Senior Design Executive, a position placing him at or near the apex of Tesla's design organization. Indeed, he reports directly to Musk. The apex doctrine applies to any high-level executive whose

30

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

deposition creates the potential for abuse, not only CEOs. *See Apple*, 282 F.R.D. at 263 ("the court must assess not only the materiality of the proposed deponent's knowledge of pertinent facts and the availability of other means for the party to access that knowledge, but . . . the person's degree of 'apex-ness' in relation to these factors"). There is no meaningful dispute that von Holzhausen is also an apex witness entitled to protection if Plaintiff cannot demonstrate that he possesses unique knowledge relevant to this dispute that cannot be obtained through less intrusive means. Plaintiff cannot make this showing either.

### b. Mr. von Holzhausen Has No Unique Firsthand Knowledge Relevant to the Case

Defendants acknowledge that von Holzhausen has certain knowledge about Tesla's efforts to license Image A and the use of Image C at the Event by virtue of his role as a supervisor. Plaintiff has already elicited evidence of this knowledge from the depositions of those he supervised: ███████████████. Those witnesses not only testified about the extent of von Holzhausen's involvement, but also confirmed that von Holzhausen himself did not lead these efforts, nor did he create Image C. As their testimony demonstrates, von Holzhausen's only relevant conduct is the selection of Image C, which is not in dispute.

### c. Discovery into Mr. von Holzhausen's Knowledge Can and Should be Conducted by Written Interrogatories as an Appropriate Less Intrusive Means

While Plaintiff does not articulate what ***unique*** information it still needs from von Holzhausen (there is none), Defendants submit that any further inquiry may be comprehensively addressed through written interrogatories regarding von Holzhausen's relevant decisions and communications pertaining to the Event. The apex doctrine requires Plaintiff to pursue this less burdensome investigation *before* it can demand a deposition. *See, e.g.*, *Celerity, Inc.*, 2007 WL 205067, at *4-5 ("UCT

31

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

may only depose [the apex witnesses] after either interrogatories or the depositions of lower-level employees have failed to provide the discovery it seeks"); *see also Int'l Game Tech.,* 2018 WL 7499823, at *4 (plaintiff exhausted less intrusive methods only after it had deposed two lower level employees, including one as Rule 30(b)(6) witness, and the witnesses' "answers were not sufficient, complete, relevant, or detailed"); *Klungvedt v. Unum Grp.*, No. 2:12-cv-00651-JWS, 2013 WL 551473, at *3 (D. Ariz. Feb. 13, 2013) (granting protective order under apex doctrine where "[o]ther less intrusive methods, such as a Rule 30(b)(6) deposition, should have been undertaken"); *Padilla v. MGM Grand Hotel, LLC*, No. 2:22-cv-02109-RFB-EJY, 2025 WL 2772072, at *6 (D. Nev. Sept. 25, 2025) ("[T]he record is missing anything that would inform the Court of less intrusive efforts to obtain the information sought through the subpoena of [the apex witness].").

This is particularly true where, as here, Plaintiff has wasted significant time at the depositions of other fact witnesses harassing them about irrelevant matters. *See* II.C Defendants' Position. Defendants are willing to confer with Plaintiff on a reasonable number of interrogatories and the timing of the response.

**B.     Whether Musk Should Be Ordered to Produce Documents at Deposition in Response to the Document Requests in the Notice.**

**Plaintiff's Position.**

Musk should be ordered to produce at or before his deposition, and without any objections other than privilege, all documents in his possession, custody or control and that are responsive to any of Plaintiff's Request Nos. 1, 3, 4, 6, 7 and 8 in Plaintiff's Notice of Deposition to Musk.

**REQUEST NO. 1:**
Native Format copies of the final keynote deck or decks, speaker notes, and any slide containing Image C that Mr. Musk reviewed, commented on, approved, or used, together with reasonably available comments or revision histories.

32
JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

**REQUEST NO. 3:**
Communications between 12:01 a.m. Pacific Time on October 9, 2024 and 11:59 p.m. Pacific Time on October 20, 2024, sent or received by Musk concerning replacement of Image A, use or approval of Image C, or use or avoidance of BR2049 or Blade Runner in any aspect of the Event, including without limitation Musk's keynote speech.

