ANDERSON YEH PC
  Edward M. Anderson (STATE BAR NO. 198183)
edward@andersonyehlaw.com
  Regina Yeh (STATE BAR NO. 266019)
regina@andersonyehlaw.com
1055 E. Colorado Blvd. Ste 500
Pasadena, California  91106
Tel: (626) 204-4092  Fax: (888) 744-0317

YUKEVICH CAVANAUGH
  James W. Irey (STATE BAR NO. 150640)
jirey@yukelaw.com
  Hassan Elrakabawy (STATE BAR NO. 248146)
helrakabawy@yukelaw.com
  Celeste S. Del Rio (STATE BAR NO. 275969)
cdel_rio@yukelaw.com
355 South Grand Avenue, 15th Floor
Los Angeles, CA  90071
Telephone: (213) 362-7777  Facsimile: (213) 362-7788

Attorneys for Plaintiff
ALCON ENTERTAINMENT, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALCON ENTERTAINMENT, LLC, a Delaware Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> TESLA, INC., a Texas Corporation; ELON MUSK, an individual; WARNER BROS. DISCOVERY, INC., a Delaware Corporation; <br><br> Defendants. | CASE NO.  2:24-CV-09033-GW-RAO <br><br> Hon. George H. Wu – District Judge <br><br> Hon. Rozella A. Oliver – Magistrate Judge <br><br> **PLAINTIFF ALCON ENTERTAINMENT, LLC'S L.R. 37-2.3 SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF MOTION TO COMPEL DEFENDANT TESLA, INC.'S (1) RESPONSES OR FURTHER RESPONSES TO** |

PLAINTIFF'S L.R. 37-2.3 SUPPLEMENTAL MEMORANDUM RE MOTION TO COMPEL DEPOSITIONS

**SELECTED INTERROGATORIES FROM PLAINTIFF'S FIRST SET OF INTERROGATORIES, (2) FURTHER RESPONSES AND PRODUCTION OF DOCUMENTS IN RESPONSE TO SELECTED REQUESTS FROM PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS AND (3) RESPONSES OR FURTHER RESPONSES TO SELECTED REQUESTS FOR ADMISSIONS FROM ALCON'S FIRST SET OF REQUESTS FOR ADMISSIONS**

Date:          July 15, 2026
Time:          10:00 a.m.
Courtroom:     590, 5th Floor

Action Filed:       October 21, 2024
Discovery Cut-Off:  July 24, 2026
Pre-Trial Conf.:    November 19, 2026
Trial Date:         December 1, 2026

PLAINTIFF'S L.R. 37-2.3 SUPPLEMENTAL MEMORANDUM RE MOTION TO TESLA WRITTEN DISCOVERY RESPONSES

## L.R. 37-2.3 SUPPLEMENTAL MEMORANDUM

### I.    INTERROGATORIES NOS 11-14 AND DOCUMENT REQUESTS NO. 27 (TESLA SOCIAL MEDIA POSTING HISTORY)

The arguments of defendant Tesla, Inc. ("Tesla") against responding or making any further responses to Plaintiff's Interrogatories Nos. 11-14 and Document Request No. 27 are most fundamentally premised on improperly attempting to limit the scope of discovery.  As Tesla would have it, discoverable issues barely go beyond: (a) identifying which individuals were directly involved in the creation of Image C; (b) those individuals' technical creation process, as strictly limited to that single ultimate image; and (c) who manually placed Image C into Musk's keynote presentation for the Event.

The claims and defenses at issue in the action are broader than that, and so is the proper scope of discovery, and that scope should be found to include the social media posting history that is the subject of the named Interrogatories and Request. Plaintiff Alcon Entertainment, LLC ("Plaintiff" or "Alcon") alleges by its Third Amended Complaint ("TAC") (ECF 81) that not only is Alcon the ultimate exclusive copyright holder in BR2049, but that Alcon also holds substantial exclusive rights in the 1982 Picture.  Paragraph 9 of the TAC includes the sentence: "In 2011, Alcon acquired many rights in the 1982 Picture and underlying properties from [the original copyright holder's] successor, including exclusive rights to make 1982 Picture derivative works."  (Exh. 2, Excerpts of TAC [ECF 81], TAC ¶ 9.)

