A. LOUIS DORNY (SBN 212054)
*ldorny@tesla.com*
TERRY W. AHEARN (SBN 216543)
*tahearn@tesla.com*
**TESLA, INC.**
1501 Page Mill Building 6U
Palo Alto, California 94304
Tel.: (510) 298-8516

ARWEN R. JOHNSON (SBN 247583)
*arwen.johnson@kslaw.com*
LENNETTE W. LEE (SBN 263023)
*llee@kslaw.com*
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, California 90071
Tel.: (213) 443-4355 / Fax: (213) 443-4310

*Additional counsel listed on signature page*

Attorneys for Defendants
TESLA, INC. and ELON MUSK

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

ALCON ENTERTAINMENT, LLC, a Delaware Limited Liability Company,

Plaintiff,

v.

TESLA, INC., a Texas Corporation; ELON MUSK, an individual; WARNER BROS. DISCOVERY, INC., a Delaware Corporation,

Defendants.

**Case No. 2:24-cv-09033-GW-RAO**

*Hon. George H. Wu, Courtroom 9D*

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

**[Separate Statement of Facts; Declarations of [redacted], Michael Robert Gale, A[redacted]on, and David Lee with Exhibits; and Proposed Order Filed Concurrently Herewith]**

Hearing Date: January 25, 2027
Hearing Time: 8:30 a.m.
Courtroom: 9D

Discovery Cut-Off: October 2, 2026
Pre-Trial Conf.: March 4, 2027
Trial Date: March 16, 2027

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 25, 2027 at 8:30 a.m. or as soon thereafter as the matter may be heard, before the Honorable George H. Wu, United States District Court Judge, in Courtroom 9D of the U.S. District Court located at 350 West 1st Street, Los Angeles, California, Defendants Tesla, Inc. and Elon Musk will and hereby do move the Court for summary judgment under Federal Rule of Civil Procedure 56 and Local Rule 56 on Plaintiff Alcon Entertainment's Direct Copyright Infringement Claim.

The grounds for the Motion are that there are no genuine disputes as to any material facts and Tesla and Musk are entitled to judgment as a matter of law. More specifically: (1) Alcon's literal copying theory fails as a matter of law because Defendants did not literally copy BR2049 or Image A; and (2) as a matter of law the works are not substantially similar in protected expression.

This Motion is based on this Notice of Motion and Motion, Defendants' Separate Statement of Undisputed Facts, the accompanying Declarations of [redacted], Michael Robert Gale, Arwen Johnson, and David Lee and the exhibits thereto, and all other pleadings, papers, and records on file in this case, all matters of which the Court may take judicial notice, and such other or further material as may be presented at or before the hearing on the Motion.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on November 9, 2026. Declaration of Arwen Johnson ¶ 2.

DATED: November 19, 2026

**KING & SPALDING LLP**

By: */s/ Arwen R. Johnson*
Arwen R. Johnson
Lennette W. Lee

**TESLA, INC.**
DAVID LEE (SBN 264467)
*dlee8@tesla.com*
1501 Page Mill, Bldg 6U
Palo Alto, California 94304
Tel.: (510) 298-8516

Attorneys for Defendants
TESLA, INC. and ELON MUSK

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. STATEMENT OF UNDISPUTED FACTS .......... 1

A. The Works .......... 2

B. The Event .......... 5

C. Alcon's TAC Asserts a Single Copyright Claim Against Defendants .......... 6

D. Discovery Confirms That Defendants Did Not Copy Image A or BR2049 .......... 6

III. LEGAL STANDARD ON SUMMARY JUDGMENT .......... 6

IV. ARGUMENT .......... 7

A. Defendants Did Not Literally Copy BR2049 or Image A. .......... 7

B. The Works Are Not Substantially Similar in Protected Expression .......... 8

C. Alcon Relies on Legally Baseless Theories in an Attempt to Avoid Having to Prove Substantial Similarity. .......... 19

D. Alcon's Unpled Theories Also Fail. .......... 20

V. CONCLUSION .......... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Basile v. Warner Bros. Ent.*,
2016 WL 5867432 (C.D. Cal. Jan. 4, 2016), *aff'd*, 678 F. App'x 604 (9th Cir. 2017) .......... 18

*Bernardo v. Lafayette Life Ins. Co.*,
2025 WL 2947010 (C.D. Cal. Sept. 24, 2025) .......... 21

*Biani v. Showtime Networks, Inc.*,
153 F.4th 957 (9th Cir. 2025) .......... 9, 11

*Bissoon-Dath v. Sony Computer Ent. Am., Inc.*,
694 F. Supp. 2d 1071 (N.D. Cal. 2010), *aff'd*, 653 F.3d 898 (9th Cir. 2011) .......... 9, 10

*Brookhaven Typesetting Servs., Inc. v. Adobe Sys., Inc.*,
2007 WL 2429653 (N.D. Cal. Aug. 24, 2007) .......... 7

*Capcom Co. v. MKR Grp., Inc.*,
2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) .......... 11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 6, 7

*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 2000) .......... 21

*Daniels v. Walt Disney Co.*,
958 F.3d 767 (9th Cir. 2020) .......... 10

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
109 F.3d 1394 (9th Cir. 1997) .......... 19

*DuMond v. Reilly*,
2021 WL 733311 (C.D. Cal. Jan. 14, 2021) .......... 13

*Eden Film Prod. LLC v. Lockjaw LLC*,
2025 WL 1386018 (C.D. Cal. Apr. 25, 2025) .......... 9

*Epidemic Sound, AB v. Meta Platforms, Inc.*,
2026 WL 2021347 (N.D. Cal. July 13, 2026) ....................................................7

*Esplanade Prods., Inc. v. Walt Disney Co.*,
768 F. App'x 732 (9th Cir. 2019) ....................................................18

*FDIC v. Network Cap. Funding Corp.*,
2015 WL 13916255 (C.D. Cal. Aug. 28, 2015) ....................................................21

*Folkens v. Wyland Worldwide, LLC*,
882 F.3d 768 (9th Cir. 2018) ....................................................8, 10

*Funky Films, Inc. v. Time Warner Ent. Co., L.P.*,
462 F.3d 1072 (9th Cir. 2006), *overruled on other grounds by*
*Skidmore*, 952 F.3d 1051 ....................................................10, 13