**REQUEST NO. 4:**
Documents sufficient to show Musk's comments, directions, approvals, or requested changes concerning Musk's keynote presentation or any slide, image, or visual concept regarding or referencing any motion picture property or science fiction genre television property, including without limitation general references to science fiction motion pictures or science fiction television properties, or any of the "Mad Max" motion pictures, Westworld, or Batman or the Batmobile.

**REQUEST NO. 6:**
Personal notes, notebooks, diaries, journals, or electronic memoranda maintained by Musk, including on personal devices or personal accounts, that reference or relate to Musk's actual or planned keynote presentation for the Event, Image A, Image C, BR2049, or Blade Runner, and which were generated or caused to be generated by Musk or received by Musk or placed in his relevant notebook, diary, journal or electronic memoranda, between January 1, 2024 and October 20, 2024.

**REQUEST NO. 7:**
Native Format files, drafts, reasonably available metadata, and reasonably available engagement analytics for any social-media posts, including archived or deleted posts and any posts made on Musk's behalf and reviewed or approved by him, which reference BR2049 or Blade Runner in the context of any of the following: (a) the Event; (b) Tesla's 2019 Cybertruck product reveal; (c) any actual or planned Tesla product or service, for the responsive period September 1, 2017 to the present.

**REQUEST NO. 8:**
Communications concerning Blade Runner or BR2049 in the context of (a) the Event; (b) Tesla's 2019 Cybertruck product reveal; or (c) any actual or planned Tesla product or service, and which was sent or received by Musk using Signal, WhatsApp, iMessage, X/Twitter direct messages, or any similar encrypted or ephemeral messaging application between September 1, 2024 and October 31, 2024.  For this Request, communications which Musk contends in good faith are attorney-client privileged or litigation work product

33

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

and which include an attorney on the communication and which were sent or received on October 21, 2024 or after may be excluded without a privilege log.

All six of these requests seek information relevant to the claims and defenses in the action.  All of them seek information probative of Musk's personal conduct and intentions with respect to usage of BR2049 or reasonably related or similar properties for the purpose of marketing and promoting Tesla products and services without paying Alcon or the relevant creators for the usages.  As discussed above in the prior section regarding Musk sitting for deposition, Musk's conduct and intentions in such regard are relevant to intentionality issues for substantial similarity analysis, willfulness for damages, and to what Musk was or was not intended to comment on or otherwise say relative to fair use arguments.  Request Nos. 1, 3, 6 and 8 are specifically tailored to the Image A, Image C and keynote event presentation facts and conduct specifically at issue in the action.

On April 2, 2026, Alcon served Musk with a Notice of Deposition that included document requests under Federal Rules of Civil Procedure 30(b)(2) and 34 (Schedule B). Written responses and objections were due thirty days after service.  The thirtieth day fell on Saturday, May 2, 2026, which under Rule 6(a)(1)(C) extended the response deadline to Monday, May 4, 2026.  As of the date of this Motion, more than a month past the deadline, Musk has served no written responses, no objections, no privilege log, and no motion for protective order in response to Schedule B.

Ninth Circuit authority is dispositive: "It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992); *see also Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (objections waived where party failed to object timely). The waiver applies to all non-privilege objections absent a showing of good cause; Musk has not served any objection and has not attempted to show good cause for relief from waiver.

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

The Court should accordingly: (i) deem all non-privilege objections to at least the above-referenced Requests from Schedule B waived under *Richmark and Davis*, absent a showing of good cause; (ii) order Musk to serve complete written responses to Schedule B within seven (7) days of the order; (iii) order Musk to produce all responsive non-privileged documents on or before the date set for Musk's deposition; and (iv) order Musk to serve a Rule 26(b)(5)(A) privilege log for any responsive material withheld on the basis of privilege or work-product protection (or negotiate and come to agreement with Plaintiff on an agreed level of compliance with privilege and work-product identification and preservation, which Plaintiff would engage in with Musk).

Plaintiff offered Musk the chance simply to make his written objections and responses as if the deadline had not passed, with no waiver (*i.e.*, offering him a Mulligan, to put it colloquially), but Musk declined and failed to do so, with no explanation. (*See* Exh. 1 [Anderson Decl.], ¶¶ 20 and 26 and Exh. 14 [May 15, 2026 Meet and Confer Letter].)