Alcon further contends by the TAC that what Musk and Tesla did with BR2049 in the Event was not an isolated "11 second" usage.  That would by itself be a very commercially significant usage, where it was a prominent part of a product

PLAINTIFF'S L.R. 37-2.3 SUPPLEMENTAL MEMORANDUM RE MOTION TO TESLA WRITTEN DISCOVERY RESPONSES

reveal advertisement for Tesla's new self-driving car and humanoid robot products.[1] But the TAC further contends that the "11 seconds" was and is part of a years-long pattern and practice of Musk and Tesla using elements of both the 1982 Picture and BR2049 to market and promote Tesla's products and services.  Alcon contends that such conduct, especially if it is allowed to continue, has damaged or will damage Alcon's established auto brand affiliation licensing market for the property: that Musk and Tesla are engaged in a kind of unauthorized acquisition of a permanent brand affiliation between Tesla and BR2049 (and the 1982 Picture), by an intentional scheme of persistent, incremental purported "fair uses" of BR2049, made up of small, quick or even subtle references that, especially accreted over time, add up to a major taking.  (*See* Exh. 2 [TAC Excerpts] at pages 2-3 [TAC, ¶¶ 17-19, 23]; Exh. 3 [examples of Musk subtly referencing 1982 Picture elements, resulting in market association of cybertruck with both the 1982 Picture and BR2049 – *see esp.* Exh. 3 at pages 5-6 ["But there's another off-planet influence that has a close appearance to the Cybertruck. … That's none other than the flying vehicles of 'Blade Runner' (1982) and its sequel, 'Blade Runner 2049' (2017) [….]  Musk has called his vehicle the 'Blade Runner truck' on several occasions, according to Forbes."]; Anderson Decl., ¶¶ 3-4.)

Tesla's contention that its combined unauthorized usages of the 1982 Picture and BR2049 over time (as largely manifested in the social media activity that is the

---

[1] Tesla's representation that Alcon has refused to produce any evidence of the prior automobile brand affiliation licensing history of BR2049 is false.  Alcon produced with its Initial Disclosures the entire unredacted contract that contains the $500,000 cash plus $30 million media spend contract price alleged in the TAC, as well as unredacted copies of the other similarly high bids Alcon received for the auto brand affiliation in the theatrical release of BR2049.  What Alcon refuses to produce are *settlement agreements*, including about those contracts and bids – and the main reason is because Alcon promised the settling third parties it would not.

PLAINTIFF'S L.R. 37-2.3 SUPPLEMENTAL MEMORANDUM RE MOTION
TO TESLA WRITTEN DISCOVERY RESPONSES

subject of Interrogatories Nos. 11-14 and Request No. 27) is irrelevant and thus not discoverable must be found legally incorrect.  Tesla relies prominently on a fair use defense.  Fair use analysis expressly does require consideration of how repeated similar conduct over time, if allowed to continue, has affected (or even might affect) the market for the Plaintiff's work.  *See Dr. Suess Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 458 (9th Cir. 2020) (In assessing the fourth fair use factor of "the effect of the use upon the potential market for or value of the copyright work," "[c]ourts must address 'not only the extent of market harm caused by the particular actions of the alleged infringer, but also "whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in substantially adverse impact on the potential market" for the original' and 'the market for derivative works.'"), abrogated on other grounds as recognized by *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022 (9th Cir. 2024) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994)).  If fair use analysis has to consider what might happen to a plaintiff's markets if further similar uses were allowed into the future, then it surely must also consider a situation, like this one, where Tesla has already made many prior similar uses.