*Gilbert-Daniels v. Lions Gate Ent. Corp.*,
2023 WL 8948288 (C.D. Cal. Dec. 7, 2023) ....................................................10

*Goldberg v. Cameron*,
787 F. Supp. 2d 1013 (N.D. Cal. 2011) ....................................................16, 18

*Johnson v. Knoller*,
2017 WL 5640554 (C.D. Cal. Sept. 18, 2017) ....................................................11

*Litchfield v. Spielberg*,
736 F.2d 1352 (9th Cir. 1984) ....................................................19

*Navajo Nation v. U.S. Forest Serv.*,
535 F.3d 1058 (9th Cir. 2008) ....................................................21

*Oracle Int'l Corp. v. Rimini St., Inc.*,
123 F.4th 986 (9th Cir. 2024) ....................................................7, 19, 20

*Patel v. City of Long Beach*,
564 F. App'x 881 (9th Cir. 2014) ....................................................21

*Pickern v. Pier 1 Imports (U.S.), Inc.*,
457 F.3d 963 (9th Cir. 2006) ....................................................21

*Ray v. State Farm Mut. Auto. Ins. Co.*,
2021 WL 4902357 (9th Cir. Oct. 21, 2021) ....................................................21

*Rentmeester v. Nike, Inc.*,
883 F.3d 1111 (9th Cir. 2018) ....................................................*passim*

*Satava v. Lowry*,
323 F.3d 805 (9th Cir. 2003) .......... 10

*Sedlik v. Von Drachenberg*,
No. 24-3367 (9th Cir.), Dkt. 100.1 .......... 8

*Shame on You Prods., Inc. v. Banks*,
120 F. Supp. 3d 1123 (C.D. Cal. 2015) .......... 17, 18, 19

*Silas v. Home Box Off., Inc.*,
201 F. Supp. 3d 1158 (C.D. Cal. 2016), *aff'd*, 713 F. App'x 626 (9th Cir. 2018) .......... 11, 19

*Takeya USA Corp. v. PowerPlay Mktg. Grp., LLC*,
2022 WL 17357781 (C.D. Cal. Sept. 1, 2022) .......... 21

*Warner Bros. v. Am. Broad. Cos.*,
720 F.2d 231 (2d Cir. 1983) .......... 17

*Woodland v. Hill*,
136 F.4th 1199 (9th Cir. 2025) .......... 8, 12

*Wormuth v. Lammersville Union Sch. Dist.*,
305 F. Supp. 3d 1108 (E.D. Cal. 2018) .......... 21

*Yonay v. Paramount Pictures Corp.*,
163 F.4th 685 (9th Cir. 2026) .......... *passim*

*Zendel v. Circle Locations Servs., Inc.*,
2013 WL 12111752 (C.D. Cal. July 19, 2013) .......... 16

**Other Authorities**

Fed. R. Civ. P. 56 .......... 1, 6

Local Rule 7-3 .......... 1

Local Rule 56 .......... 1

## I. INTRODUCTION

This case is about Tesla's use of an image that it undisputedly created by making permissible modifications to a lawfully licensed stock image. Plaintiff Alcon Entertainment, LLC brought this claim for direct copyright infringement against Tesla and Elon Musk (collectively "Defendants") on the belief that Tesla created the image, referred to as "Image C," by literally copying a frame ("Image A") from *Blade Runner 2049* ("BR2049"). Discovery has proven that belief false.

That leaves Alcon only with its alternate theory that Image C nonetheless infringes BR2049 because it is substantially similar in protected expression either to Image A or BR2049. That fails too. Under the extrinsic test, the Court must filter out unprotected elements and conduct an objective comparison of the protected elements in both works to determine whether they are substantially similar. But both sides agree that any elements Image C shares with BR2049 or Image A are unprotected ideas, stock elements, and *scènes à faire* of the post-apocalyptic genre. And although Alcon will try to rely on experts to satisfy the "selection and arrangement" test, no expert opines that the works share the same selection or arrangement; they do not. Alcon's copyright infringement claim therefore fails.

Unable to satisfy the extrinsic test, Alcon is likely to resort to "creative" theories that have already drawn this Court's skepticism. Dkt. 61 at 7 n.10; Dkt. 98 at 6. Alcon's theory that "evoking" a copyrighted work infringes all of its protected elements conflicts with controlling precedent, which requires an objective comparison of the protected elements in the works *themselves*. *Yonay v. Paramount Pictures Corp.*, 163 F.4th 685, 692-93 (9th Cir. 2026). And the scattershot theories Alcon did not plead but pivoted to during discovery are not viable either.

The Court thus should grant Defendants summary judgment.

## II. STATEMENT OF UNDISPUTED FACTS

Alcon's Third Amended Complaint ("TAC") asserts direct copyright infringement against Defendants relating to Image C. TAC ¶¶ 48-49; SUF 1, 21, 50.

Image C is a still image that Tesla created and displayed for eleven seconds during Tesla's October 10, 2024 "We, Robot" event (the "Event"). SUF 2, 21-22, 50-51; TAC ¶¶ 2, 22, 40. Alcon claims that Image C infringed Alcon's copyright in BR2049. SUF 3-4; TAC ¶¶ 28, 39, 47. Specifically, Alcon alleges that the creation of Image C infringed Alcon's right to reproduce Image A (a still from the BR2049 trailer) and that Image C, and the Event Recording containing it, infringed Alcon's reproduction, derivative work, and display rights in BR2049. TAC ¶¶ 48-49, 55; SUF 5, 23-24, 53.

**A. The Works**

**1. BR2049**

Alcon owns the copyright in BR2049, a film about a future dystopian world in which humans use quasi-human robots called "replicants" as slave labor. SUF 52; Dkt. 51 (previously-lodged copy). K, a replicant, is a "blade runner" whose job is to track and "retire" rebellious replicants. Dkt. 51. It is the year 2049, and K lives in Los Angeles, a crowded dystopia depicted in blue-black tones with neon lights and holographic advertisements. SUF 54.