**Defendants' Position.**

Plaintiff's motion to compel Musk's production of documents under Schedule B should be denied in its entirety. It is undisputed that Musk objected to the deposition notice—in its entirety—under the apex doctrine.

### 1. The Time to Provide Responses and Objections to the Schedule B Requests Is Contingent on the Deposition

The Schedule B document requests are not freestanding Rule 34 requests that must be responded to within 30 days of service, as Plaintiff contends. They are requests for production under Rule 30(b)(2), which provides: "The notice to a party deponent may be accompanied by a request under Rule 34 to produce documents and tangible things *at the deposition*." Fed. R. Civ. P. 30(b)(2) (emphasis added). *See* Exh. 7 [April 2, 2026 Notice of Deposition of Musk].) By the plain terms of Rule 30(b)(2),

35

a reference to Rule 34 within a deposition notice does not trigger Rule 34's 30-day deadline; it imposes a deadline to produce "at the deposition."

This makes sense, because the enforcement of such requests is logically and procedurally contingent on the deposition going forward. Here, as Defendants timely informed Plaintiff, no deposition would occur pursuant to the unilaterally issued deposition notice, and thus the time for responding and objecting to specific document requests has not come due. Moreover, because Plaintiff's motion to compel Musk's deposition should be denied for the reasons set forth in II.A, above, the Schedule B requests should be deemed moot.

**2.      Musk Preserved and Did Not Waive Any Objections**

Plaintiff contends that Musk did not serve written objections to the Schedule B requests within 30 days so all non-privilege objections are waived under *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992), and *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981). Plaintiff is wrong. As set forth above, the 30-day deadline to Rule 34 requests served independent from a Rule 30(b)(2) notice does not apply. Indeed, neither of Plaintiff's cases stands for the proposition that objections to document requests appended to a disputed deposition notice are waived where the parties are still conferring on the deposition itself.

Even if the Rule 34 deadline did apply, however, Musk timely objected by objecting to the deposition notice in its entirety. The Schedule B requests were served in connection with a deposition notice that Tesla promptly contested in its entirety. Exh. I; Exh. 1 [Anderson Decl.], ¶¶ 10–12. The parties were actively negotiating whether Musk's deposition should occur at all before and after the unilaterally noticed deposition date (and throughout the entire 30-day response period Plaintiff erroneously claims applies). It would be illogical to require detailed written objections to document requests "at deposition" when the deposition itself is disputed, no date has been agreed upon, and the parties are meeting and conferring about whether the

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

deposition should proceed at all. In *Thompson v. CoreLogic Rental Property Solutions*, No. 21-CV-1716-GPC (WVG), 2022 WL 16753141, at *3 (S.D. Cal. October 13, 2022), for example, the court credited plaintiff's objection to defendant's deposition notice where Plaintiff's counsel sent an email before expiration of the 30-day response deadline stating: "I want to reiterate what I mentioned in my prior emails – your depo notice for my client is in violation of the court's scheduling order and scheduling deadlines."

Here, Tesla asserted its objection to the unilaterally set deposition notice and Schedule B beginning on April 17, 2026, and specifically advised in a telephone conference with Plaintiff's counsel that: Tesla's counsel were not available and would not appear at the unilaterally-scheduled Musk deposition and document production date; the parties should discuss a coordinated approach to depositions, as discovery would likely confirm that there was no need to conduct Musk's deposition; and that Tesla reserved its rights to seek a protective order regarding Musk's deposition at the appropriate time. *See* Exh. O (April 20, 2026 Email from Tesla counsel summarizing the parties' April 17, 2026 meet and confer and stating "Tesla reserve[s] all rights on seeking protective order for depositions of Elon Musk and/or Franz [v]on Holzhausen."). Tesla's counsel reiterated these points in a confirming email to Alcon's counsel on April 20, 2026. *Id.* After additional conferrals between the parties, Tesla's counsel again noted on May 1, 2026, that "Alcon should first review Tesla's forthcoming document production before deciding whether to pursue the depositions of Franz [v]on Holzhausen and/or Elon Musk. Tesla will meet and confer with Alcon regarding those two depositions (reserving all rights to proceed with a motion for protective order)." Exh. J (May 1, 2026 Email from Tesla counsel summarizing the parties' April 28 telephone discussion regarding deposition scheduling and document production.