**II.    DOCUMENT REQUEST NO. 23 (TESLA "WRITTEN MATERIALS" REFERENCED NEAR BEGINNING OF LIVESTREAM)**

The first time that Tesla ever informed Plaintiff that the only "written materials" referenced in the subject livestream voiceover are Tesla's public SEC filings named in the written securities law warning or disclaimer was by Tesla providing that information in delivering its portion of the Joint Stipulation for this Motion to Plaintiff.  Tesla did not ever communicate that in meet and confer communications, even though this topic was expressly discussed both in at least one letter and for at least several minutes of the parties' videoconference meet and confer.  If that is all that the "written materials" reference indeed includes, then

PLAINTIFF'S L.R. 37-2.3 SUPPLEMENTAL MEMORANDUM RE MOTION TO TESLA WRITTEN DISCOVERY RESPONSES

Plaintiff agrees that Tesla does not need to produce its public SEC filings in discovery.  An appropriate amended written response stating affirmatively that there is nothing else responsive to Request No 23 would be sufficient.  Plaintiff is disappointed that Tesla waited until the Joint Stipulation process to tell Plaintiff this simple fact, if it is indeed true.

### III.    RFAS.

It appears to Plaintiff that Tesla's only real substantive argument against making a less evasive response to Plaintiff's RFAs Nos. 4, 5 and 6 is that Tesla should not be expected to have to understand the word "authorization" or variations on the verb "authorize" in the context of copyright infringement claims and defenses.  That makes absolutely no sense.  The word or words are expressly incorporated into the Title 17 statutory scheme.  Tesla can and should be tasked with understanding it or them.

### IV.    ADEQUACY OF PLAINTIFF'S RESOLUTION EFFORTS

Tesla's complaints about Plaintiff's resolution attempts with respect to Tesla's written discovery responses at issue seem most vociferously focused on Plaintiff not having invoked the IDRR process, rather than pursue relief by formal motion.  In addition to Plaintiff's concerns about the timing of discovery and Tesla's general foot-dragging on discovery processes, especially those involving any fuzziness or voluntary aspects, as discussed in Plaintiff's meet-and-confer communications attached to and discussed in the Motion papers, it bears noting what Tesla did when Plaintiff did try to invoke the IDRR process for anything. Prior to making the present motion, Plaintiff twice sent Tesla IDRR request forms completed by Plaintiff, regarding a different, earlier dispute: to bring the seemingly endless Tesla negotiations of the stipulated discovery orders (protective order, ESI order, clawback order) to the attention of the Magistrate Judge.  Tesla simply ignored both IDRR requests, not making any response to them or even ever

4

PLAINTIFF'S L.R. 37-2.3 SUPPLEMENTAL MEMORANDUM RE MOTION TO TESLA WRITTEN DISCOVERY RESPONSES

mentioning them to Plaintiff.  The parties did eventually successfully complete the months-long process of negotiating the three orders, without any intervention of the Magistrate Judge.  But, Tesla's complete failure to acknowledge that Plaintiff had even tried to move the process forward by completed IDRR forms was something which Plaintiff took into account in deciding how to proceed on the disputes at issue in this Motion, and Plaintiff respectfully submits it was entirely fair for Plaintiff to do so.  At least as Plaintiff perceives it, Tesla (the client, not necessarily Tesla's current outside counsel) likes to promise (or threaten), and then actually demonstrate, that Tesla intends to be (and often is) exceptionally difficult about discovery compliance, and that includes doing things like ignoring IDRR requests. Plaintiff respectfully submits that it is not really fair for Tesla to behave in that manner and then nonetheless expect Plaintiff to continue to try IDRR avenues for other disputes that arise, especially on a tight discovery schedule where wasted time can be very prejudicial.

DATED: July 1, 2026                ANDERSON YEH PC

                                   Edward M. Anderson
                                   Regina Yeh

                                   _____
                                          Edward M. Anderson
                                   Attorneys for Plaintiff
                                   ALCON ENTERTAINMENT, LLC

5

PLAINTIFF'S L.R. 37-2.3 SUPPLEMENTAL MEMORANDUM RE MOTION
TO TESLA WRITTEN DISCOVERY RESPONSES