K encounters a grave with remains that suggest that replicants can reproduce biologically. SUF 56. He learns that the remains may be those of a woman who had a romantic relationship with replicant Rick Deckard (the lead character in the original 1982 film). *Id.* K comes to believe he was born rather than created and that he may be Deckard's son. SUF 57. K tracks Deckard to an abandoned casino in Las Vegas, now a radioactive, orange-hazed wasteland. *Id.* The two characters talk, but then an evil corporation bombs the casino and kidnaps Deckard. *Id.*

K is rescued by replicant rebels led by Freysa, who reveals that Deckard had a daughter, whom Deckard gave up to be raised by the rebels. Dkt. 51. Freysa tells K to kill Deckard so that he cannot be used to infiltrate the resistance. *Id.* K makes an independent choice rather than following orders. SUF 58. He sacrifices himself so that Deckard can reunite with his daughter. *Id.* K thus discovers that whether he was born or created, he has a soul, feels emotions, and is capable of love. *Id.*

**2. Image A**

Image A is an unfinished visual effects shot distributed in advance of BR2049's release. Gale Decl. Ex. D at 7 n.3. A different version appears in the film at approximately the 1:37:55 mark, when K arrives in Las Vegas to find Deckard.[1] *Id.* at 53. Image A depicts a futuristic car with its door swung open in the foreground. Johnson Decl. Ex. G; Gale Decl. Ex. D at 13, 16. Walking away from the car in the center of the image is a short-haired figure, seen from the rear, wearing a knee-length coat with a fur collar. Johnson Decl. Ex. G; Gale Decl. Ex. D at 12-13, 16. He is on a dusty landscape next to a ruined bridge, walking toward a ruined skyline in an orange-yellow haze. Johnson Decl. Ex. G; Gale Decl. Ex. D at 12-13. The lighting is diffuse, and the man casts no shadow. Johnson Decl. Ex. G; Gale Decl. Ex. D at 13, 15. Below is a screenshot of Image A, as it appears in Alcon's TAC (¶ 27).



[1] Alcon asserts that Image A appears in the film, TAC ¶ 28, but it does not, Gale Decl. Ex. D at 7 n.3.

### 3. Image C

Tesla designed its own image for use in the Event through a process led by [redacted], after Tesla was unable to secure a license for Image A. SUF 6. [redacted] began by searching for a desert image in Adobe Stock, a stock-image application lawfully licensed by Tesla. SUF 7-9. [redacted] began with an image of a desert landscape with a cross in the foreground and made permissible modifications to it. SUF 10; Lee Decl. Ex. GG.



[redacted] flipped the image and used Photoshop to delete the cross. SUF 11. Then, using Photoshop's generative-fill tool, [redacted] added a dusty cityscape to the background. SUF 12. [redacted] prompted Photoshop's generative-fill tool to add Elon Musk in a trenchcoat looking into the city. SUF 14. Last, [redacted] edited the image's color to achieve the dystopian effect. SUF 16; [redacted] Decl. Ex. A. [redacted], put on finishing touches, added further color adjustments, and edited the figure's hand into a fist. SUF 17.

The resulting Image C depicts a large figure, wearing an ankle-length duster, standing in 7/8 profile in the foreground. Johnson Decl. Ex. F; Gale Decl. Ex. D at 15-16. He is standing still, casting a shadow over rocky terrain, looking out over a distant skyline set against an orange haze. Johnson Decl. Ex. F; Gale Decl. Ex. D at 15-16. In

the upper-left corner is the text: "NOT THIS." Johnson Decl. Ex. F. Below is a screenshot of Image C from the TAC (¶ 39):

Franz von Holzhausen, Tesla's Senior Design Executive who selected Image C,




testified he chose it because it effectively evoked a generic "dystopian image." Von Holzhausen Tr. 29:3-14, 31:19-25. Von Holzhausen was not "looking for an image that felt like Blade Runner 2049." *Id.* at 32:1-3; 36:18-37:3.

**B. The Event**

Image C was displayed for approximately 11 seconds. SUF 2. The keynote began with a two-second display of an image of Earth from space at sunrise while Musk said concurrently, "So you see a lot of sci-fi movies where the future is dark and dismal, where it's not the future you want to be in." Dkt. 25 at 5:35; *see also* Johnson Decl. ¶ 20. The Event display then shifted to Image C, and Musk spontaneously said: "You know, I love *Blade Runner*, but I don't know if we want that future. I believe we want that duster he's wearing, but not the bleak apocalypse." *Id.*; [redacted] Tr. 109:12-13. Image C was then replaced by real-world images of pollution and traffic, while Musk discussed how Tesla's new products would achieve a future with cost-efficient, safe, and sustainable transportation. Dkt. 25.

**C. Alcon's TAC Asserts a Single Copyright Claim Against Defendants**

Alcon's single claim is based on two alternative theories: (1) "literal copying" of either Image A or BR2049 into an "AI image generator" with instructions to make "an image from the K surveying ruined Las Vegas sequence of 'Blade Runner 2049,'" TAC ¶¶ 40, 48; or (2) "substantial similarity copying" by incorporating "protected elements" from BR2049 into Image C (and the part of the Event Recording that includes it), *id.* ¶¶ 49-54.

Defendants moved to dismiss, including on the grounds that Alcon failed to adequately allege literal copying and there was no substantial similarity between Image C and either Image A or BR2049. Dkt. 88-1 at 5, 13. The Court denied the motion on the ground that Alcon's "literal copying" allegations were "sufficiently plausible," and thus did not address substantial similarity or Alcon's "creative theory/ theories for the permissible scope of protectable elements at-issue." Dkt. 98 at 4, 6.

**D. Discovery Confirms That Defendants Did Not Copy Image A or BR2049**

Discovery into Alcon's literal copying theory revealed the process by which Tesla created Image C. As explained above, Tesla created Image C using a licensed stock image, modified in Adobe Photoshop, including Photoshop's generative fill tool, through prompts that did not include "Blade Runner" or BR2049. SUF 6-17. Tesla did not put Image A or BR2049 into Photoshop. SUF18. And Tesla did not use Midjourney or any other AI other than Adobe's generative fill tool to create Image C. SUF 19.

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where, as here, the nonmoving party bears the burden of proof at trial, the movant may prevail by "pointing out … an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In that circumstance, there can be "no genuine issue as to any material fact," and the moving

party is necessarily "entitled to a judgment as a matter of law." *Id.* at 323.

## IV. ARGUMENT

To establish a claim for copyright infringement, Alcon must prove that Defendants copied protected aspects of BR2049. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116-17 (9th Cir. 2018). Alcon alleges both literal and substantial-similarity copying, but it lacks evidence to prove either.