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

Because Tesla and Musk timely lodged their objections to Plaintiff's document requests associated with Musk's deposition and further communicated their objections on multiple occasions during conferrals, Plaintiff cannot in good faith claim that Musk failed to object to the document requests.

Even if there were a waiver (and there is not), courts retain discretion to relieve a party from technical waiver where good cause exists. *See, e.g.*, *BackGrid USA, Inc. v. Bright Mountain Media, Inc.*, No. CV 24-2545-GW (KSx), 2025 WL 4091104, at *4 (C.D. Cal. Jan. 9, 2025) ("the Court exercises its broad discretion and finds that good cause excuses any waiver of Defendants' objections based on the untimely service of its responses to Plaintiff's RFPs"); *Artist Revenue Advocates, LLC v. West*, No.: 2:24-cv-06018-MWC-BFM, 2025 WL 4666265, at * 1 (C.D. Cal. Dec. 4, 2025) (observing that courts have "broad discretion to grant relief from waiver even in the absence of good cause") (cleaned up); *Brown v. Stroud*, No. C–08–02348–VRW (DMR), 2010 WL 3339524, at *1 (N.D. Cal. 2010); *Fifty-Six Hope Rd. Music, Ltd. v. Mayah Collections, Inc.*, No. 2:04-cv-1501, 2007 WL 1726478, at *3–4 (D. Nev. June 11, 2007). Good cause exists here. The deposition was actively contested and being negotiated. And Tesla's new counsel substituted in on April 10, just eight days after the notice was served, and immediately engaged on all discovery issues. Furthermore, Plaintiff itself repeatedly confirmed that the Musk deposition date remained *unconfirmed* and not set, and offered that Musk could serve objections on a *later date*, "as if the deadline had not passed, with no waiver." Exh. 1 (Anderson Decl.), ¶¶ 20, 26; Exh. 14 (May 15, 2026 Letter); Exh. 13 (April 27, 2026 email asking Tesla to "provide proposed alternative dates for [Musk and von Holzhausen] depositions" and stating that "Alcon is willing to consider moving the dates for those two witnesses to later dates without prejudice to Tesla or the witnesses move for a protective order"); Ex J (L. Lee May 1, 2026 e-mail to E. Anderson). For Plaintiff to now disclaim these confirmations and accuse Defendants of waiver runs afoul of this District's

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

expectations for officers of the court. *See* Central District's Civility and Professionalism Guidelines §§ 2 – Scheduling (counsel are to "consult other counsel regarding scheduling matters in a good faith effort to avoid scheduling conflicts. . . . We will not, by granting extensions, seek to preclude an opponent's substantive rights").

Relief from any waiver is particularly appropriate here because the Schedule B requests are either duplicative of or subsumed within Plaintiff's separately served Rule 34 Requests for Production to Musk (served March 13, 2026), to which Musk timely served written objections and responses on May 4, 2026. *Compare* Exh. 7 (Schedule B) *with* Exh. T (Musk Responses to Alcon's First Set of RFPs). Where Musk has already served objections to materially similar requests, there is no prejudice from the absence of duplicative objections, and waiver should not yield a windfall production.

Plaintiff's disingenuous assertion of waiver should be rejected.

### C.      Whether Alcon's Incomplete Meet and Confer Process and Motion Warrant Monetary Sanctions

**Plaintiff's Position**

Defendants Tesla and Musk added section II.C to the Joint Stipulation and presented it to Plaintiff with the return of Tesla's and Musk's portion of the Joint Stipulation, which would effectively leave Plaintiff about one day to prepare this Plaintiff's Position section in response to Defendants' Position on this section II.C., and on a day when substantial other activity on the case is scheduled. Plaintiff respectfully declines to be rushed in that way. Plaintiff engaged in substantial meet and confer efforts with Tesla and Musk as already detailed in Plaintiff's portions of preceding sections of the Joint Stipulation and accompanying exhibits. To the extent that Defendants' section II.C contentions and authorities need to be addressed further by Plaintiff, Plaintiff will do so in a L.R. 37-2.3 Supplemental Memorandum.