### A. Defendants Did Not Literally Copy BR2049 or Image A.

Alcon's primary theory is literal copying. A defendant engages in literal copying when it "cop[ies] substantial portions of [an original work] outright." *Oracle Int'l Corp. v. Rimini St., Inc.*, 123 F.4th 986, 995 (9th Cir. 2024). Alcon alleged that Defendants generated Image C by copying Image A or BR2049 into an AI image generator and asking it to generate an image from BR2049's "K surveying ruined Las Vegas sequence." SUF 5; TAC ¶¶ 39-40. But that allegation was false, as discovery has long shown.

The evidence is clear and undisputed that neither Tesla nor the technology it used relied in any way on any content from BR2049 to create Image C. Tesla created Image C using Adobe Photoshop, starting with a licensed stock image of a desert landscape (*supra* at II.A.3) and then applying multiple stages of modifications, including by prompting Adobe Photoshop's generative fill tool (which does not rely on BR2049 or Image A) with a prompt that did *not* reference BR2049. SUF 6-19. Even Alcon's own expert witness, Howard Rodman, concedes that Image C is not a literal copy. SUF 20.

Because it is undisputed that no portion of BR2049 was copied to create Image C, Defendants are entitled to summary judgment on Alcon's literal copying theory. *See Brookhaven Typesetting Servs., Inc. v. Adobe Sys., Inc.*, 2007 WL 2429653, at *6 (N.D. Cal. Aug. 24, 2007) (granting summary judgment on literal copying claim); *Epidemic Sound, AB v. Meta Platforms, Inc.*, 2026 WL 2021347, at *32 (N.D. Cal. July 13, 2026) (granting summary judgment to defendant with respect to works on which plaintiff "has not offered evidence to support a finding of direct infringement").

### B. The Works Are Not Substantially Similar in Protected Expression

Without evidence of literal copying, Alcon must establish substantial similarity of protected expression. *Yonay*, 163 F.4th at 692-93; *Rentmeester*, 883 F.3d at 1118. As a matter of law, Alcon cannot make that showing because it cannot satisfy "the extrinsic test, which compares objective similarities in protectable expression." *Woodland v. Hill*, 136 F.4th 1199, 1210 (9th Cir. 2025).[2]

The extrinsic test "focus[es] only on the protectable elements of the plaintiff's expression," so "the court must 'filter out' the unprotectable elements of the plaintiff's work—primarily ideas and concepts, material in the public domain, and *scènes à faire* (stock or standard features that are commonly associated with the treatment of a given subject). The protectable elements that remain are then compared to corresponding elements of the defendant's work to assess similarities in the objective details of the works." *Rentmeester*, 883 F.3d at 1118 (citation and quotation omitted). Alcon, however, relies almost exclusively on *unprotectable* elements of Image A and BR2049, such as generic features of the science-fiction and post-apocalypse genres. To the extent that Alcon identifies any protectable features or arrangements of features in Image A or BR2049, Image C plainly does not duplicate those features or arrangements. No reasonable factfinder could conclude otherwise.

The extrinsic test may be decided by the Court as a matter of law, *id.*, even when the parties rely on competing expert opinions, *e.g.*, *Yonay*, 163 F.4th at 693-99. Thus, Alcon's failure to satisfy the extrinsic test requires summary judgment in Defendants' favor. *Id.*; *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 776 (9th Cir. 2018).

---

[2] Alcon must also satisfy an "intrinsic test, which evaluates similarity from the point of view of a reasonable observer," but Alcon's "failure to meet the extrinsic test is fatal" all on its own. *Yonay,* 163 F.4th at 699. The Ninth Circuit is currently considering *en banc* a case brought by Jeffrey Sedlik, one of Alcon's experts, which asks the Ninth Circuit to discard the intrinsic test and focus exclusively on "a one-step, objective test." *Sedlik v. Von Drachenberg*, No. 24-3367 (9th Cir.), Dkt. 100.1 at 13. Even if the Ninth Circuit were to adopt that test, however, it would not change the extrinsic test as *Rentmeester* describes it.

**1. Image C Is Not Substantially Similar to Image A.**

Alcon first contends that Image C is substantially similar to Image A, but no reasonable jury could find any substantial similarities between protectable aspects of the two images. Alcon thus cannot satisfy its burden to prove substantial similarity as to Image A.

**a. Alcon identifies no protectable elements in Image A.**

Alcon's theory of substantial similarity falters from the jump because it relies entirely on "non-protectible elements" of Image A, which the Court "must filter out and disregard." *Yonay*, 163 F.4th at 692 (quotation marks omitted). Alcon relies on a dozen purportedly shared elements between Image C and Image A and BR2049, TAC ¶ 54, but all of these alleged similarities "are at a level of generality that is unprotectable." *Biani v. Showtime Networks, Inc.*, 153 F.4th 957, 965 (9th Cir. 2025). Once the Court filters out these unprotectable elements, there is no similarity between Image C and Image A.

***Post-apocalyptic setting*.** Post-apocalypse "is a well-established genre with standard visual conventions like desolation, ruins, an inhospitable environment, wandering characters." SUF 25, 60; *Eden Film Prod. LLC v. Lockjaw LLC*, 2025 WL 1386018, at *7 (C.D. Cal. Apr. 25, 2025) ("the 'desolate area' setting…is a common element of survival stories" that could not support substantial similarity). Alcon's expert agrees "the image of a lone figure in a post-apocalyptic environment is neither unique to *Blade Runner 2049* nor a protected element." Johnson Decl. Ex. I at 6. Rodman conceded that there are preexisting works that feature desolate, barren terrains; distant, ruined, or haze-obscured cityscapes; a lone wanderer figure; a wide-angle composition; men in long coats; close-cropped hair; and diffuse lighting. SUF 27-33, 62-63, 65-67. Such "stock elements that have been used in literary and artistic works for years" cannot support an infringement claim. *Bissoon-Dath v. Sony Computer Ent. Am., Inc.*, 694 F. Supp. 2d 1071, 1091 (N.D. Cal. 2010), *aff'd*, 653 F.3d 898 (9th Cir. 2011).