**Defendants' Position**

Tesla and Musk should be awarded their reasonable expenses, including attorneys' fees, under Fed. R. Civ. P. 37(a)(5)(B) as discovery sanctions against Alcon for bringing a premature and meritless discovery motion. Rule 37(a)(5)(B) provides that if a motion to compel is denied, "the court must … require the movant, the attorney filing the motion, or both to pay the party … who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," unless the motion was "substantially justified" or "other circumstances make an award of expenses unjust." A motion is "substantially justified" if it has a "reasonable basis both in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Similarly, Rule 26(c)(3) authorizes an award of expenses to the movant when a protective order is granted. Fed. R. Civ. P. 26(c)(3). Further, L.R. 37-4 provides that "[t]he failure of any counsel to comply with or cooperate in the foregoing procedures may result in the imposition of sanctions."

Plaintiff's motion is not substantially justified for at least two independent reasons.

***First***, Plaintiff circumvented this Court's and the Local Rules' threshold requirements before filing a discovery motion by serving this Joint Stipulation without completing the meet-and-confer requirements, without engaging Magistrate Judge Oliver's IDDR procedures, and before Tesla offered less-burdensome alternatives for Plaintiff to consider as the parties had agreed to do. *See* II.A Defendants' Position § 1. This Court's local rules are not optional, and Plaintiff's disregard warrants sanctions. *See Live Eyewear, Inc. v. Biohacked, Inc.*, No. CV 19-461-FMO (PLAx), 2019 WL 8955366, at *5 (C.D. Cal. Sept. 19, 2019) (awarding monetary sanctions and noting: "Ignoring the meet and confer process while nevertheless taking advantage of the opportunity to present a position in a Joint Stipulation does not even come close to letter or spirt of the process contemplated by

40

the Local Rules."); *see also Smith v. Frank*, 923 F.2d 139, 142 (9th Cir. 1991) (holding sanctions may be imposed for violations of the local rules).

***Second***, Plaintiff's apex doctrine positions are not substantially justified, as Plaintiff does not and cannot demonstrate that Musk or von Holzhausen possess unique knowledge relevant to this case, or that Plaintiff exhausted alternative means to obtain such information. *See* II.A Defendants' Position §§ 2(b)-(d). Indeed, Plaintiff concedes it wants a full seven hours on the record to question Musk on wholly irrelevant topics such as his social media activity, past references to the original "Blade Runner" film (to which Plaintiff has no copyrights), and any other past conduct that Plaintiff subjectively regards as "opportunistic uses of BR2049 to market and promote Tesla products and services." *See* I.A Plaintiff's Position.

The improper fishing expedition that Plaintiff desires to conduct with Musk is consistent with the other depositions it has conducted in this case; rather than focus on how Image C was created and whether it infringes protectable expression from BR2049, Plaintiff has instead wasted time at the depositions taken to date on wholly irrelevant topics. *See, e.g.,* Exh. A at 48:17–55:5 (questioning of █████ on irrelevant matters, including Event space logistics); Exh. B at 19:8–20:1 (questioning of ███ on irrelevant matters, including his personal, non-work use of AI image generation tools); Exh. C at 24:18–26:1; 68:23–69:3 (questioning of ████ on irrelevant matters, including her use of AI image generation tools in her personal time and knowledge of merchandise sales at the Event). Discovery sanctions are appropriate here, where Plaintiff (i) needlessly dragged Defendants into motion practice on a meritless and manufactured dispute; and (ii) by all indications, seeks only to depose two apex witnesses to harass and question them on irrelevant matters. *See Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 439 (9th Cir. 1992) (affirming attorneys' fees award for duplicative, frivolous motion to compel); *Sure Safe Indus. Inc. v. C & R Pier Mfg.*, 152 F.R.D. 625, 627 (S.D. Cal. 1993)

41
JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

(awarding "fees and expenses incurred on resolution of the Motion to Compel Production of Documents and in preparation of the Claim for Attorneys Fees and Costs" based on frivolous motion to compel).