Similarly, a lone figure in a post-apocalyptic setting is an unprotectable "*scene[] à faire*," which appears regularly in and "flow[s] naturally from" generic post-apocalyptic "plot-lines." *Funky Films, Inc. v. Time Warner Ent. Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006), *overruled on other grounds by Skidmore*, 952 F.3d 1051; *see* SUF 26, 61. Here too, Alcon's expert Jeffrey Sedlik agrees "a lone figure wearing a coat has appeared in more motion pictures including…sci-fi motion pictures than just Blade Runner." Sedlik Tr. 108:21-24. Such "stock characters" are not protectable. *Bissoon-Dath*, 694 F. Supp. 2d at 1088.

***Color scheme.*** Alcon relies on Image A's color scheme, but "using a color to represent a mood or emotion is an idea that does not fall within the protection of copyright." *Daniels v. Walt Disney Co.*, 958 F.3d 767, 772 (9th Cir. 2020); *see Gilbert-Daniels v. Lions Gate Ent. Corp.*, 2023 WL 8948288, at *15 (C.D. Cal. Dec. 7, 2023) (mood evoked with "the Lavender, Purples, and Mauve color pallet[e]" unprotectable). There are works preexisting BR2049 with an orange-yellow background, including *Mad Max: Fury Road*. SUF 34, 64. As Alcon's expert agrees, "skies which are orange or yellow are not unique to *Blade Runner 2049*." Johnson Decl. Ex. I at 8; *see also* Rodman Vol. 2 Tr. 207:4-10 (orange skies do not "uniquely signif[y]" BR2049 and "[t]he use of a primary or secondary color is not protectable"); Sedlik Tr. 81:13-82:4 (the "orange/amber atmospheric field" and "heavy atmospheric haze" both appear in other science-fiction movies). Such imagery is common in creative works. Johnson Decl. Ex. I at 8; *see also* Gale Decl. Ex. E at 12; SUF 34, 64. Indeed, BR2049's color scheme was inspired by real-world photographs of a 2009 dust storm in Sydney, Australia, which show cityscapes bathed in dusty orange light with distant skyscrapers and bridges in faded brown and brown-orange tones. SUF 35; *see* Gale Decl. Ex. D at 8-9. Such "ideas, 'first expressed in nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them.'" *Folkens*, 882 F.3d at 775 (quoting *Satava v. Lowry*, 323 F.3d 805, 813 (9th Cir. 2003)).

***Human figure.*** Close-cropped hair and a long coat are not protectable; these stock elements are generic *scènes à faire*. Johnson Decl. Ex. I at 7; *see also* Sedlik Tr. 109:6-9 (cropped hairstyle "has appeared in all movies of all kinds"); Rodman Vol. 2 Tr. 208:4-6, 219:14-17 (preexisting works feature men in long coats and lead characters with close-cropped hair). Close-cropped hair often appears on science-fiction characters, including Neo in *The Matrix*, Max in the *Mad Max* series, and characters in the *Resident Evil* franchise. SUF 32. A long coat is also common in science-fiction and post-apocalyptic films like *The Matrix* series, the *Mad Max* series, *Dark City*, *The Book of Eli*, *Watchmen*, and the original *Blade Runner*. SUF 31 Accordingly, K's jacket and hairstyle are not protectable expression. *See Johnson v. Knoller*, 2017 WL 5640554, at *3 (C.D. Cal. Sept. 18, 2017) ("same hairstyle and goatee" were "non-distinctive similarities"); *Capcom Co. v. MKR Grp., Inc.*, 2008 WL 4661479, at *8 (N.D. Cal. Oct. 20, 2008) (that "both characters are male with short brown hair, wear leather jackets, and undertake activities connected to journalism" were unprotectable "superficial, generic physical similarities"). Courts regularly reject far more specific characteristics as too generic to be protectable. *See, e.g.*, *Biani*, 153 F.4th at 965 ("shared characteristics of being similarly-aged, 'strong,' 'beautiful,' and 'pale brunettes,' who 'dress in Victorian attire,' and engage in witchcraft and 'deviant behavior'" were "unprotectable"); *Silas v. Home Box Off., Inc.*, 201 F. Supp. 3d 1158, 1179 (C.D. Cal. 2016) ("well-dressed football players who are sexually promiscuous, drive fancy cars, and have a cocky attitude" was not protectable expression), *aff'd*, 713 F. App'x 626 (9th Cir. 2018).

Moreover, the figures' coats are also distinct in their expression. In Image A, the coat is knee-length, dark green, and fur-collared, with sleeves ending at the wrist. Johnson Decl. Ex. G; SUF 36. By contrast, the coat in Image C is ankle-length and brown, has no fur collar and sleeves that extend below the wrists, and appears to be blowing in the wind. Johnson Decl. Ex. F; SUF 36.

Finally, nothing in Image C suggests the figure is a "blade runner." SUF 37, 68.

The image simply shows a male figure in an ankle-length coat looking out at a skyline. Johnson Decl. Ex. F

***Angle and placement.*** Image C also has distinct lighting, angle, depth of field, and foreground and background elements, which precludes any finding of substantial similarity. SUF 38-48. *Rentmeester*, 883 F.3d at 1121. Alcon's expert admits Image C has different "figure placement and foreground treatment." Johnson Decl. Ex. K at 35; *see* Johnson Decl. Ex. J ("While the iconography of Image C is similar to that of Image A, the perspective and arrangement differ, as Mr. Gale has pointed out.").

Alcon's alleged "similarities" in angle and placement are not similarities at all. Alcon alleges that the viewing angle in the images is "from behind *or nearly so*," TAC ¶ 54 (emphasis added), but that difference matters. The man in Image A is shown directly from behind, giving him total anonymity, whereas the man in Image C is "depicted in a 7/8 perspective, allowing us to see a portion of his face and his entire left ear, a different compositional choice that gives him identity." Gale Decl. Ex. D at 15; SUF 38, 44; *see Woodland*, 136 F.4th at 1213 (two photographs were not substantially similar because, in part, "Hill's face is visible, while Woodland's is obscured"). Next, Alcon claims that the men are "in silhouette or near-silhouette," TAC ¶ 54, but that is false. SUF 39, 47. The man in Image A "is evenly lit with diffuse lighting," not in silhouette, whereas Image C's directional lighting "put[s] the man in near silhouette by making the background substantially brighter than he is." Gale Decl. Ex. D at 17. Finally, Alcon incorrectly claims that both images show the man in the foreground. TAC ¶ 54. But the man in Image A is in the middle ground. SUF 40.

***Action.*** Alcon alleges the men are either "surveying *or exploring* a ruined city." TAC ¶ 54 (emphasis added). But those are distinct activities, and the man in Image A is doing neither. He is walking toward the boat or city, but he is not "surveying or exploring" the city. SUF 42; Gale Decl. Ex. E at 9. The man in Image C, by contrast, "stands at a higher vantage point, looking down at a distant skyline." Gale Decl. Ex. D at 18; *see also* SUF 45. The man in Image A "is active; the other is passive." Gale

Decl. Ex. D at 18; *see also* SUF 47.

***Plot.*** The concept of "society fac[ing] a critical decision whether humans and AI will build a joint society or not," TAC ¶ 54, is not protectable. Such "general plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind." *Funky Films*, 462 F.3d at 1081 (cleaned up). The extrinsic test considers only "the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Id.* at 1077 (cleaned up). Here, the still frame of Image C plainly shares no "sequence of events" or "major character" relationships with BR2049, an entire feature film. Alcon's own expert agrees: Rodman testified that he "think[s] of plot in terms of narrative, and [does] not understand how a still image has a plot" because "a plot is something time based." Rodman Vol. 2 Tr. 213:11-17; *see also id.* at 213:1-2 ("I don't see a sequence of events in Image C"); *id.* at 214:9-11 (Image C is "a still image without sound" and has no dialogue to compare).

In any event, nothing in either image conveys the plot of AI deciding whether to work with humans toward a joint society. *See* Sedlik Tr. at 113:1-5 (viewers looking at Image C would not "necessarily know that the desolation was in some way caused by issues of artificial intelligence"). Neither image indicates whether the figures are human or AI—or even whether AI has anything to do with the subject-matter of the image. *See* Rodman Vol. 2 Tr. 216:23-217:2 (agreeing "nothing in Image C identifies the figure as non-human").

**b. There is no substantial similarity in the selection and arrangement of shared elements.**

Although an artist's selection and arrangement of otherwise unprotected elements can sometimes be protected by copyright, Alcon cannot demonstrate "how [its] 'combination of unprotectable elements' was 'particularly selected and arranged.'" *DuMond v. Reilly*, 2021 WL 733311, at *23 (C.D. Cal. Jan. 14, 2021) (quoting *Skidmore*, 952 F.3d at 1075). Alcon's experts simply list unprotected elements they (incorrectly) opine are common to both works, without saying anything

about their respective arrangements except to note *differences*. Johnson Decl. Ex. K at 28-29, 32-33; Johnson Decl. Ex. I at 8. Merely listing alleged "random similarities scattered throughout the works," as Alcon and its experts do, is insufficient as a matter of law to support a selection-and-arrangement claim. *Skidmore*, 952 F.3d at 1075 (cleaned up); *see Yonay*, 163 F.4th at 696 ("[A]rguing that a plaintiff can prevail under a selection-and-arrangement theory simply by showing that the two works share many similar elements … reveals a misunderstanding of the extrinsic test.").

Moreover, *Rentmeester* makes clear that even when two works have the same elements—and even when they "share undeniable similarities at the conceptual level"—"differences" in the "arrangement of elements, as reflected in the [works'] objective details, preclude as a matter of law a finding of infringement." 883 F.3d at 1122. The Ninth Circuit thus held that a photograph of Michael Jordan mid-dunk was not substantially similar to Nike's famous "Jumpman" photograph of Jordan. *Id.* at 1122-23.



Rentmeester's photograph



Nike's photograph

*Id.* at 1126. These photos are "undeniably similar in the subject matter [that] they depict"—but not similar enough to get an infringement claim before a jury because the "differences in selection and arrangement of elements" make them "unmistakably different … in material details—disparities that no ordinary observer of the two works would be disposed to overlook." *Id.* at 1121-23.

Compare Image A and Image C:







These images are *far* less similar than the photos in *Rentmeester*. The differences in selection and arrangement between Image A and Image C are undisputed. SUF 41. The figure in Image A is walking away; the figure in Image C is standing still. SUF 42, 49. The figure in Image A is small, viewed from behind and at a distance; the figure in Image C dominates the foreground in seven-eighths perspective. SUF 43-44. Image A places the viewer at eye level; the viewer in Image C is at a higher vantage point, looking out and down at the city. SUF 45. The lighting in Image A is flat and diffuse; the lighting in Image C is directional, creating strong shadows. SUF 46. Image A has a car, a wrecked bridge, a grounded boat, an elevated monorail or highway, patches of snow; Image C has none of that. SUF 48. And so on. SUF 47, 49. *See* Gale Decl. Ex. D at 12-17. Even more so than in *Rentmeester*, the images are "unmistakably different"—and no reasonable factfinder could conclude otherwise. 883 F.3d at 1122.

Defendants' expert Bob Gale conducted a detailed analysis of substantial similarity between the two works, which revealed the numerous differences in expression and arrangement discussed above. *See* Gale Decl. Ex. D at 12-17. That

opinion stands unrebutted. *See* Sedlik Tr. 41:13-23, 45:21-23 (testifying that he does not "intend to draft" a rebuttal report). Indeed, Rodman concedes the "arrangement" of Image C "differs" from that of Image A. Johnson Decl. Ex. J. And Sedlik testified that he was not retained to compare Image A to Image C and did not analyze any differences between the two works. Sedlik Tr. 75:12-15, 77:11-16, 114:3-5. He simply asserts that Gale "was wrong" to identify differences at all. *Id.* at 80:3-9. That is irreconcilable with *Rentmeester*, which concluded "differences in selection and arrangement of elements" in the two works "preclude[d] as a matter of law a finding of infringement." 883 F.3d at 1122. Summary judgment is thus proper as to Alcon's contention that Image C infringes Image A. *Goldberg v. Cameron*, 787 F. Supp. 2d 1013, 1021-22 (N.D. Cal. 2011) (granting defendant's motion for summary judgment where defendant's expert opined "there are no relevant similarities in any of the elements of the compositions" and plaintiff's expert "d[id] not provide an audio or visual comparison or analysis of the works at issue").

**2. Image C Is Not Substantially Similar to BR2049.**

Alcon alternatively contends that Image C infringes BR2049, but comparing Image C to a full-length film makes the lack of similarity even starker. *See Zendel v. Circle Locations Servs., Inc.*, 2013 WL 12111752, at *6 (C.D. Cal. July 19, 2013) (finding "the different media formats" of two works "make any allegation of similarity in the sequence of events far less plausible"). Image C, a still image, does not contain any similarities to the plot, sequence of events, or dialogue of BR2049. SUF 69-71. Alcon's expert admits, "Image C itself does not fully contain BR 2049's plot." Johnson Decl. Ex. K at 35; *see also* Rodman Vol. 2 Tr. 213:7-215:10. Image C does not contain substantial similarities as to character, theme, or setting, either. SUF 72-74.

***Character K.*** Alcon contends that Image C incorporates protected elements of BR2049's protagonist K. Even assuming K is a protectable character, Alcon does not identify a single one of K's purported characteristics, much less K's story arc, in Image C. Nothing about Image C portrays the figure as a "cold-blooded killer" or "blade

runner," nothing reveals whether the figure does or does not believe he has a soul, and nothing suggests the figure made or will make a decision to become a "rebel against a system he once served." Johnson Decl. Ex. F; TAC ¶ 50. "No character infringement claim can succeed unless plaintiff's original conception sufficiently developed the character, and defendants have copied this development and not merely the broader outlines." *Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123, 1164 (C.D. Cal. 2015). To the extent K and the figure in Image C share any traits, "those traits are too general to be protectable." *Yonay,* 163 F.4th at 695; *see id.* (copying general traits from characters in plaintiff's work not infringement because they were too general to be protectable).

Alcon resorts to arguing that Image C "evokes" BR2049's K. Johnson Decl. Ex. K. at 33-35; Johnson Decl. Ex.I at 9. But merely "[s]tirring one's memory of a copyrighted character is not the same as appearing to be substantially similar to that character, and only the latter is infringement." *Warner Bros. v. Am. Broad. Cos.*, 720 F.2d 231, 242-43 (2d Cir. 1983) (no substantial similarity despite plaintiff's contention that defendant's character copied "the 'indicia' of Superman," meaning "anything…that might remind a viewer of Superman"). In any event, the Image C figure is far too different from K to "evoke" K. *See* Section IV.B.1, *supra.*

Nor do Alcon's experts offer any reliable basis for their "evoking" theory. Rodman has no methodology to determine which images evoke entire films, applied no published test, and relied on no study. Rodman Vol. 2 Tr. 167:2-168:6. Further, Rodman conceded that how much of a film an image evokes depends on the viewer. *Id.* at 152:20-23; *see also* Sedlik Tr. 103:4-11.

Alcon relies heavily on the fact that Musk referenced *Blade Runner* during the keynote speech, TAC ¶ 44, but spoken remarks cannot convert a non-infringing work into an infringing one. To begin, Musk referenced *Blade Runner*—a property Alcon does not own—not BR2049. TAC ¶ 44; Kosove Tr. & Errata at 108:5-20. Indeed, the jacket in Image C is more similar to the duster-length jacket Deckard wore in *Blade*

*Runner* than to the jacket worn by BR2049's K. Gale Decl. Ex. D at 16.

But even if the keynote speech had referenced BR2049 (it did not), that would not change the analysis because titles are not entitled to copyright protection. *See Esplanade Prods., Inc. v. Walt Disney Co.*, 768 F. App'x 732, 733 (9th Cir. 2019) (no substantial similarity because "[t]he titles are identical, but a title is unprotected as a matter of federal law"); *Shame on You Prods.*, 120 F. Supp. 3d at 1171 (finding movie titled *Walk of Shame* was not substantially similar to screenplay titled *Darci's Walk of Shame*).

***Theme and mood.*** Alcon contends that Image C copies an "urgent human-AI relationship theme" and a "mood of anxiety, fear, and urgency," TAC ¶ 52, but nothing in Image C suggests either. SUF 72. In fact, Alcon mischaracterizes the theme of its own work as being about "the societal human-AI relationship being at a critical point, where a choice to partner to build a joint society or not is urgent, and wrong decisions will lead to apocalyptic ruin." SUF 59. But BR2049 takes place in a *post*-apocalyptic environment. SUF 52. And K is not forced to decide whether to partner with humans; he must decide whether to kill one replicant (Deckard) at the direction of another (Freysa) or sacrifice himself to let Deckard live. Dkt. 51; SUF 58.

Moreover, as Alcon has defined the theme, it would be unprotectable because "the general idea of a futuristic conflict between man and machines" and "portrayals of artificial intelligence at war with humans" are "commonplace in science fiction." *Goldberg*, 787 F. Supp. 2d at 1020. Likewise, an "apocalyptic mood in which the hero(es) must defy the odds in order to save innocent people" is a "common" feature of science-fiction media that cannot support a finding of substantial similarity. *Basile v. Warner Bros. Ent.*, 2016 WL 5867432, at *12-13 (C.D. Cal. Jan. 4, 2016), *aff'd*, 678 F. App'x 604 (9th Cir. 2017).

***Setting.*** Alcon contends Image C copies the "setting of a post-apocalyptic urban ruin" from the Las Vegas sequence of BR2049. But nothing in Image C suggests Las Vegas, SUF 74, and even if it did, "[t]he mere fact that the two [works] are set in the

same city does not give rise to a finding of substantial similarity of copyrightable expression." *Silas*, 201 F. Supp. 3d at 1176. Moreover, BR2049's Las Vegas sequence takes place inside an abandoned casino; Image C does not. SUF 55, 57, 74. The moment in which K exits his vehicle is a brief scene in relation to the whole of that sequence, let alone the rest of the movie. *See Shame on You*, 120 F. Supp. 3d at 1160-61 ("[B]oth works involve tow lot scenes and a helicopter ride, but none of the remaining the protectable settings in the works is substantially similar."). As to that one brief moment, Image C's setting is no closer to BR2049's than BR2049's is to the images of the Sydney dust storm on which it was based.

### C. Alcon's Legally Baseless Theories Fail to Prove Substantial Similarity.

As the Court correctly observed, Alcon seeks to replace the governing substantial-similarity test with "creative theory/theories," Dkt. 98 at 6, which Alcon refers to variously as "gating," "triggering," "evoking," and "reference leveraging." TAC ¶ 40; Dkt. 52 (Pl. Opp. MTD) at 10-12. Although the Court previewed that "the best audience for that contention is located in Washington, D.C., not this courtroom," Dkt. 61 at 7 n.10, Alcon has doubled down on its novel arguments. They lack merit.

First, Alcon has suggested that it can avoid proving substantial similarity by alleging that Image C is a derivative work of BR2049, but the Ninth Circuit long ago rejected that argument as "frivolous." *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984). The court refused to expand the definition of derivative works to include "any work *based on* a copyrighted work," reaffirming that a plaintiff must still "show substantial similarity" to show that the defendant's work "is a derivative work." *Id.* (emphasis added); *see also Rimini St.*, 123 F.4th at 994-95 ("[A] work is not derivative unless it has been substantially copied from the prior work." (cleaned up)). Under any theory, that a work was inspired by or calls to mind another work is not enough to prove a copyright violation. *See Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1398 (9th Cir. 1997) (applying substantial similarity test even though

defendant admitted his work was "inspired by" *The Cat in the Hat*).

Next, Alcon and its experts speculate about Musk's affinity for *Blade Runner* and emphasize Tesla's attempt to license Image A before creating Image C, but none of that is relevant. Intent is not an element of copyright infringement, Dkt. 202 at 6, and *Rentmeester* rejected an infringement claim as a matter of law even though Nike had previously licensed the plaintiff's photo for limited uses. 883 F.3d at 1116, 1122-23. These are just arguments that Defendants had access to Alcon's work, but access is neither disputed nor relevant. The Ninth Circuit has rejected the inverse ratio rule, so proving access does not lower Alcon's burden to prove substantial similarity. *Skidmore*, 952 F.3d at 1065-69.

Finally, to the extent Alcon attempts to sweep in Musk's keynote remarks by contending the Event Recording infringes BR2049, that argument fails out of the gate. BR2049 is a fictional film set in a future dystopia, exploring themes of what it means to be human. The "We, Robot" event was a corporate keynote explaining Tesla's vision to partners and potential employees. The only way for Alcon to compare BR2049 with the event would be to "describ[e] both works at such a high level of abstraction that the similarities do not involve protected expression." *Yonay*, 163 F.4th at 693. Accordingly, the Event Recording could infringe BR2049 only to the extent that Image C itself does, and only because Image C briefly appears in the recording. *See Rimini St.*, 123 F.4th at 995 ("[A] work is not derivative unless it has been substantially copied from the prior work." (cleaned up)). The Event Recording thus falls with Alcon's erroneous arguments about Image C.

**D. Alcon's Unpled Theories Also Fail.**

Toward the end of the discovery period, Alcon identified for the first time a set of new liability theories it had not pleaded in its TAC or otherwise disclosed to Defendants. Johnson Decl. Ex. H (Resp. to Rog. No. 12). Defendants do not know whether or to what extent Alcon intends to rely on these theories to oppose summary judgment. It would be improper for Alcon to do so, however, because a plaintiff may

not oppose summary judgment based on "new theor[ies] not pled in [the] complaint." *Patel v. City of Long Beach*, 564 F. App'x 881, 882 (9th Cir. 2014) (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000)); *accord Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008).[3]

Alcon's new theories clearly exceed the scope of its TAC. Alcon alleged copyright infringement based solely on the "creation of (i) Image C and (ii) the Event Recording." TAC ¶ 49. That is the theory that survived the pleading stage and which was the subject of discovery. Alcon's new theories are completely different. Alcon's first unpled theory is that Defendants infringed Alcon's copyright by allegedly playing BR2049 trailers on video screens inside Tesla vehicles at the Event. Johnson Decl. Ex. H (Resp. to Rog. No. 12). That allegation and theory are entirely absent from the TAC.[4] Second, Alcon takes issue with the use of Image A in draft versions of the keynote presentation, *id.*, which were never shown to the public and for which Tesla sought a license, [redacted] Tr. 126:18-127:7; Lee Decl. Ex. HH. Nothing in the TAC suggests Alcon contemplated an infringement claim based on *draft* planning materials that were purely internal to Tesla. Third, Alcon concocts a new theory that Tesla infringed its copyright by uploading Image A to an AI tool called Midjourney, completely separate from any content that was used at the Event. Johnson Decl. Ex. H (Resp. to Rog. No. 12). The TAC's only claims are centered on Image C and the Event Recording, neither of which was created in Midjourney. SUF 19.

These new theories plainly "exceed[] the complaint's scope." *Wormuth v. Lammersville Union Sch. Dist.*, 305 F. Supp. 3d 1108, 1118 (E.D. Cal. 2018). And it would unfairly prejudice Tesla to permit Alcon to raise these "new theor[ies] of liability at the summary judgment stage." *Coleman*, 232 F.3d at 1292; *see also Pickern*

[3] *Accord Ray v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 4902357, at *1-2 (9th Cir. Oct. 21, 2021); *Bernardo v. Lafayette Life Ins. Co.*, 2025 WL 2947010, at *7 (C.D. Cal. Sept. 24, 2025); *Takeya USA Corp. v. PowerPlay Mktg. Grp., LLC*, 2022 WL 17357781, at *16 (C.D. Cal. Sept. 1, 2022); *FDIC v. Network Cap. Funding Corp.*, 2015 WL 13916255, at *5 (C.D. Cal. Aug. 28, 2015).

[4] It is undisputed that Tesla had a license to display the trailers. Lee Decl. Ex. FF.

*v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 966 (9th Cir. 2006). The Court should limit Alcon to theories that fall within the scope of the TAC and preclude it from relying on its new, unpled theories.

## V. CONCLUSION

The Court should grant Defendants summary judgment.

DATED: November 19, 2026

**KING & SPALDING LLP**

By: */s/ Arwen R. Johnson*
Arwen R. Johnson
Lennette W. Lee

**TESLA, INC.**
DAVID LEE (SBN 264467)
*dlee8@tesla.com*
1501 Page Mill, Bldg 6U
Palo Alto, California 94304
Tel.: (510) 298-8516

Attorneys for Defendants
TESLA, INC. and ELON MUSK

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Tesla, Inc. and Elon Musk, certifies that this brief contains 6,959 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Arwen R. Johnson*

Arwen R. Johnson