Monetary sanctions against Plaintiff in the amount of Tesla's reasonable attorneys' fees are warranted in light of its failure to comply with the Court's rules and procedures and for bringing a wholly unjustified motion.[9]

## III.  CONCLUSION AND RELIEF REQUESTED

### A.  Plaintiff's Conclusion and Requested Relief

For the reasons set forth above, Alcon respectfully requests that the Court enter an order:

(1) compelling Defendant Elon Musk to appear for deposition on a date certain within fourteen (14) days of the order, or on the earliest date the Court otherwise sets that permits completion before the July 24, 2026 fact-discovery cutoff;

(2) compelling Franz von Holzhausen to appear for deposition on a date certain within fourteen (14) days of the order, or on the earliest date the Court otherwise sets that permits completion before the July 24, 2026 fact-discovery cutoff, pursuant to the April 2, 2026 deposition notice and subpoena;

(3) with respect to Requests 1, 3, 4, 6, 7 and 8 in Plaintiff's Notice of Deposition to Musk: (i) deem all non-privilege objections to at least the foregoing Requests waived under *Richmark and Davis*, absent a showing of good cause; (ii) order Musk to serve complete written responses to such Requests within seven (7) days of the order; (iii) order Musk to produce all responsive non-privileged documents on or before the date set for Musk's deposition; and (iv) order Musk to serve a Rule 26(b)(5)(A) privilege log for any responsive material withheld on the basis of privilege or work-product protection (or negotiate and come to agreement with

---

[9] If sanctions are granted, Defendants will submit the support for their fees' request in a further submission.

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

Plaintiff on an agreed level of compliance with privilege and work-product identification and preservation, which Plaintiff would engage in with Musk).

(4) finding, after providing the parties an opportunity to be heard, that Defendants' positions giving rise to this Motion are not substantially justified and that no circumstances make an award of expenses unjust, and awarding Alcon its reasonable expenses, including attorneys' fees, incurred in bringing this Motion, pursuant to Federal Rules of Civil Procedure 37(a)(5)(A), 37(d)(3), and the Court's authority to enforce deposition subpoenas and award appropriate relief; and

(5) granting such further relief as the Court deems just and proper.

**B.    Defendants' Conclusion and Requested Relief**

For the reasons set forth above, Defendants Tesla, Inc. and Elon Musk respectfully request that the Court enter an order:

(1) **denying** Plaintiff's motion to compel the deposition of Elon Musk and von Holzhausen;

(2) **granting** Defendants' cross-request for a protective order pursuant to Federal Rule of Civil Procedure 26(c) barring the depositions of Musk and von Holzhausen under the apex doctrine;

(3) **denying** Plaintiff's motion to compel Musk's production of documents under Schedule B in its entirety;

(4) **finding** that Plaintiff's positions giving rise to this Motion are not substantially justified, and **awarding** Defendants their reasonable expenses, including attorneys' fees, incurred in opposing this Motion, pursuant to Federal Rules of Civil Procedure 37(a)(5)(B) and 26(c)(3), including on the grounds that Plaintiff failed to

[CONTINUED NEXT PAGE]

43

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS

complete the meet-and-confer process and Magistrate Judge Oliver's IDDR procedures before filing; and

(5) **granting** such further relief as the Court deems just and proper.

DATED: June 18, 2026

**ANDERSON YEH PC**
**YUKEVICH CAVANAUGH**

By: */s/ Edward M. Anderson*
EDWARD M. ANDERSON
REGINA YEH
JAMES W. IREY
HASSAN ELRAKABAWY
CELESTE S. DEL RIO

Attorneys for Plaintiff
ALCON ENTERTAINMENT, LLC

DATED: June 18, 2026

**KING & SPALDING LLP**

By: */s/ Arwen R. Johnson*
ARWEN R. JOHNSON
LENNETTE W. LEE

**TESLA, INC.**
HELEN TRAC (SBN 285824)
htrac@tesla.com
DAVID LEE (SBN 264467)
dlee8@tesla.com
1501 Page Mill, Bldg 6U
Palo Alto, California 94304
Telephone: (510) 298-8516

Attorneys for Defendants
TESLA, INC. and ELON MUSK

Pursuant to L.R. 5-4.3.4, I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

_____
Edward M. Anderson

44

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS